**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| X CORP. and X.AI LLC,<br><br>     Plaintiffs,<br><br>     v.<br><br>APPLE INC.; OPENAI, INC.; OPENAI, L.L.C.; and OPENAI OPCO, LLC,<br><br>     Defendants. | **Civil Action No. 4:25-cv-00914-P** |

**BRIEF OF PLAINTIFFS X CORP. AND X.AI LLC**
**IN RESPONSE TO COURT ORDER REGARDING VENUE**

Bradley Justus
AXINN, VELTROP & HARKRIDER LLP
1901 L Street NW
Washington, DC 20036

Caroline P. Boisvert
AXINN, VELTROP & HARKRIDER LLP
90 State House Square
Hartford, CT 06103

Craig M. Reiser
Scott A. Eisman
Eva Yung
Christopher Erickson
AXINN, VELTROP & HARKRIDER LLP
630 Fifth Avenue, 33rd Floor
New York, NY 10111

Alex More
Monica E. Gaudioso
Robert C. Rowe
CARRINGTON, COLEMAN, SLOMAN
& BLUMENTHAL, L.L.P.
901 Main Street, Suite 5500
Dallas, TX 75202

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .......................................................................................................................... 3

    I.    The Court Should Respect Plaintiffs' Choice of Venue ........................................ 3

        A.    X Is a Texas Resident That Selects
                Tarrant County Courts for Its Consequential Disputes .............................. 4

        B.    The Clayton Act Allows
                Plaintiffs to Bring Their Claims in This Court .......................................... 5

        C.    This Court Is Well Positioned
                to Expeditiously Hear Plaintiffs' Claims ................................................... 6

        D.    Defendants' Misconduct
                Causes Significant Harm in the Fort Worth Area ...................................... 7

    II.    The *In re Volkswagen* Public- and Private-Interest Factors
        Confirm the Court Should Respect Plaintiffs' Choice of Venue ........................... 8

        A.    The Private-Interest Factors
                Confirm The Court Should Respect Plaintiffs' Choice of Venue ............... 9

        B.    The Public-Interest Factors
                Confirm The Court Should Respect Plaintiffs' Choice of Venue ............. 12

CONCLUSION ..................................................................................................................... 14

## TABLE OF AUTHORITIES

**Cases**                                                                                                  **Page(s)**

*Alacritech Inc. v. CenturyLink, Inc.*,
  2017 WL 4155236 (E.D. Tex. Sept. 19, 2017) ..........................................................................11

*Bartolucci v. 1-800 Contacts, Inc.*,
  245 F. Supp. 3d 38 (D.D.C. 2017) ................................................................................. 12-13

*Bennett v. Moran Towing Towing Corp.*,
  181 F. Supp. 3d 393 (S.D. Tex. 2016) ...................................................................................14

*In re Chamber of Com. of U.S.*,
  105 F.4th 297 (5th Cir. 2024) ..............................................................................3, 8, 12, 13

*In re Clarke*,
  94 F.4th 502 (5th Cir. 2024) .........................................................................................3, 8

*Equisales Assocs., Inc. v. Perini Corp*,
  2005 WL 8164966 (S.D. Tex. May 10, 2005) ...........................................................................4

*In re Planned Parenthood Fed'n of Am., Inc.*,
  52 F.4th 625 (5th Cir. 2022) ..............................................................................9, 10, 11, 12

*Storm Mfg. Grp., Inc. v. Weather Tec Corp.*,
  2013 WL 12129620 (C.D. Cal. Apr. 15, 2013) .........................................................................5

*Sudduth v. Occidental Peruana, Inc.*,
  70 F. Supp. 2d 691 (E.D. Tex. 1999)......................................................................................4

*In re TikTok, Inc.*,
  85 F.4th 352 (5th Cir. 2023) ...............................................................................................14

*Uniloc USA, Inc. v. Distinctive Dev. Ltd.*,
  964 F. Supp. 2d 638 (E.D. Tex. 2013)...................................................................................14

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304 (5th Cir. 2008) (en banc) ................................................................8, 9, 10, 12

*Yett v. Peters*,
  2008 WL 177873 (E.D. Tex. Jan. 18, 2008)...........................................................................11

**Statutes**

15 U.S.C. § 22................................................................................................................................5

## PRELIMINARY STATEMENT

X, a Texas-headquartered company, and xAI bring this suit to stop Apple and OpenAI from permanently locking up the markets for generative artificial intelligence ("AI") chatbots and smartphones.[1] As the Assistant Attorney General for the Department of Justice's Antitrust Division recently explained, "exclusionary behavior that forecloses access to key inputs and distribution channels" risks destroying competition in AI markets. App'x Tab 1, at App. 16. Apple and OpenAI are engaging in precisely such behavior.

