**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| X CORP. and X.AI LLC, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 4:25-cv-00914-P |
| | § | |
| APPLE INC., OPENAI, INC., OPENAI, L.L.C., | § | |
| and OPENAI OPCO, LLC, | § | |
| | § | |
| Defendants. | § | |

**BRIEF OF DEFENDANT APPLE INC.**
**IN RESPONSE TO PLAINTIFFS' BRIEF REGARDING VENUE**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................ 1

ARGUMENT .................................................................................................................................. 1

I.      Plaintiffs Fail to Connect this Case to the Fort Worth Division. ...................................... 1

II.     Transfer at this Stage Would Nonetheless Undermine, Rather than Promote, the
        Interest of Justice and the Convenience of the Parties. ........................................................ 3

CONCLUSION ................................................................................................................................ 6

## INTRODUCTION

Plaintiffs fail to identify any factual nexus between this case and the Fort Worth Division of the Northern District of Texas. Plaintiffs point to connections between Fort Worth and the artificial intelligence industry in general—but those connections have nothing to do with the parties or events at issue here. And Plaintiffs' references to OpenAI's data center in Abilene and X Corp.'s headquarters in Bastrop (which is in the *Western* District of Texas) are irrelevant to this Court's request for an explanation about this case's connection to Fort Worth.

Nonetheless, transfer is a matter of discretion, and under the unique circumstances presented by Plaintiffs' claims and the current stage of these proceedings, transfer at this juncture would serve neither "the interest of justice" nor "the convenience of parties and witnesses." 28 U.S.C. § 1404(a). As Defendants' motions to dismiss explain, *see* Dkts. 36–38, 40–42, Plaintiffs' case is based on demonstrably incorrect allegations and fundamental legal defects. It is therefore meritless whether litigated in this Court or any other. And even if the case were to survive the motions to dismiss, any discovery required to litigate it should be limited given that Apple and OpenAI's agreement is expressly *non*-exclusive. Thus, where this particular case is litigated will not materially affect the convenience of the parties and the witnesses, and so it need not be moved elsewhere. Rather, this Court is well-positioned to dispose of the case justly and expeditiously to conserve judicial and party resources and avoid needlessly prolonging a lawsuit that has no basis in law or fact.

## ARGUMENT

### I.    Plaintiffs Fail to Connect this Case to the Fort Worth Division.

The Court ordered Plaintiffs to "explain whether the Fort Worth Division of the United States District Court for the Northern District of Texas is the correct venue" and to "explain the case's connection to the division." Dkt. 44. Plaintiffs have scrupulously avoided doing so because

they cannot: no such connection exists. Instead, the "only thing connecting this case" to the Fort Worth Division is Plaintiffs' "decision to file suit" here. *In re TikTok, Inc.*, 85 F.4th 352, 366 (5th Cir. 2023).

To start, Plaintiffs' discussion of Fort Worth's efforts to attract artificial intelligence companies and the development of a "Silicon Prairie" is not relevant to the alleged claims. Dkt. 45 at 7 ("Pls.' Br."). Plaintiffs point only to two investments in manufacturing facilities in Fort Worth by Wistron and Adom Industries, neither of which is a party to this case or even a participant in Plaintiffs' alleged AI chatbot or smartphone markets. *Id.*[1]

As for considerations that *are* relevant to this case, Plaintiffs muster only that X Corp. "is a Texas resident" and that "OpenAI established and recently opened a new AI data center in this District." *Id.* at 3, 7. But neither of these facts connects the case to the Fort Worth Division. Plaintiffs fail to mention that X Corp.'s headquarters are in Bastrop, which is in the *Western* District of Texas. Dkt. 1 ¶ 20 ("Compl."). And they likewise omit that OpenAI's data center—even assuming it is somehow relevant to this case—is in the *Abilene* Division. *Id.* ¶ 28.

