# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

|  |  |
|---|---|
| X CORP. and X.AI LLC, | |
|     Plaintiffs, | |
|     v. | **Civil Action No. 4:25-cv-00914-P** |
| APPLE INC.; OPENAI, INC.; OPENAI, L.L.C.; and OPENAI OPCO, LLC, | |
|     Defendants. | |

## APPENDIX TO PLAINTIFFS X CORP. AND X.AI LLC'S
## OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS AND BRIEF IN SUPPORT

Bradley Justus
AXINN, VELTROP & HARKRIDER LLP
1901 L Street NW
Washington, DC 20036

Caroline P. Boisvert
AXINN, VELTROP & HARKRIDER LLP
90 State House Square
Hartford, CT 06103

Judd E. Stone II
Christopher D. Hilton
STONE | HILTON PLLC
600 Congress Ave., Suite 2350
Austin, TX 78701

Craig M. Reiser
Scott A. Eisman
Eva Yung
Christopher Erickson
AXINN, VELTROP & HARKRIDER LLP
630 Fifth Avenue, 33rd Floor
New York, NY 10111

Alex More
Monica E. Gaudioso
Robert C. Rowe
CARRINGTON, COLEMAN, SLOMAN
& BLUMENTHAL, L.L.P.
901 Main Street, Suite 5500
Dallas, TX 75202

APPENDIX TO PLAINTIFFS X CORP. AND X.AI LLC'S
OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS AND BRIEF IN SUPPORT

| Tab No. | Pages of Brief | Description | Tiny URL | Appendix Pages(s) |
|---|---|---|---|---|
| Tab 1 | 1-2 | August 25, 2025 X Post by the X account "Herbert hovenkamp" | https://tinyurl.com/mr2j8psx | App. 7-8 |
| Tab 2 | 2 | October 9, 2025 X Post by the X account "Attorney General Ken Paxton" | https://tinyurl.com/y9k22dp9 | App. 9-10 |
| Tab 3 | 4 | September 18, 2025 Keynote Address by Assistant Att'y Gen. Gail Slater at Fordham Competition Law Institute's 52nd Annual Conference on International Antitrust Law and Policy | https://tinyurl.com/yy53j5wh | App. 11-21 |
| Tab 4 | 24 | September 16, 2025 9to5Mac article titled *Google Pokes a Banana-Shaped Hole in Musk's Claims of Apple's Bias Towards OpenAI* | https://tinyurl.com/mrxzkkbs | App. 22-26 |

Dated: October 21, 2025

Respectfully submitted,

*/s/ Bradley Justus*

Bradley Justus*
DC Bar No. 1007988
AXINN, VELTROP & HARKRIDER LLP
1901 L Street NW
Washington, DC 20036
T: (202) 912-4700
F: (202) 912-4701
bjustus@axinn.com

Caroline P. Boisvert*
CT State Bar No. 441323
AXINN, VELTROP & HARKRIDER LLP
90 State House Square
Hartford, CT 06103
T: (860) 275-8100
F: (860) 275-8101
cboisvert@axinn.com

*/s/ Craig M. Reiser*

Craig M. Reiser*
NY State Bar No. 4886735
Scott A. Eisman*
NY State Bar No. 4905287
Eva Yung*
NY State Bar No. 5497300
Christopher Erickson*
NY State Bar No. 5800628
AXINN, VELTROP & HARKRIDER LLP
630 Fifth Avenue, 33rd Floor
New York, NY 10111
T: (212) 728-2200
F: (212) 728-2201
creiser@axinn.com
seisman@axinn.com
eyung@axinn.com
cerickson@axinn.com

*/s/ Judd E. Stone II*

Judd E. Stone II
TX State Bar No. 24076720
Christopher D. Hilton
TX State Bar No. 24087727
STONE | HILTON PLLC
600 Congress Ave., Ste. 2350
Austin, TX 78701
T: (737) 465-3897
judd@stonehilton.com
chris@stonehilton.com

