IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| X CORP. and X.AI LLC,<br><br>    Plaintiffs,<br><br>    v.<br><br>APPLE INC., OPENAI, INC., OPENAI, L.L.C., and OPENAI OPCO, LLC,<br><br>    Defendants. | Civil Action No. 4:25-cv-00914-P |

**REPLY OF THE OPENAI DEFENDANTS
<u>IN SUPPORT OF THEIR MOTION TO DISMISS</u>**

WACHTELL, LIPTON,
  ROSEN & KATZ
51 West 52nd Street
New York, New York 10019
Telephone: (212) 403-1000
Facsimile: (212) 403-2000

LYNN PINKER HURST
  & SCHWEGMANN LLP
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone: (214) 981-3800
Facsimile: (214) 981-3839

Dated: November 4, 2025

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 1

    I.    PLAINTIFFS DO NOT STATE A VALID CLAIM UNDER THE SHERMAN ACT. ................................................................................................ 1

        A.    Plaintiffs fail to plead the existence of an exclusive dealing agreement. .............................................................................................................. 1

        B.    Plaintiffs fail to allege "substantial foreclosure." ....................................... 4

        C.    Plaintiffs fail to allege specific intent. ......................................................... 6

        D.    Plaintiffs fail to allege antitrust standing. ................................................... 7

    II.    PLAINTIFFS DO NOT STATE A VALID CLAIM UNDER TEXAS STATE LAW. ........................................................................................ 9

CONCLUSION ............................................................................................................................ 9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abraham & Veneklasen Joint Venture* v. *Am. Quarter Horse Ass'n*,
   776 F.3d 321 (5th Cir. 2015) ........................................................................................ 6 n.5

*Aerotec Int'l, Inc.* v. *Honeywell Int'l, Inc.*,
   836 F.3d 1171 (9th Cir. 2016) .................................................................................................2

*Allied Orthopedic Appliances Inc.* v. *Tyco Health Care Grp. LP*,
   592 F.3d 991 (9th Cir. 2010) ..................................................................................................6

*Am. Airlines, Inc.* v. *Travelport Ltd.*,
   2012 WL 3737037 (N.D. Tex. Aug. 7, 2012) ......................................................................7 n.6

*Apani Sw., Inc.* v. *Coca-Cola Enters.*,
   300 F.3d 620 (5th Cir. 2002) ...................................................................................................9

*Aspen Skiing Co.* v. *Aspen Highlands Skiing Corp.*,
   472 U.S. 585 (1985) .................................................................................................................4

*Associated Gen. Contractors of Cal., Inc.* v. *Cal. State Council of Carpenters*,
   459 U.S. 519 (1983) ............................................................................................................ 7-8

*Bell Atl. Corp.* v. *Twombly*,
   550 U.S. 544 (2007) .................................................................................................................2

*Blue Shield of Va.* v. *McCready*,
   457 U.S. 465 (1982) .................................................................................................................8

*BRFHH Shreveport, LLC* v. *Willis-Knighton Med. Ctr.*,
   49 F.4th 520 (5th Cir. 2022) ........................................................................................... 2, 4, 5

*Campbell* v. *Wells Fargo Bank, N.A.*,
   781 F.2d 440 (5th Cir. 1986) ...................................................................................................8

*CoStar Grp., Inc.* v. *Com. Real Est. Exch., Inc.*,
   150 F.4th 1056 (9th Cir. 2025) ................................................................................................3

*Dexon Comput., Inc.* v. *Cisco Sys., Inc.*,
   2023 WL 2941414 (E.D. Tex. Feb. 7, 2023) ...........................................................................7

*Eisai, Inc.* v. *Sanofi Aventis U.S., LLC*,
   821 F.3d 394 (3d Cir. 2016) .....................................................................................................6

*Honeywell Int'l Inc.* v. *Lone Star Aerospace, Inc.*,
  2024 WL 4093183 (N.D. Tex. Sept. 4, 2024)...................................................................7

*In re Beef Indus. Antitrust Litig.*,
  713 F. Supp. 971 (N.D. Tex. 1988),
  *aff'd*, 907 F.2d 510 (5th Cir. 1990)..................................................................................7

