**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

|  |  |
|---|---|
| X CORP. and X.AI LLC,<br><br>    Plaintiffs,<br><br>    v.<br><br>APPLE INC.; OPENAI, INC.; OPENAI, L.L.C.; and OPENAI OPCO, LLC,<br><br>    Defendants. | **Civil Action No. 4:25-cv-00914-P** |

**PLAINTIFFS' MOTION TO COMPEL OR FOR THE
ENTRY OF PROTECTIVE ORDER AND BRIEF IN SUPPORT**

Bradley Justus
AXINN, VELTROP & HARKRIDER LLP
1901 L Street NW
Washington, DC 20036

Caroline P. Boisvert
AXINN, VELTROP & HARKRIDER LLP
90 State House Square
Hartford, CT 06103

Craig M. Reiser
Scott A. Eisman
Eva Yung
Christopher Erickson
AXINN, VELTROP & HARKRIDER LLP
630 Fifth Avenue, 33rd Floor
New York, NY 10111

Judd E. Stone II
Christopher D. Hilton
Noah Schottenstein
STONE | HILTON PLLC
301 Commerce St., Suite 2360
Fort Worth, TX 76102

## PRELIMINARY STATEMENT

Plaintiffs bring this Motion because Defendants—at OpenAI's behest—are improperly seeking to stymie compliance with their discovery obligations.[1] In particular, Defendants have refused to produce documents unless Plaintiffs enter into a confidentiality agreement. OpenAI insists that such agreement permit OpenAI to file or refer to discovery from this case in an unrelated action in California, allowing OpenAI to attempt to circumvent orders cabining discovery in that case. Accordingly, although Plaintiffs served document requests nearly two months ago, those requests will remain at a standstill unless Plaintiffs sign onto this "poison pill" that has no place in a confidentiality agreement. The result is that as expert discovery deadlines rapidly approach, Plaintiffs have not received a single document from Defendants—including Apple's and OpenAI's secret and exclusive agreement that they characterized without substantiation in their unsuccessful motions to dismiss this case over two months ago.

To ensure that discovery would proceed expeditiously, Plaintiffs shared with Defendants a proposed Protective Order on October 7. Despite repeated requests that Defendants accept that proposal or propose edits to Plaintiffs' draft, Defendants did not respond for three weeks. When they did so, they ignored Plaintiffs' proposal and sent a brand new draft, this time styled as a confidentiality agreement. To facilitate agreement, Plaintiffs attempted to accommodate Defendants' revisions. Despite these accommodations, OpenAI now insists that it will not sign a confidentiality agreement—or produce documents—unless Plaintiffs agree to allow OpenAI to file or refer to discovery material from this case in an unrelated action pending in the Northern District of California (the "Unrelated Case") involving OpenAI, xAI, and Microsoft (the "Cross-Case

---

[1] "Plaintiffs" refers to X Corp. and X.AI LLC ("xAI"). "Defendants" refers to Apple Inc. ("Apple") and OpenAI Foundation f/k/a OpenAI, Inc.; OpenAI, L.L.C.; and OpenAI OpCo, LLC (together, "OpenAI"). "App'x Tab__" refers to the tab in the accompanying Appendix.

Provision"). While Apple has not claimed this Cross-Case Provision is necessary, it, too, has refused to produce documents due to the lack of a confidentiality agreement. Third parties have likewise cited the lack of a confidentiality agreement (or Protective Order) in resisting discovery Plaintiffs have propounded.

With Plaintiffs' opening expert reports due in February and discovery set to close in May 2026, Plaintiffs cannot afford any further delay. The Cross-Case Provision does not appear in the Northern District of Texas's model Protective Order, and it is not necessary here. The only basis OpenAI has cited in support of its inclusion is that their counsel represents OpenAI in both this case and the Unrelated Case and cannot unlearn information they learn during the course of discovery here. But when Plaintiffs tried to address that purported concern by making clear that they are not asking OpenAI to "unlearn" anything in this case and could independently seek the same discovery in the other case, OpenAI insisted that it also be able to file or reference discovery obtained in this case with the court in that Unrelated Case even though Phase I fact discovery in that case is closed.[2] OpenAI's refusal to sign an agreement without such a provision is the only thing preventing the confidentiality agreement from being finalized.

Whatever its motivations may be, OpenAI's desire to put discovery from *this* case before another court in California where discovery is closed should not be used to obstruct Plaintiffs' efforts to take discovery before *this Court*. Plaintiffs accordingly request that the Court compel Defendants to produce documents now, and, if necessary to facilitate expeditious document productions, to enter the agreement (which reflects the parties' agreement save for the Cross-Case Provision) in App'x Tab 1 as a Protective Order under Federal Rule of Civil Procedure 26(c).

