**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

|  |  |
|---|---|
| X CORP. and X.AI LLC,<br><br>    Plaintiffs,<br><br>    v.<br><br>APPLE INC., OPENAI, INC., OPENAI,<br>L.L.C., and OPENAI OPCO, LLC,<br><br>    Defendants. | Civil Action No. 4:25-cv-00914-P |

**OPPOSITION OF THE OPENAI DEFENDANTS**
**TO PLAINTIFFS' MOTION TO COMPEL**

WACHTELL, LIPTON,
  ROSEN & KATZ
51 West 52nd Street
New York, NY 10019
Telephone: (212) 403-1000
Facsimile: (212) 403-2000

LYNN PINKER HURST
  & SCHWEGMANN LLP
2100 Ross Avenue, Suite 2700
Dallas, TX 75201
Telephone: (214) 981-3800
Facsimile: (214) 981-3839

Dated: December 18, 2025

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................... 1

BACKGROUND ................................................................................................................... 2

ARGUMENT ........................................................................................................................ 6

    I.       The confidentiality provision OpenAI seeks is appropriate. ................................. 6

    II.      The relief sought by Plaintiffs is unwarranted. ....................................................... 9

CONCLUSION .................................................................................................................... 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bell ex rel. Bell* v. *Chrysler Corp.*,
    2002 WL 172643 (N.D. Tex. Feb. 1, 2002) ................................................................................8

*Davis* v. *City of Fort Worth*,
    2014 WL 12940678 (N.D. Tex. July 3, 2014). ........................................................................2, 9

*Harrison* v. *Wells Fargo Bank, N.A.*,
    2016 WL 1392332 (N.D. Tex. Apr. 8, 2016) ......................................................................10 n.11

*Musk* v. *Altman*,
    No. 4:24-cv-04722-YGR, 2025 BL 338240 (N.D. Cal. Sept. 22, 2025) ....................................9

*Ocean Semiconductor LLC* v. *NXP USA, Inc.*,
    2023 WL 3167443 (W.D. Tex. Apr. 28, 2023)............................................................................7

*Peoples* v. *Aldine Indep. Sch. Dist.*,
    2008 WL 2571900 (S.D. Tex. June 19, 2008) ............................................................................7

*Phillips Petroleum Co.* v. *Pickens*,
    105 F.R.D. 545 (N.D. Tex. 1985) ...............................................................................................8

*Samsung Elecs. Am. Inc.* v. *Chung*,
    325 F.R.D. 578 (N.D. Tex. 2017) ........................................................................................10 n.11

*Stack* v. *Gamill*,
    796 F.2d 65 (5th Cir. 1986) ........................................................................................................7

*Twitter, Inc.* v. *Musk*,
    2022 WL 5078278 (Del. Ch. Oct. 5, 2022) ...............................................................................9

*Twitter, Inc.* v. *Musk*,
    2022 WL 4093109 (Del. Ch. Sept. 7, 2022) ..............................................................................9

*United Nuclear Corp.* v. *Cranford Ins. Co.*,
    905 F.2d 1424 (10th Cir. 1990) ..................................................................................................7

**Other Authorities**

FED. R. CIV. P. 37(a) ......................................................................................................10 n.11

**PRELIMINARY STATEMENT**

This action is just one in a series of lawsuits that Elon Musk has instigated against OpenAI as part of his effort to seek an edge for his AI competitor, xAI. Given Musk's multifront litigation campaign — including one case asserting similar antitrust claims and another alleging unfair competition and trade secret claims — OpenAI seeks to ensure that any negotiated confidentiality agreement in this action does not prejudice its ability to seek discovery in those other litigations. Specifically, OpenAI seeks to preserve its right to ask Musk to produce elsewhere the same confidential documents he produces here — and if he refuses, to inform the court confidentially in those other cases what documents are at issue. Plaintiffs agreed that OpenAI could *ask* Musk to produce these documents in the other cases, but insisted that if Musk refuses, and OpenAI has to move to compel their production, OpenAI should be prohibited from telling the court anything about these documents. Musk's blanket position is untenable for the many reasons detailed below, including his history of glaring deficiencies in discovery and his reliance on other protective orders to avoid rectifying those deficiencies when exposed.

