**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| X CORP. and X.AI LLC, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 4:25-cv-00914-P |
| APPLE INC.; OPENAI, INC.; OPENAI, L.L.C.; and OPENAI OPCO, LLC, | § | |
| | § | |
| Defendants. | § | |
| | § | |
| | § | |
| | § | |

**CONFIDENTIALITY AGREEMENT
<u>REGARDING THE DISCLOSURE AND USE OF DISCOVERY MATERIALS</u>**

Plaintiffs X Corp. and X.AI LLC ("Plaintiffs") and Defendants Apple Inc. ("Apple"), OpenAI Foundation (f/k/a OpenAI, Inc.); OpenAI, L.L.C.; and OpenAI OpCo, LLC ("OpenAI") anticipate that documents, testimony, or information containing or reflecting confidential, proprietary, trade secret, and/or commercially sensitive information are likely to be disclosed or produced during the course of discovery in this case. The Parties agree to be bound by this Confidentiality Agreement ("Agreement") setting forth the conditions for treating, obtaining, and using such information—whether produced by the Parties or by third parties in the above-captioned action.

1.     **<u>PURPOSES AND LIMITATIONS</u>**

(a)     Protected Material (defined below) produced in accordance with the terms of this Confidentiality Agreement shall be used by a Receiving Party (defined below) solely for this case, and shall not be used directly or indirectly for any other purpose whatsoever.

(b)     The Parties acknowledge that this Agreement does not confer blanket protections on all disclosures during discovery.  Designations under this Agreement shall be made with care and shall not be made absent a good faith belief that the designated material satisfies the criteria set forth below.  If it comes to the attention of a Producing Party (defined below) that designated material does not qualify for protection at all, or does not qualify for the level of protection initially asserted, the Producing Party must promptly notify all other Parties that it is withdrawing or changing the designation.

(c)     The Parties agree that this Agreement does not address the production of source code (including source and source code listings, object code and object code listings, executable code, and similar sensitive software code, whether in print or electronic form).  Should the production of source code become necessary in this action, the Parties agree to collectively negotiate in good faith a protective order governing the production of source code.

(d)     Nothing contained in this Agreement is intended to or shall serve to limit a Party's right to conduct a review of documents, electronically stored information or information (including metadata) for relevance, responsiveness and/or segregation of privileged or protected information before production.

2.     **DEFINITIONS**

(a)     "Court" means the United States District Court for the Northern District of Texas, Fort Worth Division.

(b)     "Designating Party" means a Producing Party that designates Discovery Material as Protected Material.

(c)     "Discovery Material" means all items or information, including from any non-party to the above-captioned action, regardless of the medium or manner generated, stored, or

maintained (including, among other things, testimony, transcripts, or tangible things) that are produced, disclosed, or generated in connection with discovery in the above-captioned action.

(d)    "Outside Counsel" means (i) outside counsel who appear on the pleadings as counsel for a Party and (ii) partners, associates, and staff of such counsel to whom it is reasonably necessary to disclose the information for this litigation.

(e)    "Party" means any party to this case, including all of its officers, directors, employees, consultants, vendors, retained experts, and Outside Counsel and their support staffs.

(f)    "Producing Party" means any Party or non-party that discloses or produces any Discovery Material in the above-captioned action.

(g)    "Protected Material" means any Discovery Material that is designated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL," or "HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY," as provided for in this Agreement.  Protected Material shall not include:  (i) materials that the Producing Party is aware have been actually published or publicly disseminated; and (ii) materials that show on their face they have been intentionally disseminated to the public.

(h)    "Receiving Party" means any Party who receives Discovery Material from a Producing Party.

3.    **<u>COMPUTATION OF TIME</u>**

The computation of any period of time prescribed or allowed by this Agreement shall be governed by the provisions for computing time set forth in Federal Rule of Civil Procedure 6.

4.    **SCOPE**

(a)    The protections conferred by this Agreement cover not only Discovery Material governed by this Agreement as addressed herein, but also any information copied or extracted therefrom, as well as all copies, excerpts, summaries, or compilations thereof, plus testimony, conversations, or presentations by Parties or their counsel in court or in other settings that might reveal Protected Material.

(b)    Nothing in this Confidentiality Agreement shall prevent or restrict a Producing Party's own disclosure or use of its own Protected Material for any purpose, and nothing in this Agreement shall preclude any Producing Party from showing its Protected Material to an individual who prepared the Protected Material.

(c)    Nothing in this Agreement shall be construed to prejudice any Party's right to use any Protected Material in court or in any court filing with the consent of the Producing Party or by order of the Court.

(d)    This Agreement is without prejudice to the right of any Party to seek further or additional protection of any Discovery Material or to modify this Agreement in any way, including, without limitation, by seeking an order that certain material not be produced at all.

5.    **DURATION**

Even after the termination of this case and consistent with Section 19, the confidentiality obligations imposed by this Agreement shall remain in effect until a Producing Party agrees otherwise in writing or a court order otherwise directs.

6.    **ACCESS TO AND USE OF PROTECTED MATERIAL**

(a)    Basic Principles.  All Protected Material shall be used solely for this case or any related appellate proceeding, and not for any other purpose whatsoever, including without

limitation any other litigation, patent prosecution or acquisition, patent reexamination or reissue proceedings, or any business or competitive purpose or function.  Protected Material shall not be distributed, disclosed or made available to anyone except as expressly provided in this Agreement.

