**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

|  |  |
|---|---|
| X CORP. and X.AI LLC, | |
| Plaintiffs, | |
| v. | **Civil Action No. 4:25-cv-00914-P** |
| APPLE INC.; OPENAI, INC.; OPENAI, L.L.C.; and OPENAI OPCO, LLC, | |
| Defendants. | |

**BRIEF IN SUPPORT OF MOTION TO COMPEL DISCOVERY
FROM THE OPENAI DEFENDANTS AND FOR EXPEDITED BRIEFING**

Bradley Justus
AXINN, VELTROP & HARKRIDER LLP
1901 L Street NW
Washington, DC 20036

Caroline P. Boisvert
AXINN, VELTROP & HARKRIDER LLP
90 State House Square
Hartford, CT 06103

Craig M. Reiser
Scott A. Eisman
Eva Yung
Christopher Erickson
AXINN, VELTROP & HARKRIDER LLP
630 Fifth Avenue, 33rd Floor
New York, NY 10111

Judd E. Stone II
Christopher D. Hilton
STONE | HILTON PLLC
600 Congress Ave., Ste. 2350
Austin, TX 78701

Noah Schottenstein
STONE | HILTON PLLC
301 Commerce St., Suite 2360
Fort Worth, TX 76102

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...........................................................................................1

BACKGROUND ...........................................................................................................3

ARGUMENT ...............................................................................................................8

   I. The Court Should Order OpenAI To
   Substantially Complete Document Production By January 15.................................9

   II. OpenAI Must Search For Responsive
   Documents Using Plaintiffs' Search Terms and Data Sources...............................12

   III. Plaintiffs Are Entitled To Source Code
   To Rebut Defendants' Feasibility Arguments ......................................................13

   IV. The Court Should Expedite Briefing Of This Motion .....................................15

CONCLUSION...........................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                                                    **Page(s)**

*Apple Inc. v. Samsung Elecs. Co.*,
   No. 12-CV-0630-LHK PSG, 2013 WL 1563253 (N.D. Cal. Apr. 12, 2013) .........................14

*Doe v. Columbia-Brazoria Indep. Sch. Dist.*,
   855 F.3d 681 (5th Cir. 2017) .................................................................................................8

*Dondi Properties Corp. v. Commerce Savings & Loan Ass'n*,
   121 F.R.D. 284 (N.D. Tex. 1988) .........................................................................................8

*Eagle Railcar Servs.-Roscoe, Inc. v. NGL Crude Logistics, LLC*,
   No. 1:16-CV-0153, 2018 WL 2317696 (N.D. Tex. May 22, 2018) .......................................15

*FTC v. Meta Platforms, Inc.*,
   775 F. Supp. 3d 16 (D.D.C. 2024) .......................................................................................10

*Liveuniverse, Inc. v. Myspace, Inc.*,
   No. CV 06-6994AHMRZX, 2007 WL 6865852 (C.D. Cal. June 4, 2007),
   *aff'd*, 304 F. App'x 554 (9th Cir. 2008) ..............................................................................10

*Mills v. FIS 2 LLC*,
   No. 3:20-CV-1141, 2025 WL 2771519 (N.D. Ohio Sept. 29, 2025) .....................................10

*C.K. ex rel. P.K. v. Bassett*,
   No. 22-CV-1791 (BMC)(JMW), 2023 WL 4086333 (E.D.N.Y. June 20, 2023) ..................11

*Samsung Elecs. Am. Inc. v. Chung*,
   325 F.R.D. 578 (N.D. Tex. 2017) .........................................................................................9

*United States v. Google LLC*,
   747 F. Supp. 3d 1 (D.D.C. 2024) .........................................................................................9

*Zenimax Media, Inc. v. Oculus VR, LLC*,
   No. 3:14-CV-1849-P (BF), 2015 WL 11120971 (N.D. Tex. Nov. 4, 2015) ..........................14

## PRELIMINARY STATEMENT

OpenAI and Apple have joined forces to cement their monopolies and kill competition.[1] As part of their anticompetitive scheme, Defendants agreed to make OpenAI's generative AI chatbot, ChatGPT, the sole generative AI chatbot natively integrated into Apple Intelligence, the AI system that runs on Apple devices such as the iPhone and iPad.

