**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

|  |  |
|---|---|
| X CORP. and X.AI LLC,<br><br>        Plaintiffs,<br><br>        v.<br><br>APPLE INC., OPENAI, INC., OPENAI,<br>L.L.C., and OPENAI OPCO, LLC,<br><br>        Defendants. | Civil Action No. 4:25-cv-00914-P |

**THE OPENAI DEFENDANTS'
<u>OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL</u>**

WACHTELL, LIPTON,
  ROSEN & KATZ
51 West 52nd Street
New York, NY  10019
Telephone:  (212) 403-1000
Facsimile:  (212) 403-2000

LYNN PINKER HURST
  & SCHWEGMANN LLP
2100 Ross Avenue, Suite 2700
Dallas, TX  75201
Telephone:  (214) 981-3800
Facsimile:  (214) 981-3839

Dated:  January 16, 2026

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................ 1

BACKGROUND ............................................................................................................. 3

      A.      The Court enters a scheduling order without substantial
           completion deadlines. ............................................................................ 3

      B.      OpenAI engages at length with Plaintiffs' discovery
           requests and search-parameter proposals. ............................................ 3

      C.      Following entry into a confidentiality agreement, OpenAI
           begins producing core case documents. ................................................. 5

      D.      Plaintiffs seek the production of OpenAI's irrelevant
           proprietary source code. ........................................................................ 6

      E.      Plaintiffs fail to meet their reciprocal discovery obligations. ..................... 7

ARGUMENT .................................................................................................................. 7

    I.      Plaintiffs identify no good cause to insert a unilateral substantial
       completion deadline in the Court's scheduling order. ............................... 7

    II.     Plaintiffs' motion to compel search terms is premature and
       deficient.............................................................................................. 11

    III.    OpenAI's source code is irrelevant to this case. .................................... 13

CONCLUSION............................................................................................................. 16

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cleary* v. *Am. Airlines, Inc.*,
   2021 WL 5154209 (N.D. Tex. Aug. 27, 2021)..........................................................................15

*Dondi Props. Corp.* v. *Com. Sav. & Loan Ass'n*,
   121 F.R.D. 284 (N.D. Tex. 1988) .............................................................................................12

*Eagle Railcar Servs.-Roscoe* v. *NGL Crude Logistics, LLC*,
   2017 WL 11634816 (N.D. Tex. Oct. 26, 2017)..........................................................................8

*Hernandez* v. *Baylor Univ.*,
   2017 WL 1628992 (W.D. Tex. May 1, 2017) .............................................................................8

*Quintel Tech. Ltd.* v. *Huawei Techs. USA, Inc.*,
   2017 WL 3712346 (E.D. Tex. June 29, 2017)..........................................................................15

*Saleh* v. *Nike, Inc.*,
   2021 WL 4434352 (C.D. Cal. Aug. 16, 2021)..........................................................................15

*Samsung Elecs. Am. Inc.* v. *Chung*,
   325 F.R.D. 578 (N.D. Tex. 2017) ....................................................................10 n.18, 11, 12

*U.S. for Use & Benefit of Superior Insulation Co.* v. *Robert E. McKee, Inc.*,
   702 F. Supp. 1298 (N.D. Tex. 1988) ......................................................................................10

*VeroBlue Farms USA Inc.* v. *Wulf*,
   345 F.R.D. 406 (N.D. Tex. 2021) ...........................................................................................12

*Zenimax Media, Inc.* v. *Oculus, VR, LLC*,
   2015 WL 11120971 (N.D. Tex. Nov. 4, 2015)..................................................................15, 16

## Other Authorities

Fed. R. Civ. P. 16(b)(4)..................................................................................................................8

Fed. R. Civ. P. 26........................................................................................................................15

Fed. R. Civ. P. 37(a) ............................................................................................................10 n.19

N.D. Tex. L. Civ. R. 7.1(a) ..........................................................................................................12

## PRELIMINARY STATEMENT

Elon Musk brought this litigation against OpenAI, claiming harm to his AI competitor, xAI, due to its alleged exclusion from native integration with Apple. Rather than develop an appropriate record for trial by producing even a single nonpublic document about the purported harm to xAI, Plaintiffs filed this motion in a bid to impose unilateral discovery deadlines and obligations on OpenAI for tactical gain. Plaintiffs identify no basis for the lopsided and impractical discovery rulings they seek, and the motion should be denied.

