**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

|  |  |
|---|---|
| X CORP. and X.AI LLC,<br><br>    Plaintiffs,<br><br>    v.<br><br>APPLE INC., OPENAI, INC., OPENAI,<br>L.L.C., and OPENAI OPCO, LLC,<br><br>    Defendants. | Civil Action No. 4:25-cv-00914-P |

**THE OPENAI DEFENDANTS' SUPPLEMENTAL BRIEF
IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL**

WACHTELL, LIPTON,
  ROSEN & KATZ
51 West 52nd Street
New York, NY 10019
Telephone: (212) 403-1000
Facsimile: (212) 403-2000

LYNN PINKER HURST
  & SCHWEGMANN LLP
2100 Ross Avenue, Suite 2700
Dallas, TX 75201
Telephone: (214) 981-3800
Facsimile: (214) 981-3839

Dated: January 29, 2026

Pursuant to the Court's January 22, 2026 Order, OpenAI respectfully submits this supplemental brief in opposition to Plaintiffs' Motion to Compel, filed January 5, 2026, to address the one remaining issue in dispute with respect to Plaintiffs' proposed search terms and data sources—Plaintiffs' request to add Jan Leike as a custodian. There is no reason to believe that Mr. Leike would likely have sent or received documents relevant to the claims and defenses in this action. Plaintiffs' request to compel Mr. Leike as a custodian—in addition to the 12 custodians whom OpenAI already has agreed to search—is a fishing expedition for internal documents they hope will be critical of OpenAI or its management, and should be denied.

Mr. Leike worked at OpenAI from 2021 through May 16, 2024. From July 2023 through his departure, Mr. Leike was a co-head of the "Superalignment" project at OpenAI, which focused on developing new methods of steering and controlling future artificial superintelligences—to "align" them with human intent—so a potentially superintelligent AI could not go rogue. *See* OPENAI, *Introducing Superalignment* (July 5, 2023) (App'x Tab 1 at A002, A004). As a lead on the Superalignment team, Mr. Leike was far removed from the management team negotiating the agreement to integrate ChatGPT into Apple Intelligence. Nor did he participate in the subsequent implementation of the integration; Mr. Leike left OpenAI just twelve days after the Apple integration agreement was signed, months before the integration was rolled out.

Plaintiffs do not contend that Mr. Leike was involved in the Apple deal or that he is likely to have any documents related to Apple at all. Instead, Plaintiffs broadly claim that any documents concerning "safety and privacy issues affecting ChatGPT are relevant for assessing Apple's procompetitive justification that it integrated with ChatGPT because of its record on safety and privacy." Email from S. Eisman to A. Cheung (Jan. 15, 2026) (App'x Tab 2 at A009). When Apple and OpenAI announced their agreement in June 2024, they explained that "privacy protections"

1

would be built into the architecture of the ChatGPT-Apple Intelligence integration. APPLE, *Introducing Apple Intelligence* (June 10, 2024) (App'x Tab 3 at A091). Plaintiffs also claim that OpenAI's record on safety is relevant to assess a purported assertion by Apple that it considers safety as a factor in arriving at its App Store rankings. Transcript of Motion Hearing at 14 (Jan. 21, 2026); *see also* Notice of Filing of Official Electronic Transcript (Jan. 25, 2026), Dkt. No. 142. Plaintiffs argue that Mr. Leike may have documents relevant to these subjects because, in a May 2024 tweet, "he complained that ChatGPT prioritized 'shiny products' over safety." Email from S. Eisman to A. Cheung (Jan. 13, 2026) (App'x Tab 2 at A014–15).[1]

Plaintiffs' argument makes no sense:

First, the "privacy protections" that would be built into the integration referred to the fact that Apple users' "IP addresses are obscured, and OpenAI won't store requests" when users access ChatGPT through Apple Intelligence, unless users choose to connect their ChatGPT account. *Introducing Apple Intelligence, supra* (App'x Tab 3 at A091). Plaintiffs contend that, by noting these privacy protections as a benefit to users, Defendants have somehow put at issue ChatGPT's entire record on safety and privacy. But Plaintiffs cannot bootstrap a statement about specific privacy protections attendant to the integration's architecture into wide-ranging discovery on any consideration of safety by OpenAI, especially untethered to the Apple integration.

