**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| X CORP. and X.AI LLC,<br><br>   Plaintiffs,<br><br>   v.<br><br>APPLE INC., OPENAI, INC., OPENAI, L.L.C., and OPENAI OPCO, LLC,<br><br>   Defendants. | Civil Action No. 4:25-cv-00914-P |

**APPENDIX OF THE OPENAI DEFENDANTS**
**IN SUPPORT OF THEIR SUPPLEMENTAL BRIEF IN OPPOSITION TO**
**PLAINTIFFS' MOTION TO COMPEL**

Defendants OpenAI, Inc., OpenAI, L.L.C., and OpenAI OpCo, LLC, hereby file this

Appendix in support of their Supplemental Brief in Opposition to Plaintiffs' Motion to Compel

consistent with the requirements of Local Rule 7.1(i).

| Appendix Tab No. | Page(s of Supplemental Brief | Description | Appendix Page(s) |
|---|---|---|---|
| Tab 1 | 1 | July 5, 2023, OpenAI press release titled, *Introducing Super Alignment*, available at https://openai.com/index/introducing-superalignment/ | A001–05 |
| Tab 2 | 1, 2 | Email thread titled "X Corp. and X.AI LLC v. Apple Inc. et al., No. 4:25-cv-00914-P (N.D. Tex.)", in which the latest-intime email was sent on January 15, 2026, 4:31 PM from Scott A. Eisman to Andrew J.H. Cheung | A006–70 |
| Tab 3 | 2 | June 10, 2024, Apple press release titled, *Introducing Apple Intelligence, the personal intelligence system that* | A071–93 |

**APPENDIX OF THE OPENAI DEFENDANTS'**
**SUPPLEMENTAL BRIEF IN OPPOSITION TO**
**PLAINTIFFS' MOTION TO COMPEL**                                                     **PAGE 1**

| Appendix Tab No. | Page(s of Supplemental Brief | Description | Appendix Page(s) |
|---|---|---|---|
| | | *puts powerful generative models at the core of iPhone, iPad, and Mac,* available at https://www.apple.com/newsroom/2024/06/introducing-apple-intelligence-for-iphone-ipad-and-mac/. | |
| Tab 4 | 3 | May 17, 2024, X Post from @janleike, available at https://x.com/janleike/status/1791498174659715494?s=20. | A094–96 |
| Tab 5 | 2 | Email thread titled "RE: X Corp. and X.AI LLC v. Apple Inc., OpenAI Foundation, et al., No. 4:25-cv-00914", in which the latest-intime email was sent on January 29, 2026 from Andrew J.H. Cheung to Scott A. Eisman. | A097–109 |

Dated: January 29, 2026

Respectfully submitted,

/s/   *Michael K. Hurst*
Michael K. Hurst
mhurst@lynnllp.com
Texas Bar No. 10316310
Chris W. Patton
cpatton@lynnllp.com
Texas Bar No. 24083634
Andy Kim
akim@lynnllp.com
Texas Bar No. 24136638
**LYNN PINKER HURST & SCHWEGMANN LLP**
2100 Ross Avenue, Suite 2700
Dallas, TX  75201
(214) 981-3800 (Telephone)
(214) 981-3839 (Facsimile)

William Savitt (N.D. Tex. Bar No. 2900058NY)
WDSavitt@wlrk.com
Kevin S. Schwartz (N.D. Tex. Bar. No. 4564241NY)
KSchwartz@wlrk.com
Stephen D. Levandoski (*pro hac vice*)
SDLevandoski@wlrk.com
**WACHTELL, LIPTON, ROSEN & KATZ**
51 West 52nd Street
New York, NY  10019
(212) 403-1000 (Telephone)
(212) 403-2000 (Facsimile)

*Attorneys for Defendants OpenAI Foundation (f/k/a OpenAI, Inc.), OpenAI, L.L.C., and OpenAI OpCo, LLC*

## CERTIFICATE OF SERVICE

I certify that on January 29, 2026, I served the foregoing document electronically in accordance with the Federal Rules of Civil Procedure.

/s/  *Michael K. Hurst*
Michael K. Hurst

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

<table>
<tr><td>

X CORP. and X.AI LLC,

    Plaintiffs,

    v.

APPLE INC., OPENAI, INC., OPENAI, L.L.C., and OPENAI OPCO, LLC,

    Defendants.

</td><td>

Civil Action No. 4:25-cv-00914-P

</td></tr>
</table>

**DECLARATION OF MICHAEL K. HURST IN SUPPORT OF THE
OPENAI DEFENDANTS' SUPPLEMENTAL BRIEF IN OPPOSITION TO
PLAINTIFFS' MOTION TO COMPEL**

I, Michael K. Hurst, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1.      I am an attorney admitted to practice before this Court, and I am a partner at the law firm of Lynn Pinker Hurst & Schwegmann LLP, counsel for Defendants OpenAI Foundation (f/k/a OpenAI, Inc.), OpenAI, L.L.C., and OpenAI Opco, LLC in the above-captioned matter. I submit this declaration in support of the OpenAI Defendants' Opposition to Plaintiffs' Motion to Compel. The matters in this declaration are within my personal knowledge and are true and correct:

2.      Attached hereto as Tab 1 is a true and correct copy of OpenAI's press release, *Introducing Super Alignment*, July 5, 2023, https://openai.com/index/introducing-superalignment/.

3.      Attached hereto as Tab 2 is a true and correct copy of an email thread titled: "RE: X Corp. and X.AI LLC v. Apple Inc. et al., No. 4:25-cv-00914-P (N.D. Tex.)," in which the latest-in-time email was sent on January 15, 2026 at 4:31 PM from Scott A. Eisman to Andrew J.H. Cheung.

4.      Attached hereto as Tab 3 is a true and correct copy of Apple's press release, *Introducing Apple Intelligence, the personal intelligence system that puts powerful generative models at the core of iPhone, iPad, and Mac*, June 10, 2024, https://www.apple.com/newsroom/2024/06/introducing-apple-intelligence-for-iphone-ipad-and-mac/.

5.      Attached hereto as Tab 4 is a true and correct copy of AI Researcher, Jan Leike's May 17, 2024 post to X, @janleike, X, (May 17, 2024), https://x.com/janleike/status/1791498174659715494?s=20.

6.      Attached hereto as Tab 5 is a true and accurate copy of an email thread titled: "RE: X Corp. and X.AI LLC v. Apple Inc., OpenAI Foundation, et al., No. 4:25-cv- 00914", in which the latest-intime email was sent on January 29, 2026 from Andrew J.H. Cheung to Scott A. Eisman.

Dated: January 29, 2026                    Respectfully submitted,


                                           /s/    Michael K. Hurst
                                           Michael K. Hurst

# TAB 1

July 5, 2023

# Introducing Superalignment

We need scientific and technical breakthroughs to steer and control AI systems much smarter than us. To solve this problem within four years, we're starting a new team, co-led by Ilya Sutskever and Jan Leike, and dedicating 20% of the compute we've secured to date to this effort. We're looking for excellent ML researchers and engineers to join us.

Superintelligence will be the most impactful technology humanity has ever invented, and could help us solve many of the world's most important problems. But the vast power of superintelligence could also be very dangerous, and could lead to the disempowerment of humanity or even human extinction.

While superintelligence[A] seems far off now, we believe it could arrive this decade.

Managing these risks will require, among other things, new institutions for governance and solving the problem of superintelligence alignment:

*How do we ensure AI systems much smarter than humans follow human intent?*

Currently, we don't have a solution for steering or controlling a potentially superintelligent AI, and preventing it from going rogue. Our current techniques for aligning AI, such as reinforcement learning from human feedback, rely on humans' ability to supervise AI. But humans won't be able to reliably supervise AI systems much smarter than us,[B] and so our current alignment techniques will not scale to superintelligence. We need new scientific and technical breakthroughs.

## Our approach

Our goal is to build a roughly human-level automated alignment researcher. We can then use vast amounts of compute to scale our efforts, and iteratively align superintelligence.To align the first automated alignment researcher, we will need to 1) develop a scalable training method, 2) validate the resulting model, and 3) stress test our entire alignment pipeline:

**A002**

1. To provide a training signal on tasks that are difficult for humans to evaluate, we can leverage AI systems to assist evaluation of other AI systems (*scalable oversight).* In addition, we want to understand and control how our models generalize our oversight to tasks we can't supervise (*generalization)*.

2. To validate the alignment of our systems, we automate search for problematic behavior (*robustness)* and problematic internals (*automated interpretability*).

3. Finally, we can test our entire pipeline by deliberately training misaligned models, and confirming that our techniques detect the worst kinds of misalignments (*adversarial testing*).

We expect our research priorities will evolve substantially as we learn more about the problem and we'll likely add entirely new research areas. We are planning to share more on our roadmap in the future.

## The new team

We are assembling a team of top machine learning researchers and engineers to work on this problem.

We are dedicating 20% of the compute we've secured to date over the next four years to solving the problem of superintelligence alignment. Our chief basic research bet is our new Superalignment team, but getting this right is critical to achieve our mission and we expect many teams to contribute, from developing new methods to scaling them up to deployment.

# Our goal is to solve the core technical challenges of superintelligence alignment in four years.

While this is an incredibly ambitious goal and we're not guaranteed to succeed, we are optimistic that a focused, concerted effort can solve this problem:[c] There are many ideas that have shown promise in preliminary experiments, we have increasingly useful metrics for progress, and we can use today's models to study many of these problems empirically.

Ilya Sutskever (cofounder and Chief Scientist of OpenAI) has made this his core research focus, and will be co-leading the team with Jan Leike (Head of Alignment). Joining the team

**A003**

are researchers and engineers from our previous alignment team, as well as researchers from other teams across the company.

We're also looking for outstanding new researchers and engineers to join this effort. Superintelligence alignment is fundamentally a machine learning problem, and we think great machine learning experts—even if they're not already working on alignment—will be critical to solving it.

We plan to share the fruits of this effort broadly and view contributing to alignment and safety of non-OpenAI models as an important part of our work.

This new team's work is in addition to existing work at OpenAI aimed at improving the safety of current models like ChatGPT, as well as understanding and mitigating other risks from AI such as misuse, economic disruption, disinformation, bias and discrimination, addiction and overreliance, and others. While this new team will focus on the machine learning challenges of aligning superintelligent AI systems with human intent, there are related sociotechnical problems on which we are actively engaging with interdisciplinary experts to make sure our technical solutions consider broader human and societal concerns.

## Join us

Superintelligence alignment is one of the most important unsolved technical problems of our time. We need the world's best minds to solve this problem.

If you've been successful in machine learning, but you haven't worked on alignment before, this is your time to make the switch! We believe this is a tractable machine learning problem, and you could make enormous contributions.

*If you're interested, we'd love to hear from you! Please apply for our research engineer and research scientist positions.*

View careers

Footnotes

A    Here we focus on superintelligence rather than AGI to stress a much higher

**A004**

capability level. We have a lot of uncertainty over the speed of development of the technology over the next few years, so we choose to aim for the more difficult target to align a much more capable system. ↵

B   Other assumptions could also break down in the future, like favorable generalization properties during deployment or our models' inability to successfully detect and undermine supervision during training. ↵

C   Solving the problem includes providing evidence and arguments that convince the machine learning and safety community that it has been solved. If we fail to have a very high level of confidence in our solutions, we hope our findings let us and the community plan appropriately. ↵

Authors

Jan Leike, Ilya Sutskever

Contributors

Leopold Aschenbrenner and others from the Superalignment team

**A005**

# TAB 2

A006

| | |
|---|---|
| **From:** | Eisman, Scott A. |
| **To:** | Cheung, Andrew J.H. |
| **Cc:** | Schwartz, Kevin S.; mhurst@lynnllp.com; cpatton@lynnllp.com; akim@lynnllp.com; Savitt, William D.; Levandoski, Stephen D.; Yavitz, Noah B.; Robinson, M. Virginia; Reiser, Craig M.; Justus, Bradley; Yung, Eva H.; Erickson, Christopher; Brinn, Hope E.; Abidor, Richard D.; chris@stonehilton.com; judd@stonehilton.com |
| **Subject:** | RE: X Corp. and X.AI LLC v. Apple Inc. et al., No. 4:25-cv-00914-P (N.D. Tex.) |
| **Date:** | Thursday, January 15, 2026 4:31:51 PM |

<div align="center">

**\*\*External Email-Use Caution\*\***

</div>

Counsel,

We write to memorialize our discussions from yesterday's meet-and-confer.

### Search Terms

#### Hit Counts

On our January 9 meet-and-confer, we agreed that Plaintiffs and OpenAI would exchange hit counts for certain of our proposed search terms. We explained that our understanding was that we would provide hit counts for proposed terms that we have either refused to run or proposed modifying because of burden, and that OpenAI would do the same. You sought clarification as to whether we were going to provide an aggregate hit count. We said that we would take this back, and we now agree that Plaintiffs and OpenAI will exchange aggregate hit counts in addition to hit counts for terms modified or not run based on burden.

#### Search Term No. 9

We explained on the meet-and-confer that Search Term No. 9, which seeks to capture documents responsive to RFP No. 3, seeking audits, reports, and investigations concerning ChatGPT safety, security, and privacy issues, is appropriate as-is and without OpenAI's proposed modifications, which adds the phrase "("Apple Intelligence" OR iOS OR Siri OR "Writing Tools" OR "Visual Intelligence")" to the proposed search string.

We explained that we believed that audits, reports, and investigations were relevant to the claims and defenses at issue even if they don't mention Apple, iOS, Siri, Writing Tools or Visual Intelligence. As we noted, documents about ChatGPT's privacy and security are probative of one of Apple's proffered procompetitive business justifications for the Apple-ChatGPT integration. It is also one of OpenAI's proffered procompetitive business justifications. *See* OpenAI's Resps. & Objs. to Interrogatory No. 2. You responded that documents about ChatGPT security or privacy issues would be relevant to rebutting that justification only if Apple knew about them. We continue to disagree. If ChatGPT has significant safety and privacy issues identified in OpenAI reports, then the procompetitive effects Defendants claim based on the purported privacy protections of the integration would be illusory—whether or not Apple knew about those issues. Moreover, whether ChatGPT has significant safety and privacy issues goes to the quantum of the alleged procompetitive benefit.

Yet even accepting OpenAI's argument that Apple needed to have knowledge of the safety

<div align="right">

**A007**

</div>

issues in such audits, reports, or investigations it is not dispositive that OpenAI did not provide the reports to Apple. Apple could still have been aware of the issues that the audits, reports, or investigations identified. Plaintiffs are entitled to obtain discovery to probe that issue.

Please let us know whether OpenAI will revert to our proposed search term.

### Search Term Nos. 11 and 12

You added a modifier targeting Apple-integration-related documents to these terms. We asked for your thinking on this. You said you thought these terms mapped to RFP No. 6, which asks for documents regarding the integration of ChatGPT into Apple Intelligence and other Apple Products. We said we would take this back, and we now agree that we will accept this modification, reserving all rights to object to this (or any other) search-term modification after reviewing OpenAI's production.

### Search Term No. 18

You modified Search Term No. 18.01 by adding Apple-related words. We asked you why you did this. You said that you thought we had these terms in Search Term No. 18.02 and thought their non-inclusion in Search Term No. 18.01 was just an error from when you split our terms due to length. We said we would take this back to confirm. We can confirm that our original proposed search term had the Apple-related words, so it makes sense for both Search Term Nos. 18.01 and 18.02 to have that limiter.

### Search Term Nos. 39-42

You said you would not run these search terms because they did not seem to correspond to any RFP for which the parties have agreed to conduct a custodial search. We explained that these terms all mapped to RFP No. 26. We sought confirmation that OpenAI agreed to pull and produce aggregated data responsive to this Request. You said you were intending to pull go-get aggregated feedback reports and user feedback reports, but if it turns out there is nothing, you would be willing to revisit these terms.

### Search Term No. 48

You said you would not run this search term because it did not map to any request for production for which the parties have agreed to conduct a custodial search. We explained that this term mapped to RFP No. 31. We noted that the last time we heard from you about this RFP was on December 26, when you said that you "agree[d] to explore with [y]our client whether there are reasonably identifiable sources of documents responsive to [RFP No. 31] even if outside of specific repositories." We asked if you had a status update on that RFP. You said you were "looking at repositories" and "think you are producing" documents responsive to RFP No. 31. Please confirm that you will be producing documents responsive to RFP No. 31.

### *Custodians*

During our January 9 meet-and-confer, we had agreed to take back your explanation for

**A008**

why you had removed Jan Leike as a custodian. <u>On our meet-and-confer yesterday, we explained that we still believe that Leike is a relevant custodian for the same reasons we stated about safety in our discussion of Search Term No. 9 above: safety and privacy issues affecting ChatGPT are relevant for assessing Apple's procompetitive justification that it integrated with ChatGPT because of its record on safety and privacy.</u>

### *Motion to Compel*

We then discussed Plaintiffs' pending motion to compel, including our outstanding source code stipulation, the status of the substantial completion issue, and plans for the parties' JSR.

### *Source Code Stipulation*

We asked whether there was any update on our proposed source code stipulation. You said you had to discuss with Apple's counsel before coming back to us, but wanted to preview your thinking. You have now sent us Defendants' proposed stipulation, which we have addressed on a separate thread.

### *Substantial Completion*

Our motion to compel also seeks to compel OpenAI to substantially complete productions of certain categories of documents by January 15. You asked that we clarify what substantial-completion deadline we are currently targeting, given that the motion hearing postdates January 15. Our motion sought for OpenAI to have substantially completed by today, and OpenAI has not done so. Although January 15 will have passed by the hearing, we will tell the Court that OpenAI did not substantially complete on that timeline and will ask that the Court order OpenAI to substantially complete as soon as possible—and in all events by the end of next week.

You also asked us whether the substantial-completion issue was mooted given the parties' parallel discussions about moving deadlines. We explained that the issue was still live: February 20 is still our expert-report deadline, and OpenAI has yet to produce much of the discovery necessary for those reports.

### *Joint Status Report*

We have now circulated a draft of the JSR. Please let us know if you have any edits.

Best regards,
Scott

**Scott A. Eisman**
Partner
T: 212.261.5642

**From:** Eisman, Scott A. <seisman@axinn.com>
**Sent:** Tuesday, January 13, 2026 10:42 PM

**A009**

**To:** Cheung, Andrew J.H. <AJHCheung@wlrk.com>
**Cc:** Schwartz, Kevin S. <KSchwartz@wlrk.com>; mhurst@lynnllp.com; cpatton@lynnllp.com; akim@lynnllp.com; Savitt, William D. <wdsavitt@WLRK.com>; Levandoski, Stephen D. <SDLevandoski@wlrk.com>; Yavitz, Noah B. <NBYavitz@wlrk.com>; Robinson, M. Virginia <MVRobinson@wlrk.com>; Lauren Willard Zehmer <LZehmer@cov.com>; dee.kelly@kellyhart.com; julia.wisenberg@kellyhart.com; Emily Henn <ehenn@cov.com>; Liu, Henry (Covington & Burling LLP) <hliu@cov.com>; Carol Weiland <CWeiland@cov.com>; Elizabeth Sidhu <ESidhu@cov.com>; Zhi Yang Tan <ZTan@cov.com>; Reiser, Craig M. <creiser@axinn.com>; Justus, Bradley <bjustus@axinn.com>; Yung, Eva H. <eyung@axinn.com>; Boisvert, Caroline P. <cboisvert@axinn.com>; Erickson, Christopher <cerickson@axinn.com>; chris@stonehilton.com; judd@stonehilton.com
**Subject:** RE: X Corp. and X.AI LLC v. Apple Inc. et al., No. 4:25-cv-00914-P (N.D. Tex.)

Andrew,

We are reviewing your email, but in the meantime wanted to respond to say that 1:30 p.m. ET tomorrow works for us. We'll send an invite.

Best regards,
Scott

**Scott A. Eisman**
Partner
T: 212.261.5642

**From:** Cheung, Andrew J.H. <AJHCheung@wlrk.com>
**Sent:** Tuesday, January 13, 2026 5:49 PM
**To:** Eisman, Scott A. <seisman@axinn.com>
**Cc:** Schwartz, Kevin S. <KSchwartz@wlrk.com>; mhurst@lynnllp.com; cpatton@lynnllp.com; akim@lynnllp.com; Savitt, William D. <wdsavitt@WLRK.com>; Levandoski, Stephen D. <SDLevandoski@wlrk.com>; Yavitz, Noah B. <NBYavitz@wlrk.com>; Robinson, M. Virginia <MVRobinson@wlrk.com>; Lauren Willard Zehmer <LZehmer@cov.com>; dee.kelly@kellyhart.com; julia.wisenberg@kellyhart.com; Emily Henn <ehenn@cov.com>; Liu, Henry (Covington & Burling LLP) <hliu@cov.com>; Carol Weiland <CWeiland@cov.com>; Elizabeth Sidhu <ESidhu@cov.com>; Zhi Yang Tan <ZTan@cov.com>; Reiser, Craig M. <creiser@axinn.com>; Justus, Bradley <bjustus@axinn.com>; Yung, Eva H. <eyung@axinn.com>; Boisvert, Caroline P. <cboisvert@axinn.com>; Erickson, Christopher <cerickson@axinn.com>; chris@stonehilton.com; judd@stonehilton.com
**Subject:** RE: X Corp. and X.AI LLC v. Apple Inc. et al., No. 4:25-cv-00914-P (N.D. Tex.)

