**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

|  |  |
|---|---|
| X CORP. and X.AI LLC,<br><br>  Plaintiffs,<br><br>  - v. -<br><br>APPLE INC., OPENAI, INC., OPENAI, L.L.C., and OPENAI OPCO, LLC,<br><br>  Defendants. | No. 4:25-cv-00914-P |

**OPENAI'S BRIEF IN SUPPORT OF ITS MOTION TO COMPEL**
**PLAINTIFFS TO PRODUCE DOCUMENTS**

WACHTELL, LIPTON,
  ROSEN & KATZ
51 West 52nd Street
New York, NY  10019
Telephone: (212) 403-1000
Facsimile: (212) 403-2000

CANTEY HANGER LLP
600 W. 6th St., Suite 300
Fort Worth, TX  76102
Telephone: (817) 877-2800
Facsimile: (817) 877-2807

LYNN PINKER HURST
  & SCHWEGMANN LLP
2100 Ross Avenue, Suite 2700
Dallas, TX  75201
Telephone: (214) 981-3800
Facsimile: (214) 981-3839

Dated: April 3, 2026

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ..................................................................................................................... 2

ARGUMENT .......................................................................................................................... 4

    I.   The Court should order plaintiffs to produce the requested documents. ...................... 4

        A.   Investor communications and documents concerning valuation, projections, and progress in developing Grok must be produced. ................. 5

        B.   Documents regarding the Google–Apple agreement must be produced. ........ 8

        C.   Documents regarding plaintiffs' Super App initiatives must be produced. ...... 9

        D.   Plaintiffs must conduct a competent search of Elon Musk's custodial documents and produce relevant and responsive materials............................ 9

    II.  Expedited briefing is necessary to resolve these issues. ............................................ 12

CONCLUSION..................................................................................................................... 12

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Goodyear Tire & Rubber Co.* v. *CEVA Logistics Sing., Ltd.*,
    348 F.R.D. 54 (E.D. La. 2024)...............................................................................................11

*Hunters Run Gun Civ. Action No. Club, LLC* v. *Baker*,
    2019 WL 507479 (M.D. La. Feb. 7, 2019) ............................................................................12

*Musk* v. *Altman*,
    2025 WL 2348769 (N.D. Cal. July 1, 2025)............................................................................10

*Ultravision Techs., LLC* v. *Govision, LLC*,
    2020 WL 10692709 (E.D. Tex. Aug. 28, 2020) .....................................................................10

*United States* v. *Planned Parenthood Fed'n of Am., Inc.*,
    2022 WL 19010334 (N.D. Tex. Aug. 25, 2022).................................................................. 4-5

**Rules & Statutes**

Fed. R. Civ. P. 26(b)(1)................................................................................................................4

**Other Authorities**

*Joint statement from Google and Apple* (Jan. 12, 2026),
    https://blog.google/company-news/inside-google/company-
    announcements/joint-statement-google-apple/ ...................................................................3 n.2

*War rooms, group chats, and video games: Inside Elon Musk's AI startup*,
    BUSINESS INSIDER (Feb. 20, 2026), https://www.businessinsider.com/elon-
    musk-xai-leadership-style-big-year-grok-ipo-spacex-2026-2 ..........................................11 n.8

*xAI Joins SpaceX to Accelerate Humanity's Future* (Feb. 2, 2026),
    https://www.spacex.com/updates.........................................................................................4 n.3

## PRELIMINARY STATEMENT

Plaintiffs brought this case asserting anticompetitive conduct and harm but have refused to produce discovery that not only is central to their claims, but will show that those claims are not viable. Despite repeated requests and multiple meet and confer efforts, OpenAI is left with no choice but to ask the Court to compel plaintiffs to produce discovery on four separate issues.

