**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| X CORP. and X.AI LLC,<br><br>    Plaintiffs,<br><br>    v.<br><br> APPLE  INC.;  OPENAI,  INC.;  OPENAI, L.L.C.; and OPENAI OPCO, LLC,<br><br>    Defendants. | **Civil Action No. 4:25-cv-00914-P** |

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL
DISCOVERY FROM THE OPENAI DEFENDANTS AND FOR EXPEDITED BRIEFING**

Bradley Justus
AXINN, VELTROP & HARKRIDER LLP
1901 L Street NW
Washington, DC 20036

Noah Schottenstein
STONE | HILTON PLLC
301 Commerce St., Suite 2360
Fort Worth, TX 76102

Charles W. Fillmore
BROWN PRUITT WAMBSGANSS
DEAN FORMAN & MOORE, P.C.
201 Main Street, Suite 700
Fort Worth, TX 76102

Craig M. Reiser
Scott A. Eisman
Eva Yung
Christopher Erickson
AXINN, VELTROP & HARKRIDER LLP
630 Fifth Avenue, 33rd Floor
New York, NY 10111

Judd E. Stone II
Christopher D. Hilton
STONE | HILTON PLLC
600 Congress Ave., Ste. 2350
Austin, TX 78701

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................1

BACKGROUND ...........................................................................................................4

ARGUMENT................................................................................................................8

    I. The Court Should Order OpenAI To Cure Its Discovery Deficiencies...........................8

        A. OpenAI Should Produce Responsive Google Docs...........................................9

        B. OpenAI Should Produce Documents About Its Valuation...............................11

        C. OpenAI Should Produce Documents
        Concerning Its Financial Projections.....................................................................12

        D. OpenAI Should Produce Data On ChatGPT Usage Data By Country
        If OpenAI Will Not Stipulate To Plaintiffs' Proposed Geographic Market ..........13

        E. OpenAI Should Produce Documents Concerning
        Its Usage of X To Train Its Models ......................................................................15

        F. OpenAI Should Produce Documents
        Without "Competitive Sensitivity" Redactions ....................................................17

    II. The Court Should Order Expedited Briefing ...............................................................18

CONCLUSION............................................................................................................18

## TABLE OF AUTHORITIES

**Cases**                                                                                                **Page(s)**

*Apani Southwest, Inc. v. Coca-Cola Enterprises, Inc.*,
  300 F.3d 620 (5th Cir. 2002) ...................................................................................14

*BLST Northstar, LLC v. Atalaya Cap. Mgmt. LP*,
  No. 24-MC-66 (GHW) (RWL), 2024 WL 2279195 (S.D.N.Y. Mar. 12, 2024)......................17

*BNI Franchising, LLC v. Network for Action Int'l, LLC*,
  No. H-24-3126, 2026 WL 818331 (S.D. Tex. Mar. 24, 2026) ................................................12

*Brown Shoe Co. v. United States*,
  370 U.S. 294 (1962).................................................................................................14

*Entergy Gulf States La., L.L.C. v. La. Generating, L.L.C.*,
  No. No. 14-385-SDD-RLB, 2021 WL 24686 (M.D. La. Jan. 4, 2021) ...................................16

*Heller v. City of Dallas*,
  303 F.R.D. 466 (N.D. Tex. 2014)...............................................................................13

*King v. Univ. Healthcare Sys., L.C.*,
  Civ. A. No. 08-1060, 2008 WL 11353694 (E.D. La. Oct. 31, 2008) ......................................15

*Marlow LLC v. Bellsouth Telecomms., Inc.*,
  No. 2:10CV135-KS-MTP, 2011 WL 61176 (S.D. Miss. Jan. 7, 2011)...................................15

*Pavillion Bank v. OneBeacon Am. Ins. Co.*,
  No. 3:12-CV-05211-G-BK, 2013 WL 12126258 (N.D. Tex. Nov. 13, 2013) ........................17

*Red Wolf Energy Trading, LLC v. Bia Cap. Mgmt., LLC*,
  626 F. Supp. 3d 478 (D. Mass. 2022) ........................................................................9

*Samsung Elecs. Am. Inc. v. Chung*,
  325 F.R.D. 578 (N.D. Tex. 2017)................................................................................8

*Tampa Elec. Co. v. Nashville Coal Co.*,
  365 U.S. 320 (1961)...................................................................................................13

*United States v. E.I. du Pont de Nemours & Co.*,
  351 U.S. 377 (1956)...................................................................................................12

*United States v. Google LLC*,
  747 F. Supp. 3d 1 (D.D.C. 2024).................................................................................12

*United States v. Planned Parenthood Fed'n of Am.*,
  No. 2:21-CV-022-Z, 2022 WL 22861006 (N.D. Tex. Nov. 8, 2022)..............................9, 10

*United States v. Rockford Memorial Corp.*,
    717 F. Supp. 1251 (N.D. Ill. 1989) ....................................................................................14

