IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| X CORP. and X.AI LLC,<br><br>    Plaintiffs,<br><br>    v.<br><br>APPLE INC.; OPENAI, INC.; OPENAI, L.L.C.; and OPENAI OPCO, LLC,<br><br>    Defendants. | **Civil Action No. 4:25-cv-00914-P** |

**APPENDIX IN SUPPORT**
**OF PLAINTIFFS' BRIEF IN SUPPORT OF**
**MOTION FOR LEAVE TO TAKE ADDITIONAL PARTY DEPOSITIONS**

Bradley Justus
AXINN, VELTROP & HARKRIDER LLP
1901 L Street NW
Washington, DC 20036

Charles W. Fillmore
BROWN PRUITT WAMBSGANSS
DEAN FORMAN & MOORE, P.C.
201 Main Street, Suite 700
Fort Worth, TX 76102

Craig M. Reiser
Scott A. Eisman
Eva Yung
Christopher Erickson
AXINN, VELTROP & HARKRIDER LLP
630 Fifth Avenue, 33rd Floor
New York, NY 10111

Judd E. Stone II
Christopher D. Hilton
STONE | HILTON PLLC
600 Congress Ave., Ste. 2350
Austin, TX 78701

Noah Schottenstein
STONE | HILTON PLLC
301 Commerce St., Suite 2360
Fort Worth, TX 76102

**APPENDIX IN SUPPORT
OF PLAINTIFFS' BRIEF IN SUPPORT OF
MOTION FOR LEAVE TO TAKE ADDITIONAL PARTY DEPOSITIONS**

| Tab No. | Pages of Brief | Description | Appendix Pages(s) |
|---|---|---|---|
| Tab 1 | 2-3 | Email titled "RE: X Corp. and X.AI LLC v. Apple Inc. et al., No. 4:25-cv-00914-P (N.D. Tex.) \| Notices of Deposition," sent on March 13, 2026 at 7:13 PM ET from Scott A. Eisman to Emily Henn, Henry Liu, Lauren W. Zehmer, et al. | App. 28-49 |
| Tab 2 | 3-4 | Email titled "RE: X Corp. and X.AI LLC v. Apple Inc. et al., No. 4:25-cv-00914-P (N.D. Tex.) \| Notices of Deposition," sent on April 8, 2026 at 10:31 PM ET from Christopher Erickson to Emily Henn, Henry Liu, Lauren W. Zehmer, et al. | App. 50-51 |
| Tab 3 | 6 | Plaintiffs' Notice of Rule 30(b)(6) Deposition of Apple | App. 52-64 |
| Tab 4 | 6 | Email thread titled "███████████████," in which the latest-in-time email was sent on May 16, 2023 at 4:38 UTC from Adrian Perica to Mark Y. Tian, APL-XAI_00049575 | App. 65-69 |
| Tab 5 | 6-7 | Messages from Zoran Martinovic, in which the earliest message was sent on December 20, 2024 at 6:36 UTC, OAI_NDTX_0007231 | App. 70-72 |
| Tab 6 | 7 | Messages between John Giannandrea and Adrian Perica, in which the earliest message was sent on May 3, 2024 at 7:47 AM GMT, APL-XAI_00074080 | App. 73-80 |
| Tab 7 | 7 | Email thread titled ███████████ ███████████████████" in which the latest-in-time email was sent on March 22, 2024 at 18:31 UTC from Brad Lightcap to Adrian Perica, APL-XAI_00015993 | App. 81-84 |

| Tab 8 | 7 | Email thread titled " ████████████," in which the latest-in-time email was sent on May 4, 2024 at 17:29 UTC from Adrian Perica to Ashley Pantuliano, Brad Lightcap, Sam Altman, et al., APL-XAI_00025400 | App. 85-90 |
|---|---|---|---|
| Tab 9 | 7 | Email thread titled " ████████████" in which the latest-in-time email was sent on August 30, 2024 at 6:54 UTC from Tim Cook to Eddy Cue and Adrian Perica, APL-XAI_00080353 | App. 91-92 |
| Tab 10 | 7 | Email thread titled " ████████ ███████████████████ ███████████ in which the latest-in-time email was sent on June 13, 2024 at 19:35 UTC from Tim Cook to Eddy Cue, Craig Federighi, Greg Joswiak, et al., APL-XAI_00051876 | App. 93-95 |
| Tab 11 | 7, 11-13 | Excerpt of Apple's Amended Responses and Objections to Plaintiffs' First Set of Interrogatories | App. 96-101 |
| Tab 12 | 7-8 | Messages between Adrian Perica, Mike Thornberry, and Jennifer Bailey, in which the earliest message was sent on June 19, 2024 at 4:28 AM GMT, APL-XAI_00079854 | App. 102-06 |
| Tab 13 | 8 | Email thread titled " ████████ ███████████ " in which the latest-in-time email was sent on June 18, 2025 at 12:52 UTC from Eddy Cue to Adrian Perica, APL-XAI_00050023 | App. 107-10 |
| Tab 14 | 8 | Excerpt of Apple-Google Agreement, APL-XAI_00026768 | App. 111-12 |
| Tab 15 | 8 | June 10, 2024 NBC Article titled, *Apple WWDC 2024: Apple Intelligence is here with ChatGPT integration* | App. 113-40 |

| Tab 16 | 8 | Email thread titled " ▮▮▮▮▮▮▮ ▮▮▮ " in which the latest-in-time email was sent on January 18, 2024 at 5:46 UTC from Steve Smith to Josh Shaffer, Josh Elman, and Steven Duplinsky, APL-XAI_00006927 | App. 141-43 |
|---|---|---|---|
| Tab 17 | 8 | Messages between Olivier Godement and Tal Broada, in which the earliest message was sent on May 30, 2024 at 6:11 UTC, OAI_NDTX_0030288 | App. 144-47 |
| Tab 18 | 8 | Messages between Alison Harmon, Ben Gaffney, Brad Lightcap, et al., in which the earliest message was sent on August 9, 2024 at 5:29 UTC, OAI_NDTX_0020203 | App. 148-50 |
| Tab 19 | 8, 12 | Messages between Kevin Weil and Olivier Godement, in which the earliest message was sent on July 24, 2024 at 1:39 UTC, OAI_NDTX_0018958 | App. 151-53 |
| Tab 20 | 8 | Messages between Brad Lightcap, Dave Cummings, James Dyett, et al., in which the earliest message was sent on March 13, 2025 at 1:16 UTC, OAI_NDTX_0007333 | App. 154-60 |
| Tab 21 | 8-9 | Email thread titled ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮ " in which the latest-in-time email was sent on August 23, 2024 at 00:42 UTC from Craig Federighi to Steven Duplinsky, APL-XAI_00027508 | App. 161-62 |
| Tab 22 | 8-9 | Email thread titled " ▮▮▮▮▮ ▮▮▮▮ " in which the latest-in-time email was sent on September 3, 2024 at 14:18 UTC from Craig Federighi to Adam Ward, JP Lacerda, Steven Duplinsky, et al., APL-XAI_00070986 | App. 163-64 |
| Tab 23 | 9, 11-13 | Excerpt of Apple's Amended Initial Disclosures | App. 165-70 |

| Tab 24 | 9, 11-12 | Email thread titled "RE: X Corp. and X.AI LLC v. Apple Inc. et al., No. 4:25-cv-00914-P (N.D. Tex.)," in which the latest-in-time email was sent on December 31, 2025 at 7:18 PM ET from Scott A. Eisman to Lauren W. Zehmer | App. 171-88 |
|---|---|---|---|
| Tab 25 | 9 | Email thread titled "▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮" in which the latest-in-time email was sent on June 16, 2023 at 21:12 UTC from Smokey Fontaine to Nyki Bell, APL-XAI_00014993 | App. 189-91 |
| Tab 26 | 9 | Messages between Smokey Fontaine and Nyki Bell, in which the earliest message was sent on March 7, 2023 at 00:06 AM GMT, APL-XAI_00073367 | App. 192-99 |
| Tab 27 | 9-10 | Document titled ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮" dated February 2020, APL-XAI_00056548 | App. 200-25 |
| Tab 28 | 10 | Email thread titled "▮▮▮▮▮▮▮" in which the latest-in-time email was sent on January 24, 2023 at 6:36 UTC from John Giannandrea to Craig Federighi, APL-XAI_00056867 | App. 226-28 |
| Tab 29 | 10 | Email thread titled "▮▮▮," in which the latest-in-time email was sent on March 8, 2025 at 2:34 UTC from John Giannandrea to Adrian Perica and Craig Federighi, APL-XAI_00016094 | App. 229-30 |
| Tab 30 | 10 | Email thread titled "▮▮▮▮▮▮▮▮," in which the latest-in-time email was sent on March 13, 2025 at 18:24 UTC from John Giannandrea to Tim Cook, APL-XAI_00056860 | App. 231-32 |
| Tab 31 | 10 | Messages between Adrian Perica and Johny Srouji, in which the earliest message was sent on May 3, 2024 at 18:24 PM GMT, APL-XAI_00079848 | App. 233-36 |

| Tab 32 | 10 | May 18, 2025 Bloomberg Article titled, *How Apple Intelligence and Siri AI Went So Wrong* | App. 239-59 |
|---|---|---|---|
| Tab 33 | 10 | Email thread titled ███████ ████████████████ in which the latest-in-time email was sent on June 7, 2024 at 18:53 UTC from Alison Harmon to Matt Fischer, APL-XAI_00037822 | App. 260-62 |
| Tab 34 | 10-11 | Email thread titled ████████ ██████████████████" in which the latest-in-time email was sent on September 16, 2024 at 17:33 UTC from Carson Oliver to Tim Cook, Luca Maestri, Philip Schiller, et al., APL-XAI_00037663 | App. 263-66 |
| Tab 35 | 11 | Email thread titled ████████ ███████████ in which the latest-in-time email was sent on October 5, 2024 at 2:34 UTC from Ann Thai to Carson Oliver, APL-XAI_00037448 | App. 267-70 |
| Tab 36 | 11 | Email thread titled "███████████ ██" in which the latest-in-time email was sent on May 13, 2025 at 22:50 UTC from Carson Oliver to Chaitu Aluru, APL-XAI_00037947 | App. 271-73 |
| Tab 37 | 11 | Email thread titled "███████████ ██" in which the latest-in-time email was sent on August 1, 2025 at 21:53 UTC from Chaitu Aluru to Carson Oliver, APL-XAI_00059331 | App. 274-76 |
| Tab 38 | 11 | Email thread titled "██████████ ██" in which the latest-in-time email was sent on August 21, 2025 at 2:34 UTC from Phil Schiller to Craig Federigh and Gregory Joswiak, APL-XAI_00037507 | App. 277-78 |
| Tab 39 | 12 | Email thread titled "█████████████" in which the latest-in-time email was sent on May 22, 2023 at 22:03 UTC from James Dyett to Adrian Perica, Srinivas Narayanan, and Felipe Such, APL-XAI_00024621 | App. 279-82 |

| Tab 40 | 12 | Messages between Brad Lightcap, Denny Jin, James Dyett, et al., in which the earliest message was sent on February 28, 2024 at 12:07 UTC, OAI_NDTX_0007778 | App. 283-84 |
|---|---|---|---|
| Tab 41 | 12 | Email thread titled " ███████████ ███████ " in which the latest-in-time email was sent on April 25, 2024 at 2:26 UTC from Adrian Perica to Sam Altman, Brad Lightcap, Che Chang, et al., OAI_NDTX_0003240 | App. 285-86 |
| Tab 42 | 12 | Email thread titled " ██████████████ ████████████████████████ ████████████████████ " in which the latest-in-time email was sent on May 4, 2024 at 1:13 UTC from Adrian Perica to Sam Altman, APL-XAI_00039519 | App. 287-88 |
| Tab 43 | 12, 14 | Document titled ██████████ █████████████████████ ████ ," dated May 3, 2024, OAI_NDTX_0000345 | App. 289-341 |
| Tab 44 | 12-13 | Email thread titled " ██████████ ████████ " in which the latest-in-time email was sent on November 7, 2024 at 22:03 UTC from Josh Shaffer to Ron Huang, APL-XAI_00020545 | App. 342-44 |
| Tab 45 | 13 | Email thread titled " ███████████ ████████ " in which the latest-in-time email was sent on June 7, 2024 at 22:40 UTC from Josh Shaffer to Olivier Godement, APL-XAI_00090789 | App. 345-49 |
| Tab 46 | 13 | Email thread titled " ███████████ ████████████ " in which the latest-in-time email was sent on December 17, 2024 at 1:12 UTC from Evan Jones to Arun Singh, APL-XAI_00042967 | App. 350-53 |

| Tab 47 | 13 | Email thread titled " ███████████ ████ " in which the latest-in-time email was sent on August 1, 2025 at 18:53 UTC from Arun Singh to Mary Ann Brunson, APL-XAI_00045065 | App. 354-56 |
|---|---|---|---|
| Tab 48 | 13-14 | Email thread titled " ███████████ ██████ " in which the latest-in-time email was sent on February 24, 2024 at 19:34 UTC from Steve Smith to James Dyett, APL-XAI_00006646 | App. 357-59 |
| Tab 49 | 13-14 | Email thread titled " ███████████ █████ " in which the latest-in-time email was sent on December 13, 2023 at 16:54 UTC from Steve Smith to Abi Raman, APL-XAI_00005931 | App. 360-62 |
| Tab 50 | 14 | Plaintiffs' Notice of Rule 30(b)(6) Deposition of OpenAI | App. 363-74 |
| Tab 51 | 14 | Messages between Eddy Cue and Adrian Perica, in which the earliest message was sent on November 6, 2023 at 00:10 AM GMT, APL-XAI_00066019 | App. 375-80 |
| Tab 52 | 14-15 | Email thread titled " ███████████ ████ " in which the latest-in-time email was sent on May 1, 2024 at 1:53 AM from Brad Lightcap to Bret Taylor, OAI_NDTX_0006713 | App. 381-83 |
| Tab 53 | 14-15 | Messages between Adrian Perica and Sam Altman, in which the earliest message was sent on May 3, 2024 at 9:03 AM, OAI_NDTX_0029546 | App. 384-87 |
| Tab 54 | 15, 18 | Messages between Brad Lightcap and Sam Altman, in which the earliest message was sent on May 1, 2024 at 12:33 UTC, OAI_NDTX_0007056 | App. 388-90 |
| Tab 55 | 15 | January 16, 2026 Business Insider Article titled, *ChatGPT is getting ads. Sam Altman once called them a 'last resort.'* | App. 391-96 |

| Tab 56 | 15, 20 | Document titled "████████ ████████" by Olivier Godement, dated June 10, 2024, OAI_NDTX_0007788 | App. 397-401 |
|---|---|---|---|
| Tab 57 | 15 | Messages between Dave Cummings and Ryan Liu, in which the earliest message was sent on February 14, 2025 at 12:02 UTC, OAI_NDTX_0007014 | App. 402-04 |
| Tab 58 | 15 | December 12, 2025 Apple Legal Webpage titled, *ChatGPT Extension & Privacy* | App. 405-08 |
| Tab 59 | 15-16 | Email thread titled "████████ ████████" in which the latest-in-time email was sent on August 27, 2024 at 18:09 UTC from Jessica Zappa to Jon McClintock, APL-XAI_00090779 | App. 409-11 |
| Tab 60 | 16 | Document titled "████████ ██" OAI_NDTX_0008984 | App. 412-25 |
| Tab 61 | 16-17 | Excerpt of OpenAI's Amended Initial Disclosures | App. 426-30 |
| Tab 62 | 16-18 | Excerpt of OpenAI's Amended Responses and Objections to Plaintiffs' First Set of Interrogatories | App. 431-37 |
| Tab 63 | 16 | Messages between Abi Raman and James Dyett, in which the earliest message was sent on November 9, 2023 at 1:05 UTC, OAI_NDTX_0018449 | App. 438-41 |
| Tab 64 | 16 | Email thread titled "████████" in which the latest-in-time email was sent on June 9, 2024 at 9:48 PM from Julie Steele (Google Docs) <comments-noreply@docs.google.com> to James Dyett, OAI_NDTX_0011138 | App. 442-43 |
| Tab 65 | 16 | Messages between Alison Harmon, Brad Lightcap, Chengpeng Mou, et al., in which the earliest message was sent on May 22, 2024 at 5:48 UTC, OAI_NDTX_0010393 | App. 444-46 |

| | | | |
|---|---|---|---|
| Tab 66 | 16 | Messages between James Dyett and Olivier Godement, in which the earliest message was sent on August 16, 2024 at 12:11 UTC, OAI_NDTX_0018888 | App. 447-50 |
| Tab 67 | 16-17 | Messages between Abi Raman and James Dyett, in which the earliest message was sent on November 16, 2023 at 12:21 UTC, OAI_NDTX_0007717 | App. 451-53 |
| Tab 68 | 17 | Messages between Brad Lightcap, Sara Friar, and Zoran Martinovic, in which the earliest message was sent on January 30, 2025 at 6:02 UTC, OAI_NDTX_0007266 | App. 454-55 |
| Tab 69 | 17 | Messages between Kate Rouch and Sarah Friar, in which the earliest message was sent on December 13, 2024 at 5:32 UTC, OAI_NDTX_0018957 | App. 456-57 |
| Tab 70 | 17 | Messages between Adrian Perica, Craig Federighi, Steve Smith, et al., in which the earliest message was sent on July 25, 2024 at 3:45 AM GMT, APL-XAI_00094567 | App. 458-61 |
| Tab 71 | 17 | January 18, 2026 OpenAI Article titled, *A business that scales with the value of intelligence* | App. 462-68 |
| Tab 72 | 17 | Messages between Adam Fry, Adam Perelman, Adrian Spanu, et al., in which the earliest message was sent on May 30, 2024 at 2:50 UTC GMT, OAI_NDTX_0010365 | App. 469-74 |
| Tab 73 | 17 | Document titled, "█████████ ██████" OAI_NDTX_0015877 | App. 475-81 |
| Tab 74 | 17-18 | Document titled ██████████ ████████" OAI_NDTX_0006244 | App. 482-84 |
| Tab 75 | 18 | Email thread titled "████████ ████" in which the latest-in-time email was sent on July 7, 2025 at 5:03 UTC from Jimmy Ba to Josh Elman and Angela Patino, APL-XAI_00064241 | App. 485-87 |

| Tab 76 | 18 | Document titled "███████████ ███████████████ ██████████" dated May 5, 2024, OAI_NDTX_0010814 | App. 488-549 |
|--------|-----|-----------------------------------------------------------------------------------------------|--------------|
| Tab 77 | 18-19 | Messages between Brad Lightcap and Peter Deng, in which the earliest message was sent on March 5, 2024 at 12:04 UTC, OAI_NDTX_0030322 | App. 550-51 |
| Tab 78 | 19 | Messages between Brad Lightcap, Dave Cummings, James Dyett, et al., in which the earliest message was sent on June 9, 2025 at 11:24 UTC, OAI_NDTX_0007236 | App. 552-56 |
| Tab 79 | 19 | Email thread titled ████████████ ███████████████████" in which the latest-in-time email was sent on March 8, 2025 at 2:34 UTC from Zoran Martinovic to Vinay Reddy, Sowmya Rajagopalan, Steven Duplinsky, et al., APL-XAI_00003781 | App. 557-58 |
| Tab 80 | 19 | Email thread titled "█████████████ ██████████████" in which the latest-in-time email was sent on February 19, 2025 at 12:04 UTC from Michael Chen to Zoran Martinovic, OAI_NDTX_0014940 | App. 559-71 |
| Tab 81 | 19 | Messages between Ashley Pantuliano, Che Change, Janine Korovesis, et al., in which the earliest message was sent on December 19, 2024 at 3:58 UTC, OAI_NDTX_0031102 | App. 572-74 |
| Tab 82 | 19-20 | Document titled "██████████████ ████████" OAI_NDTX_0030794 | App. 575-601 |
| Tab 83 | 20 | Document titled "████████████████" OAI_NDTX_0030697 | App. 602-21 |

| Tab 84 | 20 | Email thread titled "████████████████ ████████ in which the latest-in-time email was sent on March 28, 2024 at 20:30 UTC from Sherwin Wu to Srinivas Narayanan, Atty Eleti, Michelle Pokrass et al., APL-XAI_00005835 | App. 622-24 |
|--------|----|----|----|
| Tab 85 | 22 | March 16, 2021 Blog Post by Sam Altman titled, *Moore's Law for Everything* | App. 625-35 |

Dated: April 15, 2026

Respectfully submitted,

*/s/ Bradley Justus*

Bradley Justus
N.D. Tex. Bar No. 1007988DC
DC Bar No. 1007988
AXINN, VELTROP & HARKRIDER LLP
1901 L Street NW
Washington, DC 20036
T: (202) 912-4700
F: (202) 912-4701
bjustus@axinn.com

Charles W. Fillmore
Texas Bar No. 00785861
BROWN PRUITT WAMBSGANSS
DEAN FORMAN & MOORE, P.C.
201 Main Street, Suite 700
Fort Worth, TX 76102
T: (817) 338-4888
cfillmore@brownpruitt.com

*admitted *pro hac vice*

*/s/ Scott A. Eisman*

Craig M. Reiser
N.D. Tex. Bar No. 4886735NY
NY State Bar No. 4886735
Scott A. Eisman
N.D. Tex. Bar No. 4905287NY
NY State Bar No. 4905287
Eva Yung*
NY State Bar No. 5497300
Christopher Erickson
N.D. Tex. Bar No. 5800628NY
NY State Bar No. 5800628
AXINN, VELTROP & HARKRIDER LLP
630 Fifth Avenue, 33rd Floor
New York, NY 10111
T: (212) 728-2200
F: (212) 728-2201
creiser@axinn.com
seisman@axinn.com
eyung@axinn.com
cerickson@axinn.com

*/s/ Judd E. Stone*

Judd E. Stone II
Texas Bar No. 24076720
Christopher D. Hilton
Texas Bar No. 24087727
STONE | HILTON PLLC
600 Congress Ave., Ste. 2350
Austin, TX 78701
T: (737) 465-3897
judd@stonehilton.com
chris@stonehilton.com

Noah Schottenstein
Texas Bar No. 24100661
STONE | HILTON PLLC
301 Commerce St., Suite 2360
Fort Worth, TX 76102
T: (737) 465-3897
noah@stonehilton.com

*Attorneys for Plaintiffs X Corp. and
X.AI LLC*

## CERTIFICATE OF SERVICE

I certify that on April 15, 2026, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF system for filing. A notice of electronic filing was transmitted to all ECF registrants of record.

/s/ Scott A. Eisman
Scott A. Eisman

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| X CORP. and X.AI LLC,<br><br>        Plaintiffs,<br><br>        v.<br><br>APPLE INC.; OPENAI, INC.; OPENAI, L.L.C.; and OPENAI OPCO, LLC,<br><br>        Defendants. | **Civil Action No. 4:25-cv-00914-P** |

**DECLARATION OF SCOTT A. EISMAN
IN SUPPORT OF PLAINTIFFS X CORP. AND X.AI LLC'S MOTION
FOR LEAVE TO TAKE ADDITIONAL DEPOSITIONS AND BRIEF IN SUPPORT**

I, Scott A. Eisman, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1.     I am an attorney admitted to practice before this Court, and I am a partner at the law firm of Axinn, Veltrop & Harkrider LLP, counsel for Plaintiffs X Corp. and X.AI LLC in the above-captioned matter. I submit this declaration in support of Plaintiffs' Motion for Leave to Take Additional Party Depositions. The matters in this declaration are within my personal knowledge and are true and correct.

2.     Attached hereto as Tab 1 is a true and correct copy of an email titled "RE: X Corp. and X.AI LLC v. Apple Inc. et al., No. 4:25-cv-00914-P (N.D. Tex.) | Notices of Deposition," sent on March 13, 2026 at 7:13 PM ET from Scott A. Eisman to Emily Henn, Henry Liu, Lauren W. Zehmer, et al.

3.     Attached hereto as Tab 2 is a true and correct copy of an email titled "RE: X Corp. and X.AI LLC v. Apple Inc. et al., No. 4:25-cv-00914-P (N.D. Tex.) | Notices of Deposition," sent on April 8, 2026 at 10:31 PM ET from Christopher Erickson to Emily Henn, Henry Liu, Lauren W. Zehmer, et al.

4.     Attached hereto as Tab 3 is a true and correct copy of Plaintiffs' Notice of Rule 30(b)(6) Deposition of Apple, dated April 14, 2026.

5.     Attached hereto as Tab 4 is a true and correct copy of an email thread titled "█████ █████████" in which the latest-in-time email was sent on May 16, 2023 at 4:38 UTC from Adrian Perica to Mark Y. Tian, Bates stamped APL-XAI_00049575.

6.     Attached hereto as Tab 5 is a true and correct copy of messages from Zoran Martinovic, in which the earliest message was sent on December 20, 2024 at 6:36 UTC, Bates stamped OAI_NDTX_0007231.

7.    Attached hereto as Tab 6 is a true and correct copy of messages between John Giannandrea and Adrian Perica, in which the earliest message was sent on May 3, 2024 at 7:47 AM GMT, Bates stamped APL-XAI_00074080.

8.    Attached hereto as Tab 7 is a true and correct copy of  Email thread titled "█████ ████████████████████████████████████" in which the latest-in-time email was sent on March 22, 2024 at 18:31 UTC from Brad Lightcap to Adrian Perica, Bates stamped APL-XAI_00015993.

9.    Attached hereto as Tab 8 is a true and correct copy of  Email thread titled "████ ████████" in which the latest-in-time email was sent on May 4, 2024 at 17:29 UTC from Adrian Perica to Ashley Pantuliano, Brad Lightcap, Sam Altman, et al., Bates stamped APL-XAI_00025400.

10.    Attached hereto as Tab 9 is a true and correct copy of an email thread titled "████ ████████" in which the latest-in-time email was sent on August 30, 2024 at 6:54 UTC from Tim Cook to Eddy Cue and Adrian Perica, Bates stamped APL-XAI_00080353.

11.    Attached hereto as Tab 10 is a true and correct copy of  an email thread titled "███████████████████████████████████████████████████ ████████" in which the latest-in-time email was sent on June 13, 2024 at 19:35 UTC from Tim Cook to Eddy Cue, Craig Federighi, Greg Joswiak, et al., Bates stamped APL-XAI_00051876.

12.    Attached hereto as Tab 11 is a true and correct copy of an excerpt of Apple's Amended Responses and Objections to Plaintiffs' First Set of Interrogatories, dated February 3, 2026.

13.    Attached hereto as Tab 12 is a true and correct copy of messages between Adrian Perica, Mike Thornberry, and Jennifer Bailey, in which the earliest message was sent on June 19, 2024 at 4:28 AM GMT, Bates stamped APL-XAI_00079854.

