**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

|  |  |
|---|---|
| X CORP. and X.AI LLC,<br><br>　　　Plaintiffs,<br><br>　　　v.<br><br>APPLE INC.; OPENAI, INC.; OPENAI, L.L.C.; and OPENAI OPCO, LLC,<br><br>　　　Defendants. | **Civil Action No. 4:25-cv-00914-P** |

**PLAINTIFFS X CORP. AND X.AI LLC'S OPPOSITION
<u>TO THE OPENAI DEFENDANTS' MOTION TO COMPEL</u>**

Bradley Justus
AXINN, VELTROP & HARKRIDER LLP
1901 L Street NW
Washington, DC 20036

Charles W. Fillmore
BROWN PRUITT WAMBSGANSS
DEAN FORMAN & MOORE, P.C.
201 Main Street, Suite 700
Fort Worth, TX 76102

Craig M. Reiser
Scott A. Eisman
Eva Yung
Christopher Erickson
AXINN, VELTROP & HARKRIDER LLP
630 Fifth Avenue, 33rd Floor
New York, NY 10111

Judd E. Stone II
Christopher D. Hilton
STONE | HILTON PLLC
600 Congress Ave., Ste. 2350
Austin, TX 78701

Noah Schottenstein
STONE | HILTON PLLC
301 Commerce St., Suite 2360
Fort Worth, TX 76102

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND .......................................................................................................................3

    I. The Documentary Record Establishes OpenAI's Liability ...............................................3

    II. OpenAI Claims That It Needs More Documents to
    Avoid Paying the Damages Its Illegal Conduct Caused Plaintiffs ......................................6

ARGUMENT ............................................................................................................................8

    I. OpenAI's Demand For Additional,
    Sensitive, Investor-Related Documents Is Baseless..............................................................8

    II. OpenAI's Request for Documents Relating to the Apple-Google
    Agreement Seeks Irrelevant and Purely Speculative Documents......................................12

    III. There Is No Basis for Plaintiffs to Run Additional Super App-Related Searches.......13

    IV. OpenAI's Request for Additional
    Searches of Elon Musk's Custodial Documents
    Is Unnecessary and Seeks Documents Beyond Plaintiffs' Control ...................................14

        A. Plaintiffs Do Not Have Possession,
        Custody, or Control of Tesla and SpaceX Emails ..................................................15

        B. Plaintiffs Have Searched For And
        Continue to Produce Responsive Custodial Documents........................................18

CONCLUSION.......................................................................................................................19

## TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*Actian Corp. v. Radisys Corp.*,
No. 22-cv-00895-PJH, 2022 WL 20353991 (N.D. Cal. Oct. 11, 2022) ...................................19

*Bouaziz v. AZT Corp.*,
No. 3-10-CV-0053-B, 2010 WL 5300838 (N.D. Tex. Dec. 23, 2010)....................................11

*Brimer v. Chase Bank, U.S.A., N.A.*,
No. 7:10-CV-7-O, 2011 WL 13233317 (N.D. Tex. Jan. 13, 2011).........................................10

*CFE Int'l LLC v. Schnaas*,
No. CV H-22-3385, 2025 WL 438568 (S.D. Tex. Feb. 7, 2025) .............................................17

*CoStar Grp., Inc. v. Com. Real Estate Exch., Inc.*,
150 F.4th 1056 (9th Cir. 2025),
*cert. denied*, 2026 WL 795193 (U.S. Mar. 23, 2026) ...................................................................3

*D&D Techs. (USA), Inc. v. Safetech Hardware Inc.*,
No. SACV 12-1538-DOC, 2013 WL 12142955 (C.D. Cal. Nov. 8, 2013) .............................16

*Ebert v. Gustin*,
No. 4:15-cv-00225-O, 2016 WL 11663146 (N.D. Tex. May 19, 2016)..................................15

*FlowRider Surf, Ltd. v. Pac. Surf Designs, Inc.*,
No.: 15-cv-1879-BEN (BLM), 2016 WL 6522808 (S.D. Cal. Nov. 3, 2016) ........................15

*Goodyear Tire & Rubber Co. v. CEVA Logistics Sing., Ltd.*,
348 F.R.D. 54 (E.D. La. 2024)..............................................................................................16

*Input/Output, Inc. v. Sercel, Inc.*,
No. 5:06-CV-236-DF/CMC, 2008 WL 11348285 (E.D. Tex. Aug. 14, 2008).......................17

*Murphy v. Deloitte & Touche Grp. Ins. Plan*,
619 F.3d 1151 (10th Cir. 2010) .................................................................................................8

*Musk v. Altman*,
No. 24-cv-04722, 2025 WL 2348769 (N.D. Cal. July 1, 2025) .............................................16

*Pulse Network, L.L.C. v. Visa, Inc.*,
30 F.4th 480 (5th Cir. 2022) ......................................................................................................3

*Shell Glob. Sols. (US) Inc. v. RMS Eng'g, Inc.*,
No. 4:09-cv-3778, 2011 WL 3418396 (S.D. Tex. Aug. 3, 2011) .....................................15, 16

*Sundown Energy, L.P. v. Haller*,
No. 10-4354, 2011 WL 5079329 (E.D. La. Oct. 26, 2011) ....................................................15

ii

*Tex. Brine Co., LLC v. Dow Chem. Co.*,
    No. CV 15-1102, 2017 WL 11535135 (E.D. La. Nov. 8, 2017) ...............................................11