Despite filing nearly fifty pages of motion-to-dismiss briefing parroting each other's claims about a never-disclosed agreement and relying on a litany of sources untethered to Plaintiffs' Complaint, Apple and OpenAI do not and cannot dispute that ChatGPT—and only ChatGPT—is integrated with Siri, Apple Intelligence, and other native functionality on iPhones and other Apple devices. The result is that competing generative AI chatbots are excluded from the market, harming competition and reducing innovation and consumer choice. Americans who turn to generative AI chatbots to answer their questions using Apple Intelligence get ChatGPT's—and, again, only ChatGPT's—answer. This illegal conduct has already harmed Plaintiffs and the public and will continue to do so if left unchecked.

---

[1] Defendant Apple Inc. is referred to as "Apple." Defendants OpenAI, Inc.; OpenAI, L.L.C.; and OpenAI OpCo, LLC are collectively referred to as "OpenAI." Plaintiff X Corp. is referred to as "X," and Plaintiff X.AI LLC is referred to as "xAI." X and xAI are referred to collectively as "Plaintiffs," and Apple and OpenAI are referred to collectively as "Defendants." "App'x Tab __" refers to the tab in the accompanying Appendix.

This case belongs in this Court. X is a home-state plaintiff, and this Court is its preferred forum. X's Terms of Service exclusively select "the U.S. District Court for the Northern District of Texas or state courts located in Tarrant County, Texas" for disputes that, like this one, "relate[] to" X's services. App'x Tab 2, at App. 33. xAI likewise selects state and federal courts in Tarrant County, Texas for its disputes. App'x Tab 24, at App. 166.

Plaintiffs also have many other reasons to choose this Court. In the 16 months since Defendants' illegal agreement was announced, both OpenAI and xAI have released several new generations of ChatGPT and Grok, showing how quickly things move in the generative AI space and why swift action is needed to stop Defendants from tipping the generative AI chatbot market to OpenAI. App'x Tab 3, at App. 46, 48, 52, 55, 59; App'x Tab 4, at App. 62; App'x Tab 5, at App. 66; App'x Tab 6, at App. 72; App'x Tab 7, at App. 78. By several metrics, cases in this Court move faster than they do anywhere else. This Court is thus positioned to deliver justice before competition in the crucial area of AI is permanently harmed. The residents of this District also have an acute interest in preventing such harm. As Senator Ted Cruz recently touted, Texas is "ground zero for AI" because of its "abundant low-cost energy." App'x Tab 8, at App. 86. Indeed, the Dallas-Fort Worth area has embraced the moniker "Silicon Prairie," a name for the hopeful communities who have invested in resources needed to support the very AI development that Defendants' misconduct stifles. *Id*. at App. 85.

Plaintiffs' selection of this forum is reinforced by their claims. Congress has expressly given antitrust plaintiffs—like X and xAI here—wide latitude to sue corporations wherever they

transact business. Defendants undeniably transact business in this District and Division, with Apple selling iPhones (and many other products) and OpenAI offering ChatGPT nationwide.

As against all of this, and despite this Court's invitation for Defendants to file a motion to transfer, no Defendant has even tried to carry the heavy burden required to disturb Plaintiffs' choice of forum. The bombastic suggestion of forum shopping in OpenAI's motion to dismiss is belied by its decision not to challenge venue here, which reveals that despite OpenAI's rhetoric about other cases and issues that have nothing to do with what Plaintiffs allege in their Complaint, this case comes nowhere close to clearing the high bar that the Fifth Circuit requires for transfer. A defendant can meet that exacting standard only by showing that a host of private- and public-interest factors make some other forum clearly more convenient. No such showing can be made. To the contrary, the private- and public-interest factors weigh against transfer—including the local interests that will be vindicated by having a court at "ground zero for AI" resolve this dispute involving a Texas-located company, and the expeditious manner in which the case will proceed in this Court.