X Corp.'s Terms of Service are likewise irrelevant. On their face, those Terms apply only to "disputes related to or arising from" use of and content on the X platform. Dkt. 46 at App. 33. But this case is about Apple's agreement with OpenAI to benefit users by integrating ChatGPT into Apple Intelligence; it has nothing to do with the use of or content on X's platform, let alone a "dispute related to or arising from" X's platform. Plaintiffs nevertheless attempt to manufacture a

---

[1] The "Silicon Prairie," moreover, extends far beyond the Fort Worth area; it includes "cities across the Midwest, from Des Moines to Kansas City, to Lincoln." *See "Silicon Prairie," America's New Entrepreneurial Frontier*, CBS NEWS (Feb. 25, 2016), https://www.cbsnews.com/news/silicon-prairie-great-plains-midwest-startup-tech-companies-entrepreneurs; *see also* Austin Mac Nab, *'Silicon Prairie': Why the Midwest Is Becoming a Thriving Hub for Fintechs*, FORBES (Feb. 23, 2023), https://www.forbes.com/councils/forbesfinancecouncil/2023/02/23/silicon-prairie-why-the-midwest-is-becoming-a-thriving-hub-for-fintechs.

2

connection between this case and X's Terms by pointing to an extraneous paragraph of their complaint, which quotes a single X post by Apple's CEO stating that Apple Intelligence is "built to protect user privacy at every step." Compl. ¶ 99. But that isolated post is not a basis for Plaintiffs' antitrust claims and so does not make this case a "dispute[] related to or arising from" the X platform. Dkt. 46 at App. 33. And even if the post were relevant, X's Terms of Service refer only to the Northern District of Texas generally, not Forth Worth specifically. *Id.*

Finally, Plaintiffs note Defendants' nationwide sales of their products and services. Pls.' Br. 5–6. But once more, those nationwide sales do not establish a unique factual nexus between this case and the Fort Worth Division. Regardless, this case is about the integration of ChatGPT into Apple Intelligence, not iPhone or ChatGPT sales to end users. Indeed, Plaintiffs have not even sued as iPhone consumers or competitors—a reason why they lack antitrust standing to bring their claims against Apple in the first place. *See* Dkt. 37 at 22–24. And Plaintiffs have not alleged or shown any connection between the Apple-OpenAI agreement itself and the Fort Worth Division.

In sum, Plaintiffs failed to demonstrate the case's connection to Fort Worth as the Court's order required.

## II.     Transfer at this Stage Would Nonetheless Undermine, Rather than Promote, the Interest of Justice and the Convenience of the Parties.

Although Plaintiffs had no business filing this case in this Division, transfer is not warranted under the specific and unique circumstances here. Given the insurmountable flaws in Plaintiffs' case, the substantial resources Defendants have already devoted to defending it in this Court, and the limited discovery—if any—that will be necessary to resolve it, transfer would serve only to prolong the litigation unnecessarily and waste judicial resources. Further, transfer at this stage would penalize and impose additional costs on *Defendants* for Plaintiffs' gamesmanship—

all without material benefit to the convenience of the parties or witnesses. The confluence of those considerations weighs against transfer in this case.

*First*, because this case should be dismissed regardless of the forum, transfer is unnecessary to serve "the convenience of parties and witnesses" or "the interest of justice," 28 U.S.C. § 1404(a). The grounds for dismissal here, explained in the motions to dismiss Apple and OpenAI have already filed, *see* Dkts. 36–38, 40–42, are straightforward. Plaintiffs' claims are premised on the notion that the agreement between Apple and OpenAI is "exclusive." But Plaintiffs alleged no facts showing exclusivity—nor could they have, because the agreement is expressly *not* exclusive. All Plaintiffs have alleged—confirmed again in their venue brief (at 1)—is that Apple integrated with ChatGPT first. As such, Plaintiffs essentially argue that Apple needed to simultaneously integrate not just Plaintiffs' chatbot, Grok, but *all* competing chatbots if it wanted to integrate any chatbot—without regard to cost, feasibility, efficiency, proposed commercial terms, or safety or reputational concerns. This theory has no basis in antitrust law, and it would harm innovation and the very consumers that the antitrust laws are meant to protect. *See* Dkt. 37 at 10–13; Dkt. 41 at 9–12.

Nor have Plaintiffs plausibly alleged that the integration of ChatGPT into Apple Intelligence somehow excludes other chatbots from "the market," as Plaintiffs claim. Pls.' Br. 1. Plaintiffs' complaint itself acknowledges that there are many ways for users to access generative AI chatbots other than through Apple Intelligence-enabled prompts on a subset of iPhone models, including on web browsers and apps on iPhones, in addition to tablets, computers, and non-Apple mobile phones. Thus, Plaintiffs' claim in their venue brief (at 6) that OpenAI receives an "insurmountable volume" of prompts through Apple Intelligence that prevents other AI chatbots from competing is facially implausible. *See* Dkt. 37 at 16–17; Dkt. 41 at 12–15. And as for the

4

other market in which Plaintiffs allege Defendants have harmed competition—a market for "smartphones"—Plaintiffs have not plausibly alleged *any* non-speculative harm. *See* Dkt. 37 at 13–16.