*admitted *pro hac vice*

*/s/ Alex More*

Alex More
TX State Bar No. 24065789
Monica E. Gaudioso
TX State Bar No. 24084570
Robert C. Rowe
TX State Bar No. 24086253
CARRINGTON, COLEMAN, SLOMAN &
BLUMENTHAL, L.L.P.
901 Main Street, Suite 5500
Dallas, TX 75202
T: (214) 855-3000
F: (214) 580-2641
amore@ccsb.com
mgaudioso@ccsb.com
rrowe@ccsb.com

*Attorneys for Plaintiffs X Corp. and X.AI
LLC*

**CERTIFICATE OF SERVICE**

I certify that on October 21, 2025, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF system for filing. A notice of electronic filing was transmitted to all ECF registrants of record.

*/s/ Craig M. Reiser*
Craig M. Reiser

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

|  |  |
|---|---|
| X CORP. and X.AI LLC,<br><br>    Plaintiffs,<br><br>    v.<br><br>APPLE INC.; OPENAI, INC.; OPENAI,<br>L.L.C.; and OPENAI OPCO, LLC,<br><br>    Defendants. | **Civil Action No. 4:25-cv-00914-P** |

**DECLARATION OF CHRISTOPHER ERICKSON
IN SUPPORT OF PLAINTIFFS X CORP. AND X.AI LLC'S
<u>OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS AND BRIEF IN SUPPORT</u>**

I, Christopher Erickson, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1.      I am an attorney admitted to practice *pro hac vice* before this Court, and I am an associate at the law firm of Axinn, Veltrop & Harkrider LLP, counsel for Plaintiffs X Corp. ("X") and X.AI LLC ("xAI") in the above-captioned matter. I submit this declaration in support of Plaintiffs' Opposition to Defendants' Motions to Dismiss and Brief in Support. The matters in this declaration are within my personal knowledge and are true and correct.

2.      Attached hereto as Tab 1 is a true and correct copy of a screen capture of an X post by the X account "Herbert hovenkamp" on August 25, 2025, retrieved on October 15, 2025.

3.      Attached hereto as Tab 2 is a true and correct copy of a screen capture of an X post by the X account "Attorney General Ken Paxton" on October 9, 2025, retrieved on October 15, 2025.

4.      Attached hereto as Tab 3 is a true and correct copy of a transcript of Assistant Attorney General Gail Slater's Keynote Address at Fordham Competition Law Institute's 52nd Annual Conference on International Antitrust Law and Policy, delivered on September 18, 2025.

5.      Attached hereto as Tab 4 is a true and correct copy of a news article titled *Google Pokes a Banana-Shaped Hole in Musk's Claims of Apple's Bias Towards OpenAI*, published by 9to5Mac on September 16, 2025.

Dated: October 21, 2025                    Respectfully submitted,

                                           */s/ Christopher Erickson*
                                           Christopher Erickson

# **TAB 1**



# **TAB 2**



# **TAB 3**

10/6/25, 3:20 PM          Office of Public Affairs | Assistant Attorney General Gail Slater Delivers Keynote at Fordham Competition Law Institute's 52nd Annu...

Case 4:25-cv-00914-P     Document 64     Filed 10/21/25     Page 12 of 26     PageID 689



**SPEECH**

# Assistant Attorney General Gail Slater Delivers Keynote at Fordham Competition Law Institute's 52nd Annual Conference on International Antitrust Law and Policy

Thursday, September 18, 2025

**Location**
150 W 62nd St
New York, NY 10023
United States

*Remarks as Prepared for Delivery, "Winning the Race in Artificial Intelligence Through Real Competition"*

Thank you for the kind introduction. Thanks to the organizers and to those who have traveled from near and far to exchange ideas at this conference. It's always a pleasure to see the depth of expertise and the breadth of interest in competition policy gathered in one place, and I am looking forward to hearing the debate. Of course, much like debate in general, debate about competition policy takes courage. As my grandmother liked to say, debate requires us to take a step back and recognize that God gave us two ears and one mouth for a reason. I wish us all the courage to listen to one another, because as C.S. Lewis wrote in the Screwtape Letters, "Courage is not simply one of the virtues, but the first of every virtue at the testing point."