*In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*,
  44 F.4th 959 (10th Cir. 2022) ............................................................................................6

*In re Katrina Canal Breaches Litig.*,
  495 F.3d 191 (5th Cir. 2007) .......................................................................................3 n.3

*JSW Steel (USA) Inc.* v. *Nucor Corp.*,
  586 F. Supp. 3d 585 (S.D. Tex. 2022),
  *aff'd*, 2025 WL 832801 (5th Cir. Mar. 17, 2025) ...............................................................9

*Larry R. George Sales Co.* v. *Cool Attic Corp.*,
  587 F.2d 266 (5th Cir. 1979) .............................................................................................8

*Leaf Trading Cards, LLC* v. *Upper Deck Co.*,
  2018 WL 2971135 (N.D. Tex. Mar. 16, 2018) ..................................................................3

*N. Miss. Commc'ns, Inc.* v. *Jones*,
  792 F.2d 1330 (5th Cir. 1986) ...........................................................................................6

*Nat'l Collegiate Athletic Ass'n* v. *Alston*,
  594 U.S. 69 (2021)..............................................................................................................4

*Neal* v. *Trans Ova Genetics, Inc.*,
  2013 WL 12131198 (W.D. Tex. May 13, 2013) ............................................................6 n.5

*Nukote of Ill., Inc.* v. *Clover Holdings, Inc.*,
  2012 WL 13093942 (N.D. Tex. Mar. 15, 2012) ................................................................5

*Omega Env't, Inc.* v. *Gilbarco, Inc.*,
  127 F.3d 1157 (9th Cir. 1997) ...........................................................................................4

*OrthoAccel Techs., Inc.* v. *Propel Orthodontics, LLC*,
  2017 WL 1213629 (E.D. Tex. Apr. 3, 2017).....................................................................5

*Phototron Corp.* v. *Eastman Kodak Co.*,
  842 F.2d 95 (5th Cir. 1988) ...............................................................................................8

*Pulse Network, L.L.C.* v. *Visa, Inc.*,
  30 F.4th 480 (5th Cir. 2022) ......................................................................................3, 7, 8

*Taylor Pub. Co.* v. *Jostens, Inc.*,
  216 F.3d 465 (5th Cir. 2000) ...................................................................................9

*TCA Bldg. Co.* v. *Nw. Res. Co.*,
  861 F. Supp. 1366 (S.D. Tex. 1994) ........................................................................8

*Tesla, Inc.* v. *La. Auto. Dealers Ass'n*,
  113 F.4th 511 (5th Cir. 2024) ...................................................................................8

*United States* v. *Google LLC*,
  747 F. Supp. 3d 1 (D.D.C. 2024) .............................................................................3

*United States* v. *Microsoft Corp.*,
  253 F.3d 34 (D.C. Cir. 2001) ...................................................................................3

*United Shoe Mach. Corp.* v. *United States*,
  258 U.S. 451 (1922) .................................................................................................3

*Universal Hosp. Servs., Inc.* v. *Hill-Rom Holdings, Inc.*,
  2015 WL 6994438 (W.D. Tex. Oct. 15, 2015) ....................................................7 n.6

*Walker* v. *U-Haul Co. of Miss.*,
  747 F.2d 1011 (5th Cir. 1984) ..................................................................................8

**Statutes and Rules**

15 U.S.C. § 1 *et seq.* ..............................................................................................1, 6 n.4, 9

**Other Authorities**

Herbert Hovenkamp, Federal Antitrust Policy § 10.8 (1st ed. 1994) ...................................4

**PRELIMINARY STATEMENT**

Plaintiffs' opposition distorts antitrust law. They argue that Defendants can be held liable for "exclusive dealing" absent any agreement to exclude competitors. They maintain that Defendants have substantially foreclosed the relevant markets even though Plaintiffs' products are instantly available to every consumer at the press of a button. Plaintiffs' position defies Fifth Circuit authority and common sense. As set out in OpenAI's motion, the Complaint presents no well-pleaded facts supporting a plausible inference that: (1) Defendants entered an exclusive agreement barring Apple from integrating other generative AI services into its mobile operating system; (2) Defendants' commercial relationship has substantially foreclosed the putative market for "generative AI chatbots"; (3) OpenAI acted with specific intent to attempt or conspire to monopolize; or (4) Plaintiffs have suffered injury-in-fact and antitrust injury, as required to demonstrate antitrust standing. Each of these deficiencies is independently fatal to the Complaint, and the claims against OpenAI should be dismissed with prejudice.[1]