---

[2] A portion of the Unrelated Case ("Phase 2") is fully stayed (including any discovery) pending trial and a verdict in the unstayed portion ("Phase 1"), and fact discovery is closed in Phase 1 of the case.

## **BACKGROUND**

Time is of the essence in this case—not just because Plaintiffs seek to stop two monopolists from irreversibly tipping competition in the generative artificial intelligence ("AI") chatbot market, but also because the case schedule demands it. Plaintiffs' initial expert designations are due on February 20, 2026; discovery will conclude on May 22, 2026; and trial will begin on October 19, 2026. Dkt. No. 61 at 1.

Anticipating this schedule, Plaintiffs served their first sets of requests for production (the "First RFPs"), interrogatories (the "First Interrogatories"), and requests for admission (the "First RFAs," and with the First RFPs and First Interrogatories, the "Initial Requests") on October 10, 2025. In so doing, Plaintiffs reasonably expected productions in response to the Initial Requests to begin soon after the 30-day deadline for responses set forth in the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 33(b)(2), 34(b)(2)(A), 36(a)(3).

Given Plaintiffs' understanding that Defendants are not willing to produce documents until a confidentiality agreement is in place, Plaintiffs sent Defendants a draft protective order on October 7, 2025. App'x Tab 2, at App. 43. Defendants ignored Plaintiffs' draft for the next three weeks despite repeated follow-up emails from Plaintiffs.

On October 16, for example, Plaintiffs' counsel emailed Defendants' counsel requesting comments or edits on the protective order that Plaintiffs sent on October 7, noting that Plaintiffs wanted "to get [the protective order] in place so that productions can start soon after the deadline to respond" to the Initial Requests. App'x Tab 2, at App. 42. Defendants' counsel did not respond. On October 20, Plaintiffs' counsel again sought Defendants' comments, explaining again that Plaintiffs "expect Defendants to begin producing documents soon after the 30-day deadline to respond to the [Initial Requests]," and Plaintiffs did not "want the [lack of a] protective order . . .

to hold up productions." App'x Tab 2, at App. 42. When Defendants finally responded on October 20, it was only to stall: Defendants' counsel wrote that Defendants would "be in touch shortly" with "proposals" on the protective order. App'x Tab 2, at App. 41.

But Defendants were not "in touch shortly"—or at all. Instead, Plaintiffs had to chase again. On October 28, Plaintiffs' counsel asked for any edits to the Protective Order by the end of the day on October 30. Plaintiffs' counsel informed Defendants' counsel that, if Plaintiffs' counsel did not receive Defendants' edits by then, Plaintiffs would have no choice but to seek Court intervention. App'x Tab 2, at App. 41. It was not until the early morning of October 31 that Defendants finally responded with an entirely different document that did not even attempt to engage with Plaintiffs' October 7 draft. App'x Tab 3, at App. 52.

Defendants' version of the Protective Order, styled as a confidentiality agreement, included several nonstandard terms, none of which appear in model Protective Orders used in this District. App'x Tab 4. For example, Defendants inserted a provision allowing any disputes related to unauthorized disclosure of designated material to be arbitrated in California, even though this Court has jurisdiction over the parties and the ability to handle such disputes. App'x Tab 3, at App. 73-74. Defendants also included the Cross-Case Provision.[3]

During the parties' ensuing meet-and-confers, OpenAI's counsel, which also represents OpenAI in the Unrelated Case, explained that they needed that Cross-Case Provision to protect themselves from being accused of violating the confidentiality agreement if they use the facts they learn in discovery to request discovery in the Unrelated Case, and stated they would not sign a

---

[3] The Cross-Case Provision Defendants included provides: "Nothing in this Agreement shall restrict in any way the use or disclosure of Discovery Material by a Receiving Party: . . . to the extent necessary to seek discovery of such Discovery Material in another proceeding between any of the Parties to this case or their affiliates, provided that any Protected Material filed in such other proceeding will be filed under seal with that Court." App'x Tab 3, at App. 59.

confidentiality agreement that did not include some version of the Cross-Case Provision. App'x Tab 5 at App. 102.

Plaintiffs expressed concern that Defendants' proposed term risked impermissibly allowing discovery beyond the scope of existing discovery orders in the Unrelated Case: for example, fact discovery for Phase I of that case closed on October 1, 2025. App'x Tab 6, at App. 137. Despite Plaintiffs' repeated expressed concerns about the Cross-Case Provision, including that it is not standard in this Court by virtue of its omission in the Model Protective order, OpenAI has continued to insist that it will not execute a confidentiality agreement that omits it.