Notably, several weeks ago, Plaintiffs agreed to OpenAI's proposal that the parties be able to submit documents produced in this litigation "to the extent necessary to seek discovery of" that material in other lawsuits. On November 15, as the parties were addressing an array of other issues toward finalizing a negotiated agreement, Plaintiffs' counsel stated that "[i]n the goal of reaching agreement promptly, we have accepted" that provision. But over two weeks later, on December 1, they suddenly reversed course and told Defendants they refuse to entertain any possibility that another court could see documents Musk produces in this action. Plaintiffs then even rejected OpenAI's compromise proposal that a party be allowed only to *describe* the documents to another court, under seal, but not to file them.

This is the sole issue over which Plaintiffs ended negotiations in favor of moving the Court,

1

despite its prior admonitions that parties negotiate confidentiality agreements "without causing the court to devote its time and attention to the matter," *Davis* v. *City of Fort Worth*, 2014 WL 12940678, at *3 n.3 (N.D. Tex. July 3, 2014). But Plaintiffs attempt to obfuscate what is really at issue — their desire to hide relevant discovery from other courts — by asserting that OpenAI is refusing to produce documents.

OpenAI is and has been ready to begin producing documents immediately upon the execution of a confidentiality agreement. But no party is arguing that the production of competitively sensitive documents — to a fierce competitor — should proceed without a confidentiality agreement. The only holdup to production therefore is Plaintiffs' eleventh-hour refusal to agree to any form of OpenAI's narrowly tailored provision on use of information for discovery in other actions between the parties. Plaintiffs' request that this Court order unspecified document production by Defendants, and enter their preferred confidentiality order as a protective order in order to facilitate that production, should accordingly be denied. In the event that the Court decides to enter a protective order governing confidentiality in this action, OpenAI respectfully submits that it should enter an order that includes the narrowly tailored provision in dispute between the parties.

## BACKGROUND

Plaintiffs seek expansive discovery from OpenAI, including 44 requests for admission and 39 requests for production — many with numerous subparts. Requests extend to documents regarding capacious topics which seem to have little or no bearing on Plaintiffs' claims but which constitute core competitively sensitive materials — the revelation of which could greatly harm OpenAI, especially when revealed to competitors like Musk and xAI. For example, the requests include broad demands for detailed metrics on OpenAI's data centers worldwide, for all of OpenAI's marketing data and strategies, and for information relating to OpenAI executives' open-

2

ended "plans" for ChatGPT. Since October, Defendants have engaged extensively and regularly with Plaintiffs regarding their requests. On November 10, Defendants timely served their responses and objections to Plaintiffs' first interrogatories, requests for admission, and requests for production. Defendants gave substantive answers to the interrogatories and requests for admission, on the understanding between the parties that those responses would be treated as outside-counsel's-eyes-only until the parties executed their anticipated confidentiality agreement. Since November 14, OpenAI has met and conferred with Plaintiffs on six occasions, the latest on December 5, to discuss in detail any issues Plaintiffs raised regarding OpenAI's responses. OpenAI agreed to continue that process to cover all such grounds raised by Plaintiffs, and further proposed to discuss search terms and custodians for the production when Plaintiffs are ready to discuss those topics. Defendants have been nothing but diligent in addressing Plaintiffs' discovery requests.