(b)    Secure Storage; No Export. Protected Material must be stored and maintained by a Receiving Party in a secure manner that ensures that access is limited to the persons authorized under this Agreement, and in a manner consistent with applicable law, including applicable provisions of the United States Export Administration Regulations (15 C.F.R. Pts. 730 to 799). For the avoidance of doubt, each Receiving Party is responsible for ensuring that Protected Material is stored, maintained, and (if relevant) accessed or released in a manner consistent with the Export Administration Regulations.

(c)    Legal Advice Based on Protected Material. Nothing in this Confidentiality Agreement shall be construed to prevent counsel from advising their clients with respect to this case based in whole or in part upon Protected Materials, provided counsel does not disclose the Protected Material itself except as provided in this Agreement.

(d)    Limitations.   Nothing in this Agreement shall restrict in any way a Producing Party's use or disclosure of its own Protected Material.  Nothing in this Agreement shall restrict in any way the use or disclosure of Discovery Material by a Receiving Party: (i) that is or has become publicly known through no fault of the Receiving Party; (ii) that is lawfully acquired by or known to the Receiving Party independent of the Producing Party; (iii) previously produced, disclosed and/or provided by the Producing Party to the Receiving Party or a non-party without an obligation of confidentiality and not by inadvertence or mistake; (iv) with the consent of the Producing Party; or (v) pursuant to order of the Court. Further, nothing in this Agreement shall restrict a Receiving Party in any way from seeking discovery of a Producing Party's Discovery

Material produced in the above-captioned action from that Producing Party in another proceeding between any of the Parties to this case or their affiliates, provided that (1) the Discovery Material shall not be filed with the court in such other proceeding or otherwise disclosed in that other proceeding prior to its production in that proceeding, provided that the Receiving Party reserves the right to seek relief from this provision for good cause shown; (2) nothing in this provision affects any party's right to object to the production of Discovery Material in any other proceeding on any appropriate ground, including prior rulings of the court in any such proceeding; and (3) nothing in this provision is intended to authorize discovery that is otherwise impermissible in any other proceeding.  In the event of a dispute over the disclosure of Discovery Material to the court in another proceeding under clause 6(d)(1) above, after the parties have attempted in good faith to resolve such dispute, the parties shall submit such dispute to this Court for resolution.

7.    **DESIGNATING PROTECTED MATERIAL**

(a)    Available Designations.  Any Producing Party may designate Discovery Material with any of the following designations, provided that it meets the requirements for such designations as provided for herein:  "CONFIDENTIAL," "HIGHLY CONFIDENTIAL," or "HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY."

(b)    Written Discovery and Documents and Tangible Things.    Written discovery, documents (which include "electronically stored information," as that phrase is used in Rule 34 of the Federal Rules of Civil Procedure), and tangible things that meet the requirements for confidentiality may be so designated by placing the appropriate designation on every page of the written material prior to production.  For digital files being produced, the Producing Party may mark each viewable page or image with the appropriate designation, and mark the medium, container, and/or communication in which the digital files were contained.  In the event that

original documents are produced for inspection, the original documents shall be presumed "HIGHLY CONFIDENTIAL – OUTSIDE COUNSELS' EYES ONLY" during the inspection and re-designated, as appropriate during the copying process.

(c)　　Native Files.　Where electronic files and documents are produced in native electronic format, such electronic files and documents shall be designated for protection under this Agreement by appending to the file names or designators information indicating whether the file contains "CONFIDENTIAL," "HIGHLY CONFIDENTIAL," or "HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY" material, or shall use any other reasonable method for so designating Protected Materials produced in electronic format.　When electronic files or documents are printed for use at deposition, in a court proceeding, or for provision in printed form to an expert or consultant, the party printing the electronic files or documents shall affix a legend to the printed document corresponding to the designation of the Producing Party and including the production number and designation associated with the native file.　No one shall seek to use in this litigation a .tiff, .pdf or other image format version of a document produced in native file format without first (1) providing a copy of the image format version to the Producing Party so that the Producing Party can review the image to ensure that no information has been altered, and (2) obtaining the consent of the Producing Party, which consent shall not be unreasonably withheld.

(d)　　Depositions and Testimony.　Parties or testifying persons or entities may designate depositions and other testimony with the appropriate designation by indicating on the record at the time the testimony is given or by sending written notice of how portions of the transcript of the testimony is designated within thirty forty (40) days of receipt of the transcript of the testimony.　If no indication on the record is made, all information disclosed during a deposition shall be deemed "HIGHLY CONFIDENTIAL – OUTSIDE COUNSELS' EYES ONLY" until the

time within which it may be appropriately designated as provided for herein has passed.  Any Protected Material that is used in the taking of a deposition shall remain subject to the provisions of this Confidentiality Agreement, along with the transcript pages of the deposition testimony dealing with such Protected Material.  In such cases the court reporter shall be informed of this Confidentiality Agreement and shall be required to operate in a manner consistent with this Confidentiality Agreement.  In the event the deposition is videotaped, the original and all copies of the videotape shall be marked by the video technician to indicate that the contents of the videotape are subject to this Confidentiality Agreement, substantially along the lines of "This videotape contains confidential testimony used in this case and is not to be viewed or the contents thereof to be displayed or revealed except pursuant to the terms of the operative Confidentiality Agreement in this matter or pursuant to written stipulation of the parties."  Counsel for any Producing Party shall have the right to exclude from oral depositions, other than the deponent, deponent's counsel, the reporter and videographer (if any), any person who is not authorized by this Confidentiality Agreement to receive or access Protected Material based on the designation of such Protected Material.  Such right of exclusion shall be applicable only during periods of examination or testimony regarding such Protected Material.