On October 10, 2025, Plaintiffs served their first set of discovery requests on Defendants, seeking information about, among other things, Defendants' anticompetitive conduct, the markets in which Defendants operate, and Defendants' power in those markets. Although Plaintiffs and OpenAI have amicably resolved many disputes concerning Plaintiffs' discovery requests, OpenAI forced an impasse on several critical topics, including the timing of OpenAI's productions, which OpenAI refuses to substantially complete in time for Plaintiffs' experts to provide meaningful disclosures. Given the schedule the Court has set, which requires Plaintiffs to serve their initial expert disclosures and reports next month, these issues are urgent and require immediate court intervention.

*First*, the Court should compel OpenAI to substantially complete production of the most critical documents that Plaintiffs sought in their first set of requests for production—served nearly three months ago—by January 15, 2026. That deadline is needed so that Plaintiffs and their experts have sufficient time to review and analyze OpenAI's productions before Plaintiffs' February 20 deadline to serve initial expert reports. OpenAI's assertion that it will have to review and produce many of those documents in less than a month is a problem of its own making: OpenAI has

---

[1] "X" refers to X Corp. and "xAI" refers to X.AI LLC. X and xAI are referred to collectively as "Plaintiffs." "Apple" refers to Apple Inc., and "OpenAI" refers to OpenAI Foundation (f/k/a OpenAI, Inc.); OpenAI, L.L.C.; and OpenAI OpCo, LLC. Apple and OpenAI are referred to collectively as "Defendants. "App'x Tab ___" refers to the tab in the accompanying Appendix.

produced just 38 documents in the nearly three months since Plaintiffs served their initial discovery requests, instead dragging out the meet-and-confer process and refusing to produce a single document until the parties agreed on confidentiality. The schedule in this case—with expert reports due next month and trial set for later this year—can abide no more delay, which has prejudiced and continues to prejudice Plaintiffs.

*Second*, separate and apart from substantial completion of key categories of information, the Court should order OpenAI to search for, review, and produce documents responsive to Plaintiffs' initial requests using Plaintiffs' proposed search terms and data sources. OpenAI has refused to even meet and confer on Plaintiffs' proposed search terms and data sources unless Plaintiffs agree to discuss OpenAI's proposed search terms and data sources for its discovery requests to Plaintiffs. OpenAI's position is untenable because OpenAI's initial expert reports are not due until a month after Plaintiffs' deadline, and OpenAI served its discovery requests nearly a month after Plaintiffs served theirs. OpenAI's refusal to negotiate about search terms and custodians should be seen for the stall tactic that it is. The Court should order OpenAI to use the search terms and data sources that Plaintiffs have proposed—terms that OpenAI represented capture a mere 800,000 documents, which is hardly disproportionate to the needs of this multibillion-dollar case.

*Third*, the Court should compel OpenAI to produce source code. OpenAI has argued that Plaintiffs' claims are deficient because Plaintiffs have not shown that xAI's generative AI chatbot, Grok, can feasibly integrate with Apple Intelligence. To test that defense, Plaintiffs requested source code from both Defendants. When Defendants demurred, Plaintiffs offered to withdraw their requests for source code if they agreed not to contest the feasibility of integrating Grok or other chatbots into Apple Intelligence. But OpenAI has rebuffed repeated requests to stipulate that

it will not raise product-design arguments about the infeasibility of Grok being natively integrated into Apple Intelligence, including about the difficulty or costs of doing so. In other words, despite taking the position in their unsuccessful motions to dismiss that OpenAI's ChatGPT was simply the "first" chatbot integrated with Apple Intelligence and that other integrations were in the offing, OpenAI has refused Plaintiffs' invitation to take the feasibility issue off the table. OpenAI cannot have it both ways: if it intends to contest feasibility, it must allow Plaintiffs to take discovery that will disprove its contention—just as courts have routinely done. Moreover, Plaintiffs are willing to limit any source-code review to outside counsel and their experts, so confidentiality should not be a concern.

*Finally*, the Court should order expedited briefing on this Motion in order to ensure that document production can be substantially completed by January 15, 2026—sufficiently in advance of the February 20 deadline to serve Plaintiffs' initial expert disclosures.