1.      This Court's scheduling order sets a fact discovery deadline, but no interim "substantial completion" deadline for document production. Plaintiffs seek to modify that order to impose a (now-past) January 15 substantial completion deadline *on OpenAI alone*. Any such modification requires "good cause," but Plaintiffs offer none. Before Plaintiffs filed this motion, OpenAI already committed to substantially complete by *January 30* all of the document disclosure agreed upon by the parties, including by running agreed search terms that cover far more than the specific requests Plaintiffs identify in the motion. Plaintiffs offered no reciprocal deadline for their own document production, instead burdening the Court with unnecessary motion practice. By the time the Court hears and decides the motion after the January 21 hearing, OpenAI's self-imposed January 30 deadline will be just days away. Any further advancement of that deadline would be both impractical and unwarranted, particularly as OpenAI already has agreed to move far more quickly than the Court's scheduling order requires.

2.      Plaintiffs' request to impose their chosen search terms on OpenAI bears no more weight. Plaintiffs nowhere address any specific search term or custodian they claim they need and that OpenAI has refused to provide, as this Court would require for such relief, and Plaintiffs confirmed they are not challenging OpenAI's objection to any particular document request. Instead, the motion appears to demand a meet and confer that OpenAI already invited — and has

since conducted — about terms and custodians, many of which are already in review. Indeed, contrary to some edits to those search terms that Plaintiffs agreed to since filing this motion, Plaintiffs nevertheless continue to seek to compel all terms and custodians as they originally proposed. That does not furnish a specific dispute or justification for relief by this Court.

3.      That leaves the overreach of Plaintiffs' motion to compel disclosure of OpenAI's competitively sensitive proprietary source code. OpenAI's code bears no relevance to Plaintiffs' claims, which concern *xAI*'s alleged exclusion from an integration with *Apple*. Plaintiffs argue they need OpenAI's code just in case Defendants decide to contest the technical feasibility of an Apple integration with xAI's Grok. But Plaintiffs fail to explain what role the independent code of their competitor, OpenAI, could play in establishing or refuting the feasibility of Apple's integration with xAI's Grok code. OpenAI nevertheless offered multiple accommodations to moot any such purported concern, from proposing that all parties forswear relying on source code in this case, to committing that Defendants will make no argument about the technical feasibility of such an integration. Refusing to take "yes" for an answer to moot their concern, Plaintiffs now claim, without explanation, that they need their competitor's source code in order to rebut any possible non-technical feasibility arguments with no connection to source code. The Court should deny their request to compel OpenAI to disclose its source code to its competitor, when that highly competitively sensitive information has no place in this case.

Plaintiffs' attempt to recast themselves as victims of delay finds no support in the record. OpenAI's repeated attempts at compromise stand in stark contrast to Plaintiffs' own lack of diligence in fulfilling their discovery duties. Plaintiffs have not produced a single nonpublic document — now well over two months after OpenAI's November 6 requests — even though they chose to bring this case claiming harm to their business. Plaintiffs put off for weeks any discussion

of the search terms OpenAI proposed and rejected any reciprocal substantial completion deadline. And Plaintiffs continue to assert categorical objections to their disclosure of information that is core to their own allegations. This is not a record that calls for the Court to wade into manufactured disputes to grant extraordinary, one-sided relief. Plaintiffs' motion should be denied.

## BACKGROUND

A.    **The Court enters a scheduling order without substantial completion deadlines.**

Discovery in this case is governed by a scheduling order that the Court entered after submissions by the parties. On October 15, 2025, the parties submitted a joint report that proposed a May 1, 2026 deadline for the close of fact discovery, an April 13, 2026 deadline for initial designation of experts and service of reports, and a June 15, 2026 deadline for the close of expert discovery.[1] The submission stated: "The parties do not believe that discovery should be conducted in phases."[2] The next day, the Court entered a scheduling order that set the completion of both fact and expert discovery for May 22, 2026, and initial expert designations and reports on February 20, 2026.[3] Neither the parties' proposal nor the Court's order set any interim deadline for substantial completion of document discovery.