Second, to the extent Apple considered OpenAI's record on broader safety and privacy issues in choosing to partner with OpenAI or in ranking ChatGPT in its App Store, that would only justify discovery of OpenAI documents about safety and privacy that were actually *shared with Apple*—documents that OpenAI already has agreed to produce and Plaintiffs have sought from

---

[1] The parties have been unable to resolve the dispute over the relevance of Mr. Leike's documents since the hearing. *See* Email from A. Cheung to S. Eisman (Jan. 29, 2026) (App'x Tab 5).

Apple. Again, Mr. Leike is unlikely to have had any role in such communications, as he did not participate in the negotiations with Apple and left OpenAI before implementation of the integration.

Third, Mr. Leike's comments on Twitter after he departed OpenAI did not refer to the safety of the ChatGPT models being used in the Apple integration or in the ChatGPT app. Rather, Mr. Leike's tweets appeared to relate to concerns about future models and the risks associated with models as they become more capable over time—superintelligent models referred to as artificial general intelligence or "AGI." @janleike, X (May 17, 2024 3:57 PM) (App'x Tab 4 at A095–96) ("more of our bandwidth should be spent getting ready for the *next generations of models*" (emphasis added)). Mr. Leike's work safeguarding against the dangers of future superintelligent AGI is far afield of the type of user security and privacy issues that Apple may have considered with respect to the models used in the integration or in the app ranked in Apple's App Store.

It seems Plaintiffs seek to add Mr. Leike as a custodian not because he is likely to have evidence relevant to their case but rather because they believe he was critical of OpenAI, and they want to tar OpenAI management before the jury and this Court. Plaintiffs have no real argument that such documents are relevant. Mr. Leike was not involved with the Apple deal. He had nothing to do with the "privacy protections" mentioned in connection with the Apple deal or ChatGPT's App Store rankings. He had nothing to do with any issue having to do with the issues in this suit. The request is just a ploy for tactical gain.

OpenAI respectfully submits that Plaintiffs' request that the Court add Jan Leike as a custodian from whom records should be searched in accordance with the agreed-upon search terms should be denied.

3

Dated:  January 29, 2026

Respectfully submitted,

/s/  Michael K. Hurst
Michael K. Hurst
mhurst@lynnllp.com
Texas Bar No. 10316310
Chris W. Patton
cpatton@lynnllp.com
Texas Bar No. 24083634
Andy Kim
akim@lynnllp.com
Texas Bar No. 24136638
**LYNN PINKER HURST &
   SCHWEGMANN LLP**
2100 Ross Avenue, Suite 2700
Dallas, TX  75201
(214) 981-3800 (Telephone)
(214) 981-3839 (Facsimile)

William Savitt (N.D. Tex. Bar No. 2900058NY)
WDSavitt@wlrk.com
Kevin S. Schwartz (N.D. Tex. Bar. No. 4564241NY)
KSchwartz@wlrk.com
Stephen D. Levandoski (*pro hac vice*)
SDLevandoski@wlrk.com
**WACHTELL, LIPTON, ROSEN & KATZ**
51 West 52nd Street
New York, NY  10019
(212) 403-1000 (Telephone)
(212) 403-2000 (Facsimile)

*Attorneys for Defendants OpenAI Foundation (f/k/a OpenAI, Inc.), OpenAI, L.L.C., and OpenAI OpCo, LLC*

## CERTIFICATE OF SERVICE

I certify that on January 29, 2026, I served the foregoing document electronically in accordance with the Federal Rules of Civil Procedure.

/s/ Michael K. Hurst
Michael K. Hurst