**Caution: External Email**

Scott,

**A010**

We are continuing to review your email from this morning and will respond, as appropriate, in due course.  In the interest of continuing to make progress in our discussions, however, we can be available to meet and confer further tomorrow, January 14 between 1:30pm and 2:30pm or on Thursday, January 15 between 1:30pm and 2:30pm.

Additionally, as discussed during the parties' January 9 meet and confer, we are providing further detail on the changes we proposed to Plaintiffs' proposed search terms.  As we mentioned during our discussions, those changes fall into three categories: (1) terms we narrowed to better target responsive documents; (2) terms to which we added modifiers to more accurately target the documents sought in Plaintiffs' RFPs, and (3) terms that we omitted because they were not aimed at RFPs for which we had agreed to perform custodial searches.  Each of these categories are explained in more detail below.

1. _Terms we narrowed to better target responsive documents._  (Terms 5, 6, 7, 8, 9, 10.01-02, 14.01-02, 15.01-14, 17.01-17.16, 29.01-03, 33.01, 34, 38, 45)

We reviewed a sample of 1,000 documents identified by Plaintiffs' initial search terms.  Only 25 of those 1,000 documents were responsive to Plaintiffs' requests—a responsiveness rate of 2.5%.  Accordingly, we slightly narrowed several search terms that we identified as producing large sets of nonresponsive documents in an effort to identify a more efficient review set. For example, Term 5 originally included a proximity search for terms about Apple Intelligence within 20 words of terms about integration.  From our initial review, documents that concern the Apple-ChatGPT integration use integration-related terms in close proximity to Apple Intelligence-related terms; documents that contain integration-related terms further away from Apple Intelligence-related terms were generally false hits.  To better target the intended population of responsive documents, we changed the proximity operator in Term 5 to identify documents that had the integration-related terms within 15 words of Apple Integration-related terms, rather than within 20.

2. _Terms to which we added modifiers to more accurately target the documents sought in Plaintiffs' RFPs._ (Terms 9, 11.01-02, 12.01-03, 18.01-02)

**Term 9**: We understood this search term to be intended to identify documents responsive to Plaintiffs' RFP No. 3, for which we have offered to provide non-privileged documents regarding any audit, investigation, inquiry, or analysis of ChatGPT's privacy, security, and content moderation conducted in relation to the Apple-ChatGPT Integration.  The original search term did not include any term designed to identify documents related to the integration.  To better target the set of documents responsive to RFP No. 3, we added a modifier targeting integration-related documents that was similar to modifiers appearing elsewhere in Plaintiffs' proposed search terms.

**Terms 11.01-02 and 12.01-03**: We understood this search term to be intended to

**A011**

identify documents responsive to Plaintiffs' RFP No. 6, which concerns documents regarding integrating GenAI Chatbots into the operating system of the iPhone and Other Apple Products, and/or into Apple Intelligence.  Plaintiffs' original search term did not include any terms designed to specifically target integrations with Apple, as opposed to targeting integrations generally.  To better target the set of documents responsive to RFP No. 6, we added a broad modifier designed to identify Apple integrations specifically.

**Terms 18.01-02**: We understood this search term to be intended to identify documents responsive to Plaintiffs' RFP No. 8, which concerns documents discussing, analyzing, evaluating, or documenting the Apple-ChatGPT Integration. The original search term did not include any term designed to identify documents related to the integration.  As with Term 9, to better target the set of documents responsive to RFP No. 8, we added a modifier targeting integration-related documents that was similar to modifiers appearing elsewhere in Plaintiffs' proposed search terms.

3. *Terms that we omitted because they were not aimed at RFPs for which we had agreed to perform custodial searches.* (Terms 13, 25, 32, 37, 39.01-02, 40.01-03, 41.01-05, 42.01-09, 47, 48)

Plaintiffs did not identify in your search proposal the RFPs that your proposed terms were intended to correspond to. We omitted Terms 13, 25, 32, 37, 39.01-02, 40.01-03, 41.01-05, 42.01-09, 47, and 48 because, even after our best attempts to match terms to RFPs, these terms did not seem to correspond to any request for production for which we have agreed to conduct a custodial search.  If you would like to discuss any of these terms further, please let us know the RFP to which the term (or terms) corresponds so that we can properly assess that term (or terms).

Finally, as to your request for our "more granular" hit counts, we want to clarify whether you are agreeing to provide corresponding hit counts based on our search terms (including an aggregate hit count) or whether you are offering to provide hit counts only for those search terms that you refuse to run based on burden concerns and are only requesting hit counts for search terms that OpenAI will not run based on a burden objection.

Best, Andrew

**Andrew J. Cheung**
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street | New York, NY 10019
+1 (212) 403-1338 (Direct) | +1 (212) 403-2338 (Fax)
AJHCheung@wlrk.com | www.wlrk.com

---

**From:** Eisman, Scott A. <seisman@axinn.com>
**Sent:** Tuesday, January 13, 2026 12:23 PM
**To:** Cheung, Andrew J.H. <AJHCheung@wlrk.com>

**A012**

**Cc:** Schwartz, Kevin S. <KSchwartz@wlrk.com>; mhurst@lynnllp.com; cpatton@lynnllp.com; akim@lynnllp.com; Savitt, William D. <wdsavitt@WLRK.com>; Levandoski, Stephen D. <SDLevandoski@wlrk.com>; Yavitz, Noah B. <NBYavitz@wlrk.com>; Robinson, M. Virginia <MVRobinson@wlrk.com>; Lauren Willard Zehmer <LZehmer@cov.com>; dee.kelly@kellyhart.com; julia.wisenberg@kellyhart.com; Emily Henn <ehenn@cov.com>; Liu, Henry (Covington & Burling LLP) <hliu@cov.com>; Carol Weiland <CWeiland@cov.com>; Elizabeth Sidhu <ESidhu@cov.com>; Zhi Yang Tan <ZTan@cov.com>; Reiser, Craig M. <creiser@axinn.com>; Justus, Bradley <bjustus@axinn.com>; Yung, Eva H. <eyung@axinn.com>; Boisvert, Caroline P. <cboisvert@axinn.com>; Erickson, Christopher <cerickson@axinn.com>; chris@stonehilton.com; judd@stonehilton.com

**Subject:** RE: X Corp. and X.AI LLC v. Apple Inc. et al., No. 4:25-cv-00914-P (N.D. Tex.)

<div style="border:1px solid; background-color:orange; text-align:center">**\*\*External Email-Use Caution\*\***</div>

Counsel,

I write to memorialize several issues from our January 9 meet-and-confer that your January 10 email does not capture. Please send us times when you are available this week to meet and confer further.

### Substantial completion

On our January 9 call, we asked when OpenAI expected to start rolling productions. You said that you were targeting this week (i.e., the week beginning January 11), but that you could not commit to a particular timeline for custodial searches. You also said that live disputes over your proposed search-term revisions would not hold up review. So, for instance, if you proposed modifying a proximity limiter from "w/20" to "w/15," you would review documents that hit on the term as modified, and if we later agree to revert to "w/20," you would review any de-duplicated hits.

### Search terms

As we noted, your December 24 counterproposal did not state the reasons for your proposed edits to Plaintiffs' search terms. We requested that you provide this information, as well as information on hit counts, to aid us in evaluating your proposed edits. You stated that you had provided us aggregate hit counts, but would be willing to provide written rationales and more granular hit counts if we agreed to do the same. We said that we would be happy to state our reasons for proposing edits and could provide hit counts for the search terms we refuse to run based on burden.

To make our next meet-and-confer as productive as possible, please send us in advance written explanations for each of your proposed edits, along with hit counts.

### Custodians

We also asked you to explain why your counterproposal on custodians omitted several of

**A013**

our proposed custodians and included two new people. We understand your positions for these custodians to be as follows:

*Custodians you proposed deleting*

- **Gregory Brockman (Co-founder and President).** You represented that Brockman's documents are duplicative of those of Sam Altman, Nick Turley, and Brad Lightcap.

- **Sebastian Bubeck (AI Researcher)**. You represented that Bubeck was not involved in the events at issue.

- **Ksenia Chumachenko (Head of Partnerships)**. You said that Chumachenko did not have any role in the integration, and that Zoran Martinovic—whom you proposed adding as a custodian—was the Partnerships employee who was responsible.

- **Peter Hoeschele (Stargate Lead)**. You said that Hoeschle was involved in Stargate —a project related to data centers—but that the data-center RFP called for "documents sufficient to show." You therefore explained that you didn't need a data-center custodian; you would be responding to that RFP through go-get documents.

- **Maggie Hott (Go to Market Leader).** You represented that you removed Hott because she was not involved in the integration. You explained that you added James Dyett, who is on the same team and was involved in the integration.

- **Britt Jamison (Product Manager).** You said that you haven't seen her name on documents yet. You said that if we're representing that she was involved in the conduct at issue, you would be willing to reassess. We are taking this back and plan to discuss it at our next meet-and-confer.

- **Jason Kwon (Product Manager).** You said that Kwon had no day-to-day involvement in the Apple-ChatGPT integration or in negotiating the Apple-OpenAI agreement. You added that he was OpenAI's General Counsel for much of the Relevant Period, so reviewing his documents would be a "privilege-logging exercise."

- <u>**Jan Leike** (Former Co-leader of Superalignment).</u> You said you did not understand Leike's relevance. <u>We explained that we believed he would possess documents</u>

**A014**

relevant to rebutting Apple's and OpenAI's procompetitive justification—that Apple integrated with OpenAI because it's the safest—because he complained that ChatGPT prioritized "shiny products" over safety. You said that even if that's true, it doesn't show that Apple knew there were any safety issues with ChatGPT. We pointed out that if the safety issues were apparent and Apple should have but didn't heed them (or if Apple was willfully blind to them), that would be relevant to rebutting Apple's defense. We agreed to take this back.

- **John Schulman (Co-founder of OpenAI).** You said that Schulman had a lower-level role and that he was part of a group that was kept apprised of technical issues with the integration. You also represented that he left in August 2024 and his documents would be duplicative of those of Dave Cummings, the "epicenter of implementing the integration."

- **Ilya Sutskever (Co-founder of OpenAI and former Chief Scientist).** You represented that Sutskever left in 2024, but would not have been involved in the integration.

*Custodians you proposed adding*

- **Krithika Muthukumar (n/k/a Shankarraman) and Kate Rouch.** You explained that you added these two custodians because they worked in marketing for OpenAI and thus would have documents responsive to RFPs seeking marketing materials.

Best regards,
Scott

**Scott A. Eisman**
Partner
T: 212.261.5642

-----Original Message-----
**From: Cheung, Andrew J.H. <AJHCheung@wlrk.com>**
**Sent: Saturday, January 10, 2026 1:10 PM**
**To: Eisman, Scott A. <seisman@axinn.com>**
**Cc: Schwartz, Kevin S. <KSchwartz@wlrk.com>; mhurst@lynnllp.com; cpatton@lynnllp.com; akim@lynnllp.com; Savitt, William D. <wdsavitt@WLRK.com>; Levandoski, Stephen D. <SDLevandoski@wlrk.com>; Yavitz, Noah B. <NBYavitz@wlrk.com>; Robinson, M. Virginia <MVRobinson@wlrk.com>; Lauren Willard Zehmer <LZehmer@cov.com>; dee.kelly@kellyhart.com; julia.wisenberg@kellyhart.com; Emily Henn <ehenn@cov.com>; Liu, Henry (Covington**

A015

**& Burling LLP) <hliu@cov.com>; Carol Weiland <CWeiland@cov.com>; Elizabeth Sidhu <ESidhu@cov.com>; Zhi Yang Tan <ZTan@cov.com>; Reiser, Craig M. <creiser@axinn.com>; Justus, Bradley <bjustus@axinn.com>; Yung, Eva H. <eyung@axinn.com>; Boisvert, Caroline P. <cboisvert@axinn.com>; Erickson, Christopher <cerickson@axinn.com>; chris@stonehilton.com; judd@stonehilton.com Subject: Re: X Corp. and X.AI LLC v. Apple Inc. et al., No. 4:25-cv-00914-P (N.D. Tex.)**

Caution: External Email

Dear Scott,

Thank you for what we believed was a productive meet-and-confer discussion yesterday afternoon. I'm writing to memorialize a few of the points we discussed on our call to ensure that the parties are on the same page.

I wanted confirm that, as we intended to convey in our January 4 email, OpenAI is working toward substantial completion of the document discovery that we have already agreed to conduct by January 30. And, based on your representation in your December 30 email that Plaintiffs agree that OpenAI need not re-review documents based on later changes to the scope of OpenAI's production based on the parties' meet-and-confers or Court orders, OpenAI had immediately started the process of reviewing the "common ground" search terms and custodians identified in your December 26 email. As you requested during our meet and confer over search terms and custodians, we will also run the currently agreed search terms over the four additional custodians we have proposed (Kate Rouch, Krithika Muthukumar, Zoran Martinovic, and James Dyett II) and follow up separately with written responses regarding the basis for our edits to your search terms.

We also appreciate your confirmation that your motion was not seeking the Court to overrule OpenAI's objections to particular requests for production, but rather that your motion was seeking "substantial completion" by January 15 with respect to the requests for production that you have identified in your motion of document production consistent with OpenAI's responses and objections to Plaintiffs' requests for production, as modified by our emails and letters with you after our meet and confer discussions with respect to those objections. We will approach our response to your motion based on that understanding. As we asked on our meet and confer, we would also appreciate if you would identify the search term strings and custodians that you are asking us to run as part of the substantial completion production sought in your motion.

As to the dispute over the requests for the production of source code, we understand that the parties will continue to explore a potential resolution, with the involvement of all parties, including Apple.

We believe these discussions and clarifications have helped narrow the issues in dispute between the parties and look forward to further engagement with you prior to submission of the joint status report directed by the Court.

Best, Andrew


On Jan 6, 2026, at 8:39 PM, Eisman, Scott A. <seisman@axinn.com> wrote:

A016

**External Email-Use Caution**

Kevin,

We can meet at 3:30 p.m. ET on Friday. We'll send an invite.

Thanks,

Scott

Scott        A.        Eisman

Partner
T: 212.261.5642<tel:212.261.5642>

-----Original Message-----
From: Schwartz, Kevin S. <KSchwartz@wlrk.com>
Sent: Tuesday, January 6, 2026 5:11 PM
To: Eisman, Scott A. <seisman@axinn.com>
Cc: mhurst@lynnllp.com; cpatton@lynnllp.com; akim@lynnllp.com; Savitt, William D. <wdsavitt@WLRK.com>; Levandoski, Stephen D. <SDLevandoski@wlrk.com>; Yavitz, Noah B. <NBYavitz@wlrk.com>; Cheung, Andrew J.H. <AJHCheung@wlrk.com>; Robinson, M. Virginia <MVRobinson@wlrk.com>; Lauren Willard Zehmer <LZehmer@cov.com>; dee.kelly@kellyhart.com; julia.wisenberg@kellyhart.com; Emily Henn <ehenn@cov.com>; Liu, Henry (Covington & Burling LLP) <hliu@cov.com>; Carol Weiland <CWeiland@cov.com>; Elizabeth Sidhu <ESidhu@cov.com>; Zhi Yang Tan <ZTan@cov.com>; Reiser, Craig M. <creiser@axinn.com>; Justus, Bradley <bjustus@axinn.com>; Yung, Eva H. <eyung@axinn.com>; Boisvert, Caroline P. <cboisvert@axinn.com>; Erickson, Christopher <cerickson@axinn.com>; chris@stonehilton.com; judd@stonehilton.com
Subject: Re: X Corp. and X.AI LLC v. Apple Inc. et al., No. 4:25-cv-00914-P (N.D. Tex.)

Caution: External Email

**A017**

Scott,

We disagree with your email and with Plaintiffs' motion to compel. We will respond in our opposition. But we would be pleased to meet and confer on the issues raised in your motion to see whether we can narrow the disputes between us. We can be available on Friday afternoon between 3 and 5pm ET, please let us know your availability during that time.

Best,

Kevin

On Jan 5, 2026, at 8:58 PM, Eisman, Scott A. <seisman@axinn.com<mailto:seisman@axinn.com>> wrote:

**External Email-Use Caution**

Kevin,

We disagree with the points you raised in your email last night, including your accusation that we are trying to manufacture a dispute over source code and substantial completion. We have been discussing substantial completion for weeks and have been discussing source code since October, and we have yet to reach resolution. Your email below confirms Plaintiffs and OpenAI have reached an impasse, and we will shortly be filing an appropriate motion. Our preference would of course be to resolve these issues without the Court's involvement. Accordingly, notwithstanding our filing, we are available to meet and confer tomorrow between 3 and 6 p.m. ET. Please let us know what time works for you.

**A018**

Source Code

Defendants' motions to dismiss suggested they intend to make product-design arguments. Plaintiffs have been clear that they need source code to rebut these product-design arguments—for instance, that it is technically or practically infeasible to integrate Grok into Apple Intelligence. It is thus not enough that Defendants have admitted that they "know of no 'technical barriers' to a Grok-Apple Integration." Even if Defendants know of no such barriers now, they may later argue that such barriers exist.

To eliminate that possibility, we have proposed that Defendants stipulate that they won't make a product-design or feasibility argument, and in return, we offered to withdraw our Source Code Requests. Defendants still have not done so, including in the stipulation Defendants proposed on January 2. That stipulation, which says that no party will rely on any other's source code, still leaves open the possibility that Defendants will argue that it is infeasible (e.g., impractical or costly) to integrate Grok into Apple Intelligence. Plaintiffs will withdraw their Source Code Requests only if Defendants stipulate that they will not make such an argument.

Substantial Completion

As we've explained consistently since December 9, we need Defendants to substantially

**A019**

complete productions in response to our first set of RFPs so that our experts have sufficient time with Defendants' productions to prepare the expert reports due on February 20. While you call this proposal "one-sided," there's nothing improper about basing Defendants' substantial-completion deadline on the deadline for Plaintiffs' expert reports. What is improper—as we have repeatedly stated—is to set a single substantial-completion date for "all parties," as you suggest. Not only are Defendants' expert reports due a month after Plaintiffs', but Defendants served their initial discovery requests a month after Plaintiffs did. That said, we are not refusing (and have never refused) to discuss to a substantial-completion deadline for Plaintiffs that makes sense based on the case schedule. But with our expert reports due next month, we need a commitment from Defendants to substantially complete productions in time to allow our experts to provide meaningful disclosures.

****

As noted, we are free tomorrow from 3 to 6 p.m. ET to meet and confer. Please let us know when you are free.

Best regards,

Scott

Scott        A.        Eisman

**A020**

Partner

T: 212.261.5642<tel:212.261.5642>

-----Original Message-----

From: Schwartz, Kevin S. <KSchwartz@wlrk.com<mailto:KSchwartz@wlrk.com>>

Sent: Sunday, January 4, 2026 9:18 PM

To: Eisman, Scott A. <seisman@axinn.com<mailto:seisman@axinn.com>>

Cc: mhurst@lynnllp.com<mailto:mhurst@lynnllp.com>; cpatton@lynnllp.com<mailto:cpatton@lynnllp.com>; akim@lynnllp.com<mailto:akim@lynnllp.com>; Savitt, William D. <wdsavitt@WLRK.com<mailto:wdsavitt@WLRK.com>>; Levandoski, Stephen D. <SDLevandoski@wlrk.com<mailto:SDLevandoski@wlrk.com>>; Yavitz, Noah B. <NBYavitz@wlrk.com<mailto:NBYavitz@wlrk.com>>; Cheung, Andrew J.H. <AJHCheung@wlrk.com<mailto:AJHCheung@wlrk.com>>; Robinson, M. Virginia <MVRobinson@wlrk.com<mailto:MVRobinson@wlrk.com>>; Lauren Willard Zehmer <LZehmer@cov.com<mailto:LZehmer@cov.com>>; dee.kelly@kellyhart.com<mailto:dee.kelly@kellyhart.com>; julia.wisenberg@kellyhart.com<mailto:julia.wisenberg@kellyhart.com>; Emily Henn <ehenn@cov.com<mailto:ehenn@cov.com>>; Liu, Henry (Covington & Burling LLP) <hliu@cov.com<mailto:hliu@cov.com>>; Carol Weiland <CWeiland@cov.com<mailto:CWeiland@cov.com>>; Elizabeth Sidhu <ESidhu@cov.com<mailto:ESidhu@cov.com>>; Zhi Yang Tan <ZTan@cov.com<mailto:ZTan@cov.com>>; Reiser, Craig M. <creiser@axinn.com<mailto:creiser@axinn.com>>; Justus, Bradley <bjustus@axinn.com<mailto:bjustus@axinn.com>>; Yung, Eva H. <eyung@axinn.com<mailto:eyung@axinn.com>>; Boisvert, Caroline P. <cboisvert@axinn.com<mailto:cboisvert@axinn.com>>; Erickson, Christopher <cerickson@axinn.com<mailto:cerickson@axinn.com>>; chris@stonehilton.com<mailto:chris@stonehilton.com>; judd@stonehilton.com<mailto:judd@stonehilton.com>

Subject: Re: X Corp. and X.AI LLC v. Apple Inc. et al., No. 4:25-cv-00914-P (N.D. Tex.)