*First*, plaintiffs allege that the Apple–OpenAI agreement has stifled xAI's development of Grok by depriving xAI of user prompts that are necessary to train its AI model. According to plaintiffs, Grok cannot compete with ChatGPT and is doomed to languish in the marketplace. Plaintiffs' experts, moreover, have made xAI's valuation and fundraising events a key element of plaintiffs' alleged harm by claiming that the valuations of xAI would have been even higher but for the alleged anticompetitive agreement. Indeed, ███████████████████████████ ██████ ████████████████████████████ ███████████████████

OpenAI has therefore requested plaintiffs' communications with investors and potential investors about xAI's fundraising events in July 2025 and January 2026 and its merger with SpaceX, as well as documents concerning xAI's valuations and Grok's performance and outlook. Despite the obvious relevance of the requested communications, plaintiffs have repeatedly blocked discovery. Plaintiffs should not be allowed to put their fundraising, valuation, and prospects at issue while blocking inquiry about these subjects.

*Second*, plaintiffs are also improperly withholding documents relating to the recently announced Google–Apple agreement. Plaintiffs allege that the Apple–OpenAI agreement is "exclusive" ████████████████████████████████ ██████████████████ plaintiffs have pivoted to claim that the Apple–OpenAI agreement is "effectively exclusive." But Apple's agreement with Google to supply generative AI capabilities

1

to Apple confirms that the Apple–OpenAI agreement is not "exclusive" in any sense, and plaintiffs should not be allowed to block discovery into the Google–Apple agreement and what plaintiffs' business executives are saying about it.

*Third*, plaintiffs have refused to produce key documents about their claimed "Super App" initiative, including business plans, product roadmaps, launch schedules, and internal development timelines. These issues are foundational to plaintiffs' claimed damages ███████████████████ ███████████████████████████████████████ If the "Super App" was the near-term reality that plaintiffs claim, they should be able to produce the basic documents OpenAI seeks. And if those documents do not exist, plaintiffs should say so.

*Fourth*, although plaintiffs allege that the Apple–OpenAI agreement is an existential threat to Grok, plaintiffs have produced **only seven** documents authored by their CEO, Elon Musk, and not a single text, Signal, or XChat message from his files. Defendants have learned that Musk used non-xAI email accounts to communicate about matters at issue in this case, including his accounts at Tesla and SpaceX, which he also controls, and have thus pressed for discovery into his documents at his other companies. Plaintiffs, however, have refused to conduct these searches. Plaintiffs should be ordered to search Musk's email accounts, text, Signal and XChat messages, and all other potential document sources for relevant and responsive materials. Plaintiffs' discovery obligations extend to Musk, as their CEO, wherever and however his communications about plaintiffs' business were conducted.

## BACKGROUND

In May 2024, Apple and OpenAI entered into an agreement to integrate ChatGPT into certain iPhone applications, including Siri. *See* App'x Tab 1 at A002. After this integration, iPhone users could tap into ChatGPT to answer questions Siri could not answer. ███████████ ███████████████████████████████████████████████████

2

███████████████████████████████████████████

████████████████████████████

On August 25, 2025, X and xAI filed suit, alleging that the Apple–OpenAI integration was an "exclusive" agreement that has "locked up markets" and "prevented . . . X and xAI from competing." *See* Dkt. 1 ¶¶ 1, 11. Plaintiffs allege that this agreement "foreclosed" xAI's generative AI chatbot, Grok, "from the ability to compete for additional customers against OpenAI's ChatGPT," and that defendants' conduct "prevent[ed] super apps from effectively competing." *Id.* ¶¶ 188-89. They plead that, as a result, "xAI has less scale and receives less investment to develop innovations to its generative AI models," which "substantially reduce[d] the value of xAI's business." *Id.*; *see also id.* ¶¶ 212, 220, 231. Plaintiffs add that they "have been foreclosed from a significant number of generative AI chatbot prompts . . . and thwarted in their abilities to innovate and improve the quality and competitiveness of their offerings." *Id.* ¶ 13.[1]

After the filing of the complaint, Apple and Google announced a deal on January 12, 2026 to use Google's generative AI model, Gemini, to further develop Apple Intelligence, confirming that the Apple–OpenAI agreement was never exclusive. As a result, Gemini will be used to "power future Apple Intelligence features, including a more personalized Siri."[2] Weeks

---

[1] Meanwhile, Elon Musk touted xAI's skyrocketing performance. Three days before the complaint, Musk tweeted: "Grok is evolving much faster than any other AI. If this rate of progress continues, @xAI will outpace other AI companies by a significant margin." Elon Musk (@elonmusk), X (Aug. 22, 2025 7:31 AM), https://x.com/elonmusk/status/1958854561579638960. And between February 2025 and January 2026, Musk tweeted eight separate times that Grok was "#1." *See, e.g.*, Elon Musk (@elonmusk), X (Oct. 2, 2025 3:08 AM), https://x.com/elonmusk/status/1973646323648962921.