*In re Xyrem (Sodium Oxybate) Antitrust Litig.*,
    555 F. Supp. 3d 829 (N.D. Cal. 2021) ...............................................................................11

**Other Authorities**

Fed. R. Civ. P. 26(b)(1)...........................................................................................................9

Fed. R. Civ. P. 34(a)(1)(A) .....................................................................................................9

iii

## PRELIMINARY STATEMENT

As part of Apple and OpenAI's scheme to lock up the markets for smartphones and generative AI chatbots, OpenAI (a generative AI chatbot monopolist that distributes ChatGPT) entered into an unlawful, exclusive agreement with Apple (a smartphone monopolist that distributes the iPhone) to make ChatGPT the sole generative AI chatbot natively integrated with Apple Intelligence.[1] As a result of this arrangement, other generative AI chatbots—including xAI's Grok—have been locked out of a key distribution channel and deprived of access to Apple user prompts used to train and enhance generative AI chatbot models. Plaintiffs bring this motion because OpenAI has persistently evaded its discovery obligations and refused to produce relevant documents in this case.

First, the Court should compel OpenAI to search for documents created or stored on Google Drive (known as "Google Docs") using the parties' agreed-upon search terms and produce documents responsive to Plaintiffs' discovery requests. OpenAI's production includes highly relevant automated emails showing comments to Google Docs, but not the underlying Google Docs themselves. Those automated emails reveal that OpenAI's custodians authored, edited, or commented on many Google Docs that OpenAI has failed—and refused—to produce. When Plaintiffs raised concerns about the absence of Google Docs in OpenAI's production, OpenAI acknowledged it has not searched Google Docs as a custodial source and agreed to produce such documents only on a case-by-case basis. This allows OpenAI to exclude highly relevant documents from production. The sole Google Docs document that OpenAI produced in response to an ad hoc

---

[1] "X" refers to X Corp. and "xAI" refers to X.AI LLC. X and xAI are referred to collectively as "Plaintiffs." "Apple" refers to Apple Inc., and "OpenAI" refers to OpenAI Foundation (f/k/a OpenAI, Inc.); OpenAI, L.L.C.; and OpenAI OpCo, LLC. Apple and OpenAI are referred to collectively as "Defendants. "App'x Tab __" refers to the tab in the accompanying Appendix.

request is illustrative. That document—called ███████████████████████████████████

████████████████████████████████████████████████████████████████████████████ And

given that the document was authored by a custodian and contained agreed-upon search terms,

Plaintiffs should not have had to specifically request that it be produced when they happened upon

evidence it existed. OpenAI should be ordered to search Google Docs using the agreed-upon search

terms for other responsive documents that OpenAI has improperly withheld.

Second, the Court should compel OpenAI to produce all studies, reports, or analyses,

valuing OpenAI. As Plaintiffs have repeatedly explained to OpenAI, changes in OpenAI's

valuation are probative of the impact of Defendants' anticompetitive conduct and the

corresponding harm to Plaintiffs. For instance, any increase in OpenAI's valuation after it entered

into its unlawful exclusive agreement with Apple is probative of the value OpenAI realized from

that unlawful conduct—and, at the same time, the value Plaintiffs were deprived of from not

having been integrated into Apple Intelligence and promoted in Apple's App Store like ChatGPT.

That value is relevant to calculating Plaintiffs' damages. Despite acknowledging the relevance of

valuations for damages by moving to compel *Plaintiffs* to produce xAI's valuations (which

Plaintiffs offered to produce if OpenAI produced such documents in response to Plaintiffs'

requests), OpenAI has refused to produce these documents.

Third, the Court should compel OpenAI to produce its financial projections through 2030.

These projections will show OpenAI's understanding of the impact of its unlawful conduct, as well

as its understanding of its own pricing power—an element of Plaintiffs' monopolization claims.

For example, if OpenAI projected that it could continue to raise prices despite stable or decreasing

costs, that would show that OpenAI believed it had the ability to set supra-competitive prices.

Here, too, OpenAI has acknowledged the relevance of this information by filing a motion demanding that Plaintiffs produce it while refusing to produce the very same type of information.

Fourth, the Court should compel OpenAI to produce ChatGPT usage data by country. Plaintiffs need this data to prove the geographic market for generative AI chatbots they have defined. Plaintiffs offered to allow OpenAI to moot the issue by stipulating that it will not challenge Plaintiffs' proposed geographic market. OpenAI refused. Plaintiffs therefore need ChatGPT usage data by country.

Fifth, the Court should compel OpenAI to produce documents about its use of X data to train its models and respond to user prompts. OpenAI has admitted that these topics are probative of competition in the generative AI chatbot market, claiming that Defendants' unlawful arrangement has not substantially foreclosed Plaintiffs from training data because Grok allegedly has "asymmetrical" access to its own training data through its integration with X. But if OpenAI also uses X's data to train its models, then Grok's access is not asymmetrical. Having put this topic at issue, OpenAI cannot now refuse to produce responsive documents.