14.    Attached hereto as Tab 13 is a true and correct copy of an email thread titled "█ ███████████████████████" in which the latest-in-time email was sent on June 18, 2025 at 12:52 UTC from Eddy Cue to Adrian Perica, Bates stamped APL-XAI_00050023.

15.    Attached hereto as Tab 14 is a true and correct copy of an excerpt of the Apple-Google Agreement, Bates stamped APL-XAI_00026768.

16.    Attached hereto as Tab 15 is a true and correct copy of a June 10, 2024 NBC Article titled, *Apple WWDC 2024: Apple Intelligence is here with ChatGPT integration.*

17.    Attached hereto as Tab 16 is a true and correct copy of an email thread titled "███████████████" in which the latest-in-time email was sent on January 18, 2024 at 5:46 UTC from Steve Smith to Josh Shaffer, Josh Elman, and Steven Duplinsky, Bates stamped APL-XAI_00006927.

18.    Attached hereto as Tab 17 is a true and correct copy of messages between Olivier Godement and Tal Broada, in which the earliest message was sent on May 30, 2024 at 6:11 UTC, Bates stamped OAI_NDTX_0030288.

19.    Attached hereto as Tab 18 is a true and correct copy of messages between Alison Harmon, Ben Gaffney, Brad Lightcap, et al., in which the earliest message was sent on August 9, 2024 at 5:29 UTC, Bates stamped OAI_NDTX_0020203.

20.    Attached hereto as Tab 19 is a true and correct copy of messages between Kevin Weil and Olivier Godement, in which the earliest message was sent on July 24, 2024 at 1:39 UTC, Bates stamped OAI_NDTX_0018958.

21.      Attached hereto as Tab 20 is a true and correct copy of messages between Brad Lightcap, Dave Cummings, James Dyett, et al., in which the earliest message was sent on March 13, 2025 at 1:16 UTC, Bates stamped OAI_NDTX_0007333.

22.      Attached hereto as Tab 21 is a true and correct copy of an email thread titled "███████████████████████████████████," in which the latest-in-time email was sent on August 23, 2024 at 00:42 UTC from Craig Federighi to Steven Duplinsky, Bates stamped APL-XAI_00027508.

23.      Attached hereto as Tab 22 is a true and correct copy of an email thread titled "████████████████," in which the latest-in-time email was sent on September 3, 2024 at 14:18 UTC from Craig Federighi to Adam Ward, JP Lacerda, Steven Duplinsky, et al., Bates stamped APL-XAI_00070986.

24.      Attached hereto as Tab 23 is a true and correct copy of an excerpt of Apple's Amended Initial Disclosures, dated October 29, 2025.

25.      Attached hereto as Tab 24 is a true and correct copy of an email thread titled "RE: X Corp. and X.AI LLC v. Apple Inc. et al., No. 4:25-cv-00914-P (N.D. Tex.)," in which the latest-in-time email was sent on December 31, 2025 at 7:18 PM ET from Scott A. Eisman to Lauren W. Zehmer.

26.      Attached hereto as Tab 25 is a true and correct copy of an email thread titled "█████████████████████████" in which the latest-in-time email was sent on June 16, 2023 at 21:12 UTC from Smokey Fontaine to Nyki Bell, Bates stamped APL-XAI_00014993.

27.      Attached hereto as Tab 26 is a true and correct copy of messages between Smokey Fontaine and Nyki Bell, in which the earliest message was sent on March 7, 2023 at 00:06 AM GMT, Bates stamped APL-XAI_00073367.

28. Attached hereto as Tab 27 is a true and correct copy of a document titled "███ ███ ███ ███ ███ ███" dated February 2020, Bates stamped APL-XAI_00056548.

29. Attached hereto as Tab 28 is a true and correct copy of an email thread titled "███████" in which the latest-in-time email was sent on January 24, 2023 at 6:36 UTC from John Giannandrea to Craig Federighi, Bates stamped APL-XAI_00056867.

30. Attached hereto as Tab 29 is a true and correct copy of an email thread titled "███" in which the latest-in-time email was sent on March 8, 2025 at 2:34 UTC from John Giannandrea to Adrian Perica and Craig Federighi, Bates stamped APL-XAI_00016094.

31. Attached hereto as Tab 30 is a true and correct copy of an email thread titled "█████████" in which the latest-in-time email was sent on March 13, 2025 at 18:24 UTC from John Giannandrea to Tim Cook, Bates stamped APL-XAI_00056860.

32. Attached hereto as Tab 31 is a true and correct copy of messages between Adrian Perica and Johny Srouji, in which the earliest message was sent on May 3, 2024 at 18:24 PM GMT, Bates stamped APL-XAI_00079848.

33. Attached hereto as Tab 32 is a true and correct copy of a May 18, 2025 Bloomberg Article titled, *How Apple Intelligence and Siri AI Went So Wrong.*

34. Attached hereto as Tab 33 is a true and correct copy of an email thread titled "███ ████████████████████████" in which the latest-in-time email was sent on June 7, 2024 at 18:53 UTC from Alison Harmon to Matt Fischer, Bates stamped APL-XAI_00037822.

35. Attached hereto as Tab 34 is a true and correct copy of an email thread titled "███ ████████████████████████████████" in which the latest-in-time email was

sent on September 16, 2024 at 17:33 UTC from Carson Oliver to Tim Cook, Luca Maestri, Philip Schiller, et al., Bates stamped APL-XAI_00037663.

36.    Attached hereto as Tab 35 is a true and correct copy of an email thread titled "████ █████████████████████████████" in which the latest-in-time email was sent on October 5, 2024 at 2:34 UTC from Ann Thai to Carson Oliver, Bates stamped APL-XAI_00037448.

37.    Attached hereto as Tab 36 is a true and correct copy of an email thread titled "████ ███████████████" in which the latest-in-time email was sent on May 13, 2025 at 22:50 UTC from Carson Oliver to Chaitu Aluru, Bates stamped APL-XAI_00037947.

38.    Attached hereto as Tab 37 is a true and correct copy of an email thread titled "████ ███████████" in which the latest-in-time email was sent on August 1, 2025 at 21:53 UTC from Chaitu Aluru to Carson Oliver, Bates stamped APL-XAI_00059331.

39.    Attached hereto as Tab 38 is a true and correct copy of an email thread titled "████ ██████████" in which the latest-in-time email was sent on August 21, 2025 at 2:34 UTC from Phil Schiller to Craig Federigh and Gregory Joswiak, Bates stamped APL-XAI_00037507.

40.    Attached hereto as Tab 39 is a true and correct copy of an email thread titled "████ ████████" in which the latest-in-time email was sent on May 22, 2023 at 22:03 UTC from James Dyett to Adrian Perica, Srinivas Narayanan, and Felipe Such, Bates stamped APL-XAI_00024621.

41.    Attached hereto as Tab 40 is a true and correct copy of messages between Brad Lightcap, Denny Jin, James Dyett, et al., in which the earliest message was sent on February 28, 2024 at 12:07 UTC, Bates stamped OAI_NDTX_0007778.

42.    Attached hereto as Tab 41 is a true and correct copy of an email thread titled "████████████," in which the latest-in-time email was sent on April 25, 2024 at 2:26

UTC from Adrian Perica to Sam Altman, Brad Lightcap, Che Chang, et al., Bates stamped OAI_NDTX_0003240.

43.    Attached hereto as Tab 42 is a true and correct copy of an email thread titled "███ ████████████████████████████████████████████ ████" in which the latest-in-time email was sent on May 4, 2024 at 1:13 UTC from Adrian Perica to Sam Altman, Bates stamped APL-XAI_00039519.

44.    Attached hereto as Tab 43 is a true and correct copy of a document titled "████ ████████████████████████████████," dated May 3, 2024, Bates stamped OAI_NDTX_0000345.

45.    Attached hereto as Tab 44 is a true and correct copy of an email thread titled "██ ████████████" in which the latest-in-time email was sent on November 7, 2024 at 22:03 UTC from Josh Shaffer to Ron Huang, Bates stamped APL-XAI_00020545.

46.    Attached hereto as Tab 45 is a true and correct copy of an email thread titled "██ ██████████████" in which the latest-in-time email was sent on June 7, 2024 at 22:40 UTC from Josh Shaffer to Olivier Godement, Bates stamped APL-XAI_00090789.

47.    Attached hereto as Tab 46 is a true and correct copy of an email thread titled "██ █████████████████" in which the latest-in-time email was sent on December 17, 2024 at 1:12 UTC from Evan Jones to Arun Singh, Bates stamped APL-XAI_00042967.

48.    Attached hereto as Tab 47 is a true and correct copy of an email thread titled "██ ████████████████" in which the latest-in-time email was sent on August 1, 2025 at 18:53 UTC from Arun Singh to Mary Ann Brunson, Bates stamped APL-XAI_00045065.

49.    Attached hereto as Tab 48 is a true and correct copy of an email thread titled "█

██████████████" in which the latest-in-time email was sent on February 24, 2024 at

19:34 UTC from Steve Smith to James Dyett, Bates stamped APL-XAI_00006646.

50.    Attached hereto as Tab 49 is a true and correct copy of an email thread titled "█

███████████" in which the latest-in-time email was sent on December 13, 2023

at 16:54 UTC from Steve Smith to Abi Raman, Bates stamped APL-XAI_00005931.

51.    Attached hereto as Tab 50 is a true and correct copy of Plaintiffs' Notice of Rule

30(b)(6) Deposition of OpenAI, dated April 14, 2026.

52.    Attached hereto as Tab 51 is a true and correct copy of messages between Eddy

Cue and Adrian Perica, in which the earliest message was sent on November 6, 2023 at 00:10

AM GMT, Bates stamped APL-XAI_00066019.

53.    Attached hereto as Tab 52 is a true and correct copy of an email thread titled "█

███████████" in which the latest-in-time email was sent on May 1, 2024 at 1:53 AM

from Brad Lightcap to Bret Taylor, Bates stamped OAI_NDTX_0006713.

54.    Attached hereto as Tab 53 is a true and correct copy of messages between Adrian

Perica and Sam Altman, in which the earliest message was sent on May 3, 2024 at 9:03 AM,

Bates stamped OAI_NDTX_0029546.

55.    Attached hereto as Tab 54 is a true and correct copy of messages between Brad

Lightcap and Sam Altman, in which the earliest message was sent on May 1, 2024 at 12:33 UTC,

Bates stamped OAI_NDTX_0007056.

56.    Attached hereto as Tab 55 is a true and correct copy of a January 16, 2026

Business Insider Article titled, *ChatGPT is getting ads. Sam Altman once called them a 'last

resort.'*

57.    Attached hereto as Tab 56 is a true and correct copy of a document titled "███ ███████████████████████" by Olivier Godement, dated June 10, 2024, Bates stamped OAI_NDTX_0007788.

58.    Attached hereto as Tab 57 is a true and correct copy of messages between Dave Cummings and Ryan Liu, in which the earliest message was sent on February 14, 2025 at 12:02 UTC, Bates stamped OAI_NDTX_0007014.

59.    Attached hereto as Tab 58 is a true and correct copy of a December 12, 2025 Apple Legal Webpage titled, *ChatGPT Extension & Privacy.*

60.    Attached hereto as Tab 59 is a true and correct copy of an email thread titled "███████████████████████████████" in which the latest-in-time email was sent on August 27, 2024 at 18:09 UTC from Jessica Zappa to Jon McClintock, Bates stamped APL-XAI_00090779.

61.    Attached hereto as Tab 60 is a true and correct copy of a document titled "████ █████████████████" Bates stamped OAI_NDTX_0008984.

62.    Attached hereto as Tab 61 is a true and correct copy of an excerpt of OpenAI's Amended Initial Disclosures, dated October 31, 2025.

63.    Attached hereto as Tab 62 is a true and correct copy of an excerpt of OpenAI's Amended Responses and Objections to Plaintiffs' First Set of Interrogatories, dated February 5, 2026.

64.    Attached hereto as Tab 63 is a true and correct copy of messages between Abi Raman and James Dyett, in which the earliest message was sent on November 9, 2023 at 1:05 UTC, Bates stamped OAI_NDTX_0018449.

65.    Attached hereto as Tab 64 is a true and correct copy of an email thread titled "███████████" in which the latest-in-time email was sent on June 9, 2024 at 9:48 PM from Julie Steele (Google Docs) <comments-noreply@docs.google.com> to James Dyett, Bates stamped OAI_NDTX_0011138.

66.    Attached hereto as Tab 65 is a true and correct copy of messages between Alison Harmon, Brad Lightcap, Chengpeng Mou, et al., in which the earliest message was sent on May 22, 2024 at 5:48 UTC, Bates stamped OAI_NDTX_0010393.

67.    Attached hereto as Tab 66 is a true and correct copy of messages between James Dyett and Olivier Godement, in which the earliest message was sent on August 16, 2024 at 12:11 UTC, Bates stamped OAI_NDTX_0018888.

68.    Attached hereto as Tab 67 is a true and correct copy of messages between Abi Raman and James Dyett, in which the earliest message was sent on November 16, 2023 at 12:21 UTC, Bates stamped OAI_NDTX_0007717.

69.    Attached hereto as Tab 68 is a true and correct copy of messages between Brad Lightcap, Sara Friar, and Zoran Martinovic, in which the earliest message was sent on January 30, 2025 at 6:02 UTC, Bates stamped OAI_NDTX_0007266.

70.    Attached hereto as Tab 69 is a true and correct copy of messages between Kate Rouch and Sarah Friar, in which the earliest message was sent on December 13, 2024 at 5:32 UTC, Bates stamped OAI_NDTX_0018957.

71.    Attached hereto as Tab 70 is a true and correct copy of messages between Adrian Perica, Craig Federighi, Steve Smith, et al., in which the earliest message was sent on July 25, 2024 at 3:45 AM GMT, Bates stamped APL-XAI_00094567.

72.     Attached hereto as Tab 71 is a true and correct copy of a January 18, 2026 OpenAI Article titled, *A business that scales with the value of intelligence.*

73.     Attached hereto as Tab 72 is a true and correct copy of messages between Adam Fry, Adam Perelman, Adrian Spanu, et al., in which the earliest message was sent on May 30, 2024 at 2:50 UTC GMT, Bates stamped OAI_NDTX_0010365.

74.     Attached hereto as Tab 73 is a true and correct copy of a document titled, "███████ ████████████" Bates stamped OAI_NDTX_0015877.

75.     Attached hereto as Tab 74 is a true and correct copy of a document titled "████████████████████████" Bates stamped OAI_NDTX_0006244.

76.     Attached hereto as Tab 75 is a true and correct copy of an email thread titled "██ ████████████" in which the latest-in-time email was sent on July 7, 2025 at 5:03 UTC from Jimmy Ba to Josh Elman and Angela Patino, Bates stamped APL-XAI_00064241.

77.     Attached hereto as Tab 76 is a true and correct copy of a document titled "███████████████████████████████" dated May 5, 2024, Bates stamped OAI_NDTX_0010814.

78.     Attached hereto as Tab 77 is a true and correct copy of messages between Brad Lightcap and Peter Deng, in which the earliest message was sent on March 5, 2024 at 12:04 UTC, Bates stamped OAI_NDTX_0030322.

79.     Attached hereto as Tab 78 is a true and correct copy of messages between Brad Lightcap, Dave Cummings, James Dyett, et al., in which the earliest message was sent on June 9, 2025 at 11:24 UTC, Bates stamped OAI_NDTX_0007236.

80.     Attached hereto as Tab 79 is a true and correct copy of an email thread titled "████████████████████████" in which the latest-in-time email was sent on

March 8, 2025 at 2:34 UTC from Zoran Martinovic to Vinay Reddy, Sowmya Rajagopalan, Steven Duplinsky, et al., Bates stamped APL-XAI_00003781.

81.     Attached hereto as Tab 80 is a true and correct copy of an email thread titled "████████████████████████████" in which the latest-in-time email was sent on February 19, 2025 at 12:04 UTC from Michael Chen to Zoran Martinovic, Bates stamped OAI_NDTX_0014940.

82.     Attached hereto as Tab 81 is a true and correct copy of messages between Ashley Pantuliano, Che Change, Janine Korovesis, et al., in which the earliest message was sent on December 19, 2024 at 3:58 UTC, Bates stamped OAI_NDTX_0031102.

83.     Attached hereto as Tab 82 is a true and correct copy of a document titled "████████████████" Bates stamped OAI_NDTX_0030794.

84.     Attached hereto as Tab 83 is a true and correct copy of a document titled "████████████" Bates stamped OAI_NDTX_0030697.

85.     Attached hereto as Tab 84 is a true and correct copy of an email thread titled "█████████████████████████" in which the latest-in-time email was sent on March 28, 2024 at 20:30 UTC from Sherwin Wu to Srinivas Narayanan, Atty Eleti, Michelle Pokrass et al., Bates stamped APL-XAI_00005835.

86.     Attached hereto as Tab 85 is a true and correct copy of a March 16, 2021 Blog Post by Sam Altman titled, *Moore's Law for Everything.*

Dated: April 15, 2026                    Respectfully submitted,

                                         */s/ Scott A. Eisman*
                                         Scott A. Eisman

# Tab 1

**Eisman, Scott A.**

| | |
|---|---|
| **From:** | Eisman, Scott A. |
| **Sent:** | Friday, March 13, 2026 7:13 PM |
| **To:** | Henn, Emily; Liu, Henry; Willard Zehmer, Lauren; Weiland, Carol; dee.kelly@kellyhart.com; julia.wisenberg@kellyhart.com; WDSavitt@wlrk.com; Schwartz, Kevin S.; Meli, Graham W.; Cheung, Andrew J.H.; SDLevandoski@wlrk.com; mhurst@lynnllp.com; cpatton@lynnllp.com; akim@lynnllp.com |
| **Cc:** | Reiser, Craig M.; Justus, Bradley; Yung, Eva H.; Erickson, Christopher; Chris Hilton; Judd E. Stone II; Chad Fillmore |
| **Subject:** | X Corp. and X.AI LLC v. Apple Inc. et al., No. 4:25-cv-00914-P (N.D. Tex.) \| Notices of Deposition |
| **Attachments:** | 2026 0313 Plaintiffs' Notices of Rule 30(b)(1) Deposition.zip |

Counsel,

We attach Rule 30(b)(1) deposition notices for the following individuals:

- Adrian Perica;

- Brad Lightcap;

- Eddy Cue;

- James Dyett II;

- Sam Altman; and

- Smokey Fontaine.

We have noticed these depositions for late April and early May, to take place at our New York offices, but we are amenable to discussing reasonable alternative dates and locations based on availability of deponents and counsel.

In addition to these six depositions, we anticipate taking more than four additional depositions of party witnesses, non-party witnesses, and the experts whom we expect Defendants to designate on April 13. We therefore believe that it is appropriate for the parties to stipulate to enlarge the deposition limit in Federal Rule of Civil Procedure 30(a)(2)(A)(i). Please let us know if Defendants are willing to so stipulate or if we are at impasse.

Best regards,
Scott

App. 29

# THIS PAGE WAS INTENTIONALLY LEFT BLANK

App. 30-49

# Tab 2

**From:**      Erickson, Christopher
**To:**        ehenn@cov.com; HLiu@cov.com; LZehmer@cov.com; CWeiland@cov.com; dee.kelly@kellyhart.com;
               julia.wisenberg@kellyhart.com; WDSavitt@wlrk.com; kschwartz@wlrk.com; GWMeli@WLRK.com;
               ajhcheung@wlrk.com; SDLevandoski@wlrk.com; mhurst@lynnllp.com; cpatton@lynnllp.com; akim@lynnllp.com
**Cc:**        Reiser, Craig M.; Justus, Bradley; Eisman, Scott A.; Yung, Eva H.; chris@stonehilton.com; judd@stonehilton.com;
               cfillmore@brownpruitt.com
**Subject:**   X Corp. and X.AI LLC v. Apple Inc. et al., No. 4:25-cv-00914-P (N.D. Tex.) | Notices of Deposition
**Date:**      Wednesday, April 8, 2026 10:31:00 PM
**Attachments:** 2026 0408 Plaintiffs" Notice of Rule 30(b)(1) Depositions.zip

Counsel,

We attach Rule 30(b)(1) deposition notices for the following individuals:

- Dave Cummings
- Zoran Martinovic
- Steve Smith
- Jenny Mo
- Josh Shaffer
- Carson Oliver
- Hannah Wong
- Olivier Godement
- Sherwin Wu
- John Giannandrea
- Arun Singh
- Mike Liberatore
- Sarah Friar
- Craig Federeghi
- Nick Turley
- Tim Cook

We have noticed these depositions for late April and early May, to take place at our New York offices, but we are amenable to discussing reasonable alternative dates and locations based on availability of deponents and counsel.

Best,
Chris

App. 51

# Tab 3

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

|  |  |
|---|---|
| X CORP. and X.AI LLC,<br><br>　　　Plaintiffs,<br><br>　　　v.<br><br>APPLE INC.; OPENAI, INC.; OPENAI, L.L.C.; and OPENAI OPCO, LLC,<br><br>　　　Defendants. | **Civil Action No. 4:25-cv-00914-P** |

## NOTICE OF FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6) DEPOSITION

**PLEASE TAKE NOTICE** that, pursuant to Federal Rule 30(b)(6) of the Federal Rules of Civil Procedure, Plaintiffs X Corp. and X.AI LLC will take the deposition of Defendant Apple Inc. ("Apple") on April 27, 2026 at 9:00 a.m. Eastern Standard Time, or at some other date and time to be discussed and agreed upon by the parties, at Axinn, Veltrop & Harkrider LLP, located at 45 Rockefeller Plaza, New York, NY 10111, or at some other location to be discussed and agreed upon by the parties. The deposition will be conducted by oral examination before a certified court reporter authorized to administer oaths and will continue from day to day until completed. The deposition will be recorded by stenographic means and by videotape.

Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Apple shall designate and produce for deposition one or more officers, directors, employees, agents or other persons to testify on its behalf regarding the topics and subject areas set forth in Exhibit A attached hereto (the "Topics"). If the designated representative or representatives do not have such knowledge, they are required under Rule 30(b)(6) to acquire such knowledge through whatever reasonable investigation may be necessary. At least seven (7) business days prior to the deposition, Apple

App. 53

shall provide in writing to Plaintiff the name(s) and employment positions(s) of the person(s) who will testify on Apple's behalf concerning the Topics.

Dated: April 14, 2026

/s/ Bradley Justus

Bradley Justus
N.D. Tex. Bar No. 1007988DC
DC Bar No. 1007988
AXINN, VELTROP & HARKRIDER LLP
1901 L Street NW
Washington, DC 20036
T: (202) 912-4700
F: (202) 912-4701
bjustus@axinn.com

Charles W. Fillmore
Texas Bar No. 00785861
BROWN PRUITT WAMBSGANSS
DEAN FORMAN & MOORE, P.C.
201 Main Street, Suite 700
Fort Worth, TX 76102
T: (817) 338-4888
cfillmore@brownpruitt.com

*admitted *pro hac vice*

Respectfully submitted,

/s/ Craig M. Reiser

Craig M. Reiser
N.D. Tex. Bar No. 4886735NY
NY State Bar No. 4886735
Scott A. Eisman
N.D. Tex. Bar No. 4905287NY
NY State Bar No. 4905287
Eva Yung*
NY State Bar No. 5497300
Christopher Erickson
N.D. Tex. Bar No. 5800628NY
NY State Bar No. 5800628
AXINN, VELTROP & HARKRIDER LLP
630 Fifth Avenue, 33rd Floor
New York, NY 10111
T: (212) 728-2200
F: (212) 728-2201
creiser@axinn.com
seisman@axinn.com
eyung@axinn.com
cerickson@axinn.com

/s/ Judd E. Stone

Judd E. Stone II
Texas Bar No. 24076720
Christopher D. Hilton
Texas Bar No. 24087727
STONE | HILTON PLLC
600 Congress Ave., Ste. 2350
Austin, TX 78701
T: (737) 465-3897
judd@stonehilton.com
chris@stonehilton.com

Noah Schottenstein
Texas Bar No. 24100661
STONE | HILTON PLLC
301 Commerce St., Suite 2360
Fort Worth, TX 76102
T: (737) 465-3897
noah@stonehilton.com

*Attorneys for Plaintiffs X Corp. and X.AI LLC*

3

App. 55

## <u>CERTIFICATE OF SERVICE</u>

I certify that on April 14, 2026, I served the foregoing document on counsel for Defendants via email.

*/s/ Christopher Erickson*
Christopher Erickson

**EXHIBIT A - TOPICS**

**DEFINITIONS**

1.      This document incorporates by reference all definitions in Plaintiffs' First Requests for Production to You (the "RFPs").

2.      The "Integration Program" means the program described in APL-XAI_00111450.

3.      The defined term "iPhone" shall be inclusive of Apple's iOS operating system and the Apple App Store for purposes of these Topics.

4.      Terms should be construed broadly to the fullest extent of their meaning in a good-faith effort to comply with the Federal Rules of Civil Procedure and the Local Rules of the U.S. District Court for the Northern District of Texas.

5.      All Topics cover January 1, 2023 to present unless otherwise indicated.

**TOPICS**

1.      The features of iPhones, Your analyses of the iPhone's customers, and Your marketing and promotion of iPhones.

2.      Your analysis, description, evaluation, and comparison of the product(s) You consider to be substitutes for iPhones.

3.      Your analysis, description, and evaluation of competition faced by the iPhone, including analyses of the iPhone's competitive position relative to other competitors.

4.      The ability of Generative AI to facilitate the creation of Super Apps, Your tracking and/or monitoring of Super Apps and the features of Super Apps, Your Mini Apps program (including the rationale for the program, the participants in the program, and the eligibility criteria), and the ability of Super Apps to serve as a competitive threat to smartphones.

5.    Your analyses of the competitive threat posed by consumer hardware devices developed by companies offering Generative AI technology, including any analyses of such devices and Your communications with OpenAI regarding OpenAI's development and sale of such devices.

6.    Your tracking and analysis of iPhone's market share or the market share of any component or feature of the iPhone, and the market share of the iPhone's competitors including:

    a.  The size of the market (e.g., revenue, sales, or other metrics);

    b.  Your share of the market;

    c.  The identify of Your competitors in the market;

    d.  The share of Your competitors in the market;

    e.  Products that you consider to be substitutes for iPhones;

    f.  The ability of customers to switch between iPhone and products that are substitutes to iPhones, including any costs (in terms of money, time, difficulty, data transfer, managing subscriptions, ability to communicate with non-Apple devices, or other factors) of switching to those substitutes;

    g.  Barriers to entry or expansion, including but not limited to switching costs, bundles with mobile carriers, brand strength, economies of scale, access to inputs, tariffs, regulatory restrictions, direct and/or indirect network effects, and access to capital;

    h.  The actual, projected, or potential effects on price and quality of iPhones caused by or resulting from competition from products substitutable for iPhones;

2

      i.   The location of Your customers, Your sales, and the companies that offer products that are substitutes for iPhones; and

      j.   The competitive conditions the iPhone faces in the United States and in other countries, including without limitation restrictions in consumers' ability to use and/or sell iPhones sold outside the United States in the United States such as region locks, specification differences between countries, bundles of iPhones with U.S. mobile carrier phone plans, and different App Store storefronts.