*Ultravision Technologies, LLC v. Govision, LLC*,
    No. 2:18-cv-00100, 2020 WL 10692709 (E.D. Tex. Aug. 28, 2020).......................................18

*United My Funds, LLC v. Perera*,
    No. 4:19-CV-00373, 2020 WL 1225042 (E.D. Tex. Mar. 12, 2020) ......................................16

*United Shoe Mach. Corp. v. United States*,
    258 U.S. 451 (1922).................................................................................................................3

*Uriel Pharm. Health & Welfare Plan v. Advoc. Aurora Health, Inc.*,
    348 F.R.D. 329 (E.D. Wis. 2025) ..........................................................................................11

*VeroBlue Farms USA Inc. v. Wulf*,
    345 F.R.D. 406 (N.D. Tex. 2021) ...........................................................................................14

*Walker v. Alta Colls., Inc.*,
    No. A-09-CV-894-LY, 2010 WL 2710769 (W.D. Tex. July 6, 2010) ....................................19

## PRELIMINARY STATEMENT

Discovery in this case has borne out Plaintiffs' allegations.[1] That record shows that OpenAI entered into an anticompetitive agreement with Apple to cement ChatGPT's position as the dominant generative AI chatbot for the purpose of locking out competitors. Unable to deny the evidence showing its liability, OpenAI yet again seeks to distract from the issues by bringing a baseless discovery motion—this time, to try to obtain irrelevant and highly confidential information from xAI that would only distract from resolution of the merits of this case.

OpenAI seeks four categories of documents:

*First*, OpenAI demands *all* communications with investors and documents concerning xAI's valuation, asserting this information is needed to understand the analysis of Plaintiffs' damages expert, Dr. Craig Schulman. In doing so, OpenAI misleadingly claims that ███ ███████████████████████████████████████. Br. 1. The reality is that Dr. Schulman calculates damages based on ██████████████████████████████████████████ ████. OpenAI further ignores that, to the extent it needs information about xAI's valuation and financials, Plaintiffs have already produced those materials, while OpenAI has resisted producing the same types of documents in response to Plaintiffs' requests. Moreover, when Plaintiffs offered to produce some of the documents shared with investors (not "all" of them) if OpenAI produced corresponding information, OpenAI refused and suggested—contrary to the rules of this Court— that both parties should instead move to compel.

---

[1] "X" refers to X Corp. and "xAI" refers to X.AI LLC. X and xAI are referred to collectively as "Plaintiffs." "Apple" refers to Apple Inc., and "OpenAI" refers to OpenAI Foundation (f/k/a OpenAI, Inc.); OpenAI, L.L.C.; and OpenAI OpCo, LLC. Apple and OpenAI are referred to collectively as "Defendants." OpenAI's Brief in Support of its Motion to Compel Plaintiffs to Produce Documents, Dkt. No. 173, is referred to as the "Brief" or "Br." "App'x Tab __" refers to the tab in the accompanying Appendix. The arrangement between OpenAI and Apple alleged in the Complaint is referred to as the "Apple-OpenAI Agreement."

*Second*, OpenAI demands that Plaintiffs search for and produce documents related to the Apple-Google Agreement announced in January 2026. Any commentary from *Plaintiffs* about the Apple-Google Agreement or its potential effects would be speculative and irrelevant, given that Plaintiffs have not even seen, and of course had no involvement in, that Agreement, which postdates Plaintiffs' Complaint by more than four months.

*Third*, without explaining what it seeks that it does not already have, OpenAI demands that Plaintiffs agree to additional searches for documents related to Plaintiffs' development of a super app. But Plaintiffs have already produced documents on this subject and will continue to do so— a fact OpenAI ignores.

*Fourth*, OpenAI argues that Plaintiffs must produce additional custodial documents from Elon Musk by searching his email accounts at Tesla, Inc. ("Tesla") and Space Exploration Technologies Corp. ("SpaceX"). But Plaintiffs do not have possession, custody, or control over such emails at other companies.

As this Court previously held with respect to source code, "[b]efore the Court would order production of any party's sensitive, confidential information . . . the requesting party would have to show that it had attempted to gather the necessary information for developing the claim or defense underlying its request without reference to that highly sensitive information." Jan. 22, 2026 Order, Dkt. No. 139 at 5. OpenAI does not and cannot dispute it is seeking xAI's sensitive, confidential information here, but has failed to make the requisite showing—nor has it established that there is a ripe dispute on any of the purported "deficiencies" it has moved on. This Court should deny OpenAI's improper fishing expedition.

**BACKGROUND**

I.    **The Documentary Record Establishes OpenAI's Liability**

As Plaintiffs alleged, Defendants entered an illegal arrangement whereby Apple (a monopolist in the smartphone market) made ChatGPT, the generative AI chatbot offered by monopolist OpenAI, the only natively integrated generative AI chatbot in Apple's iOS. *See* Compl. ¶¶ 70-78, 90-97, 103-115. With this integration, users who use Apple Intelligence on their Apple devices can "receive answers from Apple's voice assistant, Siri, based on information provided by ChatGPT; natively use their iPhone camera to learn information from ChatGPT about the places or objects around them; and use ChatGPT with Apple's Writing Tools to compose text from a Description." *Id.* ¶ 75.