There is no basis to transfer this case.

**ARGUMENT**

**I.    The Court Should Respect Plaintiffs' Choice of Venue**

The plaintiff is "master of the complaint," *In re Clarke*, 94 F.4th 502, 515 (5th Cir. 2024), and its "venue choice should be respected," *In re Chamber of Com. of U.S.*, 105 F.4th 297, 302 (5th Cir. 2024). That is especially true here. *First*, one of the Plaintiffs (X) is a Texas resident that

(like xAI) chooses this Court in its Terms of Service. *Second*, venue is indisputably proper under the Clayton Act. *Third*, this Court is uniquely positioned to quickly halt Apple and OpenAI's ongoing anticompetitive conduct before OpenAI's monopoly power is entrenched to the point of no return. And *fourth*, the conduct here threatens nationwide harm, and to the Fort Worth area.

### A. X Is a Texas Resident That Selects Tarrant County Courts for Its Consequential Disputes

X, a Texas resident, chose to sue in its home state—a choice that courts have found "particularly significant" and "entitled to significant weight" in transfer analyses. *Equisales Assocs., Inc. v. Perini Corp.*, Civ. A. No. H-04-4283, 2005 WL 8164966, at *3 (S.D. Tex. May 10, 2005) (collecting cases on the effect of plaintiffs suing in their home state); *accord Sudduth v. Occidental Peruana, Inc.*, 70 F. Supp. 2d 691, 697 (E.D. Tex. 1999). Despite OpenAI's false assertion that X is a "subsidiary" of xAI, OpenAI Br. 1,[2] X is a separate sister company located in Texas. Executives, including Executive Chairman Elon Musk and hundreds of other employees, are based in Texas. Accordingly, there are potential witnesses and evidence in Texas. Having harmed a home-state plaintiff, Defendants should be held to account in Texas, where the conduct threatens economic growth in communities like the Fort Worth area that are investing in AI infrastructure. *See, e.g.*, App'x Tab 10, at App. 97; App'x Tab 11, at App. 100; *see also* App'x Tab 9, at App. 89.

---

[2] OpenAI's Memorandum of Law in Support of Motion to Dismiss, Dkt. No. 41, is referred to as "OpenAI Br."

X has repeatedly litigated in this Court, including in an ongoing antitrust action pertaining to advertising and another action that was transferred to this Court earlier this week,[3] and provides in its Terms of Service that "[a]ll disputes related to these Terms or the Services [including the X app] . . . [must] be brought exclusively in the U.S. District Court for the Northern District of Texas or state courts located in Tarrant County, Texas, United States." App'x Tab 2, at App. 33.[4] Apple and OpenAI both agreed to these terms by signing up for official accounts on the X platform. App'x Tabs 12–17, at App. 104–14 (listing official business X accounts for Apple and OpenAI and their chief executives). And, as the Complaint makes clear, Apple used X's platform to help accomplish its anticompetitive aims with OpenAI by publicly misrepresenting their basis for entering into the illegal exclusive arrangement. *See* Compl. ¶ 99.

### B.    The Clayton Act Allows Plaintiffs to Bring Their Claims in This Court

Plaintiffs' "choice of forum" is "entitled to particular respect" here because this is an "antitrust suit[]." *Storm Mfg. Grp., Inc. v. Weather Tec Corp.*, No. CV 12-10849, 2013 WL 12129620, at *4 (C.D. Cal. Apr. 15, 2013) (quotation marks omitted). Congress, in the Clayton Act, expressly allowed for a plaintiff to bring "[a]ny suit, action, or proceeding under the antitrust

---

[3] Seven other cases by or against X are currently pending in the Northern District of Texas, including five that are pending in the Fort Worth Division. *See X Corp. v Media Matters for Am.*, 4:23-cv-01175-O (Fort Worth Division); *LeCompte v. Campbell*, 4:25-cv-00961-O (Fort Worth Division); *X Corp. v. Thang*, 4:25-cv-00546-O (Fort Worth Division); *Reeves v. X Corp.*, 4:25-mc-00014-P (Fort Worth Division); *Williams v. X Corp*, 4:25-cv-01084-P-BJ (transferred to the Fort Worth Division on Oct. 6, 2025); *X Corp. v. World Fed'n of Advertisers*, 7:24-cv-00114-B (Dallas Division); *Richards v. X Corp.*, 3:25-cv-00916-X (Wichita Falls Division).