Plaintiffs have alleged neither an exclusive agreement nor harm to competition—each required elements of their claims. And even if they had alleged both, their claims would still fail for other reasons, including lack of antitrust standing. *See id.* at 17–25; Dkt. 41 at 15–21. Because Defendants have already briefed dispositive motions showing that Plaintiffs' allegations fail to state a viable antitrust claim under controlling Fifth Circuit precedent, this Court has grounds to dismiss without burdensome discovery. There is therefore little reason to transfer this case, as having Defendants restart the dismissal process in a new court would only frustrate and delay an "easy, expeditious and inexpensive" resolution. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (citation modified).

In addition to briefing and preparing their motions to dismiss, Defendants have already made other investments to defend this case in this Court. Pursuant to the Court's order, for instance, Defendants have prepared a joint status report, participated in a face-to-face scheduling conference with Plaintiffs, and begun drafting and negotiating a confidentiality agreement and other discovery protocols with Plaintiffs. *See* Dkt. 43. Plaintiffs have also already served Defendants with a set of discovery requests. It would undermine an expeditious resolution of the case if Defendants have to restart those efforts in another forum, with potentially different rules and requirements, because of Plaintiffs' filing choices. *See Volkswagen*, 545 F.3d at 315.

Last, even if Plaintiffs' complaint were to survive Defendants' motions to dismiss, the discovery necessary to resolve the case should be limited and therefore not particularly burdensome for the out-of-state parties and witnesses. That is because, as noted above, the viability

5

of Plaintiffs' entire case turns on the alleged exclusivity of a single agreement that is non-exclusive on its face. Any discovery required to reveal that case-dispositive fact should be narrow and straightforward. As a result, though there are likely more convenient fora for these parties than this Court, transferring this case at this stage would unlikely deliver all of the usual practical benefits of a forum with a closer connection to the case and parties. *See id.* (describing factors regarding ease of obtaining evidence and convenience of witnesses).

*    *    *

Apple recognizes that venue is not a continental breakfast from which plaintiffs can pick and choose where to file, and that a lack of a factual nexus to the forum is often grounds for transfer. But this case is the exception. Here, Plaintiffs' claims would be squarely without merit in any forum, and transfer would yield no practical benefits in terms of discovery or convenience to the parties.

In these unique circumstances, this Court is well positioned to bring this case to a just and expeditious resolution. Plaintiffs themselves emphasize that "[t]his District is one of the fastest in the nation at resolving civil litigation." Pls.' Br. 6. Plaintiffs' focus on speed rather than factual connections to the forum lays bare their true objective to seek a litigation advantage. But Apple agrees that a speedy resolution is important here to avoid prolonging meritless litigation and wasting judicial and party resources. For that reason and the others Apple has explained, Apple respectfully submits that this Court deciding the case would best serve the interest of justice and the convenience of the parties and witnesses.

## CONCLUSION

For the foregoing reasons, although Plaintiffs fail to identify a factual nexus between this case and the Fort Worth Division of the Northern District of Texas, the Court should exercise its discretion not to transfer this case.

6

Dated: October 15, 2025

Respectfully submitted,

/s/ Dee J. Kelly, Jr.
Dee J. Kelly, Jr.
State Bar No. 11217250
dee.kelly@kellyhart.com
Julia G. Wisenberg
State Bar No. 24099146
julia.wisenberg@kellyhart.com
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, TX 76102
Telephone: (817) 332-2500
Facsimile: (817) 878-9280

Emily Johnson Henn (admitted *pro hac vice*)
ehenn@cov.com
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306
Telephone: (650) 632-4700

Henry Liu (admitted *pro hac vice*)
hliu@cov.com
Lauren Willard Zehmer (admitted *pro hac vice*)
lzehmer@cov.com
Carol Szurkowski Weiland (admitted *pro hac vice*)
cweiland@cov.com
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Telephone: (202) 662-6000
Facsimile: (202) 662-6302

**ATTORNEYS FOR DEFENDANT APPLE INC.**

7

## <u>CERTIFICATE OF SERVICE</u>

I certify that on October 15, 2025, I served the foregoing document electronically in accordance with the Federal Rules of Civil Procedure.

*/s/ Julia G. Wisenberg*
Julia G. Wisenberg