**Introduction**

We find ourselves in the midst of a transformative time. Artificial intelligence is the new technological frontier. Its power promises to usher in a new era of technological, industrial, and informational change. Generative AI will revolutionize every sector of the economy and change how every business operates.

The tremendous potential of AI calls upon us to seize this moment with courage. President Trump and Vice President Vance have made it a priority to maintain AI dominance as part of the economic dynamism that is core to our success.[1]  The success of the American economy is a testament to the fact that our free-market system works. Prioritizing innovation, supporting new technologies and startups, keeping the markets open for competition — these have long been the secret sauce of Silicon Valley and the cornerstones of American economic success. And these same core principles are what will help America lead the global race for AI.

The Trump-Vance Administration issued America's AI Action Plan at the White House in July, outlining the three pillars of our administration strategy: innovation, infrastructure, and international diplomacy and security.[2] Today, I'd like to focus on the first pillar, accelerating AI innovation. The antitrust laws have a lot to offer the innovation pillar, which is a core element of competition. Wherever there is a need for innovation, there is a need for competition, and this is where antitrust finds a home.

The good news is that the Antitrust Division is already fighting to keep AI markets competitive, and we are winning key battles in that arena. Earlier this month, the U.S. District Court for the District of Columbia issued its remedies decision in the Google Search case.[3] For more than a decade, Google illegally monopolized search markets, shutting out competitors, reducing innovation, and taking away choice from American consumers. In other words, the free market was frozen in place and innovation was therefore stymied. In the remedies decision, the district court held that "Google cannot use the same anticompetitive playbook" for GenAI as it did for search.[4] The judge ordered Google to share competitively critical data with qualified competitors, a group that the court made clear includes AI companies.[5] These data remedies, along with requirements that Google syndicate its search results to these competitors, are already setting the foundation for a more innovative and competitive AI industry.

## Promoting AI Innovation Through Antitrust

As the Google Search example demonstrates, antitrust enforcement can help pave the way for innovation, dynamic competition, and development in AI. Let me explain how this works:

*First*, antitrust is, of course, the law of competition. A competitive environment is a prerequisite for innovation. As the AI Action Plan recognizes, it is critical that we "create the conditions where private-sector-led innovation can flourish."[6] Those conditions are those that incentivize and reward innovators and entrepreneurs. The story of American economic success is the story

App. 13

10/6/25, 3:20 PM                Office of Public Affairs | Assistant Attorney General Gail Slater Delivers Keynote at Fordham Competition Law Institute's 52nd Annu…

Case: 4:25-cv-00914-P    Document 64    Filed 10/21/25    Page 14 of 26    PageID 691

of innovative, disruptive Little Tech that grows up to become tomorrow's Big Tech.[7] Tomorrow's AI advances will be seeded by today's innovators.

Vice President Vance — who I had the pleasure of working for when he was Senator — put it best in Paris earlier this year: "This administration will not be the one to snuff out the start-ups and the grad students producing some of the most groundbreaking applications of artificial intelligence. Instead, our laws will keep Big Tech, Little Tech, and all other developers on a level playing field."[8] The antitrust laws are there to do just that.

Antitrust enforcement focuses on creating a level playing field for businesses big and small and ensuring that market incumbents do not unfairly hinder newcomers and startups. This is always important, but it is crucial where the technology is still developing rapidly. As the D.C. Circuit said in *Microsoft* — the last great monopolization case before the Google Search and Google Ad Tech cases — "[I]t would be inimical to the purpose of the Sherman Act to allow monopolists free reign to squash nascent, albeit unproven, competitors at will — particularly in industries marked by rapid technological advance and frequent paradigm shifts."[9] Antitrust has a framework that is uniquely equipped to help protect nascent competitors.[10]

*Second*, competition is also the key for opening up choices for consumers. Generative AI (GenAI) will have a profound impact on how we gather information, how we engage with media, and how our children learn. As Justice Thomas observed in 2021, today's digital platforms exert "unprecedented . . . concentrated control of so much speech in the hands of a few private parties."[11] The concentration of control created by AI may well surpass that. How AI is built — particularly at the foundation model level — can have the effect of imposing broad, implicit preferences over a wide swath of GenAI products. As the AI Action Plan correctly notes, this creates a significant risk of top-down ideological bias.[12]