**ARGUMENT**

**I.   PLAINTIFFS DO NOT STATE A VALID CLAIM UNDER THE SHERMAN ACT.**

  **A.   Plaintiffs fail to plead the existence of an exclusive dealing agreement.**

The Complaint's premise — that Apple and OpenAI have an "exclusive" arrangement — is inadequately pleaded and demonstrably false. Plaintiffs have failed to plead any term in the Apple/OpenAI agreement that establishes exclusivity. To the contrary and as the very sources Plaintiffs incorporated into their Complaint confirm: "Apple's deal with OpenAI isn't exclusive."[2]

---

[1]   Capitalized terms have the meanings set in OpenAI's motion. Dkt. No. 41 ("Mot."). "Opp." and "Opp. App'x" refer to Plaintiffs' opposition and appendix, Dkt. No. 63, 64. OpenAI joins and incorporates by reference the arguments presented in Apple's reply in support of dismissal.

[2]   *Apple to 'Pay' OpenAI for ChatGPT Through Distribution, Not Cash*, BLOOMBERG (June 12, 2024), https://tinyurl.com/Jun122024BB (quoted at Compl. ¶ 94) (App'x Tab 1 at A004).

1

This is dispositive because the basic "prerequisite to any exclusive dealing claim" is "an agreement to deal exclusively." *Aerotec Int'l, Inc.* v. *Honeywell Int'l, Inc.*, 836 F.3d 1171, 1181 (9th Cir. 2016); *see* Mot. 10-11 (collecting authority). The exclusivity "inquiry requires that [courts] look at the *actual terms* of the agreements." *Aerotec*, 836 F.3d at 1181 (emphasis added). Plaintiffs have failed to adequately allege any such agreement for exclusivity, much less "provide any significant details" or "other terms that in effect transform th[is] unspecified transaction[] into [an] exclusive arrangement[]." *Id.*

Seeking to avoid the dismissal required by black-letter law, Plaintiffs assert in their opposition that it is "legally irrelevant" what "the agreement actually says." Opp. 13. They argue that they need plead only that "no other generative AI chatbot is natively integrated" into iOS and that Apple has (to date) declined to integrate certain other services. *Id.* at 10. That is not the law. Exclusivity cannot be pleaded by pointing to one party's choice to deal with another party. There must be allegations that Defendants barred dealings with the market at large. Even taken in the light most favorable to Plaintiffs, that Apple has chosen to deal with OpenAI and has not yet entered into agreements with others (to date) would at most be "'merely consistent with'" the existence of an agreement to deal exclusively — which is not "good enough" to state an exclusive-dealing claim under binding Fifth Circuit authority. *BRFHH Shreveport, LLC* v. *Willis-Knighton Med. Ctr.*, 49 F.4th 520, 528 (5th Cir. 2022) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 557 (2007), where the Supreme Court held that allegations of parallel conduct did not support a plausible inference of an anticompetitive agreement).

Unable to identify any case finding exclusive dealing on facts resembling those pleaded here, Plaintiffs instead point to precedents where the terms of agreements that facially disclaimed exclusivity still "effectively barred" competition. Opp. 10-14. Those cases cannot save the