In an attempt to accommodate OpenAI's stated concern, Plaintiffs proposed edits to the Cross-Case Provision whereby OpenAI would not be restricted from seeking in the Unrelated Case discovery of materials produced in this case consistent with existing orders governing discovery in that Unrelated Case, so long as any discovery material from this case would not be filed in the Unrelated Case prior to its production in that case. App'x Tab 7, at App. 140, 176; *see Dondi Props. Corp. v. Com. Sav. & Loan Ass'n*, 121 F.R.D. 284, 295 (N.D. Tex. 1988) (en banc). Defendants did not respond to that proposal until December 1, once again reinserting language allowing them not just to seek in the Unrelated Case discovery of materials produced in this case, but also to *file* materials produced in this case in that other proceeding even before the court in that case approves the discovery. App'x Tab 8, at App. 205, 223. Plaintiffs informed Defendants that they could not agree to a version of the Cross-Case Provision that allows Defendants to file or reference discovery material from this case on another court's docket and asked Defendants to reconsider. App'x Tab 5 at  App. 97. Defendants responded with a proposal that would still allow OpenAI to file a motion that "describe[s]" discovery material from this case in the Unrelated Case. App'x Tab 5 at App. 96-97. As Plaintiffs explained to Defendants, this proposal is still improper

because OpenAI does not need to describe discovery from this case in filings in the Unrelated Case to seek discovery there. App'x Tab 5 at App. 95. Because the parties have reached an impasse on this issue that is gumming the works on discovery, Plaintiffs now seek relief from this Court.

## ARGUMENT

### I.      The Court Should Enter The Confidentiality Agreement As A Protective Order

Under Federal Rule of Civil Procedure 26(c)(1), the Court may issue a protective order "for good cause." *See Resol. Tr. Corp. v. Worldwide Ins. Mgmt. Corp.*, 147 F.R.D. 125, 127 (N.D. Tex. 1992) (good cause shown when movant can demonstrate "the necessity of the issuance with a specific demonstration of fact"), *aff'd sub nom. Resol. Tr. v. Worldwide*, 992 F.2d 325 (5th Cir. 1993). Good cause exists here because OpenAI is insisting that Plaintiffs agree to an improper "poison pill" provision of a confidentiality agreement to hold up discovery and prevent Plaintiffs from obtaining the information they need to advance this case. *See Conti v. Nat'l City Mortg. Co.*, No. 2:09-CV-196, 2009 WL 10705550, at *1 (M.D. Fla. Nov. 13, 2009) (exercising inherent authority to issue a confidentiality agreement upon finding that the parties' inability to enter into one was the impediment to document production).

To begin, OpenAI's position has indisputably impeded party discovery. This case concerns Defendants' unlawful agreement to entrench their monopolies in the markets for smartphones and generative AI chatbots. Defendants have insisted that they "require" a confidentiality agreement "before any productions are made in this case." Dkt. No. 59 at 10. Defendants also designated their initial disclosures as "Confidential" under the forthcoming confidentiality agreement, App'x Tab 9 at App. 249, and objected to producing entire categories of discovery without a confidentiality agreement. (Eisman Decl. ¶ 4). Defendants likewise designated all their responses and objections to Plaintiffs' Initial Requests, served on November 8, as "Outside Counsel's Eyes Only" under the

6

anticipated confidentiality agreement, asserting that they would re-designate these responses and objections as appropriate once a confidentiality order was signed. App'x Tabs 10 at App. 252 and Tab 11 at App. 254.

The lack of a confidentiality agreement has impeded nonparty discovery, too. Plaintiffs served 11 nonparty subpoenas on November 4, all of which bore a return date of November 24. Although that return date has passed, Plaintiffs have yet to receive any documents from nonparties, in part because nonparties have objected to producing confidential information until a confidentiality agreement is signed. (Eisman Decl. ¶ 5). Plaintiffs have therefore already been denied access to nonparty discovery to which they would otherwise be entitled. Courts have found circumstances like this to constitute good cause to enter a protective order. *See Conti*, 2009 WL 10705550, at *1.