The parties' negotiations over the confidentiality agreement have likewise been extensive. Given the Court's preference for parties to negotiate such agreements without its intervention, Defendants proposed an agreement on October 31 that the parties would enter into without the Court's involvement. Since this action is not the only pending litigation between Musk and OpenAI, from the start of negotiations, OpenAI insisted that any use restriction in the confidentiality agreement should not prevent OpenAI, in other actions, from seeking discovery of documents produced here or moving to compel production of such documents on an adequate record if necessary. Even before this lawsuit, Musk had already brought a still-pending action against OpenAI, *Musk* v. *Altman*, No. 4:24-cv-04722-YGR (N.D. Cal.), involving overlapping antitrust claims. And since filing this lawsuit, Musk has filed yet another — also pending in California, and also asserting unfair competition claims, *X.AI Corp.* v. *OpenAI, Inc.*, No. 3:25-cv-

3

08133-RL (N.D. Cal.). Accordingly, Section 6(d) of Defendants' October 31 proposed agreement provided:

> Nothing in this Agreement shall restrict in any way the use or disclosure of Discovery Material by a Receiving Party: . . . (iv) to the extent necessary to seek discovery of such Discovery Material in another proceeding between any of the Parties to this case or their affiliates, provided that any Protected Material filed in such other proceeding will be filed under seal with that Court . . . .[1]

Over the next two weeks, Plaintiffs and OpenAI engaged in lengthy negotiation of this provision, with Plaintiffs initially proposing to excise it and OpenAI stressing the propriety of this narrowly tailored exception to the use restriction. On November 15, in a draft addressing a number of issues in the agreement, Plaintiffs commented on Defendants' reinsertion of this provision: "Note to Defendants: In the goal of reaching agreement promptly, we have accepted this edit. We are still confirming with our client."[2]

Defendants sent a revised draft of the agreement on November 18 that OpenAI believed addressed the remaining issues.[3] However, on Sunday, November 23 at 5:21 pm, Plaintiffs sought to rewrite Section 6(d), purportedly to make it "crystal clear that it cannot be the basis for trying to bypass rulings in *Musk* v. *Altman* or impermissibly expand discovery there" or provide "a backdoor to undo rulings in the *Musk* v. *Altman* case."[4] Plaintiffs asserted this was their sole remaining issue. Defendants responded the next morning that they were surprised Plaintiffs were reopening an issue that had been resolved, and that defense counsel would need to confer with their clients, a process that would take longer due to the Thanksgiving holiday weekend.[5]

---

[1]    Email from C. Weiland to S. Eisman (Oct. 31, 2025) (App'x Tab 1 at A0009).

[2]    Email from S. Eisman to C. Weiland (Nov. 15, 2025) (App'x Tab 2 at A0052-53).

[3]    Email from C. Weiland to E. Yung (Nov. 18, 2025) (App'x Tab 3 at A0078).

[4]    Email from S. Eisman to C. Weiland (Nov. 23, 2025) (App'x Tab 4 at A0134).

[5]    Email from A. Cheung to S. Eisman (Nov. 24, 2025) (App'x Tab 5 at A0225).

On the morning of Monday, December 1, Defendants acceded to many of Plaintiffs' revisions — including those purportedly intended to make "crystal clear" that the provision could not be a "backdoor" to otherwise impermissible discovery in other litigations — in the following proposed edit:

> Further, nothing in this Agreement shall restrict a Receiving Party in any way from seeking discovery of a Producing Party's Discovery Material produced in the above-captioned action from that Producing Party in another proceeding between any of the Parties to this case or their affiliates, provided that (1) the Discovery Material shall not be filed with the court in such other proceeding or otherwise disclosed in that other proceeding prior to its production in that proceeding, **except that such Discovery Material may be filed with the court in that other proceeding under seal prior to production in such proceeding to the extent necessary to seek production of such Discovery Material**; (2) nothing in this provision affects any party's right to object to the production of Discovery Material in any other proceeding on any appropriate ground, including prior rulings of the court in any such proceeding; and (3) nothing in this provision is intended to authorize discovery that is otherwise impermissible in any other proceeding.[6]

Late in the evening of December 1, Plaintiffs rejected the bolded language above, insisting that another court should not be shown any confidential documents produced here, even if only for the purpose of seeking their discovery by a filing under seal. Plaintiffs asserted that "OpenAI need not file discovery material from this case on the *Musk* v. *Altman* docket in order to seek any discovery there" and that there was no guarantee that materials filed under seal in that case would remain sealed.[7]

The next day, on December 2, Defendants offered another compromise, with narrower language providing that the parties could not file the underlying confidential documents in another case, but rather could only describe the documents to the extent necessary to seek their discovery.