8.      **<u>DISCOVERY MATERIAL DESIGNATED AS "CONFIDENTIAL"</u>**

(a)     A Producing Party may designate Discovery Material as "CONFIDENTIAL" if it contains or reflects confidential, proprietary, and/or commercially sensitive information.

(b)     Unless otherwise ordered by the Court, Discovery Material designated as "CONFIDENTIAL" may be disclosed only to the following:

(i)        The Receiving Party's Outside Counsel, such counsel's immediate paralegals and staff, and any copying or clerical litigation support services working at the direction of such counsel, paralegals, and staff;

(ii)        Each Party's in-house attorneys working on this Action, such counsel's paralegals and staff, and any copying or clerical litigation support services working at the direction of such attorneys, paralegals, and staff,

(iii)        Officers, directors, or employees of any Party in this Action who are deemed necessary by counsel to aid in the prosecution, defense, or settlement of this Action; and;

(iv)        Any outside expert or consultant retained by the Receiving Party to assist in this action, provided that disclosure is only to the extent necessary to perform such work; and provided that: (a) such expert or consultant has agreed to be bound by the provisions of the Confidentiality Agreement by signing a copy of Exhibit A; (b) such expert or consultant is not a current officer, director, or employee of a Party or of a competitor of a Party, nor anticipated at the time of retention to become an officer, director or employee of a Party or of a competitor of a Party; and (c) such expert or consultant accesses the materials in the United States only, and does not transport them to or access them from any foreign jurisdiction;

(v)        Witnesses or deponents, provided that: (a) disclosure is only to the extent necessary to conduct or prepare for depositions or testimony; and (b) such witness or deponent is (i) the author or recipient of the document, (ii) they had previously seen or received the designated Confidential Information prior to its designation as Confidential Information under this Agreement, or (iii) they are a current employee of or are currently retained by the party who produced the document;

(vi)    Court reporters, stenographers and videographers retained to record testimony taken in this action;

(vii)    The Court, jury, and court personnel;

(viii)    Graphics, translation, design, trial consulting personnel, or other litigation vendors and support personnel having first agreed to be bound by the provisions of the Confidentiality Agreement by signing a copy of Exhibit A;

(ix)    Mock jurors who have signed an undertaking or agreement agreeing not to publicly disclose Protected Material and to keep any information concerning Protected Material confidential;

(x)    Any mediator or arbitrator who is assigned to hear this matter, and his or her staff, subject to their agreement to maintain confidentiality to the same degree as required by this Confidentiality Agreement; and

(xi)    Any other person with the prior written consent of the Producing Party, who has agreed to be bound by the provisions of the Confidentiality Agreement by signing a copy of Exhibit A.

9.    **DISCOVERY MATERIAL DESIGNATED AS "HIGHLY CONFIDENTIAL"**

(a)    A Producing Party may designate Discovery Material as "HIGHLY CONFIDENTIAL" if it contains or reflects sensitive confidential, proprietary, and/or commercially sensitive information, the disclosure of which to persons other than the ones permitted pursuant to this Confidentiality Agreement would likely create a risk of harm that cannot be avoided by less restrictive means, in the good-faith view of the Producing Party.

(b)    Unless otherwise ordered by the Court, Discovery Material designated as "HIGHLY CONFIDENTIAL" may be disclosed only to the following:

(i)      The Receiving Party's Outside Counsel, such counsel's immediate paralegals and staff, and any copying or clerical litigation support services working at the direction of such counsel, paralegals, and staff;

(ii)      Not more than five (5) representatives of the Receiving Party who are in-house counsel for the Receiving Party, or their immediate paralegals and staff, to whom disclosure is reasonably necessary for this case, and provided that: (i) each such person has agreed to be bound by the provisions of this Agreement by signing a copy of Exhibit A; (ii) no such representative of the Receiving Party is involved in competitive decision-making, as defined by *U.S. Steel v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), and it is not reasonably foreseeable that they will be involved in competitive decision-making, regarding the issues in this action, ; and (iii) the identity of such in-house counsel is provided to the Designating Party at least fifteen days prior to the first disclosure of the Designating Party's Highly Confidential information, and the Designating Party does not object to disclosure to such in-house counsel by filing an appropriate motion with the Court during such time. For the avoidance of doubt, once the procedures herein for disclosing to in-house counsel a Designating Party's Highly Confidential information are satisfied, the Designating Party's Highly Confidential information may be freely shared with such in-house counsel without further notice;

(iii)      Any outside expert or consultant retained by the Receiving Party to assist in this action, provided that disclosure is only to the extent necessary to perform such work; and provided that: (a) such expert or consultant has agreed to be bound by the provisions of the Confidentiality Agreement by signing a copy of Exhibit A; (b) such expert or consultant is not a current officer, director, or employee of a Party or of a competitor of a Party, nor anticipated at the time of retention to become an officer, director or employee of a Party or of a competitor of a

Party; (c) such expert or consultant is not involved in competitive decision-making, as defined by *U.S. Steel v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), on behalf of a Party or a competitor of a Party; (d) such expert or consultant will not be retained by or otherwise provide advice to a Party or to a competitor of a Party for any purpose other than being retained as an expert in litigation for two (2) years following the final resolution of this case; and (e) such expert or consultant accesses the materials in the United States only, and does not transport them to or access them from any foreign jurisdiction;