The parties are headed to trial in less than a year. OpenAI continues to delay, after dragging out the meet-and-confer process and refusing for months to sign a confidentiality agreement based on a single provision having to do with litigation in another matter and court. The Court should direct OpenAI to comply with its discovery obligations.

## <u>BACKGROUND</u>

X and xAI have sued Defendants for a host of anticompetitive conduct, including Defendants' unlawful exclusive agreement, announced in June 2024, which makes ChatGPT (the generative AI chatbot of monopolist OpenAI) the sole generative AI chatbot natively integrated into Apple Intelligence (the AI system on monopolist Apple's products). *See* Compl. ¶¶ 70-78, 90-97, 103-115. As a result, other generative AI chatbots, like xAI's Grok, are foreclosed from prompts from users of Apple Intelligence, and are precluded from native distribution of their

chatbot on the iPhone and other Apple devices. Through the unlawful agreement, Defendants unlawfully monopolize and conspire to monopolize their markets. Defendants' other illegal conduct, including Apple's use of its App Store as a weapon to harm competitors, reinforces Defendants' anticompetitive scheme and independently violates the antitrust laws. *See id.* ¶¶ 79-89.

Under the Court's scheduling order, Plaintiffs' initial expert designations and reports are due next month, on February 20, 2026. Dkt. No. 61 at 1. For Plaintiffs' experts to be able to rely on materials from the factual record in this case (e.g., documents from Defendants), discovery is required. Anticipating this schedule, Plaintiffs served their first sets of requests for production (the "First RFPs"), along with interrogatories (the "First Interrogatories") and requests for admission (the "First RFAs," and with the First RFPs and First Interrogatories, the "Initial Requests"), on October 10, 2025.

The First RFPs sought discovery on, among other things, topics relevant to Plaintiffs' anticipated expert reports. For instance, the First RFPs sought documents about how the exclusive agreement between Apple and OpenAI has affected competition in the market for generative AI chatbots; documents analyzing market share in that market; documents about Apple's de-preferencing of rivals in the App Store; and several categories of data, such as data on market share and on ChatGPT's prompt volume, subscriptions, and downloads. *See* App'x Tab 1, at App. 21-22, 24. In addition, after Defendants refused not to claim that their exclusion of ChatGPT's competitors from Apple Intelligence is justified by the infeasibility of integrating those other generative AI chatbots into Apple's operating systems, Plaintiffs requested technical information, such as source code, in RFP Nos. 6(c)-(d) and 34 (the "Source Code Requests").

4

Given the schedule that the Court set—with Plaintiffs' expert reports due just over three months after the deadline for Defendants to respond and object to the Initial Requests—Plaintiffs sought to move expeditiously. To that end, Plaintiffs sought to schedule meet-and-confers with Defendants about their responses and objections ("R&Os") to Plaintiffs' First RFPs before those R&Os were due. The parties then conferred soon after Defendants served their R&Os—with Plaintiffs ultimately conferring seven times with each Defendant between November 14, 2025, and January 2, 2026. By the second week of December, the parties had resolved many of the issues raised in the R&Os, though some still remained. Thus, on December 9, Plaintiffs sent OpenAI a letter aimed at identifying and resolving all open issues, and asking OpenAI to commit to substantially completing document productions in response to the First RFPs by January 15, 2026—roughly a month before Plaintiffs' expert reports are due. App'x Tab 2, at App. 47. With that letter, Plaintiffs also sent OpenAI proposed search terms for identifying responsive documents and data sources over which to run those search terms. App'x Tab 3.

Although Plaintiffs and OpenAI have continued to resolve open issues in the weeks since Plaintiffs sent their letter, key disputes remain.[2] Three are relevant to this Motion.

*First*, OpenAI refuses to commit to a January 15 substantial-completion deadline. Plaintiffs have made clear that they are not asking for OpenAI to produce all documents responsive to the First RFPs by January 15. Rather, Plaintiffs have explained that they are seeking the categories of documents that are most critical to Plaintiffs' experts' preparation of expert reports (the

---

[2] Unlike OpenAI, Apple has not reached an impasse with Plaintiffs on these issues. Good-faith negotiations between Plaintiffs and Apple over the issues raised in this Motion are ongoing. Although Plaintiffs hope that they and Defendants can resolve all remaining disputes, they reserve the right to move to compel additional information to which they are entitled.