B.    **OpenAI engages at length with Plaintiffs' discovery requests and search-parameter proposals.**

After timely serving its November 10 responses and objections to Plaintiffs' first set of discovery requests, OpenAI immediately made itself available — on seven occasions, over a seven-week period that spanned the Thanksgiving holiday — for hours of substantive meet-and-

---

[1]    Joint Status Report Regarding Scheduling Conference (Oct. 15, 2025), Dkt. No. 59 at 9–10.

[2]    *Id.* at 10.

[3]    Scheduling Order (Oct. 16, 2016), Dkt. No. 61.

confer discussions addressing areas of disagreement according to the priorities set by Plaintiffs.[4] Plaintiffs' motion acknowledges that "Plaintiffs and OpenAI have amicably resolved many disputes concerning Plaintiffs' discovery requests" in that time. Pl. Br. 1. OpenAI then affirmatively offered to discuss a review protocol of search terms and custodians for agreed-upon subjects. Plaintiffs did not take up OpenAI's offer for a full month after receiving its responses and objections.

When Plaintiffs finally proposed search parameters for the first time on December 9, OpenAI immediately began work to correct the substantial errors and deficiencies within them. Those errors were so extensive that the 53 proposed search strings had to be broken up into 175 different searches to run — requiring several rounds of iteration with OpenAI's discovery vendor.[5] On December 9, Plaintiffs also for the first time suggested that Defendants, but not Plaintiffs, substantially complete document discovery by January 15 — leaving just five weeks for OpenAI to substantially complete its document production in a case of this magnitude. On December 18, OpenAI furnished corrected versions of Plaintiffs' proposed search terms and custodians.[6] On December 24, after further testing Plaintiffs' terms to assess the proportion of false hits, OpenAI provided a counterproposal designed to streamline the review process and to remove search terms aimed at categories of documents for which OpenAI had not agreed to run a custodial search.[7]

On the basis of OpenAI's work and the areas of consensus identified between the parties,

---

[4]     Email from K. Schwartz to C. Erickson (Dec. 9, 2025) (Email chain memorializing meet-and-confer discussions on November 14, 19, 21, and 25, and December 2 and 5) (App'x Tab 1 at A002–24); Email from K. Schwartz to S. Eisman (Dec. 17, 2025) (confirming availability for December 19 meet and confer) (App'x Tab 2 at A036).

[5]     Email from K. Schwartz to S. Eisman (Dec. 18, 2025) (App'x Tab 3 at A043, A052–81).

[6]     *Id.*

[7]     Email from K. Schwartz to S. Eisman (Dec. 24, 2025) (App'x Tab 4 at A083).

Plaintiffs on December 26 asked OpenAI to begin its review for those custodians and search terms where the parties had reached agreement, even as meet-and-confer discussions continued on points of disagreement.[8] On December 30, Plaintiffs represented that OpenAI need not re-review documents based on later changes to the scope of its production based on the parties' meet and confers or court orders.[9] Relying on that representation, OpenAI immediately launched custodial search and review.

### C. Following entry into a confidentiality agreement, OpenAI begins producing core case documents.

While the parties were engaged in these negotiations, Plaintiffs manufactured a dispute over the confidentiality agreement, which is typically entered before production in cases involving sensitive business information.[10] Plaintiffs brought a motion to compel seeking entry of a confidentiality agreement as a Protective Order, which Plaintiffs withdrew on December 19 after further meet and confers between the parties. Once the necessary confidentiality agreement was executed on December 21, on December 22, OpenAI produced the readily available, nonpublic documents that Plaintiffs sought as core to their claims. This production included the key nonpublic agreements with Apple underpinning the ChatGPT integration, along with the technical specifications and documentation that set out the architecture of the integration at issue. On January 4, OpenAI represented that it believed that "discovery for the documents, search terms, and custodians the parties have agreed upon can be substantially completed by January 30."[11] On

---

[8]    Email from S. Eisman to K. Schwartz (Dec. 26, 2026) (App'x Tab 5 at A147).

[9]    Email from S. Eisman to K. Schwartz (Dec. 30, 2025) (App'x Tab 6 at A151).

[10]    Plaintiffs had previously communicated that they intended to accept the relevant provision, before reversing course weeks later and burdening the Court with motion practice.