**A021**

Caution: External Email

Counsel:

We are concerned that your January 2 correspondence is designed to manufacture a discovery dispute rather than develop an appropriate record for trial:

1.        Plaintiffs continue to demand OpenAI's proprietary source code, sensitive commercial information that bears no relevance to the claims in this case.  We have nevertheless addressed all of your concerns, except the hypothetical anxiety that Defendants might invoke source code as part of their defense.  To address that concern,

**A022**

we have proposed that all parties stipulate not to rely upon proprietary source code.  You have failed to explain why this solution is inadequate.

2.        Plaintiffs continue to insist on a January 15 deadline for the "substantial completion" of Defendants' production in this case.  That proposal is one-sided, impractical, and contrary to the Court's scheduling order.  To facilitate orderly compilation of the evidence, we have repeatedly proposed that the parties agree on feasible timing for substantial completion by all parties once they reach agreement on the scope of that review.  If the parties cooperate in the manner the courts expect, we believe discovery for the documents, search terms, and custodians the parties have agreed upon can be substantially completed by January 30.

Defendants are available to meet and confer early this week; please let us know your availability on Monday afternoon and Tuesday.  Below, we address each of these matters in further detail.

**A023**

Source Code

After objecting to Plaintiffs' requests for OpenAI's source code, OpenAI engaged in multiple meet and confers to address the purported rationale for this request. Plaintiffs offered a single refrain: that they must be able to probe the "technical feasibility" of integrating xAI's Grok with Apple. For weeks, we asked how OpenAI's proprietary source code could possibly bear on the technical feasibility of Grokinterfacing with Apple. Plaintiffs offered no explanation. In the spirit of compromise, OpenAI nevertheless proposed three separate resolutions:

·        When Plaintiffs claimed to need information about the technical architecture of the ChatGPT integration with Apple, OpenAI produced technical documentation of the requirements for its integration. Plaintiffs have not explained why that is insufficient to test the feasibility of integrating Grok.

**A024**

·　　　　When Plaintiffs used requests for admission to probe for any technical feasibility arguments by Defendants, Defendants admitted that they know of no "technical barriers" to a Grok-Apple integration.

·　　　　And when Plaintiffs speculated that at some point we still might make a source-code argument, Defendants proposed a stipulation to foreclose that possibility for all parties.  Your January 2 response was to claim impasse. But if Plaintiffs truly wish to take off the table any arguments involving the source code of Grok (or ChatGPT or Apple), they must explain what possible basis they have for rejecting the stipulation.

Substantial Completion

We will not rehearse here the parties' course of engagement regarding your demands to

**A025**

impose a unilateral "substantial completion" discovery deadline on Defendants.  That record will be clear enough for the Court should motion practice become necessary.  Substantially completing discovery by January 15 is not reasonably achievable, given your late start in proposing a search protocol, your continual delays with respect to our discovery requests of Plaintiffs, and that you have not even decided whether to accept our pending search term protocol that we proposed to you.  In light of your December 29 email, we can't even ascertain what you mean by "substantial completion," as it has become a shifting target.

As matters stand, we have produced many important documents to you, we are on track to make further substantial productions to you shortly, and, with reasonable cooperation we believe the parties could complete most agreed-upon discovery within a month.  All that while you, the Plaintiffs in the action, have produced essentially nothing.  We suggest that all parties would benefit from working diligently to advance and complete document discovery as promptly as possible rather than continuing to quarrel about your desire to impose unilateral deadlines for tactical gain.  With that objective in view, we propose to meet and confer early this week.

Best,

Kevin

A026

On Jan 2, 2026, at 4:55 PM, Eisman, Scott A.
<seisman@axinn.com<mailto:seisman@axinn.com<mailto:seisman@axinn.com%3cmailto:
seisman@axinn.com>>> wrote:

**External Email-Use Caution**

Kevin,

We disagree with many of the points in your email. In short, we believe that we are at an impasse on source code and substantial completion, and we are prepared to seek appropriate relief from the Court as soon as Monday. We can be available to meet and confer between now and then if Defendants believe that doing so would be useful.

First, we have repeatedly explained the terms on which we would drop our Source Code Requests: Defendants must stipulate that they will not raise product-design arguments,

**A027**

including arguments that integrating Grok into Apple Intelligence would be technically or practically infeasible. Defendants' proposed stipulation does not do so.

Contrary to your assertion, moreover, we didn't introduce this concept "for the first time as an element in [our] proposed stipulation." We have instead repeatedly laid out that the terms for Plaintiffs to withdraw our Source Code Requests, including in our December 16 and December 23 emails. Defendants still have not agreed to those terms, and so our Source Code Requests remain outstanding.

If Defendants will not agree to produce source code or stipulate to forgo product-design arguments, as spelled out in detail in Plaintiffs' stipulation, then Plaintiffs will be forced to move.

Second, we continue to believe that Defendants must commit to a January 15 substantial-completion deadline. Plaintiffs' expert reports are due on February 20. Yet nearly three months into discovery, Defendants have made just one production each—consisting of a paltry 75 documents combined. And OpenAI has now refused even to discuss Plaintiffs' proposed search terms and custodians unless that discussion also involves OpenAI's proposed search terms and custodians. As we've said repeatedly, however, Plaintiffs and Defendants are not similarly situated, and Defendants' continued efforts to try to yoke Plaintiffs' and Defendants' discovery together is improper. If Defendants will not commit to a January 15 substantial-completion deadline, then we'll have no choice but to seek relief from the Court.

As noted above, we are available to meet and confer, including over the weekend, if that would be useful.

**A028**

Best regards,

Scott

Scott        A.        Eisman

Partner

T: 212.261.5642<tel:212.261.5642>

**A029**

From: Schwartz, Kevin S. <KSchwartz@wlrk.com<mailto:KSchwartz@wlrk.com<mailto:KSchwartz@wlrk.com%3cmailto:KSchwartz@wlrk.com>>>

Sent: Friday, January 2, 2026 4:36 PM

To: Eisman, Scott A. <seisman@axinn.com<mailto:seisman@axinn.com<mailto:seisman@axinn.com%3cmailto:seisman@axinn.com>>>; mhurst@lynnllp.com<mailto:mhurst@lynnllp.com<mailto:mhurst@lynnllp.com%3cmailto:mhurst@lynnllp.com>>; cpatton@lynnllp.com<mailto:cpatton@lynnllp.com<mailto:cpatton@lynnllp.com%3cmailto:cpatton@lynnllp.com>>; akim@lynnllp.com<mailto:akim@lynnllp.com<mailto:akim@lynnllp.com%3cmailto:akim@lynnllp.com>>; Savitt, William D. <wdsavitt@WLRK.com<mailto:wdsavitt@WLRK.com<mailto:wdsavitt@WLRK.com%3cmailto:wdsavitt@WLRK.com>>>; Levandoski, Stephen D. <SDLevandoski@wlrk.com<mailto:SDLevandoski@wlrk.com<mailto:SDLevandoski@wlrk.com%3cmailto:SDLevandoski@wlrk.com>>>; Yavitz, Noah B. <NBYavitz@wlrk.com<mailto:NBYavitz@wlrk.com<mailto:NBYavitz@wlrk.com%3cmailto:NBYavitz@wlrk.com>>>; Cheung, Andrew J.H. <AJHCheung@wlrk.com<mailto:AJHCheung@wlrk.com<mailto:AJHCheung@wlrk.com%3cmailto:AJHCheung@wlrk.com>>>; Robinson, M. Virginia <MVRobinson@wlrk.com<mailto:MVRobinson@wlrk.com<mailto:MVRobinson@wlrk.com%3cmailto:MVRobinson@wlrk.com>>>; Willard Zehmer, Lauren <LZehmer@cov.com<mailto:LZehmer@cov.com<mailto:LZehmer@cov.com%3cmailto:LZehmer@cov.com>>>; dee.kelly@kellyhart.com<mailto:dee.kelly@kellyhart.com<mailto:dee.kelly@kellyhart.com%3cmailto:dee.kelly@kellyhart.com>>; julia.wisenberg@kellyhart.com<mailto:julia.wisenberg@kellyhart.com<mailto:julia.wisenberg@kellyhart.com%3cmailto:julia.wisenberg@kellyhart.com>>; Henn, Emily <ehenn@cov.com<mailto:ehenn@cov.com<mailto:ehenn@cov.com%3cmailto:ehenn@cov.com>>>; Liu, Henry (Covington & Burling LLP) <hliu@cov.com<mailto:hliu@cov.com<mailto:hliu@cov.com%3cmailto:hliu@cov.com>>>; Weiland, Carol <CWeiland@cov.com<mailto:CWeiland@cov.com<mailto:CWeiland@cov.com%3cmailto:CWeiland@cov.com>>>; Sidhu, Elizabeth <ESidhu@cov.com<mailto:ESidhu@cov.com<mailto:ESidhu@cov.com%3cmailto:ESidhu@cov.com>>>; Tan, Zhi Yang <ZTan@cov.com<mailto:ZTan@cov.com<mailto:ZTan@cov.com%3cmailto:ZTan@cov.com>>>

**A030**

Cc: Reiser, Craig M.
<creiser@axinn.com<mailto:creiser@axinn.com<mailto:creiser@axinn.com%3cmailto:creiser@axinn.com>>>; Justus, Bradley
<bjustus@axinn.com<mailto:bjustus@axinn.com<mailto:bjustus@axinn.com%3cmailto:bjustus@axinn.com>>>; Yung, Eva H.
<eyung@axinn.com<mailto:eyung@axinn.com<mailto:eyung@axinn.com%3cmailto:eyung@axinn.com>>>; Boisvert, Caroline P.
<cboisvert@axinn.com<mailto:cboisvert@axinn.com<mailto:cboisvert@axinn.com%3cmailto:cboisvert@axinn.com>>>; Erickson, Christopher
<cerickson@axinn.com<mailto:cerickson@axinn.com<mailto:cerickson@axinn.com%3cmailto:cerickson@axinn.com>>>;
chris@stonehilton.com<mailto:chris@stonehilton.com<mailto:chris@stonehilton.com%3cmailto:chris@stonehilton.com>>;
judd@stonehilton.com<mailto:judd@stonehilton.com<mailto:judd@stonehilton.com%3cmailto:judd@stonehilton.com>>


Subject: RE: X Corp. and X.AI LLC v. Apple Inc. et al., No. 4:25-cv-00914-P (N.D. Tex.)


Caution: External Email


_____


Scott,

**A031**

First, as to your requests for Defendants' source code, we have repeatedly asked for—and Plaintiffs have repeatedly failed to provide—an explanation of why Defendants' source code is needed to shed light on the technical feasibility of integrating Grok into iOS, when Defendants have not made any arguments regarding such technical feasibility.  To the contrary, Defendants have all admitted, in response to your requests for admission, that Defendants are not aware of any "technical barriers" on the part of Apple or in Apple Intelligence that would prevent Grok from integrating with Apple Intelligence. And to the extent Plaintiffs seek to probe the architecture of the Apple-ChatGPT integration, OpenAI has provided the technical specifications documentation on precisely that question.

You have now proposed for the first time as an element in your proposed stipulation that source code may be relevant to "product-design arguments about the infeasibility of Grok being natively integrated into Apple Intelligence"—separate from any technical infeasibility arguments—but have not offered any reason why Defendants' source code would be probative of such non-technical feasibility arguments.  Indeed, although your proposed stipulation would have Defendants forswear any positions "based on product design considerations or justifications" or "feasibility issues," it is still unclear what you think those positions are.

To take this issue off the table, Defendants propose that the parties enter into the attached stipulation, providing that none of the parties will seek to rely on any proprietary source code in this action or seek the production of another party's proprietary source code. If Defendants do not request and xAI does not offer its own source code as evidence in this case, then Plaintiffs should have no concern about any party using source code to make technical infeasibility arguments.  That, together with Defendants' responses to Plaintiffs' requests for admission, should be more than sufficient to obviate Plaintiffs' perceived need for source code.  Defendants are available to meet and confer with Plaintiffs about our proposed stipulation.

**A032**

Second, as to your repeated requests for a substantial completion deadline of January 15, Defendants have repeatedly and consistently responded (including in my December 17 response to your December 16 email below, which response is omitted from this chain) that a January 15 deadline is not reasonable or realistic unless Plaintiffs drastically scaled back the scope of their requests.  Plaintiffs chose not to.  Instead the parties are still negotiating over the scope of production and search parameters, with Plaintiffs having proposed initial search terms that were significantly overbroad and disproportional to the needs of the case, and that that were filled with errors and deficiencies that took substantial effort to correct.

You now are taking the position that "substantial completion" would be accomplished with production of some self-selected subset of the documents that you have sought in discovery, and through your proposed search terms.  But Plaintiffs cannot unilaterally impose interim deadlines for vaguely-defined portions of document discovery.  And while Defendants are open to cooperating with Plaintiffs to prioritize certain discovery, what you have proposed is simply not workable given that the parties are still actively negotiating custodians or search terms.  Other than with respect to certain data, you have also not identified which requests for production, or portions of such requests, that you are seeking to prioritize.  Nor have you explained whether you are asking Defendants to prioritize review of certain custodial documents and, if so, which proposed search terms strings— none of which are designated as corresponding to any particular RFPs—and which custodians you are asking Defendants to focus on first.

Finally, we note that that nothing in the Court's schedule contemplates or permits the parties to set an interim substantial completion deadline for any document productions in advance of expert reports.  To the contrary, in setting the schedule, the Court rejected the parties' proposal of a fact discovery deadline that would have fact discovery largely complete before expert reports were due, and instead ordered initial expert reports to be submitted in the middle of the period for fact discovery, with fact and expert discovery ending on the same date.  As we believe the Court has made clear, there is no tie between the expert report schedule and any fact discovery deadlines.

Nevertheless, Defendants are still prepared to discuss a reasonable substantial completion

**A033**

deadline for the parties in the context of agreed-upon search terms and custodians, as well as to discuss reasonable requests to prioritize adequately defined subsets of Plaintiffs' discovery requests, presuming Plaintiffs are open to the same.  Please let us know when you are available for a meet and confer on this issue.

Best regards,

Kevin

From: Eisman, Scott A. <seisman@axinn.com<mailto:seisman@axinn.com<mailto:seisman@axinn.com%3cmailto:seisman@axinn.com<mailto:seisman@axinn.com%3cmailto:seisman@axinn.com%3cmailto:seisman@axinn.com%3cmailto:seisman@axinn.com>>>>

Sent: Monday, December 29, 2025 4:12 PM

To: Schwartz, Kevin S. <KSchwartz@wlrk.com<mailto:KSchwartz@wlrk.com<mailto:KSchwartz@wlrk.com%3cmailto:KSchwartz@wlrk.com<mailto:KSchwartz@wlrk.com%3cmailto:KSchwartz@wlrk.com%3cmailto:KSchwartz@wlrk.com%3cmailto:KSchwartz@wlrk.com>>>>; mhurst@lynnllp.com<mailto:mhurst@lynnllp.com<mailto:mhurst@lynnllp.com%3cmailto:mhurst@lynnllp.com<mailto:mhurst@lynnllp.com%3cmailto:mhurst@lynnllp.com%3cmailto:mhurst@lynnllp.com%3cmailto:mhurst@lynnllp.com>>>; cpatton@lynnllp.com<mailto:cpatton@lynnllp.com<mailto:cpatton@lynnllp.com%3cmailto:c

**A034**

patton@lynnllp.com<mailto:cpatton@lynnllp.com%3cmailto:cpatton@lynnllp.com%3cmailto:cpatton@lynnllp.com%3cmailto:cpatton@lynnllp.com>>>; akim@lynnllp.com<mailto:akim@lynnllp.com<mailto:akim@lynnllp.com%3cmailto:akim@lynnllp.com<mailto:akim@lynnllp.com%3cmailto:akim@lynnllp.com%3cmailto:akim@lynnllp.com%3cmailto:akim@lynnllp.com>>>; Savitt, William D. <wdsavitt@WLRK.com<mailto:wdsavitt@WLRK.com<mailto:wdsavitt@WLRK.com%3cmailto:wdsavitt@WLRK.com<mailto:wdsavitt@WLRK.com%3cmailto:wdsavitt@WLRK.com%3cmailto:wdsavitt@WLRK.com%3cmailto:wdsavitt@WLRK.com>>>>; Levandoski, Stephen D. <SDLevandoski@wlrk.com<mailto:SDLevandoski@wlrk.com<mailto:SDLevandoski@wlrk.com%3cmailto:SDLevandoski@wlrk.com<mailto:SDLevandoski@wlrk.com%3cmailto:SDLevandoski@wlrk.com%3cmailto:SDLevandoski@wlrk.com>>>>; Yavitz, Noah B. <NBYavitz@wlrk.com<mailto:NBYavitz@wlrk.com<mailto:NBYavitz@wlrk.com%3cmailto:NBYavitz@wlrk.com<mailto:NBYavitz@wlrk.com%3cmailto:NBYavitz@wlrk.com%3cmailto:NBYavitz@wlrk.com>>>>; Cheung, Andrew J.H. <AJHCheung@wlrk.com<mailto:AJHCheung@wlrk.com<mailto:AJHCheung@wlrk.com%3cmailto:AJHCheung@wlrk.com<mailto:AJHCheung@wlrk.com%3cmailto:AJHCheung@wlrk.com%3cmailto:AJHCheung@wlrk.com>>>>; Robinson, M. Virginia <MVRobinson@wlrk.com<mailto:MVRobinson@wlrk.com<mailto:MVRobinson@wlrk.com%3cmailto:MVRobinson@wlrk.com<mailto:MVRobinson@wlrk.com%3cmailto:MVRobinson@wlrk.com%3cmailto:MVRobinson@wlrk.com>>>>; Willard Zehmer, Lauren <LZehmer@cov.com<mailto:LZehmer@cov.com<mailto:LZehmer@cov.com%3cmailto:LZehmer@cov.com<mailto:LZehmer@cov.com%3cmailto:LZehmer@cov.com%3cmailto:LZehmer@cov.com>>>>; dee.kelly@kellyhart.com<mailto:dee.kelly@kellyhart.com<mailto:dee.kelly@kellyhart.com%3cmailto:dee.kelly@kellyhart.com<mailto:dee.kelly@kellyhart.com%3cmailto:dee.kelly@kellyhart.com%3cmailto:dee.kelly@kellyhart.com>>>; julia.wisenberg@kellyhart.com<mailto:julia.wisenberg@kellyhart.com<mailto:julia.wisenberg@kellyhart.com%3cmailto:julia.wisenberg@kellyhart.com<mailto:julia.wisenberg@kellyhart.com%3cmailto:julia.wisenberg@kellyhart.com%3cmailto:julia.wisenberg@kellyhart.com>>>; Henn, Emily <ehenn@cov.com<mailto:ehenn@cov.com<mailto:ehenn@cov.com%3cmailto:ehenn@cov.com<mailto:ehenn@cov.com%3cmailto:ehenn@cov.com%3cmailto:ehenn@cov.com%3cmailto:ehenn@cov.com>>>>; Liu, Henry (Covington & Burling LLP) <hliu@cov.com<mailto:hliu@cov.com<mailto:hliu@cov.com%3cmailto:hliu@cov.com<mailto:hliu@cov.com%3cmailto:hliu@cov.com%3cmailto:hliu@cov.com%3cmailto:hliu@cov.com>>>>; Weiland, Carol <CWeiland@cov.com<mailto:CWeiland@cov.com<mailto:CWeiland@cov.com%3cmailto:CWeiland@cov.com<mailto:CWeiland@cov.com%3cmailto:CWeiland@cov.com%3cmailto:CWeiland@cov.com%3cmailto:CWeiland@cov.com>>>>; Sidhu, Elizabeth <ESidhu@cov.com<mailto:ESidhu@cov.com<mailto:ESidhu@cov.com%3cmailto:ESidhu@cov.com<mailto:ESidhu@cov.com%3cmailto:ESidhu@cov.com%3cmailto:ESidhu@cov.com%3cmailto:ESidhu@cov.com>>>>; Tan, Zhi Yang <ZTan@cov.com<mailto:ZTan@cov.com<mailto:ZTan@cov.com%3cmailto:ZTan@cov.com<mailto:ZTan@cov.com%3cmailto:ZTan@cov.com%3cmailto:ZTan@cov.com%3cmailto:ZTan@cov.com>>>>