[2] *Joint statement from Google and Apple* (Jan. 12, 2026), https://blog.google/company-news/inside-google/company-announcements/joint-statement-google-apple/.

later, xAI and SpaceX—another company that Musk controls and runs—announced a merger that values xAI at $250 billion and unlocks new funding and training data for xAI.[3]

On March 13, plaintiffs served expert reports in this case. ██████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████  ██████████████████  ██████████████████

████████████████████████████████████████████████████████

████████████████████████

OpenAI served discovery requests about these issues, and it has repeatedly pressed plaintiffs to search all of Musk's accounts.  OpenAI and plaintiffs met and conferred multiple times about the requests, yet plaintiffs have continued to rebuff OpenAI, and none of the discovery that OpenAI seeks has been forthcoming.[4]

**ARGUMENT**

**I.    The Court should order plaintiffs to produce the requested documents.**

Under Federal Rule of Civil Procedure 26(b)(1), parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  "At the discovery stage, relevancy is broadly construed, and information is considered relevant if it 'encompass[es] any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *United States* v.

---

[3]  *xAI Joins SpaceX to Accelerate Humanity's Future* (Feb. 2, 2026), https://www.spacex.com/updates.

[4] The parties' discovery correspondence, which memorializes numerous meet and confers between early February and early April 2026, is attached at Appendix Tab 3 at A108-281.

4

*Planned Parenthood Fed'n of Am., Inc.*, 2022 WL 19010334, at \*2 (N.D. Tex. Aug. 25, 2022) (citation omitted).

> **A.    Investor communications and documents concerning valuation, projections, and progress in developing Grok must be produced.**

In its Second and Third Requests for Production, issued in December 2025 and January 2026, OpenAI asked plaintiffs to produce documents concerning xAI's "funding, investment, and financing"; documents that "X or xAI has provided or contemplated providing to any investor [or] prospective investor"; documents concerning "capital raises by X or xAI"; and documents concerning "valuations of X, xAI, or Grok," "actual or projected profits," and other financial metrics.  App'x Tab 4 at A290 (Request No. 4); App'x Tab 5 at A305-05 (Request Nos. 1-4, 7); *see also* App'x Tab 6 at A318; App'x Tab 7 at A333-36, A338-39 (Plaintiffs' Responses & Objections).  In early February, after SpaceX and xAI agreed to merge, OpenAI issued its Fourth Requests for Production, which added requests for investor communications and valuation documents relating to that transaction.  *See* App'x Tab 8 at A356 (Request Nos. 2, 5); *see also* App'x Tab 9 at A368, A370-71 (Plaintiffs' Responses & Objections).

These requests directly relate to plaintiffs' claimed anticompetitive conduct and damages, which include an alleged deprivation of access to investment and a decrease in xAI's valuation because of the Apple–OpenAI integration.  Such matters have been put at issue not only by plaintiffs' allegations, but by their experts. ████

████

████

██ ████

████

████

5

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████ Plaintiffs cannot put forward damages opinions that rely on the July 2025 and January 2026 capital raises and the valuation of xAI while blocking discovery into those matters, including a merger that valued xAI at $250 billion just weeks after the January 2026 capital raise.