Finally, the Court should require OpenAI to produce unredacted versions of the documents it has redacted on the basis of competitive sensitivity, including its ███████████ No rule, case law, or stipulation between the parties allows OpenAI to redact and withhold information on the grounds of competitive sensitivity. OpenAI can instead protect sensitive materials by designating them as "Highly Confidential – Outside Counsels' Eyes Only" under the parties' Confidentiality Agreement.

Plaintiffs have made their best efforts to resolve these disputes without the Court's intervention. Given the upcoming close of discovery and the need to have these documents in time

for depositions that are set to begin *this month*, Plaintiffs are left with no choice but to file this Motion.

## BACKGROUND

Discovery began on October 10, 2025, and is set to close on May 22, 2026. *See* Dkt. No. 61. To ensure that Plaintiffs would have sufficient information to serve their initial expert designations and reports by March 13, the parties agreed that Defendants would substantially complete their document productions by February 27. Dkt. No. 131. But OpenAI (which has produced 7,475 documents, compared with the 32,116 documents Plaintiffs have produced) has not substantially completed its productions. It has either refused to produce or failed to produce several key categories of documents:

***Google Docs.*** OpenAI's productions include hundreds of automated notifications from Google Docs from the email domain comments-noreply@docs.google.com. App'x Tab 1, at App. 15. These automated emails notify users that someone has commented on a Google Doc and show the substance of the comment and the title of the document—but do not contain the underlying document itself. *Id.* It is clear even from the automated emails that many of the unproduced Google Docs are responsive to Plaintiffs' requests for production. For instance, Plaintiffs identified an automated email from Google Docs ███████████████████████████ ███████████████████████████ App'x Tab 1 at App. 15; App'x Tab 2, at App. 19, a document that OpenAI had failed to produce, App'x Tab 1, at App. 15. Plaintiffs raised this deficiency with OpenAI on March 2, expressing concern that OpenAI's failure to produce this document suggested that OpenAI failed to produce many other responsive Google Docs. App'x Tab 1, at App. 15. In response, OpenAI confirmed that it did not search Google Docs as part of its searches of custodial documents. App'x Tab 3, at App. 28. And while it produced that sole

4

document and has indicated it *may* be willing to produce others on an ad hoc basis, it has refused to search these documents as part of its search for responsive documents—an untenable position given that Plaintiffs can request Google Docs only on an ad hoc basis if an email describing the documents' existence happened to be captured the parties' agreed-upon search terms.[2]

 ***Valuations of OpenAI.*** In December 2025, Plaintiffs requested that OpenAI produce valuations of OpenAI or ChatGPT "conducted by OpenAI or by a third party" (the "Valuation Request") to develop evidence reflecting the impact of OpenAI's anticompetitive conduct. App'x Tab 6, at App. 121. OpenAI has refused to produce documents, claiming that valuations of OpenAI are overbroad because OpenAI contains business lines other than ChatGPT and lacks standalone valuations of ChatGPT. App'x Tab 3, at App. 26. Plaintiffs have repeatedly explained that valuations of OpenAI are nevertheless relevant and that Plaintiffs' experts should be allowed to opine on the relationship between fluctuations in ChatGPT's value and its misconduct. App'x Tab 3, at App. 44-45. Plaintiffs also highlighted that OpenAI has moved to compel Plaintiffs to produce "[d]ocuments concerning valuations . . . for xAI," including "communications with investors" about xAI's valuation. Dkt. No. 173 at 10.  But OpenAI has stood on its objections, and responded to Plaintiffs' offer to produce the documents that OpenAI has now sought in its motion to compel by suggesting that Plaintiffs file their own motion to compel.  App'x Tab 7, at App. 125.

---

[2] For example, the ▮▮▮▮▮▮▮▮▮▮▮ document was authored by an OpenAI custodian (Nick Turley), would have been captured by the parties' agreed-upon search terms, and is responsive to Plaintiffs' requests for documents. *See generally* App'x Tab 5, at App. 108; App'x Tab 26, at App. 254. It discusses ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ App'x Tab 4, at App. 79. And it states that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ *Id.* at App. 84. Plaintiffs only learned of this document incidentally because an email from the domain comments-noreply@docs.google.com indicated it existed. App'x Tab 2, at App. 19. Yet OpenAI inexplicably did not produce it.

*OpenAI's Financial Projections.* In December 2025, Plaintiffs requested that OpenAI produce actual and projected gross revenues, net revenues, profits, contribution margins, cash flows, operating costs, and fixed costs on a monthly basis (the "Projections Request"). App'x Tab 6, at App. 120. Such documents are probative of not only the impact of OpenAI's unlawful conduct, but also its ability to raise its prices to supra-competitive levels, an element of monopoly power. App'x Tab 3, at App. 67. Citing claims of burden and commercial sensitivity, OpenAI objected to producing projections. *Id.* at App. 26. Plaintiffs proposed addressing OpenAI's concerns by narrowing the request to seek only the limited set of projections that has been shared with OpenAI's board of directors, executives, or investors. *Id.* at App. 67. OpenAI refused that offer and has stood on its objection, *id.* at App. 54, even after Plaintiffs pointed out that OpenAI has sought (and now moved to compel Plaintiffs to produce) "projected profits, revenues, costs, expenses, capital expenditures, asset accounting impairments, liabilities, and losses of or attributable to X, xAI, or Grok." Dkt. No. 174 at A304.