7. Your analysis, description, and evaluation of the usage of Google Search on Apple Devices and on Safari, including any analyzes of search engines and GenAI Chatbots such as assessments of ▮▮▮▮▮▮▮▮ (*e.g.*, APL-XAI_00092096) and all documents regarding such analyses.

8. Your tracking and analysis of ChatGPT's market share and the market share of ChatGPT's competitors including:

      a.   The size of the markets (e.g., by Prompts, messages, active users, tokens, revenue, downloads, subscriptions, or similar metrics);

      b.   The share of OpenAI's competitors in those markets;

      c.   Products that You consider to be substitutes for ChatGPT; and

      d.   The actual, projected, or potential effects on price and quality of GenAI Chatbots, caused by or resulting from competition from products substitutable for GenAI Chatbots.

9. Your strategic plans and goals for the iPhone.

10.    Your relationship and communication with OpenAI, including without limitation: revenues shared between Apple and OpenAI, the Apple-OpenAI Agreement, the Apple-ChatGPT Integration, and Your business reviews of the ChatGPT App.

11.    The Apple-OpenAI Agreement including:

a.    The employees, officers, and/or directors of Apple involved in the negotiation and execution of the Apple-OpenAI Agreement and Apple-ChatGPT Integration;

b.    Your rationale for entering the Apple-OpenAI Agreement and for the Apple-ChatGPT Integration;

c.    Your rationale for not entering Agreements to integrate GenAI Chatbots besides ChatGPT with Apple Intelligence in or around May 2024;

d.    Your negotiation of the Apple-OpenAI Agreement;

e.    The terms of the Apple-OpenAI Agreement;

f.    Your understanding of any period of exclusivity, head start, or default status afforded to OpenAI and/or ChatGPT by the Apple-OpenAI Agreement;

g.    Your payments from OpenAI or any revenue shared by OpenAI under the Apple-OpenAI Agreement;

h.    Communications with Your Board of Directors regarding the Apple-OpenAI Agreement or the Apple-ChatGPT Integration, including without limitation any Keynotes regarding the Apple-ChatGPT shared with Your Board of Directors and/or Tim Cook;

i.    Communications with OpenAI regarding the Apple-OpenAI Agreement or the Apple-ChatGPT Integration;

4

App. 60

j.  The consideration and/or approval of the Apple-OpenAI Agreement by Apple's Board of Directors and any communications with Your Board of Directors regarding the Apple-OpenAI Agreement or the Apple-ChatGPT Integration;

k.  Any benefits to You from the Apple-OpenAI Agreement in terms of additional profits, revenues, iPhone sales, and sales of Other Apple Devices;

l.  The value of Prompts and Prompt data from the Apple-ChatGPT Integration for training Generative AI models and the value of native distribution on Apple devices, including without limitation any brand effects;

m.  Your efforts to ensure the safety and privacy of Apple users through the Apple-ChatGPT Integration, including but not limited to OpenAI's compliance with zero-data retention policies and Your response to OpenAI's non-compliance, Your transmittal of logged-in and logged-out user data to OpenAI (such as the user's location), ChatGPT's detection of self-harm risk, ChatGPT's use of search indices, Your policies on GenAI Chatbot and/or Generative AI usage, and Apple's security reviews of OpenAI's products; and

n.  Your communication with OpenAI regarding Apple's actual or perceived antitrust, regulatory, and/or competition law risk regarding the Apple-OpenAI Agreement and/or the Apple-ChatGPT Integration, including without limitation the communications referenced in OAI_NDTX_0030559 and OAI_NDTX_0025681.

12.  Your promotion of ChatGPT, including but not limited to the featuring of ChatGPT in the Apple App Store (including on the "Must-Have Apps" list), the featuring of ChatGPT in

5

Your marketing, ChatGPT's ranking in search results in the Apple App Store, any paid or unpaid marketing opportunities requested by OpenAI or offered by You, and any Agreement or understanding that ChatGPT would be featured or be the only GenAI Chatbot featured on Your Must-Have Apps list.

13. Your analysis of Your brand value and any brand or anointment effects conveyed via the Apple-OpenAI Agreement and/or Apple-ChatGPT Integration.

14. Your App Store and Your understanding of its importance to App developers.

15. Your actual or anticipated plans to integrate other GenAI Chatbots into iPhones and other Apple Devices including:

    a. When You decided to institute the Integration Program;

    b. Your rationale for the Integration Program;

    c. The criteria that You used to determine which GenAI Chatbots to integrate with Apple Intelligence and/or Siri as part of the Integration Program;

    d. Which GenAI Chatbots You have considered integrating, or plan to integrate, with Apple Intelligence and/or Siri as part of the Integration Program, including without limitation when you first communicated with each GenAI Chatbot regarding the Integration Program;

    e. The date You plan to launch the iOS 27 Update;

    f. The date(s) you plan to launch the Integration Program;

    g. Whether the Integration Program will allow non-logged in users on Apple Devices to access GenAI Chatbots besides ChatGPT participating in the program;

6

h.  Your Agreements with GenAI Chatbots participating in the Integration

Program;

i.  Whether the Integration Program will direct Siri requests to GenAI Chatbots

other than ChatGPT when the GenAI Chatbot is not expressly requested by

the user; and

j.  Apple's revenue share for the Integration Program and/or the fees Apple plans

to charge GenAI Chatbots for participating in the Integration Program.

16.  The timelines for review of the X App and Grok App in the Apple App Store, including comparisons with the review times of other Apps (e.g., other GenAI Chatbot Apps or social media apps), and any communications or Agreements with X, xAI, other companies that offer GenAI Chatbots Apps, and/or other social media apps regarding review timelines for their GenAI Chatbot Apps.

17.  The assumptions, source data, filters, and calculations used to create the data sets you produced in this case, including without limitation:

a.  APL-XAI_00003904 and similar;

b.  APL-XAI_00026028;

c.  APL-XAI_00026086;

d.  APL-XAI_00065990;

e.  APL-XAI_00086159; and

f.  APL-XAI_00083919.

18.  The Agreement between Apple and Google ("Apple-Google Agreement"), including:

a.  The terms of the Apple-Google Agreement;

b.  OpenAI's attempt to win the contract awarded to Google; and

7

App. 63

      c.  The relationship, if any, between the Apple-OpenAI Agreement and the Apple-Google Agreement.

19.    Your financial statements produced in this Action.

20.    The OpenAI Payment Attribution Reports (*e.g.*, OAI_NDTX_0014995), weekly integration reports (*e.g.*, APL-XAI_00004073 and associated attachments), and any other reports measuring the performance of the Apple-ChatGPT Integration.

21.    Your actual and projected costs, profitability, gross profit margin, contribution margin, and operating profit margin from the Apple-ChatGPT Integration, including without limitation the basis for Mr. Cue's assessment of the value of the Apple-ChatGPT Integration as described in APL-XAI_00050023.

22.    Your actual and projected revenue, costs, profitability, gross profit margin, and operating profit margin, separately for iPhone devices and the Apple App Store.

23.    Your treatment of Apps and media outlets (including without limitation social media platforms) that You perceive as or understand others to perceive as politically right-wing or conservative.

24.    Your decision on the Apps to feature in your App Store, including the criteria You use to review social media and GenAI Chatbot Apps, Your assessment of the X and Grok Apps, and Your assessment of other GenAI Chatbots, social media Apps, and other Apps You have featured or promoted in Your App Store.

25.    The criteria You use for approving Apps to be featured on the Must-Have Apps list, and Your inclusion of Apps on that list.

App. 64

# Tab 4

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

APL-XAI_00049575

App. 67

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY   APL-XAI_00049576



App. 68

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY                                                APL-XAI_00049577



App. 69

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

# Tab 5

App. 71

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0007231

App. 72

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0007232

# Tab 6

App. 74

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

APL-XAI_00074081

App. 76

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

APL-XAI_00074082

App. 77

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

APL-XAI_00074083

App. 78

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

APL-XAI_00074084

App. 79

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

APL-XAI_00074085

App. 80

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

APL-XAI_00074086

# Tab 7

App. 82

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

App. 83

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

APL-XAI_00015994

App. 84



HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY    APL-XAI_00015995

# Tab 8

App. 86

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

App. 87

App. 87

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

APL-XAI_00025401

App. 88

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

App. 89

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

App. 90

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

APL-XAI_00025404

# Tab 9

App. 92

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

# Tab 10

App. 94

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

APL-XAI_00051876

App. 95

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

APL-XAI_00051877

# Tab 11

# Tab 12

App. 103

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

App. 104

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

APL-XAI_00079855

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

APL-XAI_00079856

App. 106

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

APL-XAI_00079857

# Tab 13

App. 108

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

APL-XAI_00050023

App. 109

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

App. 110

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY                                                    APL-XAI_00050025

# Tab 14

32

CONFIDENTIAL

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

App. 112

APL-XAI_00026768

# Tab 15

Case 4:25-cv-00914-P    Document 193    Filed 04/15/26    Page 95 of 616    PageID 6831

**EVENT ENDED**    Last updated June 10, 2024, 3:08 PM EDT

# Apple WWDC 2024: Apple Intelligence is here with ChatGPT integration

The tech giant is expected to make major announcements around integrating artificial intelligence into its many products.



Apple joins the artificial intelligence race with new Apple Intelligence

03:01

This ad will end in 4

☐ ASHLEY LUXE

f    𝕏    ✉    🔗    |    🔖  SAVE

➕  ADD NBC NEWS TO GOOGLE

Updated June 10, 2024, 3:08 PM EDT

**By Rob Wile, Victoria Feng, and Brian Cheung**

[Apple has unveiled Apple Intelligence](#), its artificial intelligence software that features an integration with OpenAI's ChatGPT.

Its capabilities, which will be free when users opt into them, will include composing texts, creating images and emojis from scratch, and organizing and prioritizing functions and notifications while users are on their iPhones or Macbooks.

App. 114

Case 4:25-cv-00914-P     Document 193     Filed 04/15/26     Page 96 of 616     PageID 6832

The new functions were unveiled at Apple's annual Worldwide Developer Conference Monday at its headquarters in Cupertino, California.

Though widely expected, initial investor response to the launch of Apple Intelligence was muted, with Apple shares down nearly 2% an hour before markets closed Monday.

Apple execs led by CEO Tim Cook and Craig Federighi, senior vice president of software engineering, emphasized that AI on Apple would be "for the rest of us" – an attempt to make a world-changing if still opaque technology relatable to the average Apple user, who they say still expect its products to be secure and approachable.

Longtime Apple analyst Gene Munster said in a post on X that the new suite of features will be enough to prompt a new wave of users to upgrade their products to be able to tap into them.

---

674d ago / 3:08 PM EDT                                                    Share 🔗

## OpenAI touts Apple partnership, says integration coming later this year

 **Victoria Feng**

Apple will be integrating ChatGPT into its products, ChatGPT maker OpenAI announced in a recent press release. Some new features that the Apple-OpenAI partnership will bring about:

- Siri will give users the option to utilize ChatGPT to answer user questions

- Users will also be able to use ChatGPT to generate written content

OpenAI emphasized that privacy protections will be built in when using ChatGPT and Siri or Writing Tools.

"The ChatGPT integration, powered by GPT-4o, will come to iOS, iPadOS, and macOS later this year," OpenAI said in its release.

---

674d ago / 3:00 PM EDT

## Apple's user data key to AI race, analyst says

A quick reaction from Wedbush Securities analyst Dan Ives: "So far, all about Apple controlling device and the person and leveraging that as developers will need to tap into that data."

App. 115

Case 4:25-cv-00914-P    Document 193    Filed 04/15/26    Page 97 of 616    PageID 6833

That user data will be key, he said. Apple's offerings so far are a bit more conservative than what Google and OpenAI have put forward, but that isn't the difference-maker.

"ChatGPT combined with data," Ives said. "They will win the consumer AI game."

---

674d ago / 2:50 PM EDT

## Final takeaway: AI is here — but no Big Bang

The WWDC presentation has wrapped.

The big takeaway: AI – in the form of Apple Intelligence – is here, and market leader ChatGPT will be integrated into iOS and the other Apple operating systems moving forward.

But ultimately, there weren't a ton of fireworks. A lot of nice updates to features across Apple's product suite, but perhaps not the Big Bang that some analysts may have been hoping for.

Indeed, initial investor reaction is fairly muted, with Apple shares down 1.5%.

As Federighi stated, it's just the beginning. But it's a relatively subdued one.

---

674d ago / 2:46 PM EDT

## Apple Intelligence for developers

Apple isn't just putting its new AI into the hands of consumers – it's putting it into the hands of developers as well.

Developers will be able to access new tools and features to help them integrate Apple Intelligence into their products. Aided by the sessions offered this week at WWDC, developers will be able to dive into the world of Apple Intelligence and offer more AI features to users.

Advertisement

App. 116

674d ago / 2:45 PM EDT

## Altman touts Apple partnership

OpenAI CEO Sam Altman touted his company's partnership with Apple shortly after it was announced that ChatGPT would be available through Apple Intelligence.

674d ago / 2:43 PM EDT

## ...But not *only* ChatGPT

ChatGPT can also be used for "Compose" mode, where users can create content using the AI platform, like a bedtime story for your child.

ChatGPT will be free to Apple users – and all information and data will be secure and private. It's coming later this year.

But, Federichi says Apple is leaving the door open to other AI models beyond OpenAI's product.

App. 117



—      Apple introduces Apple Intelligence.      `Apple`

674d ago / 2:38 PM EDT

## Apple x ChatGPT

Federighi says Apple is integrating OpenAI's "pioneer and market leader" ChatGPT into Siri.



App. 118

ChatGPT integration with Siri.   Apple

674d ago / 2:36 PM EDT

## The magic promised by Image Wand

Image Wand, a new tool offered in the Notes app, will allow users to turn a rough sketch into what Apple calls a much more polished image – thanks to Apple Intelligence.



674d ago / 2:34 PM EDT

## Apple's stock down a bit

The market doesn't look impressed with Apple's AI presentation.

Its stock price is down 2.2% on the day.

674d ago / 2:33 PM EDT

## The end of cover letters?

Apple Intelligence will help edit users' writing, from class notes to blog posts to cover letters. Suggestions will be shown in line, and Rewrite will help people adjust the tone of their writing. Apple Intelligence will offer tips for grammar, word choice and sentence structure that users can accept.

With all the help Apple Intelligence provides, it's likely that employers will have a much more difficult time differentiating between cover letters.

App. 119

## How does ChatGPT feel about Apple's new AI venture?

I asked OpenAI's chatbot for its take on Apple's big announcement.

"I'm definitely intrigued! The concept of Apple Intelligence sounds fascinating," ChatGPT replied. "It could represent a significant step forward in integrating AI capabilities into Apple's ecosystem."

It's not yet clear whether Apple and OpenAI will be partners or competitors in the world of AI, though a partnership has been rumored.

674d ago / 2:32 PM EDT

## Pretty straightforward so far

Apple's introduction of AI is leaning heavily on what we've seen from generative AI for some time: the ability to help write emails, create pictures, respond to text prompts.

That's not a critique, and Apple is good at taking existing tech and making it consumer friendly. This could all still end up being a leap forward for users, but so far it's about what we would expect.

Advertisement

674d ago / 2:32 PM EDT

## Build your own emojis with GenMoji

You can now plug in a description for an emoji idea and Apple Intelligence will create it. Apple is calling it GenMoji.

App. 120

—   The introduction of Genmoji.    `Apple`

---

`674d ago / 2:26 PM EDT`

## Apple preserving its brand proposition as it enters AI

Apple's integration of AI is in keeping with its longtime promise to users: making it relatable – and secure.

It's doing this by making much of the AI processing "on device" – meaning within someone's own iPhone or Mac. The company is touting this as ensuring user privacy.

When it must go outside the device, it is creating Private Cloud Compute. These will use Apple-backed servers – but Apple will not be able to access or store your data.

AI is scary. Apple is trying to make it normal.

---

`674d ago / 2:21 PM EDT`

## The biggest AI rollout yet?

Yes, ChatGPT is open to the public. And Meta has put AI front-and-center in a lot of its platforms.

But Apple putting AI into its products and software is probably the largest rollout of the tech to consumers, a bet that this is something consumers will find helpful.

App. 121

674d ago / 2:21 PM EDT

## Something new for Siri

Siri is getting a refresh. Apple's top goals for Siri are to make the voice assistant more natural, relevant and personable using Apple Intelligence. Siri will now be able to:

- Speak more conversationally

- Respond to typed commands and switch between text and voice

- Answer questions about Apple features and settings

- Take actions within and across apps

Advertisement

674d ago / 2:15 PM EDT

## Personal intelligence, rather than artificial intelligence

It seems like Apple has avoided using "artificial" in relation to this AI tech.

Instead, there's an emphasis on "personal" intelligence.

674d ago / 2:13 PM EDT

## Apple Intelligence: Writing and image features

If you're creating an article or blog post, Apple Intelligence will be able to enhance your writing.

And if you wanted to create an image, Apple Intelligence can help you build one from scratch.

App. 122

674d ago / 2:13 PM EDT

## Apple touting AI with privacy

A "woot woot" chant and clapping at promises for AI use "hand in hand" with privacy.

---

674d ago / 2:13 PM EDT

## The new AI: Apple Intelligence

Apple announced its version of AI, which the company called Apple Intelligence. "It draws on your personal context to give you an intelligence that's most helpful and relevant for you," said Craig Federighi, Apple's senior vice president of software engineering.



Apple

Advertisement

App. 123

674d ago / 2:07 PM EDT

## Tim Cook introducing AI

We're about to get into the AI section. Tim Cook introducing it by saying how it must integrate with Apple's core principles: powerful, intuitive – and provide meaningful connection to users.

674d ago / 2:06 PM EDT

## Here we go

It's time.

Tim Cook is teasing Apple's entry into AI, emphasizing it as "the next big step for Apple."

674d ago / 2:01 PM EDT

## A peek into the Passwords app

Apple is launching Passwords, an app that will allow users to access their passwords, verification codes and security alerts in one place.

This app will be available on the iMac, iPhone, iPad and Vision Pro as well as on Windows. Apple said that the passwords will securely sync across devices.

674d ago / 1:59 PM EDT

## Apple announces MacOS Sequoia

Named after the California tree, its new features are:

- iPhone mirroring

- Access your phone when it's in a different room – and interact on phone wirelessly from a Mac

- iPhone notifications will simultaneously appear on Mac

- Window snapping when you drag a window to the edge of a screen

App. 124

Advertisement

674d ago / 1:55 PM EDT

## AI-nytime now…

The AI-nticipation is killing me…

674d ago / 1:54 PM EDT

## SmartScript, a new feature that utilizes handwriting

With the introduction of SmartScript, the Notes app will now allow users to select and copy their writing, as well as make it straighter. Using machine learning models, SmartScript will refine a user's handwriting as they go.

674d ago / 1:50 PM EDT

## Calculator on iPad!

Get your pencils ready – literally: Calculator is coming to iPad – and now you can use its electronic Apple pencil to help users doing math problems on iPad.

674d ago / 1:46 PM EDT

App. 125

## Packed house

Not many empty seats in the audience at WWDC today.



—— Attendees watching the presentation on the Apple campus in Cupertino, Calif.    Jeff Chiu / AP

Advertisement

674d ago / 1:46 PM EDT

## Updates to the Health app

App. 126

Case 4:25-cv-00914-P    Document 193    Filed 04/15/26    Page 108 of 616    PageID 6844

Apple mentioned cycle tracking, a feature that's available on the Health app, is available to help people track their menstrual cycle and will now show them their gestational age. Additionally, the app will display a user's pregnancy across all charts and notify them when their heart rate is too high.

674d ago / 1:45 PM EDT

## Apple Watch update: Training, Vitals app, and custom photos

Apple Watch is getting some new tweaks:

- A new Vitals app that has more enhanced features than the standard Health app

- Advanced fitness training using the watch's body tracking features

- A real-time translation feature

- A new ability to customize photos for the home screen of your watch

674d ago / 1:38 PM EDT

## Support for RCS messaging

Apple mentioned that Rich Communication Services, known as RCS, will be coming to iOS. RCS is a communication protocol that aims to replace SMS messages. This change is expected to improve messaging between Apple and non-Apple users.

674d ago / 1:36 PM EDT

## OpenAI CEO Sam Altman in attendance

With anticipation of an Apple-OpenAI partnership, it's notable that OpenAI CEO Sam Altman is in the audience.

App. 127



—    OpenAI CEO Sam Altman, center, is attending the Apple event in Cupertino, Calif.    Jeff Chiu / AP

Advertisement

674d ago / 1:34 PM EDT

## Noise filters will enhance audio quality on AirPods

Apple is adding a feature called "Voice Isolation" to AirPods that will allow background noise to be removed.

App. 128

And a nod or a head-shake will also dial up Siri on AirPods.

674d ago / 1:33 PM EDT

## Behind the scenes

Our correspondent Brian Cheung is on location for NBC News. Here's a quick peek behind the scenes, courtesy of CNBC's Steve Kovach.



—   Brian Cheung goes live for NBC News from Apple Park in Cupertino, Calif.    NBC News

App. 129

674d ago / 1:30 PM EDT

## Nothing direct on AI yet

So far, the features Apple is announcing are updates of existing products and services. While "intelligence" and "machine-learning" capabilities are built into some of them, a big AI reveal has yet to come.

674d ago / 1:30 PM EDT

## Updates to iMessage

Apple announced multiple key updates to its iMessage app.

First, users will now be able to react to texts with any emoji, not just the options originally provided by Apple. They will also be able to format and schedule texts for later.

Individual words and emojis can also be now be emphasized with a slate of new effects.

Finally, there will now be satellite capabilities on the iPhone 14 and later for both iMessages and SMS messaging. Apple emphasized that iMessages sent over satellite are end-to-end encrypted.

Advertisement

674d ago / 1:30 PM EDT

## Hiking trails coming to Apple Maps

You'll soon be able to access topographic hiking trails, including offline, via Apple Maps. They'll also allow you to create and track your own routes.

674d ago / 1:29 PM EDT

App. 130

## New flexibility on iPhone home screen, control center

Apple will let users do more to customize their iPhone home screen, including a new look for app icons in dark mode and a way to customize the colors off icons.

Control Center will also expand to include more settings including home controls and media playback, and providing a way for developers to add controls.

674d ago / 1:19 PM EDT

## New countries for Vision Pro

Apple announced its Vision Pro at last year's WWDC. Just now, Tim Cook shared that starting June 28, the Vision Pro will be available in China, Japan and Singapore, with more countries to follow in July.

674d ago / 1:19 PM EDT

## Apple announces VisionOS 2, a software update to its Vision Pro headset

Apple announced VisionOS 2, an updated software platform for its Vision Pro headset.

The key new feature: Vision Pro users will now be able to create "spatial photos" and "spatial videos" – 3D images that add depth to a regular 2-D image.

Advertisement

674d ago / 1:11 PM EDT

## Apple teases Severance's second season

App. 131

Apple teased the highly anticipated second season of "Severance" in its trailer hyping the company's streaming service:

---

674d ago / 1:11 PM EDT

## Apple TV+ celebrates five-year anniversary

Tim Cook started off the keynote by touting five years of Apple TV+. Apple teased new shows as well as some of its hits.

---

674d ago / 1:03 PM EDT

## And we're off!

We're starting with some Apple executive skydiving and a few words from Tim Cook, who touts "profound new intelligence capabilities."

---

674d ago / 12:57 PM EDT

## Minutes away

We're just a few minutes from kick off! Stick with us as we'll live blog the major announcements and whatever else comes along.

App. 132

Advertisement

674d ago / 12:56 PM EDT

## Apple exec teases AI at keynote

Greg Joswiak, Apple's senior vice president of marketing, tweeted out that watching today's keynote is the "intelligent thing to do," hinting that Apple will announce AI-related updates today.

674d ago / 12:51 PM EDT

## Calm before the storm

Wall Street Journal columnist and NBC News contributor Joanna Stern posted from a quiet corner by the event. It'll only get busier from here.

674d ago / 12:51 PM EDT

## Don't expect a big surge in Apple's share price today

App. 133

Just ahead of kickoff, shares in Apple are actually trading slightly lower.

And Apple analyst Gene Munster says not to expect them to do much once the presentations are underway either.

Munster notes on X that Apple's expected AI rollout has already been "priced in," since a statement earlier this from an Apple exec foreshadowing it.

Since that post, on March 26, Apple shares have climbed 15%, Munster notes.

"The bottom line is today's announcements are largely known and baked into the stock," he said. "What matters going forward is whether Apple will display a core competency in AI."

674d ago / 12:37 PM EDT

## Tim Cook teases WWDC

Apple CEO Tim Cook teased today's event in a post on X from the company's picturesque campus.

Advertisement

674d ago / 12:34 PM EDT

App. 134

## Apple AI right on time, analyst says

Many people have criticized Apple for being too slow in its adoption of AI. But independent analyst Ben Thompson says Apple is right on time.

"AI is a complement to Apple's business, not disruptive," Thompson wrote for his website Stratechery.

He noted that smartphones will likely be the platform that AI technologies are released on for the foreseeable future, instead of AI replacing smartphones. And if Apple announces a partnership with OpenAI (as it is expected to do today), this will likely decrease the threat of OpenAI building its own device to rival the iPhone.

"[They] are well-positioned to be one of AI's big winners," Thompson wrote of Apple.

---

674d ago / 11:50 AM EDT

## A piece of Apple history

Bloomberg's Jon Erlichman notes that on this day in 1977, Apple started shipping its Apple II computers, which helped put the company on the map and make personal computers accessible to the general public.

---

674d ago / 11:44 AM EDT

## On the ground at WWDC

It's already a scene at Apple Park.

We're staged with other media outside the Steve Jobs Theater, though the event is a bit of a walk over to Apple Park Loop. It's a cool 62 degrees but expected to heat up considerably as the day progresses.

More than an hour before the event, there's already hype men at the entrance trying to amp guests up. You can hear the occasional cheer.

App. 135

674d ago / 11:39 AM EDT

## Longtime Apple analyst Munster: Most important WWDC since iPhone launch

Gene Munster, a longtime Apple analyst and managing partner and co-founder at Deepwater Assest Management, said today is Apple's most momentous conference since it announced the launch of the iPhone more than 17 years ago.