In its Brief—as in its motion to dismiss months earlier—OpenAI repeats its refrain that the Apple-OpenAI Agreement cannot be exclusive because that Agreement contains language saying that it is "non-exclusive." Br. 2-3. OpenAI cites no case law for this proposition, which is contrary to precedent rejecting this exact argument. *See United Shoe Mach. Corp. v. United States*, 258 U.S. 451, 454, 457 (1922) (affirming judgment for a Clayton Act violation based on exclusive dealing where the agreements expressly contemplated the lessee entering agreements with defendant's rivals but the "practical effect" was exclusionary); *Pulse Network, L.L.C. v. Visa, Inc.*, 30 F.4th 480, 494-95 (5th Cir. 2022) ("[A] reasonable jury could find" that the defendant's volume-discount agreements, despite not being facially exclusive, "amount to exclusive-dealing contracts designed to squeeze Pulse out of the [relevant] market."); *CoStar Grp., Inc. v. Com. Real Estate Exch., Inc.*, 150 F.4th 1056, 1073-74 (9th Cir. 2025) (recognizing that the "non-exclusivity" terms were not dispositive of whether the agreement was exclusive), *cert. denied*, 2026 WL 795193 (U.S. Mar. 23, 2026).

3

Discovery, moreover, has revealed documents showing that Defendants' arrangement was indeed exclusive and entered with anticompetitive intent to preserve OpenAI's monopoly while locking out its competition to the detriment of those competitors and consumers alike. For example:

- ***Protecting Its Monopoly Position***. OpenAI's strategy documents indicate that by partnering with Apple, OpenAI ██████████████████████████████ ███████████████████████████████ App'x Tab 1, at App. 13. In particular, OpenAI planned to ████████████████████████ so that ChatGPT would be ██████████████████████████████ App'x Tab 2, at App. 16. Messages involving OpenAI CEO Sam Altman confirmed that the goal of the Apple-OpenAI Agreement was to ██████████████████████████████ App'x Tab 3, at App. 19.

- ***Obtaining Exclusive and Default Status to Keep Others at Bay***. Internal documents reflect that the arrangement with Apple made ChatGPT the ███████████████████ while Apple ███████████████████████ App'x Tab 4, at App. 22. Other documents indicate that Apple and OpenAI █████████████████████████ ██████████████████████████████████ ████ App'x Tab 5, at App. 28.

- ***Sacrificing Short-Term Profit for a Long-Term Monopoly***. OpenAI's internal documents confirm ████████████████████████████████ *See* App'x Tab 6, at App. 30 (OpenAI █████████████████████ ██████████████████████████████ ); App'x Tab 7, at App. 39 (OpenAI Board Member Larry Summers ███████████████████████████████

4



). In fact, OpenAI projected it would ███████ ████████████████████████████. *See* App'x Tab 6, at App. 31. But with the deal in place, OpenAI projected that █████████████████████████████ ██████████████████████████████████████. *See* App'x Tab 8, at App. 108-09.

- ***Restricting Competitors' Entry and Expansion***. An OpenAI internal business analysis indicates that the ████████████████████████████████ ██████████████████████████████████████ App'x Tab 9, at App. 122.

- ***Obtaining Illegal App Store Promotion***. Although Apple prepares curated lists of "Must-Have" apps—lists that it claims are free of bias—internal OpenAI documents show that as a part of the anticompetitive agreement, Apple would ████████████████ ██████████████████████ App'x Tab 10, at App. 137.

- ***Locking Out Competitors***. Despite making a public statement in June 2024 that Apple "intend[s] to add support for other AI models in the future," Apple Brief in Support of Motion to Dismiss at 4, Dkt. No. 37, Apple had told OpenAI that the statement was made ██████████████████ and Apple ████████████████████████████ ████████ and that Apple ███████████████████████████████ ██████████████████████████. App'x Tab 11, at App. 140; *see also* App'x Tab 12, at App. 143 (noting that Apple is ████████████████████████████████ but may ████████ ████████████████████████████). And in May 2025, OpenAI CFO Sarah Friar boasted that ████████████████████████████████████████████████

5

██████████████ and that ChatGPT had ██████████████████ while ██████████

██████████████████ App'x Tab 13, at App. 145.

Beyond confirming the allegations in Plaintiffs' Complaint, discovery has also contradicted Defendants' defenses against liability in their dismissal briefing. For example, discovery has revealed that Defendants' claims about the privacy protections associated with the integration were false. *See* Apple Brief in Support of Motion to Dismiss at 1, Dkt. No. 37 (describing the ChatGPT integration as "setting a new standard for privacy in AI"); OpenAI Brief in Support of Motion to Dismiss at 11, Dkt. No. 41. Indeed, despite lofty statements about the privacy of the integration in Defendants' motions, Apple ██████████████████████████

█████████████████████████████ App'x Tab 14, at App. 160. And despite a

████████████████ provision in the Apple-OpenAI Agreement and Apple's own privacy policy stating that "'OpenAI won't store requests' for users of the integrated ChatGPT service" for users that do not log in to the ChatGPT integration, OpenAI Brief in Support of Motion to Dismiss at 6, Dkt. No. 41, OpenAI ██████████████████████████████████████████,

*see* App'x Tab 15, at App. 163 (██████████████████████████████████████████

██████████████████████). Such evidence undermines any purported privacy justifications for Apple choosing OpenAI as a provider.