[4] xAI's Terms of Service likewise require that all disputes "be brought exclusively in the state and federal courts in Tarrant County, Texas." App'x Tab 24, at App. 166.

laws against a corporation . . . in any district wherein it may be found or transacts business." 15 U.S.C. § 22. There is no question that Defendants transact business in this District; Apple sells its smartphones nationwide, including in this District, and OpenAI sells and makes available ChatGPT on just as wide a scale and is building a data center in the District. App'x Tab 18, at App. 116; Compl. ¶ 28.

**C.    This Court Is Well Positioned to Expeditiously Hear Plaintiffs' Claims**

Suing in this forum gives Plaintiffs their best chance to have their claims heard expeditiously. This District is one of the fastest in the nation at resolving civil litigation. According to the most recent data, the median time between case filing and resolution is significantly shorter in the Northern District of Texas than the average for the rest of the federal judiciary: the median time from filing to case termination is 5.8 months in this District, as compared to the 22.5-month national average. App'x Tab 19, at App. 120-21. The speed this Court offers is essential to address and prevent the permanent harm Defendants' anticompetitive conduct will cause if allowed to continue. As Plaintiffs have explained in their Complaint, OpenAI's exclusive access to prompts sent from iPhones and other Apple devices threatens to break the market for generative AI chatbots beyond repair by giving ChatGPT an insurmountable volume of Americans' prompts—especially given Apple's preferential treatment of OpenAI in its App Store. Compl. ¶¶ 79–87. If not promptly stopped, ChatGPT's already dominant market share of over 80 percent will grow even more in the near term, *id.* ¶ 157, forever entrenching a monopoly, excluding competitors, and ensuring that ChatGPT's responses are the only ones Americans who turn to AI with their questions will see.

**D.      Defendants' Misconduct Causes Significant Harm in the Fort Worth Area**

Allowing the anticompetitive arrangement between OpenAI and Apple to continue will not only destroy competition and centralize generative AI chatbot responses in one dominant generative AI chatbot nationwide, but will also cause harm within this District and Division.

Fort Worth's recent and significant investment in generative AI technology means that its residents have a significant stake in the outcome of this case. The Fort Worth City Council has negotiated commitments from multiple generative AI and cloud computing resource companies supporting generative AI development in the past year. *See, e.g.*, App'x Tab 10, at App. 97; App'x Tab 11, at App. 100. Wistron, a Taiwan-based electronics company, is partnering with Nvidia to build an AI electronics plant in Fort Worth, investing $761 million. App'x Tab 11, at App. 100. Fort Worth's City Council has also approved $15 million in incentives for another AI electronics company, Adom Industries, to establish the world's first AI-native cloud factory in Fort Worth. App'x Tab 10, at App. 97-98. OpenAI established and recently opened a new AI data center in this District as well. *See* Compl. ¶ 28; App'x Tab 18, at App. 116. Given these many local efforts to court AI business, North Texas, especially the Fort Worth area, has taken to calling itself the "Silicon Prairie." App'x Tab 8, at App. 85; App'x Tab 9, at App. 88. The fact that the Texas Attorney General opened an investigation into a generative AI chatbot and its privacy impact on state residents earlier this year, App'x Tab 20, at App. 126–27, only confirms the significant interest this State, this District, and this Division have in the outcome of this case.

Plaintiffs, as the masters of their Complaint, sued in a court that is the chosen forum under X's Terms of Service and that Congress authorized them to sue in, and where X has prosecuted other significant matters. *See supra* note 3. This lawsuit will vindicate rights for forum residents, especially in Fort Worth, and a home-state company. And this Court has the ability to ensure those rights are vindicated quickly.

**II.     The *In re Volkswagen* Public- and Private-Interest Factors**
        **<u>Confirm the Court Should Respect Plaintiffs' Choice of Venue</u>**

Transfer is appropriate only when the moving party meets its burden of adducing evidence and arguments that *clearly* establish good cause. *Chamber of Com.*, 105 F.4th at 304 (citing *Clarke*, 94 F.4th at 508). Tellingly, despite the Court's invitation for them to do so, neither Defendant has moved to transfer. *See* Dkt. No. 44. There is thus no argument that *any* venue—much less a particular venue—is clearly more convenient than this Court.