How do we counter this risk of bias? The best way is to make sure that there is competition. Economic competition and viewpoint competition in the marketplace of ideas are closely intertwined. In a recent statement of interest, the Antitrust Division rejected the view that the antitrust laws play no part in protecting viewpoint competition in news markets.[13] Instead, antitrust can account for behavior that shuts out alternative, competing viewpoints. So too with AI. Ensuring that the AI markets are open to competition means that rivals with different approaches can compete on the merits. The availability of different AI systems and products can ensure that consumers have choices to pick from, safeguarding the free flow of information in our democracy. Different viewpoints can rise to the top in the marketplace of ideas.

*Third*, antitrust enforcement is a targeted tool suited for emerging fields like AI. In this regard, I like to compare the sledgehammer of regulation to the scalpel of antitrust. Premature regulation can be particularly harmful in incipient industries at the early stages of development because it imposes broad, *ex ante* rules, and these rules have the effect of limiting the direction of innovation across the entire industry.[14] From a competition standpoint, regulations can

10/6/25, 3:20 PM    Office of Public Affairs | Assistant Attorney General Gail Slater Delivers Keynote at Fordham Competition Law Institute's 52nd Annu…

Case 4:25-cv-00914-P    Document 64    Filed 10/21/25    Page 15 of 26    PageID 692

further entrench incumbent players, because only those incumbents can afford to pay the costs of compliance.[15] In fact, many powerful monopolists and incumbents lobby for regulations that raise barriers to entry and that ultimately harm market entrants and small businesses.[16]

By contrast, antitrust is law enforcement. It only intervenes *ex post*, in response to where illegal conduct has taken place, and it targets only specific conduct by specific bad actors on a case-by-case basis, rather than applying a one-size-fits-all approach to an entire industry. Such targeted enforcement strikes the right balance in emerging fields by finetuning the competitive conditions to make sure that the incentives are aligned for innovation to flourish. And if done correctly, timely, limited antitrust intervention can stave off the need for broad regulatory interference by letting the free market do what it does best.[17]

### Ensuring the Competitiveness of AI Markets

So how does antitrust ensure that AI markets are competitive? To promote innovation, antitrust enforcement must focus on preventing exclusionary conduct over the resources that are needed to build competitive AI systems and products.

Building competitive models requires resources at every layer, from the infrastructure layer, to the foundation models, to the deployment of user-facing applications. The competitive dynamics at each layer of the AI stack and how they interrelate, with a particular eye toward exclusionary behavior that forecloses access to key inputs and distribution channels, are legitimate areas of antitrust inquiry.

Innovation is supported by the availability of key inputs, and so one important question is whether foundation models are open or closed. As our AI Action Plan rightly recognizes, open-source and open-weight AI models that are made available to developers "have unique value for innovation because startups can use them flexibly without being dependent on a closed model provider."[18] Of course, a truly open-source model must be one that is not unilaterally maintained by a single vendor that exerts unwarranted influence and imposes restrictions. If done correctly, a truly open model can promote competition by making available a key piece of input into AI products. The ability to build on open foundation models to develop products removes a significant barrier to entry for startups and Little Tech.[19]

At another layer, an enormously consequential input for AI innovation is data. There is no question that AI intensifies the need for data as a critical input into progress in AI development. Enormous troves of quality data are needed to train, develop, and improve GenAI and LLMs. LLMs are pre-trained on large amounts of text, creating a base, or foundation model. The LLM's ability to predict the next item in a sequence depends on both the quality and the quantity of the data that it is trained on.

The centrality of data is not a new phenomenon in itself. Over the years, we have seen data grow in importance in the digital industries. Search is a good example of this. In finding Google liable,

10/6/25, 3:20 PM          Office of Public Affairs | Assistant Attorney General Gail Slater Delivers Keynote at Fordham Competition Law Institute's 52nd Annu…

Case 4:25-cv-00914-P          Document 64          Filed 10/21/25          Page 16 of 26          PageID 693

the district court noted that greater query volume yielded valuable user data that enabled Google to attain economies of scale and improve the quality of its search product.[20] Such a data advantage creates a flywheel effect: greater exposure to consumers leads to more data, which enables the product to be even better, which attracts more users, and so on. Companies that can amass and harness the power of big data gain an enormous advantage, while companies who lose out on data are shut out of the market.