Complaint because Plaintiffs do not plead any such "effective" barrier here. They do not and could not identify (1) any "specific provisions . . . contradict[ing an] express promise of non-exclusivity" by prohibiting Apple from integrating other AI services, *CoStar Grp., Inc.* v. *Com. Real Est. Exch., Inc.*, 150 F.4th 1056, 1073 (9th Cir. 2025); (2) any provisions providing OpenAI with the right to terminate the agreement, or otherwise alter the revenue-sharing agreement if Apple integrates another "chatbot," see *United Shoe Mach. Corp.* v. *United States*, 258 U.S. 451, 457 (1922); (3) any provisions requiring that Apple pay OpenAI for queries routed to competitors' services, *see id.*; or (4) any provisions incentivizing Apple to prioritize ChatGPT in routing AI queries, *see Pulse Network, L.L.C.* v. *Visa, Inc.*, 30 F.4th 480, 494-95 (5th Cir. 2022). Nor do Plaintiffs even plead that Apple has agreed to designate ChatGPT as the default "chatbot" on its operating system. *See United States* v. *Microsoft Corp.*, 253 F.3d 34, 75 (D.C. Cir. 2001); *United States* v. *Google LLC*, 747 F. Supp. 3d 1, 89, 96 (D.D.C. 2024).[3]

Plaintiffs' lead authority, *Leaf Trading Cards, LLC* v. *Upper Deck Co.*, 2018 WL 2971135 (N.D. Tex. Mar. 16, 2018), illustrates why their Complaint falls short. In *Leaf Trading*, unlike here, the plaintiffs pleaded that the challenged contract's language "essentially prohibit[ed] the distributor from engaging with any third party that, in [the defendant's] sole discretion, diminishe[d] or disparage[d] [the defendant's] goodwill, brand, intellectual property, products, or reputation." *Id.* at *3. No such term — nor any similar provision that could support an inference of exclusivity — has been or could be alleged here. *Id.*

To the extent Plaintiffs' argument is that Apple has not (yet) integrated with other AI

---

[3]   Nor could Plaintiffs so plead. Should the Court conclude that consideration of the integration agreement itself would assist in the resolution of this motion, OpenAI would be pleased to submit the confidential agreement for *in camera* inspection. The agreement is "part of the pleadings," because it is "referred to in the plaintiff[s'] complaint and [is] central to [their] claim[s]." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).

providers, that is not actionable under the antitrust law, which has long recognized "[t]he absence of an unqualified duty to cooperate" with business rivals. *Aspen Skiing Co.* v. *Aspen Highlands Skiing Corp.*, 472 U.S. 585, 601 (1985). Without any allegation of an actual anticompetitive arrangement, Plaintiffs would impose on the Court a duty of "central plann[ing]," a role to which the judiciary "should never aspire": policing when, how, with whom, in what order, and on what terms innovators in highly dynamic industries enter into contracts with distributors and suppliers. *Nat'l Collegiate Athletic Ass'n* v. *Alston*, 594 U.S. 69, 103 (2021). Because Plaintiffs' claims depend on exclusivity and they have not adequately pleaded it, Plaintiffs' claims should be dismissed.

### B. Plaintiffs fail to allege "substantial foreclosure."

The Complaint also fails because it lacks well-pleaded facts showing that Plaintiffs have been "shut out of" or "prevented . . . from providing [generative AI chatbot] services" to much of the relevant market. *BRFHH*, 49 F.4th at 530-31. The Complaint does not even attempt to plead such foreclosure — an impossible allegation when Grok remains freely available to everyone with access to the internet. Plaintiffs focus narrowly on their claim that Defendants' agreement has allegedly foreclosed access to a single platform, Siri, on certain iPhones and minimize the fact that Grok remains available on every iPhone through web browsers and xAI's standalone Grok app. As courts have recognized, foreclosure of even "a large percentage of one mode of distribution will have little anticompetitive effect if another mode is available." *Omega Env't, Inc.* v. *Gilbarco, Inc.*, 127 F.3d 1157, 1163 (9th Cir. 1997) (quoting HERBERT HOVENKAMP, FEDERAL ANTITRUST POLICY § 10.8 at 391 (1st ed. 1994)). The Complaint pleads nothing more.