At this point, Plaintiffs cannot afford further delay, and OpenAI's refusal to execute a confidentiality agreement is obstructing discovery. While OpenAI has claimed it needs the Cross-Case Provision to protect its counsel from being accused of violating confidentiality if they later seek discovery in the Unrelated Case, it is trying to wield confidentiality in this case as a sword to allow OpenAI to do more than that: namely, to present evidence discovered in this case to the California court in the Unrelated Case even before that court has authorized any additional discovery. While OpenAI has not explained this overreach, it appears targeted to allow OpenAI to try to reopen discovery rulings in the Unrelated Case—where fact discovery has closed and has been cabined—by putting before the California court documents produced in this case.[4] OpenAI's

---

[4] The court has limited discovery in the Unrelated Case to issues concerning the claim that OpenAI was converted from a charitable nonprofit into a for-profit entity and related claims; needless to say, discovery from xAI—which did not even exist at the time OpenAI formed its for-profit affiliate—has nothing to do with the Phase I litigation in the Unrelated Case. In any event, as noted, fact discovery is closed in the Unrelated Case.

apparent desire to file discovery from this case (or a description of it) before the California court in the Unrelated Case is no basis to delay discovery here, and OpenAI should not be allowed to hold discovery for ransom as it has been doing. Document production should proceed. And if all that stands between the status quo and document production is a confidentiality agreement, then the Court should enter the confidentiality agreement (App'x Tab 1), without Defendants' proposed provision permitting them to file or refer to discovery in this case in the Unrelated Case, as a Protective Order.

## II.     The Court Should Expedite Briefing Of This Motion

As noted above, this case is already more than three months into a 14-month schedule, with Plaintiffs' opening expert reports due in February 2026. The ordinary briefing schedule would allow 14 days for a response brief and 7 days for reply, with briefing concluding shortly before Christmas. *See* Local Civ. R. 7.1(e)-(f). To facilitate the expeditious production of party and nonparty discovery, Plaintiffs respectfully request that the Court set an expedited briefing schedule.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court order Defendants to promptly produce document discovery, and, to the extent needed to facilitate such productions, enter the confidentiality agreement without the Cross-Case Provision (App'x Tab 1) as a Protective Order pursuant to Federal Rule of Civil Procedure 26(c).

Dated: December 3, 2025                         Respectfully submitted,

/s/ Bradley Justus                              /s/ Craig M. Reiser

Bradley Justus*                                 Craig M. Reiser*
DC Bar No. 1007988                              NY State Bar No. 4886735
AXINN, VELTROP & HARKRIDER LLP                  Scott A. Eisman*
1901 L Street NW                                NY State Bar No. 4905287
Washington, DC 20036                            Eva Yung*
T: (202) 912-4700                               NY State Bar No. 5497300
F: (202) 912-4701                               Christopher Erickson*
bjustus@axinn.com                               NY State Bar No. 5800628
                                                AXINN, VELTROP & HARKRIDER LLP
Caroline P. Boisvert*                           630 Fifth Avenue, 33rd Floor
CT State Bar No. 441323                          New York, NY 10111
AXINN, VELTROP & HARKRIDER LLP                  T: (212) 728-2200
90 State House Square                           F: (212) 728-2201
Hartford, CT 06103                              creiser@axinn.com
T: (860) 275-8100                               seisman@axinn.com
F: (860) 275-8101                               eyung@axinn.com
cboisvert@axinn.com                             cerickson@axinn.com


*admitted pro hac vice                          /s/ Judd E. Stone

                                                Judd E. Stone II
                                                TX State Bar No. 24076720
                                                Christopher D. Hilton
                                                TX State Bar No. 24087727
                                                STONE | HILTON PLLC
                                                600 Congress Ave., Ste. 2350
                                                Austin, TX 78701
                                                T: (737) 465-3897
                                                judd@stonehilton.com
                                                chris@stonehilton.com

                                                Noah Schottenstein
                                                Texas Bar No. 24100661
                                                STONE | HILTON PLLC
                                                301 Commerce St., Suite 2360
                                                Fort Worth, TX 76102
                                                T: (737) 465-3897
                                                noah@stonehilton.com

                                                Attorneys for Plaintiffs X Corp.
                                                and X.AI LLC

9

## CERTIFICATE OF CONFERENCE

Plaintiffs have conferred by email, telephone, and videoconference with counsel for Apple (Henry Liu, Emily Henn, Lauren Willard Zehmer, and Carol Weiland) and OpenAI (Kevin Schwartz, William Savitt, and Andrew Cheung) regarding a Protective Order and/or confidentiality agreement on October 16, 20, and 28; November 7, 9, 14, 15, 20, 21, and 25; and December 1 and 2, 2025. Counsel for OpenAI has indicated that it is unwilling to enter a confidentiality agreement without the Cross-Case Provision, and both Defendants have indicated that they are unwilling to produce documents without a confidentiality agreement or appropriate Court order. This motion is accordingly opposed.

Dated: December 3, 2025

/s/ Craig M. Reiser
Craig M. Reiser

## CERTIFICATE OF SERVICE

I certify that on December 3, 2025, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF system for filing. A notice of electronic filing was transmitted to all ECF registrants of record.

/s/ Craig M. Reiser
Craig M. Reiser