---

[6]    Email from A. Cheung to S. Eisman (Dec. 1, 2025) (emphasis added) (App'x Tab 6 at A0287-88).

[7]    Email from S. Eisman to A. Cheung (Dec. 1, 2025) (App'x Tab 7 at A0314-15).

This proposed compromise provided that "the Discovery Material shall not be filed with the court in such other proceeding or otherwise disclosed in that other proceeding prior to its production in that proceeding, except that ~~such Discovery Material may be~~ discovery motion papers filed with the court in that other proceeding may describe such Discovery Material under seal prior to production in such proceeding to the extent necessary to seek production of such Discovery Material."[8] Plaintiffs rejected this compromise proposal as well, and filed the instant motion nine hours later, at 1:01 am CST on December 3.[9]

## ARGUMENT

### I.    THE CONFIDENTIALITY PROVISION OPENAI SEEKS IS APPROPRIATE.

Plaintiffs portray OpenAI's proposed confidentiality provision as an "attempt to circumvent orders cabining discovery" in *Musk* v. *Altman*. Dkt. No. 79, at 1 (December 3, 2025). Not so. The provision narrows the permissible filing in another court of documents produced here only "to the extent necessary to seek production" of those same documents, and only "under seal." The provision explicitly preserves any party's objection to such discovery on any grounds, "including prior rulings of the court in any such proceeding." And to eliminate any doubt, it states that "nothing in this provision is intended to authorize discovery that is otherwise impermissible in any other proceeding."

Plaintiffs cite no precedent rejecting that cabined approach. To the contrary, the Fifth Circuit Court of Appeals, courts in this District, and other district courts in Texas regularly expand protective orders to permit *plenary* use of covered discovery material in actions elsewhere. As the Fifth Circuit recognized, "protective orders should generally be modified to allow discovery in

---

[8]    Email from A. Cheung to S. Eisman (Dec. 2, 2025) (App'x Tab 8 at A0347).

[9]    Email from S. Eisman to A. Cheung (Dec. 2, 2025) (App'x Tab 9 at A0381).

other actions." *Stack* v. *Gamill*, 796 F.2d 65, 68 (5th Cir. 1986). Principles of fairness and candor dictate that result. Federal courts in Texas are "reluctant to allow a party to use the protective order as a shield to hide relevant facts (facts that [the party] is already aware of) in *any* litigation." *Ocean Semiconductor LLC* v. *NXP USA, Inc.*, 2023 WL 3167443, at *5 (W.D. Tex. Apr. 28, 2023). Yet this is precisely what Musk would accomplish by foreclosing any disclosure to another court of material produced here, even by OpenAI's narrow proposal. In fact, Musk previously pointed a federal court to "numerous protective orders restricting disclosure of information from other cases" as a reason he should *not* have to find missing text messages. *Musk* v. *Altman*, No. 24-cv-04722-YGR, Dkt. 242, at 7 (N.D. Cal. Sept. 3, 2025) (App'x Tab 10 at A0429). That court squarely rejected his position, as opposing a "thorough investigation" of missing texts on the basis of "protective orders entered in the other cases does not make sense because protective orders limit what you can do with somebody else's documents, not what you can do with your own documents." *Musk* v. *Altman*, No. 24-cv-04722-YGR, Dkt. 263, at 2 (N.D. Cal. Sept. 3, 2025) (App'x Tab 11 at A0432). Musk should not be afforded the opportunity to wield the protective order sought in this motion as a similar pretextual shield to avoid his discovery obligations.