(iv)    Witnesses or deponents, provided that: (a) disclosure is only to the extent necessary to conduct or prepare for depositions or testimony; and (b) such witness or deponent is (i) the author or recipient of the document, (ii) they had previously seen or received the designated Confidential Information prior to its designation as Confidential Information under this Agreement, or (iii) they are a current employee of or are currently retained by the party who produced the document;

(v)    Court reporters, stenographers and videographers retained to record testimony taken in this action;

(vi)    The Court, jury, and court personnel;

(vii)    Graphics, translation, design, trial consulting personnel, or other litigation vendors and support personnel having first agreed to be bound by the provisions of the Confidentiality Agreement by signing a copy of Exhibit A;

(viii)    Mock jurors who have signed an undertaking or agreement agreeing not to publicly disclose Protected Material and to keep any information concerning Protected Material confidential;

(ix)    Any mediator or arbitrator who is assigned to hear this matter, and his or her staff, subject to their agreement to maintain confidentiality to the same degree as required by this Confidentiality Agreement; and

(x)    Any other person with the prior written consent of the Producing Party, who has agreed to be bound by the provisions of the Confidentiality Agreement by signing a copy of Exhibit A.

10.    **DISCOVERY MATERIAL DESIGNATED AS "HIGHLY CONFIDENTIAL – OUTSIDE COUNSELS' EYES ONLY"**

(a)    A Producing Party may designate Discovery Material as "HIGHLY CONFIDENTIAL – OUTSIDE COUNSELS' EYES ONLY" if it contains or reflects information that is extremely confidential and/or sensitive in nature and the Producing Party reasonably believes that the disclosure of such Discovery Material other than as described in Section 10(b) is likely to cause economic harm or significant competitive disadvantage to the Producing Party. The Parties agree that the following information, if non-public, shall be presumed to merit the "HIGHLY CONFIDENTIAL – OUTSIDE COUNSELS' EYES ONLY" designation: trade secrets, pricing information, financial data, sales information, sales or marketing forecasts or plans, business plans, sales or marketing strategy, product development information, engineering documents, testing documents, employee information, and other non-public information of similar competitive and business sensitivity.

(b)    Unless otherwise ordered by the Court, Discovery Material designated as "HIGHLY CONFIDENTIAL – OUTSIDE COUNSELS' EYES ONLY" may be disclosed only to:

(i)    The Receiving Party's Outside Counsel, provided that such Outside Counsel is not involved in competitive decision-making, as defined by *U.S. Steel v. United States*,

730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), on behalf of a Party or a competitor of a Party, and such Outside Counsel's immediate paralegals and staff, and any copying or clerical litigation support services working at the direction of such counsel, paralegals, and staff;

(ii)    Any outside expert or consultant retained by the Receiving Party to assist in this action, provided that disclosure is only to the extent necessary to perform such work; and provided that:  (a) such expert or consultant has agreed to be bound by the provisions of the Confidentiality Agreement by signing a copy of Exhibit A; (b) such expert or consultant is not a current officer, director, or employee of a Party or of a competitor of a Party, nor anticipated at the time of retention to become an officer, director, or employee of a Party or of a competitor of a Party; and (c) such expert or consultant is not involved in competitive decision-making, as defined by *U.S. Steel v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), on behalf of a Party or a competitor of a Party; (d) such expert or consultant will not be retained by or otherwise provide advice to a Party or to a competitor of a Party for any purpose other than being retained as an expert in litigation for two (2) years following the final resolution of this case; and (e) such expert or consultant accesses the materials in the United States only, and does not transport them to or access them from any foreign jurisdiction;

(iii)    Witnesses or deponents, provided that: (a) disclosure is only to the extent necessary to conduct or prepare for depositions or testimony; and (b) such witness or deponent is (i) the author or recipient of the document, (ii) they had previously seen or received the designated Highly Confidential - Outside Counsels' Eyes Only prior to its designation as Highly Confidential - Outside Counsels' Eyes Only under this Agreement, or (iii) they are a current employee of or are currently retained by the party who produced the document;

(iv)     Court reporters, stenographers and videographers retained to record testimony taken in this action;

(v)     The Court, jury, and court personnel;

(vi)     Graphics, translation, design, trial consulting personnel, or other litigation vendors and support personnel having first agreed to be bound by the provisions of the Confidentiality Agreement by signing a copy of Exhibit A;

(vii)     Any mediator or arbitrator who is assigned to hear this matter, and his or her staff, subject to their agreement to maintain confidentiality to the same degree as required by this Confidentiality Agreement; and

(viii)     Any other person with the prior written consent of the Producing Party, who has agreed to be bound by the provisions of the Confidentiality Agreement by signing a copy of Exhibit A.

11.     **CHALLENGING DESIGNATIONS OF PROTECTED MATERIAL**

(a)     A Party shall not be obligated to challenge the propriety of any designation of Discovery Material under this Agreement at the time the designation is made, and a failure to do so shall not preclude a subsequent challenge thereto.