"Substantial-Completion Categories"). Those materials—many of which could seemingly be gathered from centrally located files—include:

- Documents regarding the effect of the Apple-OpenAI agreement on competition in the market for generative AI chatbots (RFP Nos. 2, 8);

- Defendants' analyses of competition in the market for generative AI chatbots (RFP Nos. 11, 15, 16, 25, 28);

- Documents regarding entry barriers in the market for generative AI chatbots (RFP Nos. 13, 16, 27, 28, 29);

- Documents regarding the promotion, distribution, treatment, performance, and ranking of the ChatGPT app in the Apple App Store (RFP Nos. 1, 9, 32);

- Documents regarding the potential integration of Grok, or any other non-ChatGPT chatbot, into Apple Intelligence (RFP Nos. 6, 33, and 34); and

- Data relating to the above document categories, including data on market share (RFP No. 15); actual and projected changes in prompt volume, subscriptions, and downloads due to the integration (RFP Nos. 8, 24); and the value of data provided to OpenAI under the Apple-ChatGPT integration (RFP No. 8).

App'x Tab 4, at App. 66. Despite that explanation, OpenAI will not commit to a January 15 deadline. While OpenAI has claimed that such a deadline would be unreasonable, it has provided no hit reports, and the indication of volume it has given is that "initial testing" of the "search parameters" Plaintiffs proposed on December 9 "would identify well in excess of 800,000 documents for review." App'x Tab 5, at App. 77. But OpenAI has had nearly a month to review these documents—which it has known Plaintiffs were seeking since October—and, as noted, OpenAI need not produce all of them to substantially complete the production of documents that Plaintiffs have requested.

As a result of OpenAI's refusal to commit to substantially completing productions by January 15, Plaintiffs are left with the meager 244 documents that Defendants have produced so far—only 38 of which OpenAI has produced. And even those documents are incomplete. OpenAI

produced the main Apple-OpenAI agreement, without producing other documents that the agreement expressly references or contemplates.

*Second*, OpenAI will not discuss the search terms and data sources that Plaintiffs have proposed unless Plaintiffs will simultaneously discuss the search terms and data sources that OpenAI has proposed. OpenAI was initially willing to discuss search terms and data sources, engaging on December 19 in a high-level discussion of the data sources Plaintiffs had proposed and promising a counterproposal on data sources and search terms within days. *See* App'x Tab 6, at App. 89. But OpenAI did not send its counterproposal until 10:28 p.m. Eastern Time on December 24, in an email that included for the first time OpenAI's proposed search terms for its discovery requests to Plaintiffs. When Plaintiffs asked to discuss OpenAI's counterproposal, OpenAI responded that it would do so only as part of a discussion "on the proposed search terms and custodians to be run by *both* OpenAI and by Plaintiffs." App'x Tab 7, at App. 104 (emphasis added). Plaintiffs explained why it was improper for OpenAI to treat itself and Plaintiffs as similarly situated. Yet OpenAI still continues to refuse to confer about Plaintiffs' proposed search terms independent of a meet-and-confer about OpenAI's own requests.

*Third*, OpenAI refuses to produce source code. Plaintiffs have repeatedly tried to resolve this dispute, to no avail. For instance, Plaintiffs served requests for admission asking OpenAI to admit that "Apple is capable of integrating Grok into Apple Intelligence." App'x Tab 8, at App. 113. OpenAI responded in a manner that allows it to later raise feasibility arguments. In yet another effort to resolve the dispute, Plaintiffs offered to withdraw the Source Code Requests if Defendants would stipulate that they would not raise product-design arguments, including arguments about technical difficulty or feasibility issues with integrating products other than ChatGPT (including Grok) with Apple Intelligence. App'x Tab 2, at App. 47. Absent such a stipulation, Plaintiffs

7

explained, Plaintiffs would need Defendants' source code to rebut product-design arguments, including by showing that other generative AI chatbots could feasibly be integrated into Apple Intelligence. OpenAI has continued to insist that it will not produce source code, while refusing to sign such a stipulation or otherwise commit to not making product-design or integration arguments. At most, OpenAI will stipulate that it will not make any arguments based on any party's source code—a stipulation that would still allow OpenAI to raise product-design and feasibility arguments, such as by claiming that it would be impractical or costly to integrate Grok into Apple Intelligence. *See* App'x Tab 4, at App. 62, 64.