[11]    Email from K. Schwartz to S. Eisman (Jan. 4, 2026) (App'x Tab 7 at A157); Email from A. Cheung to S. Eisman (Jan. 10, 2026) (App'x Tab 8 at A169).

January 9 and January 14, the parties met and conferred regarding outstanding areas of disagreement in Plaintiffs' search-term and custodian proposals, with OpenAI providing Plaintiffs a further written explanation of the basis for its edits to search terms on January 13.[12] OpenAI also confirmed that its review would include documents identified from four additional custodians proposed by OpenAI. Moreover, OpenAI made a further production on January 11, including competitive analyses regarding ChatGPT and comparisons of ChatGPT with other generative AI services. OpenAI is in the process of reviewing other non-custodial records, and it has committed to rolling productions.

> ### D.    Plaintiffs seek the production of OpenAI's irrelevant proprietary source code.

Throughout this seven-week period of meet and confers, one issue that consumed the parties' attention was Plaintiffs' demand for the production of OpenAI's irrelevant and competitively sensitive proprietary source code, its intellectual property. After objecting to these requests, OpenAI constructively engaged in multiple meet-and-confer discussions with Plaintiffs in order to discern and attempt to address the purported rationale for the request. Plaintiffs responded that they must be able to probe the "technical feasibility" of integrating Grok — their own AI technology — into Apple's operating system, just in case Defendants levered source code to put technical feasibility in dispute. Plaintiffs have offered no explanation of how *OpenAI*'s proprietary source code could possibly be relevant to the technical feasibility of modifying *Grok* to interface with Apple's iOS.

OpenAI nevertheless proposed three separate ways of resolving Plaintiffs' purported need for OpenAI's proprietary source code: *First*, when Plaintiffs claimed to need information about the technical architecture of the ChatGPT integration with Apple, OpenAI produced technical

---

[12]    Email from A. Cheung to S. Eisman (Jan. 13, 2026) (App'x Tab 9 at A199).

documentation of the integration requirements. *Second*, after Plaintiffs served requests for admission with the ostensible purpose of taking off the table any arguments about technical barriers to a Grok-Apple iOS integration, Defendants admitted that they knew of no such technical barriers.[13] *Third*, Defendants have proposed multiple stipulations that foreclose any reliance on source code by all parties.

### E.    Plaintiffs fail to meet their reciprocal discovery obligations.

While Plaintiffs ask this Court to impose unreasonable demands on OpenAI, they refuse to recognize that discovery is a two-way street. Plaintiffs have rejected any date certain for substantial completion of their own productions, declined to provide a definite position on numerous relevance and competitive sensitivity objections (including Plaintiffs' objection to producing documents concerning xAI's access to training data, the utility of "generative AI chatbot prompts," and xAI's alleged market foreclosure as purportedly too competitively sensitive, at odds with their position on OpenAI's proprietary source code), and have not produced a single nonpublic document to Defendants.

### ARGUMENT

### I.    PLAINTIFFS IDENTIFY NO GOOD CAUSE TO INSERT A UNILATERAL SUBSTANTIAL COMPLETION DEADLINE IN THE COURT'S SCHEDULING ORDER.

Plaintiffs ask the Court to compel OpenAI to substantially complete document production by January 15, contrary to the scheduling order the parties have relied on for nearly three months. Given the Court's hearing on this motion on January 21, and OpenAI's previous commitment to substantially complete the already agreed-upon document discovery by January 30, there is no

---

[13]    Plaintiffs' Second Set of Requests for Admission to OpenAI (Nov. 17, 2025) (App'x Tab 10 at A254); Email from K. Schwartz to S. Eisman (Jan. 4, 2026) (App'x Tab 7 at A157).

material dispute on timing that the Court need decide. Nevertheless, Plaintiffs have opted to take up the Court's time on an issue where there is effectively no dispute. In any event, the Court should decline Plaintiffs' invitation to amend its existing scheduling order to impose a unilateral substantial-completion deadline.[14]