**A035**

Cc: Reiser, Craig M. <creiser@axinn.com<mailto:creiser@axinn.com<mailto:creiser@axinn.com%3cmailto:creiser@axinn.com<mailto:creiser@axinn.com%3cmailto:creiser@axinn.com%3cmailto:creiser@axinn.com%3cmailto:creiser@axinn.com>>>>; Justus, Bradley <bjustus@axinn.com<mailto:bjustus@axinn.com<mailto:bjustus@axinn.com%3cmailto:bjustus@axinn.com<mailto:bjustus@axinn.com%3cmailto:bjustus@axinn.com%3cmailto:bjustus@axinn.com%3cmailto:bjustus@axinn.com>>>>; Yung, Eva H. <eyung@axinn.com<mailto:eyung@axinn.com<mailto:eyung@axinn.com%3cmailto:eyung@axinn.com<mailto:eyung@axinn.com%3cmailto:eyung@axinn.com%3cmailto:eyung@axinn.com%3cmailto:eyung@axinn.com>>>>; Boisvert, Caroline P. <cboisvert@axinn.com<mailto:cboisvert@axinn.com<mailto:cboisvert@axinn.com%3cmailto:cboisvert@axinn.com<mailto:cboisvert@axinn.com%3cmailto:cboisvert@axinn.com%3cmailto:cboisvert@axinn.com%3cmailto:cboisvert@axinn.com>>>>; Erickson, Christopher <cerickson@axinn.com<mailto:cerickson@axinn.com<mailto:cerickson@axinn.com%3cmailto:cerickson@axinn.com<mailto:cerickson@axinn.com%3cmailto:cerickson@axinn.com%3cmailto:cerickson@axinn.com%3cmailto:cerickson@axinn.com>>>>; chris@stonehilton.com<mailto:chris@stonehilton.com<mailto:chris@stonehilton.com%3cmailto:chris@stonehilton.com<mailto:chris@stonehilton.com%3cmailto:chris@stonehilton.com%3cmailto:chris@stonehilton.com%3cmailto:chris@stonehilton.com>>>; judd@stonehilton.com<mailto:judd@stonehilton.com<mailto:judd@stonehilton.com%3cmailto:judd@stonehilton.com<mailto:judd@stonehilton.com%3cmailto:judd@stonehilton.com%3cmailto:judd@stonehilton.com%3cmailto:judd@stonehilton.com>>>

Subject: RE: X Corp. and X.AI LLC v. Apple Inc. et al., No. 4:25-cv-00914-P (N.D. Tex.)

**External Email-Use Caution**

Counsel,

We write to raise two issues related to the discovery that Plaintiffs have been seeking from Defendants since October 10.

First, we are following up on our email from last Tuesday regarding source code. As we explained in that email, the stipulation we sent you withdraws Plaintiffs' Source Code Requests (OpenAI RFP Nos. 6(c)-(d) and 34 and Apple RFP Nos. 6(c)-(d), 26-27, and 54(e)) in exchange for Defendants' commitment not to raise product-design arguments, including arguments that it is technically or practically infeasible to integrate Grok into Apple intelligence. If Defendants will not make that commitment by signing the stipulation, then Plaintiffs need source code to rebut the product-design arguments Defendants have suggested they will raise. And Plaintiffs need the source code now so that they can get it to their experts, whose initial reports are due on February 20, 2026.

It has been nearly a week, and you still haven't responded to our email transmitting the stipulation. If we don't hear back from you by Monday, January 5, at 1 p.m. ET, on this stipulation—which concerns an issue we've been discussing for almost two months—we will assume we are at an impasse.

Second, we are following up on our repeated requests that Defendants commit to a January 15, 2026 deadline to substantially complete production of documents in response to Plaintiffs' First Request for Production of Documents. As Defendants are well aware, Plaintiffs' initial expert reports are due on February 20. To be clear, we view substantial completion as being less than the production of all responsive documents. Rather, substantial completion would entail, at a minimum, producing the following categories of documents:

**A037**

* Documents regarding the effect of the Apple-OpenAI agreement on competition in the market for generative AI chatbots.

* Defendants' analyses of competition in the market for generative AI chatbots.

* Documents regarding entry barriers in the market for generative AI chatbots, including documents regarding OpenAI's raises of capital.

* Documents regarding the promotion, distribution, treatment, performance, and ranking of the ChatGPT app in the Apple App Store.

* Documents regarding the promotion, distribution, treatment, performance, and ranking of the Grok app in the Apple App Store.

* Documents regarding the potential integration of Grok, or any other non-ChatGPT chatbot, into Apple Intelligence.

* Data relating to the above document categories, including data on market share (Apple RFP No. 15; OpenAI RFP No. 15); actual and projected changes in prompt volume, subscriptions, and downloads (Apple RFP Nos. 8, 29; OpenAI RFP Nos. 8, 24); Siri requests filled by ChatGPT (Apple RFP No. 30); the value of data provided to OpenAI under the Apple-ChatGPT integration (Apple RFP No. 8; OpenAI RFP No. 8); and App Store metrics (Apple RFP No. 48).

These discrete categories go to the heart of Plaintiffs' claims—claims that Defendants have known about since August. If Defendants will not commit, by Monday, January 5, at 1 p.m. ET, to producing these categories of documents by January 15, we will assume that we are at an impasse.

**A038**

A039

We are available to meet and confer about either of these issues.

Best regards,

Scott

Scott

A.

A039

A040

Eisman

Partner

T: 212.261.5642<tel:212.261.5642>

From: Eisman, Scott A.
<seisman@axinn.com<mailto:seisman@axinn.com<mailto:seisman@axinn.com%3cmailto:
seisman@axinn.com<mailto:seisman@axinn.com%3cmailto:seisman@axinn.com%3cmailt
o:seisman@axinn.com%3cmailto:seisman@axinn.com>>>>

Sent: Tuesday, December 23, 2025 10:37 PM

To: Schwartz, Kevin S.
<KSchwartz@wlrk.com<mailto:KSchwartz@wlrk.com<mailto:KSchwartz@wlrk.com%3cmai
lto:KSchwartz@wlrk.com<mailto:KSchwartz@wlrk.com%3cmailto:KSchwartz@wlrk.com%3
cmailto:KSchwartz@wlrk.com%3cmailto:KSchwartz@wlrk.com>>>>;
mhurst@lynnllp.com<mailto:mhurst@lynnllp.com<mailto:mhurst@lynnllp.com%3cmailto:m
hurst@lynnllp.com<mailto:mhurst@lynnllp.com%3cmailto:mhurst@lynnllp.com%3cmailto:m
hurst@lynnllp.com%3cmailto:mhurst@lynnllp.com>>>;
cpatton@lynnllp.com<mailto:cpatton@lynnllp.com<mailto:cpatton@lynnllp.com%3cmailto:c
patton@lynnllp.com<mailto:cpatton@lynnllp.com%3cmailto:cpatton@lynnllp.com%3cmailto
:cpatton@lynnllp.com%3cmailto:cpatton@lynnllp.com>>>;
akim@lynnllp.com<mailto:akim@lynnllp.com<mailto:akim@lynnllp.com%3cmailto:akim@ly
nnllp.com<mailto:akim@lynnllp.com%3cmailto:akim@lynnllp.com%3cmailto:akim@lynnllp.
com%3cmailto:akim@lynnllp.com>>>; Savitt, William D.
<wdsavitt@WLRK.com<mailto:wdsavitt@WLRK.com<mailto:wdsavitt@WLRK.com%3cmail
to:wdsavitt@WLRK.com<mailto:wdsavitt@WLRK.com%3cmailto:wdsavitt@WLRK.com%3c
mailto:wdsavitt@WLRK.com%3cmailto:wdsavitt@WLRK.com>>>>; Levandoski, Stephen
D.
<SDLevandoski@wlrk.com<mailto:SDLevandoski@wlrk.com<mailto:SDLevandoski@wlrk.c
om%3cmailto:SDLevandoski@wlrk.com<mailto:SDLevandoski@wlrk.com%3cmailto:SDLev
andoski@wlrk.com%3cmailto:SDLevandoski@wlrk.com%3cmailto:SDLevandoski@wlrk.co
m>>>>; Yavitz, Noah B.
<NBYavitz@wlrk.com<mailto:NBYavitz@wlrk.com<mailto:NBYavitz@wlrk.com%3cmailto:N
BYavitz@wlrk.com<mailto:NBYavitz@wlrk.com%3cmailto:NBYavitz@wlrk.com%3cmailto:N
BYavitz@wlrk.com%3cmailto:NBYavitz@wlrk.com>>>>; Cheung, Andrew J.H.
<AJHCheung@wlrk.com<mailto:AJHCheung@wlrk.com<mailto:AJHCheung@wlrk.com%3
cmailto:AJHCheung@wlrk.com<mailto:AJHCheung@wlrk.com%3cmailto:AJHCheung@wlr
k.com%3cmailto:AJHCheung@wlrk.com%3cmailto:AJHCheung@wlrk.com>>>>;

**A041**

Robinson, M. Virginia
<MVRobinson@wlrk.com<mailto:MVRobinson@wlrk.com<mailto:MVRobinson@wlrk.com%3cmailto:MVRobinson@wlrk.com<mailto:MVRobinson@wlrk.com%3cmailto:MVRobinson@wlrk.com%3cmailto:MVRobinson@wlrk.com>>>>;
Willard Zehmer, Lauren
<LZehmer@cov.com<mailto:LZehmer@cov.com<mailto:LZehmer@cov.com%3cmailto:LZehmer@cov.com<mailto:LZehmer@cov.com%3cmailto:LZehmer@cov.com%3cmailto:LZehmer@cov.com>>>>;
dee.kelly@kellyhart.com<mailto:dee.kelly@kellyhart.com<mailto:dee.kelly@kellyhart.com%3cmailto:dee.kelly@kellyhart.com<mailto:dee.kelly@kellyhart.com%3cmailto:dee.kelly@kellyhart.com%3cmailto:dee.kelly@kellyhart.com>>>;
julia.wisenberg@kellyhart.com<mailto:julia.wisenberg@kellyhart.com<mailto:julia.wisenberg@kellyhart.com%3cmailto:julia.wisenberg@kellyhart.com<mailto:julia.wisenberg@kellyhart.com%3cmailto:julia.wisenberg@kellyhart.com%3cmailto:julia.wisenberg@kellyhart.com>>>; Henn, Emily
<ehenn@cov.com<mailto:ehenn@cov.com<mailto:ehenn@cov.com%3cmailto:ehenn@cov.com<mailto:ehenn@cov.com%3cmailto:ehenn@cov.com%3cmailto:ehenn@cov.com>>>>; Liu, Henry
<HLiu@cov.com<mailto:HLiu@cov.com<mailto:HLiu@cov.com%3cmailto:HLiu@cov.com<mailto:HLiu@cov.com%3cmailto:HLiu@cov.com%3cmailto:HLiu@cov.com>>>>; Weiland, Carol
<CWeiland@cov.com<mailto:CWeiland@cov.com<mailto:CWeiland@cov.com%3cmailto:CWeiland@cov.com<mailto:CWeiland@cov.com%3cmailto:CWeiland@cov.com%3cmailto:CWeiland@cov.com>>>>; Sidhu, Elizabeth
<ESidhu@cov.com<mailto:ESidhu@cov.com<mailto:ESidhu@cov.com%3cmailto:ESidhu@cov.com<mailto:ESidhu@cov.com%3cmailto:ESidhu@cov.com%3cmailto:ESidhu@cov.com>>>>; Tan, Zhi Yang
<ZTan@cov.com<mailto:ZTan@cov.com<mailto:ZTan@cov.com%3cmailto:ZTan@cov.com<mailto:ZTan@cov.com%3cmailto:ZTan@cov.com%3cmailto:ZTan@cov.com>>>>

Cc: Reiser, Craig M.
<creiser@axinn.com<mailto:creiser@axinn.com<mailto:creiser@axinn.com%3cmailto:creiser@axinn.com<mailto:creiser@axinn.com%3cmailto:creiser@axinn.com%3cmailto:creiser@axinn.com>>>>; Justus, Bradley
<bjustus@axinn.com<mailto:bjustus@axinn.com<mailto:bjustus@axinn.com%3cmailto:bjustus@axinn.com<mailto:bjustus@axinn.com%3cmailto:bjustus@axinn.com%3cmailto:bjustus@axinn.com>>>>; Yung, Eva H.
<eyung@axinn.com<mailto:eyung@axinn.com<mailto:eyung@axinn.com%3cmailto:eyung@axinn.com<mailto:eyung@axinn.com%3cmailto:eyung@axinn.com%3cmailto:eyung@axinn.com>>>>; Boisvert, Caroline P.
<cboisvert@axinn.com<mailto:cboisvert@axinn.com<mailto:cboisvert@axinn.com%3cmailto:cboisvert@axinn.com<mailto:cboisvert@axinn.com%3cmailto:cboisvert@axinn.com%3cmailto:cboisvert@axinn.com>>>>; Erickson, Christopher
<cerickson@axinn.com<mailto:cerickson@axinn.com<mailto:cerickson@axinn.com%3cmailto:cerickson@axinn.com<mailto:cerickson@axinn.com%3cmailto:cerickson@axinn.com%3cmailto:cerickson@axinn.com>>>>;
chris@stonehilton.com<mailto:chris@stonehilton.com<mailto:chris@stonehilton.com%3cm

**A042**

ailto:chris@stonehilton.com<mailto:chris@stonehilton.com%3cmailto:chris@stonehilton.co
m%3cmailto:chris@stonehilton.com%3cmailto:chris@stonehilton.com>>>;
judd@stonehilton.com<mailto:judd@stonehilton.com<mailto:judd@stonehilton.com%3cmai
lto:judd@stonehilton.com<mailto:judd@stonehilton.com%3cmailto:judd@stonehilton.com%
3cmailto:judd@stonehilton.com%3cmailto:judd@stonehilton.com>>>

Subject: RE: X Corp. and X.AI LLC v. Apple Inc. et al., No. 4:25-cv-00914-P (N.D. Tex.)

Counsel,

I write to follow up on Plaintiffs' RFPs seeking source code: OpenAI RFP Nos. 6(c)-(d) and
34 and Apple RFP Nos. 6(c)-(d), 26-27, and 54(e) (the "Source Code Requests"). As we've
explained throughout the meet-and-confer process, Plaintiffs are seeking Defendants'
source code because Defendants have indicated that they intend to raise product-design
arguments, including arguments that it is technically or practically infeasible to integrate
Grok into Apple intelligence.

Despite that explanation, Defendants have consistently refused to produce source code.
And Defendants both said in their letters last Tuesday, December 16, that they expected
that their responses to Plaintiffs' second set of RFAs would obviate the need for the Source
Code Requests.

In response to Defendants' December 16 letters, we said that we would consider
Defendants' responses to Plaintiffs' second set of RFAs, but explained that Plaintiffs would

**A043**

withdraw the Source Code Requests only if Defendants would "stipulate that they will not raise product-design arguments about the infeasibility of Grok being natively integrated into Apple Intelligence, including about the difficulty or costs of doing so." We have now considered Defendants' responses to Plaintiffs' second set of RFAs and still cannot withdraw the Source Code Requests. Those responses say that Defendants are "unaware" of technical barriers to integrating Grok into certain features of Apple Intelligence, leaving open the possibility that Defendants will raise product-design arguments that we need source code to address.

In the spirit of compromise and in hopes of resolving this issue, we have prepared the attached stipulation, which will allow Plaintiffs to withdraw the Source Code Requests. Please let us know as soon as possible whether Defendants are willing to sign such a stipulation. We are available to meet and confer or to consider any proposed edits to the language of the stipulation.

Best regards,

Scott

Scott

**A044**

A.

Eisman

Partner

T: 212.261.5642<tel:212.261.5642>

From: Eisman, Scott A.
<seisman@axinn.com<mailto:seisman@axinn.com<mailto:seisman@axinn.com%3cmailto:
seisman@axinn.com<mailto:seisman@axinn.com%3cmailto:seisman@axinn.com%3cmailt
o:seisman@axinn.com%3cmailto:seisman@axinn.com>>>>

Sent: Tuesday, December 16, 2025 9:13 PM

To: Schwartz, Kevin S.
<KSchwartz@wlrk.com<mailto:KSchwartz@wlrk.com<mailto:KSchwartz@wlrk.com%3cmai
lto:KSchwartz@wlrk.com<mailto:KSchwartz@wlrk.com%3cmailto:KSchwartz@wlrk.com%3
cmailto:KSchwartz@wlrk.com%3cmailto:KSchwartz@wlrk.com>>>>;
mhurst@lynnllp.com<mailto:mhurst@lynnllp.com<mailto:mhurst@lynnllp.com%3cmailto:m
hurst@lynnllp.com<mailto:mhurst@lynnllp.com%3cmailto:mhurst@lynnllp.com%3cmailto:m
hurst@lynnllp.com%3cmailto:mhurst@lynnllp.com>>>;
cpatton@lynnllp.com<mailto:cpatton@lynnllp.com<mailto:cpatton@lynnllp.com%3cmailto:c
patton@lynnllp.com<mailto:cpatton@lynnllp.com%3cmailto:cpatton@lynnllp.com%3cmailto
:cpatton@lynnllp.com%3cmailto:cpatton@lynnllp.com>>>;
akim@lynnllp.com<mailto:akim@lynnllp.com<mailto:akim@lynnllp.com%3cmailto:akim@ly
nnllp.com<mailto:akim@lynnllp.com%3cmailto:akim@lynnllp.com%3cmailto:akim@lynnllp.