Likewise, plaintiffs should not be allowed to advance a claim that Grok is being foreclosed from the alleged market for generative AI chatbots while simultaneously blocking discovery into xAI's representations to investors that Grok is excelling.  The limited materials that OpenAI has received from third-party investors demonstrate the importance of such documents:

- While xAI has alleged that Grok has been prevented "from fairly competing with ChatGPT," Dkt. 1 ¶ 14, ████████████████████████████

  ████████████████████████████████████████████

  ███████████████████████████████████

- While xAI has alleged that "Plaintiffs have been foreclosed from a significant number of generative AI chatbot prompts . . . and thwarted in their abilities to innovate and improve the quality and competitiveness of their offerings," Dkt. 1 ¶ 13, ████████████████████████████

  ████  ██████  ███  ██████  ██████  ████████  █████ █  █████████

  ████████████████████████████

- And while xAI has alleged the Apple–OpenAI integration has "substantially reduce[d] the value of xAI's business relative to the but-for world without

6

Defendants' anticompetitive conduct," Dkt. 1 ¶ 189, ███████████████

███████████████████████████████████████████

███████████████████████

██████████████████████████████████████████████

███████████████████████

Similarly, while plaintiffs have produced a limited number of financial documents, such documents are incomplete and span only a small portion of the relevant time frame. Plaintiffs also are now taking the position that they can limit production of financial information to part of 2025, even though their damages expert relies on valuations that span into 2026. OpenAI is entitled to the targeted discovery it has requested through early 2026.[5]

OpenAI, therefore, requests that the Court order plaintiffs to search for and produce:

1. Communications with investors or potential investors relating to xAI's July 2025 and January 2026 capital raises;

2. Communications with investors or potential investors relating to Grok or the valuation of xAI in connection with the xAI and SpaceX merger; and

3. Documents concerning valuations or projections for xAI.

Plaintiffs can produce these documents without significant burden or further delay. Investor communications and financial records are documents that companies like xAI should maintain in accessible sources. When xAI asked third parties to invest tens of billions of dollars or entered into a merger worth hundreds of billions of dollars, it would have created formal

---

[5] Although the parties agreed to a "default" date cutoff of August 25, 2025, they were clear that this period could be extended for specific requests, and the parties have done so for other issues. *See* App'x Tab 13 at A477 (Email from S. Eisman (Mar. 17, 2026)). Given the express reliance on capital raises and valuations into 2026 by plaintiffs' damages expert, there is no basis for invoking this default cutoff as to such documents.

presentations, valuation documents, projections, and data rooms. Plaintiffs know where these documents are and must conduct a reasonable search that will get them to OpenAI promptly.

**B.    Documents regarding the Google–Apple agreement must be produced.**

On January 31, 2026, OpenAI served its Third Set of Requests for Production, which included a request for documents regarding the Google–Apple Agreement. App'x Tab 5 at A305 (Request No. 10); *see also* App'x Tab 7 at A341-42 (Plaintiffs' Responses & Objections). Plaintiffs have refused to produce documents in response to this request, even though the Google–Apple agreement is plainly relevant to whether the Apple–OpenAI Agreement is exclusive. The central premise of plaintiffs' lawsuit is that Apple and OpenAI entered into and maintain an "exclusive arrangement [that] has made ChatGPT the only generative AI chatbot integrated into the iPhone." Dkt. 1 ¶¶ 9, 11. But after the Google–Apple announcement, there are two AI providers for the iPhone. The Google–Apple Agreement establishes that OpenAI's earlier deal did not exclude other AI companies from partnering with Apple on Apple Intelligence.

It is clear that the agreement did draw plaintiffs' attention and that they considered its impact on the competitive landscape in the market. Elon Musk himself posted immediately after the announcement that it showed *Google's* market power,[6] and plaintiffs sought discovery from both OpenAI and Apple about the agreement. If plaintiffs nevertheless intend to argue that this agreement is irrelevant or does not contradict their position that the Apple–OpenAI agreement is "effectively" exclusive, they cannot block discovery into xAI's internal reaction to the Google–Apple agreement. The Court should compel plaintiffs to conduct a reasonable search and produce documents concerning the Google–Apple agreement. Again, any burden of such a search should

---

[6] Musk wrote that the agreement "seems like an unreasonable concentration of power for Google, given that the[y] also have Android and Chrome." Elon Musk (@elonmusk), X (Jan. 12, 2026 1:47 PM), https://x.com/elonmusk/status/2010785742427979894.

be minimal, as plaintiffs' communications about the agreement are likely to be found in a limited time period after the agreement's public announcement.