*ChatGPT Usage Data by Country*. In December 2025, Plaintiffs requested that OpenAI produce "Documents or data sufficient to show the monthly adoption or use of ChatGPT[] by . . . geography (U.S. and globally)" (the "Data-Usage Request"). App'x Tab 6 , at App. 119. OpenAI agreed to produce "documents sufficient to show the monthly use of ChatGPT by (i) geography (U.S. and globally)." App'x Tab 3, at App. 31. Immediately after the February 27 substantial-completion deadline, however, OpenAI's productions revealed that OpenAI had produced only data for the United States and aggregated rest-of-world data, rather than data "by geography" (i.e., by country) for the rest of the world. App'x Tab 8, at App. 131.

OpenAI has disputed its need to produce by-country data, and claims such data is unnecessary because Plaintiffs allege only two possible geographic markets for generative AI

6

chatbots: the United States and worldwide. App'x Tab 3, at App. 26; *see* Compl. ¶185. Citing case law, Plaintiffs explained that by-country data was still relevant unless OpenAI intended to concede Plaintiffs' geographic market. App'x Tab 3, at App. 31. OpenAI has refused to stipulate to Plaintiffs' geographic market or produce by-country data.

*X Data Usage.* Plaintiffs allege that Defendants' anticompetitive conduct has "foreclosed" Grok "from a significant number of generative AI chatbot prompts" that ChatGPT receives through its integration into Apple Intelligence. Compl. ¶ 13. OpenAI has tried to minimize that harm by claiming that Grok has access to its own unique data, including data from posts on X. Dkt. No. 41 at 9. To rebut that defense, Plaintiffs have sought documents about OpenAI's use of X data for training OpenAI models, and documents about "the inclusion of links to or the contents of X posts in responses or outputs" (the "Training and Output Requests"), App'x Tab 9, at App. 148-49, to show that OpenAI has access to data from the X platform and other sources of Plaintiffs' data, and has used those sources to train its models. OpenAI has refused to produce documents, claiming, without substantiation, that it does not engage "in *wholesale* training on data from X or Grok." App'x Tab 3, at App. 45 (emphasis added). All that OpenAI has offered to produce—to the extent they even exist—are its official policies on its use of sources such as X, Grok, and Grokipedia. App'x Tab 3, at App. 34.

*Redactions for Competitive Sensitivity.* OpenAI has redacted two important documents— not on the basis of attorney-client privilege, the work-product doctrine, or any other legal privilege or protection—but instead because the documents contain information that OpenAI has unilaterally deemed too sensitive to produce. One document, titled ███████████ ████████████████████ details ██████████████████████████████. App'x Tab 10, at App. 153. OpenAI also redacted portions of a Slack message ████████████

7

███████████████████████████ writing only "Strategy" (and not "Privilege") in the redaction box. App'x Tab 11, at App. 155-56.

Plaintiffs raised concerns about OpenAI's non-privilege redactions with OpenAI, explaining that there is no basis for such redactions and that such redactions are also not supported by law. OpenAI still refused to produce these documents in unredacted form, claiming only that it is considering whether to lift the redactions. App'x Tab 3, at App. 27.

* * *

Plaintiffs have tried to resolve these disputes without judicial intervention. Plaintiffs have conferred with OpenAI three times since the substantial-completion deadline and exchanged nine emails and letters discussing these disputes. But because OpenAI continues to refuse to avoid production of relevant documents, Plaintiffs now seek relief from the Court.

## ARGUMENT

### I.    The Court Should Order OpenAI To Cure Its Discovery Deficiencies

Plaintiffs are entitled to "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," taking into account "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Samsung Elecs. Am. Inc. v. Chung*, 325 F.R.D. 578, 589 (N.D. Tex. 2017) (quoting Fed. R. Civ. P. 26(b)(1)). The materials Plaintiffs seek are directly relevant to their claims and the defenses Defendants have advanced. OpenAI has baselessly refused to produce these responsive documents. With less than two months until the close of discovery and depositions rapidly approaching, Plaintiffs have no choice but to bring this Motion.

### A.    OpenAI Should Produce Responsive Google Docs

The Court should compel OpenAI to search for and produce all custodial Google Docs responsive to Plaintiffs' discovery requests using the parties' agreed-upon search terms. Under Federal Rules of Civil Procedure 26 and 34, OpenAI was required to search for and identify relevant sources of information and produce all relevant and responsive documents within its possession, custody, or control. *See* Fed. R. Civ. P. 26(b)(1); 34(a)(1)(A). Yet OpenAI has confirmed that it failed to search for relevant Google Docs, treating Google Docs that its own custodians authored, edited, or commented on as being outside those custodians' custodial files. That is improper.