In a post on X, Munster said today was more important for the future of the company than the announcement of the Apple Store (July 2008), the iPad (January 2010), the Apple Watch (September 2014), Apple TV (March 2019) and the Vision Pro (June 2023)

"Even though AI won't initially be a direct revenue segment, infusing AI across the product line is essential for the existing products to thrive," he said.

Advertisement

674d ago / 11:23 AM EDT

Apple's share price is up approximately 7% since June 13, 2023, while Google and Microsoft shares are both up more than 25%.

App. 136

674d ago / 11:05 AM EDT

## How to watch the keynote

Apple will be kicking off WWDC24 at 1 p.m. ET with a livestream of the keynote on its website and YouTube channel, as well as the Apple TV app.

674d ago / 11:05 AM EDT

## What is WWDC?

Apple's Worldwide Developer's Conference, commonly known as WWDC, is an annual event to showcase the company's new software and technologies.

WWDC, which started in 1983, has been a launchpad for some of the company's biggest products. Last year, the company introduced its Vision Pro.

This year, WWDC will run from June 10 to 14 at Apple Park, with the keynote address delivered by CEO Tim Cook at 1 p.m. ET today. Additionally, sessions for developers will be held throughout the week, and the 2024 Apple Design Awards will be presented.

674d ago / 11:05 AM EDT

## A boost to Apple's bottom line

Apple's embrace of AI could help the company boost its profits and in turn its stock price, according to a note from Dan Ives, a managing director and senior equity research analyst at Wedbush Securities.

He noted that Apple's AI rollout could help spark growth in its key business, most notably iPhone sales.

"In a nutshell WWDC is a pivotal moment in Apple's future as the developers are the hearts and lungs of the Cupertino growth story and will now start a new AI driven chapter in the Apple

App. 137

growth story for the coming years," Ives wrote in an emailed note.



---

`674d ago / 11:05 AM EDT`

## Apple faces pressure to show off AI following splashy events at OpenAI, Google and Microsoft

For years, Apple avoided using the acronym AI when talking about its products. Not anymore.

The boom in generative artificial intelligence, spawned in late 2022 by OpenAI, has been the biggest story in the tech industry of late, lifting chipmaker Nvidia to a $3 trillion market cap and causing a major shifting of priorities at Microsoft, Google and Amazon, which are all racing to add the technology into their core services.

Investors and customers now want to see what the iPhone maker has in store.

New AI features are coming at Apple's Worldwide Developers Conference (WWDC), which takes place on Monday at Apple's campus in Cupertino, California. Apple CEO Tim Cook has teased "big plans," a change of approach for a company that doesn't like to talk about products before they're released.

Read the full story on CNBC.com.

---

`674d ago / 11:05 AM EDT`

## Why everyone is focused on this conference

For some two decades, Apple has been the dominant force in the tech industry. The success of its iPhone has been so massive that it has now attracted the attention of the U.S. Department of

App. 138

Justice, which is suing the company for having created what prosecutors say is a monopoly on smartphones.

But iPhones are expected to take a backseat in today's presentation. Instead, Apple is expected to announce a brand new vision for the company as the age of artificial intelligence dawns. Through a widely foreshadowed partnership with ChatGPT creator OpenAI, Apple is set to discuss how AI will now be part of the core of its products and services.

---

674d ago / 11:05 AM EDT

## It's the big day

Is today the day that Apple becomes AI-pple?

Starting at 1 p.m. ET, Apple's keynote presentation for its Worldwide Developers Conference will kick off.

And while WWDC, as it's commonly known, is a big deal in the tech world each year, this is expected to be special.

The boom in artificial intelligence, most notably around Large Language Models and generative AI, has been embraced by just about every big tech company. But Apple is playing catchup.

That's expected to change today.



Rob Wile      𝕏   ✉

Rob Wile is a Pulitzer Prize-winning journalist covering breaking business stories for NBCNews.com.

Victoria Feng      ✉

Victoria Feng is an intern on the NBC News technology desk.

Brian Cheung

Brian Cheung is a business and data correspondent for NBC News.

App. 139

Case 4:25-cv-00914-P       Document 193       Filed 04/15/26       Page 121 of 616       PageID 6857

App. 140

ABOUT

CONTACT

HELP

CAREERS

AD CHOICES

PRIVACY POLICY

✓✕ YOUR PRIVACY CHOICES

CA NOTICE

TERMS OF SERVICE

NBC NEWS SUBSCRIPTION TERMS OF SERVICE

NBC NEWS SITEMAP

CLOSED CAPTIONING

SUBSCRIBE

ADVERTISE

NBC SELECT

© 2026 NBCUniversal Media, LLC

NBC NEWS   TODAY

# Tab 16

App. 142

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

APL-XAI_00006927

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

APL-XAI_00006928

# Tab 17

Highly Confidential – Outside Counsels' Eyes Only

App. 145

OAI_NDTX_0030288

Highly Confidential – Outside Counsels' Eyes Only

App. 146

OAI_NDTX_0030289

App. 147

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0030290

# Tab 18

App. 149

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0020203

App. 150

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0020204

# Tab 19

Confidential

App. 153

Confidential

OAI_NDTX_0018959

# Tab 20



App. 155

OAI_NDTX_0007333

Highly Confidential – Outside Counsels' Eyes Only

App. 156

OAI_NDTX_0007334

App. 157



Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0007335

Highly Confidential – Outside Counsels' Eyes Only

App. 158

OAI_NDTX_0007336



App. 159

Highly Confidential – Outside Counsels' Eyes Only

App. 160



Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0007338

# Tab 21

App. 162



HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

APL-XAI_00027508

# Tab 22

App. 164

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

APL-XAI_00070986

# Tab 23

*CONFIDENTIAL*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| X CORP. and X.AI LLC, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 4:25-cv-00914-P |
| | § | |
| APPLE INC., OPENAI, INC., OPENAI, L.L.C., | § | |
| and OPENAI OPCO, LLC, | § | |
| | § | |
| Defendants. | § | |

**<u>DEFENDANT APPLE INC.'S INITIAL DISCLOSURES PURSUANT TO FED. R. CIV.
P. 26(a)(1)</u>**

App. 166

2



2



4

App. 168

5



App. 169

6

App. 170

# Tab 24

| | |
|---|---|
| **From:** | Eisman, Scott A. |
| **To:** | Willard Zehmer, Lauren |
| **Cc:** | Reiser, Craig M.; Justus, Bradley; Yung, Eva H.; Boisvert, Caroline P.; Erickson, Christopher; chris@stonehilton.com; judd@stonehilton.com; Sidhu, Elizabeth; dee.kelly@kellyhart.com; julia.wisenberg@kellyhart.com; Henn, Emily; Liu, Henry; Weiland, Carol; Berman, Sean; Tan, Zhi Yang |
| **Subject:** | RE: X Corp. and X.AI LLC v. Apple Inc. et al., No. 4:25-cv-00914-P (N.D. Tex.) |
| **Date:** | Wednesday, December 31, 2025 7:18:45 PM |
| **Attachments:** | image001.png |
| | image002.png |

Lauren and Zhi Yang,

We write to follow up on our December 30 meet-and-confer regarding our proposed custodians and search terms. We believe it would be productive to meet and confer further about the topics below, and propose that we use part of Friday's meet-and-confer to continue discussing custodians and search terms.

### *Executive Team Members*

You said we proposed too many custodians from Apple's executive team, and that the ones we proposed—Tim Cook, John Giannandrea, Amar Subranmanya, Eddy Cue, and Craig Federighi—were duplicative of one another. You added that any discussion regarding the Apple-OpenAI agreement would have gone through your proposed custodian Adrian Perica, Apple's VP of Corporate Development.

We reminded you that we already agreed to withdraw Amar Subranmanya, and noted that it was reasonable to have more than one custodian for requests for the Apple-ChatGPT integration, a topic at the heart of the case.

We then discussed specific custodians from this category, and we provide additional context below:

***Eddy Cue.*** We pointed out that Cue's statements regarding AI are cited in the Complaint, and that he testified about genAI and the specifics of the Apple-ChatGPT integration at the Google Search remedies hearing. *See* Tr. of Remedies Hr'g at 3840:13-19, 3841-42, 3843:23-24, 3856-57, 3859:11-14, *United States v. Google, LLC*, No. 20-3010 (D.D.C. May 7, 2025). For instance, Cue testified about why he believed that Apple selected OpenAI ("OpenAI is the best one right now") and Apple's decision to include only one natively integrated generative AI chatbot ("We can't certainly do more than one at this point . . . ."). We therefore continue to believe that Cue is a proper custodian. You agreed to take this back for further consideration, and we agreed to take back your position on our proposed executive custodians to consider whether there were executive custodians that we could agree to table or withdraw.

***Tim Cook, Craig Federighi, and John Giannandrea.*** We continue to believe that some combination of these custodians is appropriate—at minimum to allow us to test Apple's rationale in entering into the agreement with OpenAI. Indeed, Apple has already asserted a defense that there is a legitimate business justification for Apple's agreement to exclusively integrate with OpenAI. Dkt. No. 88, 45. Apple previewed this defense in its motion to dismiss, citing Tim Cook's public statement that Apple chose to partner with OpenAI because "they're the best," and citing OpenAI's purported user-privacy protections. Dkt. No.

App. 172

37, 9-10. Craig Federighi—who touted the integration when he unveiled it at Apple's Worldwide Developers Conference—also presumably supported the deal.

But not all Apple executives shared this belief. As we have alleged, Apple's outgoing Head of AI John Giannandrea reportedly lobbied against the deal with OpenAI, voicing concerns that the company is untrustworthy. Compl. ¶ 73.

Apple's decision to integrate with OpenAI over the objections of its Head of AI—who, given his title, ostensibly had significant influence in the decision of whether to integrate and with whom—raises questions about Apple's ultimate rationale for selecting OpenAI as its sole integration partner. It stands to reason, then, that Plaintiffs are entitled to documents not only from John Giannandrea, but also from the Apple executives who appear to have overruled him: Tim Cook and Craig Federighi.

Given the above, before we can agree to consider tabling or withdrawing any of Cook, Giannandrea, and Federighi as custodians, we need more information from Apple about why none of those three people would have unique documents relating to the integration. We would thus appreciate any additional information you can give us or representations you can make about Cook's, Giannandrea's, and Federighi's custodial files—including whether and why the files of one would be duplicative of the files of another.


### *App Store Custodians*

To begin with, we disagree with your claim that we proposed too many custodians for our App Store allegations given the "minor role" they play in the case.  On the contrary, the App Store allegations make up a core part of Plaintiffs' claims against Apple. Plaintiffs allege that Apple maintained its monopoly in the smartphone market, and conspired to maintain OpenAI's monopoly in the generative AI chatbot market, by "deprioritizing rival apps in Apple's App Store." Compl. ¶ 228; *see id.* ¶¶ 195, 203. Plaintiffs also allege that Apple has used the App Store "as a weapon against competitors," *id.* ¶ 82, including Plaintiffs, *id.* ¶ 102. Thus, while we have accepted your construction of these allegations as being distinct in the context of negotiations over custodians, we disagree with your characterization of these allegations as being "minor."

In all events, as we explained on our call, we need custodial data from several different Apple employees who were involved in the events underlying Plaintiffs' App Store allegations.

In response, you claimed that documents from many of the proposed custodians would be duplicative of one another because they were in a single chain of direct reports (Jenny Mo, Stephanie Chan, Chip Canter, and Carson Oliver). You said that we did not need the executives in this chain because documents conveying their ultimate decisions were conveyed to, and therefore possessed by, the individuals who interacted with Plaintiffs' representatives.

While we said that we might not need every person in the chain to be a custodian, we disagreed that documents conveying the ultimate decisions and rationales that were passed on to Plaintiffs' representatives would be sufficient. We noted that the Complaint alleges that Apple has provided "pretextual reasons" for its App Store conduct, Compl. ¶

82; *see id.* ¶ 102—meaning that the Apple's true rationales likely were not conveyed to Plaintiffs and may not have even been conveyed to the Apple employees who interfaced with Plaintiffs. We thus explained that we would need documents from whoever served as the ultimate decisionmakers in addition to documents from the individuals who communicated with Plaintiffs' representatives. To that end, we asked you to tell us whether the relevant decisionmaker in Jenny Mo's chain would be Stepanie Chan, Chip Canter, or Carson Oliver. That person, in addition to Jenny Mo, should be a custodian.

You also represented that Arun Singh sits in a different reporting chain from Jenny Mo. We believe that Singh is therefore also an appropriate custodian, along with the decisionmaker in his reporting chain.

Lastly, we asked for your position on our proposal to include Trystan Kosmynka and Bill Havlicek—the co-leaders of the App Store's app review team—as custodians. You said that Kosmynka's files would be duplicative of Havlicek's, but that you would consider agreeing to Kosmynka if we agreed to withdraw some members of Apple's executive team. As noted above, we are considering which executives we can table or withdraw as part of the overall discussion of custodians. We note, however, that we believe that Kosmynka and Havlicek are appropriate custodians. As Plaintiffs allege, Phillip Shoemaker, Apple's former director of app review, publicly stated that Apple's App Store rules are "arbitrary" and "arguable," and admitted that Apple had pretextually enforced those rules to harm competitors. Compl. ¶ 82. Kosmynka and Havlicek, as the Apple employees who now occupy Shoemaker's role, are therefore likely to have relevant documents.

### Additional Custodians for Integration Requests

We also discussed the need for non-executives with relevant information about the Apple-OpenAI agreement and the Apple-ChatGPT integration, including engineers. To that end, we asked you to explain why Apple would not agree to produce documents from Frank Chu, an engineer and senior leader in Apple's AI group. You said that not all of Apple's AI engineers were involved in generative AI, and that Josh Schaffer, rather than Frank Chu, would have relevant documents.

We do not believe that Schaffer would be the only custodian on this front with nonduplicative documents, but without organizational charts and with only two names listed in Apple's response to Interrogatory No. 1, we are not well positioned to identify additional custodians at this level. Please let us know what other non-executive current or former employees would have documents relevant to the Apple-OpenAI agreement and Apple-ChatGPT integration.

### Other Custodians

We agreed to withdraw Mike Rockwell and Phillip Shoemaker based on your representation that these individuals left Apple before the start of the Relevant Period. We also agreed to withdraw Robert An based on your representation that you could not find anyone by this name who works or has worked for Apple.

App. 174

*Search Terms*

We asked whether the edits reflected in the search-term counterproposal you sent on December 30, 2025, at 9:41 a.m. ET, were all substantive (i.e., non-syntactical). You said that the edits in the counterproposal did not include purely syntactical changes. You also noted that where you proposed deleting entire search strings, you did so because you did not understand what the search string was trying to capture, and that you would reconsider these search strings if we explained our rationale in proposing them. We said that we would do so.

****

As noted above, we are available, including on Friday, to continue meeting and conferring about custodians.

Best regards,
Scott


**Scott A. Eisman**
Partner
T: 212.261.5642

---

**From:** Willard Zehmer, Lauren <LZehmer@cov.com>
**Sent:** Monday, December 29, 2025 2:18 PM
**To:** Eisman, Scott A. <seisman@axinn.com>
**Cc:** Reiser, Craig M. <creiser@axinn.com>; Justus, Bradley <bjustus@axinn.com>; Yung, Eva H. <eyung@axinn.com>; Boisvert, Caroline P. <cboisvert@axinn.com>; Erickson, Christopher <cerickson@axinn.com>; chris@stonehilton.com; judd@stonehilton.com; Sidhu, Elizabeth <ESidhu@cov.com>; dee.kelly@kellyhart.com; julia.wisenberg@kellyhart.com; Henn, Emily <ehenn@cov.com>; Liu, Henry <HLiu@cov.com>; Weiland, Carol <CWeiland@cov.com>; Berman, Sean <SBerman@cov.com>; Tan, Zhi Yang <ZTan@cov.com>
**Subject:** RE: X Corp. and X.AI LLC v. Apple Inc. et al., No. 4:25-cv-00914-P (N.D. Tex.)


**Caution: External Email**

---

Scott,

In advance of our meet-and-confer on custodians tomorrow, we share below some general concerns about Plaintiffs' list of proposed Apple custodians to better inform our discussion.

**App Store Custodians**

Despite the minor role that Plaintiffs' App Store allegations play in the Complaint, Plaintiffs seek 10 additional Apple custodians—over half the list of requested custodians—purportedly relevant to "App Store de-preferencing RFPs."  These App Store custodian requests are clearly

disproportionate to the needs of the case.  Apple has already proposed a custodian (Smokey Fontaine) that will have relevant information pertaining to Plaintiffs' allegations concerning the Must-Have Apps List.  Plaintiffs' small handful of conclusory and vague allegations about deprioritization of generative AI chatbot competitors in the App Store does not entitle Plaintiffs to 10 different App Store custodians—many of whom have no direct interactions with Plaintiffs or generative AI chatbots or any role in App Store rankings.  As just one example, it is not at all clear how the Senior Vice President of worldwide *marketing* would have relevant information to the specific App Store allegations in the Complaint.  That said, Apple is open to discussing whether there are 1 or 2 App Store custodians with unique and relevant information that would be reasonable to include in addition to Smokey.  But the current list is vastly overbroad.

**Custodians Outside the Relevant Date Range**

We also have concerns that several of Plaintiffs' proposed custodians are unlikely to have responsive information during the relevant date range.  For example, Philip Shoemaker left Apple in 2016, long before the start of Plaintiffs' own proposed date range starting in June 2022 and well before the ChatGPT integration in 2024.  Similarly, the other proposed custodians that left Apple before the ChatGPT integration (and before Grok even launched in the App Store) are also unlikely to have relevant information.

In the other direction, Plaintiffs have requested several custodians on the belief that they will inherent relevant roles *in the future*.  For example, Plaintiffs request Sabih Khan and Eddy Cue on the basis that they will inherit John Giannandrea's responsibilities.  As previously discussed, we do not agree that John Giannandrea is an appropriate custodian.  But even if he were, that Sabih and Eddy may inherit part of his portfolio at some point in future provides no basis to collect their documents from now going back the past few years.

**Executive Team Members**

Plaintiffs' proposed list of custodians includes six different members of Apple's senior executive team.  Such a request is patently overbroad and unlikely to lead to relevant and proportional discovery.  Apple has already proposed Adrian Perica as a custodian, who is the executive team member who executed the ChatGPT agreement and is most likely to have responsive information regarding the ChatGPT integration.  Plaintiffs are not entitled to seek discovery of such a large number of very senior Apple executives without any direct relationship to the allegations in this case.

Best,
Lauren

---

**From:** Eisman, Scott A. <seisman@axinn.com>
**Sent:** Friday, December 26, 2025 8:52 PM
**To:** Willard Zehmer, Lauren <LZehmer@cov.com>; Sidhu, Elizabeth <ESidhu@cov.com>;

dee.kelly@kellyhart.com; julia.wisenberg@kellyhart.com; Henn, Emily <ehenn@cov.com>; Liu, Henry <HLiu@cov.com>; Weiland, Carol <CWeiland@cov.com>; Berman, Sean <SBerman@cov.com>; Tan, Zhi Yang <ZTan@cov.com>
**Cc:** Reiser, Craig M. <creiser@axinn.com>; Justus, Bradley <bjustus@axinn.com>; Yung, Eva H. <eyung@axinn.com>; Boisvert, Caroline P. <cboisvert@axinn.com>; Erickson, Christopher <cerickson@axinn.com>; chris@stonehilton.com; judd@stonehilton.com
**Subject:** RE: X Corp. and X.AI LLC v. Apple Inc. et al., No. 4:25-cv-00914-P (N.D. Tex.)

**[EXTERNAL]**
Thanks, Lauren. 2 p.m. on Tuesday works for us. We'll send an invite.

**Scott A. Eisman**
Partner
T: 212.261.5642

**From:** Willard Zehmer, Lauren <LZehmer@cov.com>
**Sent:** Friday, December 26, 2025 3:44 PM
**To:** Eisman, Scott A. <seisman@axinn.com>; Sidhu, Elizabeth <ESidhu@cov.com>; dee.kelly@kellyhart.com; julia.wisenberg@kellyhart.com; Henn, Emily <ehenn@cov.com>; Liu, Henry <HLiu@cov.com>; Weiland, Carol <CWeiland@cov.com>; Berman, Sean <SBerman@cov.com>; Tan, Zhi Yang <ZTan@cov.com>
**Cc:** Reiser, Craig M. <creiser@axinn.com>; Justus, Bradley <bjustus@axinn.com>; Yung, Eva H. <eyung@axinn.com>; Boisvert, Caroline P. <cboisvert@axinn.com>; Erickson, Christopher <cerickson@axinn.com>; chris@stonehilton.com; judd@stonehilton.com
**Subject:** RE: X Corp. and X.AI LLC v. Apple Inc. et al., No. 4:25-cv-00914-P (N.D. Tex.)

**Caution: External Email**

Hi Scott,

I hope you had a nice holiday as well.

We are available to meet-and-confer regarding custodians next Tuesday, December 30 between 1-3pm ET if a time within that window works on your end.

Best,
Lauren

**From:** Eisman, Scott A. <seisman@axinn.com>
**Sent:** Friday, December 26, 2025 2:59 PM
**To:** Willard Zehmer, Lauren <LZehmer@cov.com>; Sidhu, Elizabeth <ESidhu@cov.com>; dee.kelly@kellyhart.com; julia.wisenberg@kellyhart.com; Henn, Emily <ehenn@cov.com>; Liu,

Henry <HLiu@cov.com>; Weiland, Carol <CWeiland@cov.com>; Berman, Sean <SBerman@cov.com>; Tan, Zhi Yang <ZTan@cov.com>
**Cc:** Reiser, Craig M. <creiser@axinn.com>; Justus, Bradley <bjustus@axinn.com>; Yung, Eva H. <eyung@axinn.com>; Boisvert, Caroline P. <cboisvert@axinn.com>; Erickson, Christopher <cerickson@axinn.com>; chris@stonehilton.com; judd@stonehilton.com
**Subject:** RE: X Corp. and X.AI LLC v. Apple Inc. et al., No. 4:25-cv-00914-P (N.D. Tex.)

**[EXTERNAL]**
Lauren,

Just following up on my email below about times to meet and confer next week.

Hope you had a nice holiday.

Best regards,
Scott


**Scott A. Eisman**
Partner
T: 212.261.5642

---

**From:** Eisman, Scott A. <seisman@axinn.com>
**Sent:** Tuesday, December 23, 2025 5:48 PM
**To:** Willard Zehmer, Lauren <LZehmer@cov.com>; Sidhu, Elizabeth <ESidhu@cov.com>; dee.kelly@kellyhart.com; julia.wisenberg@kellyhart.com; Henn, Emily <ehenn@cov.com>; Liu, Henry <HLiu@cov.com>; Weiland, Carol <CWeiland@cov.com>; Berman, Sean <SBerman@cov.com>; Tan, Zhi Yang <ZTan@cov.com>
**Cc:** Reiser, Craig M. <creiser@axinn.com>; Justus, Bradley <bjustus@axinn.com>; Yung, Eva H. <eyung@axinn.com>; Boisvert, Caroline P. <cboisvert@axinn.com>; Erickson, Christopher <cerickson@axinn.com>; chris@stonehilton.com; judd@stonehilton.com
**Subject:** RE: X Corp. and X.AI LLC v. Apple Inc. et al., No. 4:25-cv-00914-P (N.D. Tex.)


Thanks, Lauren. Please propose some times that work on your end.


**Scott A. Eisman**
Partner
T: 212.261.5642

---

**From:** Willard Zehmer, Lauren <LZehmer@cov.com>
**Sent:** Tuesday, December 23, 2025 5:37 PM
**To:** Eisman, Scott A. <seisman@axinn.com>; Sidhu, Elizabeth <ESidhu@cov.com>; dee.kelly@kellyhart.com; julia.wisenberg@kellyhart.com; Henn, Emily <ehenn@cov.com>; Liu, Henry <HLiu@cov.com>; Weiland, Carol <CWeiland@cov.com>; Berman, Sean <SBerman@cov.com>; Tan, Zhi Yang <ZTan@cov.com>
**Cc:** Reiser, Craig M. <creiser@axinn.com>; Justus, Bradley <bjustus@axinn.com>; Yung, Eva H.

App. 178

<eyung@axinn.com>; Boisvert, Caroline P. <cboisvert@axinn.com>; Erickson, Christopher <cerickson@axinn.com>; chris@stonehilton.com; judd@stonehilton.com
**Subject:** RE: X Corp. and X.AI LLC v. Apple Inc. et al., No. 4:25-cv-00914-P (N.D. Tex.)

**Caution: External Email**

---

Scott,

Thank you for following up with the additional information regarding Plaintiffs' proposed list of Apple custodians.  We are still in the process of reviewing with our client and are available for a meet-and-confer next week after the holidays.

Best,
Lauren

---

**From:** Eisman, Scott A. <seisman@axinn.com>
**Sent:** Monday, December 22, 2025 7:37 AM
**To:** Sidhu, Elizabeth <ESidhu@cov.com>; Willard Zehmer, Lauren <LZehmer@cov.com>; dee.kelly@kellyhart.com; julia.wisenberg@kellyhart.com; Henn, Emily <ehenn@cov.com>; Liu, Henry <HLiu@cov.com>; Weiland, Carol <CWeiland@cov.com>; Berman, Sean <SBerman@cov.com>; Tan, Zhi Yang <ZTan@cov.com>
**Cc:** Reiser, Craig M. <creiser@axinn.com>; Justus, Bradley <bjustus@axinn.com>; Yung, Eva H. <eyung@axinn.com>; Boisvert, Caroline P. <cboisvert@axinn.com>; Erickson, Christopher <cerickson@axinn.com>; chris@stonehilton.com; judd@stonehilton.com
**Subject:** RE: X Corp. and X.AI LLC v. Apple Inc. et al., No. 4:25-cv-00914-P (N.D. Tex.)

[EXTERNAL]
Counsel,

I write to follow up on our December 18 meet-and-confer about the custodians we proposed. Our list included individuals you identified as possessing documents relevant to this litigation as well as individuals we identified based on our investigation of the facts underlying this case. During the meet-and-confer, you requested that we explain why we proposed the individuals that we identified. We memorialize below our discussion of those individuals, and state our position on the individuals we did not discuss.

We also believe that Apple should be searching for and reviewing relevant documents. To that end, we would like to schedule a meet-and-confer for today or tomorrow to discuss search terms and custodians further. Please let us know when you are available.

***The need for Apple's organizational charts***

One throughline in many of your objections to our proposed custodians was your claim that many of our proposed custodians report or reported to one of Apple's proposed custodians,

so in your view, their documents would be duplicative. As we explained, we cannot make that assessment, because we do not have Apple's organizational charts.

### *Specific custodians*

We discussed our reasons for proposing the custodians we did. We provided information on the meet-and-confer, and include that information and additional information below on our rationale for including each of our proposed custodians. As we said on the meet-and-confer and reiterate here, Apple is better positioned than Plaintiffs to understand its own employees' involvement in the conduct at issue, and so the rationales we provide below are not exclusive. In other words, we are not suggesting that any proposed custodian's involvement was limited to the bases we identify below.