## II.     OpenAI Claims That It Needs More Documents to Avoid Paying the Damages Its Illegal Conduct Caused Plaintiffs

Faced with evidence of its own wrongdoing, OpenAI's motion focuses on supposed deficiencies in Plaintiffs' documents reflecting the damages Defendants caused. OpenAI began complaining about purported deficiencies in Plaintiffs' productions two weeks before Plaintiffs' substantial-completion deadline. *See* Appendix of OpenAI's Brief in Support of Its Motion to Compel, Dkt. No. 171-2 at A156-59. During meet-and-confers, Plaintiffs suggested such

complaints were premature and that OpenAI should wait and review what Plaintiffs produce rather than manufacturing a dispute. *See* Dkt. No. 171-2 at A201.

As Plaintiffs promised they would, by the time of their substantial-completion deadline, they had produced a total of 32,116 documents (now 32,266 documents). In contrast, OpenAI had produced only 7,015 documents by its substantial-completion deadline—less than a quarter of what Plaintiffs have produced—of which more than 700 were calendar invites and auto-generated emails, and only 7 involved ██████████████████████████████.

On March 25, OpenAI sent a letter outlining purported deficiencies in Plaintiffs' production. *See* Dkt. No. 171-2 at A228-34. Plaintiffs responded on April 1, explaining that OpenAI's assertions were baseless because Plaintiffs had already produced responsive documents covering many of the categories of documents for which OpenAI claimed deficiencies, while others categories were overbroad, sought irrelevant information, or both. *See* Dkt. No. 171-2 at A256-67. Plaintiffs also offered compromises to avoid unnecessary motion practice, including to produce additional investor-related materials if OpenAI agreed to reciprocal productions in response to similar requests propounded by Plaintiffs and for which OpenAI has refused production. *Id*. at A259-60. The parties met and conferred later that same day. OpenAI began that conference by declaring that the parties were at an impasse and that it would be moving to compel later in the week, rejected Plaintiffs' proposals, and suggested that both sides move to compel the production of documents they needed. *See* Dkt. No. 171-2 at A272.

Although Plaintiffs were surprised that OpenAI "would suggest that the parties should burden the Court with motion practice when they could reach a compromise," *id*., Plaintiffs have since filed a motion to compel of their own as to the materials that OpenAI has refused to produce, *see* Plaintiffs' Motion to Compel Discovery from OpenAI, Dkt. No. 178.

## ARGUMENT

OpenAI's motion ignores the documents in Plaintiffs' productions and manufactures deficiencies where there are none. It is a fishing expedition for sensitive information and should be denied in its entirety. *See* Dkt. No. 139 at 5 (denying motion to compel production of "any party's sensitive, confidential information such as the source code at issue here" even if it "were potentially relevant"); *Murphy v. Deloitte & Touche Grp. Ins. Plan*, 619 F.3d 1151, 1163 (10th Cir. 2010) ("Rule 26(b), although broad, has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition.").

## I.    OpenAI's Demand For Additional, Sensitive, Investor-Related Documents Is Baseless

OpenAI asks that Plaintiffs be ordered to "search for and produce (1) [c]ommunications with investors and potential investors relating to xAI's July 2025 and 2026 capital raises; (2) [c]ommunications with investors or potential investors relating to Grok or the valuation of xAI in connection with the xAI and SpaceX merger; and (3) [d]ocuments concerning valuations or projections for xAI." Br. 7. OpenAI's Brief glosses over how these documents are part of eight distinct discovery requests, seven of which seek *all* documents and communications across a swath of financial categories including past, present, and future valuations, profits, capital raises, and investments, as well as any materials Plaintiffs "provided or contemplated providing to any investor" or prospective investor. *See* Dkt. No. 171-2 at A290, A304-05, A356.

OpenAI argues that these overbroad requests for sensitive information are justified because "[s]uch matters have been put at issue not only by plaintiffs' allegations, but by their experts," and by Dr. Schulman in particular. Br. 5. In support of its broad requests for highly sensitive information, OpenAI claims that ███████████████████████████████████████████████ ████████████████████████████████████████████, and therefore it needs *all*

8

details about xAI's valuation and *all* related investor communications. *Id*. OpenAI is  mistaken.



*See, e.g.*, Dkt. No. 171-2 at A101-04. His analysis therefore does not

. Dr. Schulman's analysis

*See id*. And although OpenAI

In addition to purported claims that this broad financial discovery is needed to rebut Dr. Schulman's report, OpenAI argues it needs *all* valuations, projections, and investor communications to rebut Plaintiffs' claims of harm generally, referencing

Br. 5, 6-7. But as OpenAI itself has argued in refusing to produce valuations and projections provided to its own board, such whole-company valuations and projections are irrelevant because they are derived at least in part from businesses that have nothing to do with this litigation. *See* Plaintiffs' Brief in Support of Their Motion to Compel Discovery from OpenAI, Dkt. No. 179 at 6, 12.