The *In re Volkswagen* private- and public-interest factors confirm that Plaintiffs' "venue choice should be respected." *Chamber of Com.*, 105 F.4th at 302. None of the private- or public-interest factors here point to any other venue for Plaintiffs' claims, much less clearly so. *See id*. at 304 (quoting *Clarke*, 94 F.4th at 508). While "[n]o factor is of dispositive weight" and courts avoid "a raw counting of the factors that weighs each the same," *id.* (citation modified), the factors here all either weigh against transfer or are neutral.

As to the private-interest factors, all of them weigh against transfer: as a case about generative AI, the documentary evidence is electronic and easily accessible from anywhere; no Defendant has identified any unwilling witnesses; the witnesses not already in-state can easily

travel here via a nearby international airport; and litigating in this District will provide speedy justice. The public-interest factors likewise weigh against transfer: federal antitrust laws were enacted to prevent nationwide harm, and Fort Worth's recent AI investments mean that this case is of particular local interest; this Court expeditiously resolves cases; and there are no issues here beyond this Court's familiarity.

Thus, this Court remains the proper and best possible venue to vindicate the harms caused by Defendants to Plaintiffs and the residents of this District and Division.

### A. The Private-Interest Factors Confirm The Court Should Respect Plaintiffs' Choice of Venue

The private-interest factors are "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022) (quoting *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc)). All of them favor keeping the case in Plaintiffs' chosen forum:

***Relative ease of access to sources of proof.*** This factor weighs against transfer because documents and other evidence are at least as easily accessible in this jurisdiction as elsewhere. *Volkswagen*, 545 F.3d at 316 (noting that this factor asks whether "the documents and physical evidence" are located closer to the chosen forum or an alternative forum). When "the vast majority of the evidence [is] electronic," it is "equally accessible in either forum." *Planned Parenthood*, 52 F.4th at 630. And here—a case between large multinational corporations about state-of-the-art

technology—the vast majority of the evidence will be electronic. There is thus no reason to disturb Plaintiffs' forum choice based on this factor.

*Availability of compulsory process.* In weighing this factor, courts consider whether any forum "enjoy[s] absolute subpoena power for both depositions and trial." *Volkswagen*, 545 F.3d at 316 (emphasis omitted). But when, as here, defendants have "failed to identify any witnesses who would be unwilling to testify" in this District, there is nothing to suggest that this Court lacks absolute subpoena power. *Planned Parenthood*, 52 F.4th at 630–31. Nor, even after the Court invited transfer motions, has any Defendant sought transfer to another forum—much less one that would have greater power to compel witnesses' presence. *Cf. Volkswagen*, 545 F.3d at 316 (finding factor favored transfer because proposed transferee court had absolute subpoena power). Instead, Defendants—multinational corporations with employees scattered across the United States—have acknowledged the appropriateness of compulsory process in this forum by declining to seek transfer. This factor accordingly weighs against transfer.

*Cost of attendance of willing witnesses.* The Fifth Circuit assesses this factor to gauge how convenient travel to the venue would be for a potential witness: where the distance a witness must travel to a proposed venue is "more than 100 miles, the factor of inconvenience . . . increases in direct relationship to the additional distance to be traveled." *Volkswagen*, 545 F.3d at 317 (citation omitted). But courts have since clarified that this "100-mile rule should not be rigidly applied," and where, as here, "inconvenience would exist in [another] potential venue, merely shifting inconvenience from one party's witnesses to the other's is insufficient to affect a transfer of venue