These effects are not easy to overcome. That's why the Department of Justice and the plaintiff States asked for robust data sharing and syndication remedies in the Google Search case. And the district court agreed. The court recognized that "[s]earch index quality is critically important not only for traditional search engines, but also for emerging GenAI products,"[21] and that Google's data gave it a key competitive advantage over AI companies like ChatGPT.[22] And so the court imposed data remedies that require Google to provide qualified competitors access to its data and syndication of its search results, so that Google cannot continue to singularly exploit the data advantage it gained from years of illegal conduct. The data that is shared will give competitors — including emerging AI companies — a leg up to overcome the data gap and compete on a more even playing ground. The court was forward-looking, and it made it clear that "Google cannot be permitted to leverage its dominance in general search to the GenAI product space."[23]

While the scale advantages of data are not new, there is every indication that these dynamics will play out in a much bigger way with AI. The prospect of GenAI expands the competitive utility of data across every industry. Think about data on crop yields and local weather enabling more effective agriculture, or health data enabling more effective approaches in insurance. Now every industry is a data industry. As many have observed, data is the new oil. It fuels the engine of progress in every sector of the economy.

The finite amount of publicly available data also means that there will be more and more of a premium on developing proprietary sources of data. Access to high-volume, high-quality, proprietary data is a significant competitive advantage that could prove extremely difficult for competitors to surmount. Strong demands for data may drive the forces of consolidation. For example, vertical integration may become more attractive, especially in industries where downstream businesses may have access to valuable and sensitive data like healthcare data. We may also increasingly see the desire to acquire data, or to deprive rivals of data, play a role in driving transactions.[24]

Finally, I would be remiss not to say a few words about consumer data privacy. Having spent a large chunk of my career at the Federal Trade Commission and at various tech organizations, I am well versed in privacy issues and the intersection between competition and consumer protection. Data privacy is of course an important consideration, especially when data functions as an input into technology. But monopolists may also use privacy concerns as a pretext for gatekeeping data and refusing interoperability. We must closely scrutinize such claims.[25]

App. 16

10/6/25, 3:20 PM          Office of Public Affairs | Assistant Attorney General Gail Slater Delivers Keynote at Fordham Competition Law Institute's 52nd Annu…

Case 4:25-cv-00914-P    Document 64    Filed 10/21/25    Page 17 of 26    PageID 694

Innovation around AI will likely be greater the more that AI products and services and their inputs are able to interoperate with each other.

## Conclusion

In sum, there is a great deal that antitrust law can do to deliver the competition and innovation that will usher in the next golden era of AI. Races are won, and records are broken, through rivals pushing each other to do better — in other words, real competition. We will continue to fight for the competitive conditions needed to support American innovation and dominance in AI. And we will continue to support and play a role as needed in our Administration's AI Action Plan.

Thank you.

[1] Exec. Order No. 14,179, *Removing Barriers to American Leadership in Artificial Intelligence*, 90 Fed. Reg. 8741 (Jan. 23, 2025) ("It is the policy of the United States to sustain and enhance America's global AI dominance in order to promote human flourishing, economic competitiveness, and national security.").

[2] The White House, Winning the Race: America's AI Action Plan 1 (July 2025), https://www.whitehouse.gov/wp-content/uploads/2025/07/Americas-AI-Action-Plan.pdf.

[3] Press Release, US Dep't of Justice, Department of Justice Wins Significant Remedies Against Google (Sept. 2, 2025), https://www.justice.gov/opa/pr/department-justice-wins-significant-remedies-against-google; *see also* Press Release, US Dep't of Justice, Assistant Attorney General Gail Slater Delivers Remarks Before Opening Arguments in Google Search Remedies Trial (Apr. 21, 2025), https://www.justice.gov/opa/speech/assistant-attorney-general-gail-slater-delivers-remarks-opening-arguments-google-search.