Plaintiffs say that the Complaint nevertheless establishes substantial foreclosure because Siri represents "up to 55 percent" of the universe of potential prompts that could be used to train a generative AI service — a universe that would include, for example, every Google search and

4

every communication with every generative AI chatbot currently in operation anywhere. Opp. 16. Plaintiffs' purported "55 percent" does not make sense and is not even close to well-pleaded. It turns on a series of unsupported assumptions and implausible inferences, including that (1) "potential prompts" are a measure of chatbots' possible reach in distributing their services; (2) each and every Siri prompt — including such prosaic prompts as checking the weather, setting a timer, or dictating a reminder — is a potential AI training prompt; and (3) global usage of generative AI chatbots has not increased in the past year. Mot. 14-15. And even if the Court were compelled to credit Plaintiffs' impossible computation, it still would not add up to "substantial foreclosure," because the market for "potential generative AI chatbot *prompts*," Compl. ¶ 104 (emphasis added), is not the same thing as the market for "[g]enerative AI chatbots," Compl. ¶ 127. Plaintiffs' failure to "adequately connect the two" dooms their substantial foreclosure theory. *BRFHH*, 49 F.4th at 531. And contrary to Plaintiffs' assertions, neither *OrthoAccel Techs., Inc.* v. *Propel Orthodontics, LLC*, 2017 WL 1213629, at *4 (E.D. Tex. Apr. 3, 2017), nor *Nukote of Ill., Inc.* v. *Clover Holdings, Inc.*, 2012 WL 13093942, at *8 (N.D. Tex. Mar. 15, 2012), endorses the "qualitative" pleading of substantial foreclosure. Regardless, Plaintiffs have not plausibly alleged that "the opportunities for other [generative AI chatbots] to enter into or remain in th[e] market" are "significantly limited." *OrthoAccel*, 2017 WL 1213629, at *4; *Nukote*, 2012 WL 13093942, at *8 (same).

In the alternative, Plaintiffs ask the Court to ignore the many other avenues by which users can freely access Grok on Apple's operating system, summarily declaring that those other distribution channels do not matter because they are allegedly "inferior" and have "additional frictions." Opp. 18. Again, that pleading falls short under binding Fifth Circuit authority, *see BRFHH*, 49 F.4th at 531, and Plaintiffs' citations to out-of-circuit precedent cannot make it

5

otherwise. Opp. 18-19. Moreover, decisions from around the country confirm that "[i]f competitors can reach the ultimate consumers of the product by employing existing or potential alternative channels of distribution, it is unclear whether such restrictions foreclose from competition *any* part of the relevant market." *Allied Orthopedic Appliances Inc.* v. *Tyco Health Care Grp. LP*, 592 F.3d 991, 997 (9th Cir. 2010); *Eisai, Inc.* v. *Sanofi Aventis U.S., LLC*, 821 F.3d 394, 403 (3d Cir. 2016) (the court's "concern is not about which products a consumer chooses to purchase, but about which products are reasonably available to that consumer"). Plaintiffs' boasts that xAI is "a leading AI innovator" and that Grok is "heralded by independent sources as one of the most intelligent generative AI chatbots available," likewise negate the inference that Grok is shut out of any necessary training inputs — much less substantially foreclosed from the claimed market. Opp. 4.[4]

### C.      Plaintiffs fail to allege specific intent.

Plaintiffs have also failed to allege the separate and "essential element" of "specific intent to monopolize." *N. Miss. Commc'ns, Inc.* v. *Jones*, 792 F.2d 1330, 1335 (5th Cir. 1986); *see* Mot. 15-16. Courts have recognized that even genuinely "exclusive dealing agreements are often entered into for entirely procompetitive reasons and pose very little threat to competition." *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 44 F.4th 959, 983 (10th Cir. 2022). Here, Plaintiffs acknowledge the existence of privacy, safety, and integrity concerns and do not deny their legitimacy as business justifications for a targeted and deliberative approach to integration — indeed, the Complaint's allegations actually highlight the significance of those concerns. Compl. ¶¶ 47, 99; Opp. 26. And while Plaintiffs paper over those considerations with conclusory allegations about OpenAI's purported desire to "exclude competitors," *e.g.*,

---

[4]      Plaintiffs likewise do not plausibly allege that OpenAI's conduct caused harm to competition, as required for monopolization under Section 2. *Abraham & Veneklasen Joint Venture* v. *Am. Quarter Horse Ass'n*, 776 F.3d 321, 334 (5th Cir. 2015); *Neal* v. *Trans Ova Genetics, Inc.*, 2013 WL 12131198, at *4 (W.D. Tex. May 13, 2013).