Allowing use of discovery in related collateral proceedings is also common sense, as it promotes efficiency and avoids duplicative discovery. *Ocean Semiconductor*, 2023 WL 3167443, at *5 (citing *United Nuclear Corp.* v. *Cranford Ins. Co.*, 905 F.2d 1424, 1428 (10th Cir. 1990) ("[W]hen a collateral litigant seeks access to discovery produced under a protective order, there is a counterv[a]iling efficiency consideration — saving time and effort in the collateral case by avoiding duplicative discovery.")). That is why courts have found "good cause" to modify protective orders "to make information available for use in subsequent proceedings." *Peoples* v. *Aldine Indep. Sch. Dist.*, 2008 WL 2571900, at *3 (S.D. Tex. June 19, 2008). "[A]ccess" to covered

7

information where litigants "seek to use discovery in aid of collateral litigation" "materially eases the tasks of courts and litigants." *Bell ex rel. Bell* v. *Chrysler Corp.*, 2002 WL 172643, at \*2 (N.D. Tex. Feb. 1, 2002) (finding good cause "to permit disclosure . . . as to all similar litigation"); *see also Phillips Petroleum Co.* v. *Pickens*, 105 F.R.D. 545, 552 (N.D. Tex. 1985) (granting modification of protective order).[10]

These considerations weigh heavily in favor of allowing other courts, particularly the court adjudicating *Musk* v. *Altman*, to examine documents produced here to determine whether their production is appropriate in those other proceedings — especially if the documents already should have been produced there. Musk's tactical decision to bifurcate his claims across two jurisdictions rather than consolidate his claims in a single venue further supports this result. Musk could have brought the antitrust claims asserted here in *Musk* v. *Altman* — alongside his other antitrust claims against OpenAI — but chose to burden OpenAI and the judicial system with a separate proceeding in a different venue asserting related claims, in part no doubt to require duplicative discovery in the two proceedings and to shield his own productions from his other cases. But there is no reason to force the presiding judge in *Musk* v. *Altman* to labor needlessly in the dark in the event of a dispute over the discoverability of documents produced here.

And Musk's litigation history lays bare the likelihood of such disputes. In *Musk* v. *Altman*, despite evidence that Musk was a prolific user of texts and other messages, Musk originally produced a total of just 37 texts from a ten-year period other than messages exchanged with

---

[10]     Plaintiffs note that the model protective order for this District does not contain a default cross-use provision. But why would it? Cross-use is only relevant in the rare circumstance of parallel litigation between parties. And courts in this District have entered confidentiality orders that permit the use of covered materials in other actions where the use would be subject to a similar protective order. *See, e.g.*, *In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prod. Litig.*, No. 3:11-MD-2244-K, Dkt. 131 at ¶ 17 (N.D. Tex. May 7, 2012) (App'x Tab 12 at A0445).

OpenAI's Sam Altman. *Musk* v. *Altman*, No. 24-cv-04722-YGR, Dkt. 242, at 3 (N.D. Cal. Sept. 3, 2025) (App'x Tab 10 at A0425). Musk's discovery conduct led the court to find that his counsel had "not been transparent in their handling of the document productions" and that "for the text message productions from . . . Musk, . . . something has likely gone significantly wrong." *Musk* v. *Altman*, No. 24-cv-04722-YGR, Dkt. 276 (N.D. Cal. Sept. 22, 2025) (App'x Tab 13 at A0452).

These red flags about Musk's discovery conduct are not limited to the related *Musk* v. *Altman* action. In litigation concerning Musk's acquisition of Twitter, the Delaware Court of Chancery criticized "glaring deficiencies" in Musk's discovery conduct. *Twitter, Inc.* v. *Musk*, 2022 WL 4093109, at *1 (Del. Ch. Sept. 7, 2022). The court was later "forced to conclude that it is likely that [Musk's] custodians permitted the automatic deletion of responsive Signal communications between them and possibly others, and that those communications are irretrievably lost." *Twitter, Inc.* v. *Musk*, 2022 WL 5078278, at *5 (Del. Ch. Oct. 5, 2022). Musk's prior litigation conduct thus leaves OpenAI with no choice but to prepare for the contingency of a subsequent dispute and to ensure that significant inconsistencies in Musk's productions may be brought to a court's attention.