(b)     Any challenge to a designation of Discovery Material under this Agreement shall be written, shall be served on outside counsel for the Producing Party, shall particularly identify the documents or information that the Receiving Party contends should be differently designated, and shall state the grounds for the objection.  Thereafter, further protection of such material shall be resolved in accordance with the following procedures:

(i)     The objecting Party shall have thirty (30) days from the date of service of a challenge of a designation of Protected Material to  undertake the burden of conferring

either in person, in writing, or by telephone with the Producing Party claiming protection (as well as any other interested party) in a good faith effort to resolve the dispute.  The Producing Party shall have the burden of justifying the disputed designation;

(ii)    Failing agreement within the thirty-day period, the Receiving Party may within twenty (20) days thereafter bring a motion to the Court for a ruling that the Discovery Material in question is not entitled to the status and protection of the Producing Party's designation. The Parties' entry into this Agreement shall not preclude or prejudice either Party from arguing for or against any designation, establish any presumption that a particular designation is valid, or alter the burden of proof that would otherwise apply in a dispute over discovery or disclosure of information;

(iii)   The parties shall grant reasonable requests for extension of the deadlines in Section 11(b)(i)-(ii).

(iv)   Notwithstanding any challenge to a designation, the Discovery Material in question shall continue to be treated as designated under this Agreement until one of the following occurs: (a) the Party who designated the Discovery Material in question withdraws such designation in writing; or (b) the Court rules that the Discovery Material in question is not entitled to the designation.

12.    **DATA SECURITY**

(a)    The Receiving Party shall implement an information security management system ("ISMS") to safeguard Protected Materials, including reasonable and appropriate administrative, physical, and technical safeguards, and network security and encryption technologies governed by written policies and procedures, which shall comply with at least one of the following standards: (a) the International Organization for Standardization's 27001 standard;

(b) the National Institute of Standards and Technology's (NIST) 800-53 standard; (c) the Center for Internet Security's Critical Security Controls, Version 8; or (d) the most recently published version of another widely recognized industry or government cybersecurity framework. The Parties shall implement multi-factor authentication[1] for any access to Protected Materials and implement encryption of all Protected Materials in transit outside of network(s) covered by the Party's ISMS (and at rest, where reasonably practical).

(b)    Receiving Parties shall also implement restrictions regarding the disclosure or use of Producing Parties' Protected Material in any generative artificial intelligence ("GenAI"), large language model ("LLM"), or other similar technology ("Machine Learning Models"). Such restrictions must meet or exceed relevant industry standards and limit the collection, storage, disclosure, use of, or access to Producing Parties' Protected Material solely to personnel and purposes authorized by this Agreement. The restrictions must, at a minimum, prohibit the disclosure or use of Producing Parties' Protected Material in any such technology that is (1) accessible by anyone not permitted by this Agreement to have access or (2) will capture entered data in order to train what is accessible by anyone not permitted by this Agreement to have access. The Producing Parties' Protected Material may not be combined with documents or information from any other matter for purposes of the disclosure or use of Producing Parties' Protected Material in any Machine Learning Model.  Before a Receiving Party transfers any Producing Party's Protected Material to be analyzed by such technology, the Receiving Party shall make reasonably sure that it can delete all such Protected Material and any derivatives from such technology upon

---

[1] Multi-factor authentication is "[a]uthentication using two or more factors to achieve authentication. Factors are (i) something you know (e.g., password/personal identification number); (ii) something you have (e.g., cryptographic identification device, token); and (iii) something you are (e.g., biometric)." National Institute of Standards and Technology (NIST), Special Publication SP 1800-12, Appendix B at 63, available at https://nvlpubs.nist.gov/nistpubs/SpecialPublications/ NIST.SP.1800-12.pdf; *see also* NIST, Special Publication 800-53, at 132, available at https://nvlpubs.nist.gov/nistpubs/SpecialPublications/NIST.SP.800-53r5.pdf.

the Final Disposition of this action, as defined in Section 17.  The Receiving Party will be responsible for destroying such Protected Material following Final Disposition, including any Machine Learning Models trained on Protected Material.  This provision shall not be interpreted to preclude Producing Parties or Receiving Parties from using non-GenAI Technology-Assisted Review (TAR) tools to prioritize and streamline review of their own documents or analyze and review produced documents.

(c)    If a Receiving Party becomes aware of any unauthorized access, use, or disclosure of Protected Materials or devices containing Protected Materials ("Data Breach"), the Receiving Party shall promptly, and in no case later than 48 hours after learning of the Data Breach, notify the Producing Party in writing and fully cooperate with the Producing Party as may be reasonably necessary to (a) determine the source, extent, or methodology of such Data Breach, (b) to recover or to protect Protected Materials, and/or (c) to satisfy the Producing Party's legal, contractual, or other obligations.  For the avoidance of doubt, notification obligations under this Section arise when the Receiving Party both (a) learns of a Data Breach, and (b) learns that any of the Producing Party's Protected Materials are potentially subject to the Data Breach.  The notification obligations set forth in this Section do not run from the time the Data Breach itself.

(d)    The Receiving Party shall promptly comply with the Producing Party's reasonable request(s) that the Receiving Party investigate, remediate, and mitigate the effects of a Data Breach and any potential recurrence and take all reasonable steps to terminate and prevent unauthorized access.  The Receiving Party shall promptly provide any information that is reasonably requested by the Producing Party and that relates to any such Data Breach, including but not limited to, the Protected Material that was potentially impacted, underlying vulnerabilities or flaws that led to the Data Breach, start or end date of the Data Breach, date of discovery, and

specific actions taken to contain, mitigate, or remediate the Data Breach.  For the avoidance of doubt, nothing in this Section 12 is intended to create a waiver of any applicable privileges, including privileges applicable to a Party's investigation and remediation of a Data Breach.