Plaintiffs' efforts to resolve these disputes without judicial intervention were in the spirit of compromise and consistent with *Dondi Properties Corp. v. Commerce Savings & Loan Ass'n*, 121 F.R.D. 284 (N.D. Tex. 1988) (en banc), but Plaintiffs cannot wait any longer to seek relief. They therefore bring this motion now to ensure their ability to comply with the case schedule that the Court has set. In so doing, Plaintiffs move to compel only as to three items in an effort to promptly obtain crucial discovery sufficiently in advance of Plaintiffs' deadline to serve their initial expert reports.

## **ARGUMENT**

The Court should grant the Motion to stop OpenAI from avoiding its discovery obligations in a way that flouts the standards in this District and frustrates this Court's scheduling order. First, using its "inherent power to control its own docket," including "'exceedingly wide' discretion in scheduling" of discovery matters, *Doe v. Columbia-Brazoria Indep. Sch. Dist.*, 855 F.3d 681, 687 (5th Cir. 2017) (citation omitted), the Court should compel OpenAI to substantially complete document production in response to Plaintiffs' First RFPs by January 15. Second, exercising its power to compel the production of discoverable materials, the Court should order OpenAI to use

8

the search terms and data sources Plaintiffs proposed, given OpenAI's refusal to negotiate those terms and sources. *See generally Samsung Elecs. Am. Inc. v. Chung*, 325 F.R.D. 578, 589 (N.D. Tex. 2017) (court may order "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," taking into account "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit" (quoting Fed. R. Civ. P. 26(b)(1))). Third, wielding that same power, the Court should order OpenAI to produce source code that Plaintiffs need to rebut the product-design defenses that OpenAI has raised and refuses to withdraw.

## I.    The Court Should Order OpenAI To <u>Substantially Complete Document Production By January 15</u>

The Court should compel OpenAI to substantially complete document production by January 15. Doing so will help ensure that Plaintiffs and their experts have most of the documents they need with enough time to review them before Plaintiffs' February 20 deadline to serve initial expert reports. Indeed, the documents and data that Plaintiffs seek by January 15—covering topics such as the anticompetitive effects of Defendants' agreement, market share, entry barriers, and changes in the volume of inputs—are precisely the sorts of materials that experts rely on in antitrust cases like this one. *See, e.g.*, *United States v. Google LLC*, 747 F. Supp. 3d 1, 153-71 (D.D.C. 2024) (relying on expert reports to determine that the exclusive agreements at issue had anticompetitive effects, including market foreclosure, preventing rivals from achieving scale, and diminishing incentives of rivals to invest and innovate); *id.* at 119-21 (agreeing with expert reports that high capital costs, among other factors, were high barriers to entry in the search engine market); *id.* at 57 (citing Google's internal evaluations of its and its competitors' market shares);

9

*id.* at 136-39 (using expert reports on Google's market share in the general search text ads market as evidence of market power); *FTC v. Meta Platforms, Inc.*, 775 F. Supp. 3d 16, 48-52 (D.D.C. 2024) (relying on expert reports about market share and barriers to entry, among other things, in denying defendant's motion for summary judgment on those issues); *see also Liveuniverse, Inc. v. Myspace, Inc.*, No. CV 06-6994AHMRZX, 2007 WL 6865852, at *7 (C.D. Cal. June 4, 2007) (using website visits as a measurement for market share), *aff'd*, 304 F. App'x 554 (9th Cir. 2008). It is thus eminently reasonable to insist that OpenAI, which has known since October 10 what documents Plaintiffs are seeking through their First RFPs, produce this information.