*First*, Plaintiffs are required to show "good cause" for their requested modification of the Court's scheduling order. *Eagle Railcar Servs.-Roscoe* v. *NGL Crude Logistics, LLC*, 2017 WL 11634816, at *2 (N.D. Tex. Oct. 26, 2017) ("After issuing a scheduling order, courts modify such orders 'only for good cause.'" (quoting Fed. R. Civ. P. 16(b)(4))). Plaintiffs have not shown good cause for the Court to modify the scheduling order for Plaintiffs' one-sided benefit. The motion asks the Court to rewrite a scheduling order that neither contains nor contemplates an interim deadline for substantial completion of document discovery. Although "Courts can . . . try to achieve proportional discovery by regulating the timing and sequence of discovery, principally by ordering that discovery be conducted not all at once, but rather in stages or phases," that is not the approach the parties proposed. *Hernandez* v. *Baylor Univ.*, 2017 WL 1628992, at *5 (W.D. Tex. May 1, 2017). Plaintiffs' and Defendants' joint submission disclaimed the need for such interim discovery deadlines.[15] And the Court declined to impose either discovery phases or party-specific deadlines for substantial completion.[16]

*Second*, imposing a unilateral substantial-completion deadline on OpenAI would be inequitable in light of Plaintiffs' ever-shifting demands. On December 29, for example, Plaintiffs

---

[14]    This morning, the parties also jointly moved the Court for an order which, if granted, would set substantial completion deadlines of February 27, 2026 for Defendants and March 18, 2026 for Plaintiffs. Dkt. No. 131. Plaintiffs agree that entry of the proposed order would resolve this portion of their motion to compel.

[15]    Joint Status Report Regarding Scheduling Conference (Oct. 15, 2025), Dkt. No. 59 at 10.

[16]    Scheduling Order (Oct. 16, 2016), Dkt. No. 61.

8

conceded for the first time that their requested "substantial completion" would require something "less than the production of all responsive documents" and instead "entail, at a minimum" documents from seven newly revealed categories that Plaintiffs say "go to the heart of Plaintiffs' claims."[17] Plaintiffs' January 5 motion likewise identifies for the first time which discovery requests are purportedly implicated by these broad, amorphous categories, and Plaintiffs still have nowhere delineated which terms and custodians are applicable to these requests. Pl. Br. at 6.

*Third*, there is no factual basis for Plaintiffs' suggestion that the Court should modify the scheduling order because of purported delay in producing documents. After bringing their claims months earlier, Plaintiffs did not propose any search terms until December 9, and the parties thereafter only reached agreement on the first set of search parameters on December 26. OpenAI's agreement to substantially complete document production about a month later, on January 30, is very fast in this type of complex case, where discovery can often span years. OpenAI will need all available time to meet that commitment, and Plaintiffs offer no reason why they have burdened the Court with a motion that could advance OpenAI's deadline by just a few days at this point.

*Fourth*, Plaintiffs, meanwhile, have not produced a *single nonpublic document*, even though they brought this action and claim to have suffered harm because of an integration announced in June 2024. Plaintiffs suggest that they are differently situated from OpenAI on their discovery requests, *despite having chosen to bring this suit*. But OpenAI's first set of requests has been pending for more than two months, and its search-term proposals have been pending for more than three weeks. They have not discussed — much less committed to — when they will begin producing any additional documents. And as of January 16, Plaintiffs still have not completed their hit report for OpenAI's proposed search protocol. Plaintiffs are in no position to demand the

---

[17]    Email from S. Eisman to K. Schwartz (Dec. 29, 2025) (App'x Tab 11 at A257–58).

imposition of a unilateral substantial-completion deadline on OpenAI, much less supply the requisite "good cause."

*Fifth*, Plaintiffs' claim that they need information from OpenAI in advance of their initial expert report deadline is contrary to the schedule that the parties previously agreed on and the Court entered. As noted, despite the parties' joint proposal of a fact discovery deadline 45 days before the close of expert discovery, the Court-ordered schedule contemplates that fact and expert discovery would end on the same date, with initial expert reports submitted months before the close of fact discovery.[18] Nothing has changed since that schedule was entered to provide "good cause" for the requested modification. In any event, the categories of information that Plaintiffs claim they need for their expert report — including "the anticompetitive effects of Defendants' agreement, market share, entry barriers, and changes in the volume of inputs" — are more likely to be in the possession of Plaintiffs, who are, after all, the parties alleging that they have suffered such anticompetitive effects as a result of the ChatGPT-iOS integration. Likewise Plaintiffs are better situated to describe the "entry barriers" that they assert as OpenAI's competitor, their alleged "market foreclosure," and the alleged extent to which they have been prevented from "achieving scale" on the order of magnitude that OpenAI purportedly has. *See, e.g.*, *U.S. for Use & Benefit of Superior Insulation Co.* v. *Robert E. McKee, Inc.*, 702 F. Supp. 1298, 1302 (N.D. Tex. 1988) ("Plaintiff is in a better position to collect and present evidence as to the cause of its injury."). Plaintiffs' initial expert reports thus do not create any exigency constituting "good cause" to justify modifying the Court's scheduling order to impose a unilateral substantial-completion deadline.[19]