**A046**

com%3cmailto:akim@lynnllp.com>>>; Savitt, William D. <wdsavitt@WLRK.com<mailto:wdsavitt@WLRK.com<mailto:wdsavitt@WLRK.com%3cmailto:wdsavitt@WLRK.com<mailto:wdsavitt@WLRK.com%3cmailto:wdsavitt@WLRK.com%3cmailto:wdsavitt@WLRK.com%3cmailto:wdsavitt@WLRK.com>>>>; Levandoski, Stephen D. <SDLevandoski@wlrk.com<mailto:SDLevandoski@wlrk.com<mailto:SDLevandoski@wlrk.com%3cmailto:SDLevandoski@wlrk.com<mailto:SDLevandoski@wlrk.com%3cmailto:SDLevandoski@wlrk.com%3cmailto:SDLevandoski@wlrk.com%3cmailto:SDLevandoski@wlrk.com>>>>; Yavitz, Noah B. <NBYavitz@wlrk.com<mailto:NBYavitz@wlrk.com<mailto:NBYavitz@wlrk.com%3cmailto:NBYavitz@wlrk.com<mailto:NBYavitz@wlrk.com%3cmailto:NBYavitz@wlrk.com%3cmailto:NBYavitz@wlrk.com%3cmailto:NBYavitz@wlrk.com>>>>; Cheung, Andrew J.H. <AJHCheung@wlrk.com<mailto:AJHCheung@wlrk.com<mailto:AJHCheung@wlrk.com%3cmailto:AJHCheung@wlrk.com<mailto:AJHCheung@wlrk.com%3cmailto:AJHCheung@wlrk.com%3cmailto:AJHCheung@wlrk.com%3cmailto:AJHCheung@wlrk.com>>>>; Robinson, M. Virginia <MVRobinson@wlrk.com<mailto:MVRobinson@wlrk.com<mailto:MVRobinson@wlrk.com%3cmailto:MVRobinson@wlrk.com<mailto:MVRobinson@wlrk.com%3cmailto:MVRobinson@wlrk.com%3cmailto:MVRobinson@wlrk.com%3cmailto:MVRobinson@wlrk.com>>>>; Willard Zehmer, Lauren <LZehmer@cov.com<mailto:LZehmer@cov.com<mailto:LZehmer@cov.com%3cmailto:LZehmer@cov.com<mailto:LZehmer@cov.com%3cmailto:LZehmer@cov.com%3cmailto:LZehmer@cov.com%3cmailto:LZehmer@cov.com>>>>; dee.kelly@kellyhart.com<mailto:dee.kelly@kellyhart.com<mailto:dee.kelly@kellyhart.com%3cmailto:dee.kelly@kellyhart.com<mailto:dee.kelly@kellyhart.com%3cmailto:dee.kelly@kellyhart.com%3cmailto:dee.kelly@kellyhart.com%3cmailto:dee.kelly@kellyhart.com>>>; julia.wisenberg@kellyhart.com<mailto:julia.wisenberg@kellyhart.com<mailto:julia.wisenberg@kellyhart.com%3cmailto:julia.wisenberg@kellyhart.com<mailto:julia.wisenberg@kellyhart.com%3cmailto:julia.wisenberg@kellyhart.com%3cmailto:julia.wisenberg@kellyhart.com%3cmailto:julia.wisenberg@kellyhart.com>>>; Henn, Emily <ehenn@cov.com<mailto:ehenn@cov.com<mailto:ehenn@cov.com%3cmailto:ehenn@cov.com<mailto:ehenn@cov.com%3cmailto:ehenn@cov.com%3cmailto:ehenn@cov.com%3cmailto:ehenn@cov.com>>>>; Liu, Henry <HLiu@cov.com<mailto:HLiu@cov.com<mailto:HLiu@cov.com%3cmailto:HLiu@cov.com<mailto:HLiu@cov.com%3cmailto:HLiu@cov.com%3cmailto:HLiu@cov.com%3cmailto:HLiu@cov.com>>>>; Weiland, Carol <CWeiland@cov.com<mailto:CWeiland@cov.com<mailto:CWeiland@cov.com%3cmailto:CWeiland@cov.com<mailto:CWeiland@cov.com%3cmailto:CWeiland@cov.com%3cmailto:CWeiland@cov.com%3cmailto:CWeiland@cov.com>>>>; Sidhu, Elizabeth <ESidhu@cov.com<mailto:ESidhu@cov.com<mailto:ESidhu@cov.com%3cmailto:ESidhu@cov.com<mailto:ESidhu@cov.com%3cmailto:ESidhu@cov.com%3cmailto:ESidhu@cov.com%3cmailto:ESidhu@cov.com>>>>; Tan, Zhi Yang <ZTan@cov.com<mailto:ZTan@cov.com<mailto:ZTan@cov.com%3cmailto:ZTan@cov.com<mailto:ZTan@cov.com%3cmailto:ZTan@cov.com%3cmailto:ZTan@cov.com%3cmailto:ZTan@cov.com>>>>


Cc: Reiser, Craig M. <creiser@axinn.com<mailto:creiser@axinn.com<mailto:creiser@axinn.com%3cmailto:creis

**A047**

er@axinn.com<mailto:creiser@axinn.com%3cmailto:creiser@axinn.com%3cmailto:creiser@axinn.com%3cmailto:creiser@axinn.com>>>>; Justus, Bradley <bjustus@axinn.com<mailto:bjustus@axinn.com<mailto:bjustus@axinn.com%3cmailto:bjustus@axinn.com%3cmailto:bjustus@axinn.com%3cmailto:bjustus@axinn.com%3cmailto:bjustus@axinn.com>>>>; Yung, Eva H. <eyung@axinn.com<mailto:eyung@axinn.com<mailto:eyung@axinn.com%3cmailto:eyung@axinn.com%3cmailto:eyung@axinn.com%3cmailto:eyung@axinn.com%3cmailto:eyung@axinn.com>>>>; Boisvert, Caroline P. <cboisvert@axinn.com<mailto:cboisvert@axinn.com<mailto:cboisvert@axinn.com%3cmailto:cboisvert@axinn.com<mailto:cboisvert@axinn.com%3cmailto:cboisvert@axinn.com%3cmailto:cboisvert@axinn.com%3cmailto:cboisvert@axinn.com>>>>; Erickson, Christopher <cerickson@axinn.com<mailto:cerickson@axinn.com<mailto:cerickson@axinn.com%3cmailto:cerickson@axinn.com<mailto:cerickson@axinn.com%3cmailto:cerickson@axinn.com%3cmailto:cerickson@axinn.com%3cmailto:cerickson@axinn.com>>>>; chris@stonehilton.com<mailto:chris@stonehilton.com<mailto:chris@stonehilton.com%3cmailto:chris@stonehilton.com<mailto:chris@stonehilton.com%3cmailto:chris@stonehilton.com%3cmailto:chris@stonehilton.com>>>; judd@stonehilton.com<mailto:judd@stonehilton.com<mailto:judd@stonehilton.com%3cmailto:judd@stonehilton.com<mailto:judd@stonehilton.com%3cmailto:judd@stonehilton.com%3cmailto:judd@stonehilton.com%3cmailto:judd@stonehilton.com>>>

Subject: RE: X Corp. and X.AI LLC v. Apple Inc. et al., No. 4:25-cv-00914-P (N.D. Tex.)

Kevin,

I write in response to your letter from earlier this evening. We are disappointed that OpenAI is still refusing to produce numerous categories of discovery that we seek and that we have discussed at length in our many meet-and-confer calls. While we disagree with many of the characterizations in your letter and will be following up more fully in due course, we write now to address the following time-sensitive issues on which we believe we have reached an impasse requiring the Court's immediate intervention. If we do not hear from you by 12 p.m. ET tomorrow, we will take appropriate action necessary to ensure compliance with the Court's schedule.

**A048**

Substantial Completion

The hit count you identified in your correspondence confirms our belief that the search terms we proposed—along with the sources of data to be searched—is tailored to identify responsive documents. We look forward to reviewing the corrections you claim to have made to our proposed terms and are happy to confer on the terms this week. Please propose times for a call.

We believe that substantially completing productions by January 15 of an initial review population of 800,000 documents is more than reasonable in a case of this magnitude and is necessary to comply with the case schedule that the Court set. If OpenAI will not agree to a substantial-completion deadline, we are at an impasse. That said, and for the avoidance of doubt, nothing should hold up OpenAI's immediate and urgent review of documents, with productions on a rolling basis. We note in that regard that despite OpenAI's position that a confidentiality agreement is a prerequisite to document production, we seriously doubt that it would be appropriate for OpenAI to designate every responsive document under any such agreement. We further note that if OpenAI was serious about complying with its discovery obligations, it could have—and should have—produced documents by this point, even if by requesting that Plaintiffs temporarily treat such documents as Outside Counsel Eyes' Only, as OpenAI has requested in its written discovery responses.

Requests for Production

**A049**

OpenAI's continued efforts to withhold information to which Plaintiffs are entitled is troubling, especially two months into discovery, with expert reports due in two months. As noted above, Plaintiffs reserve all rights to seek the discovery to which they are entitled but need confirmation on the following four points immediately:

RFP No. 8

Your proposal on RFP No. 8 is unacceptable. As we've explained, OpenAI has no basis to refuse to produce documents discussing, analyzing, or evaluating the Apple-ChatGPT integration, which is at the heart of this case. While you've agreed to search for documents responsive to subparts (a)-(d) of this RFP No. 8 on a "go-get" basis, that method will almost certainly fail to capture email discussions and analyses. Search terms, however, would uncover such documents.

Moreover, you still have not agreed to produce documents responsive to subpart (f), which seeks documents discussing, analyzing, and evaluating the ability of OpenAI's competitors to compete with OpenAI—a topic central to Plaintiffs' antitrust claims.

Please confirm that you will run search terms for documents responsive to subparts (a)-(d) and (f) of this request across custodial files, in addition to providing go-gets.

**A050**

RFP No. 27

Your proposal on RFP No. 27 omits subparts of the request without any explanation. As we've explained, Plaintiffs need information about OpenAI's data centers because that information reflects barriers to entry in the generative AI chatbot market. While you've now agreed to produce "documents sufficient to show historical and future-contracted costs associated with data centers used for operating ChatGPT," you still haven't agreed to produce documents sufficient to show these data centers' capacity, memory bandwidth, and power sources (i.e., documents responsive to subparts (b)-(e) and (g)).

Please confirm that you will produce documents responsive to subparts (b)-(e) and (g).

RFP Nos. 6(c)-(d) and 34

Your statement that you "expect" OpenAI's forthcoming response to Plaintiffs' second set of RFAs to "obviate[]" the need for source code does not moot the issue. As we have stated from the first time we met and conferred about the confidentiality agreement, we have requested source code (and therefore prepared a proposed protocol for production of source code) based on our understanding that Defendants would defend their conduct by raising product-design arguments, including regarding the feasibility of integrating Grok with Apple Intelligence. Yet when we proposed that Defendants stipulate to take product-design/feasibility issues off the table, Defendants declined. As we have said consistently over the past two months, if Defendants stipulate that they will not raise product-design arguments about the infeasibility of Grok being natively integrated into Apple Intelligence,

**A051**

including about the difficulty or costs of doing so, then Plaintiffs will agree not to seek source code.

Given that this has been an issue on which we have repeatedly conferred with both Defendants, we have copied in counsel for Apple, and we ask both Defendants to confirm either (1) that they will stipulate that they will not take the position that their conduct is defensible based on product-design, feasibility, or difficulty, or (2) that they will produce source code responsive to Plaintiffs' requests.

Relevant Period

Your claim that documents dating back to June 2022 are irrelevant because ChatGPT "did not [then] exist" overlooks that OpenAI (or a predecessor entity) has existed since 2015, and there will likely be responsive documents—such as pricing plans for ChatGPT, market conditions, barriers to entry, and consumer demand—from before ChatGPT launched. Moreover, if there are as few responsive documents from June 2022 to January 1, 2024 as you claim, then any burden of searching for responsive materials over that period will be minimal.

Please confirm (1) that you will provide documents responsive RFP Nos. 1, 3-6, and 32 for the period March 1, 2023-present, and (2) that you will provide documents responsive to all other RFPs for June 10, 2022-present for all other RFPs.

**A052**

* * *

As noted, given the length of our meet-and-confer and the need to comply with the schedule set by Judge Pittman, unless we can reach agreement on these points by 12 p.m. ET tomorrow, we will have no choice but to take appropriate action.

We reserve all rights.

Best regards,

Scott

Scott

**A053**

A.

Eisman

Partner

A054

T: 212.261.5642<tel:212.261.5642>

From: Schwartz, Kevin S.
<KSchwartz@wlrk.com<mailto:KSchwartz@wlrk.com<mailto:KSchwartz@wlrk.com%3cmai
lto:KSchwartz@wlrk.com<mailto:KSchwartz@wlrk.com%3cmailto:KSchwartz@wlrk.com%3
cmailto:KSchwartz@wlrk.com%3cmailto:KSchwartz@wlrk.com>>>>

Sent: Tuesday, December 16, 2025 4:49 PM

To: Eisman, Scott A.
<seisman@axinn.com<mailto:seisman@axinn.com<mailto:seisman@axinn.com%3cmailto:
seisman@axinn.com<mailto:seisman@axinn.com%3cmailto:seisman@axinn.com%3cmailt
o:seisman@axinn.com%3cmailto:seisman@axinn.com>>>>;
mhurst@lynnllp.com<mailto:mhurst@lynnllp.com<mailto:mhurst@lynnllp.com%3cmailto:m
hurst@lynnllp.com<mailto:mhurst@lynnllp.com%3cmailto:mhurst@lynnllp.com%3cmailto:m

**A055**

hurst@lynnllp.com%3cmailto:mhurst@lynnllp.com>>>;
cpatton@lynnllp.com<mailto:cpatton@lynnllp.com<mailto:cpatton@lynnllp.com%3cmailto:c
patton@lynnllp.com<mailto:cpatton@lynnllp.com%3cmailto:cpatton@lynnllp.com%3cmailto
:cpatton@lynnllp.com%3cmailto:cpatton@lynnllp.com>>>;
akim@lynnllp.com<mailto:akim@lynnllp.com<mailto:akim@lynnllp.com%3cmailto:akim@ly
nnllp.com<mailto:akim@lynnllp.com%3cmailto:akim@lynnllp.com%3cmailto:akim@lynnllp.
com%3cmailto:akim@lynnllp.com>>>; Savitt, William D.
<wdsavitt@WLRK.com<mailto:wdsavitt@WLRK.com<mailto:wdsavitt@WLRK.com%3cmail
to:wdsavitt@WLRK.com<mailto:wdsavitt@WLRK.com%3cmailto:wdsavitt@WLRK.com%3c
mailto:wdsavitt@WLRK.com%3cmailto:wdsavitt@WLRK.com>>>>; Levandoski, Stephen
D.
<SDLevandoski@wlrk.com<mailto:SDLevandoski@wlrk.com<mailto:SDLevandoski@wlrk.c
om%3cmailto:SDLevandoski@wlrk.com<mailto:SDLevandoski@wlrk.com%3cmailto:SDLev
andoski@wlrk.com%3cmailto:SDLevandoski@wlrk.com%3cmailto:SDLevandoski@wlrk.co
m>>>>; Yavitz, Noah B.
<NBYavitz@wlrk.com<mailto:NBYavitz@wlrk.com<mailto:NBYavitz@wlrk.com%3cmailto:N
BYavitz@wlrk.com<mailto:NBYavitz@wlrk.com%3cmailto:NBYavitz@wlrk.com%3cmailto:N
BYavitz@wlrk.com%3cmailto:NBYavitz@wlrk.com>>>>; Cheung, Andrew J.H.
<AJHCheung@wlrk.com<mailto:AJHCheung@wlrk.com<mailto:AJHCheung@wlrk.com%3
cmailto:AJHCheung@wlrk.com<mailto:AJHCheung@wlrk.com%3cmailto:AJHCheung@wlr
k.com%3cmailto:AJHCheung@wlrk.com%3cmailto:AJHCheung@wlrk.com>>>>;
Robinson, M. Virginia
<MVRobinson@wlrk.com<mailto:MVRobinson@wlrk.com<mailto:MVRobinson@wlrk.com
%3cmailto:MVRobinson@wlrk.com<mailto:MVRobinson@wlrk.com%3cmailto:MVRobinson
@wlrk.com%3cmailto:MVRobinson@wlrk.com%3cmailto:MVRobinson@wlrk.com>>>>


Cc: Reiser, Craig M.
<creiser@axinn.com<mailto:creiser@axinn.com<mailto:creiser@axinn.com%3cmailto:creis
er@axinn.com<mailto:creiser@axinn.com%3cmailto:creiser@axinn.com%3cmailto:creiser
@axinn.com%3cmailto:creiser@axinn.com>>>; Justus, Bradley
<bjustus@axinn.com<mailto:bjustus@axinn.com<mailto:bjustus@axinn.com%3cmailto:bju
stus@axinn.com<mailto:bjustus@axinn.com%3cmailto:bjustus@axinn.com%3cmailto:bjust
us@axinn.com%3cmailto:bjustus@axinn.com>>>; Yung, Eva H.
<eyung@axinn.com<mailto:eyung@axinn.com<mailto:eyung@axinn.com%3cmailto:eyung
@axinn.com<mailto:eyung@axinn.com%3cmailto:eyung@axinn.com%3cmailto:eyung@axi
nn.com%3cmailto:eyung@axinn.com>>>; Boisvert, Caroline P.
<cboisvert@axinn.com<mailto:cboisvert@axinn.com<mailto:cboisvert@axinn.com%3cmailt
o:cboisvert@axinn.com<mailto:cboisvert@axinn.com%3cmailto:cboisvert@axinn.com%3c
mailto:cboisvert@axinn.com%3cmailto:cboisvert@axinn.com>>>; Erickson, Christopher
<cerickson@axinn.com<mailto:cerickson@axinn.com<mailto:cerickson@axinn.com%3cma
ilto:cerickson@axinn.com<mailto:cerickson@axinn.com%3cmailto:cerickson@axinn.com%
3cmailto:cerickson@axinn.com%3cmailto:cerickson@axinn.com>>>;
chris@stonehilton.com<mailto:chris@stonehilton.com<mailto:chris@stonehilton.com%3cm
ailto:chris@stonehilton.com<mailto:chris@stonehilton.com%3cmailto:chris@stonehilton.co
m%3cmailto:chris@stonehilton.com%3cmailto:chris@stonehilton.com>>>;
judd@stonehilton.com<mailto:judd@stonehilton.com<mailto:judd@stonehilton.com%3cmai
lto:judd@stonehilton.com<mailto:judd@stonehilton.com%3cmailto:judd@stonehilton.com%
3cmailto:judd@stonehilton.com%3cmailto:judd@stonehilton.com>>>

Subject: RE: X Corp. and X.AI LLC v. Apple Inc. et al., No. 4:25-cv-00914-P (N.D. Tex.)

Caution: External Email

_____

Scott,

Please see the attached.

Best,

Kevin

**A057**

Kevin S. Schwartz | Partner

Wachtell, Lipton, Rosen & Katz

51 West 52nd Street |New York, NY 10019

(212) 403-1062 (Direct Phone) | (212) 403-2062 (Direct Fax)
KSchwartz@wlrk.com<mailto:KSchwartz@wlrk.com<mailto:KSchwartz@wlrk.com%3cmailt
o:KSchwartz@wlrk.com<mailto:KSchwartz@wlrk.com%3cmailto:KSchwartz@wlrk.com%3c
mailto:KSchwartz@wlrk.com%3cmailto:KSchwartz@wlrk.com>>> |
www.wlrk.com/kschwartz<http://www.wlrk.com/kschwartz<http://www.wlrk.com/kschwartz%
3chttp:/www.wlrk.com/kschwartz>> [wlrk.com]
<https://urldefense.com/v3/__http:/www.wlrk.com/kschwartz__;!!FGpQGsnK7riIk9NT!6LIAC
M0LowvR7OXB2cadJ2FtFqHvYlveeYK-hqY7TBAY-
pu2SiwErddCMdJObLuaxjWttpGmg9vXFvsRfw$>

From: Schwartz, Kevin S.