### C.    Documents regarding plaintiffs' Super App initiatives must be produced.

OpenAI's Third Set of Requests for Production also included a request for "product roadmaps, business plans, launch schedules, and internal timelines for the development" of a "Super App." App'x Tab 5 at A305 (Request No. 9); *see also* App'x Tab 7 at A340-41 (Plaintiffs' Responses & Objections). Plaintiffs have refused to produce documents in response to this request, even though their complaint alleges that defendants' "conduct harms competition by inhibiting the development of super apps" and that, "if not for Defendants' agreement, super apps would [have] emerge[d]" as a competitor to smartphones. Dkt. 1 at ¶¶ 176, 188. ██████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████ If plaintiffs actually were poised to develop a Super App, they would have documents like business plans, timelines, and launch schedules to allow OpenAI to test that assertion. The Court should order plaintiffs to conduct a reasonable search and produce any such documents. And if the search finds no such documents, contrary to the claims of plaintiffs and their experts, OpenAI is also entitled to know that fact.

### D.    Plaintiffs must conduct a competent search of Elon Musk's custodial documents and produce relevant and responsive materials.

Plaintiffs' production of Musk's custodial documents is clearly deficient. Plaintiffs have produced ***only seven*** documents authored by Musk—███████████████████████ ██████████ over a nearly three-year period. And despite claiming that they are "substantially

9

complete" with their production, plaintiffs have failed to produce responsive documents from certain of Musk's email accounts or any documents at all from his messaging apps.

*Tesla and SpaceX email accounts*.  Musk maintains email accounts at Tesla and SpaceX,

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████

Plaintiffs have asserted that Tesla and SpaceX documents are categorically outside their possession, custody, or control.  App'x Tab 3M at A266.  But the issue here is not whether plaintiffs need to search Tesla and SpaceX documents generally.  It is specifically whether plaintiffs should search the email accounts and other documents where *their own CEO*, Musk, chose to conduct X and xAI business.

When a CEO uses non-company email accounts to conduct company business, "such accounts are under [company] control."  *Ultravision Techs., LLC* v. *Govision, LLC*, 2020 WL 10692709, at *2 (E.D. Tex. Aug. 28, 2020).  Here, Musk's Tesla and SpaceX emails and other custodial files are in plaintiffs' custody and control, as Musk runs all these companies and could easily cause them to cooperate in discovery.  In fact, another court has already made this finding: "Musk has control over his business email accounts at these entities because, as his counsel agreed at the hearing, he is a high-level executive at each of these entities."  *Musk* v. *Altman*, 2025 WL 2348769, at *1 (N.D. Cal. July 1, 2025).

As to Musk's SpaceX accounts, SpaceX is now reported to be the parent of xAI.  "[J]udges in this circuit regularly require parties to produce documents in the possession of a corporate

10

relative (e.g., parent, subsidiary or sibling/affiliate) when the party has control over the corporate relative's documents for purposes of Rule 34." *Goodyear Tire & Rubber Co.* v. *CEVA Logistics Sing., Ltd.*, 348 F.R.D. 54, 81 (E.D. La. 2024).

Plaintiffs have objected that OpenAI issued subpoenas to Tesla and SpaceX seeking relevant documents, including those located in Musk's email accounts, and should continue to pursue those companies as third parties. But both entities have continued to delay, and neither has produced any documents to date. Musk could give plaintiffs the documents to produce, or he could cause the companies themselves to immediately produce his documents responsive to the subpoenas. OpenAI has seen no indication that Musk or plaintiffs have made any such attempts to facilitate necessary discovery. Plaintiffs' CEO controls these documents, and the Court can and should compel plaintiffs to obtain them in response to OpenAI's requests.