As courts have held, a party's refusal to search for Google Docs that its custodians *helped* create constitutes a "failure to initiate a reasonable process to search for, collect and produce responsive ESI." *See, e.g.*, *United States v. Planned Parenthood Fed'n of Am.*, No. 2:21-CV-022-Z, 2022 WL 22861006, at *2-3 (N.D. Tex. Nov. 8, 2022) (quotation marks omitted); *see also Red Wolf Energy Trading, LLC v. Bia Cap. Mgmt., LLC*, 626 F. Supp. 3d 478, 490-92 (D. Mass. 2022) (explaining that defendants' "failure to disclose the Google Vault documents was not substantially justified"). Here, OpenAI's productions to this point reveal that there are numerous Google Docs with relevant information that its custodians actually prepared. Indeed, based on the automated emails that were incidentally included in OpenAI's production, Plaintiffs have identified twenty Google Docs that OpenAI has failed to produce that appear to be from the Google Docs files of agreed-upon custodians.[3] But because OpenAI did not search Google Docs, Plaintiffs know about these materials only because they were referenced in other documents that OpenAI produced.

---

[3] These documents, which include automated emails containing snippets of text from the Google Docs and Slack messages with summaries of linked Google Docs, make clear that OpenAI has been withholding responsive Google Docs. *See, e.g.*, App'x Tab 12, at App. 158 █████

OpenAI tries to justify its failure to search for responsive Google Docs by relying on the parties' Production and ESI Protocol. App'x Tab 3, at App. 28, but its reliance is misplaced. Under that protocol, a party need not produce a document merely because it is linked in another document. App'x Tab 16, at App. 178. But a party must still produce responsive documents that hit on search terms and are in its custodians' files (such as documents that the custodian has authored in part)—whether or not those documents happen to be linked in another responsive document. In other words, nothing in the Production and ESI Protocol, excuses a party from producing a responsive document that is linked in another responsive document—or says anything at all about what qualifies as a custodial source that the parties are obligated to search under Rule 34. Case law is clear there is no basis to OpenAI's position that Google Docs does not qualify as such a source. *See, e.g.*, *Planned Parenthood*, 2022 WL 22861006, at *2-3.

### B.     OpenAI Should Produce Documents About Its Valuation

The Court should compel OpenAI to produce valuations of OpenAI. This information will allow Plaintiffs to prove the impact of Defendants' anticompetitive conduct. For instance, if OpenAI was valued higher after the Apple-ChatGPT Agreement, that would provide a proxy for how investors valued the competitive advantages that OpenAI received under that agreement and would be relevant to Plaintiffs' damages—including by showing the benefit that xAI would have

---

█████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████
███████████████████████████████████████); App'x Tab 13, at App.
161 (OpenAI custodian describing ██████████████████████████
████████████████████); App'x Tab 14, at App. 164 (OpenAI employee describing ████
█████████████████████████████████████████████████); App'x Tab
15, at App. 171-72 (automated email from Google Docs regarding a document titled ███
█████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████
██████████).

received had Grok been integrated into Apple Intelligence. OpenAI's valuation is also probative of its monopoly power. According to OpenAI's own website, OpenAI's valuation has increased *over $500 billion* in the past year, from $300 billion as of March 31, 2025, App'x Tab 17, at App. 189, to $852 billion as of March 31, 2026, App'x Tab 18, at App. 192.  That growth in valuation does not make sense unless OpenAI and its investors understand that ChatGPT's exclusive deal with Apple is cementing OpenAI's dominance of the generative AI chatbot market. As OpenAI itself acknowledges in moving to compel Plaintiffs to provide their own valuations, Plaintiffs' claimed damages rest in part on xAI's value, which would have been greater in the but-for world where Grok was also integrated into Apple Intelligence and promoted (rather than de-preferred) by Apple. *See* Dkt. No.  173 at 5. In analogous circumstances, antitrust plaintiffs rely on changes in defendants' valuations to support their claimed damages. *See In re Xyrem (Sodium Oxybate) Antitrust Litig.*, 555 F. Supp. 3d 829, 856 (N.D. Cal. 2021) (concluding that a company's jump in equity value reflected the high impact of the allegedly anticompetitive agreement). OpenAI's refusal to produce documents on this topic has already limited Plaintiffs' experts from performing such calculations in their opening reports.[4]

OpenAI's objections to producing its valuations are unfounded. First, OpenAI claims that the Valuation Request seeks information that is disproportionate to the needs of the case because it seeks detailed financial information from a private company. App'x Tab 3, at 45. But any concern about producing competitively sensitive information can be addressed under the parties' Confidentiality Agreement, which allows the parties to designate material as "Highly Confidential – Outside Counsels' Eyes Only" if it contains "information that is extremely confidential and/or

---

[4] Plaintiffs' damages expert lacked access to OpenAI's valuations when he wrote his opening report, given OpenAI's refusal to produce them. He could, however, rely on them in supplementing his analysis or rebutting Defendants' experts' opinions on damages.

sensitive in nature." Dkt. No. 108-1 at 13. OpenAI thus has the protections it needs to produce valuations. Second, OpenAI claims that its valuations are irrelevant because it has multiple business lines beyond ChatGPT. App'x Tab 3, at App. 26. But OpenAI has sought xAI's valuation data—which Plaintiffs offered to produce if OpenAI produced its valuations—despite objections that xAI contains business lines beyond Grok. *See* Dkt. No. 173 at 5-11; App'x Tab 19, at App. 202. That alone should be enough to defeat its objection on this point.