*Custodians involved in negotiations with X.* We explained that Jenny Mo,  Phil Schiller, Arun Singh, Bill Havlicek, and Stephanie Chan were involved with the App Store negotiations. You asked us to identify the X representative serving as the counterparty in those negotiations. Our understanding is that, among other people, Patrick Traughber, Director of Product Management at X, spoke with these individuals.

*Proposed custodians relevant to App Store de-preferencing RFPs.* Several RFPs seek documents relevant to Plaintiffs' allegations that Apple's App Store favors Apple's own apps or those of its partners. *See, e.g.*, RFP Nos. 9, 25, 28(b), 46, 48, and 49. We believe that documents from the following proposed custodians would be, at a minimum, responsive to these RFPs:

- **Carson Oliver**: has held various roles on the App Store's business side since 2012, and has been the Head of Global App Store since 2024. We believe that given the length of his tenure, and his seniority, he would have been involved in many internal discussions relevant, at minimum, to our App Store allegations.

- **Matt Fischer** held the roles of Vice President and head of Apple's worldwide App Store from 2010 to 2024. We believe that given the length of his tenure and his seniority, he would have been involved in many internal discussions relevant to our App Store allegations.

- **Chip Canter** is the Director of Worldwide Business Development for Apple's App Store. We believe he will have documents relevant to our App Store claims given the nature of his role.

- As noted during the meet-and-confer, we understand **Trystan Kosmynka** and **Bill Havlicek** to be the co-leaders of the App Store's app review team. Given their roles, we believe that they will have documents relevant to our App Store allegations.

- As noted during the meet-and-confer, **Philip Shoemaker** is Apple's former Director of App Review. His statements that the App Store rules and guidelines are arbitrary and have been used as a weapon against competitors are referenced in the Complaint.

These statements suggest his documents would be relevant to our App Store allegations.

- **Greg Joswiak** is the Senior Vice President of Apple's worldwide marketing. Given his role, we believe he will possess documents relevant to our App Store allegations.

- As noted during the meet-and-confer, we believe that **Stephanie Chan** will possess documents relevant to our App Store claims because she was involved in discussions with X regarding promotions and pushing updates to the X app on the App Store.

- As noted during the meet-and-confer, we believe that **Jenny Mo** will possess documents relevant to our App Store claims because she was involved in discussions with X regarding promotions and pushing updates to the X app on the App Store.

- As noted during the meet-and-confer, we believe **Arun Singh** will possess documents relevant to our App Store claims because he was involved in discussions with X about  promotions and pushing updates to the X app on the App Store.

*Proposed custodians relevant to integration RFPs.* Many RFPs seek documents relevant to Plaintiffs' allegations about the Apple-OpenAI agreement and the Apple-ChatGPT integration. *See, e.g.*, RFP Nos. 1-8. We believe that documents from the following proposed custodians would be, at a minimum, responsive to these RFPs:

- As noted during the meet-and-confer, **Tim Cook** is cited at Compl. ¶¶ 99, 148, and 153 for his comments about Apple's record on privacy,  the lack of interoperability between Apple and Android products, and Apple's profits. Given the nexus between these statements and Plaintiffs' factual allegations, as well as Tim Cook's role as Apple's Chief Executive Officer, we are certain that he will have documents relevant to our integration allegations.

- As noted during the meet-and-confer, **Eddy Cue** is Apple's Senior Vice President of Services and reports directly to Tim Cook. Given the statements we cited at Compl. ¶¶ 5, 57, and 58 about the threat AI poses to Apple's business, his statements about integration, and the fact that some of John Giannandrea's responsibilities will now shift to Cue (as noted below), we believe he will have documents relevant to our integration allegations.

- As noted during the meet-and-confer, **Craig Federighi** is the Head of iOS and the lead on Siri and will therefore have documents relevant to our integration allegations.

- As noted during the meet-and-confer, **John Giannandrea** is the outgoing Head of Apple's AI program, and is quoted at Compl. ¶ 73 for opposing the  Apple-ChatGPT integration due to security concerns. Based on his role and his opposition to the

App. 181

integration, we believe he will have documents relevant to our integration allegations.

- As noted during the meet-and-confer, **Sabih Khan** recently became the Chief Operating Officer. An Apple news release stated that "the balance of Giannandrea's organization will shift to Sabih Khan and Eddy Cue to align closer with similar organizations." Given that representation, we are confident that he will have documents relevant to our integration allegations.

- As noted during the meet-and-confer, we believe that **Frank Chu** possesses documents relevant to our integration allegations because he was an engineer and senior leader in Apple's AI group.

- As noted during the meet-and-confer, we believe that **Mike Rockwell** possesses documents relevant to our integration allegations, including because he was involved in the deal between Google and Apple regarding Siri integration.

*Proposed custodians relevant to super app RFPs.* Several RFPs seek documents relevant to Plaintiffs' allegations that Apple sees super apps as threats to its dominance in the smartphone market. *See, e.g.*, RFP Nos. 34,  48 and 51. We believe that documents from the following proposed custodians would be responsive to these RFPs:

- **Tim Cook.** In addition to the points flagged above, we note that Tim Cook is relevant to our super-app allegations because as Apple's CEO,  he would be involved in discussions regarding competitive threats to the iPhone.

- As noted during the meet-and-confer and above, **Phil Schiller** was involved in negotiations with X. We also believe that he will have documents relevant to our super app claims given his role and prior involvement.

- Given our allegations that super apps threaten to replace native iPhone functionality, including preset apps, we believe that App Store employees and executives, such as **Matt Fischer**, **Greg Joswiak**, and **Trystan Kosmynka** would have responsive documents to RFPs. Given Eddy Cue's statement about the threat AI poses to Apple's business, we think he will have information relevant to our super app allegations.

*Other proposed custodians.*

- We proposed **Robert An** based on public information suggesting that he is Apple's Vice President of AI and Machine Learning Strategy. During the meet-and-confer, you conveyed your belief that no person bearing that name has worked at Apple. You agreed to double-check this point.

As noted during the meet-and-confer, **Amar Subranmanya** is slated to replace John Giannandrea as Head of AI in Spring 2026. For now, we are willing to drop Amar as a custodian, reserving all rights to later request that he be a custodian.

- We also agree to withdraw **John Sculley** as a proposed custodian.

We look forward to hearing from you about a date for a further meet-and-confer.

Best regards,
Scott

**Scott A. Eisman**
Partner
T: 212.261.5642

**From:** Eisman, Scott A. <seisman@axinn.com>
**Sent:** Wednesday, December 17, 2025 3:09 PM
**To:** Sidhu, Elizabeth <ESidhu@cov.com>; Willard Zehmer, Lauren <LZehmer@cov.com>; dee.kelly@kellyhart.com; julia.wisenberg@kellyhart.com; Henn, Emily <ehenn@cov.com>; Liu, Henry <HLiu@cov.com>; Weiland, Carol <CWeiland@cov.com>; Berman, Sean <SBerman@cov.com>; Tan, Zhi Yang <ZTan@cov.com>
**Cc:** Reiser, Craig M. <creiser@axinn.com>; Justus, Bradley <bjustus@axinn.com>; Yung, Eva H. <eyung@axinn.com>; Boisvert, Caroline P. <cboisvert@axinn.com>; Erickson, Christopher <cerickson@axinn.com>; chris@stonehilton.com; judd@stonehilton.com
**Subject:** RE: X Corp. and X.AI LLC v. Apple Inc. et al., No. 4:25-cv-00914-P (N.D. Tex.)

Thanks, Liz; 5-6 tomorrow works for us. We can use the time to discuss custodians, since as you note, expediting document productions is top priority. We will separately respond in writing to Lauren's letter from yesterday.

**Scott A. Eisman**
Partner
T: 212.261.5642

**From:** Sidhu, Elizabeth <ESidhu@cov.com>
**Sent:** Wednesday, December 17, 2025 1:57 PM
**To:** Eisman, Scott A. <seisman@axinn.com>; Willard Zehmer, Lauren <LZehmer@cov.com>; dee.kelly@kellyhart.com; julia.wisenberg@kellyhart.com; Henn, Emily <ehenn@cov.com>; Liu, Henry <HLiu@cov.com>; Weiland, Carol <CWeiland@cov.com>; Berman, Sean <SBerman@cov.com>; Tan, Zhi Yang <ZTan@cov.com>
**Cc:** Reiser, Craig M. <creiser@axinn.com>; Justus, Bradley <bjustus@axinn.com>; Yung, Eva H. <eyung@axinn.com>; Boisvert, Caroline P. <cboisvert@axinn.com>; Erickson, Christopher <cerickson@axinn.com>; chris@stonehilton.com; judd@stonehilton.com
**Subject:** RE: X Corp. and X.AI LLC v. Apple Inc. et al., No. 4:25-cv-00914-P (N.D. Tex.)

**Caution: External Email**

---

Hi Scott,

We are no longer available today at 4:30pm since we sent our offer on Monday.  But we are still available to meet-and-confer tomorrow (Thursday) from 5-6pm ET. If that time does not work, please propose additional windows tomorrow or Friday morning.

To facilitate our custodial discussions, we request that Plaintiffs please come prepared to explain the relevance and need for each of the additional 22 custodians requested beyond our proposal.  We would like to resolve the custodian negotiations promptly so that we can assess the burden associated with your search term proposals.  Also, we appreciate you sending the revised search strings.  We are continuing to review and will let you know if we encounter additional syntax errors.

We believe that custodian negotiations are the top priority so that Apple can expedite document productions.  To the extent Plaintiffs wish to discuss issues other than the list of custodians, please let us know the specific topics by today so that we can have the appropriate team members on the call.

Best,
Liz


**Elizabeth Sidhu**

Covington & Burling LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
T +1 424 332 4784 | esidhu@cov.com
www.cov.com

---

This message is from a law firm and may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply e-mail that this message has been inadvertently transmitted to you and delete this e-mail from your system. Thank you for your cooperation.

---

**From:** Eisman, Scott A. <seisman@axinn.com>
**Sent:** Wednesday, December 17, 2025 7:29 AM
**To:** Willard Zehmer, Lauren <LZehmer@cov.com>; dee.kelly@kellyhart.com; julia.wisenberg@kellyhart.com; Henn, Emily <ehenn@cov.com>; Liu, Henry <HLiu@cov.com>; Weiland, Carol <CWeiland@cov.com>; Sidhu, Elizabeth <ESidhu@cov.com>; Berman, Sean <SBerman@cov.com>; Tan, Zhi Yang <ZTan@cov.com>

**Cc:** Reiser, Craig M. <creiser@axinn.com>; Justus, Bradley <bjustus@axinn.com>; Yung, Eva H. <eyung@axinn.com>; Boisvert, Caroline P. <cboisvert@axinn.com>; Erickson, Christopher <cerickson@axinn.com>; chris@stonehilton.com; judd@stonehilton.com
**Subject:** RE: X Corp. and X.AI LLC v. Apple Inc. et al., No. 4:25-cv-00914-P (N.D. Tex.)

<mark>[EXTERNAL]</mark>
Lauren,

We are reviewing your letter and will respond in due course. In the meantime, we would like to schedule a meet-and-confer. Liz noted in her email on Monday that you are free at 4:30 today. Could we please schedule a call then?

Best regards,
Scott


**Scott A. Eisman**
Partner
T: 212.261.5642

---

**From:** Willard Zehmer, Lauren <LZehmer@cov.com>
**Sent:** Tuesday, December 16, 2025 10:51 PM
**To:** Eisman, Scott A. <seisman@axinn.com>; dee.kelly@kellyhart.com; julia.wisenberg@kellyhart.com; Henn, Emily <ehenn@cov.com>; Liu, Henry <HLiu@cov.com>; Weiland, Carol <CWeiland@cov.com>; Sidhu, Elizabeth <ESidhu@cov.com>; Berman, Sean <SBerman@cov.com>; Tan, Zhi Yang <ZTan@cov.com>
**Cc:** Reiser, Craig M. <creiser@axinn.com>; Justus, Bradley <bjustus@axinn.com>; Yung, Eva H. <eyung@axinn.com>; Boisvert, Caroline P. <cboisvert@axinn.com>; Erickson, Christopher <cerickson@axinn.com>; chris@stonehilton.com; judd@stonehilton.com
**Subject:** RE: X Corp. and X.AI LLC v. Apple Inc. et al., No. 4:25-cv-00914-P (N.D. Tex.)


**Caution: External Email**

---

Counsel,

Please see the attached correspondence.

Best,
Lauren


**Lauren Zehmer**

Covington & Burling LLP

App. 185

One CityCenter, 850 Tenth Street, NW
Washington, DC 20001-4956
T +1 202 662 5906 | lzehmer@cov.com
www.cov.com

This message is from a law firm and may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply e-mail that this message has been inadvertently transmitted to you and delete this e-mail from your system. Thank you for your cooperation.

**From:** Eisman, Scott A. <seisman@axinn.com>
**Sent:** Wednesday, December 10, 2025 11:22 AM
**To:** Willard Zehmer, Lauren <LZehmer@cov.com>; dee.kelly@kellyhart.com; julia.wisenberg@kellyhart.com; Henn, Emily <ehenn@cov.com>; Liu, Henry <HLiu@cov.com>; Weiland, Carol <CWeiland@cov.com>; Sidhu, Elizabeth <ESidhu@cov.com>; Berman, Sean <SBerman@cov.com>; Tan, Zhi Yang <ZTan@cov.com>
**Cc:** Reiser, Craig M. <creiser@axinn.com>; Justus, Bradley <bjustus@axinn.com>; Yung, Eva H. <eyung@axinn.com>; Boisvert, Caroline P. <cboisvert@axinn.com>; Erickson, Christopher <cerickson@axinn.com>; chris@stonehilton.com; judd@stonehilton.com
**Subject:** X Corp. and X.AI LLC v. Apple Inc. et al., No. 4:25-cv-00914-P (N.D. Tex.)

**[EXTERNAL]**
Counsel,

Please see the attached correspondence. We remain available to speak about anything set forth in our letter at any time.

Best regards,
Scott

 **Scott A. Eisman**
Partner

**Axinn, Veltrop & Harkrider LLP**
45 Rockefeller Plaza
New York, NY 10111
T: 212.261.5642
seisman@axinn.com | axinn.com

*********************************************************************

Notice: The information contained in this electronic mail and any attached documents from Axinn, Veltrop & Harkrider LLP is confidential. This email may be an attorney-client communication, and as such is privileged and confidential. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the content of this

App. 186

information is prohibited. If you have received this electronic mail in error, please notify us immediately by telephone (212) 728-2200/(860) 275-8100 or by reply electronic mail to the sender. IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

**********************************************************************

**********************************************************************

Notice: The information contained in this electronic mail and any attached documents from Axinn, Veltrop & Harkrider LLP is confidential. This email may be an attorney-client communication, and as such is privileged and confidential. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the content of this information is prohibited. If you have received this electronic mail in error, please notify us immediately by telephone (212) 728-2200/(860) 275-8100 or by reply electronic mail to the sender. IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

**********************************************************************

**********************************************************************

Notice: The information contained in this electronic mail and any attached documents from Axinn, Veltrop & Harkrider LLP is confidential. This email may be an attorney-client communication, and as such is privileged and confidential. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the content of this information is prohibited. If you have received this electronic mail in error, please notify us immediately by telephone (212) 728-2200/(860) 275-8100 or by reply electronic mail to the sender. IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

**********************************************************************

**********************************************************************

Notice: The information contained in this electronic mail and any attached documents

from Axinn, Veltrop & Harkrider LLP is confidential. This email may be an attorney-client communication, and as such is privileged and confidential. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the content of this information is prohibited. If you have received this electronic mail in error, please notify us immediately by telephone (212) 728-2200/(860) 275-8100 or by reply electronic mail to the sender. IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.
***********************************************************************
***********************************************************************
Notice: The information contained in this electronic mail and any attached documents from Axinn, Veltrop & Harkrider LLP is confidential. This email may be an attorney-client communication, and as such is privileged and confidential. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the content of this information is prohibited. If you have received this electronic mail in error, please notify us immediately by telephone (212) 728-2200/(860) 275-8100 or by reply electronic mail to the sender. IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.
***********************************************************************

# Tab 25



App. 190

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

App. 191

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

APL-XAI_00014994

App. 192

# Tab 26



App. 193

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

APL-XAI_00073367



App. 194

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

App. 195

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

APL-XAI_00073369



App. 196

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY    APL-XAI_00073370

App. 197

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

App. 198

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY



App. 199

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

# Tab 27

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY    APL-XAI_00056548

App. 202

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY    APL-XAI_00056549



App. 203

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

APL-XAI_00056550

App. 204

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

APL-XAI_00056551



App. 205

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

APL-XAI_00056552

App. 206

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY APL-XAI_00056553

App. 207

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

APL-XAI_00056554

App. 208

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

APL-XAI_00056555



App. 209

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

APL-XAI_00056556



App. 210

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

APL-XAI_00056557

ly

App. 211

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

APL-XAI_00056558

ly

App. 212

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY
APL-XAI_00056559

ly

App. 213

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

APL-XAI_00056560



HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

APL-XAI_00056561

App. 215

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY
APL-XAI_00056562



HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

APL-XAI_00056563



App. 217

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

App. 218

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

APL-XAI_00056565

nly

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

APL-XAI_00056566



nly

App. 220

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

APL-XAI_00056567

App. 221

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLYAPL-XAI_00056568



ly

App. 222

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY                                              APL-XAI_00056569

App. 223

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

APL-XAI_00056570

App. 224

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY                                                                                  APL-XAI_00056571



Use Only

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY    APL-XAI_00056572

# Tab 28

App. 227

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

APL-XAI_00056867



App. 228

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

APL-XAI_00056868

# Tab 29



App. 230

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

# Tab 30



App. 232

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY    APL-XAI_00056860

# Tab 31



App. 234

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY                    APL-XAI_00079848

App. 235



HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

App. 236

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

APL-XAI_00079850

App. 237

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

APL-XAI_00079851

App. 238

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

APL-XAI_00079852

# Tab 32

Case 4:25-cv-00914-P   Document 193   Filed 04/15/26   Page 221 of 616   PageID 6957

Businessweek | The Big Take

# Why Apple Still Hasn't Cracked AI

Insiders say continued failure to get artificial intelligence right threatens everything from the iPhone's dominance to plans for robots and other futuristic products.



*Illustration: Ariel Davis for Bloomberg Businessweek*

By [Mark Gurman](#) and [Drake Bennett](#)

May 18, 2025 at 5:00 PM EDT

🔖 Save       🗛 Translate ⌄

This article is part of the **June 1, 2025 issue** of Businessweek.  ›



+ **Sign Up**

By continuing, I agree to the [Privacy Policy](#) and [Terms of Service](#).

App. 240

Back in 2018 it looked like Apple Inc.'s artificial intelligence efforts were finally getting on track. Early that year, Craig Federighi, Apple's software chief, gathered his senior staff and announced a blockbuster hire: The company had just poached John Giannandrea from Google to be its head of AI. JG, as he's known in the industry, had been running Google's search and AI groups. Under his leadership, teams were deploying cutting-edge AI technology in Photos, Translate and Gmail–work that, along with the 2014 acquisition of the pioneering British company DeepMind, had given Google a reputation as a leader in AI.

To Apple's leadership, the Giannandrea hire wasn't just a coup at the expense of their fiercest rival. It was also, they hoped, the start of the company's transformation into an AI powerhouse. Just before the death of co-founder Steve Jobs in 2011, Apple had unveiled its voice assistant, Siri. At first, Siri felt like something out of science fiction–once again, Apple had taken a futuristic computing concept and turned it into a mainstream product. But within a few years, Google, Amazon.com Inc. and other competitors had introduced voice assistants that felt far more advanced, while Apple's struggled with basic comprehension and commands.



Siri being introduced in October 2011 by Phil Schiller, then Apple's senior vice president for worldwide marketing. *Photographer: Kevork Djansezian/Getty Images*

App. 241

The Scottish-born Giannandrea would oversee a group that united all of Apple's AI work. Several employees say top executives had long believed the company's challenges traced in part to the disaggregated nature of Apple's AI efforts, which were divided among a slew of different product development teams. (The employees, like others interviewed for this article, requested anonymity to discuss sensitive matters.) Now, machine learning research, testing operations and Siri would be under one umbrella. Giannandrea would report directly to Chief Executive Officer Tim Cook, giving AI the same prominence as software, hardware and services, the main groups that make up Apple's workforce.



_Follow The Big Take daily podcast wherever you listen._

Federighi's excitement in announcing the hire was palpable–Siri had been handed off multiple times since its launch, ending up with him, and now he was passing it off to Giannandrea. "This is exactly the kind of person we needed for AI," he told his staff. In addition to Giannandrea's work at Google, where many considered him the most powerful executive except the CEO, he'd been chief technology officer of internet pioneer Netscape. "Who else in the world would you get?" asks someone involved in the hire.

Seven years after Giannandrea arrived, the optimism he brought with him is gone. Apple's AI has only fallen further behind. Since OpenAI's ChatGPT software burst into public consciousness in 2022, every major tech company has accelerated its efforts to develop the large language models (LLMs) that power such programs, incorporate them into voice assistants and other tools, and hype them to consumers.

Apple, like its competitors, has rolled out new AI features, but they've mostly been notable for being delayed and underwhelming.

App. 242

Case 4:25-cv-00914-P    Document 193    Filed 04/15/26    Page 224 of 616    PageID 6960

Last June, at its Worldwide Developers Conference (WWDC), the company announced Apple Intelligence, calling it "AI for the rest of us"–a nod to the original Mac desktop, first marketed in 1984 as "the computer for the rest of us." Promised features included new tools for improving writing, summarizing emails and notifications, as well as for generating custom emoji and images from written descriptions. The company also previewed an AI-driven revamp of Siri. For the first time, Apple said, the voice assistant would be able to delve into a user's personal data and on-screen content to answer queries. To demonstrate, a top Giannandrea deputy asked Siri about her mom's travel plans. The answer drew seamlessly on information from emails and text messages to help construct an itinerary. Apple said users would also be able to control their devices in new ways through Siri: choosing, cropping and emailing photos to family members, for example, without touching the screen.



Giannandrea and Federighi at the Apple Worldwide Developers Conference in June 2024. *Photographer: David Paul Morris/Bloomberg*

The prospect of truly AI-powered devices led Apple's share price to rise sharply. The buzz grew in September, when the company announced that its newest phone, the iPhone 16, had been "built from the ground up" for Apple Intelligence. But when the device went on sale that month, it didn't have the AI features–the first of them, including the writing tools and summaries, didn't come out for another month and a half. The custom "Genmojis" didn't arrive

App. 243

until December. A major upgrade to the iOS notifications feature that would prioritize alerts based on urgency rolled out only in March.

As for the Siri upgrade, Apple was targeting April 2025, according to people working on the technology. But when Federighi started running a beta of the iOS version, 18.4, on his own phone weeks before the operating system's planned release, he was shocked to find that many of the features Apple had been touting–including pulling up a driver's license number with a voice search–didn't actually work, according to multiple executives with knowledge of the matter. (The WWDC demos were videos of an early prototype, portraying what the company thought the system would be able to consistently achieve.) The planned rollout was delayed until May and then indefinitely, even as the features were still being promoted on commercials for the iPhone 16. Some customers who'd bought what they thought would be AI-enabled devices joined class-action lawsuits accusing Apple of false advertising. The company declined to comment on the lawsuits. It also declined to comment for this story, including on behalf of the executives mentioned.

The new Siri won't be out in time for next month's WWDC, a year after the upgrade was first announced. Instead of getting an overhauled assistant–let alone a full-fledged ChatGPT competitor, as many rivals have released–users will have to be satisfied with promises of further Apple Intelligence deployment. There will also be various non-AI software upgrades, such as a redesigned user interface that makes the iPad, Mac and iPhone operating systems more cohesive and reminiscent of the software that runs the company's mixed-reality headset, the Vision Pro.

"This is a crisis," says a senior member of Apple's AI team. A different team member compares the effort to a foundering ship: "It's been sinking for a long time." According to internal data described to *Bloomberg Businessweek*, the company's technology remains years behind the competition's.

Being late to a potentially world-changing advance isn't necessarily catastrophic for Apple. The company is often content to wait for competitors to pioneer new tech, with all the risks that entails,

App. 244

Case 4:25-cv-00914-P    Document 193    Filed 04/15/26    Page 226 of 616    PageID 6962

before releasing its own well-designed, highly accessible version to its billion-plus customers. It's done this with MP3 players, smartphones, tablets, watches and earbuds. Asked on Apple's quarterly earnings call this May about all the delays, Cook pointed to the Apple Intelligence features that have made it to market, as well as its expansion to Spanish, Chinese and other languages. The Siri upgrade, he said, simply needed more time to meet Apple's quality standards. "There's not a lot of other reason for it," Cook said. "It's just taking a bit longer than we thought."

What's notable about artificial intelligence is that Apple has devoted considerable resources to the technology and has little to show for it. The company has long had far fewer AI-focused employees than its competitors, according to executives at Apple and elsewhere. It's also acquired fewer of the pricey graphics processing units (GPUs) necessary to train and run LLMs than competitors have. Its leadership has undergone a significant shake-up this year, in response to these and other issues, with Siri and other AI-related teams removed from Giannandrea's command.

But while some employees attribute the struggles to decisions made by particular executives, others see symptoms of a deeper problem. Apple became the world's most valuable tech company by methodically releasing exquisite products with handpicked content, running on software that's updated meaningfully only once a year; AI is proving to be a faster, messier and more intrusive business. And historically, Apple's most successful products have depended on core technologies developed in-house–multitouch for the iPhone and advanced chips for iPads and newer Macs, to take two examples. With AI this formula hasn't come together. The company killed its self-driving car project last year, after spending billions of dollars on it across a decade, in part because it realized its AI wouldn't be able to deliver on the promise of a fully autonomous vehicle. Continued failure on AI would likely doom many of Apple's plans for the future, from augmented-reality glasses and robots to watches and earbuds that can recognize objects in the world around them. And it would leave Apple at a grave disadvantage in the battle over how users will interact with smart devices in the coming years.

App. 245

Case 4:25-cv-00914-P    Document 193    Filed 04/15/26    Page 227 of 616    PageID 6963

<u>Eddy Cue</u>, Apple's senior vice president for services and a close confidant of Cook's, has told colleagues that the company's position atop the tech world is at risk. He's pointed out that Apple isn't like Exxon Mobil Corp., supplying a commodity the world will continue to need, and he's expressed worries that AI could do to Apple what the iPhone did to Nokia. In a federal court appearance this month related to the Justice Department's lawsuit against Alphabet Inc., Cue said the iPhone might be irrelevant within a decade–"as crazy as that sounds."