The reality—which OpenAI fails to acknowledge—is that Plaintiffs have already produced or agreed to produce the discovery necessary for OpenAI to test Plaintiffs' damages claims:

- Plaintiffs have produced all documents that Dr. Schulman relied on in his report. *See Brimer v. Chase Bank, U.S.A., N.A.*, No. 7:10-CV-7-O, 2011 WL 13233317, at *3 (N.D. Tex. Jan. 13, 2011) (holding that testifying experts are bound only to disclose all information relied upon and considered in reaching their conclusions).

- Plaintiffs have agreed to search for any additional documents, if they exist, in response to a discrete set of requests that OpenAI identified as documents it believes are necessary to rebut Plaintiffs' damages calculation, even though Dr. Schulman did not rely on such documents.[2]

- Plaintiffs have already produced documents reflecting relevant xAI valuations and projections, as identified to OpenAI days before OpenAI filed this motion. *See* Dkt. No. 171-2 at A259 (listing Bates numbers for produced documents with valuation and projection numbers).

- Although Dr. Schulman



Given this record, OpenAI tellingly never explains what further information it needs, seeking instead to diminish Plaintiffs' productions as "limited" and "span[ning] only a small

---

[2] These are (i) spreadsheets OpenAI contends underlie xAI's ▮▮▮▮▮▮▮▮▮▮, and (ii) additional monthly or quarterly P&L spreadsheets. *See* Dkt. No. 171-2 at A260.

[3] *See, e.g.*, Dkt. No. 171-2 at A259 ("Plaintiffs have also admitted a request for admission about the value that the SpaceX transaction ascribed to xAI, and you have not explained why OpenAI needs additional discovery on this point.").

portion of the relevant time frame." *Id*. But OpenAI is not entitled to "all" documents on a subject merely because a subset of those documents might be relevant. *See Bouaziz v. AZT Corp.*, No. 3-10-CV-0053-B, 2010 WL 5300838, at *2 (N.D. Tex. Dec. 23, 2010) (denying motion to compel because "[w]hile *some* of this financial information may be relevant to plaintiff's claims or defendant's counterclaims, the document request, as drafted, is overly broad on its face"). This is particularly true where this Court has already rejected prior attempts to compel discovery of a competitor's highly sensitive business information. *See* Dkt. No. 139 at 5 (denying motion to compel production of source code due to its competitive sensitivity); *see also Tex. Brine Co., LLC v. Dow Chem. Co.*, No. CV 15-1102, 2017 WL 11535135, at *4 (E.D. La. Nov. 8, 2017) (denying motion to compel defendant's financial and mining records and noting that it is "necessary to be particularly careful where one party seeks the production of confidential business information from a competitor"). The same reasoning applies to deny OpenAI's motion to compel here, where OpenAI's conduct—not Plaintiffs'—is at issue because it engaged in an illegal scheme to lock up the generative AI chatbot market, *see, e.g.*, Compl. ¶¶ 70-78, 90-97.

If OpenAI believes there are gaps in Plaintiffs' productions and specific information it needs to assess Dr. Schulman's reports, it could seek to remedy this through far narrower requests than moving to compel production on these blanket demands. *See, e.g.*, *Uriel Pharm. Health & Welfare Plan v. Advoc. Aurora Health, Inc.*, 348 F.R.D. 329, 335 (E.D. Wis. 2025) (recognizing that information to use as a "benchmark for damages" is relevant but that "plaintiffs' request is overbroad in relation to this purpose" because only the contracts at issue were needed). Indeed, to the extent any additional discovery is still necessary, Plaintiffs proposed a reciprocal arrangement where both parties would produce a narrowly tailored set of valuation-related presentations provided to investors—an offer OpenAI's Brief nowhere mentions. *See supra*, at 7; *see also* Dkt.

11

No. 171-2 at A259. Plaintiffs' offer would have removed any need for motion practice on this issue. OpenAI's rejection of it shows that these broad, investor-related requests do not stem from a need related to this case, but are instead an inappropriate probe into a competitor's highly confidential business materials.

## II. OpenAI's Request for Documents Relating to the Apple-Google Agreement Seeks Irrelevant and Purely Speculative Documents

OpenAI seeks "all Documents and Communications concerning the Google-Apple Agreement." Dkt. No. 171-2 at A305. OpenAI does not—and cannot—dispute that none of Plaintiffs' employees have *even seen the agreement*. Any reactions of Plaintiffs' employees to the Apple-Google Agreement, including about whether it affected the exclusivity of the Apple-OpenAI Agreement, are necessarily speculative and irrelevant. Plaintiffs were not a party to, and were not involved in, the Apple-Google Agreement. Plaintiffs thus have no knowledge of what that agreement involves beyond what was publicly reported. Plaintiffs are differently situated from OpenAI, ██████████████████████████████████████, *see* App'x Tab 16, at App. 166-68; (ii) is a party to the Apple-OpenAI Agreement and accordingly ████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

Any documents Plaintiffs would have on this topic would comprise irrelevant and inadmissible conjecture.