10

analysis." *Alacritech Inc. v. CenturyLink, Inc.*, No. 2:16-CV-00693, 2017 WL 4155236, at *5 (E.D. Tex. Sept. 19, 2017) (citations omitted) (denying transfer to the Northern District of California). The distance potential witnesses may have to travel is therefore not a factor favoring transfer, particularly when one of the Plaintiffs (X) and some witnesses are already in Texas, including employees at X's headquarters and OpenAI's newest data center. *See supra* Part I.A. Moreover, by its nature, a case like this involving large companies with employees nationwide requires some travel by party and nonparty witnesses, and "some inconvenience is expected and acceptable." *Planned Parenthood*, 52 F.4th at 629, 630-31 (citation omitted) (affirming analysis of costs for witnesses residing "across the state and across the country" to fly into various Texas airports). The central location of this forum and its proximity to the Dallas Fort Worth International Airport likewise make it convenient for any witnesses traveling from out of state—which witnesses Defendants have not identified in any event. *See Yett v. Peters*, No. CIV.A. 4:06-CV-473, 2008 WL 177873, at *3 (E.D. Tex. Jan. 18, 2008) (finding the Northern District of Texas, Fort Worth Division, to be the more convenient venue when accounting for out-of-state witnesses flying into DFW).

**All practical problems that make trial of a case easy, expeditious and inexpensive.** Trial would be at least as easy, expeditious, and inexpensive here given the speed with which cases in this District move. Time is of the essence to address and prevent the permanent harm Defendants' anticompetitive conduct will cause if allowed to continue. *See supra* Part I.C. To that end, this case will likely proceed to trial in this District faster than anywhere else in the nation, given the Northern

District of Texas's median rate of 5.8 months from complaint to resolution. *See id*. By way of comparison, the Northern District of California, the forum in which OpenAI suggested it should have been sued instead (before jettisoning its position by not moving to transfer when invited by the Court to do so), OpenAI Br. 1, requires 20.5 months median between complaint and resolution. App'x Tab 19, at App. 123. Trial—and the relief needed to stop the harm from Defendants' conduct—will thus occur expeditiously here. This factor thus weighs against transfer.

### B.     The Public-Interest Factors Confirm The Court Should Respect Plaintiffs' Choice of Venue

The public-interest factors are "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Planned Parenthood*, 52 F.4th at 630 (quoting *Volkswagen*, 545 F.3d at 315). Those factors likewise favor keeping this case in the Northern District of Texas, given Fort Worth's strong local interest in the outcome of this case and no other factor "clearly demonstrat[ing]" good cause for transfer or what that transferee court would be. *Chamber of Com.*, 105 F.4th at 304 (citation omitted).

***Local interests in deciding local controversies.*** As the Fifth Circuit has recognized, "[l]ocalized interests are present when the citizens of the forum have a sufficient interest in the controversy to justify burdening them with jury duty." *Chamber of Com.*, 105 F.4th at 308 (citation modified). To start, there is a localized interest in enforcing the antitrust laws in every District throughout the nation. *See Bartolucci v. 1-800 Contacts, Inc.*, 245 F. Supp. 3d 38, 50 (D.D.C.

12

2017) ("Because there is national interest in the enforcement of federal antitrust laws, no single jurisdiction can truly claim a uniquely particularized interest in them."). And because Plaintiffs seek to enforce such laws—ones that "are not meant to be 'localized'" but rather are "designed to affect the entire nation"—this factor weighs against transfer. *Chamber of Com.*, 105 F.4th at 308. Plaintiffs' suit also vindicates local interests: it redresses harms to X, a Texas resident, *see supra* Part I.A; and protects Fort Worth's recent efforts to attract AI business from the consequences of Defendants' illegal deal, *see supra* Part I.D. Accordingly, this District and Division have localized interests. This factor weighs against transfer.

***Administrative difficulties from court congestion***. Court congestion does not justify transfer. On the contrary, the Northern District of California—where OpenAI initially implied this case should have been brought—has a higher number of civil filings per judge and a higher overall civil caseload than this District, and civil cases there have a longer median time to resolution.[5] Transfer to that District would only exacerbate court congestion. And as another judge in this District has concluded, whatever congestion this District has—which, again, is less than what the Northern District of California has—is mitigated by the fact that this Court "manages its docket very efficiently." Order, App'x Tab 23, at App. 149. Keeping the case in this Court thus serves the

---

[5] The Northern District of California has 748 civil filings per judge while the Northern District of Texas has 454 filings per judge. *See* App'x Tab 21, at App. 130–31. The overall civil caseload in the Northern District of California is 13,505 cases as compared to the Northern District of Texas's 4,375 cases. *See* App'x Tab 22, at App. 135–36. And the median time to resolution in the Northern District of California is 20.5 months as compared to the 5.8 months in the Northern District of Texas. *See* App'x Tab 19, at App. 121, 123.