[4] *United States v. Google LLC*, No. 20-CV-3010, 2025 WL 2523010, at *48 (D.D.C. Sept. 2, 2025).

[5] *Id.* at *50.

[6] The White House, Winning the Race: America's AI Action Plan 3 (July 2025), https://www.whitehouse.gov/wp-content/uploads/2025/07/Americas-AI-Action-Plan.pdf.

[7] Press Release, US Dep't of Justice, Assistant Attorney General Gail Slater Delivers Keynote Address at the 2025 Georgetown Law Global Antitrust Enforcement Symposium (Sept. 16, 2025), https://www.justice.gov/opa/speech/assistant-attorney-general-gail-slater-delivers-keynote-address-2025-georgetown-law.

[8] *Remarks by the Vice President at the Artificial Intelligence Action Summit in Paris, France,* The American Presidency Project (Feb. 11, 2025), www.presidency.ucsb.edu/documents/remarks-the-vice-president-the-artificial-intelligence-action-summit-paris-france.

[9] *United States v. Microsoft Corp.,* 253 F.3d 34, 79 (D.C. Cir. 2001) (en banc) (per curiam).

[10] *See, e.g.,* US Dep't of Justice & Fed. Trade Comm'n, Merger Guidelines § 2.6 (2023), https://www.justice.gov/atr/2023-merger-guidelines.

[11] *Biden v. Knight First Amend. Inst. at Columbia Univ.,* 141 S. Ct. 1220, 1221 (2021) (Thomas, J., concurring).

[12] The White House, Winning the Race: America's AI Action Plan 4 (July 2025), https://www.whitehouse.gov/wp-content/uploads/2025/07/Americas-AI-Action-Plan.pdf.

[13] Press Release, US Dep't of Justice, Justice Department Files Statement of Interest on Suppression of Competition in the Marketplace of Ideas Through Deplatforming of Rival Viewpoints (July 11, 2025), https://www.justice.gov/opa/pr/justice-department-files-statement-interest-suppression-competition-marketplace-ideas.

[14] *See, e.g.,* Exec. Order No. 14,319, *Preventing Woke AI in the Federal Government,* 90 Fed. Reg. 35389 (July 23, 2025) (recognizing "the Federal Government should be hesitant to regulate the functionality of AI models in the private marketplace"); *see also* Exec. Order No. 14,267, *Reducing Anti-Competitive Regulatory Barriers,* 90 Fed. Reg. 15,629 (Apr. 9, 2025); Press Release, US Dep't of Justice, Justice Department Launches Anticompetitive Regulations Task Force (Mar. 27, 2025), https://www.justice.gov/opa/pr/justice-department-launches-anticompetitive-regulations-task-force.

[15] Press Release, US Dep't of Justice, Assistant Attorney General Gail Slater Delivers First Antitrust Address at University of Notre Dame Law School (Apr. 28, 2025), https://www.justice.gov/opa/speech/assistant-attorney-general-gail-slater-delivers-first-antitrust-address-university-notre.

[16] *See* Press Release, US Dep't of Justice, Justice Department Launches Anticompetitive Regulations Task Force (Mar. 27, 2025), https://www.justice.gov/opa/pr/justice-department-launches-anticompetitive-regulations-task-force.

[17] *See* Press Release, US Dep't of Justice, Assistant Attorney General Makan Delrahim Delivers Keynote Address at American Bar Association's Antitrust Fall Forum (Nov. 16, 2017), https://www.justice.gov/archives/opa/speech/assistant-attorney-general-makan-delrahim-delivers-keynote-address-american-bar ("[A]ntitrust is law enforcement, it's not regulation. At its best, it supports reducing regulation, by encouraging competitive markets that, as a result, require less government intervention. That is to say, proper and timely antitrust enforcement

App. 18

Case 4:25-cv-00914-P    Document 64    Filed 10/21/25    Page 19 of 26    PageID 696

helps competition police markets instead of bureaucrats in Washington, D.C. doing it. Vigorous antitrust enforcement plays an important role in building a less regulated economy in which innovation and business can thrive, and ultimately the American consumer can benefit.").