Compl. ¶ 168, the "mere intention to exclude competition and to expand one's own business is *not* sufficient to show a specific intent to monopolize." *In re Beef Indus. Antitrust Litig.*, 713 F. Supp. 971, 979 (N.D. Tex. 1988) (emphasis added), *aff'd*, 907 F.2d 510 (5th Cir. 1990).

Plaintiffs assert that specific intent may be inferred from bare allegations of anticompetitive conduct. Opp. 25. But that would nullify specific intent as a distinct element, and it is inconsistent with holdings by this Court that a "conclusory allegation[], without factual allegations to support [it]," is "not enough" at the motion to dismiss stage to allege specific intent to monopolize. *Honeywell Int'l Inc.* v. *Lone Star Aerospace, Inc.*, 2024 WL 4093183, at *3 (N.D. Tex. Sept. 4, 2024) (finding no specific intent and dismissing claim despite conclusory allegations that defendant "has, and has exercised, monopoly power" and "has the power to control prices and/or exclude competition"); *see also Dexon Comput., Inc.* v. *Cisco Sys., Inc.*, 2023 WL 2941414, at *17, 22 (E.D. Tex. Feb. 7, 2023), *report and recommendation adopted,* 2023 WL 2730656 (E.D. Tex. Mar. 31, 2023) (no specific intent despite "plausibly alleg[ing] the existence of an agreement" to deal exclusively). These same decisions make clear that it is not premature at the pleadings stage for the Court to scrutinize the allegation of specific intent.[5] The Complaint thus fails to allege OpenAI's intent to monopolize.

### D. Plaintiffs fail to allege antitrust standing.

Finally, Plaintiffs have pleaded neither injury-in-fact nor antitrust injury, as required to confer antitrust standing. *Pulse Network*, 30 F.4th at 488. OpenAI's motion showed that Plaintiffs' assumption-laden theory of causation, connected by "vaguely defined links," *Associated Gen.*

---

[5] Plaintiffs have likewise failed to allege that OpenAI's executives made public statements of "inten[t] to 'leverage' its dominant position in the [AI services] market," *Universal Hosp. Servs., Inc.* v. *Hill-Rom Holdings, Inc.*, 2015 WL 6994438, at *7 (W.D. Tex. Oct. 15, 2015), or that they "conspired to punish and retaliate against" Plaintiffs for launching a new product, *Am. Airlines, Inc.* v. *Travelport Ltd.*, 2012 WL 3737037, at *3 (N.D. Tex. Aug. 7, 2012).

*Contractors of Cal., Inc.* v. *Cal. State Council of Carpenters*, 459 U.S. 519, 540 (1983), fails to supply a "direct and determinable injury" that "was a direct consequence of the alleged antitrust violation" and that is "not speculative," *Walker* v. *U-Haul Co. of Miss.*, 747 F.2d 1011, 1014 (5th Cir. 1984). *See* Mot. 17-20. And "[l]oss from competition itself — that is, loss in the form of customers[] choosing the competitor's goods and services over the plaintiff's — does not constitute antitrust injury." *Pulse Network*, 30 F.4th at 489.

In response, Plaintiffs train fire on a strawman — arguing that xAI is a competitor of OpenAI, and that is enough. Opp. 32-34. Binding authority is contrary; the Fifth Circuit "has rejected the idea that the competitor of a monopolist always has standing to challenge the monopolistic conduct forcing it from the market." *Tesla, Inc.* v. *La. Auto. Dealers Ass'n*, 113 F.4th 511, 528 (5th Cir. 2024); *Phototron Corp.* v. *Eastman Kodak Co.*, 842 F.2d 95, 100 (5th Cir. 1988) ("[T]he notion that merely facing the specter of a monopoly is enough to create standing in a competitor is not the law."). Plaintiffs are thus left with an attenuated, speculative chain of alleged harm that is "not a direct consequence of the defendants' activities," *Campbell* v. *Wells Fargo Bank, N.A.*, 781 F.2d 440, 443 (5th Cir. 1986).