## II.    THE RELIEF SOUGHT BY PLAINTIFFS IS UNWARRANTED.

This Court has made clear "[t]here is no reason why the parties cannot put any [confidentiality] agreement into a legally enforceable document without causing the court to devote its time and attention to the matter." *Davis*, 2014 WL 12940678, at *3 n.3. Yet that is precisely what Plaintiffs refuse to do. Plaintiffs ask this Court to take their side in a negotiation and order OpenAI to accede to their last-minute demands.

In light of the Court's clearly stated views on confidentiality-agreement disputes, Plaintiffs have styled their papers as a motion to compel the production of unspecified "document discovery" through entry of their preferred confidentiality agreement as a protective order "to facilitate such

9

productions." Although Plaintiffs offer no explanation why the Court should compel generalized "discovery," they imply that OpenAI has been obstructing document production. That is not so. OpenAI has expressly stated that it is prepared to commence producing documents once the parties execute a confidentiality agreement. The record is clear that Defendants have negotiated cooperatively and in good faith with Plaintiffs toward a confidentiality agreement, and that OpenAI has engaged Plaintiffs in an ongoing, productive meet-and-confer process over OpenAI's responses and objections to their requests. The start of OpenAI's document production has been delayed only by Plaintiffs' about-face refusal on the provision at issue on December 1, 2025.

As set forth above, the limited confidentiality provision sought by OpenAI is fair and reasonable, fosters judicial efficiency, and is supported by case law in this Circuit. Plaintiffs just do not like it. That is not a reason to drag this Court into endorsing Plaintiffs' preferred form of confidentiality in a protective order to compel unspecified discovery. For these reasons, Plaintiffs' motion should be denied.[11] However, if the Court were to determine it appropriate in these circumstances to enter a protective order governing confidentiality in this case, OpenAI respectfully submits that the Court should enter the order in the form proposed by Defendants on December 1, 2025, as attached hereto at Appendix Tab 14.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion should be denied.

---

[11]    Plaintiffs' motion to compel generalized discovery — without identifying any documents or requests in dispute, how any response or objection by Defendants is deficient or improper, or why the proportionality factors weigh in favor of compelling discovery — is also facially insufficient for any grant of relief. *See Samsung Elecs. Am. Inc.* v. *Chung*, 325 F.R.D. 578, 594-95 (N.D. Tex. 2017) (citing *Harrison* v. *Wells Fargo Bank, N.A.*, 2016 WL 1392332, at \*7 (N.D. Tex. Apr. 8, 2016)) ("a proper Rule 37(a) motion to compel" requires Plaintiffs to "specifically and individually identify each discovery request in dispute and specifically, as to each request, identify the nature and basis of the dispute").

Dated: December 18, 2025         Respectfully submitted,

/s/    *Michael K. Hurst*
Michael K. Hurst
mhurst@lynnllp.com
Texas Bar No. 10316310
Chris W. Patton
cpatton@lynnllp.com
Texas Bar No. 24083634
Andy Kim
akim@lynnllp.com
Texas Bar No. 24136638
**LYNN PINKER HURST & SCHWEGMANN LLP**
2100 Ross Avenue, Suite 2700
Dallas, TX 75201
(214) 981-3800 (Telephone)
(214) 981-3839 (Facsimile)

William Savitt (N.D. Tex. Bar No. 2900058NY)
WDSavitt@wlrk.com
Kevin S. Schwartz (N.D. Tex. Bar. No. 4564241NY)
KSchwartz@wlrk.com
Stephen D. Levandoski (*pro hac vice*)
SDLevandoski@wlrk.com
**WACHTELL, LIPTON, ROSEN & KATZ**
51 West 52nd Street
New York, NY 10019
(212) 403-1000 (Telephone)
(212) 403-2000 (Facsimile)

*Attorneys for Defendants OpenAI Foundation (f/k/a OpenAI, Inc.), OpenAI, L.L.C., and OpenAI OpCo, LLC*

11

## CERTIFICATE OF SERVICE

I certify that on December 18, 2025, I served the foregoing document electronically in accordance with the Federal Rules of Civil Procedure.

/s/ Michael K. Hurst
Michael K. Hurst