(e)    If a Receiving Party is aware of a Data Breach, the Parties shall meet and confer in good faith regarding any adjustments that should be made to the discovery process and discovery schedule in this action, potentially including but not limited to (1) additional security measures to protect Discovery Material; (2) a stay or extension of discovery pending investigation of a Data Breach and/or implementation of additional security measures; and (3) a sworn assurance that Discovery Materials will be handled in the future only by entities not impacted by the Data Breach.  Further, the Receiving Party shall submit to reasonable discovery concerning the Data Breach.

(f)    In the event of a Data Breach affecting Protected Material of a Designating Party, at the Designating Party's request, the Receiving Party within ten business days shall provide a copy of its most recent ISMS policies and procedures that relate to the safeguarding of Protected Materials and that preceded the Data Breach.

(g)    The Receiving Party shall comply with this Section 12 and any applicable security, privacy, data protection, or breach notification laws, rules, regulations, or directives ("Applicable Data Law").  If the Receiving Party is uncertain whether a particular practice would conform with the requirements of this Section 12, it may meet and confer with the other Parties; if any Party believes that the proposed practice would violate this Confidentiality Agreement, it may, within ten business days, bring the dispute to the Court.  The Party challenging the proposed practice bears the burden of demonstrating a violation.

13.    **SUBPOENAS OR COURT ORDERS**

(a)    If at any time Protected Material is subpoenaed from a Receiving Party by any court, arbitral, administrative, or legislative body, the Party to whom the subpoena or other request is directed shall provide written notice thereof as soon as practicable to every Party who has produced such Protected Material and to its counsel following the discovery that the subpoena calls for Protected Material.  Within thirty (30) days after receipt of notification, the Designating Party shall inform the subpoenaed Party either that it (i) does not object to the production of the Protected Material, or (ii) will seek court protection to prevent the production.

(b)    The parties shall grant reasonable requests for an extension of the 30-day deadline in Section 13(a), including to account for the timing of the production sought by the subpoena.

14.    **FILING AND/OR DISCLOSING PROTECTED MATERIAL IN COURT**

(a)    Absent written permission from the Producing Party or a court order secured after appropriate notice to all interested persons, a Receiving Party may not file or disclose in the public record any Protected Material.

(b)    Any Party is authorized under the Federal Rules to file under seal with the Court any brief, document or materials that are designated as Protected Material under this Agreement.

(c)    In the event a Party wishes to use Protected Material in hearings, oral arguments, or other appearances in Court in the action, the Parties shall confer before any such instance on the procedures under which Protected Materials may be introduced into evidence or otherwise used.  Upon reaching agreement, the Parties shall submit their proposal to the Court and shall give reasonable notice of the terms of such agreement to each non-party producing any Protected Material, before that non-party's Protected Material is used in such hearings.  If the non-

party objects to the use of its Protected Material in such hearings, the Parties must work in good faith to resolve the non-party's concerns, and the non-party must consent to the use of its material, before the non-party's material may be used.

(d)     The Parties may seek entry of a separate agreement or order to govern use of Protected Material at trial.

14.     **DISCLOSURE OF PRIVILEGED MATERIAL**

(a)     The Parties shall jointly move the Court to enter a proposed order providing that, pursuant to Federal Rule of Evidence 502(d), the production of any Discovery Material, whether inadvertent or otherwise, in this proceeding shall not, for the purposes of this proceeding or any other federal or state proceeding, constitute a waiver by the Producing Party of any privilege applicable to that Discovery Material, including the attorney-client privilege, attorney work-product protection, or any other privilege or protection recognized by law.  The Parties' motion for a Rule 502(d) order, the proposed order, and this Agreement, shall be interpreted to seek, and to provide, the maximum protection allowed by Federal Rule of Evidence 502(d), and to disclaim the provisions of Federal Rule of Evidence 502(b).

(b)     Upon a request from any Producing Party who has produced Discovery Material that it believes is privileged and/or protected, each Receiving Party shall immediately destroy or return such Protected Material or Discovery Material and all copies to the Producing Party.

15.     **INADVERTENT FAILURE TO DESIGNATE PROPERLY**

(a)     The inadvertent failure by a Producing Party to designate Discovery Material as Protected Material with one of the designations provided for under this Agreement shall not waive any such designation provided that the Producing Party notifies all Receiving

Parties that such Discovery Material is protected under one of the categories of this Agreement promptly after the Producing Party learning of the inadvertent failure to designate. The Producing Party shall reproduce the Protected Material with the correct confidentiality designation within ten days upon its notification to the Receiving Parties.  Upon receiving the Protected Material with the correct confidentiality designation, the Receiving Parties shall return or securely destroy, at the Producing Party's option, all Discovery Material that was not designated properly.

(b)    A Receiving Party shall not be in breach of this Agreement for any use of such Discovery Material before the Receiving Party receives such notice that such Discovery Material is protected under one of the categories of this Agreement, unless an objectively reasonable person would have realized that the Discovery Material should have been appropriately designated with a confidentiality designation under this Agreement. Once a Receiving Party has received notification of the correct confidentiality designation for the Protected Material with the correct confidentiality designation, the Receiving Party shall treat such Discovery Material at the appropriately designated level pursuant to the terms of this Agreement.