Yet OpenAI has produced almost none of it. Defendants have turned over just the main Apple-OpenAI agreement and a handful of ancillary documents. *See supra* p. 6. And even that scant set of materials—produced for the first time on December 22—omits documents that OpenAI should have already produced, such as documents incorporated by reference into the Apple-OpenAI agreement. *See supra* p. 6. OpenAI's stonewalling is thus likely to leave Plaintiffs' experts with very little of the information they need for their expert reports. *See Mills v. FIS 2 LLC*, No. 3:20-CV-1141, 2025 WL 2771519, at *2 (N.D. Ohio Sept. 29, 2025) (finding plaintiffs' failure to disclose their expert reports by the deadline was substantially justified and concluding that defendants could not credibly claim to have expected plaintiffs to meet that deadline when the parties "had exchanged very limited discovery").

OpenAI's reasons for resisting a January 15 substantial-completion deadline are unavailing. OpenAI's chief contention is that substantially completing production by January 15 would be burdensome. *See* App'x Tab 5, at App. 77. OpenAI, however, has not substantiated that claim—with hit counts or otherwise. The only figure OpenAI has provided is its December 16 claim that "initial testing" of Plaintiffs' proposed "search parameters would identify well in excess

of 800,000 documents for review." *Id.* But parties in complex litigation routinely review that many documents in a short timeframe,[3] and in any event, Plaintiffs are not seeking complete review and production by January 15—only substantial completion, *see supra* pp. 5-6. More broadly, OpenAI has known about the case schedule and Plaintiffs' First RFPs since October. Since then, OpenAI has deployed a variety of stall tactics, such as refusing to sign a confidentiality agreement, dragging out the meet-and-confer process, and most recently refusing to discuss Plaintiffs' proposed search terms and data sources. Rather than delaying, OpenAI should have been preparing productions that would enable the case to remain on track, including by gathering "go-get" documents responsive to many of Plaintiffs' requests, such as requests for data. OpenAI cannot now claim burden after failing for months to take those steps.

Nor can OpenAI deflect by insisting that the parties agree to a post-January 15 deadline for both Plaintiffs and Defendants to substantially complete productions. *See* App'x Tab 9, at App. 116(stating that OpenAI is "open to considering some sort of agreement with respect to a substantial completion date, but any such agreement would need to be reciprocal and tailored to fit the scope of discovery to be completed by all parties"). For one thing, a post-January 15 deadline would not give Plaintiffs' experts sufficient time with OpenAI's documents to produce their expert reports. For another, that proposal wrongly equates Plaintiffs and OpenAI. The parties are not similarly situated: Plaintiffs served their Initial Requests nearly a month before OpenAI served any requests; Plaintiffs' initial expert reports are due a month before OpenAI's, which are due on March 23, 2026, *see* Dkt. No. 61 at 1; Plaintiffs proposed data sources and search terms on

---

[3] Indeed, parties have *produced* millions of documents—meaning that they reviewed many more—in a matter of months. *See, e.g.*, *C.K. ex rel. P.K. v. Bassett*, No. 22-CV-1791 (BMC)(JMW), 2023 WL 4086333, at *7 (E.D.N.Y. June 20, 2023) (collecting cases showing that "parties have produced more than the 1.2 million documents at issue here in time periods shorter than or comparable to 6 months").

December 9, well in advance of the holidays, whereas OpenAI proposed data sources on December 19 and proposed search terms late at night on Christmas Eve; and Plaintiffs spent a month conferring with OpenAI about OpenAI's R&Os to the Initial Requests and have largely concluded that process, whereas Plaintiffs and OpenAI are still conferring about OpenAI's discovery requests. *See* App'x Tab 4, at App. 60. It is therefore unreasonable and unfair to tie Plaintiffs' and Defendants' substantial-completion deadlines together, as it would reward OpenAI's gamesmanship and give Plaintiffs significantly less time both to produce documents and to review the opposing side's documents in advance of expert reports.

Tying Plaintiffs' and Defendants' substantial-completion deadlines together also would not serve efficiency goals. OpenAI, as a Defendant, is uniquely in possession of evidence of its own misconduct, including evidence about its monopolization of the generative AI chatbot market and its exclusive deal with Apple. OpenAI need not—and should not—await production from Plaintiffs before turning over those materials.