---

[18]   Joint Status Report Regarding Scheduling Conference (Oct. 15, 2025), Dkt. No. 59 at 9–10; Scheduling Order (Oct. 16, 2016), Dkt. No. 61.

[19]   Plaintiffs' motion also fails to meet the "threshold requirements for a proper Rule 37(a) motion to compel," according to the case law invoked in the motion itself. *Samsung Elecs. Am. Inc.* v. *Chung*, 325 F.R.D. 578, 594 (N.D. Tex. 2017) (cited in Plaintiffs' Br. at 9). It is thus no

## II.     PLAINTIFFS' MOTION TO COMPEL SEARCH TERMS IS PREMATURE AND DEFICIENT.

Plaintiffs also move the Court to rubber stamp in full their initial proposal of search terms and custodians. This request is premised on the unfounded assertion that OpenAI "refused to even meet and confer on Plaintiffs' proposed search terms and data sources." Pl. Br. 2. OpenAI never took that position, and in any event, there is no dispute that the parties' January 9 and 14 meet-and-confer discussions addressed OpenAI's edits to Plaintiffs' proposed terms and custodians, supplemented in further correspondence on January 10 and 13. Those discussions are ongoing; the parties have never reached an impasse about search terms. Indeed, as a result of those productive meet-and-confer discussions, Plaintiffs agreed to several of the changes OpenAI made to the very search terms Plaintiffs by this motion are still asking the Court to mandate. And Plaintiffs have confirmed they are not asking the Court to overrule OpenAI's objections to particular requests, on which many of OpenAI's proposed changes to Plaintiffs' search terms and custodians are based. There is no remaining basis set forth in the motion that could reasonably warrant a Court order for OpenAI to use all terms or custodians that Plaintiffs initially proposed.

Even if there were a ripe dispute between the parties about search terms, Plaintiffs have failed to meet the Court's requirements for presenting such a discovery motion. Plaintiffs are required, and have failed, to "attach a copy . . . of the resisting party's responses and objections to [the] requests." *Samsung Elecs. Am. Inc.* v. *Chung*, 325 F.R.D. 578, 594 (N.D. Tex. 2017). Plaintiffs also have made no attempt to "specifically and individually identify each discovery request in dispute and specifically, as to each request, identify the nature and basis of the dispute, including, for example, explaining . . . how a response or answer is deficient or incomplete, and

surprise that Plaintiffs have confirmed that their motion is limited to matters of timing, and does not seek the Court to overrule OpenAI's objections to particular requests for production, which they have declined to discuss with any specificity at all.

11

ask the Court for specific relief as to each request." *Id.* Plaintiffs have likewise failed to "include a concise discussion of the facts and authority that support the motion as to each discovery request in dispute." *Id.* Plaintiffs' request also cuts against well-recognized principles of discovery that confirm "'[i]t is not the court's role to dictate how a party should search for relevant information absent a showing that the party has abdicated its responsibility,' and '[a] responding party is best situated to preserve, search, and produce its own [electronically stored information],' which '[p]rinciple . . . is grounded in reason, common sense, procedural rules, and common law.'" *VeroBlue Farms USA Inc.* v. *Wulf*, 345 F.R.D. 406, 420 (N.D. Tex. 2021).