Sent: Friday, December 12, 2025 5:54 PM

To: Eisman, Scott A.
<seisman@axinn.com<mailto:seisman@axinn.com<mailto:seisman@axinn.com%3cmailto:
seisman@axinn.com<mailto:seisman@axinn.com%3cmailto:seisman@axinn.com%3cmailt
o:seisman@axinn.com%3cmailto:seisman@axinn.com>>>>;
mhurst@lynnllp.com<mailto:mhurst@lynnllp.com<mailto:mhurst@lynnllp.com%3cmailto:m
hurst@lynnllp.com<mailto:mhurst@lynnllp.com%3cmailto:mhurst@lynnllp.com%3cmailto:m
hurst@lynnllp.com%3cmailto:mhurst@lynnllp.com>>>;
cpatton@lynnllp.com<mailto:cpatton@lynnllp.com<mailto:cpatton@lynnllp.com%3cmailto:c
patton@lynnllp.com<mailto:cpatton@lynnllp.com%3cmailto:cpatton@lynnllp.com%3cmailto

**A058**

:cpatton@lynnllp.com%3cmailto:cpatton@lynnllp.com>>>;
akim@lynnllp.com<mailto:akim@lynnllp.com<mailto:akim@lynnllp.com%3cmailto:akim@ly
nnllp.com<mailto:akim@lynnllp.com%3cmailto:akim@lynnllp.com%3cmailto:akim@lynnllp.
com%3cmailto:akim@lynnllp.com>>>; Savitt, William D.
<wdsavitt@WLRK.com<mailto:wdsavitt@WLRK.com<mailto:wdsavitt@WLRK.com%3cmail
to:wdsavitt@WLRK.com<mailto:wdsavitt@WLRK.com%3cmailto:wdsavitt@WLRK.com%3c
mailto:wdsavitt@WLRK.com%3cmailto:wdsavitt@WLRK.com>>>>; Levandoski, Stephen
D.
<SDLevandoski@wlrk.com<mailto:SDLevandoski@wlrk.com<mailto:SDLevandoski@wlrk.c
om%3cmailto:SDLevandoski@wlrk.com<mailto:SDLevandoski@wlrk.com%3cmailto:SDLev
andoski@wlrk.com%3cmailto:SDLevandoski@wlrk.com%3cmailto:SDLevandoski@wlrk.co
m>>>>; Yavitz, Noah B.
<NBYavitz@wlrk.com<mailto:NBYavitz@wlrk.com<mailto:NBYavitz@wlrk.com%3cmailto:N
BYavitz@wlrk.com<mailto:NBYavitz@wlrk.com%3cmailto:NBYavitz@wlrk.com%3cmailto:N
BYavitz@wlrk.com%3cmailto:NBYavitz@wlrk.com>>>>; Cheung, Andrew J.H.
<AJHCheung@wlrk.com<mailto:AJHCheung@wlrk.com<mailto:AJHCheung@wlrk.com%3
cmailto:AJHCheung@wlrk.com<mailto:AJHCheung@wlrk.com%3cmailto:AJHCheung@wlr
k.com%3cmailto:AJHCheung@wlrk.com%3cmailto:AJHCheung@wlrk.com>>>>;
Robinson, M. Virginia
<MVRobinson@wlrk.com<mailto:MVRobinson@wlrk.com<mailto:MVRobinson@wlrk.com
%3cmailto:MVRobinson@wlrk.com<mailto:MVRobinson@wlrk.com%3cmailto:MVRobinson
@wlrk.com%3cmailto:MVRobinson@wlrk.com%3cmailto:MVRobinson@wlrk.com>>>>


Cc: Reiser, Craig M.
<creiser@axinn.com<mailto:creiser@axinn.com<mailto:creiser@axinn.com%3cmailto:creis
er@axinn.com<mailto:creiser@axinn.com%3cmailto:creiser@axinn.com%3cmailto:creiser
@axinn.com%3cmailto:creiser@axinn.com>>>; Justus, Bradley
<bjustus@axinn.com<mailto:bjustus@axinn.com<mailto:bjustus@axinn.com%3cmailto:bju
stus@axinn.com<mailto:bjustus@axinn.com%3cmailto:bjustus@axinn.com%3cmailto:bjust
us@axinn.com%3cmailto:bjustus@axinn.com>>>; Yung, Eva H.
<eyung@axinn.com<mailto:eyung@axinn.com<mailto:eyung@axinn.com%3cmailto:eyung
@axinn.com<mailto:eyung@axinn.com%3cmailto:eyung@axinn.com%3cmailto:eyung@axi
nn.com%3cmailto:eyung@axinn.com>>>; Boisvert, Caroline P.
<cboisvert@axinn.com<mailto:cboisvert@axinn.com<mailto:cboisvert@axinn.com%3cmailt
o:cboisvert@axinn.com<mailto:cboisvert@axinn.com%3cmailto:cboisvert@axinn.com%3c
mailto:cboisvert@axinn.com%3cmailto:cboisvert@axinn.com>>>>; Erickson, Christopher
<cerickson@axinn.com<mailto:cerickson@axinn.com<mailto:cerickson@axinn.com%3cma
ilto:cerickson@axinn.com<mailto:cerickson@axinn.com%3cmailto:cerickson@axinn.com%
3cmailto:cerickson@axinn.com%3cmailto:cerickson@axinn.com>>>>;
chris@stonehilton.com<mailto:chris@stonehilton.com<mailto:chris@stonehilton.com%3cm
ailto:chris@stonehilton.com<mailto:chris@stonehilton.com%3cmailto:chris@stonehilton.co
m%3cmailto:chris@stonehilton.com%3cmailto:chris@stonehilton.com>>>;
judd@stonehilton.com<mailto:judd@stonehilton.com<mailto:judd@stonehilton.com%3cmai
lto:judd@stonehilton.com<mailto:judd@stonehilton.com%3cmailto:judd@stonehilton.com%
3cmailto:judd@stonehilton.com%3cmailto:judd@stonehilton.com>>>

Subject: RE: X Corp. and X.AI LLC v. Apple Inc. et al., No. 4:25-cv-00914-P (N.D. Tex.)

Scott,

I write in reply to your letter of December 9. We have been working diligently to prepare our responses to the many issues raised in your letter, including new questions and proposals that require fresh investigation and follow-up with our client. We are also evaluating in parallel your extensive proposal of search parameters, which require significant time to process and examine, and we expect to revert with initial findings early next week.  We are continuing all of this work in good faith and expect to be able to respond in full to the above early next week, but your demand for our responses by today is not feasible. We are taking the time to respond appropriately in the hope of constructively resolving the open issues on your discovery requests.

We look forward to following up with you early next week.

Best,

Kevin

**A060**

From: Eisman, Scott A.
<seisman@axinn.com<mailto:seisman@axinn.com<mailto:seisman@axinn.com%3cmailto:
seisman@axinn.com<mailto:seisman@axinn.com%3cmailto:seisman@axinn.com%3cmailt
o:seisman@axinn.com%3cmailto:seisman@axinn.com>>>>

Sent: Tuesday, December 9, 2025 8:45 PM

To: Schwartz, Kevin S.
<KSchwartz@wlrk.com<mailto:KSchwartz@wlrk.com<mailto:KSchwartz@wlrk.com%3cmai
lto:KSchwartz@wlrk.com<mailto:KSchwartz@wlrk.com%3cmailto:KSchwartz@wlrk.com%3
cmailto:KSchwartz@wlrk.com%3cmailto:KSchwartz@wlrk.com>>>>;
mhurst@lynnllp.com<mailto:mhurst@lynnllp.com<mailto:mhurst@lynnllp.com%3cmailto:m
hurst@lynnllp.com<mailto:mhurst@lynnllp.com%3cmailto:mhurst@lynnllp.com%3cmailto:m
hurst@lynnllp.com%3cmailto:mhurst@lynnllp.com>>>;
cpatton@lynnllp.com<mailto:cpatton@lynnllp.com<mailto:cpatton@lynnllp.com%3cmailto:c
patton@lynnllp.com<mailto:cpatton@lynnllp.com%3cmailto:cpatton@lynnllp.com%3cmailto
:cpatton@lynnllp.com%3cmailto:cpatton@lynnllp.com>>>;
akim@lynnllp.com<mailto:akim@lynnllp.com<mailto:akim@lynnllp.com%3cmailto:akim@ly
nnllp.com<mailto:akim@lynnllp.com%3cmailto:akim@lynnllp.com%3cmailto:akim@lynnllp.
com%3cmailto:akim@lynnllp.com>>>; Savitt, William D.
<wdsavitt@WLRK.com<mailto:wdsavitt@WLRK.com<mailto:wdsavitt@WLRK.com%3cmail
to:wdsavitt@WLRK.com<mailto:wdsavitt@WLRK.com%3cmailto:wdsavitt@WLRK.com%3c
mailto:wdsavitt@WLRK.com%3cmailto:wdsavitt@WLRK.com>>>>; Levandoski, Stephen
D.
<SDLevandoski@wlrk.com<mailto:SDLevandoski@wlrk.com<mailto:SDLevandoski@wlrk.c
om%3cmailto:SDLevandoski@wlrk.com<mailto:SDLevandoski@wlrk.com%3cmailto:SDLev
andoski@wlrk.com%3cmailto:SDLevandoski@wlrk.com%3cmailto:SDLevandoski@wlrk.co
m>>>>; Yavitz, Noah B.
<NBYavitz@wlrk.com<mailto:NBYavitz@wlrk.com<mailto:NBYavitz@wlrk.com%3cmailto:N
BYavitz@wlrk.com<mailto:NBYavitz@wlrk.com%3cmailto:NBYavitz@wlrk.com%3cmailto:N
BYavitz@wlrk.com%3cmailto:NBYavitz@wlrk.com>>>>; Cheung, Andrew J.H.
<AJHCheung@wlrk.com<mailto:AJHCheung@wlrk.com<mailto:AJHCheung@wlrk.com%3
cmailto:AJHCheung@wlrk.com<mailto:AJHCheung@wlrk.com%3cmailto:AJHCheung@wlr
k.com%3cmailto:AJHCheung@wlrk.com%3cmailto:AJHCheung@wlrk.com>>>>;
Robinson, M. Virginia
<MVRobinson@wlrk.com<mailto:MVRobinson@wlrk.com<mailto:MVRobinson@wlrk.com
%3cmailto:MVRobinson@wlrk.com<mailto:MVRobinson@wlrk.com%3cmailto:MVRobinson
@wlrk.com%3cmailto:MVRobinson@wlrk.com%3cmailto:MVRobinson@wlrk.com>>>>

Cc: Reiser, Craig M.
<creiser@axinn.com<mailto:creiser@axinn.com<mailto:creiser@axinn.com%3cmailto:creis
er@axinn.com<mailto:creiser@axinn.com%3cmailto:creiser@axinn.com%3cmailto:creiser

**A061**

@axinn.com%3cmailto:creiser@axinn.com>>>>; Justus, Bradley <bjustus@axinn.com<mailto:bjustus@axinn.com<mailto:bjustus@axinn.com%3cmailto:bjustus@axinn.com<mailto:bjustus@axinn.com%3cmailto:bjustus@axinn.com%3cmailto:bjustus@axinn.com%3cmailto:bjustus@axinn.com>>>>; Yung, Eva H. <eyung@axinn.com<mailto:eyung@axinn.com<mailto:eyung@axinn.com%3cmailto:eyung@axinn.com<mailto:eyung@axinn.com%3cmailto:eyung@axinn.com%3cmailto:eyung@axinn.com%3cmailto:eyung@axinn.com>>>>; Boisvert, Caroline P. <cboisvert@axinn.com<mailto:cboisvert@axinn.com<mailto:cboisvert@axinn.com%3cmailto:cboisvert@axinn.com<mailto:cboisvert@axinn.com%3cmailto:cboisvert@axinn.com%3cmailto:cboisvert@axinn.com%3cmailto:cboisvert@axinn.com>>>>; Erickson, Christopher <cerickson@axinn.com<mailto:cerickson@axinn.com<mailto:cerickson@axinn.com%3cmailto:cerickson@axinn.com<mailto:cerickson@axinn.com%3cmailto:cerickson@axinn.com%3cmailto:cerickson@axinn.com%3cmailto:cerickson@axinn.com>>>>; chris@stonehilton.com<mailto:chris@stonehilton.com<mailto:chris@stonehilton.com%3cmailto:chris@stonehilton.com<mailto:chris@stonehilton.com%3cmailto:chris@stonehilton.com%3cmailto:chris@stonehilton.com%3cmailto:chris@stonehilton.com>>>; judd@stonehilton.com<mailto:judd@stonehilton.com<mailto:judd@stonehilton.com%3cmailto:judd@stonehilton.com<mailto:judd@stonehilton.com%3cmailto:judd@stonehilton.com%3cmailto:judd@stonehilton.com%3cmailto:judd@stonehilton.com>>>

Subject: X Corp. and X.AI LLC v. Apple Inc. et al., No. 4:25-cv-00914-P (N.D. Tex.)

**External Email-Use Caution**

Counsel,

Please see the attached correspondence. We remain available to speak about anything set forth in our letter at any time.

**A062**

Best regards,


Scott


<image001.png>


Scott

A.

Eisman

Partner

A064

Axinn, Veltrop & Harkrider LLP

45 Rockefeller Plaza

New York, NY 10111

T: 212.261.5642<tel:212.261.5642>

seisman@axinn.com<mailto:seisman@axinn.com<mailto:seisman@axinn.com%3cmailto:s eisman@axinn.com<mailto:seisman@axinn.com%3cmailto:seisman@axinn.com%3cmailto :seisman@axinn.com%3cmailto:seisman@axinn.com>>>

|

**A065**

axinn.com<https://urldefense.com/v3/__https:/us.content.exclaimer.net/?
url=http*3A*2F*2Faxinn.com*2F&tenantid=TBsGVeohEe-
QywAiSCk5gQ&templateid=e38c766b01fdef1190cd00224826ac6c&excomponentid=uF9uh
IGMnF7zWnf6A2lL4io18qb_q3vW7zsiZocILN0&excomponenttype=Link&signature=KxjGCc
kLx9WNF-jGqqRjDXdcwF-q1cmw-1mxMHljWmgyo5mSJu86Vnum6ccIMLIaSby7-
EPHWHBk0WjqhjbKkmIQ2m_CIz6XZVm62mif0-1upvQplpqJwXFH1-
Ouyiul3T28FuLeMGRgGW5x9EHyz9FB8L1W3iZFTDa1iiomreUlk8482k5rFK-fUOc1MA-
CQGzqNGPXFFPicecZ4ocN66-
mr5228_UN7k9GkwFktTMKc9t0UCJu2o4dItRCPkwYmojOGwsbjFrdUJ_Gmkaq8bkyZ0S_
W4tLYtvMcRu7vqh0jWCa-
TOR2ndtUwOwE4ZJYJgN7oIFd0ZaQZepvjWc8g&v=1&imprintMessageId=c527fc4b-6fbf-
40e4-a206-669ba52c40b9__;JSUlJQ!!NSUy9a0-
pA!poHvE3PloBSuXFf0O4oYNAdxxHB6Cn5oc9btT6AnofW8kdtWivjH3F57vcbWs1WZM0e
M7e7BTLAyTas$>

*********************************************************************

Notice: The information contained in this electronic mail and any attached documents from Axinn, Veltrop & Harkrider LLP is confidential. This email may be an attorney-client communication, and as such is privileged and confidential. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the content of this information is prohibited. If you have received this electronic mail in error, please notify us immediately by telephone (212) 728-2200/(860) 275-8100 or by reply electronic mail to the sender. IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

*********************************************************************

================================================

Please be advised that this transmittal may be a confidential attorney-client communication or may otherwise be privileged or confidential. If you are not the intended recipient, please do not read, copy or re-transmit this communication. If you have received this communication in error, please notify us by e-mail (helpdesk@wlrk.com<mailto:helpdesk@wlrk.com<mailto:helpdesk@wlrk.com%3cmailto:helpdesk@wlrk.com>>) or by telephone (call us collect at 212-403-4357) and delete this message and any attachments.

Thank you in advance for your cooperation and assistance.

**A067**

==================================================

*********************************************************************

Notice: The information contained in this electronic mail and any attached documents from Axinn, Veltrop & Harkrider LLP is confidential. This email may be an attorney-client communication, and as such is privileged and confidential. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the content of this information is prohibited. If you have received this electronic mail in error, please notify us immediately by telephone (212) 728-2200/(860) 275-8100 or by reply electronic mail to the sender. IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

*********************************************************************

*********************************************************************

Notice: The information contained in this electronic mail and any attached documents from Axinn, Veltrop & Harkrider LLP is confidential. This email may be an attorney-client communication, and as such is privileged and confidential. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the content of this information is prohibited. If you have received this electronic mail in error, please notify us immediately by telephone (212) 728-2200/(860) 275-8100 or by reply electronic mail to the sender. IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

*********************************************************************

**A068**

**********************************************************************

Notice: The information contained in this electronic mail and any attached documents from Axinn, Veltrop & Harkrider LLP is confidential. This email may be an attorney-client communication, and as such is privileged and confidential. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the content of this information is prohibited. If you have received this electronic mail in error, please notify us immediately by telephone (212) 728-2200/(860) 275-8100 or by reply electronic mail to the sender. IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

**********************************************************************

**********************************************************************

Notice: The information contained in this electronic mail and any attached documents from Axinn, Veltrop & Harkrider LLP is confidential. This email may be an attorney-client communication, and as such is privileged and confidential. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the content of this information is prohibited. If you have received this electronic mail in error, please notify us immediately by telephone (212) 728-2200/(860) 275-8100 or by reply electronic mail to the sender. IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.
**********************************************************************
**********************************************************************
**Notice: The information contained in this electronic mail and any attached documents from Axinn, Veltrop & Harkrider LLP is confidential. This email may be an attorney-client communication, and as such is privileged and confidential. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the content of this information is prohibited. If you have received this electronic mail in error, please notify us immediately by telephone (212) 728-2200/(860) 275-8100 or by reply electronic mail to the sender. IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.**
**********************************************************************
**********************************************************************
**Notice: The information contained in this electronic mail and any attached documents from Axinn, Veltrop & Harkrider LLP is confidential. This email may be an attorney-client communication, and as such is privileged and confidential. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the content of this information is prohibited. If you have received this electronic mail in error, please notify us immediately by telephone (212) 728-2200/(860) 275-8100 or by**

**A069**

reply electronic mail to the sender. IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.
********************************************************************

A070

# TAB 3

A071

Newsroom                                          Apple Services      Apple Stories      🔍 Search Newsroom

PRESS RELEASE
June 10, 2024

# Introducing Apple Intelligence, the personal intelligence system that puts powerful generative models at the core of iPhone, iPad, and Mac

Setting a new standard for privacy in AI, Apple Intelligence understands personal context to deliver intelligence that is helpful and relevant





Apple Intelligence — the personal intelligence system for iPhone, iPad, and Mac — combines the power    ↓
of generative models with personal context to deliver intelligence that's useful and relevant to the user.

**CUPERTINO, CALIFORNIA** — Apple today introduced Apple Intelligence, the personal intelligence system for iPhone, iPad, and Mac that combines the power of generative models with personal context to deliver intelligence that's incredibly useful and relevant. Apple Intelligence is deeply integrated into iOS 18, iPadOS

**A072**

Case 4:25-cv-00914-P    Document 145    Filed 01/29/26    Page 80 of 116    PageID 3692

18, and macOS Sequoia. It harnesses the power of Apple silicon to understand and create language and images, take action across apps, and draw from personal context to simplify and accelerate everyday tasks. With Private Cloud Compute, Apple sets a new standard for privacy in AI, with the ability to flex and scale computational capacity between on-device processing and larger, server-based models that run on dedicated Apple silicon servers.

"We're thrilled to introduce a new chapter in Apple innovation. Apple Intelligence will transform what users can do with our products — and what our products can do for our users," said Tim Cook, Apple's CEO. "Our unique approach combines generative AI with a user's personal context to deliver truly helpful intelligence. And it can access that information in a completely private and secure way to help users do the things that matter most to them. This is AI as only Apple can deliver it, and we can't wait for users to experience what it can do."

## New Capabilities for Understanding and Creating Language

Apple Intelligence unlocks new ways for users to enhance their writing and communicate more effectively. With brand-new systemwide Writing Tools built into iOS 18, iPadOS 18, and macOS Sequoia, users can rewrite, proofread, and summarize text nearly everywhere they write, including Mail, Notes, Pages, and third-party apps.

Whether tidying up class notes, ensuring a blog post reads just right, or making sure an email is perfectly crafted, Writing Tools help users feel more confident in their writing. With Rewrite, Apple Intelligence allows users to choose from different versions of what they have written, adjusting the tone to suit the audience and task at hand. From finessing a cover letter, to adding humor and creativity to a party invitation, Rewrite helps deliver the right words to meet the occasion. Proofread checks grammar, word choice, and sentence structure while also suggesting edits — along with explanations of the edits — that users can review or quickly accept. With Summarize, users can select text and have it recapped in the form of a digestible paragraph, bulleted key points, a table, or a list.

**A073**



With brand-new systemwide Writing Tools powered by Apple Intelligence, users can rewrite, proofread,     ↓
and summarize text nearly everywhere they write.

In Mail, staying on top of emails has never been easier. With Priority Messages, a new section at the top of the inbox shows the most urgent emails, like a same-day dinner invitation or boarding pass. Across a user's inbox, instead of previewing the first few lines of each email, they can see summaries without needing to open a message. For long threads, users can view pertinent details with just a tap. Smart Reply provides suggestions for a quick response, and will identify questions in an email to ensure everything is answered.

**A074**



With Priority Messages in Mail, a new section at the top of the inbox shows the most urgent emails.     ↓

Deep understanding of language also extends to Notifications. Priority Notifications appear at the top of the stack to surface what's most important, and summaries help users scan long or stacked notifications to show key details right on the Lock Screen, such as when a group chat is particularly active. And to help users stay present in what they're doing, Reduce Interruptions is a new Focus that surfaces only the notifications that might need immediate attention, like a text about an early pickup from daycare.

**A075**

**Case 4:25-cv-00914-P     Document 145     Filed 01/29/26     Page 83 of 116     PageID 3695**



Priority Notifications surface what's most important, and summaries help users scan long or stacked notifications to show key details right on the Lock Screen.                    ↓

In the Notes and Phone apps, users can now record, transcribe, and summarize audio. When a recording is initiated while on a call, participants are automatically notified, and once the call ends, Apple Intelligence generates a summary to help recall key points.

**A076**



In the Notes and Phone apps, users can now record, transcribe, and summarize audio.                                    ↓

## Image Playground Makes Communication and Self-Expression Even More Fun

Apple Intelligence powers exciting image creation capabilities to help users communicate and express themselves in new ways. With Image Playground, users can create fun images in seconds, choosing from three styles: Animation, Illustration, or Sketch. Image Playground is easy to use and built right into apps including Messages. It's also available in a dedicated app, perfect for experimenting with different concepts and styles. All images are created on device, giving users the freedom to experiment with as many images as they want.

**A077**

Case 4:25-cv-00914-P    Document 145    Filed 01/29/26    Page 85 of 116    PageID 3697



**Easy to use and built right into apps like Messages, Image Playground allows users to create fun images in seconds.**    ↓

With Image Playground, users can choose from a range of concepts from categories like themes, costumes, accessories, and places; type a description to define an image; choose someone from their personal photo library to include in their image; and pick their favorite style.