***Messaging applications***. Musk also uses several messaging applications, including text, Signal, and XChat, to communicate about relevant business matters. ██████████████



██████████████████████████████████

██████████████████████████████████

████████████████████████████[8] But plaintiffs have failed to produce documents from any of these sources, for any custodian, despite plaintiffs' representation that they were searching them. The Court should compel plaintiffs to produce responsive documents from these

---

[7] ████████████████████████████████████████ Plaintiffs have not produced these text messages, or any other text messages.

[8] Public reports also indicate that Musk communicates through XChat, the company's internal messaging app. *See War rooms, group chats, and video games: Inside Elon Musk's AI startup*, BUSINESS INSIDER (Feb. 20, 2026), https://www.businessinsider.com/elon-musk-xai-leadership-style-big-year-grok-ipo-spacex-2026-2 ("Though he's heavily involved in the day-to-day, Musk does not use the company's Slack workspace, several people said. Instead, he communicates frequently through X, including in a direct message group of more than 300 engineers.").

messaging sources, including any such messages on any of Musk's phones or other electronic devices, wherever he maintains them. *See, e.g., Hunters Run Gun Civ. Action No. Club, LLC* v. *Baker*, 2019 WL 507479, at *5 (M.D. La. Feb. 7, 2019) (ordering the production of responsive text messages).

**II.     Expedited briefing is necessary to resolve these issues.**

Given the expedited trial schedule and defendants' impending expert report deadline of April 13, 2026, expedited briefing is warranted.[9]

**CONCLUSION**

For the foregoing reasons, OpenAI's motion to compel should be granted, and the Court should order expedited briefing.

---

[9] If plaintiffs fail to produce the requested documents in a timely manner, and OpenAI's experts are not able to incorporate this information in their expert reports, OpenAI may seek permission to file a sur-reply to plaintiffs' expert reports or move to exclude some or all of those reports at the appropriate time.

Dated: April 3, 2026

William Savitt
WDSavitt@wlrk.com
N.D. Tex. Bar No. 2900058NY
Kevin S. Schwartz
KSchwartz@wlrk.com
N.D. Tex. Bar No. 4564241NY
Graham W. Meli (admitted *pro hac vice*)
GWMeli@wlrk.com
Andrew J.H. Cheung (admitted *pro hac vice*)
AJHCheung@wlrk.com
Stephen D. Levandoski (admitted *pro hac vice*)
SDLevandoski@wlrk.com
**WACHTELL, LIPTON,**
**ROSEN & KATZ**
51 West 52nd Street
New York, NY  10019
(212) 403-1000 (Telephone)
(212) 403-2000 (Facsimile)

Respectfully submitted,

/s/    *Ralph H. Duggins*

Ralph H. Duggins
rduggins@canteyhanger.com
Texas Bar No. 06183700
Scott Fredricks
sfredricks@canteyhanger.com
Texas Bar No. 24012657
Philip Vickers
pvickers@canteyhanger.com
Texas Bar No. 24051699
Kate Hancock
khancock@canteyhanger.com
Texas Bar No. 24106048
**CANTEY HANGER LLP**
600 West 6th Street, Suite 300
Fort Worth, TX  76102
(817) 877-2800 (Telephone)
(817) 877-2807 (Facsimile)

Michael K. Hurst
mhurst@lynnllp.com
Texas Bar No. 10316310
Chris W. Patton
cpatton@lynnllp.com
Texas Bar No. 24083634
Andy Kim
akim@lynnllp.com
Texas Bar No. 24136638
**LYNN PINKER HURST &**
**SCHWEGMANN LLP**
2100 Ross Avenue, Suite 2700
Dallas, TX  75201
(214) 981-3800 (Telephone)
(214) 981-3839 (Facsimile)

*Attorneys for Defendants OpenAI Foundation*
*(f/k/a OpenAI, Inc.), OpenAI, L.L.C., and*
*OpenAI OpCo, LLC*

13

## CERTIFICATE OF SERVICE

I certify that on April 3, 2026, I served the foregoing document electronically in accordance with the Federal Rules of Civil Procedure and the Local Civil Rules and filing procedures of this Court.

*/s/ Kate Hancock*
Kate Hancock