### C.    OpenAI Should Produce Documents Concerning Its Financial Projections

The Court should compel OpenAI to produce its financial projections in response to the Projections Request. Not only will projections show the estimated financial impact of OpenAI's anticompetitive conduct, which is relevant to Plaintiffs' damages claims, *see supra* p. 6, but they will also show OpenAI's monopoly power. To prove their monopolization claims against OpenAI, Plaintiffs must establish, among other things, "monopoly power"—"the power to control prices or exclude competition." *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 391 (1956). Plaintiffs can do so by showing that OpenAI "can profitably raise prices substantially above the competitive level." *BNI Franchising, LLC v. Network for Action Int'l, LLC*, No. H-24-3126, 2026 WL 818331, at *15 (S.D. Tex. Mar. 24, 2026) (quoting *United States v. Microsoft Corp.*, 253 F.3d 34, 51 (D.C. Cir. 2001) (en banc)). OpenAI's projections are directly relevant to this element: projections showing that OpenAI can "raise price[s] 'when it is desired to do so' [are] proof of monopoly power." *United States v. Google LLC*, 747 F. Supp. 3d 1, 118 (D.D.C. 2024) (quoting *Am. Tobacco Co. v. United States*, 328 U.S. 781, 811 (1946)).

OpenAI's objection to producing its projections is meritless. OpenAI claims that it would be burdensome to produce these documents because it is constantly updating its projections. App'x Tab 3, at App. 67. But according to *Wall Street Journal* reporting from this week, OpenAI has had

no trouble providing its projected profits, costs, and revenues to investors. App'x Tab 20, at App. 212-16. In any event, Plaintiffs offered to significantly narrow this request's scope by limiting it to projections shared with OpenAI's board of directors, executives, or investors, and gave OpenAI ample time to propose a compromise of its own. App'x Tab 3, at App. 67. OpenAI did not do so. OpenAI cannot be allowed to stand on its threadbare assertion of burden when it has refused every constructive attempt to resolve that issue. *See Heller v. City of Dallas*, 303 F.R.D. 466, 490 (N.D. Tex. 2014) ("A party resisting discovery must show specifically how each . . . document request is overly broad, unduly burdensome, or oppressive."). That is especially true where OpenAI has sought the same information from Plaintiffs, and refused Plaintiffs' proposed compromise that each party would provide reciprocal productions.

**D.    OpenAI Should Produce Data On ChatGPT Usage Data By Country If OpenAI Will Not Stipulate To Plaintiffs' Proposed Geographic Market**

To establish a geographic market, a plaintiff must show that the market is "the region in which the seller operates, and to which the purchaser can practicably turn to for supplies." *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 327 (1961). Here, Plaintiffs have alleged a U.S. market for generative AI chatbots and, alternatively, a worldwide market. *See* Compl. ¶ 185. OpenAI has yet to propose a geographic market but has refused to stipulate that it will not challenge Plaintiffs' defined market. To support their proposed and alternative geographic markets, Plaintiffs have sought through the Data-Usage Request data "by geography" for countries outside the United States. *See supra* p. 6. In producing only U.S. and aggregated rest-of-world data, OpenAI has claimed that it need only provide data for Plaintiffs' proposed and alternative geographic markets. App'x Tab 3, at App. 26.

That is incorrect. In litigating the bounds of the market, parties rely on (and courts consider) data from both within *and outside of* a proposed market to show whether the proposed market

13

represents the "commercial realities of the industry." *Brown Shoe Co. v. United States*, 370 U.S. 294, 336-37 (1962) (quotations marks omitted). For example, in *Apani Southwest, Inc. v. Coca-Cola Enterprises, Inc.*, the Fifth Circuit, considered sales that the defendant had made outside of that geographic market, which were no different from the sales within that market, and thus provided no basis for "restricting the geographic market" as the plaintiff proposed. 300 F.3d 620, 628 (5th Cir. 2002). Similarly, in *United States v. Rockford Memorial Corp.*, the government proposed a geographic market for hospital care composed of certain counties, and the court, in concluding that the government's proposed geographic market was too small, cited data showing that patients from other counties (i.e., outside the proposed geographic market) routinely sought care from defendant-hospitals. 717 F. Supp. 1251, 1278 (N.D. Ill. 1989).