STEVE JOBS WASN'T PARTICULARLY INTERESTED IN BUILDING SEARCH engines, intelligent or otherwise. "Steve just didn't believe in customers going to try to find things," says someone who worked with him. "He believed that Apple's job was to curate and show customers what they should want." That belief, like many of Jobs', shaped the company long after his death. In the mid-2010s, Apple explored the idea of placing a search bar at the top of the iPhone's home screen, rather than burying it behind a swipe gesture. But Apple's design team vetoed the idea.

Still, when Jobs first encountered Siri–originally an offering in Apple's App Store–he was hooked. The app's co-creator, Dag Kittlaus, says the original concept was for a "do engine." "The ultimate vision was that you could talk to the internet and your assistant would just handle everything for you," he recalls. "You wouldn't even need to know where that information would need to come from, and the whole app and website discovery problem would be taken out of the equation."

In its early form as an iPhone app, Siri was capable of making dinner reservations, finding a movie theater or calling a taxi. Jobs immediately saw it as far more than a mere app–he believed it could potentially become the primary user interface for Apple's devices. Soon after he started using Siri, he phoned Kittlaus and invited him and his co-founders over to his house. During a three-hour chat, Jobs offered to buy their company. When Kittlaus balked, Jobs proceeded to call him 24 days in a row.

After Kittlaus finally relented, Jobs turned Siri into one of Apple's top development priorities. "He made it his personal project,"

App. 246

Case 4:25-cv-00914-P    Document 193    Filed 04/15/26    Page 228 of 616    PageID 6964

Kittlaus remembers. "I met with him every week until he no longer could for health reasons."



Kittlaus in San Jose, California, in 2016. *Photographer: Andrew Burton/For The Washington Post/Getty Images*

Siri was released just after Jobs died. Development in its first years concentrated mainly on basic tasks such as providing weather info, setting timers, playing music and handling texts. It didn't benefit heavily from Apple's nascent machine learning research, which focused on applications including facial and fingerprint recognition, smart suggestions (like telling you when you should leave for an appointment, on the basis of traffic), improved maps and the company's moon shots at the time: the headset and the car.

Some of the most senior executives overseeing software engineering thought Apple should be making AI more prominent in the iPhone's operating system. Around 2014 "we quickly became convinced this was something revolutionary and much more powerful than we first understood," one of them says. But the executive says they couldn't convince Federighi, their boss, that AI should be taken seriously: "A lot of it fell on deaf ears."

Apple did start acquiring dozens of smaller AI businesses to support its efforts, including machine learning companies Laserlike, Tuplejump and Turi. It even considered buying Mobileye Global Inc.

App. 247

at a proposed price of around $4 billion, according to people familiar with the talks. The deal, which would have been Apple's biggest-ever acquisition, promised to speed development of Apple's autonomous driving systems and computer vision technologies, and it would have added AI talent that could buttress other projects. But ultimately, Apple passed, and Intel Corp. went on to buy Mobileye in 2017 for $15 billion.

Apple's car project did yield one early AI success: a specialized component, the Apple Neural Engine, that allowed its chips to handle the vast amount of AI processing needed for autonomous driving. Chips with the neural engine would later become standardized across the iPhone, iPad and other hardware, giving the company's devices the capability to run generative AI models.

Cook, who was generally known for keeping his distance from product development, was pushing hard for a more serious AI effort. "Tim was one of Apple's biggest believers in AI," says a person who worked with him. "He was constantly frustrated that Siri lagged behind Alexa," and that the company didn't yet have a foothold in the home like Amazon's Echo smart speaker.

WHEN GIANNANDREA STARTED AT APPLE IN 2018, FELLOW executives say, he described its closed software ecosystem as an intriguing advantage, letting it instantly deploy new features to billions of devices. Almost immediately, though, he concluded the company would need to spend hundreds of millions of dollars more on the kinds of large-scale testing and image and text annotation required to train the machine learning models that AI technologies are built on. He got enough money to hire some top AI researchers away from Google and to expand the teams responsible for testing and data analysis.

Giannandrea also took aim at Siri, removing its leader and proposing to kill rarely used features, which he told colleagues would reduce the amount of code Siri required and keep the team focused on its most important functions. He was skeptical of the car, a project he'd briefly be put in charge of. (When Apple later gave up on it, hundreds of the AI engineers who'd been working on it were folded back into his group.)

App. 248

Still, Giannandrea's efforts were often stymied. Federighi, Apple's software chief, remained reluctant to make large investments in AI–he didn't see it as a core capability for personal computers or mobile devices and didn't want to siphon resources away from developing annual updates to the iPhone, Mac and iPad operating systems, according to several colleagues. "Craig is just not the kind of guy who says, 'Hey, we need to do this big thing that will require big budgets and a ton more people,'" a longtime Apple executive says.

Other leaders shared Federighi's reservations. "In the world of AI, you really don't know what the product is until you've done the investment," another longtime executive says. "That's not how Apple is wired. Apple sits down to build a product knowing what the endgame is."

As a result, the company was blindsided by ChatGPT's launch in November 2022. One senior executive says Apple Intelligence "wasn't even an idea" before that. "It's not like what OpenAI was doing was a secret," says another. "Anyone who was paying attention to the market there should have seen it and jumped all over it."

Within a month of ChatGPT's release, Federighi used generative AI to write code for a personal software project he was working on, according to people familiar with the events. The technology's potential was suddenly evident to him. He, Giannandrea and other executives began meeting with OpenAI, Anthropic and other players to get a crash course in the latest models and the market. Federighi came away demanding that Apple's scheduled 2024 iPhone operating system release, iOS 18, have as many AI-powered features as possible. Giannandrea assembled a team to ramp up work on LLMs to support those features–something its competitors had done years earlier.

AS APPLE WORKED TOWARD INTELLIGENCE'S BIG JUNE DEBUT AT WWDC 2024, it had to come to terms with how far behind its generative AI capabilities were. It could manage basic image creation and had a chatbot it was testing internally, but the bot lagged significantly behind ChatGPT–according to company data

App. 249

described to *Businessweek*, the competing product was at least 25% more accurate at fulfilling most types of queries.

The need to offer a version of the one AI product consumers really seemed to want set off a scramble to strike a partnership. The company started talking with competitors including Google, Anthropic and OpenAI about integrating their technology into Apple's software. Giannandrea lobbied hard for Apple to go with Google's Gemini–arguing, according to colleagues, that OpenAI doesn't have staying power and isn't trustworthy or protective of personal data. Apple's corporate development team concluded otherwise, however, and at WWDC the company announced it would be routing requests that Siri itself couldn't handle to ChatGPT.

The integration didn't become a reality until December, but once it did, it was one of the few Intelligence features that worked as advertised. There were successful releases, including email summaries, which replace the preview line in your inbox with a synthesized version of the message, and Writing Tools, which can edit, reorganize and summarize prose. (The text composition AI for Writing Tools, though, was ChatGPT's.) But other features seemed to many users as though they'd been rushed to market, even as they came out months behind schedule. The Genmojis, which let people conceive custom emoji–say, a peacock merged with a popsicle– rarely looked like the slick graphics Apple touted in TV ads and on billboards in major cities, and they required so much processing power they could overheat iPhones and eat into battery life. The news summaries feature was shut down after some of its AI-generated headlines proved embarrassingly false, including one claiming that alleged killer Luigi Mangione had shot himself. Some of the more computation-heavy AI features only worked because Apple's online services division had fortuitously conceived a cloud server project that could handle anything the phone couldn't.

Apple's Siri plans were even further behind. The company had been promoting the assistant's new features in TV ads since the iPhone 16 launch, despite their being nowhere near ready. In one spot, Bella Ramsey, star of HBO's *The Last of Us*, sees a man at a party, draws a

App. 250

blank on his name and quickly pulls out an iPhone. "What's the name of the guy I had a meeting with a couple of months ago at Café Grenelle?" Ramsey asks. Siri comes back with the name in the time it takes "Zac" to walk across the room.



Screenshots from Apple's TV ad teasing the new Siri with actor Bella Ramsey. *Source: YouTube (2)*

The lack of a homegrown AI chatbot worried some Apple executives more than others. According to several employees, Giannandrea has argued internally that AI agents are still many years away from replacing humans in a meaningful way, and that most consumers share his distrust of generative artificial intelligence. The employees say that accounts for why he didn't fight to build a true ChatGPT competitor of his own for consumers. Colleagues say Giannandrea has told them that consumers don't want tools like ChatGPT and that one of the most common requests from customers is to disable it.

In March 2025, Apple confirmed a Bloomberg News report that the new Siri would be postponed. It pulled the Ramsey ads from YouTube and major television networks. The following week, the Siri team's then-boss, Senior Director Robby Walker, met with his demoralized workers for a kind of pep talk. "We swam hundreds of miles–we set a Guinness Book of World Records for swimming distance–but we still didn't swim to Hawaii," he said, according to people familiar with the meeting. "And we were being jumped on,

App. 251

not for the amazing swimming that we did, but the fact that we didn't get to the destination." For all its efforts, the team was still at sea.

Walker told everyone at the meeting to develop the upgrades for the next version of the iPhone operating system, iOS 19, due in September. But he also told them he wasn't sure when the upgrades, which didn't work properly a third of the time, would actually be released, in part because other features were a higher priority. "These are not quite ready to go to the general public, even though our competitors might have launched them in this state or worse," he said.

Members of the Siri group say Walker's assessment actually understated the problems. "There are hundreds of bugs right now," one says. "It's whack-a-mole. You fix one issue, and three more crop up."

The main technical issue is that Apple essentially had to split Siri's infrastructure in half, with the old code underpinning legacy features such as setting alarms and the new code underpinning requests that draw on personal data. The kludge was considered necessary to bring the new features to market as soon as possible, but it backfired, creating integration issues that led to delays. Individual features might look good, employees say, but when code is merged so the pieces can be tested together in Siri, things begin to fall apart.

With the project flagging, morale on the engineering team has been low. "We're not even being told what's happening or why," one member says. "There's no leadership."

INSIDE APPLE, GIANNANDREA HAS ABSORBED MUCH OF THE BLAME for the delays and false starts, according to several employees and people close to the company. They say he's found it difficult to fit in with the members of Apple's innermost circle, who've worked together for decades and run the company like a family business. And he's learned, like senior transplants before him, that this makes it difficult to enact change. Apple's leadership is a realm of forceful personalities who are ultimately judged on bringing new products to

App. 252

market. Giannandrea is low-key, and some people say he didn't fight hard enough to get the money his group needed. "JG should have been much, much more aggressive in getting funding to go big. But John's not a salesman. He's a technologist," says an employee who knows him.

Others say Giannandrea isn't hands-on enough and doesn't drive his workers particularly hard. "Every other team at Apple, at least in engineering, is balls-to-the-wall, get it out, get it out on time, and JG's team just doesn't operate that way," one executive says. "They just don't execute." The perception of coddling extended to perks, as well. Unlike at other Silicon Valley giants, employees at Apple headquarters have to pay for meals at the cafeteria. But as Giannandrea's engineers raced to get Apple Intelligence out, some were often given vouchers to eat for free, breeding resentment among other teams. "I know it sounds stupid, but Apple does not do free food," one employee says. "They shipped a year after everyone else and still got free lunch."

Giannandrea's purported lack of urgency may be as much philosophical as temperamental, though. Conservative about the pace of AI development and skeptical about the value of chatbots, he's argued internally that there's little urgent threat from OpenAI, Meta, Google and the rest. Instead, colleagues say, Giannandrea maintains that what users want in an assistant is an interface for controlling devices. Despite the delays and setbacks, he still holds to that vision.

Failure, of course, is an orphan, and it's simplistic to see the missteps as one person's fault. For his part, Giannandrea has told colleagues that much of the blame should be on Apple's marketing and advertising teams–which Greg Joswiak and Tor Mhyren oversee different aspects of–for hyping unfinished features. Product managers are responsible for being straightforward with marketing about when things will actually be ready. Federighi is the ultimate decision-maker for software. And Cook sets the entire company's product development culture.

App. 253

Case 4:25-cv-00914-P    Document 193    Filed 04/15/26    Page 235 of 616    PageID 6971



Cook in Abu Dhabi in December 2024. *Photographer: Jakub Porzycki/NurPhoto/Getty Images*

Former Chief Financial Officer Luca Maestri's conservative stance on buying GPUs, the specialized circuits essential to AI, hasn't aged well either. Under Cook, Apple has used its market dominance and cash hoard to shape global supply chains for everything from semiconductors to the glass for smartphone screens. But demand for GPUs ended up overwhelming supply, and the company's decision to buy them slowly–which was in line with its usual practice for emerging technologies it isn't fully sold on–ended up backfiring. Apple watched as rivals such as Amazon and Microsoft Corp. bought much of the world's supply. Fewer GPUs meant Apple's AI models were trained all the more slowly. "You can't magically summon up more GPUs when the competitors have already snapped them all up," says someone on the AI team.

*Read more: How the AI Boom Created the Most Valuable Monopolies in History*

Apple's long-standing commitment to user privacy also hindered it. The company's base of 2.35 billion active devices gives it access to more data–web searches, personal interests, communications and more–than many of its competitors. But Apple is much stricter than Google, Meta and OpenAI about allowing its AI researchers access to customer data. Its commitment to privacy also extends to the personal data of noncustomers: Applebot, the web crawler that

App. 254

scrapes data for Siri, Spotlight and other Apple search features, allows websites to easily opt out of letting their data be used to improve Apple Intelligence. Many have done just that.

All this has left Apple's researchers more heavily reliant on datasets it licenses from third parties and on so-called synthetic data–artificial data created expressly to train AI. "There are a thousand noes for everything in this area, and you have to fight through the privacy police to get anything done," says a person familiar with Apple's AI and software development work. An executive who takes a similar view says, "Look at Grok from X–they're going to keep getting better because they have all the X data. What's Apple going to train on?"

It's another example of how AI is proving to be a technology that doesn't play to Apple's strengths. "The usual playbook," a longtime executive says, "is we're late, we have over a billion users, we're going to grind it out, and we're going to beat everyone. But this strategy isn't going to work this time."

AS APPLE TRIES ONCE AGAIN TO RESCUE ITS AI OPERATIONS, IT'S facing some unique external challenges. To meet expected European Union regulations, the company is now working on changing its operating systems so that, for the first time, users can switch from Siri as their default voice assistant to third-party options, according to a person with knowledge of the matter. Barring a major leap with Apple's products, many users may make that switch. In addition to products from OpenAI, Anthropic, Meta and Alphabet, others from innovative startups like DeepSeek continue to crop up.

Employees say Apple now has its AI offices in Zurich creating a new software architecture to replace the problematic Siri hybrid–a so-called monolithic model, entirely built on an LLM-based engine, that would eventually make Siri more believably conversational and better at synthesizing information. (The secret project is called, unsurprisingly, LLM Siri.) The company has thousands of analysts in offices from Texas to Spain to Ireland reviewing Apple Intelligence summaries for accuracy, comparing its output against the source material to determine how often the system is producing the

App. 255

Case 4:25-cv-00914-P    Document 193    Filed 04/15/26    Page 237 of 616    PageID 6973

distorted responses known as AI hallucinations. Thanks to a recent software update, iPhones have also been enlisted to help improve Apple's synthetic data. The fake data is assessed and enhanced by comparing it with the language in user emails on their phones, providing real-world reference points for AI training without feeding actual user information into the models.

This spring, Giannandrea was stripped of all control over product development, including the programs for Siri engineering and future robotics devices. That came after Cook lost faith in his ability to execute the creation of new products, according to fellow executives. Siri is now headed by Mike Rockwell, who led the team that created the Vision Pro mixed-reality headset. Rockwell reports to Federighi, who's taken on more responsibility for Apple's AI software-related product road map. Giannandrea's product managers have been moved under Federighi's oversight, while Rockwell has revamped the Siri management team by putting his top lieutenants from the headset project in charge. Walker, who'd been running Siri under Giannandrea, lost most of his engineers and was assigned to a new project.



Rockwell onscreen at WWDC in June 2024. *Photographer: David Paul Morris/Bloomberg*

Giannandrea retains oversight of AI research, the development and improvement of large language models, the AI analysts, and some

App. 256

infrastructure teams. Insiders say that some Apple executives have discussed the idea of shrinking Giannandrea's role still further or of him being put on a path to retirement (he's 60), but that Federighi and others have concerns that if he leaves, the prized researchers and engineers he brought in would follow him out the door.

At least for now, Giannandrea is staying on, telling colleagues he doesn't want to leave before the company's AI work is in proper shape. He's also professed to them that he's relieved Siri is now someone else's problem.

That someone, Rockwell, was initially reluctant to take a job reporting to Federighi, given Federighi's past AI skepticism, according to multiple colleagues. On the other hand, it was an opportunity to revamp a feature that Rockwell has complained about for years. When he joined Apple in 2015, he proposed that Siri be much more capable and central to the user experience: a sort of always-on life co-pilot. "He would rant about how important Siri is and how it will be the most important way people will interact with their phone," someone who knows Rockwell says. At the time, Rockwell succeeded mainly in getting the company to upgrade the assistant's voices by hiring expensive actors and opening high-end recording studios. When he started the headset project, he initially wanted Siri to be a core navigation interface, but he struggled to get the Siri group on board. He'll now be better positioned to push for the resources necessary to create an assistant that works like ChatGPT's well-received voice mode. Already, Rockwell is reorganizing the team to focus on improving the voice assistant's speed and comprehension.

Meanwhile, Apple, like other tech giants, is noting the ways user habits are changing. Google searches on Apple devices fell last month. "That has never happened in 22 years," Cue said in his court testimony, citing AI as the reason. To that end, he said, the company is looking at deals with the likes of OpenAI and Anthropic as possible search replacements in the Safari web browser–an acknowledgment that users are increasingly using LLM-based assistants to find information. Google Gemini, the service Giannandrea wanted to add to Siri last year, is on track to be added

App. 257

Case 4:25-cv-00914-P    Document 193    Filed 04/15/26    Page 239 of 616    PageID 6975

in iOS 19 as a ChatGPT alternative, according to people with knowledge of the plan. Apple is also in preliminary talks with the startup Perplexity to eventually become a ChatGPT alternative in Siri and an AI search engine provider in Safari, according to other people with knowledge of the matter.



Sign Up

By continuing, I agree to the Privacy Policy and Terms of Service.

As for Apple's homegrown chatbot efforts, some executives are now pushing, despite Giannandrea's prior reluctance, to turn Siri into a true ChatGPT competitor. To that end, the company has started discussing the idea of giving the assistant the ability to tap into the open web to grab and synthesize data from multiple sources. According to employees, the chatbot the company has been testing internally has made significant strides over the past six months, to the point that some executives see it as on par with recent versions of ChatGPT. An Apple chatbot, integrated into Siri, would help hedge against the potential loss of the $20 billion a year that Alphabet pays for Google to be the default search engine in Safari—a deal US antitrust regulators have been targeting. Apple's leadership is also optimistic about another of its delayed AI features, one that would allow Siri to integrate with iPhone apps, letting users more deeply control their devices with their voice. This would help the lucrative App Store—also a $20 billion annual business—continue to coexist with chatbots, which might otherwise supplant apps entirely.

Sources at Apple say that, for the next version of iOS, slated for introduction at WWDC 2025 in June, the company plans to focus on upgrading existing Apple Intelligence capabilities and adding some new ones, such as an AI-optimized battery management mode and a virtual health coach. Significant upgrades to Siri—including the ones promised nearly a year ago—are unlikely to be discussed much and are still months away from shipping. The Apple sources say the company, despite its hopes for LLM Siri, is also preparing to

App. 258

separate the Apple Intelligence brand from Siri in its marketing. It's a tacit admission that the voice assistant's poor reputation isn't helping the company's AI messaging. Another change: Apple, for the most part, will stop announcing features more than a few months before their official launch.

The AI-powered Siri does have an optimist in Kittlaus, the original app's co-founder. "All of the foundational model companies have no idea what an assistant is, while Apple has been working on the concept since 2010," he says. All the company needs to do, he argues, is make Siri much, much smarter. "They still have the button, the brand and, if they do a brain transplant for Siri, they have every opportunity to take over as the assistant of choice."

*Read next: Microsoft's CEO on How AI Will Remake Every Company, Including His*

Contact us:
**Provide news feedback or report an error**

Confidential tip?
**Send a tip to our reporters**

Site feedback:
**Take our Survey** ☑

**Before it's here, it's on the Bloomberg Terminal**

# Bloomberg

©2026 Bloomberg L.P. All Rights Reserved.

App. 259

# Tab 33



App. 261

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

APL-XAI_00037822



App. 262

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY                                          APL-XAI_00037823

# Tab 34



App. 264

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

App. 265

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

APL-XAI_00037664



App. 266

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY                      APL-XAI_00037665

# Tab 35

App. 268

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY



App. 269

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

App. 270

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY



APL-XAI_00037450

# Tab 36

App. 272

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

APL-XAI_00037947

App. 273

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

APL-XAI_00037948

App. 274

# Tab 37



App. 275

HIGHLY CONFIDENTIAL

APL-XAI_00059331



App. 276

HIGHLY CONFIDENTIAL                                                                    APL-XAI_00059332

# Tab 38

App. 278

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY    APL-XAI_00037507

# Tab 39



App. 280

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

APL-XAI_00024621



App. 281

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

APL-XAI_00024622



App. 282

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

# Tab 40

Highly Confidential – Outside Counsels' Eyes Only

App. 284

OAI_NDTX_0007778

# Tab 41

Highly Confidential

App. 286

OAI_NDTX_0003240

# Tab 42



App. 288

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

APL-XAI_00039519

# Tab 43

Highly Confidential – Outside Counsels' Eyes Only



App. 290

Highly Confidential – Outside Counsels' Eyes Only



App. 291

OAI_NDTX_0000346

App. 292

Highly Confidential – Outside Counsels' Eyes Only                                    OAI_NDTX_0000347



App. 293

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0000348



Highly Confidential – Outside Counsels' Eyes Only

App. 294

App. 295

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0000350

App. 296

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0000351

Highly Confidential – Outside Counsels' Eyes Only

App. 297

App. 298

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0000353

App. 299

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0000354

Highly Confidential – Outside Counsels' Eyes Only

App. 300

OAI_NDTX_0000355

Highly Confidential – Outside Counsels' Eyes Only

App. 301

OAI_NDTX_0000356

Highly Confidential – Outside Counsels' Eyes Only

App. 302

OAI_NDTX_0000357

Highly Confidential – Outside Counsels' Eyes Only

App. 303

OAI_NDTX_0000358

Highly Confidential – Outside Counsels' Eyes Only

App. 304

App. 305

Highly Confidential – Outside Counsels' Eyes Only



App. 306

Highly Confidential – Outside Counsels' Eyes Only



Highly Confidential – Outside Counsels' Eyes Only

App. 307



App. 308

Highly Confidential – Outside Counsels' Eyes Only



App. 309

Highly Confidential – Outside Counsels' Eyes Only



Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0000365



App. 311

Highly Confidential – Outside Counsels' Eyes Only

App. 312

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0000367

Highly Confidential – Outside Counsels' Eyes Only

App. 313

OAI_NDTX_0000368

Highly Confidential – Outside Counsels' Eyes Only

App. 314

OAI_NDTX_0000369

App. 315

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0000370

Highly Confidential – Outside Counsels' Eyes Only

App. 316

OAI_NDTX_0000371

Highly Confidential – Outside Counsels' Eyes Only

App. 317

OAI_NDTX_0000372

App. 318

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0000373

Highly Confidential – Outside Counsels' Eyes Only

App. 319

OAI_NDTX_0000374

Highly Confidential – Outside Counsels' Eyes Only

App. 320

OAI_NDTX_0000375

Highly Confidential – Outside Counsels' Eyes Only

App. 321

OAI_NDTX_0000376

App. 322

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0000377

Highly Confidential – Outside Counsels' Eyes Only



App. 323

OAI_NDTX_0000378

Highly Confidential – Outside Counsels' Eyes Only

App. 324

OAI_NDTX_0000379



App. 325

Highly Confidential – Outside Counsels' Eyes Only

App. 326

Highly Confidential – Outside Counsels' Eyes Only

Highly Confidential – Outside Counsels' Eyes Only

App. 327

OAI_NDTX_0000382

App. 328

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0000383

App. 329

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0000384

Highly Confidential – Outside Counsels' Eyes Only

App. 330

OAI_NDTX_0000385

App. 331

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0000386



App. 332

Highly Confidential – Outside Counsels' Eyes Only

Highly Confidential – Outside Counsels' Eyes Only



App. 333

OAI_NDTX_0000388



App. 334

Highly Confidential – Outside Counsels' Eyes Only

App. 335

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0000390

App. 336

OAI_NDTX_0000391

App. 337

Highly Confidential – Outside Counsels' Eyes Only                    OAI_NDTX_0000392

App. 338

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0000393

Highly Confidential – Outside Counsels' Eyes Only

App. 339

OAI_NDTX_0000394

Highly Confidential – Outside Counsels' Eyes Only

App. 340

OAI_NDTX_0000395

Highly Confidential – Outside Counsels' Eyes Only



App. 341

OAI_NDTX_0000396

App. 342

# Tab 44



App. 343

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

APL-XAI_00020545



App. 344

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY    APL-XAI_00020546

# Tab 45

App. 346

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

APL-XAI_00090789



App. 347

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY    APL-XAI_00090790

App. 348

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

APL-XAI_00090791



App. 349

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY    APL-XAI_00090792

# Tab 46



App. 351

HIGHLY CONFIDENTIAL



App. 352

HIGHLY CONFIDENTIAL                                                                APL-XAI_00042968



App. 353

HIGHLY CONFIDENTIAL

# Tab 47



App. 355

HIGHLY CONFIDENTIAL

APL-XAI_00045065



App. 356

HIGHLY CONFIDENTIAL

APL-XAI_00045066

# Tab 48



App. 358

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

App. 359



HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

APL-XAI_00006647

# Tab 49



App. 361

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY



App. 362

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

APL-XAI_00005932

App. 363

# Tab 50

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

|  |  |
|---|---|
| X CORP. and X.AI LLC,<br><br>    Plaintiffs,<br><br>    v.<br><br>APPLE INC.; OPENAI, INC.; OPENAI,<br>L.L.C.; and OPENAI OPCO, LLC,<br><br>    Defendants. | **Civil Action No. 4:25-cv-00914-P** |

**NOTICE OF FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6) DEPOSITION**

**PLEASE TAKE NOTICE** that, pursuant to Federal Rule 30(b)(6) of the Federal Rules of Civil Procedure, Plaintiffs X Corp. and X.AI LLC will take the deposition of Defendants OpenAI Foundation (f/k/a OpenAI, Inc.); OpenAI, L.L.C.; and OpenAI OpCo, LLC (together, "OpenAI") on April 24, 2026, at 9:00 a.m. Eastern Standard Time, or at some other date and time to be discussed and agreed upon by the parties, at Axinn, Veltrop & Harkrider LLP, located at 45 Rockefeller Plaza, New York, NY 10111, or at some other location to be discussed and agreed upon by the parties. The deposition will be conducted by oral examination before a certified court reporter authorized to administer oaths and will continue from day to day until completed. The deposition will be recorded by stenographic means and by videotape.

Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, OpenAI shall designate and produce for deposition one or more officers, directors, employees, agents or other persons to testify on its behalf regarding the topics and subject areas set forth in Exhibit A attached hereto (the "Topics"). If the designated representative or representatives do not have such knowledge, they are required under Rule 30(b)(6) to acquire such knowledge through

App. 364

whatever reasonable investigation may be necessary. At least seven (7) business days prior to the

deposition, OpenAI shall provide in writing to Plaintiff the name(s) and employment positions(s)

of the person(s) who will testify on OpenAI's behalf concerning the Topics.

2

Dated: April 14, 2026

Respectfully submitted,

/s/ Bradley Justus

Bradley Justus
N.D. Tex. Bar No. 1007988DC
DC Bar No. 1007988
AXINN, VELTROP & HARKRIDER LLP
1901 L Street NW
Washington, DC 20036
T: (202) 912-4700
F: (202) 912-4701
bjustus@axinn.com

Charles W. Fillmore
Texas Bar No. 00785861
BROWN PRUITT WAMBSGANSS
DEAN FORMAN & MOORE, P.C.
201 Main Street, Suite 700
Fort Worth, TX 76102
T: (817) 338-4888
cfillmore@brownpruitt.com

*admitted *pro hac vice*

/s/ Craig M. Reiser

Craig M. Reiser
N.D. Tex. Bar No. 4886735NY
NY State Bar No. 4886735
Scott A. Eisman
N.D. Tex. Bar No. 4905287NY
NY State Bar No. 4905287
Eva Yung*
NY State Bar No. 5497300
Christopher Erickson
N.D. Tex. Bar No. 5800628NY
NY State Bar No. 5800628
AXINN, VELTROP & HARKRIDER LLP
630 Fifth Avenue, 33rd Floor
New York, NY 10111
T: (212) 728-2200
F: (212) 728-2201
creiser@axinn.com
seisman@axinn.com
eyung@axinn.com
cerickson@axinn.com

/s/ Judd E. Stone

Judd E. Stone II
Texas Bar No. 24076720
Christopher D. Hilton
Texas Bar No. 24087727
STONE | HILTON PLLC
600 Congress Ave., Ste. 2350
Austin, TX 78701
T: (737) 465-3897
judd@stonehilton.com
chris@stonehilton.com

Noah Schottenstein
Texas Bar No. 24100661
STONE | HILTON PLLC
301 Commerce St., Suite 2360
Fort Worth, TX 76102
T: (737) 465-3897
noah@stonehilton.com

*Attorneys for Plaintiffs X Corp. and
X.AI LLC*

App. 366

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on April 14, 2026, I served the foregoing document on counsel for Defendants via email.

                                         */s/ Christopher Erickson*
                                         Christopher Erickson

4

**EXHIBIT A - TOPICS**

**DEFINITIONS**

1.      This document incorporates by reference all definitions in Plaintiffs' First Requests for Production to You (the "RFPs").

2.      The defined term "iPhone" shall be inclusive of Apple's iOS operating system and the Apple App Store for purposes of these Topics.

3.      Terms should be construed broadly to the fullest extent of their meaning in a good-faith effort to comply with the Federal Rules of Civil Procedure and the Local Rules of the U.S. District Court for the Northern District of Texas.

4.      All Topics cover January 1, 2023 to present unless otherwise indicated.

**TOPICS**

1.      The features of ChatGPT, Your analyses of ChatGPT's customers, and Your marketing and promotion of ChatGPT.

2.      Your analysis, description, evaluation, and comparison of the product(s) You consider to be substitutes for ChatGPT.

3.      Your analysis, description, and evaluation of competition faced by ChatGPT, including analyses of ChatGPT's competitive position relative to other competitors.

4.      The ability of Generative AI to facilitate the creation of Super Apps, Your plans to launch a Super App, and the ability of Super Apps to serve as a competitive threat to smartphones.

5.      Your development of consumer hardware and competition between that hardware and Apple Devices, including but not limited to iPhones.

App. 368

6.      Your tracking and analysis of ChatGPT's market share and the market share of ChatGPT's competitors including:

   a. The size of the market (e.g., by Prompts, messages, active users, tokens, revenue, downloads, subscriptions, or similar metrics);

   b. Your share of the market;

   c. The identify of Your competitors in the market;

   d. The share of Your competitors in the market;

   e. Products that you consider to be substitutes for ChatGPT;

   f. The ability of customers to switch between ChatGPT and products that are substitutes to ChatGPT, including any costs (in terms of money, time, difficulty, or other factors) of switching to those substitutes;

   g. Barriers to entry or expansion, including but not limited to switching costs, personalization, memory, default bias, brand strength, economies of scale, access to inputs (including but not limited to human resources, power, and cloud computing), direct and/or indirect network effects, and access to capital;

   h. The actual, projected, or potential effects on price and quality of ChatGPT, including but not limited to OpenAI's use of advertising in ChatGPT and ChatGPT's usage limits, caused by or resulting from competition from products substitutable for ChatGPT;

   i. The location of Your customers, Your sales, and the companies that offer products that are substitutes for ChatGPT; and

   j. The competitive conditions ChatGPT faces in the United States and in other countries.

2

App. 369

7.      Your tracking and analysis of the iPhone's market share or the market share of any component or feature of the iPhone, and the market share of Apple's competitors including:

    a.   The size of the markets (e.g., by revenue, units sold, App Store downloads, App Store revenues, or other metrics);

    b.   The share of Apple's competitors in those markets;

    c.   Products that You consider to be substitutes for iPhones;

    d.   The actual, projected, or potential effects on price and quality of iPhones, caused by or resulting from competition from products substitutable for iPhones; and

    e.   The competitive conditions the iPhone faces in the United States and in other countries.

8.      Your selling of advertising in ChatGPT, including but not limited to:

    a.   Your actual and projected costs per impression, costs per click, and/or costs per action;

    b.   Your analysis, description, and evaluation of the costs per impression, costs per click, costs per action, and/or similar measures for ChatGPT ads compared to other types of advertising (e.g., Meta ads, Google search ads, television ads, etc.);

    c.   Your analysis, description, and evaluation of the effects of the introduction of ads on the usage of ChatGPT;

    d.   Your actual and projected revenues from selling advertisements in ChatGPT; and

App. 370

    e. Your use of ChatGPT users' interactions with advertisements for training or developing OpenAI Models or ChatGPT.

9. ████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

10. Your relationship and communication with Apple, including without limitation: revenues shared between Apple and OpenAI, the Apple-OpenAI Agreement, the Apple-ChatGPT Integration, and Apple business reviews of the ChatGPT app.

11. The Apple-OpenAI Agreement including:

    a. The employees, officers, and/or directors of OpenAI involved in the negotiation and execution of the Apple-OpenAI Agreement and Apple-ChatGPT Integration;

    b. Your rationale for entering the Apple-OpenAI Agreement and for the Apple-ChatGPT Integration;

    c. Your negotiation of the Apple-OpenAI Agreement;

    d. The terms of the Apple-OpenAI Agreement;

    e. Your understanding of any period of exclusivity, head start, or default status afforded to You and/or ChatGPT by the Apple-OpenAI Agreement;

    f. Your payments to Apple or any revenue shared with Apple under the Apple-OpenAI Agreement;

    g. Communications with Your Board of Directors regarding the Apple-OpenAI Agreement or the Apple-ChatGPT Integration, including without limitation the consideration and approval of the Apple-OpenAI Agreement by OpenAI's

Board of Directors (e.g., as reflected in OAI_NDTX_0010812, OAI_NDTX_0010814, OAI_NDTX_0010877, OAI_NDTX_0007056, and OAI_NDTX_0010875);

h. Communications with Apple regarding the Apple-OpenAI Agreement or the Apple-ChatGPT Integration;

i. Any benefits to You from the Apple-OpenAI Agreement in terms of additional users, subscriptions, revenues, the value of Prompts and Prompt data from the Apple-ChatGPT Integration for training OpenAI Models, the value of native distribution on Apple Devices, profits, and brand effects;

j. Your efforts to ensure the safety and privacy of Apple users through the Apple-ChatGPT Integration, including but not limited to Your compliance with zero-data retention policies, ChatGPT's detection of self-harm risk, Your use of search indices, and Apple's security reviews of Your products;

██████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████

l. Your efforts to train ChatGPT or OpenAI Models with data accessed or obtained through the Apple-ChatGPT Integration.

12. The promotion of ChatGPT by Apple, including but not limited to the featuring of ChatGPT in Apple's App Store (including on the "Must-Have Apps" list), the featuring of ChatGPT in Apple marketing, ChatGPT's ranking in search results in the Apple App Store, any paid or unpaid marketing opportunities requested by You or offered by Apple, and any

5

App. 372

Agreement or understanding that ChatGPT would be featured or be the only GenAI Chatbot featured on Apple's Must-Have Apps list.

13.     Your analysis of any brand or anointment effects conveyed to You and/or to ChatGPT via the Apple-OpenAI Agreement and/or Apple-ChatGPT Integration.

14.     The Apple App Store, including its importance to You as a distribution channel and Apple's control over such distribution.

15.     Your understanding of and reaction to any actual or anticipated plans by Apple to integrate other GenAI Chatbots into iPhones and other Apple devices.

16.     The timelines for review of the ChatGPT App in the Apple App Store and Google Play Store, including comparisons with the review times of other Apps, and any communications or Agreements with Apple regarding review timelines for the ChatGPT App.

17.     The assumptions, source data, filters, and calculations used to create the data sets you produced in this case, including without limitation:

      a.  OAI_NDTX_0001350;

      b.  OAI_NDTX_0001351;

      c.  OAI_NDTX_0029932;

      d.  OAI_NDTX_0029935;

      e.  OAI_NDTX_0029939; and

      f.  OAI_NDTX_0030668.

18.     The Agreement between Apple and Google ("Apple-Google Agreement"), as reported in the January 12, 2026 Apple-Google Joint Statement, available at

6

https://blog.google/company-news/inside-google/company-announcements/joint-statement-google-apple/, including:

    a.  Your understanding of the terms of the Apple-Google Agreement;

    b.  Your attempts to win the contract awarded to Google; and

    c.  The relationship, if any, between the Apple-OpenAI Agreement and the Apple-Google Agreement.

19.    Your Agreements and communications with Microsoft, including but not limited to any revenue sharing Agreements and any communications with Microsoft regarding the pricing or strategy of ChatGPT and/or Microsoft CoPilot.

20.    Your efforts to enter Agreements or partnerships with smartphone manufacturers, including but not limited to Samsung, Google, Motorola, and Apple, including whether You sought and/or entered exclusive Agreements with any smartphone manufacturers.

21.    Your efforts to enter Agreements or partnerships with third-party apps.

22.    Your financial statements produced in this Action (e.g., OAI_NDTX_0008997, OAI_NDTX_0009023, OAI_NDTX_0009057).

23.    Your Payment Attribution Reports (e.g., OAI_NDTX_0014995) and weekly integration reports (e.g., OAI_NDTX_0005773), and any other reports measuring the performance of the Apple-ChatGPT Integration.

24.    Your revenue, costs, profitability, gross profit margin, contribution margin, and operating profit margin for ChatGPT.

25.    Your actual and projected valuation of OpenAI and ChatGPT.

26.    Your understanding of the criteria Apple uses for approving Apps to be featured on the Must-Have Apps list and ChatGPT's compliance with those criteria.

7

App. 374

# Tab 51

App. 376

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY



App. 377

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY    APL-XAI_00066020



App. 378

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY



App. 379

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

APL-XAI_00066022

App. 380

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

APL-XAI_00066023

# Tab 52

App. 382

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0006713

App. 383

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0006714

# Tab 53

App. 385

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0029546

Highly Confidential – Outside Counsels' Eyes Only

App. 386

OAI_NDTX_0029547

Highly Confidential – Outside Counsels' Eyes Only

App. 387

# Tab 54

App. 389



Highly Confidential – Outside Counsels' Eyes Only

Highly Confidential – Outside Counsels' Eyes Only

App. 390

OAI_NDTX_0007057

# Tab 55

**ADVERTISING**

# ChatGPT is getting ads. Sam Altman once called them a 'last resort.'

By **Steven Tweedie** and **Brent D. Griffiths**



: Todd Owyoung/NBC via Getty Images

Jan 16, 2026, 2:26 PM ET                              ↱ **Share**    🔖 **Save**

OpenAI is officially preparing to test ads in ChatGPT.

The move comes as the AI company looks to increase revenue amid $1.4 trillion in spending commitments in the coming years.

CEO Sam Altman once portrayed ads as "a last resort" business model for the company before softening his stance.

App. 392

Netflix famously backtracked on its stance toward ads. Now, OpenAI is following suit.

The AI pioneer announced that ads are coming to ChatGPT — less than two years after OpenAI CEO Sam Altman portrayed them as "a last resort."

"Ads plus AI is sort of uniquely unsettling to me," Altman said during an event at Harvard University in May 2024. "I kind of think of ads as a last resort for us for a business model."

Altman's softened stance since then underlines the massive change OpenAI has undergone in the last two years, and the company's embrace of advertising is a testament to just how expensive the AI race has become.

In June, the OpenAI CEO said he wasn't "totally against" ads, he just wanted to make sure OpenAI got the balance correct.

"We haven't done any advertising product yet. I kind of...I mean, I'm not totally against it," Altman said on OpenAI's podcast. "I can point to areas where I like ads. I think ads on Instagram, kinda cool. I bought a bunch of stuff from them. But I am, like, I think it'd be very hard to — I mean, take a lot of care to get right."

In October, Altman expressed a desire to make sure the company went about ads in the proper manner when asked about OpenAI's past criticisms that other tech companies made addictive products.

"We're definitely worried about this," Altman said in response to a question that expressed concern about the similarities of Sora, OpenAI's AI video app, and TikTok and the potential of ads. "I worry about it, not just for things like Sora and TikTok and ads in ChatGPT, which are maybe known problems that we can design carefully."

App. 393

Meanwhile, Altman, former Instacart CEO Fidji Simo (who OpenAI hired as its CEO of applications in early 2025), and seemingly every other member of the company's C-suite have expressed an almost insatiable demand for more compute in interviews.

It's proven a costly endeavor. OpenAI now has roughly $1.4 trillion in spending commitments on data centers and related infrastructure, raising questions about how it plans to pay the bills without the benefit of the advertising businesses of its Big Tech competitors, like Google and Meta.

OpenAI also completed its restructuring into a more traditional for-profit, a move Altman said was designed to make it easier to attract future investments.

## How the ads will work



**OpenAI shared an example of what ads will look like in ChatGPT.** OpenAI

As part of the announcement, OpenAI said that free and Go users of the popular AI chatbot would start seeing ads being tested "in the coming weeks."

App. 394

Sharing details on the planned test, OpenAI said that ChatGPT's results "will not be influenced by ads," the ads will be clearly labeled, and chatbot conversations will remain private and not shared with advertisers.

In the coming weeks, we plan to start testing ads in ChatGPT free and Go tiers.

We're sharing our principles early on how we'll approach ads—guided by putting user trust and transparency first as we work to make AI accessible to everyone.

What matters most:
- Responses in… pic.twitter.com/3UQJsdriYR

— OpenAI (@OpenAI) January 16, 2026


Paid users of OpenAI's Plus, Pro, Business, and Enterprise plans won't see the ads, the company said.

Simo, OpenAI's CEO of applications, who has previously spoken about her desire to get the ads balance correctly, wrote on X that the most important factor was "ads will not influence the answers ChatGPT gives you."

While Instacart launched ads during Simo's time leading the company, she has said OpenAI's approach would look different.

In November, Simo told Wired that the company would be "extremely respectful" of the deep well of user data OpenAI has when it came to launching ads.

"If we ever were to do anything, it would have to be a very different model than what has been done before," she said. "What I've learned from building ad platforms is that the thing people don't like about ads very often is not the ads themselves, it's the use of the data behind the ads."

App. 395

**Legal & Privacy**

Terms of Service      Terms of Sale      Privacy Policy      Accessibility      Code of Ethics Policy

Reprints & Permissions      Disclaimer      Advertising Policies      Conflict of Interest Policy

Commerce Policy      Coupons Privacy Policy      Coupons Terms      Your Privacy Choices

**Company**

About Us      Careers      Advertise With Us      Contact Us      News Tips      Company News      Awards

Masthead

**Other**

Sitemap      Stock quotes by finanzen.net      Corrections      Community Guidelines      AI Use

**International Editions**

AT          DE          ES          JP          PL          TW

Copyright © 2026 Insider Inc. All rights reserved. Registration on or use of this site constitutes acceptance of our Terms of Service and Privacy Policy.

App. 396

# Tab 56



Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0007788

App. 398

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0007789

App. 399



Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0007790

App. 400

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0007791

App. 401

# Tab 57

Highly Confidential – Outside Counsels' Eyes Only

App. 403

OAI_NDTX_0007014

App. 404

Highly Confidential – Outside Counsels' Eyes Only

# Tab 58

**Legal**

Hardware     Software     Sales & Support     Internet Services     Intellectual Property     More Resources

English     **Choose your preferred language ›**

# ChatGPT Extension & Privacy

The ChatGPT extension is designed to put you in control and enable you
to choose what to share.

You can choose to enable the ChatGPT extension when using supported features, such as Siri, Writing Tools, and visual intelligence (where available). The ChatGPT extension can help you answer questions, as well as generate text and image content. You control when ChatGPT is used and will be asked before any of your information is shared.

You can use the ChatGPT extension without an account. If you have a ChatGPT account, you can also choose to connect to your account with this extension.

Using the ChatGPT Extension

Before any information is sent to ChatGPT, you must enable the ChatGPT extension. This extension is off by default. Enabling it allows you to send requests to ChatGPT in supported features, including Siri, Writing Tools, and visual intelligence, and more. You can choose to disable the ChatGPT extension at any time on your iOS, iPadOS, or visionOS device by going to Settings > Apple Intelligence & Siri > ChatGPT, and tapping to turn off Use ChatGPT. On Mac, go to System Settings > Apple Intelligence & Siri > ChatGPT, and tap to turn off Use ChatGPT.

When you use Siri to access the ChatGPT extension, your request will be analyzed to determine whether you are explicitly asking ChatGPT to process a request. For example, if you explicitly ask ChatGPT to perform a task, such as saying or typing "Ask ChatGPT to write a poem," these requests will then be sent directly to ChatGPT.

If there is no explicit request to use ChatGPT, your request is analyzed to determine whether ChatGPT might have useful results. If it does, Siri will ask whether you would like to use ChatGPT. If you choose, Siri will send your request to ChatGPT and present the answer directly. You can also choose to disable Siri asking you to confirm whether Siri should send a request to ChatGPT by going to Settings > Apple Intelligence & Siri > ChatGPT, and tapping to turn off Confirm ChatGPT Requests.

When you use other supported features, like Writing Tools or visual intelligence, you will be able to choose whether you would like to use the ChatGPT extension for each of these features separately.

Data Provided to ChatGPT

When using the ChatGPT extension, you may choose what content to send to ChatGPT. Your request and attachments like documents, photos, or contents of the document, as well as limited data associated with the request, such as current time zone, country, device type, language, and feature being used when making the request, will be sent to ChatGPT to answer your request and enable ChatGPT to provide you accurate and relevant results.

App. 406

When using the ChatGPT extension, your IP address is obscured from ChatGPT. Your general location, which is approximated by matching the IP address of your internet connection to a geographic region, is provided to ChatGPT for purposes such as enabling ChatGPT to prevent fraud and comply with applicable law.

Using the ChatGPT Extension Without an Account

If you access the ChatGPT extension without an account, only the information described above will be sent to ChatGPT. OpenAI will not receive any information tied to your Apple Account.

OpenAI must process your information solely for the purpose of fulfilling your request and not store your information or any responses it provides unless required under applicable laws. OpenAI also must not use your information to improve or train its models.

Using the ChatGPT Extension with a ChatGPT Account

You can choose to create a ChatGPT account or sign in to an existing account. If you are a ChatGPT subscriber, you will be able to access paid features from your Apple experiences.

When you are signed in, your ChatGPT account settings and OpenAI's data privacy policies will apply. This means OpenAI may log your request, attachments, and session history, and use this data to train or improve their models. To learn more about OpenAI's privacy practices, visit https://openai.com/policies/row-privacy-policy.

Data Provided to Apple

When you use ChatGPT in supported features, Apple collects limited information about your requests to ChatGPT and ChatGPT's response, such as the number of requests sent, or the approximate size of the request or response in order to operate the service and prevent fraud.

When you use ChatGPT in Siri, Apple collects information about your request. For more information, visit www.apple.com/legal/privacy/data/en/ask-siri-dictation. If you choose to opt in to Improve Siri and Dictation, additional data about your request such as the audio recording and transcript of your request, and metadata associated with the response may be logged by Apple. None of this data is tied to your Apple Account. For more information, visit www.apple.com/legal/privacy/data/en/improve-siri-dictation.

If you take steps to upgrade your current ChatGPT plan through your Apple device, Apple may collect limited information about your interactions with the upgrade experience, such as views and clicks, in order to understand and improve the experience. This data is not tied to your Apple Account.

Reporting a Concern

If you have an issue to report about the ChatGPT extension, you may report it through Report a Concern. When you report a concern, you may make a separate choice to share information about the concern with OpenAI. For more information, visit www.apple.com/legal/privacy/data/en/report-concern.

2025-12-12

Legal     Privacy Policy

Hardware and Software                                                              ⌄

More Resources                                                                     ⌄

App. 407

Sales & Support                                                                                    ⌄

Internet Services                                                                                  ⌄

Intellectual Property                                                                              ⌄

Platform Services                                                                                  ⌄

More ways to shop: <u>Find an Apple Store</u> or <u>other retailer</u> near you. Or call <u>1-800-MY-APPLE</u> (1-800-692-7753).

United States

Copyright © 2026 Apple Inc. All rights reserved.

Privacy Policy      Terms of Use      Sales and Refunds      Legal      Site Map

App. 408

# Tab 59

App. 410

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

APL-XAI_00090779



App. 411

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

# Tab 60



Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0008984



Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0008985

App. 414

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0008986

Highly Confidential – Outside Counsels' Eyes Only
OAI_NDTX_0008987

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0008988

App. 417

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0008989

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0008990

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0008991

App. 420

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0008992

App. 421

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0008993

App. 422

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0008994

App. 423

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0008995

App. 424

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0008996

# Tab 61

**CONFIDENTIAL**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| X CORP. and X.AI LLC,<br><br>    Plaintiffs,<br><br>    v.<br><br>APPLE INC., OPENAI, INC., OPENAI, L.L.C., and OPENAI OPCO, LLC,<br><br>    Defendants. | Civil Action No. 4:25-cv-00914-P |

**AMENDED INITIAL DISCLOSURES OF DEFENDANTS OPENAI, INC.,**
**OPENAI, L.L.C., AND OPENAI OPCO, LLC**



AMENDED INITIAL DISCLOSURES OF DEFENDANTS OPENAI, INC.,
OPENAI, L.L.C., AND OPENAI OPCO, LLC







# Tab 62

CONFIDENTIAL

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| X CORP. and X.AI LLC,<br><br>　　　Plaintiffs,<br><br>　　　v.<br><br>APPLE INC., OPENAI, INC., OPENAI, L.L.C., and OPENAI OPCO, LLC,<br><br>　　　Defendants. | Civil Action No. 4:25-cv-00914-P |

**THE OPENAI DEFENDANTS' AMENDED RESPONSES AND
OBJECTIONS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES**

OPENAI DEFENDANTS' AMENDED RESPONSES AND OBJECTIONS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES
CASE NO.: 4:25-cv-00914-P

App. 432

CONFIDENTIAL

7

CONFIDENTIAL

8

App. 434





11

# Tab 63

App. 439

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0018449

App. 440

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0018450

App. 441

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0018451

App. 442

# Tab 64

Highly Confidential – Outside Counsels' Eyes Only

App. 443

OAI_NDTX_0011138

# Tab 65

Highly Confidential – Outside Counsels' Eyes Only

App. 445

OAI_NDTX_0010393

App. 446

Highly Confidential – Outside Counsels' Eyes Only

# Tab 66



Highly Confidential – Outside Counsels' Eyes Only

App. 448

OAI_NDTX_0018888

App. 449



Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0018889



App. 450

Highly Confidential – Outside Counsels' Eyes Only

# Tab 67

App. 452



Highly Confidential

OAI_NDTX_0007717



App. 453

Highly Confidential    OAI_NDTX_0007718

# Tab 68

App. 455

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0007266

# Tab 69

App. 457

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0018957

# Tab 70

App. 459

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

APL-XAI_00094567

App. 460

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

App. 461



HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

APL-XAI_00094569

# Tab 71

OpenAI

January 18, 2026    Company

# A business that scales with the value of intelligence

By Sarah Friar, CFO, OpenAI

Listen to article    |    7:14

We launched ChatGPT as a research preview to understand what would happen if we put frontier intelligence directly in people's hands.

What followed was broad adoption and deep usage on a scale that no one predicted.

More than experimenting with AI, people folded ChatGPT into their lives. Students started using it to untangle homework they were stuck on late at night. Parents started using it to plan trips and manage budgets. Writers used it to break through blank pages. More and more, people used it to understand their lives. People used ChatGPT to help make sense of health symptoms, prepare for doctor visits, and navigate complex decisions. People used it to think more clearly when they were tired, stressed, or unsure.

Then they brought that leverage to work.

At first, it showed up in small ways. A draft refined before a meeting. A spreadsheet checked one more time. A customer email rewritten to land the right tone. Very quickly, it became part of daily workflows. Engineers reasoned through code faster. Marketers shaped

App. 463

OpenAI

What began as a tool for curiosity became infrastructure that helps people create more, decide faster, and operate at a higher level.

That transition sits at the heart of how we build OpenAI. We are a research and deployment company. Our job is to close the distance between where intelligence is advancing and how individuals, companies, and countries actually adopt and use it.

As ChatGPT became a tool people rely on every day to get real work done, we followed a simple and enduring principle: our business model should scale with the value intelligence delivers.

We have applied that principle deliberately. As people demanded more capability and reliability, we introduced consumer subscriptions. As AI moved into teams and workflows, we created workplace subscriptions and added usage-based pricing so costs scale with real work getting done. We also built a platform business, enabling developers and enterprises to embed intelligence through our APIs, where spend grows in direct proportion to outcomes delivered.