Moreover, OpenAI's declaration that the Apple-Google Agreement is comparable—let alone relevant—to the Apple-OpenAI Agreement is contradicted by the facts of which Plaintiffs are aware. OpenAI argues that the Apple-Google Agreement is "plainly relevant to whether the Apple-OpenAI Agreement is exclusive" because "after the Google-Apple announcement, there are two AI providers for the iPhone." Br. 8. But based on public reporting, the Apple-Google

Agreement has nothing to do with the native integration and promotion of ChatGPT at issue in this case. That reporting states that "Apple will treat Google as a behind-the-scenes technology supplier" to improve Siri—not partner with it to promote and natively distribute Gemini through Apple Intelligence, as the Apple-OpenAI Agreement does with ChatGPT. App'x Tab 17, at App. 172. According to reports, this behind-the-scenes agreement is "separate" from Google's failed efforts to "integrat[e] Gemini directly into Siri as a chatbot"—i.e., the native integration ultimately awarded to OpenAI. *Id.* It is also reported that *Apple is paying* Google $1 billion per year. *See id.* at App. 271. Under the Apple-OpenAI Agreement, ██████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████. App'x

Tab 18, at App. 175. That OpenAI ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████    *See* App'x Tab 16, at App. 166-68.[4]

### III.    There Is No Basis for Plaintiffs to Run Additional Super App-Related Searches

While it insists that Plaintiffs agree to run additional searches for "product roadmaps, business plans, launch schedules, and internal timelines for the development" of a "Super App," Br. 9, OpenAI ignores that Plaintiffs have already produced these documents. *See* Dkt. No. 171-2 at A262-63 (listing Bates numbers of responsive produced documents). Most of these documents were produced in response to requests for documents "supporting [Plaintiffs'] allegation that 'generative AI chatbots and related super apps stand to reduce customers' dependence on

---

[4] Apple has produced only a heavily redacted version of the signed executed agreement, which obscures the meaning of the Apple-Google Agreement. *See* Plaintiffs' Brief in Support of Their Motion to Compel Discovery from Apple, Dkt. No. 196 at 4, 9-11.

smartphones like Apple's iPhone'" and "supporting [Plaintiffs'] allegation that the X App or Grok App will or may develop into a Super App," App'x Tab 19, at App. 183-84, and Plaintiffs will continue to search for and produce documents in response to these requests. Additional documents were produced because ███████████████████████████████████████ ████████████████████████ Br. 9; *see supra* at 1. In other words, Plaintiffs have already produced the very documents that will "allow OpenAI to test [Dr. Schulman's] assertion" about super apps. Br. 9; *see, e.g.*, Dkt. No. 171-2 at A262-63.

OpenAI never explains why it would be proportional to the needs of the case for Plaintiffs to run additional search terms when Plaintiffs are already searching for and producing these documents, and OpenAI has already received everything Plaintiffs' expert relied on. *See VeroBlue Farms USA Inc. v. Wulf*, 345 F.R.D. 406, 420 (N.D. Tex. 2021) (holding that to show a deficiency in the other party's production and require additional searches "the requesting party should make a showing . . . that allows the Court to make 'a reasonable deduction that other documents may exist or did exist and have been destroyed' or must 'point to the existence of additional responsive material'").

**IV.    OpenAI's Request for Additional Searches of Elon Musk's Custodial Documents Is Unnecessary and Seeks Documents Beyond Plaintiffs' Control**

Lastly, OpenAI moves to compel Plaintiffs to produce Elon Musk's custodial documents, not just from Plaintiffs' email accounts, but also from Mr. Musk's email accounts at Tesla and SpaceX, along with Mr. Musk's texts, Signal messages, and XChats. *See* Br. 9-12. But despite OpenAI's desire to ignore all corporate distinctions, Plaintiffs lack possession, custody, or control over Mr. Musk's email accounts at other companies. And Plaintiffs have repeatedly conveyed they are searching for and will produce responsive custodial documents, including texts, Signal

14

messages, and XChats, that are within their possession, custody, and control. OpenAI's demands are therefore unfounded.

### A. Plaintiffs Do Not Have Possession, Custody, or Control of Tesla and SpaceX Emails

Plaintiffs have informed OpenAI that the Tesla and SpaceX emails it seeks are not within Plaintiffs' possession, custody, or control, Br. 10, and Plaintiffs cannot "produce what they do not have." *Sundown Energy, L.P. v. Haller*, No. 10-4354, 2011 WL 5079329, at \*3 (E.D. La. Oct. 26, 2011) (denying motion to compel attachments that were not in defendants' possession). Even so, OpenAI insists that Plaintiffs *do* have possession, custody, and control because Mr. Musk "chose to conduct X and xAI business" using Tesla and SpaceX emails. Br. 10. But OpenAI has not shown that this is true or met its burden to "establish[] [Plaintiffs'] control over those documents." *Shell Glob. Sols. (US) Inc. v. RMS Eng'g, Inc.*, No. 4:09-cv-3778, 2011 WL 3418396, at \*2 (S.D. Tex. Aug. 3, 2011).

*First*, OpenAI wrongly implies that Plaintiffs have possession, custody, or control over Tesla's and SpaceX's documents because Mr. Musk is the CEO of those companies. Br. 10. This is legally irrelevant. *See FlowRider Surf, Ltd. v. Pac. Surf Designs, Inc.*, No.: 15-cv-1879-BEN (BLM), 2016 WL 6522808, at \*10 (S.D. Cal. Nov. 3, 2016) (denying motion to compel because "[a]lthough Defendant's CEO founded Defendant and Flow Services and both companies share the same business address, such factors, without more, are insufficient to establish the requisite control").