public interest in avoiding undue court congestion. *See, e.g.*, *Bennett v. Moran Towing Towing Corp.*, 181 F. Supp. 3d 393, 401 (S.D. Tex. 2016) (denying a motion to transfer where the transferee court had a median time to trial that was over 10 months longer); *Uniloc USA, Inc. v. Distinctive Dev. Ltd.*, 964 F. Supp. 2d 638, 651 (E.D. Tex. 2013) (finding difference of six months in time to trial weighed against transfer to the Northern District of California).

*The Court's familiarity with the governing law and conflict-of-law issues.* The remaining public-interest factors are neutral and do not favor transfer. This case involves federal law and state law without any "exceptionally arcane features" that "are likely to defy comprehension" by a judge sitting elsewhere. *In re TikTok, Inc.*, 85 F.4th 352, 365 (5th Cir. 2023) (citation omitted). Thus, this District's familiarity with the governing law is neutral.

\* \* \*

None of the private- or public-interest factors or OpenAI's stray reference to other cases pending in California support transfer to any other court. Those unrelated cases involve different parties and conduct from this one, and tellingly, neither Apple nor OpenAI has moved to transfer based on them even when given an opportunity to do so.

## CONCLUSION

It has been sixteen months since Apple and OpenAI announced their illegal deal that granted ChatGPT exclusive access to prompts from iPhone users and advantages over its competition in the App Store. Compl. ¶ 9. Over those sixteen months, Defendants have leveraged each other's monopoly power through this arrangement to push out competition. *See id*. at ¶ 155.

14

Time is running out to stop Defendants' exclusionary conduct before competition is forever harmed. This District and this Division, with a proven track record of efficient and effective case resolution, is therefore the best venue to vindicate Defendants' wrongs. Not only is this the forum choice of a home-state plaintiff—and thus one where witnesses and evidence likely reside—but this case also reflects issues of significant home-state interest given the local community's recent investments in AI. Nor has any Defendant filed a motion contesting this venue as improper. The Court should decline to transfer this case.

Dated: October 8, 2025

Respectfully submitted,

/s/ *Bradley Justus*
_____
Bradley Justus*
DC Bar No. 1007988
AXINN, VELTROP & HARKRIDER LLP
1901 L Street NW
Washington, DC 20036
T: (202) 912-4700
F: (202) 912-4701
bjustus@axinn.com

Caroline P. Boisvert*
CT State Bar No. 441323
AXINN, VELTROP & HARKRIDER LLP
90 State House Square
Hartford, CT 06103
T: (860) 275-8100
F: (860) 275-8101
cboisvert@axinn.com

*admitted *pro hac vice*

/s/ *Craig M. Reiser*
_____
Craig M. Reiser*
NY State Bar No. 4886735
Scott A. Eisman*
NY State Bar No. 4905287
Eva Yung*
NY State Bar No. 5497300
Christopher Erickson*
NY State Bar No. 5800628
AXINN, VELTROP & HARKRIDER LLP
630 Fifth Avenue, 33rd Floor
New York, NY 10111
T: (212) 728-2200
F: (212) 728-2201
creiser@axinn.com
seisman@axinn.com
eyung@axinn.com
cerickson@axinn.com

/s/ *Alex More*
_____
Alex More
TX State Bar No. 24065789
Monica E. Gaudioso
TX State Bar No. 24084570
Robert C. Rowe
TX State Bar No. 24086253
CARRINGTON, COLEMAN, SLOMAN &
BLUMENTHAL, L.L.P.
901 Main Street, Suite 5500
Dallas, TX 75202
T: (214) 855-3000
F: (214) 580-2641
amore@ccsb.com
mgaudioso@ccsb.com
rrowe@ccsb.com

*Attorneys for Plaintiffs X Corp. and X.AI LLC*

16

## <u>CERTIFICATE OF SERVICE</u>

I certify that on October 8, 2025, I electronically transmitted the foregoing document to the

Clerk of Court using the ECF system for filing. A notice of electronic filing was transmitted to all

ECF registrants of record.

*/s/ Craig M. Reiser*
Craig M. Reiser