[18] The White House, Winning the Race: America's AI Action Plan at 4 (July 2025), https://www.whitehouse.gov/wp-content/uploads/2025/07/Americas-AI-Action-Plan.pdf.

[19] *See id.* at 5 (supporting plan to "help drive adoption of open-source and open-weight models by small and medium-sized businesses").

[20] *United States v. Google LLC*, 747 F. Supp. 3d 1, 49-50 (D.D.C. 2024).

[21] *United States v. Google LLC*, No. 20-CV-3010, 2025 WL 2523010, at *67 (D.D.C. Sept. 2, 2025).

[22] *Id.*

[23] *Id.* at *51.

[24] *See, e.g.*, US Dep't of Justice & Fed. Trade Comm'n, Merger Guidelines § 2.9 (2023), https://www.justice.gov/atr/2023-merger-guidelines ("Mergers that involve firms that provide other important inputs to platform services can enable the platform operator to deny rivals the benefits of those inputs. For example, acquiring data that helps facilitate matching, sorting, or prediction services may enable the platform to weaken rival platforms by denying them that data.").

[25] *See Remarks by the Vice President at the Artificial Intelligence Action Summit in Paris, France*, The American Presidency Project (Feb. 11, 2025), www.presidency.ucsb.edu/documents/remarks-the-vice-president-the-artificial-intelligence-action-summit-paris-france ("And I'd ask, if you step back a moment and ask yourself: Who is most aggressively demanding that we — meaning political leaders gathered here today — do the most aggressive regulation?  It is very often the people who already have an incumbent advantage in the market. And when a massive incumbent comes to us asking us for safety regulations, we ought to ask whether that safety regulation is for the benefit of our people or whether it's for the benefit of the incumbent.").

**Speaker**

Assistant Attorney General

**Topic**

10/6/25, 3:20 PM          Office of Public Affairs | Assistant Attorney General Gail Slater Delivers Keynote at Fordham Competition Law Institute's 52nd Annu…

Case 4:25-cv-00914-P     Document 64     Filed 10/21/25     Page 20 of 26     PageID 697

| **ANTITRUST**

**Component**

[Antitrust Division](#)

*Updated September 22, 2025*

# Related Content

---

**PRESS RELEASE**

**Two Companies and Three Executives Indicted for Fraudulently Selling Chinese Forklifts to U.S. Government as "Made in America" and Evading Tariffs**

A federal grand jury in Denver returned an [indictment](#) on August 21, 2025, charging two Denver-area companies and the companies' top executives for defrauding the federal government on sales of...

September 30, 2025

---

**PRESS RELEASE**

**Justice Department, Federal Trade Commission, and Japan Fair Trade Commission Meet in Washington to Continue Their Long History of Engagement**

September 29, 2025

---

**PRESS RELEASE**

## Justice Department and USDA Coordinate to Protect Competition in Agricultural Inputs

The Justice Department's Antitrust Division and the United States Department of Agriculture (USDA) announced a [Memorandum of Understanding](#) (MOU) formalizing a partnership to protect competition in key agricultural markets such…

September 29, 2025

---



**Office of Public Affairs**

U.S. Department of Justice

950 Pennsylvania Avenue, NW

Washington DC 20530

Office of Public Affairs Direct Line

202-514-2007

Department of Justice Main Switchboard

202-514-2000

**TAB 4**



World-Class Reporting and Expert Analysis.

Keep up with the stories that matter most. Limited-time offer. **$1 per week.**

SUBSCRIBE NOW

WSJ

GOOGLE GEMINI

# Google pokes a banana-shaped hole in Musk's claims of Apple's bias towards OpenAI

Marcus Mendes | Sep 16 2025 - 3:15 pm PT | 💬 14 Comments



A few weeks ago, a frustrated Elon Musk sued Apple, claiming that the company's pro-OpenAI bias made it impossible for other AI companies to rise to the top of the App Store. This week, Google Gemini became the latest app to contradict his claims.