Plaintiffs also claim that unsupported allegations of "lost sales" are sufficient to confer antitrust standing. Opp. 33 (quoting *TCA Bldg. Co.* v. *Nw. Res. Co.*, 861 F. Supp. 1366, 1379-80 (S.D. Tex. 1994)). But absent facts showing a "physical and economic nexus between the alleged violation and the harm to the plaintiff" through such alleged lost sales, *Blue Shield of Va.* v. *McCready*, 457 U.S. 465, 478 (1982), the "mere conclusory statement that [plaintiff] was damaged will not suffice to clothe him with standing to sue," *Larry R. George Sales Co.* v. *Cool Attic Corp.*, 587 F.2d 266, 274 (5th Cir. 1979).

Nor, in any case, is Plaintiffs' theory of injury consistent with either their allegations or the

sources upon which they affirmatively rely. Insofar as Plaintiffs argue that iPhone users would prefer to use Grok, their own materials reveal that Defendants have not prevented them from doing so. An article attached to their opposition — titled "Google pokes a banana-shaped hole in Musk's claims of Apple's bias towards OpenAI" — demonstrates that both Google and xAI, whose Grok app has "climbed to fifth place overall [in Apple's App Store] and second in the Productivity category," for iPhones, have enjoyed widespread exposure and success among iPhone users. Opp. App'x 23. This, in addition to the acknowledgement in the pleadings that iPhone users remain free to access ChatGPT's competitors through the app experience on Apple's operating system, is hardly consistent with "customers not being given the choice." Opp. 34.

Accordingly, Plaintiffs' failure to allege antitrust standing provides a separate and independent basis on which the claims should be dismissed.

## II.     PLAINTIFFS DO NOT STATE A VALID CLAIM UNDER TEXAS STATE LAW.

Putting aside the qualified nature of Plaintiffs' acknowledgment that their Texas state law claims in fact arise under Texas law, at bottom Plaintiffs do not dispute that these claims follow "federal standards," *Apani Sw., Inc.* v. *Coca-Cola Enters.*, 300 F.3d 620, 628 (5th Cir. 2002), or require an "underlying illegal act," Opp. 35; *see also JSW Steel (USA) Inc.* v. *Nucor Corp.*, 586 F. Supp. 3d 585, 601 (S.D. Tex. 2022), *aff'd*, 2025 WL 832801 (5th Cir. Mar. 17, 2025); *Taylor Pub. Co.* v. *Jostens, Inc.*, 216 F.3d 465, 486 (5th Cir. 2000). They thus fall with the Sherman Act claims and are due to be dismissed for the same reasons.

## **CONCLUSION**

For the foregoing reasons, and those stated in Defendants' openings and Apple's reply, the Complaint should be dismissed with prejudice.

Dated: November 4, 2025          Respectfully submitted,

         */s/    Michael K. Hurst*
Michael K. Hurst
mhurst@lynnllp.com
Texas Bar No. 10316310
Chris W. Patton
cpatton@lynnllp.com
Texas Bar No. 24083634
Andy Kim
akim@lynnllp.com
Texas Bar No. 24136638
**LYNN PINKER HURST & SCHWEGMANN LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
(214) 981-3800 (Telephone)
(214) 981-3839 (Facsimile)

William Savitt (N.D. Tex. Bar No. 2900058NY)
WDSavitt@wlrk.com
Kevin S. Schwartz (N.D. Tex. Bar No. 4564241NY)
KSchwartz@wlrk.com
Stephen D. Levandoski (*pro hac vice*)
SDLevandoski@wlrk.com
**WACHTELL, LIPTON, ROSEN & KATZ**
51 West 52nd Street
New York, NY 10019
(212) 403-1000 (Telephone)
(212) 403-2000 (Facsimile)
*Attorneys for Defendants OpenAI Foundation (f/k/a OpenAI, Inc.), OpenAI, L.L.C., and OpenAI OpCo, LLC*

10

## CERTIFICATE OF SERVICE

I certify that on November 4, 2025, I served the foregoing document electronically in accordance with the Federal Rules of Civil Procedure.

*/s/ Michael K. Hurst*
Michael K. Hurst