16.    **<u>UNAUTHORIZED DISCLOSURE</u>**

(a)    In the event of a disclosure of any Discovery Material pursuant to this Agreement to any person or persons not authorized to receive such disclosure under this Confidentiality Agreement, the Party responsible for having made such disclosure, and each Party with knowledge thereof, shall immediately notify counsel for the Producing Party whose Discovery Material has been disclosed and provide to such counsel all known relevant information concerning the nature and circumstances of the disclosure.  The responsible disclosing Party shall also promptly take all reasonable measures to retrieve the improperly disclosed Discovery Material and to ensure that no further or greater unauthorized disclosure and/or use thereof is made.

(b)       Unauthorized or inadvertent disclosure does not change the status of Discovery Material or waive the right to hold the disclosed document or information as Protected. If a Producing Party has reason to believe that a Receiving Party has made an unauthorized or inadvertent disclosure of Discovery Material to a person not authorized to receive that Discovery Material (an "improper disclosure"), the Producing Party may inform the Receiving Party of that belief and of the basis for it, and the Receiving Party must confirm within five days whether an improper disclosure was made, and explain in writing the circumstances surrounding the suspected improper disclosure.  In the event that a party responsible for improperly disclosing any Discovery Material will not promptly take all reasonable measures to cure an improper disclosure of Protected Material, or in the event that the Producing Party of the improperly disclosed Discovery Material believes in good faith that the improper disclosure was not inadvertent, the Producing Party may file a motion to enforce the terms of this Confidentiality Agreement in this Action. If the Court declines to resolve such a motion and does not refer the motion to a magistrate judge, special master, mediator, or other neutral adjudicator, the Producing Party may initiate an arbitration proceeding administered by the JAMS before three arbitrators pursuant to its Comprehensive Arbitration Rules and Procedures and in accordance with the Expedited Procedures in those Rules, unless the claim is for less than $250,000, in which case the arbitration shall be before one arbitrator and shall be pursuant to JAMS' Streamlined Arbitration Rules and Procedures.  The Parties shall keep confidential: (i) the fact that any arbitration occurred; (ii) any awards awarded in the arbitration; (iii) all materials used, or created for use in the arbitration; and (iv) all other documents produced by another party in the arbitration and not otherwise in the public domain, except, with respect to each of the foregoing, to the extent that disclosure may be legally required (including to protect or pursue a legal right) or necessary to enforce or challenge an arbitration

award before a court or other judicial authority. The arbitrator(s) shall award to the prevailing Party, if any, its costs and expenses, including its attorneys' fees, and the prevailing Party shall also be entitled to its attorneys' fees and costs in any action to confirm and/or enforce any arbitration award in any judicial proceedings. Judgment on the award rendered by the arbitrators may be entered in any court having jurisdiction thereof.

(c)    The Producing Party shall be entitled to obtain from the party responsible for the improper disclosure of its Discovery Material any relief that the Court or the arbitrator deems just and proper.  In addition, the Court or the arbitrator may impose sanctions on the party responsible for the improper disclosure, which may continue to accrue during the length of time that the party responsible for the improper disclosure is aware of the improper disclosure and fails to promptly take all reasonable measures to cure the improper disclosure.  The parties hereby agree that any Producing Party whose Discovery Material is improperly disclosed will be irreparably harmed and monetary damages may not be adequate compensation if the party responsible for the improper disclosure fails to take all reasonable steps to cure the improper disclosure, and that in that circumstance, in addition to other remedies, the Producing Party shall be entitled to seek injunctive relief or specific performance to prevent any threatened or continued improper disclosure of the Producing Party's Discovery Material.

17.    **FINAL DISPOSITION**

(a)    Not later than one hundred days after the Final Disposition of this case, each Party shall return all Discovery Material of a Producing Party to the respective Outside Counsel of the Producing Party or destroy such Material, at the option of the Producing Party.  For purposes of this Agreement, "Final Disposition" occurs after an order, mandate, or dismissal finally terminating the above-captioned action with prejudice, including all appeals.

(b)     All Parties that have received any such Discovery Material shall certify in writing that all such materials have been returned to the respective Outside Counsel of the Producing Party or destroyed.  Notwithstanding the provisions for return of Discovery Material, Outside Counsel for the Parties will be entitled to retain court papers; deposition, hearing, and trial transcripts; deposition and trial exhibits; and work product (but not document productions), provided that the Parties and their counsel do not disclose the portions of those materials containing Protected Material except pursuant to court order or an agreement with the Party or non-party that produced the Protected Material or as otherwise permitted by this Agreement.

18.     **DISCOVERY FROM EXPERTS OR CONSULTANTS**

(a)     Drafts of reports of testifying experts, and reports and other written materials, including drafts, of consulting experts, shall not be discoverable.

(b)     Drafts of reports and other materials exempt from discovery under this Section 18 shall be treated as attorney work product for the purposes of this case and Confidentiality Agreement.

19.     **MISCELLANEOUS**

(a)     Right to Further Relief.  Nothing in this Agreement abridges the right of any person to seek its modification in the future.  By entering into this Agreement, the Parties do not waive the right to argue that certain material may require additional or different confidentiality protections than those set forth herein.

(b)     Termination of Matter and Retention of Jurisdiction.  The Parties agree that the terms of this Confidentiality Agreement shall survive and remain in effect after the Final Determination of the above-captioned matter.  The Court shall retain jurisdiction after Final

Determination of this matter to hear and resolve any disputes arising out of this Confidentiality Agreement.