The bottom line is that, with Plaintiffs' expert-disclosure deadline fast approaching, OpenAI has given Plaintiffs almost nothing to work with. The Court should order OpenAI to devote its ample resources to substantially completing document production, by producing documents responsive to the RFPs in the Substantial Completion Categories, by January 15.

## II.     OpenAI Must Search For Responsive Documents Using Plaintiffs' Search Terms and Data Sources

The Court should order OpenAI to run Plaintiffs' proposed search terms over Plaintiffs' proposed data sources and produce documents responsive to Plaintiffs' First RFPs. Plaintiffs gave OpenAI a chance to negotiate different search parameters by sending a proposal on December 9. OpenAI did not send a counterproposal until 10:28 p.m. Eastern Time on Christmas Eve. That counterproposal rewrote Plaintiffs' proposed search terms—striking some altogether—and

proposed alternative data sources (in addition to some on which Plaintiffs and OpenAI agreed), but offered no explanation why OpenAI made the changes it did. App'x Tab 10, at App. 134. When Plaintiffs pressed OpenAI for an explanation and asked to meet and confer, OpenAI responded, more than four full days later, refusing to discuss its own counterproposal unless the discussion also covered "search terms and custodians to be run . . . by Plaintiffs." App'x Tab 7, at App. 104. And while Plaintiffs have repeatedly explained why the discussions need not occur together, given how the parties are differently situated, *see supra* pp. 11-12, OpenAI has not budged.

OpenAI should not reap the benefits of its obstruction. If OpenAI wishes to hold the discovery process hostage by demanding that Plaintiffs agree to search terms and data sources simultaneously with OpenAI—even though OpenAI waited an extra month to serve discovery requests and has an extra month to provide expert reports—then the Court should intervene. The appropriate course is for OpenAI to use the search terms and data sources that it refused to negotiate as a starting point to search for responsive documents.[4] As noted above, such a search will yield roughly 800,000 documents—a reasonable number for OpenAI to review in the first instance. OpenAI should have to review those documents and produce all nonprivileged documents that are responsive.

### III. Plaintiffs Are Entitled To Source Code To Rebut Defendants' Feasibility Arguments

In disputing that the Apple-OpenAI agreement is exclusive, Defendants claimed in their motions to dismiss that "Apple's deal with OpenAI isn't exclusive" because Apple "intend[s] to add support for other AI models in the future." Dkt. No. 41 at 11; *accord* Dkt. No. 37 at 10. Speaking out of the other side of their mouths, Defendants also accused Plaintiffs of

---

[4] OpenAI has asserted that some of Plaintiffs' proposed search terms contained syntactical errors, which OpenAI purported to correct. The search terms that OpenAI should run should include any such corrections.

13

"speculat[ing]" that "xAI could have successfully implemented the kind of Apple integration from which they claimed exclusion." Dkt. No. 41 at 18; *accord* Dkt. No. 37 at 19. Given that accusation, Plaintiffs expected that they would need source code to test an anticipated defense that Grok could not have been feasibly integrated into Apple Intelligence, and thus proposed a source-code protocol, which courts have approved as a means of ensuring that source code is adequately protected. *See, e.g.*, *Apple Inc. v. Samsung Elecs. Co.*, No. 12-CV-0630-LHK PSG, 2013 WL 1563253, at *2 (N.D. Cal. Apr. 12, 2013). When Defendants refused to negotiate the source-code protocol, Plaintiffs offered that they would forgo discovery of Defendants' source code if Defendants would agree not to contest feasibility. App'x Tab 2, at App. 47. In the months since, OpenAI has repeatedly rebuffed Plaintiffs' efforts to resolve this dispute, including by serving responses to Plaintiffs' requests for admission that allow OpenAI to resurrect its product-design arguments later in the case and by refusing to sign the stipulation Plaintiffs proposed. *See supra* p. 7.