Plaintiffs' motion is also premature under the rules and precedent of this Court. Plaintiffs sought relief before the parties had an opportunity to meet and confer about the substance of those terms. Local Rule 7.1(a) requires that "an attorney for the moving party must confer with an attorney for each party affected by the requested relief to determine whether the motion is opposed." N.D. Tex. L. Civ. R. 7.1(a). Discovery disputes such as this "amply demonstrate an inadequate utilization of" that rule. *Dondi Props. Corp.* v. *Com. Sav. & Loan Ass'n*, 121 F.R.D. 284, 289 (N.D. Tex. 1988). As *Dondi* instructs, "[t]he purpose of the conference requirement is to promote a frank exchange between counsel to resolve issues by agreement or to at least narrow and focus the matters in controversy before judicial resolution is sought." *Id.*

On December 29, OpenAI stated that it agreed with Plaintiffs' "suggestion for a meet and confer on search protocol" and that it "believe[d] the parties should meet and confer on the proposed search terms and custodians to be run both by OpenAI and by Plaintiffs."[20] OpenAI explained that it "proposed edits to the search terms in order to avoid false positives, to tailor the search strings where it appeared that a different proximity indicator would be better calculated to

---

[20]    Email from K. Schwartz to S. Eisman (Dec. 29, 2025) (App'x Tab 12 at A266).

target responsive documents, and to make the search terms consistent with the scope of custodial review indicated in OpenAI's responses and objections."[21] Notwithstanding OpenAI's reservations about unilateral negotiations, OpenAI and Plaintiffs met and conferred on January 9 and January 14.

Because the parties are continuing to meet and confer regarding the appropriate search terms, and because Plaintiffs have not met their threshold requirement to justify any particular terms or custodians, let alone all of them, Plaintiffs' request to impose their unilateral search terms and custodians should be denied.

## III.    OPENAI'S SOURCE CODE IS IRRELEVANT TO THIS CASE.

Plaintiffs claim that "they would need source code to test an anticipated defense that Grok could not have been feasibly integrated into Apple Intelligence." Pl. Br. 14. But OpenAI has already admitted in response to Plaintiffs' discovery request that it knows of no technical barriers to Grok's integration with Apple Intelligence.[22] OpenAI has further proposed to take off the table any defense grounded in its source code, on which it has no intention of relying.[23] Plaintiffs have responded that perhaps, in the future, OpenAI may become aware of such technical barriers involving Grok.[24] That is not plausible. OpenAI has already disclaimed any such knowledge based on information in its possession, and OpenAI has not sought Grok's source code, which would be far more relevant to any hypothetical defense based on integration of *Grok* with Apple's iOS.

OpenAI's repeated effort to resolve this dispute by clearing away any possible need for the parties to extract a competitor's source code lays bare Plaintiffs' overreach. On January 8, OpenAI

---

[21]    *Id.*

[22]    Email from K. Schwartz to S. Eisman (Jan. 4, 2026) (App'x Tab 7 at A157).

[23]    Email from K. Schwartz to S. Eisman (Jan. 2, 2026) (App'x Tab 13 at A271).

[24]    Email from S. Eisman (Jan. 5, 2026) (App'x Tab 14 at 286).

took a further step to allay Plaintiffs' claimed concerns, proposing a new stipulation that forecloses arguments relating to technical infeasibility connected to source code.[25] Under the proposed stipulation, the parties would agree neither to rely upon any party's proprietary source code, nor would they seek its production. In addition, in yet another effort to address the hypothetical argument Plaintiffs brandish in their motion (an argument never advanced by Defendants), on January 14 Defendants committed that they would not take the position that the complained-of conduct is lawful because of any product-design argument that it is technically difficult or infeasible to integrate Grok with Apple Intelligence by any cause related to source code. OpenAI has thus made substantial efforts to resolve this dispute and otherwise foreclose any possibility for source code to play even a bit role in this litigation. Still, Plaintiffs refuse.

Even putting aside that Defendants repeatedly have disclaimed any technical feasibility arguments, OpenAI's source code bears no relevance to whether Grok, which runs on its own entirely separate codebase, could integrate with Apple's operating system on the iPhone, which likewise has nothing to do with OpenAI's source code. *Grok*'s technology, not ChatGPT's, determines whether and how Grok can integrate with Apple's operating system. Plaintiffs have never explained (and cannot explain) how OpenAI's source code could have any effect on Grok's integration. Nor have Plaintiffs explained what relationship OpenAI's source code could have to some other "product design" argument about a Grok-Apple Intelligence integration.[26]

Plaintiffs assert that "it is through such [OpenAI proprietary source] code that the integration occurs." Pl. Br. 15. But that explanation is inconsistent with documentation that OpenAI has already produced about the integration Plaintiffs have put at issue. As the disclosed

---

[25]     Email from K. Schwartz to S. Eisman (Jan. 8, 2026) (App'x Tab 15 at A303, A321–25).