A078



With Image Playground, users can choose from a range of concepts from categories like themes,      ↓
costumes, accessories, and places.

With the Image Playground experience in Messages, users can quickly create fun images for their friends, and even see personalized suggested concepts related to their conversations. For example, if a user is messaging a group about going hiking, they'll see suggested concepts related to their friends, their destination, and their activity, making image creation even faster and more relevant.

**A079**



In Messages, users can use Image Playground to quickly create fun images for their friends, and see personalized suggested concepts related to their conversations.

In Notes, users can access Image Playground through the new Image Wand in the Apple Pencil tool palette, making notes more visually engaging. Rough sketches can be turned into delightful images, and users can even select empty space to create an image using context from the surrounding area. Image Playground is also available in apps like Keynote, Freeform, and Pages, as well as in third-party apps that adopt the new Image Playground API.

**A080**



With Image Wand in the Apple Pencil tool palette, users can select empty space to create an image using context from the surrounding area.

## Genmoji Creation to Fit Any Moment

Taking emoji to an entirely new level, users can create an original Genmoji to express themselves. By simply typing a description, their Genmoji appears, along with additional options. Users can even create Genmoji of friends and family based on their photos. Just like emoji, Genmoji can be added inline to messages, or shared as a sticker or reaction in a Tapback.

**A081**



Users can pick someone from their photos and create a Genmoji that looks like them.

## New Features in Photos Give Users More Control

Searching for photos and videos becomes even more convenient with Apple Intelligence. Natural language can be used to search for specific photos, such as "Maya skateboarding in a tie-dye shirt," or "Katie with stickers on her face." Search in videos also becomes more powerful with the ability to find specific moments in clips so users can go right to the relevant segment. Additionally, the new Clean Up tool can identify and remove distracting objects in the background of a photo — without accidentally altering the subject.

**A082**

Case 4:25-cv-00914-P      Document 145      Filed 01/29/26      Page 90 of 116      PageID 3702



**The new Clean Up tool in Photos can identify and remove distracting objects in the background of a photo — without accidentally altering the subject.**

With Memories, users can create the story they want to see by simply typing a description. Using language and image understanding, Apple Intelligence will pick out the best photos and videos based on the description, craft a storyline with chapters based on themes identified from the photos, and arrange them into a movie with its own narrative arc. Users will even get song suggestions to match their memory from Apple Music. As with all Apple Intelligence features, user photos and videos are kept private on device and are not shared with Apple or anyone else.

**A083**





With Memories, Apple Intelligence can pick out the best photos and videos based on a user's
description, craft a storyline, and arrange it all into a movie with its own narrative arc.          ↓

## Siri Enters a New Era

Powered by Apple Intelligence, Siri becomes more deeply integrated into the
system experience. With richer language-understanding capabilities, Siri is more
natural, more contextually relevant, and more personal, with the ability to simplify
and accelerate everyday tasks. It can follow along if users stumble over words
and maintain context from one request to the next. Additionally, users can type to
Siri, and switch between text and voice to communicate with Siri in whatever way
feels right for the moment. Siri also has a brand-new design with an elegant
glowing light that wraps around the edge of the screen when Siri is active.

**A084**



Now users can type to Siri, and switch between text and voice to communicate with Siri in whatever way ↓
feels right for the moment.

Siri can now give users device support everywhere they go, and answer thousands of questions about how to do something on iPhone, iPad, and Mac. Users can learn everything from how to schedule an email in the Mail app, to how to switch from Light to Dark Mode.

**A085**



Now Siri can give users device support everywhere they go, answering thousands of questions about     ↓
how to do something on iPhone, iPad, and Mac.

With onscreen awareness, Siri will be able to understand and take action with users' content in more apps over time. For example, if a friend texts a user their new address in Messages, the receiver can say, "Add this address to his contact card."



With onscreen awareness, Siri makes it easy to perform an action related to information on the screen,     ↓
such as adding an address received in Messages to a friend's contact card.

With Apple Intelligence, Siri will be able to take hundreds of new actions in and across Apple and third-party apps. For example, a user could say, "Bring up that article about cicadas from my Reading List," or "Send the photos from the barbecue on Saturday to Malia," and Siri will take care of it.

**A087**



Siri can now take hundreds of new actions in and across apps, including finding book recommendations    ↓
sent by a friend in Messages and Mail.

Siri will be able to deliver intelligence that's tailored to the user and their on-device information. For example, a user can say, "Play that podcast that Jamie recommended," and Siri will locate and play the episode, without the user having to remember whether it was mentioned in a text or an email. Or they could ask, "When is Mom's flight landing?" and Siri will find the flight details and cross-reference them with real-time flight tracking to give an arrival time.

**A088**



Siri is able to deliver intelligence that's tailored to the user and their on-device information, like locating details on an upcoming flight or keeping track of a dinner reservation.          ↓

## A New Standard for Privacy in AI

To be truly helpful, Apple Intelligence relies on understanding deep personal context while also protecting user privacy. A cornerstone of Apple Intelligence is on-device processing, and many of the models that power it run entirely on device. To run more complex requests that require more processing power, Private Cloud Compute extends the privacy and security of Apple devices into the cloud to unlock even more intelligence.

With Private Cloud Compute, Apple Intelligence can flex and scale its computational capacity and draw on larger, server-based models for more complex requests. These models run on servers powered by Apple silicon, providing a foundation that allows Apple to ensure that data is never retained or exposed.

Independent experts can inspect the code that runs on Apple silicon servers to verify privacy, and Private Cloud Compute cryptographically ensures that iPhone, iPad, and Mac do not talk to a server unless its software has been publicly logged for inspection. Apple Intelligence with Private Cloud Compute sets a new standard for privacy in AI, unlocking intelligence users can trust.

## ChatGPT Gets Integrated Across Apple Platforms

Apple is integrating ChatGPT access into experiences within iOS 18, iPadOS 18, and macOS Sequoia, allowing users to access its expertise — as well as its

**A089**

Case 4:25-cv-00914-P    Document 145    Filed 01/29/26    Page 97 of 116    PageID 3709

image- and document-understanding capabilities — without needing to jump between tools.

Siri can tap into ChatGPT's expertise when helpful. Users are asked before any questions are sent to ChatGPT, along with any documents or photos, and Siri then presents the answer directly.



When a user grants permission, Siri can tap into ChatGPT's broad world knowledge and present an answer directly.

Additionally, ChatGPT will be available in Apple's systemwide Writing Tools, which help users generate content for anything they are writing about. With Compose, users can also access ChatGPT image tools to generate images in a wide variety of styles to complement what they are writing.

**A090**



ChatGPT will be available in Apple's systemwide Writing Tools in macOS, which help users generate content for anything they are writing about.

Privacy protections are built in for users who access ChatGPT — their IP addresses are obscured, and OpenAI won't store requests. ChatGPT's data-use policies apply for users who choose to connect their account.

ChatGPT will come to iOS 18, iPadOS 18, and macOS Sequoia later this year, powered by GPT-4o. Users can access it for free without creating an account, and ChatGPT subscribers can connect their accounts and access paid features right from these experiences.

**Availability**

Apple Intelligence is free for users, and will be available in beta as part of iOS 18, iPadOS 18, and macOS Sequoia this fall in U.S. English. Some features, software platforms, and additional languages will come over the course of the next year. Apple Intelligence will be available on iPhone 15 Pro, iPhone 15 Pro Max, and iPad and Mac with M1 and later, with Siri and device language set to U.S. English. For more information, visit apple.com/apple-intelligence.

**Share article**

**Text of this article**            Copy text

**Images in this article**            Download all images

**About Apple**

A091

Apple revolutionized personal technology with the introduction of the Macintosh in 1984. Today, Apple leads the world in innovation with iPhone, iPad, Mac, AirPods, Apple Watch, and Apple Vision Pro. Apple's six software platforms — iOS, iPadOS, macOS, watchOS, visionOS, and tvOS — provide seamless experiences across all Apple devices and empower people with breakthrough services including the App Store, Apple Music, Apple Pay, iCloud, and Apple TV+. Apple's more than 150,000 employees are dedicated to making the best products on earth and to leaving the world better than we found it.

## Press Contacts

### Apple Media Helpline

[media.help@apple.com](mailto:media.help@apple.com)

### Apple Media Helpline

[media.uk@apple.com](mailto:media.uk@apple.com)

## More from Apple Newsroom



UPDATE

### Apple scores six Academy Award nominations

January 22, 2026



PHOTOS

### The new Apple Sainte-Catherine opens today in Montreal

January 16, 2026



UPDATE

### Popular PC franchise Civilization comes to Apple Arcade on February 5

January 14, 2026

 Newsroom

**The latest news and updates, direct from Apple.**



**Read more**

A092

Case 4:25-cv-00914-P    Document 145    Filed 01/29/26    Page 100 of 116    PageID 3712

| Shop and Learn | Account | Apple Store | For Business | Apple Values |
|---|---|---|---|---|
| Store | Manage Your Apple Account | Find a Store | Apple and Business | Accessibility |
| Mac | Apple Store Account | Genius Bar | Shop for Business | Education |
| iPad | iCloud.com | Today at Apple | | Environment |
| iPhone | | Group Reservations | **For Education** | Inclusion and Diversity |
| Watch | **Entertainment** | Apple Camp | Apple and Education | Privacy |
| Vision | Apple One | Apple Store App | Shop for K-12 | Racial Equity and Justice |
| AirPods | Apple TV | Certified Refurbished | Shop for College | Supply Chain Innovation |
| TV & Home | Apple Music | Apple Trade In | | |
| AirTag | Apple Arcade | Financing | **For Healthcare** | **About Apple** |
| Accessories | Apple Fitness+ | Carrier Deals at Apple | Apple and Healthcare | Newsroom |
| Gift Cards | Apple News+ | Order Status | | Apple Leadership |
| | Apple Podcasts | Shopping Help | **For Government** | Career Opportunities |
| **Apple Wallet** | Apple Books | | Apple and Government | Investors |
| Wallet | App Store | | Shop for Veterans and Military | Ethics & Compliance |
| Apple Card | | | Shop for State and Local Employees | Events |
| Apple Pay | | | Shop for Federal Employees | Contact Apple |
| Apple Cash | | | | |

More ways to shop: Find an Apple Store or other retailer near you. Or call 1-800-MY-APPLE (1-800-692-7753).

Copyright © 2020 Apple Inc. All rights reserved.    Privacy Policy    Terms of Use    Sales and Refunds    Legal    Site Map    United States    Español

A093

# TAB 4





A096

# TAB 5

| | |
|---|---|
| **From:** | Cheung, Andrew J.H. |
| **Sent:** | Thursday, January 29, 2026 4:47 PM |
| **To:** | Eisman, Scott A.; Brinn, Hope E.; Robinson, M. Virginia; Savitt, William D.; Schwartz, Kevin S.; Levandoski, Stephen D.; OpenAI Antitrust WLRK Litigation 07228-0508; akim@lynnllp.com; bcongdon@lynnllp.com |
| **Cc:** | Reiser, Craig M.; Justus, Bradley; Yung, Eva H.; Erickson, Christopher; Abidor, Richard D.; judd@stonehilton.com; chris@stonehilton.com; noah@stonehilton.com |
| **Subject:** | RE: X Corp. and X.AI LLC v. Apple Inc., OpenAI Foundation, et al., No. 4:25-cv-00914 |

Scott – As we noted when we first discussed Jan Leike with you, we fail to see why Mr. Leike's documents would have any relevance to this case. We maintained that position prior to the hearing, at the hearing, and since the hearing. During our meet and confer on Monday, I noted, as you recount below, that we believe that Mr. Leike is "completely irrelevant" to this case, and I told you that we expected that OpenAI would file an opposition to your request today on those grounds.

We did not think there was further need to discuss what we believe is the clear irrelevance of Mr. Leike's documents, but you were welcome to raise any such points on Monday when we reiterated our position to you. Nevertheless, we will file our opposition shortly and include this email chain.

Best regards,
Andrew.

**Andrew J. Cheung**
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street | New York, NY 10019
+1 (212) 403-1338 (Direct) | +1 (212) 403-2338 (Fax)
AJHCheung@wlrk.com | www.wlrk.com

---

**From:** Eisman, Scott A. <seisman@axinn.com>
**Sent:** Thursday, January 29, 2026 2:57 PM
**To:** Cheung, Andrew J.H. <AJHCheung@wlrk.com>; Brinn, Hope E. <hbrinn@axinn.com>; Robinson, M. Virginia <MVRobinson@wlrk.com>; Savitt, William D. <wdsavitt@WLRK.com>; Schwartz, Kevin S. <KSchwartz@wlrk.com>; Levandoski, Stephen D. <SDLevandoski@wlrk.com>; OpenAI Antitrust WLRK Litigation 07228-0508 <OpenAI.Antitrust.Litigation@wlrk.com>; akim@lynnllp.com; bcongdon@lynnllp.com
**Cc:** Reiser, Craig M. <creiser@axinn.com>; Justus, Bradley <bjustus@axinn.com>; Yung, Eva H. <eyung@axinn.com>; Erickson, Christopher <cerickson@axinn.com>; Abidor, Richard D. <rabidor@axinn.com>; judd@stonehilton.com; chris@stonehilton.com; noah@stonehilton.com
**Subject:** RE: X Corp. and X.AI LLC v. Apple Inc., OpenAI Foundation, et al., No. 4:25-cv-00914

---

**\*\*External Email-Use Caution\*\***

Andrew,

As we've noted repeatedly, we are available to discuss the inclusion of Jan Leike as a custodian given our understanding that OpenAI was still considering the burden and proportionality of adding Mr. Leike. That understanding is based on your representations: Last Tuesday, you wrote that OpenAI was "evaluating further the burden of including Mr. Leike as a custodian." We responded and asked for an update on OpenAI's position by 9 a.m. CT on Wednesday, January 21, in advance of the hearing later that day. You called me at 9 a.m. CT on January 21 to tell me that you were still discussing the issue with your client and that you were

A098

running search terms to assess burden. At the hearing, we indicated that if the Court wasn't going to rule on the issue, we'd be open to working further with you to "resolve the issue." Hr'g Tr. 31.

Since the hearing, however, OpenAI has been unwilling to engage on this issue. We emailed you the day after the hearing, on January 22, to ask whether you'd "had a chance to connect with your client about adding Jan Leike as a custodian." You didn't respond. We then raised the issue on Monday's meet-and-confer and promised to get back to us on this issue yesterday. We didn't hear from you until today, and your only response is that you'll be filing a supplemental brief.

If OpenAI wishes to try to resolve this issue amicably—including by providing hit counts or other ways for us to assess burden and proportionality—we remain available and can withdraw our motion if we reach a resolution. If you are unwilling to meet-and-confer, we ask that you include this email along with your supplemental brief.

Best regards,
Scott


**Scott A. Eisman**
Partner
T: 212.261.5642

---

**From:** Cheung, Andrew J.H. <AJHCheung@wlrk.com>
**Sent:** Thursday, January 29, 2026 2:28 PM
**To:** Eisman, Scott A. <seisman@axinn.com>; Brinn, Hope E. <hbrinn@axinn.com>; Robinson, M. Virginia <MVRobinson@wlrk.com>; Savitt, William D. <wdsavitt@WLRK.com>; Schwartz, Kevin S. <KSchwartz@wlrk.com>; Levandoski, Stephen D. <SDLevandoski@wlrk.com>; OpenAI Antitrust WLRK Litigation 07228-0508 <OpenAI.Antitrust.Litigation@wlrk.com>; akim@lynnllp.com; bcongdon@lynnllp.com
**Cc:** Reiser, Craig M. <creiser@axinn.com>; Justus, Bradley <bjustus@axinn.com>; Yung, Eva H. <eyung@axinn.com>; Erickson, Christopher <cerickson@axinn.com>; Abidor, Richard D. <rabidor@axinn.com>; judd@stonehilton.com; chris@stonehilton.com; noah@stonehilton.com
**Subject:** RE: X Corp. and X.AI LLC v. Apple Inc., OpenAI Foundation, et al., No. 4:25-cv-00914


**Caution: External Email**

---

Scott – On your request that the Court add Jan Leike as a custodian, as I indicated earlier this week, we expect to file a supplemental brief in opposition later today, as provided for in the Court's order.

We are continuing to review your memorialization below, as well as your proposed additional search terms, and will respond with respect to any disagreements or issues raised. However, we can confirm that, to the extent that OpenAI agreed to a targeted search in response for "documents sufficient to show" requests, we have begun that process.

We also believe that an additional meet and confer will be more productive after we have had a chance to explore with our client further the issues raised during our Monday call. We will propose some times next week for our next meet and confer over Plaintiffs' Second RFPs.

Best regards,
Andrew

A099

**Andrew J. Cheung**

Wᴀᴄʜᴛᴇʟʟ, Lɪᴘᴛᴏɴ, Rᴏsᴇɴ & Kᴀᴛᴢ
51 West 52nd Street | New York, NY 10019
+1 (212) 403-1338 (Direct) | +1 (212) 403-2338 (Fax)
AJHCheung@wlrk.com | www.wlrk.com

---

**From:** Eisman, Scott A. <seisman@axinn.com>
**Sent:** Tuesday, January 27, 2026 9:13 PM
**To:** Brinn, Hope E. <hbrinn@axinn.com>; Robinson, M. Virginia <MVRobinson@wlrk.com>; Savitt, William D. <wdsavitt@WLRK.com>; Schwartz, Kevin S. <KSchwartz@wlrk.com>; Levandoski, Stephen D. <SDLevandoski@wlrk.com>; OpenAI Antitrust WLRK Litigation 07228-0508 <OpenAI.Antitrust.Litigation@wlrk.com>; akim@lynnllp.com; bcongdon@lynnllp.com; Cheung, Andrew J.H. <AJHCheung@wlrk.com>
**Cc:** Reiser, Craig M. <creiser@axinn.com>; Justus, Bradley <bjustus@axinn.com>; Yung, Eva H. <eyung@axinn.com>; Erickson, Christopher <cerickson@axinn.com>; Abidor, Richard D. <rabidor@axinn.com>; judd@stonehilton.com; chris@stonehilton.com; noah@stonehilton.com
**Subject:** RE: X Corp. and X.AI LLC v. Apple Inc., OpenAI Foundation, et al., No. 4:25-cv-00914

---

**\*\*External Email-Use Caution\*\***

Counsel,

I write to memorialize our discussions from yesterday's meet-and-confer. Please let us know when you are available this week to meet and confer further.

### Custodians

We continue to believe that Jan Leike is an appropriate custodian for requests relating to OpenAI's safety. To that end, we asked if we could reach agreement without the need for motion practice. You said that you continue to believe Jan Leike is "completely irrelevant" to this case, but that you are speaking with your client and will share your position on Wednesday.

### OpenAI's Responses and Objections to Plaintiffs' Second Set of Requests for Production

#### Reasonable Searches and Go-Gets

We asked what you meant when you said you would produce documents identified "through a reasonable search" in response to several "documents sufficient to show" requests. We noted that we thought these requests sought information that would be more appropriately answered via go-gets. You explained that you used this "reasonable search" language to convey only that you were not certain that documents responsive to any RFP existed. You confirmed that you planned to produce go-gets for the "documents sufficient to show" requests for which you agreed to produce documents.

We expect that, given the substantial-completion deadline, OpenAI is already searching for go-get documents responsive to Plaintiffs' Second Set of RFPs. Please confirm that this is the case.

We are also attaching to this email our proposed search terms for documents responsive to Plaintiffs' Second Set of RFPs.

#### RFP No. 1

This Request seeks "Documents or data sufficient to show the monthly adoption or use of ChatGPT, by (i) geography (U.S. and globally) (ii) plan type (free, 'Plus,' 'Pro,' 'Business,' 'Enterprise,' and 'Education'); and (iii)

**A100**

usage type (desktop web, mobile web, mobile app, and native integration), including but not limited to: a. The number of users; b. The number of active users; c. The number of prompts; d. Average use time by users; and e. The number of input and output tokens."

You confirmed that OpenAI agreed to produce responsive documents other than documents or data concerning the "Business," "Enterprise," and "Education" ChatGPT plan types.

We asked you to explain why OpenAI was not producing documents showing ChatGPT's monthly usage for these plan types, and to clarify whether your refusal was based on relevance or burden. You responded that you were "surprised" that we included "Business," "Enterprise," and "Education" in our request because you "didn't think" those plan types were "what [Plaintiffs] were claiming in [the] relevant market." We agreed to take that explanation back.

### RFP No. 2

This Request seeks "[a]ll Documents and/or data composing the Growth Dataset."