So too here. Because OpenAI has signaled that it will challenge Plaintiffs' geographic market, Plaintiffs need by-country data. Plaintiffs will rely on generative AI chatbot usage data from other countries to show how the commercial realities there differ from those  in the United States.[5]

### E.    OpenAI Should Produce Documents Concerning Its Usage of X To Train Its Models

The Court should compel OpenAI to produce documents about its use of X data to train ChatGPT. OpenAI has put its use of this data squarely at issue. For instance, OpenAI asserted in its motion to dismiss, without citation, that Grok's foreclosure from the prompts ChatGPT receives from the Apple-ChatGPT Integration is insubstantial because Grok has "access to training data from the [X] network's hundreds of millions of users." Dkt. No. 41 at 9; *see also* Dkt. No. 173 at

---

[5] Contrary to OpenAI's assertion, Plaintiffs need not wait and see the geographic market that OpenAI proposes. *See* App'x Tab 3, at App. 26. OpenAI has refused to produce this data for more than a month, and Plaintiffs' experts need it for their rebuttal reports, which they will need to begin drafting on April 13, when Defendants serve their reports, in order to meet the May 11 deadline.

6 (implying that xAI's access to data from X is probative of foreclosure). To support that theory, OpenAI has served requests for production asking Plaintiffs to produce documents about xAI's access to data from other sources, including X. *See*, *e.g.*, App'x Tab 21, at App. 228. OpenAI has justified those requests by explaining that "to the extent that X data is asymmetrically available to xAI but no other generative AI developers, the volume of X data available only to xAI is probative of the competitive dynamics of the generative AI marketplace." App'x Tab 22, at App. 235.

To probe OpenAI's assertions, however flawed, Plaintiffs served the Training and Output Requests. App'x Tab 9, at App. 148-49. These requests would allow Plaintiffs to disprove OpenAI's contention that  Plaintiffs' data "is asymmetrically available to xAI" or is instead available both to Plaintiffs and to OpenAI—a question that OpenAI has said is "probative" of "competitive dynamics of the generative AI marketplace." App'x Tab 22, at App. 235.

Given its own position that this information is relevant, OpenAI's refusal to produce makes little sense. OpenAI claims that it should not be forced to search for responsive information, which it says is only "tangentially related" to the claims and defenses in this case, absent some "indication that there is some widescale attempt to use X or xAI's unique data to train OpenAI's models." App'x Tab 3, at App. 39. That is incorrect. Because OpenAI has (falsely) claimed that Grok has supposedly "asymmetric" access to Plaintiffs' data, Plaintiffs are entitled to rebut that defense. *See Marlow LLC v. Bellsouth Telecomms., Inc.*, No. 2:10CV135-KS-MTP, 2011 WL 61176, at *2 (S.D. Miss. Jan. 7, 2011) (explaining that a party is required to produce "all discoverable materials relating to its affirmative defenses, not just those it might rely on, in response to a request for production of documents"); *King v. Univ. Healthcare Sys., L.C.*, Civ. A. No. 08-1060, 2008 WL 11353694, at *1 (E.D. La. Oct. 31, 2008) ("Inquiry into the facts underlying an opponent's affirmative defenses and the application of law to the facts is within the scope of discovery.").

15

Nor is there any basis for OpenAI's invented standard that Plaintiffs cannot obtain discovery on this topic without first showing "widescale" use of Plaintiffs' data to train OpenAI's models. Plaintiffs have no way to show the scope of OpenAI's use of X materials for training without discovery. That said, Plaintiffs do have reason to believe that OpenAI trains its models on X data: A simple test on ChatGPT strongly suggests that ChatGPT is in fact harvesting data from X such that OpenAI should conduct a custodial search. For example, prompting ChatGPT to provide a recent X post from *New Yorker* journalist Ronan Farrow results in ChatGPT's providing (excluding the *New Yorker* link) a verbatim recitation of the X post in question. App'x Tab 23, at App. 240.[6]

OpenAI's offer to search for "OpenAI's policies" on OpenAI's use of Plaintiffs' data does not adequately respond to Plaintiffs' request. *See* App'x Tab 3, at App. 34. The limited information that Plaintiffs have shows that Plaintiffs' data are used to train OpenAI's models regardless of whether OpenAI's policies allow such training.

Nor can OpenAI resist discovery into this topic—which, again, OpenAI put at issue—by claiming without support that searching for responsive documents would be "invasive and burdensome." App'x Tab 3, at App. 39. If, as OpenAI suggests, its use of Plaintiffs' data is minimal (i.e., not "widescale"), then a custodial search would yield few search term hits and yield a small document review population and a minimal (if any) burden. *See, e.g.*, *Entergy Gulf States La., L.L.C. v. La. Generating, L.L.C.*, No. No. 14-385-SDD-RLB, 2021 WL 24686, at *8 (M.D. La.

---

[6] The source that ChatGPT links to in its output—Techmeme, App'x Tab 24, at App. 243-249—does not contain the quote in question, App'x Tab 25, at App. 251, indicating it is not actually the source used by ChatGPT. ChatGPT returns a link to the X post in question when further prompted. App'x Tab 23, at App. 240.