More recently, we have applied the same principle to commerce. People come to ChatGPT not just to ask questions, but to decide what to do next. What to buy. Where to go. Which option to choose. Helping people move from exploration to action creates value for users and for the partners who serve them. Advertising follows the same arc. When people are close to a decision, relevant options have real value, as long as they are clearly labeled and genuinely useful.

Across every path, we apply the same standard. Monetization should feel native to the experience. If it does not add value, it does not belong.

Both our Weekly Active User (WAU) and Daily Active User (DAU) figures continue to produce all-time highs. This growth is driven by a flywheel across compute, frontier research, products, and monetization. Investment in compute powers leading-edge research and step-change gains in model capability. Stronger models unlock better

App. 464

**OpenAI**

Looking back on the past three years, our ability to serve customers—as measured by revenue—directly tracks available compute: Compute grew 3X year over year or 9.5X from 2023 to 2025: 0.2 GW in 2023, 0.6 GW in 2024, and ~1.9 GW in 2025. While revenue followed the same curve growing 3X year over year, or 10X from 2023 to 2025: $2B ARR in 2023, $6B in 2024, and $20B+ in 2025. This is never-before-seen growth at such scale. And we firmly believe that more compute in these periods would have led to faster customer adoption and monetization.

Compute is the scarcest resource in AI. Three years ago, we relied on a single compute provider. Today, we are working with providers across a diversified ecosystem. That shift gives us resilience and, critically, compute certainty. We can plan, finance, and deploy capacity with confidence in a market where access to compute defines who can scale.

App. 465

**OpenAI**

frontier models on premium hardware when capability matters most. We serve high-volume workloads on lower-cost infrastructure when efficiency matters more than raw scale. Latency drops. Throughput improves. And we can deliver useful intelligence at costs measured in cents per million tokens. That is what makes AI viable for everyday workflows, not just elite use cases.

On top of this compute layer sits a product platform that spans text, images, voice, code, and APIs. Individuals and organizations use it to think, create, and operate more effectively. The next phase is agents and workflow automation that run continuously, carry context over time, and take action across tools. For individuals, that means AI that manages projects, coordinates plans, and executes tasks. For organizations, it becomes an operating layer for knowledge work.

As these systems move from novelty to habit, usage becomes deeper and more persistent. That predictability strengthens the economics of the platform and supports long-term investment.

The business model closes the loop. We began with subscriptions. Today we operate a multi-tier system that includes consumer and team subscriptions, a free ad- and commerce-supported tier that drives broad adoption, and usage-based APIs tied to production workloads. Where this goes next will extend beyond what we already sell. As intelligence moves into scientific research, drug discovery, energy systems, and financial modeling, new economic models will emerge. Licensing, IP-based agreements, and outcome-based pricing will share in the value created. That is how the internet evolved. Intelligence will follow the same path.

This system requires discipline. Securing world-class compute requires commitments made years in advance, and growth does not move in a perfectly smooth line. At times, capacity leads usage. At other times, usage leads capacity. We manage that by keeping the balance sheet light, partnering rather than owning, and structuring contracts with flexibility across providers and hardware types. Capital is committed in tranches against real demand signals. That lets us lean forward when growth is there without locking in more of the future than the market has earned.

App. 466

Case 4:25-cv-00914-P    Document 193    Filed 04/15/26    Page 448 of 616    PageID 7184

**OpenAI**

between what AI now makes possible and how people, companies, and countries are using it day to day. The opportunity is large and immediate, especially in health, science, and enterprise, where better intelligence translates directly into better outcomes.

Infrastructure expands what we can deliver. Innovation expands what intelligence can do. Adoption expands who can use it. Revenue funds the next leap. This is how intelligence scales and becomes a foundation for the global economy.



ChatGPT     API Platform     2026

Author

Sarah Friar

# Keep reading                                         View all

App. 467

**OpenAI**

| Our Research | ChatGPT | For Business | Terms & Policies |
|---|---|---|---|
| Research Index | Explore ChatGPT ↗ | Business Overview | Terms of Use |
| Research Overview | Business | Solutions | Privacy Policy |
| Research Residency | Enterprise | Contact Sales | Other Policies |
| OpenAI for Science | Education | | |
| Economic Research | Pricing ↗ | Company | |

**Latest Advancements**

Download ↗

About Us

GPT-5.3 Instant

Our Charter

GPT-5.3-Codex

Sora

Foundation ↗

GPT-5

Sora Overview

Careers

Codex

Features

Brand

Pricing

**Safety**

Sora log in ↗

Support

Safety Approach

Help Center ↗

Security & Privacy

API Platform

Trust & Transparency

Platform Overview

More

Pricing

News

API log in ↗

Stories

Documentation ↗

Livestreams

Developer Forum ↗

Podcast

RSS

OpenAI © 2015–2026

Manage Cookies

🌐 English  United States

App. 468

# Tab 72

App. 470

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010365

App. 471

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010366

App. 472

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010367

App. 473

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010368

App. 474



Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010369

App. 475

# Tab 73



App. 476

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0015877



App. 477

Highly Confidential – Outside Counsels' Eyes Only



App. 478

Highly Confidential – Outside Counsels' Eyes Only



App. 479

Highly Confidential – Outside Counsels' Eyes Only



App. 480

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0015881

App. 481

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0015882

App. 482

# Tab 74



Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0006244

App. 483



Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0006245

App. 484

# Tab 75



App. 486

HIGHLY CONFIDENTIAL

APL-XAI_00064241



App. 487

HIGHLY CONFIDENTIAL                                                                 APL-XAI_00064242

# Tab 76

Highly Confidential – Outside Counsels' Eyes Only

App. 489

OAI_NDTX_0010814

Highly Confidential – Outside Counsels' Eyes Only

App. 490

OAI_NDTX_0010815

Highly Confidential – Outside Counsels' Eyes Only

App. 491

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010816



Highly Confidential – Outside Counsels' Eyes Only

App. 492



App. 493

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010818

App. 494

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010819



Highly Confidential – Outside Counsels' Eyes Only

App. 495

OAI_NDTX_0010820

App. 496

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010821

App. 497

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010822

Highly Confidential – Outside Counsels' Eyes Only

App. 499

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010824



Highly Confidential – Outside Counsels' Eyes Only

App. 500

OAI_NDTX_0010825



App. 501

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010826

Highly Confidential – Outside Counsels' Eyes Only

App. 502

OAI_NDTX_0010827

Highly Confidential – Outside Counsels' Eyes Only

App. 503

OAI_NDTX_0010828

Highly Confidential – Outside Counsels' Eyes Only

App. 504

OAI_NDTX_0010829

Highly Confidential – Outside Counsels' Eyes Only

App. 505

Highly Confidential – Outside Counsels' Eyes Only

App. 506

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010832

Highly Confidential – Outside Counsels' Eyes Only

App. 508

OAI_NDTX_0010833

Highly Confidential – Outside Counsels' Eyes Only

App. 509

OAI_NDTX_0010834

Highly Confidential – Outside Counsels' Eyes Only

App. 510

OAI_NDTX_0010835

Highly Confidential – Outside Counsels' Eyes Only

App. 511

OAI_NDTX_0010836

App. 512

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010837

Highly Confidential – Outside Counsels' Eyes Only

App. 513

OAI_NDTX_0010838

App. 514

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010839

Highly Confidential – Outside Counsels' Eyes Only

App. 515

OAI_NDTX_0010840

App. 516

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010841

Highly Confidential – Outside Counsels' Eyes Only

App. 517

OAI_NDTX_0010842

App. 518

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010843

Highly Confidential – Outside Counsels' Eyes Only

App. 519

OAI_NDTX_0010844

App. 520

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010845

App. 521

Highly Confidential – Outside Counsels' Eyes Only　　　　　　　　　　　　　　　OAI_NDTX_0010846

App. 522

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010847

Highly Confidential – Outside Counsels' Eyes Only

App. 523

OAI_NDTX_0010848

Highly Confidential – Outside Counsels' Eyes Only

App. 524

OAI_NDTX_0010849

Highly Confidential – Outside Counsels' Eyes Only

App. 525

OAI_NDTX_0010850

App. 526

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010851

App. 527

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010852

App. 528

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010853

Highly Confidential – Outside Counsels' Eyes Only

App. 529

OAI_NDTX_0010854

Highly Confidential – Outside Counsels' Eyes Only

App. 530

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010855

Highly Confidential – Outside Counsels' Eyes Only

App. 531

Highly Confidential – Outside Counsels' Eyes Only                                              OAI_NDTX_0010856

Highly Confidential – Outside Counsels' Eyes Only

App. 532

OAI_NDTX_0010857

App. 533

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010858

Highly Confidential – Outside Counsels' Eyes Only

App. 534

Highly Confidential – Outside Counsels' Eyes Only

App. 535

OAI_NDTX_0010860

Highly Confidential – Outside Counsels' Eyes Only

App. 536

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010861

App. 537

Highly Confidential – Outside Counsels' Eyes Only

Highly Confidential – Outside Counsels' Eyes Only

App. 538

OAI_NDTX_0010863

Highly Confidential – Outside Counsels' Eyes Only

App. 539

OAI_NDTX_0010864

Highly Confidential – Outside Counsels' Eyes Only

App. 540

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010865

Highly Confidential – Outside Counsels' Eyes Only

App. 541

OAI_NDTX_0010866

Highly Confidential – Outside Counsels' Eyes Only

App. 542

OAI_NDTX_0010867

App. 543

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010868

Highly Confidential – Outside Counsels' Eyes Only

App. 544

OAI_NDTX_0010869

Highly Confidential – Outside Counsels' Eyes Only

App. 545

OAI_NDTX_0010870

App. 546

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010871

Highly Confidential – Outside Counsels' Eyes Only

App. 547

OAI_NDTX_0010872

App. 548

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010873

App. 549

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010874

App. 550

# Tab 77

Highly Confidential – Outside Counsels' Eyes Only

App. 551

OAI_NDTX_0030322

App. 552

# Tab 78

Highly Confidential – Outside Counsels' Eyes Only

App. 553

OAI_NDTX_0007236

App. 554

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0007237

Highly Confidential – Outside Counsels' Eyes Only

App. 555

OAI_NDTX_0007238

App. 556

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0007239

# Tab 79



App. 558

HIGHLY CONFIDENTIAL

APL-XAI_00003781

# Tab 80

App. 560

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0014940

App. 561

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0014941

App. 562

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0014942



App. 563

Highly Confidential – Outside Counsels' Eyes Only

App. 564



Highly Confidential – Outside Counsels' Eyes Only    OAI_NDTX_0014944

App. 565



Highly Confidential – Outside Counsels' Eyes Only



App. 566

Highly Confidential – Outside Counsels' Eyes Only



App. 567

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0014947

App. 568

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0014948

Highly Confidential – Outside Counsels' Eyes Only

App. 569

OAI_NDTX_0014949

App. 570

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0014950



App. 571

Highly Confidential – Outside Counsels' Eyes Only

# Tab 81

App. 573

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0031102

App. 574



Highly Confidential – Outside Counsels' Eyes Only

App. 575

# Tab 82

Highly Confidential – Outside Counsels' Eyes Only

App. 576

OAI_NDTX_0030794

Highly Confidential – Outside Counsels' Eyes Only



App. 577

App. 578

Highly Confidential – Outside Counsels' Eyes Only



App. 579

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0030797



App. 580

Highly Confidential – Outside Counsels' Eyes Only

Highly Confidential – Outside Counsels' Eyes Only

App. 581

Highly Confidential – Outside Counsels' Eyes Only

App. 582

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0030800

App. 583

Highly Confidential – Outside Counsels' Eyes Only

App. 584

Highly Confidential – Outside Counsels' Eyes Only                                    OAI_NDTX_0030802

App. 585

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0030803

App. 586

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0030804

Highly Confidential – Outside Counsels' Eyes Only

App. 587

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0030805

App. 588

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0030806

App. 589

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0030807

App. 590

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0030808

App. 591

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0030809

App. 592

Highly Confidential – Outside Counsels' Eyes Only

Highly Confidential – Outside Counsels' Eyes Only

App. 593

OAI_NDTX_0030811

Highly Confidential – Outside Counsels' Eyes Only

App. 594

OAI_NDTX_0030812

App. 595

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0030813

App. 596

Highly Confidential – Outside Counsels' Eyes Only                    OAI_NDTX_0030814

App. 597

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0030815

Highly Confidential – Outside Counsels' Eyes Only

App. 598

OAI_NDTX_0030816

App. 599

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0030817

Highly Confidential – Outside Counsels' Eyes Only

App. 600

OAI_NDTX_0030818

Highly Confidential – Outside Counsels' Eyes Only

App. 601

OAI_NDTX_0030819

# Tab 83



Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0030697

App. 603



Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0030698

App. 604

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0030699

App. 605



Highly Confidential – Outside Counsels' Eyes Only     OAI_NDTX_0030700

App. 606



Highly Confidential – Outside Counsels' Eyes Only



Highly Confidential – Outside Counsels' Eyes Only    OAI_NDTX_0030702

App. 608

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0030703

App. 609



Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0030704

App. 610



Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0030705

App. 611



Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0030706

App. 612



Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0030707

App. 613



Highly Confidential – Outside Counsels' Eyes Only    OAI_NDTX_0030708

App. 614



Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0030709

App. 615



Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0030710

App. 616



Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0030711

App. 617



Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0030712



Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0030713

App. 619



Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0030714

App. 620



Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0030715

App. 621

# Tab 84



App. 623

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

APL-XAI_00005835



App. 624

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

# Tab 85

Case 4:25-cv-00914-P    Document 193    Filed 04/15/26    Page 607 of 616    PageID 7343



# Moore's Law for Everything

by Sam Altman · March 16, 2021

My work at OpenAI reminds me every day about the magnitude of the socioeconomic change that is coming sooner than most people believe. Software that can think and learn will do more and more of the work that people now do. Even more power will shift from labor to capital. If public policy doesn't adapt accordingly, most people will end up worse off than they are today.

We need to design a system that embraces this technological future and taxes the assets that will make up most of the value in that world–companies and land–in order to fairly distribute some of the coming wealth. Doing so can make the society of the future much less divisive and enable everyone to participate in its gains.

In the next five years, computer programs that can think will read legal documents and give medical advice. In the next decade, they will do assembly-line work and maybe even become companions. And in the decades after that, they will do almost everything, including making new scientific discoveries that will expand our concept of "everything."

This technological revolution is unstoppable. And a recursive loop of innovation, as these smart machines themselves help us make smarter machines, will accelerate the revolution's pace. Three crucial consequences follow:

1. This revolution will create phenomenal wealth. The price of many kinds of labor (which drives the costs of goods and services) will fall toward zero once sufficiently powerful AI "joins the workforce."

2. The world will change so rapidly and drastically that an equally drastic change in policy will be needed to distribute this wealth and enable more people to pursue the life they want.

3. If we get both of these right, we can improve the standard of living for people more than we ever have before.

App. 626

Case 4:25-cv-00914-P    Document 193    Filed 04/15/26    Page 608 of 616    PageID 7344

Because we are at the beginning of this tectonic shift, we have a rare opportunity to pivot toward the future. That pivot can't simply address current social and political problems; it must be designed for the radically different society of the near future. Policy plans that don't account for this imminent transformation will fail for the same reason that the organizing principles of pre-agrarian or feudal societies would fail today.

What follows is a description of what's coming and a plan for how to navigate this new landscape.



Part 1

## The AI Revolution

On a zoomed-out time scale, technological progress follows an exponential curve. Compare how the world looked 15 years ago (no smartphones, really), 150 years ago (no combustion engine, no home electricity), 1,500 years ago (no industrial machines), and 15,000 years ago (no agriculture).

The coming change will center around the most impressive of our capabilities: the phenomenal ability to think, create, understand, and reason. To the three great technological revolutions–the agricultural, the industrial, and the computational–we will add a fourth: the AI revolution. This revolution will generate enough wealth for everyone to have what they need, if we as a society manage it responsibly.

The technological progress we make in the next 100 years will be far larger than all we've made since we first controlled fire and invented the wheel. We have already built AI systems that can learn and do useful things. They are still primitive, but the trendlines are clear.

App. 627



Part 2

## Moore's Law for Everything

Broadly speaking, there are two paths to affording a good life: an individual acquires more money (which makes that person wealthier), or prices fall (which makes everyone wealthier). Wealth is buying power: how much we can get with the resources we have.

The best way to increase societal wealth is to decrease the cost of goods, from food to video games. Technology will rapidly drive that decline in many categories. Consider the example of semiconductors and Moore's Law: for decades, chips became twice as powerful for the same price about every two years.

In the last couple of decades, costs in the US for TVs, computers, and entertainment have dropped. But other costs have risen significantly, most notably those for housing, healthcare, and higher education. Redistribution of wealth alone won't work if these costs continue to soar.

AI will lower the cost of goods and services, because labor is the driving cost at many levels of the supply chain. If robots can build a house on land you already own from natural resources mined and refined onsite, using solar power, the cost of building that house is close to the cost to rent the robots. And if those robots are made by other robots, the cost to rent them will be much less than it was when humans made them.

Similarly, we can imagine AI doctors that can diagnose health problems better than any human, and AI teachers that can diagnose and explain exactly what a student doesn't understand.

"Moore's Law for everything" should be the rallying cry of a generation whose members can't afford what they want. It sounds utopian, but it's something technology can deliver (and in some cases already has). Imagine a world where, for decades, everything–housing, education, food, clothing, etc.–became half as expensive every two years.

App. 628

Case 4:25-cv-00914-P    Document 193    Filed 04/15/26    Page 610 of 616    PageID 7346

We will discover new jobs–we always do after a technological revolution–and because of the abundance on the other side, we will have incredible freedom to be creative about what they are.



Part 3

## Capitalism for Everyone

A stable economic system requires two components: growth and inclusivity. Economic growth matters because most people want their lives to improve every year. In a zero-sum world, one with no or very little growth, democracy can become antagonistic as people seek to vote money away from each other. What follows from that antagonism is distrust and polarization. In a high-growth world the dogfights can be far fewer, because it's much easier for everyone to win.

Economic inclusivity means everyone having a reasonable opportunity to get the resources they need to live the life they want. Economic inclusivity matters because it's fair, produces a stable society, and can create the largest slices of pie for the most people. As a side benefit, it produces more growth.

Capitalism is a powerful engine of economic growth because it rewards people for investing in assets that generate value over time, which is an effective incentive system for creating and distributing technological gains. But the price of progress in capitalism is inequality.

App. 629

Some inequality is ok–in fact, it's critical, as shown by all systems that have tried to be perfectly equal–but a society that does not offer sufficient equality of opportunity for everyone to advance is not a society that will last.

The traditional way to address inequality has been by progressively taxing income. For a variety of reasons, that hasn't worked very well. It will work much, much worse in the future. While people will still have jobs, many of those jobs won't be ones that create a lot of economic value in the way we think of value today. As AI produces most of the world's basic goods and services, people will be freed up to spend more time with people they care about, care for people, appreciate art and nature, or work toward social good.

We should therefore focus on taxing capital rather than labor, and we should use these taxes as an opportunity to directly distribute ownership and wealth to citizens. In other words, the best way to improve capitalism is to enable everyone to benefit from it directly as an equity owner. This is not a new idea, but it will be newly feasible as AI grows more powerful, because there will be dramatically more wealth to go around. The two dominant sources of wealth will be 1) companies, particularly ones that make use of AI, and 2) land, which has a fixed supply.

There are many ways to implement these two taxes, and many thoughts about what to do with them. Over a long period of time, perhaps most other taxes could be eliminated. What follows is an idea in the spirit of a conversation starter.

We could do something called the American Equity Fund. The American Equity Fund would be capitalized by taxing companies above a certain valuation 2.5% of their market value each year, payable in shares transferred to the fund, and by taxing 2.5% of the value of all privately-held land, payable in dollars.

All citizens over 18 would get an annual distribution, in dollars and company shares, into their accounts. People would be entrusted to use the money however they needed or wanted—for better education, healthcare, housing, starting a company, whatever. Rising costs in government-funded industries would face real pressure as more people chose their own services in a competitive marketplace.

As long as the country keeps doing better, every citizen would get more money from the Fund every year (on average; there will still be economic cycles). Every citizen would therefore increasingly partake of the freedoms, powers, autonomies, and opportunities that come with economic self-determination. Poverty would be greatly reduced and many more people would have a shot at the life they want.

A tax payable in company shares will align incentives between companies, investors, and citizens, whereas a tax on profits does not–incentives are superpowers, and this is a critical difference. Corporate profits can be disguised or deferred or offshored, and are often disconnected from share price. But everyone who owns a share in

App. 630

Amazon wants the share price to rise. As people's individual assets rise in tandem with the country's, they have a literal stake in seeing their country do well.

Henry George, an American political economist, proposed the idea of a land-value tax in the late 1800s. The concept is widely supported by economists. The value of land appreciates because of the work society does around it: the network effects of the companies operating around a piece of land, the public transportation that makes it accessible, and the nearby restaurants, coffeeshops, and access to nature that makes it desirable. Because the landowner didn't do all that work, it's fair for that value to be shared with the larger society that did.

If everyone owns a slice of American value creation, everyone will want America to do better: collective equity in innovation and in the success of the country will align our incentives. The new social contract will be a floor for everyone in exchange for a ceiling for no one, and a shared belief that technology can and must deliver a virtuous circle of societal wealth. (We will continue to need strong leadership from our government to make sure that the desire for stock prices to go up remains balanced with protecting the environment, human rights, etc.)

In a world where everyone benefits from capitalism as an owner, the collective focus will be on making the world "more good" instead of "less bad." These approaches are more different than they seem, and society does much better when it focuses on the former. Simply put, more good means optimizing for making the pie as large as possible, and less bad means dividing the pie up as fairly as possible. Both can increase people's standard of living once, but continuous growth only happens when the pie grows.

App. 631

Part 4

## Implementation and Troubleshooting

The amount of wealth available to capitalize the American Equity Fund would be significant. There is about $50 trillion worth of value, as measured by market capitalization, in US companies alone. Assume that, as it has on average over the past century, this will at least double over the next decade.

There is also about $30 trillion worth of privately-held land in the US (not counting improvements on top of the land). Assume that this value will roughly double, too, over the next decade–this is somewhat faster than the historical rate, but as the world really starts to understand the shifts AI will cause, the value of land, as one of the few truly finite assets, should increase at a faster rate.

Of course, if we increase the tax burden on holding land, its value will diminish relative to other investment assets, which is a good thing for society because it makes a fundamental resource more accessible and encourages investment instead of speculation. The value of companies will diminish in the short-term, too, though they will continue to perform quite well over time.

It's a reasonable assumption that such a tax causes a drop in value of land and corporate assets of 15% (which only will take a few years to recover!).

Under the above set of assumptions (current values, future growth, and the reduction in value from the new tax), a decade from now each of the 250 million adults in America would get about $13,500 every year. That dividend could be much higher if AI accelerates growth, but even if it's not, $13,500 will have much greater purchasing power than it does now because technology will have greatly reduced the cost of goods and services. And that effective purchasing power will go up dramatically every year.

App. 632

It would be easiest for companies to pay the tax each year by issuing new shares representing 2.5% of their value. There would obviously be an incentive for companies to escape the American Equity Fund tax by off-shoring themselves, but a simple test involving a percentage of revenue derived from America could address this concern. A larger problem with this idea is the incentive for companies to return value to shareholders instead of reinvesting it in growth.

If we tax only public companies, there would also be an incentive for companies to stay private. For private companies that have annual revenue in excess of $1 billion, we could let their tax in equity accrue for a certain (limited) number of years until they go public. If they remain private for a long time, we could let them settle the tax in cash.

We'd need to design the system to prevent people from consistently voting themselves more money. A constitutional amendment delineating the allowable ranges of the tax would be a strong safeguard. It is important that the tax not be so large that it stifles growth–for example, the tax on companies must be much smaller than their average growth rate.

We'd also need a robust system for quantifying the actual value of land. One way would be with a corps of powerful federal assessors. Another would be to let local governments do the assessing, as they now do to determine property taxes. They would continue to receive local taxes using the same assessed value. However, if a certain percentage of sales in a jurisdiction in any given year falls too far above or below the local government's estimate of the property's values, then all the other properties in their jurisdiction would be reassessed up or down.

The theoretically optimal system would be to tax the value of the land only, and not the improvements built on top of it. In practice, this value may turn out to be too difficult to assess, so we may need to tax the value of the land and the improvements on it (at a lower rate, as the combined value would be higher).

Finally, we couldn't let people borrow against, sell, or otherwise pledge their future Fund distributions, or we won't really solve the problem of fairly distributing wealth over time. The government can simply make such transactions unenforceable.

App. 633



Part 5

## Shifting to the New System

A great future isn't complicated: we need technology to create more wealth, and policy to fairly distribute it. Everything necessary will be cheap, and everyone will have enough money to be able to afford it. As this system will be enormously popular, policymakers who embrace it early will be rewarded: they will themselves become enormously popular.

In the Great Depression, Franklin Roosevelt was able to enact a huge social safety net that no one would have thought possible five years earlier. We are in a similar moment now. So a movement that is both pro-business and pro-people will unite a remarkably broad constituency.

A politically feasible way to launch the American Equity Fund, and one that would reduce the transitional shock, would be with legislation that transitions us gradually to the 2.5% rates. The full 2.5% rate would only take hold once GDP increases by 50% from the time the law is passed. Starting with small distributions soon will be both motivating and helpful in getting people comfortable with a new future. Achieving 50% GDP growth sounds like it would take a long time (it took 13 years for the economy to grow 50% to its 2019 level). But once AI starts to arrive, growth will be extremely rapid. Down the line, we will probably be able to reduce a lot of other taxes as we tax these two fundamental asset classes.

The changes coming are unstoppable. If we embrace them and plan for them, we can use them to create a much fairer, happier, and more prosperous society. The future can be almost unimaginably great.

App. 634

Case 4:25-cv-00914-P     Document 193     Filed 04/15/26     Page 616 of 616     PageID 7352

Thanks to Steven Adler, Daniela Amodei, Adam Baybutt, Chris Beiser, Jack Clark, Ryan Cohen, Tyler Cowen, Matt Danzeisen, Steve Dowling, Tad Friend, Lachy Groom, Chris Hallacy, Reid Hoffman, Ingmar Kanitscheider, Oleg Klimov, Matt Knight, Aris Konstantinidis, Andrew Kortina, Matt Krisiloff, Scott Krisiloff, John Luttig, Erik Madsen, Preston McAfee, Luke Miles, Arvind Neelakantan, David Oates, Cullen O'Keefe, Alethea Power, Raul Puri, Ilya Sutskever, Luke Walsh, Caleb Watney, and Wojchiech Zaremba for reviewing drafts of this, and to Gregory Koberger for designing it.

App. 635