Indeed, because a CEO owes "fiduciary duties" to each company he "serves," *Ebert v. Gustin*, No. 4:15-cv-00225-O, 2016 WL 11663146, at \*7 (N.D. Tex. May 19, 2016), he cannot abuse his role at one company to force it to relinquish control over its documents to assist a different company. A party asserting that one company has control over the files of another must

15

therefore show more than common leadership—for example, the non-party's involvement in or benefit from the litigation. *Compare United My Funds, LLC v. Perera*, No. 4:19-CV-00373, 2020 WL 1225042, at *9 (E.D. Tex. Mar. 12, 2020) (denying motion to compel when plaintiff and non-party "share a common owner" and "a common address," but defendant "has provided no evidence demonstrating an exchange of documents between the entities, any benefits shared between the two, any relationship between the parties in this litigation outside of common membership, or that the entities are corporate relatives"), *with D&D Techs. (USA), Inc. v. Safetech Hardware Inc.*, No. SACV 12-1538-DOC, 2013 WL 12142955, at *1 (C.D. Cal. Nov. 8, 2013) (granting motion to compel when Defendants' CEO "owns and heads both Defendants and its Australian counterpart" and "Defendant exists solely to distribute the products of its Australian counterpart"). In other words, if OpenAI cannot meet "its burden of establishing" that Plaintiffs have possession, custody, or control over Mr. Musk's emails from Tesla and SpaceX, then the Court should deny its motion. *Shell*, 2011 WL 3418396, at *2.[5]

OpenAI has not met its burden. Tesla is not even a corporate affiliate of Plaintiffs, but a distinct, publicly traded company. *See* App'x Tab 20, at App. 189. And while SpaceX is now the parent of xAI, that does not mean its documents are in xAI's control absent "evidence" that xAI "controls its parent . . . or that [xAI] has any right to . . . information in [SpaceX's] possession,

---

[5] OpenAI's cases are consistent with this rule. In *Goodyear Tire & Rubber Co. v. CEVA Logistics Sing., Ltd.*, the court denied a motion to compel production of documents from certain corporate affiliates because the moving party offered merely evidence of "[c]ommon ownership," which was "insufficient to establish Rule 34(a) control." 348 F.R.D. 54, 81-82 (E.D. La. 2024). And *Musk v. Altman* concerned whether an individual party to that action (Mr. Musk) *individually* had in his possession, custody, or control over his various email boxes. *See* No. 24-cv-04722, 2025 WL 2348769, at *1 (N.D. Cal. July 1, 2025) (citing *Inland Concrete Enters., Inc. v. Kraft Ams. LP*, No. CV 10-1776-VBF, 2011 WL 13209239, at *3 (C.D. Cal. Feb. 3, 2011) ("[A]n *individual* party to a lawsuit can be compelled to produce relevant information and documents relating to a non-party corporation of which it is an officer, director or shareholder." (emphasis added)).

16

custody, or control." *Input/Output, Inc. v. Sercel, Inc.*, No. 5:06-CV-236-DF/CMC, 2008 WL 11348285, at *2 (E.D. Tex. Aug. 14, 2008). To the contrary, as reflected in the accompanying declaration, both Tesla's and SpaceX's files are maintained separately from Plaintiffs' files, and Plaintiffs do not have the right to access documents in Tesla's or SpaceX's files. *See* App'x Tab 21, at App. 195-96; *see, e.g.*, *CFE Int'l LLC v. Schnaas*, No. CV H-22-3385, 2025 WL 438568, at *2 (S.D. Tex. Feb. 7, 2025) (denying motion to compel when the "undisputed evidence in [plaintiff's Chief Legal Officer's] declaration shows that CFE International does not have access to, much less control over, [its parent] CFE's documents").

*Second*, OpenAI incorrectly claims that Plaintiffs should be required to search Tesla's and SpaceX's files because Mr. Musk "chose to conduct X and xAI business" from his Tesla and SpaceX email accounts. Br. 10. OpenAI has not provided evidence that Mr. Musk conducted business for Plaintiffs from his Tesla or SpaceX email account. OpenAI cites a single text message ██████████████████████████████████████████████████ ████████████████. Br. 10 (citing Dkt. No. 171-2 at A489). But there is no mention of X or xAI, or any indication that Mr. Musk was not sharing his email addresses for Tesla or SpaceX business reasons. Nor is there anything in *any* of the documents Apple has produced to suggest that anyone from Apple emailed Mr. Musk at those accounts about anything having to do with X or xAI, let alone about matters relevant to this case. OpenAI falls back on a lone email Plaintiffs produced that ████████████████████████████████, *see* Br. 10 (citing Dkt. No. 171-2 at A492), ██████████████████████████ and thus does not show that Mr. Musk "chose" to conduct business for Plaintiffs *from* his SpaceX email account.[6] As OpenAI itself has argued,

---

[6] OpenAI has omitted from its Brief the two other documents it originally cited in its meet-and-confer correspondence as purported support, after Plaintiffs pointed out those emails were sent by *Wall Street Journal* reporters to all of Mr. Musk's corporate email accounts to solicit a comment

emails sent *to* its employees at non-company email addresses are "no indication" that a custodian "was sending or receiving emails from [that] account that were not duplicative of his OpenAI emails" or "using those . . . accounts to conduct OpenAI business." App'x Tab 22, at App. 202.