When Musk first suggested that Apple's ties to OpenAI were unfairly impacting App Store rankings, xAI had just made Grok 4 free for all users, and had just made a splash with the release of controversial AI companions.



Learn more

Despite an App Store ranking bump, in which Grok climbed to fifth place overall and second in the Productivity category, it appears that Musk was hoping for more:



Elon Musk ✓ 🅧
@elonmusk · Follow

Apple is behaving in a manner that makes it impossible for any AI company besides OpenAI to reach #1 in the App Store, which is an unequivocal antitrust violation.

## Featured
from 9TO5Mac



Apple unveils new 14-inch MacBook Pro powered by M5 chip
Chance Miller | Oct 15 2025

Apple launches new iPad Pro with M5 chip, C1X modem
Benjamin Mayo | Oct 15 2025

Apple unveils M5 chip, the next generation of Apple silicon
Ryan Christoffel | Oct 15 2025

Apple Vision Pro gets the new M5 chip, Dual Knit Band, 120Hz, more
Marcus Mendes | Oct 15 2025



COMCAST BUSINESS

See why we power more businesses than anyone.

GET IT NOW    (855) 319-0164

xAI will take immediate legal action.



A few days later, Musk actually filed the lawsuit and noted, among other things, that Apple had never featured Grok in its App Store editorial content, a claim Apple had already disputed:

> The App Store is designed to be fair and free of bias. We feature thousands of apps through charts, algorithmic recommendations, and curated lists selected by experts using objective criteria. Our goal is to offer safe discovery for users and valuable opportunities for developers, collaborating with many to increase app visibility in rapidly evolving categories.

While not explicitly mentioning it, Apple's "safe discovery" argument likely referred to a recent episode in which Grok generated harsh antisemitic answers, as well as a brief period during which the chatbot consulted Musk's opinions on divisive issues before formulating its final response.

Even before Apple's response, X users were quick to point out that DeepSeek and Perplexity had topped the App Store rankings after Apple's partnership with OpenAI. Today, Google Gemini did just that as well, thanks to the success of its new image model, officially called Gemini 2.5 Flash Image, but better known as Nano Banana.

## Nano Banana

Google's new image generation model has been making the rounds for the past few weeks, mostly due to its accuracy in generating new images from references prompted by the user.



While many images still carry the distinctive AI look that many have grown accustomed to instantly recognizing, its results are still remarkable, compared with other image models out there.

And because of this above-average accuracy in generating new images from photos uploaded by the user, the model has gone viral in social media, which in turn boosted Google Gemini's app to the top of the App Store, while OpenAI's ChatGPT sits in second.





As with past overnight surges in App Store popularity, the Google Gemini app is likely to lose momentum in the coming days. Still, its success added to the dissonance in Musk's chief claim, and showed that no App Store feature can match genuine user interest.

Do you think Apple gives OpenAI an unfair advantage? Let us now in the comments.

## Accessory deals on Amazon

- AirPods Pro 3 – Preorder
- Apple AirTag 4 Pack
- Apple AirTag
- Beats USB-C to USB-C Woven Short Cable
- Wireless CarPlay adapter



*FTC: We use income earning auto affiliate links.* **More.**







## Conversation 14 Comments



Sort by **Best** ∨

**M**  **MaxM**
16 September, 2025
He is the type of person who blames society for his shortcomings.
Reply · ⌃ 13 ⌄ · Share

**+**
**EXPAND**

## Popular in the Community



Bloomingdale's
Theory Women's Slim Pants - Gray - Size 2 - New Charcoal Melange

AdChoices ▷                Sponsored

---

## Guides

  **Google Gemini**

---

## Author



**Marcus Mendes**  |  🧵 https://www.threads.com/mvcmendes

Marcus Mendes is a Brazilian tech podcaster and journalist who has been closely following Apple since the mid-2000s.

He began covering Apple news in Brazilian media in 2012 and later broadened his focus to the wider tech industry, hosting a daily podcast for seven years.



New and Used Gameroom Products

New and used pool tables, prices starting at $995

Chesapeake Billiards                Open ›

PRIVACY · SECURITY · APPLE WALLET