(c)     Successors.  This Agreement shall be binding upon the Parties hereto, their attorneys, and their successors, executors, personal representatives, administrators, heirs, legal representatives, assigns, subsidiaries, divisions, employees, agents, retained consultants and experts, and any persons or organizations over which they have direct control.

(d)     Right to Assert Other Objections. By entering into this Confidentiality Agreement, no Party waives any right it otherwise would have to object to disclosing or producing any information or item.  Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Confidentiality Agreement.  This Agreement shall not constitute a waiver of the right of any Party to claim in this action or otherwise that any Discovery Material, or any portion thereof, is privileged or otherwise non-discoverable, or is not admissible in evidence in this action or any other proceeding.

(e)     Burdens of Proof.  Notwithstanding anything to the contrary above, nothing in this Confidentiality Agreement shall be construed to change the burdens of proof or legal standards applicable in disputes regarding whether particular Discovery Material is confidential, which level of confidentiality is appropriate, whether disclosure should be restricted, and if so, what restrictions should apply.

(f)     Modification and Enforcement.  This Agreement is subject to court order based upon public policy or other considerations. The Parties are responsible for the interpretation and enforcement of this Agreement, and disputes concerning Protected Material, however designated, produced under the protection of this Agreement may be resolved by the Court.

**CONFIDENTIALITY AGREEMENT – PAGE 26**

(g)    <u>Discovery Rules Remain Unchanged</u>.  Nothing herein shall alter or change in any way the discovery provisions of the United States District Court for the Northern District of Texas, or the Court's orders in the above-captioned case.  Identification of any individual pursuant to this Confidentiality Agreement does not make that individual available for deposition or any other form of discovery outside of the restrictions and procedures of the Northern District of Texas, or the Court's orders in the above-captioned case.

Dated: December __, 2025

Respectfully submitted,

*/s/* _____

Bradley Justus*
DC Bar No. 1007988
AXINN, VELTROP & HARKRIDER LLP
1901 L Street NW
Washington, DC 20036
T: (202) 912-4700
F: (202) 912-4701
bjustus@axinn.com

Caroline P. Boisvert*
CT State Bar No. 441323
AXINN, VELTROP & HARKRIDER LLP
90 State House Square
Hartford, CT 06103
T: (860) 275-8100
F: (860) 275-8101
cboisvert@axinn.com

*admitted *pro hac vice*

*/s/* _____

Craig M. Reiser*
NY State Bar No. 4886735
Scott A. Eisman*
NY State Bar No. 4905287
Eva Yung*
NY State Bar No. 5497300
Christopher Erickson*
NY State Bar No. 5800628
AXINN, VELTROP & HARKRIDER LLP
630 Fifth Avenue, 33rd Floor
New York, NY 10111
T: (212) 728-2200
F: (212) 728-2201
creiser@axinn.com
seisman@axinn.com
eyung@axinn.com
cerickson@axinn.com

*/s/* _____

Judd E. Stone II
Texas Bar No. 24076720
Christopher D. Hilton
Texas Bar No. 24087727
STONE | HILTON PLLC
600 Congress Ave., Ste. 2350
Austin, TX 78701
T: (737) 465-3897
judd@stonehilton.com
chris@stonehilton.com

*Attorneys For Plaintiffs X Corp. and X.AI LLC*

**CONFIDENTIALITY AGREEMENT – PAGE 28**

Dated: December __, 2025

Respectfully submitted,

/s/
Dee J. Kelly, Jr.
State Bar No. 11217250
dee.kelly@kellyhart.com
Julia G. Wisenberg
State Bar No. 24099146
julia.wisenberg@kellyhart.com
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: (817) 332-2500
Facsimile: (817) 878-9280

*Attorneys for Defendant Apple Inc.*


/s/

Michael K. Hurst
mhurst@lynnllp.com
Texas Bar No. 10316310
Chris W. Patton
cpatton@lynnllp.com
Texas Bar No. 24083634
LYNN PINKER HURST &
SCHWEGMANN LLP
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone: (214) 981-3800
Facsimile: (214) 981-3839

*Attorneys for Defendants OpenAI, Inc.,
OpenAI, L.L.C., and OpenAI Opco, LLC*

**CONFIDENTIALITY AGREEMENT – PAGE 29**

## **EXHIBIT A**

I, _____, acknowledge and declare that I have received a copy of the Confidentiality Agreement ("Agreement") in X Corp. and X.AI LLC v. Apple Inc., OpenAI, Inc., OpenAI, L.L.C., and OpenAI OpCo, LLC, in the United States District Court for the Northern District of Texas, Case No. 4:25-cv-00914-P.  Having read and understood the terms of the Agreement, I agree to be bound by the terms of the Agreement and consent to the jurisdiction of said Court for the purpose of any proceeding to enforce the terms of the Agreement.  I acknowledge and agree not to use, directly or indirectly, any information I may learn from Discovery Material in this case for any other purpose.  I also acknowledge that if I do disclose any information learned from Discovery Material in this case for any other purpose, the Producing Party may seek relief pursuant to Section 16(c) of the Agreement.

Name of individual: _____

Present occupation/job description: _____

_____

_____

Name of Company or Firm: _____

Address:_____

Dated: _____

_____

[Signature]

**CONFIDENTIALITY AGREEMENT – PAGE 30**