OpenAI should not be permitted to contest feasibility while denying Plaintiffs the discovery needed to test their contentions. If OpenAI continues to insist that the deal it inked is not exclusive because Apple Intelligence will soon be integrated with other chatbots—while refusing to concede that it would be feasible to integrate *Plaintiffs*' generative AI chatbot—then Plaintiffs should get discovery on this issue. Indeed, courts in this District and elsewhere have compelled parties to produce source code when those parties make statements implicating source code. *See, e.g.*, *Zenimax Media, Inc. v. Oculus VR, LLC*, No. 3:14-CV-1849-P (BF), 2015 WL 11120971, at *2 (N.D. Tex. Nov. 4, 2015) (ordering Facebook to produce source code showing "technical details of Facebook's virtual reality products" where Facebook made statements about "intent to incorporate . . . virtual reality into Facebook"). Because OpenAI has refused to stipulate

that it will drop its feasibility arguments despite insisting that Defendants' deal is not exclusive, *see* App'x Tab 4, at App. 64-66, Plaintiffs are entitled to discovery to test Defendants' claims of integration requirements, which requires taking discovery of relevant source code because it is through such code that the integration occurs. *See, e.g.*, *Eagle Railcar Servs.-Roscoe, Inc. v. NGL Crude Logistics, LLC*, No. 1:16-CV-0153, 2018 WL 2317696, at *18 (N.D. Tex. May 22, 2018) (compelling discovery of information responsive to a "potential[]" defense). As noted, Plaintiffs are amenable to limiting the review of such code to outside counsel and their experts. Plaintiffs themselves will not be able to review the code, addressing any confidentiality concern.

## IV.     The Court Should Expedite Briefing Of This Motion

This case is already more than four months into a fourteen-month schedule, with Plaintiffs' opening expert reports due on February 20, 2026. The ordinary briefing schedule would allow 21 days for a response brief and 14 days for reply, with briefing concluding in February 2026. *See* Local Civ. R. 7.1(e)-(f). To facilitate the expeditious production of responsive materials, Plaintiffs respectfully request that the Court set an expedited briefing schedule.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court (1) order OpenAI to substantially complete document production by January 15, 2026, by producing documents responsive to the RFPs in the Substantial-Completion Categories; (2) order OpenAI to search for responsive documents using the search terms and data sources that Plaintiffs proposed on December 9, 2025, and which are found at App'x Tab 3; (3) order OpenAI to promptly produce to Plaintiffs all non-privileged documents within their possession that are responsive to Plaintiffs' Source Code Requests; and (4) order expedited briefing of this Motion.

Dated: January 5, 2026

Respectfully submitted,

/s/ Bradley Justus
_____

Bradley Justus*
DC Bar No. 1007988
AXINN, VELTROP & HARKRIDER LLP
1901 L Street NW
Washington, DC 20036
T: (202) 912-4700
F: (202) 912-4701
bjustus@axinn.com

Caroline P. Boisvert*
CT State Bar No. 441323
AXINN, VELTROP & HARKRIDER LLP
90 State House Square
Hartford, CT 06103
T: (860) 275-8100
F: (860) 275-8101
cboisvert@axinn.com

*admitted *pro hac vice*

/s/ Scott A. Eisman
_____

Craig M. Reiser*
NY State Bar No. 4886735
Scott A. Eisman*
NY State Bar No. 4905287
Eva Yung*
NY State Bar No. 5497300
Christopher Erickson*
NY State Bar No. 5800628
AXINN, VELTROP & HARKRIDER LLP
630 Fifth Avenue, 33rd Floor
New York, NY 10111
T: (212) 728-2200
F: (212) 728-2201
creiser@axinn.com
seisman@axinn.com
eyung@axinn.com
cerickson@axinn.com

/s/ Judd E. Stone
_____

Judd E. Stone II
TX State Bar No. 24076720
Christopher D. Hilton
TX State Bar No. 24087727
STONE | HILTON PLLC
600 Congress Ave., Ste. 2350
Austin, TX 78701
T: (737) 465-3897
judd@stonehilton.com
chris@stonehilton.com

Noah Schottenstein
TX State Bar No. 24100661
STONE | HILTON PLLC
301 Commerce St., Suite 2360
Fort Worth, TX 76102
T: (737) 465-3897
noah@stonehilton.com

*Attorneys for Plaintiffs X Corp. and X.AI LLC*

16

## **CERTIFICATE OF SERVICE**

I certify that on January 5, 2026, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF system for filing. A notice of electronic filing was transmitted to all ECF registrants of record.

*/s/ Scott A. Eisman*
Scott A. Eisman