[26]     Email from K. Schwartz to S. Eisman (Jan. 2, 2026) (App'x Tab 13 at A271).

documentation confirms, the ChatGPT-iOS integration employs application programming interfaces ("APIs") — akin to bridges between different software systems — that transmit prompts from Apple Intelligence to be processed at OpenAI data centers, and then return OpenAI outputs to users' Apple devices. Insofar as the technical architecture of the ChatGPT-Apple integration is at all relevant to Plaintiffs' claims — and it is not — OpenAI has already produced the precise technical information that describes the function, design, and implementation of those APIs. OpenAI's ChatGPT source code bears no relevance whatsoever.

Texas courts have recognized that "source code is among [a company's] most sensitive proprietary information." *Quintel Tech. Ltd.* v. *Huawei Techs. USA, Inc.*, 2017 WL 3712346, at *3 (E.D. Tex. June 29, 2017) (denying motion to compel as to source code). "Although the source code . . . may be of interest to Plaintiffs, Rule 26 does not require its disclosure." *Cleary* v. *Am. Airlines, Inc.*, 2021 WL 5154209, at *2 (N.D. Tex. Aug. 27, 2021). This Court has explained that "[t]his information does not appear to be important in resolving the ultimate issues in the case, nor does the likely benefit of its production seem to outweigh the burden or expense of producing it." *Id.* So too here. Those principles are also consistent with decisions in other jurisdictions, some of which "have gone further than requiring a showing of necessity and held that 'when source code is requested not only must it be relevant and necessary to the prosecution or defense of the case but when alternatives are available, a court will not be justified in ordering disclosure.'" *Saleh* v. *Nike, Inc.*, 2021 WL 4434352, at *2 (C.D. Cal. Aug. 16, 2021). Plaintiffs' reliance on *Zenimax Media, Inc.* v. *Oculus*, *VR, LLC*, which concerned alleged misappropriation of trade secrets by defendants, has no application to this case. In that case, plaintiffs sought "information that is commonly discoverable in intellectual property disputes." *Zenimax Media, Inc.* v. *Oculus*, *VR, LLC*, 2015 WL 11120971, at *1 (N.D. Tex. Nov. 4, 2015). In this antitrust case, by contrast,

15

OpenAI and xAI employ discrete, non-overlapping technologies, not "virtual reality offerings created after the defendants . . . allegedly misappropriated Zenimax's intellectual property." *Id.*

The Court should deny Plaintiffs' request to compel the production of OpenAI's source code.

**CONCLUSION**

For the foregoing reasons, Plaintiffs' motion to compel should be denied.

Dated:  January 16, 2026

Respectfully submitted,

/s/     *Michael K. Hurst*
Michael K. Hurst
mhurst@lynnllp.com
Texas Bar No. 10316310
Chris W. Patton
cpatton@lynnllp.com
Texas Bar No. 24083634
Andy Kim
akim@lynnllp.com
Texas Bar No. 24136638
**LYNN PINKER HURST &**
  **SCHWEGMANN LLP**
2100 Ross Avenue, Suite 2700
Dallas, TX  75201
(214) 981-3800 (Telephone)
(214) 981-3839 (Facsimile)

William Savitt (N.D. Tex. Bar No. 2900058NY)
WDSavitt@wlrk.com
Kevin S. Schwartz (N.D. Tex. Bar. No. 4564241NY)
KSchwartz@wlrk.com
Stephen D. Levandoski (*pro hac vice*)
SDLevandoski@wlrk.com
**WACHTELL, LIPTON, ROSEN & KATZ**
51 West 52nd Street
New York, NY  10019
(212) 403-1000 (Telephone)
(212) 403-2000 (Facsimile)

*Attorneys for Defendants OpenAI Foundation (f/k/a OpenAI, Inc.), OpenAI, L.L.C., and OpenAI OpCo, LLC*

17

## CERTIFICATE OF SERVICE

I certify that on January 16, 2026, I served the foregoing document electronically in accordance with the Federal Rules of Civil Procedure.

*/s/ Michael K. Hurst*

Michael K. Hurst