As we explained, "Growth Dataset" is a term used in a paper published by six OpenAI employees and refers to a dataset covering all usage on consumer ChatGPT Plans (Free, Plus, Pro) since Chat-GPT's launch in November 2022." We therefore expected that the Growth Dataset would already exist in producible form, such as an .xml or .csv file.

You responded that the Growth Dataset is not a file but rather an entire database on usage. You further explained that you pulled and would be pulling specific information responsive to Plaintiffs' RFPs from the Growth Dataset but were not comfortable producing "the whole thing."

We asked you to consider whether OpenAI would produce in response to RFP No. 2 specified fields from the Growth Dataset. You agreed to take that back.

### RFP No. 3

This Request seeks "Documents or data sufficient to show, by month and by country, the number of ChatGPT users who: a. upgrade from ChatGPT's free service to a paid plan; or b. downgrade from a ChatGPT paid plan to its free service."

OpenAI agreed to produce documents sufficient to show the relevant information, to the extent such information is identified "through a reasonable search."

We sought clarification on whether you intended to produce go-gets for this Request. Based on your clarification on the intent behind the "reasonable search" language, and your plans regarding documents sufficient to show requests, we understand you will be producing go-gets responsive to RFP No. 3 if they exist.

### RFP No. 4

This Request seeks "[a]ll Documents analyzing the lifetime financial value of users of ChatGPT's free and paid offerings."

OpenAI refused to produce documents in response to this Request.

We asked you to explain your position, and you said that you had never heard of the term "lifetime financial value" before. We explained that "lifetime financial value" (sometimes called "customer lifetime value") is the total worth of revenue or profit from a customer to a business over the entirety of their relationship. You agreed to take this Request back in light of our explanation.

### RFP No. 5

4

A101

This Request seeks "[a]ll Documents that identify the use and value of user interactions for retraining, training, or otherwise enhancing ChatGPT for users."

OpenAI objected to this Request as duplicative of RFP No. 8(e) from Plaintiffs' First Set of RFPs and thus agreed to produce documents to the extent it has agreed to produce such documents in response to RFP No. 8(e) from Plaintiffs' First Set of Requests for Production.

We explained that we disagreed that RFP No. 5 was duplicative of RFP No. 8(e), which seeks "[a]ll Documents discussing, analyzing, evaluating, or documenting the Apple-ChatGPT Integration, including but not limited to: . . . e. the value of the data provided to OpenAI via the Apple-ChatGPT integration." As we noted, RFP No. 8(e) seeks documents addressing the value of the data OpenAI receives from the integration with Apple, whereas RFP No. 5 seeks a broader set of documents addressing the general value of user interactions or generative AI chatbot prompts.

You first claimed that because Plaintiffs did not allege either that OpenAI monopolized the market for prompts or that the anticompetitive effects were tied to the value of prompts, documents concerning the generalized value of prompts are not relevant. You elaborated that you understood Plaintiffs to be arguing that prompts from Apple Intelligence are so great that prompts from other sources have scarcely any value.

We disputed your position that our allegations in any way suggest that prompts other than those received through Apple Intelligence are of little or no value. We further explained that Plaintiffs did not allege that prompts are a distinct market, but rather that prompts are an input and also a measure of output for the generative AI chatbot market—just as we argued in our opposition to Defendants' motions to dismiss and detailed in our previous meet-and-confers. Indeed, as we noted on our December 5 meet-and-confer, and as summarized in our December 7 email: "the number of prompts ChatGPT received in the aggregate is probative of OpenAI's market power and could be used to calculate the company's share of the generative AI chatbot market." Plaintiffs are therefore entitled to probe the value of user prompts.

You agreed to take our position back. If OpenAI will not agree to produce documents responsive to this request beyond those responsive to RFP No. 8(e), then we are at an impasse.

### RFP No. 6

This Request seeks "[a]ll Documents analyzing the value of OpenAI's access to Prompts from the Apple-ChatGPT Integration and any improvements in OpenAI Models from the Apple-ChatGPT Integration.

OpenAI objected to this Request as duplicative of RFP No. 8(e) from Plaintiffs' First Set of RFPs and thus agreed to produce documents to the extent it has agreed to produce such documents in response to RFP No. 8(e) from Plaintiffs' First Set of Requests for Production.

We agree that this Request seeks the same material as RFP No. 8(e).

### RFP No. 7

This Request seeks "[a]ll OpenAI Agreements regarding: (a) content acquisition or licensing, (b) cloud computing, (c) GPUs or other semiconductor chips, or (d) distribution of ChatGPT. Examples of responsive Agreements include, but are not limited to, those for the OpenAI-NVIDIA Partnership; OpenAI-News Corp. Partnership; OpenAI-AWS Partnership; and the OpenAI-KakaoTalk Partnership."

OpenAI refused to produce documents responsive to this Request. On our call, you elaborated that OpenAI was refusing based on relevance.

We replied that the agreements sought are relevant to assessing barriers to entry in the generative AI chatbot market because they go to various items OpenAI needs to make its genAI chatbot, ChatGPT, function. You

5

**A102**

restated your longstanding objection that we are erroneously seeking the costs OpenAI incurred to show what a newcomer would need to do to enter the market. But as we've repeatedly explained, we are not asserting that a new entrant must replicate OpenAI's business to enter the market. A new entrant faces higher costs where the dominant incumbent has locked up such resources, and the agreements will reveal the extent to which OpenAI has locked up such resources. Moreover, OpenAI is a market participant, and so the terms of its agreements—including economic terms—are a relevant data point. Thus, OpenAI's agreements with input providers (such as suppliers of compute and content) are highly relevant to understanding the barriers faced by both new entrants and existing competitors seeking to expand. We have explained this to you during our meet-and-confers.

We also clarified that plaintiffs have not alleged that the input agreements this Request seeks are anticompetitive, but that all were probative of barriers to entry.

You said that you understood our theory of relevance and would take this Request back.

We also asked whether OpenAI was claiming a burden objection based on the number of responsive agreements. You said that your objection was relevance-based and that you didn't know how many agreements would be responsive to this Request. We asked whether OpenAI has summaries of the terms of these agreements that it might consider producing, and you said that you didn't know whether any nonprivileged summaries existed.

### RFP No. 10

This Request seeks "[a]ll Documents related to OpenAI's negotiation of distribution deals regarding Google, Samsung, or Motorola Smartphones."

OpenAI refused to produce documents responsive to this Request. You explained that your primary objection was based on relevance.

We explained that the Request was relevant because responsive documents would help contextualize the terms of the Apple-OpenAI agreement. When you asked whether there are specific terms that we were seeking to contextualize, we answered that the Apple-OpenAI agreement had to be considered as a whole and that we therefore wanted to understand what terms OpenAI had agreed to or tried to agree to with other smartphone manufacturers.

Please let us know whether OpenAI will produce documents responsive to this Request. If not, then we are at an impasse.

### RFP No. 11

This Request seeks "Documents sufficient to show OpenAI's actual, target (for the 2022 to 2030 timeframe), and forecasted (for the 2022 to 2030 timeframe) (i) gross revenues, (ii) net revenues, (iii) profits, (iv) contribution margins, (v) cash flows, (vi) operating costs, and (vii) fixed costs on a monthly basis."

OpenAI agreed to produce non-privileged documents sufficient to show annual profits, revenues, expenses, and capital outlays for 2022 through 2024 for OpenAI Foundation.

We asked whether the categories OpenAI agreed to produce documents sufficient to show (annual profits, expenses, and capital outlays) encompass the categories listed in (i)-(vii) of RFP No. 11. You said that you believed so but would confirm.

We also asked you to explain why for this Request, as well as RFP Nos. 15 and 18, you agreed to produce responsive documents for only OpenAI Foundation, which is not the entity that signed the Apple-OpenAI agreement. You said that you thought that OpenAI's financial statements were for OpenAI Foundation only. You noted that you did not think OpenAI Foundation's financial documents broke out other entities individually. We pressed you for further information about whether these are distinct legal entities carrying out distinct

6

A103

functions, and whether OpenAI OpCo, LLC, the entity that signed the Apple-OpenAI agreement, has its own financials. You agreed to take this back.

Lastly, we asked you to explain why you agreed to produce documents covering only the 2022-2024 timeframe, not the 2022-2030 timeframe the Request specifies. You said you did not understand how OpenAI's financial projections are relevant. We explained that the projections are relevant to our monopolization claims because they could show OpenAI's perceived ability to raise its prices to supra-competitive levels, which is probative of monopolization. You responded that you still did not see how OpenAI's projections are relevant. You asked us to consider narrowing our Request to something that addresses the pricing issue rather than the financials for the entire organization. But we cannot agree. Even beyond the ability to raise prices, OpenAI's projections are relevant to showing OpenAI's ability to earn monopoly profits—something that is relevant to our monopolization claims. OpenAI's projections are also probative of OpenAI's valuation of the Apple-ChatGPT integration, which is probative of harm to Plaintiffs and substantial foreclosure. We are therefore entitled to OpenAI's projections for the metrics we requested.

If OpenAI will not produce documents responsive to this Request, then we are at an impasse.

### RFP No. 15

This Request seeks "[a]ll annual and quarterly reports for OpenAI and all OpenAI income statements, balance sheets, and statements of cash flow on a monthly, quarterly, and annual basis."

OpenAI agreed to produce annual financial statements for OpenAI Foundation.

We asked you to explain why you agreed to give us only annual financial statements. You said that while you were certain that the annual statements exist, you were still doing due diligence on whether monthly and/or quarterly reports exist. You added that monthly or quarterly statements that exist may not be audited, and we said that we'd accept unaudited monthly and quarterly financial statements if that's all that exists. You said you would come back to us on this Request after performing that due diligence.

### RFP No. 17

This Request seeks "[a]ll Documents regarding Project Clear and any other efforts by OpenAI to delete or destroy documents or data in the six months preceding the launch of ChatGPT."

OpenAI refused to produce documents responsive to this Request. On our call, you explained that this Request sought information pertaining to a period before the integration, and therefore before anyone at OpenAI could have anticipated litigation. You also said that the Request doesn't raise any suggestion of spoliation related to this case and instead seemed to be aimed at potential past litigation-related bad behavior regarding documents not implicated in this case.

We responded that this Request was not about spoliation. We noted that we are the ones who bear the burden at trial and this Request might be relevant to explaining to a factfinder why we don't have certain documents. We agreed to take this Request back to assess whether it could be modified.

* * * *

Unless we hear otherwise from you by end of day Thursday, January 29, we will assume that the above accurately summarizes our meet-and-confer.

Best regards,
Scott

 **Scott A. Eisman**

**A104**

Partner

**Axinn, Veltrop & Harkrider LLP**
45 Rockefeller Plaza
New York, NY 10111
T: 212.261.5642
seisman@axinn.com | axinn.com

---

**From:** Brinn, Hope E. <hbrinn@axinn.com>
**Sent:** Sunday, January 25, 2026 3:07 PM
**To:** Robinson, M. Virginia <MVRobinson@wlrk.com>; Savitt, William D. <wdsavitt@WLRK.com>; Schwartz, Kevin S. <KSchwartz@wlrk.com>; Levandoski, Stephen D. <SDLevandoski@wlrk.com>; OpenAI Antitrust WLRK Litigation 07228-0508 <OpenAI.Antitrust.Litigation@wlrk.com>; akim@lynnllp.com; bcongdon@lynnllp.com
**Cc:** Eisman, Scott A. <seisman@axinn.com>; Reiser, Craig M. <creiser@axinn.com>; Justus, Bradley <bjustus@axinn.com>; Yung, Eva H. <eyung@axinn.com>; Erickson, Christopher <cerickson@axinn.com>; Abidor, Richard D. <rabidor@axinn.com>; judd@stonehilton.com; chris@stonehilton.com; noah@stonehilton.com
**Subject:** RE: X Corp. and X.AI LLC v. Apple Inc., OpenAI Foundation, et al., No. 4:25-cv-00914

Counsel,

We write in response to your request to provide a list of topics we intend to discuss in tomorrow's meet and confer. While we plan to discuss most, if not all, of OpenAI's R&Os, we intend to prioritize RFP Nos. 1-3, 7, 10, & 11. We would also like to follow up on Scott's email from Thursday, January 20, about adding Jan Leike as a custodian.

We have also been drafting proposed search terms for Plaintiffs' Second Set of RFPs, which we'll circulate after tomorrow's call.

Best,

Hope Brinn

**Hope Brinn**
Associate
T: 202.451.2316

---

**From:** Brinn, Hope E.
**Sent:** Friday, January 23, 2026 11:24 AM
**To:** 'Robinson, M. Virginia' <MVRobinson@wlrk.com>; Savitt, William D. <wdsavitt@WLRK.com>; Schwartz, Kevin S. <KSchwartz@wlrk.com>; Levandoski, Stephen D. <SDLevandoski@wlrk.com>; OpenAI Antitrust WLRK Litigation 07228-0508 <OpenAI.Antitrust.Litigation@wlrk.com>; akim@lynnllp.com; bcongdon@lynnllp.com
**Cc:** Eisman, Scott A. <seisman@axinn.com>; Reiser, Craig M. <creiser@axinn.com>; Justus, Bradley <bjustus@axinn.com>; Yung, Eva H. <eyung@axinn.com>; Erickson, Christopher <cerickson@axinn.com>; Abidor, Richard D. <rabidor@axinn.com>; judd@stonehilton.com; chris@stonehilton.com; noah@stonehilton.com
**Subject:** RE: X Corp. and X.AI LLC v. Apple Inc., OpenAI Foundation, et al., No. 4:25-cv-00914

Thanks, Virginia. I will circulate an invitation for Monday from 3-4 pm ET momentarily. We will send you the list of RFPs and RFAs we'd like to discuss in advance of the meeting.

**A105**

**From:** Robinson, M. Virginia <MVRobinson@wlrk.com>
**Sent:** Thursday, January 22, 2026 3:37 PM
**To:** Brinn, Hope E. <hbrinn@axinn.com>; Savitt, William D. <wdsavitt@WLRK.com>; Schwartz, Kevin S. <KSchwartz@wlrk.com>; Levandoski, Stephen D. <SDLevandoski@wlrk.com>; OpenAI Antitrust WLRK Litigation 07228-0508 <OpenAI.Antitrust.Litigation@wlrk.com>; akim@lynnllp.com; bcongdon@lynnllp.com
**Cc:** Eisman, Scott A. <seisman@axinn.com>; Reiser, Craig M. <creiser@axinn.com>; Justus, Bradley <bjustus@axinn.com>; Yung, Eva H. <eyung@axinn.com>; Erickson, Christopher <cerickson@axinn.com>; Abidor, Richard D. <rabidor@axinn.com>; judd@stonehilton.com; chris@stonehilton.com; noah@stonehilton.com
**Subject:** RE: X Corp. and X.AI LLC v. Apple Inc., OpenAI Foundation, et al., No. 4:25-cv-00914

**Caution: External Email**

Hope,

We don't have any availability tomorrow, but we can be available Monday from 3pm-4pm if that works for you.  If possible, it would be helpful to know in advance which RFPs / RFAs you plan to focus on so that we can prepare accordingly.

Best,
Virginia

**M. Virginia Robinson**
Wachtell, Lipton, Rosen & Katz
51 West 52nd Street | New York, NY 10019
+1 (212) 403-1311 (Direct) | +1 (212) 403-2000 (Fax)
MVRobinson@wlrk.com | www.wlrk.com

**From:** Brinn, Hope E. <hbrinn@axinn.com>
**Sent:** Thursday, January 22, 2026 10:11 AM
**To:** Savitt, William D. <wdsavitt@WLRK.com>; Schwartz, Kevin S. <KSchwartz@wlrk.com>; Levandoski, Stephen D. <SDLevandoski@wlrk.com>; OpenAI Antitrust WLRK Litigation 07228-0508 <OpenAI.Antitrust.Litigation@wlrk.com>; akim@lynnllp.com; bcongdon@lynnllp.com
**Cc:** Eisman, Scott A. <seisman@axinn.com>; Reiser, Craig M. <creiser@axinn.com>; Justus, Bradley <bjustus@axinn.com>; Yung, Eva H. <eyung@axinn.com>; Erickson, Christopher <cerickson@axinn.com>; Abidor, Richard D. <rabidor@axinn.com>; Brinn, Hope E. <hbrinn@axinn.com>; judd@stonehilton.com; chris@stonehilton.com; noah@stonehilton.com
**Subject:** RE: X Corp. and X.AI LLC v. Apple Inc., OpenAI Foundation, et al., No. 4:25-cv-00914

**\*\*External Email-Use Caution\*\***

Dear Counsel,

Please let us know of your availability today or tomorrow for a meet and confer to discuss these responses and objections.

Best,

Hope Brinn

**A106**

**Hope Brinn**
Associate

**Axinn, Veltrop & Harkrider LLP**
1901 L Street NW
Washington, DC 20036
T: 202.451.2316
hbrinn@axinn.com | axinn.com

Not yet admitted to the Washington, DC Bar. Practicing pursuant to D.C.C.A. Rule 49(c)(8))
**From:** Andy Kim <akim@lynnllp.com>
**Date:** January 20, 2026 at 9:34:49 PM CST
**To:** "Eisman, Scott A." <seisman@axinn.com>, "Reiser, Craig M." <creiser@axinn.com>, "Justus, Bradley" <bjustus@axinn.com>, "Yung, Eva H." <eyung@axinn.com>, "Boisvert, Caroline P." <cboisvert@axinn.com>, "Erickson, Christopher" <cerickson@axinn.com>, judd@stonehilton.com, chris@stonehilton.com, amore@ccsb.com, mgaudioso@ccsb.com, rrowe@ccsb.com, noah@stonehilton.com
**Cc:** "Willard Zehmer, Lauren" <LZehmer@cov.com>, "Weiland, Carol" <CWeiland@cov.com>, "Michael K. Hurst" <MHurst@lynnllp.com>, Chris Patton <CPatton@lynnllp.com>, wdsavitt@wlrk.com, kschwartz@wlrk.com, sdlevandoski@wlrk.com, Beverly Congdon <BCongdon@lynnllp.com>, OpenAI Antitrust WLRK Litigation 07228-0508 <OpenAI.Antitrust.Litigation@wlrk.com>
**Subject: X Corp. and X.AI LLC v. Apple Inc., OpenAI Foundation, et al., No. 4:25-cv-00914**

**Caution: External Email**

Counsel:

Please find attached responses and objections to Plaintiffs' second set of RFPs and third set of RFAs to the OpenAI Defendants. In accordance with the December 19, 2025 Confidentiality Agreement Regarding the Disclosure and Use of Discovery Materials, the OpenAI Defendants designate these responses and objections Confidential.

This email constitutes service of the foregoing responses and objections.

Best,

**ANDY KIM**, Attorney
**Lynn Pinker Hurst & Schwegmann**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
**lynnllp.com**

Direct    214 981 3808
Mobile    469 321 0006

akim@lynnllp.com

**A107**

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Lynn Pinker Hurst & Schwegmann, LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return e-mail, and destroy this communication and all copies thereof, including all attachments.

*****************************************************************

Notice: The information contained in this electronic mail and any attached documents from Axinn, Veltrop & Harkrider LLP is confidential. This email may be an attorney-client communication, and as such is privileged and confidential. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the content of this information is prohibited. If you have received this electronic mail in error, please notify us immediately by telephone (212) 728-2200/(860) 275-8100 or by reply electronic mail to the sender. IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.
****************************************************************

=================================================

Please be advised that this transmittal may be a confidential attorney-client communication or may otherwise be privileged or confidential. If you are not the intended recipient, please do not read, copy or re-transmit this communication. If you have received this communication in error, please notify us by e-mail (helpdesk@wlrk.com) or by telephone (call us collect at 212-403-4357) and delete this message and any attachments.

Thank you in advance for your cooperation and assistance.
=================================================
*****************************************************************************

Notice: The information contained in this electronic mail and any attached documents from Axinn, Veltrop & Harkrider LLP is confidential. This email may be an attorney-client communication, and as such is privileged and confidential. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the content of this information is prohibited. If you have received this electronic mail in error, please notify us immediately by telephone (212) 728-2200/(860) 275-8100 or by reply electronic mail to the sender. IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.
*****************************************************************************
*****************************************************************************

Notice: The information contained in this electronic mail and any attached documents from Axinn, Veltrop & Harkrider LLP is confidential. This email may be an attorney-client communication, and as such is privileged and confidential. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the content of this information is prohibited. If you have received this electronic mail in error, please notify us immediately by telephone (212) 728-2200/(860) 275-8100 or by reply electronic mail to the sender. IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii)

**A108**

promoting, marketing or recommending to another party any transaction or matter addressed herein.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

12

**A109**