Jan. 4, 2021) (rejecting argument that additional discovery would be burdensome given defendant's representation that it would yield "additional non-duplicative documents").

**F.    OpenAI Should Produce Documents
Without "Competitive Sensitivity" Redactions**

OpenAI has no basis for redacting its documents due to "competitive sensitivity." Because "[r]edaction is . . . . an alteration of potential evidence, . . . a party should not take it upon him, her or itself to decide unilaterally what context is necessary for the non-redacted part disclosed, and what might be useless to the case." *Pavillion Bank v. OneBeacon Am. Ins. Co.*, No. 3:12-CV-05211-G-BK, 2013 WL 12126258, at *3 (N.D. Tex. Nov. 13, 2013) (cleaned up). To the contrary, "[r]edactions are normally impermissible unless based on a legal privilege," and they are "particularly impermissible where a confidentiality stipulation and order is in place." *BLST Northstar, LLC v. Atalaya Cap. Mgmt. LP*, No. 24-MC-66 (GHW) (RWL), 2024 WL 2279195, at *8 (S.D.N.Y. Mar. 12, 2024) (cleaned up). So it is here. The parties spent months negotiating and finalizing a Confidentiality Agreement, which provides the parties with adequate protective measures to safeguard commercially sensitive information, including a "Highly Confidential Outside Counsels' Eyes Only" tier. Dkt. No. 108-1. There is thus no reason for OpenAI's unilateral decision to redact, for example, whole sections of its ▮▮▮▮▮▮▮▮ because of competitive-sensitivity concerns. OpenAI has said it is considering lifting these unauthorized redactions, but has so far refused to do so. App'x Tab 3, at App. 27. It has provided no basis for that refusal. The Court should therefore compel it to produce the documents at issue without redactions.

**II.    The Court Should Order Expedited Briefing**

Plaintiffs further request that the Court expedite briefing on this motion. The ordinary briefing schedule would allow 21 days for a response brief and 14 days for reply, with briefing concluding after Plaintiffs' May 11 deadline to serve rebuttal reports and shortly before the May

discovery deadline. Absent expedited briefing, Plaintiffs run the risk of the Court determining that Plaintiffs are entitled to the documents they seek but being unable to use those documents in depositions or in their rebuttal expert reports.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court expedite briefing on this motion and compel OpenAI to (1) search for and produce all Google Docs responsive to Plaintiffs' discovery requests; (2) produce by-country data responsive to the Data-Usage Request; (3) produce valuations of OpenAI responsive to the Data Valuation Request; (4) produce its financial projections in response to the Projection Request; (5) produce documents responsive to the Training and Output Requests; and (6) remove redactions for competitive sensitivity, including those identified in App'x Tab 10 at App. 153 and App'x Tab 11 at App. 155-56, from the documents it produced.

Dated: April 9, 2025

Respectfully submitted,

*/s/ Bradley Justus*

Bradley Justus
N.D. Tex. Bar No. 1007988DC
DC Bar No. 1007988
AXINN, VELTROP & HARKRIDER LLP
1901 L Street NW
Washington, DC 20036
T: (202) 912-4700
F: (202) 912-4701
bjustus@axinn.com

Charles W. Fillmore
Texas Bar No. 00785861
BROWN PRUITT WAMBSGANSS
DEAN FORMAN & MOORE, P.C.
201 Main Street, Suite 700
Fort Worth, TX 76102
T: (817) 338-4888
cfillmore@brownpruitt.com

*admitted *pro hac vice*

*/s/ Scott A. Eisman*

Craig M. Reiser
N.D. Tex. Bar No. 4886735NY
NY State Bar No. 4886735
Scott A. Eisman
N.D. Tex. Bar No. 4905287NY
NY State Bar No. 4905287
Eva Yung*
NY State Bar No. 5497300
Christopher Erickson
N.D. Tex. Bar No. 5800628NY
NY State Bar No. 5800628
AXINN, VELTROP & HARKRIDER LLP
630 Fifth Avenue, 33rd Floor
New York, NY 10111
T: (212) 728-2200
F: (212) 728-2201
creiser@axinn.com
seisman@axinn.com
eyung@axinn.com
cerickson@axinn.com

*/s/ Judd E. Stone*

Judd E. Stone II
Texas Bar No. 24076720
Christopher D. Hilton
Texas Bar No. 24087727
STONE | HILTON PLLC
600 Congress Ave., Ste. 2350
Austin, TX 78701
T: (737) 465-3897
judd@stonehilton.com
chris@stonehilton.com

Noah Schottenstein
Texas Bar No. 24100661
STONE | HILTON PLLC
301 Commerce St., Suite 2360
Fort Worth, TX 76102
T: (737) 465-3897
noah@stonehilton.com

*Attorneys for Plaintiffs X Corp. and
X.AI LLC*

19

## CERTIFICATE OF SERVICE

I certify that on April 9, 2026, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF system for filing. A notice of electronic filing was transmitted to all ECF registrants of record.

/s/ Scott A. Eisman
Scott A. Eisman