OpenAI's own case reinforces this point. In *Ultravision Technologies, LLC v. Govision, LLC*, the court found that the CEO had used his personal email accounts to conduct business because he had "conducted" business from those addresses on "*multiple instances*." No. 2:18-cv-00100, 2020 WL 10692709, at *2 (E.D. Tex. Aug. 28, 2020), *cited in* Br. 10. Here, by contrast, OpenAI fails to show that Mr. Musk "conducted" anything related to this case from any Tesla or SpaceX email account. Besides, *Ultravision* concerned a personal email account that the CEO unquestionably controlled, whereas Tesla and SpaceX control their own files absent a showing that Plaintiffs control them (which, as explained above, OpenAI has not made).

*Finally*, Plaintiffs understand that Tesla and SpaceX have been subpoenaed in connection with this case. *See* Dkt. No. 171-2 at A266. OpenAI argues that both companies have "continued to delay" and that Mr. Musk "could easily cause the companies themselves to immediately produce his documents responsive to the subpoenas." Br. 11. Such a claim is a dramatic oversimplification and glosses over the corporate distinctions between these entities and distinct duties Mr. Musk owes to each.

### B.     Plaintiffs Have Searched For And Continue to Produce Responsive Custodial Documents

As Plaintiffs have repeatedly conveyed to OpenAI, Plaintiffs are conducting a reasonable search for responsive XChat, Signal, and text messages and have in fact produced additional documents specifically from Mr. Musk's custodial files, along with text messages from another

---

on a story, and thus provided no evidence Mr. Musk conducted Plaintiffs' business from those accounts. *See* Dkt. No. 171-2 at A233; *id*. at A266.

custodian just last week. As OpenAI has noted, "it is abundantly clear that the Court's schedule contemplated that discovery would not be complete prior to the parties' submission of expert reports," App'x Tab 22, at App. 199, and OpenAI itself has made multiple productions after its substantial-completion deadline. Plaintiffs likewise intend to continue making productions of responsive documents, including of responsive messages and texts. *See Actian Corp. v. Radisys Corp.*, No. 22-cv-00895-PJH, 2022 WL 20353991, at *1 (N.D. Cal. Oct. 11, 2022) (denying motion to compel because defendants "continue to review and produce documents, apparently on a rolling basis," and noting that production delays "appear to be based on the difficulties inherent in the review and production of responsive documents in commercial litigation").

Because Plaintiffs have already agreed to produce any responsive text, XChat, and/or Signal messages from Mr. Musk's files, OpenAI's motion to compel production of such materials is moot. *See Walker v. Alta Colls., Inc.*, No. A-09-CV-894-LY, 2010 WL 2710769, at *5 (W.D. Tex. July 6, 2010) (finding that a motion to compel would be moot where the opposing party had already agreed to produce the requested documents).

## CONCLUSION

For the foregoing reasons, the Court should deny OpenAI's motion to compel in its entirety.

Dated: April 17, 2026

Respectfully submitted,

*/s/ Bradley Justus*

Bradley Justus
N.D. Tex. Bar No. 1007988DC
DC Bar No. 1007988
AXINN, VELTROP & HARKRIDER LLP
1901 L Street NW
Washington, DC 20036
T: (202) 912-4700
F: (202) 912-4701
bjustus@axinn.com

Charles W. Fillmore
Texas Bar No. 00785861
BROWN PRUITT WAMBSGANSS
DEAN FORMAN & MOORE, P.C.
201 Main Street, Suite 700
Fort Worth, TX 76102
T: (817) 338-4888
cfillmore@brownpruitt.com

*admitted *pro hac vice*

*/s/ Eva H. Yung*

Craig M. Reiser
N.D. Tex. Bar No. 4886735NY
NY State Bar No. 4886735
Scott A. Eisman
N.D. Tex. Bar No. 4905287NY
NY State Bar No. 4905287
Eva Yung*
NY State Bar No. 5497300
Christopher Erickson
N.D. Tex. Bar No. 5800628NY
NY State Bar No. 5800628
AXINN, VELTROP & HARKRIDER LLP
630 Fifth Avenue, 33rd Floor
New York, NY 10111
T: (212) 728-2200
F: (212) 728-2201
creiser@axinn.com
seisman@axinn.com
eyung@axinn.com
cerickson@axinn.com

*/s/ Judd E. Stone*

Judd E. Stone II
Texas Bar No. 24076720
Christopher D. Hilton
Texas Bar No. 24087727
STONE | HILTON PLLC
600 Congress Ave., Ste. 2350
Austin, TX 78701
T: (737) 465-3897
judd@stonehilton.com
chris@stonehilton.com

Noah Schottenstein
Texas Bar No. 24100661
STONE | HILTON PLLC
301 Commerce St., Suite 2360
Fort Worth, TX 76102
T: (737) 465-3897
noah@stonehilton.com

*Attorneys for Plaintiffs X Corp. and
X.AI LLC*

20

## <u>CERTIFICATE OF SERVICE</u>

I certify that on April 17, 2026, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF system for filing. A notice of electronic filing was transmitted to all ECF registrants of record.

/s/ Eva H. Yung
Eva H. Yung