**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| X CORP. and X.AI LLC,<br><br>    Plaintiffs,<br><br>    v.<br><br>APPLE INC.; OPENAI, INC.; OPENAI,<br>L.L.C.; and OPENAI OPCO, LLC,<br><br>    Defendants. | **Civil Action No. 4:25-cv-00914-P** |

**APPENDIX TO PLAINTIFFS X CORP. AND
X.AI LLC'S OPPOSITION TO THE OPENAI DEFENDANTS'
MOTION TO COMPEL PLAINTIFFS TO PRODUCE DOCUMENTS**

Bradley Justus
AXINN, VELTROP & HARKRIDER LLP
1901 L Street NW
Washington, DC 20036

Charles W. Fillmore
BROWN PRUITT WAMBSGANSS
DEAN FORMAN & MOORE, P.C.
201 Main Street, Suite 700
Fort Worth, TX 76102

Craig M. Reiser
Scott A. Eisman
Eva Yung
Christopher Erickson
AXINN, VELTROP & HARKRIDER LLP
630 Fifth Avenue, 33rd Floor
New York, NY 10111

Judd E. Stone II
Christopher D. Hilton
STONE | HILTON PLLC
600 Congress Ave., Ste. 2350
Austin, TX 78701

Noah Schottenstein
STONE | HILTON PLLC
301 Commerce St., Suite 2360
Fort Worth, TX 76102

**APPENDIX TO PLAINTIFFS X CORP.**
**X.AI LLC'S OPPOSITION TO THE OPENAI DEFENDANTS'**
**MOTION TO COMPEL PLAINTIFFS TO PRODUCE DOCUMENTS**

| Tab No. | Pages of Brief | Description | Appendix Pages(s) |
|---|---|---|---|
| Tab 1 | 4 | Document titled ███████ ████████ OAI_NDTX_0001232 | App. 12-14 |
| Tab 2 | 4 | Document titled ██████ █████ OAI_NDTX_0006244 | App. 15-17 |
| Tab 3 | 4 | Messages between Brad Lightcap and Sam Altman, in which the earliest message was sent on May 1, 2024 at 12:33 AM UTC, OAI_NDTX_0007056 | App. 18-20 |
| Tab 4 | 4 | Messages between Brad Lightcap, Dave Cummings, James Dyett, et al., in which the earliest message was sent on January 9, 2025 at 11:24 PM UTC, OAI_NDTX_0007236 | App. 21-25 |
| Tab 5 | 4 | Messages between Kevin Weil and Olivier Godement in which the earliest message was sent on July 24, 2024 at 1:39 AM UTC, OAI_NDTX_0018958 | App. 26-28 |
| Tab 6 | 4-5 | Document titled █████ ████████ OAI_NDTX_0010875 | App. 29-31 |
| Tab 7 | 4-5 | Document titled █████ ██████ dated May 5, 2024, OAI_NDTX_0010814 | App. 32-93 |
| Tab 8 | 5 | Document titled ██████ OAI_NDTX_0010877 | App. 94-115 |
| Tab 9 | 5 | Document titled ██████ OAI_NDTX_0030697 | App. 116-35 |

| Tab No. | Pages of Brief | Description | Appendix Pages(s) |
|---------|----------------|-------------|-------------------|
| Tab 10 | 5 | Messages between Olivier Godement and Peter Deng, in which the earliest message was sent on May 30, 2024 at 8:54 PM UTC, OAI_NDTX_0006903 | App. 136-38 |
| Tab 11 | 5 | Messages between Alison Harmon, Brad Lightcap, Hannah Wong, et al., in which the earliest message was sent on May 30, 2024 at 5:00 AM UTC, OAI_NDTX_0025681 | App. 139-41 |
| Tab 12 | 5 | Messages between James Dyett and Srinivas Narayanan, in which the earliest message was sent on December 8, 2023 at 5:13 PM UTC, OAI_NDTX_0030284 | App. 142-43 |
| Tab 13 | 5-6 | Email thread titled ██████████████████████████████████████ in which the latest-in-time email was sent on May 15, 2025 at 8:38 PM from Sarah Friar to Nick Turley, Antonia Woodford, David Sasaki, et al., OAI_NDTX_0030209 | App. 144-54 |
| Tab 14 | 6 | Email thread titled █████████████████████ in which the latest-in-time email was sent on July 10, 2025 at 4:54 AM from Zoran Martinovic to Steve Smith, OAI_NDTX_0012873 | App. 155-61 |
| Tab 15 | 6 | Messages between Dave Cummings and Ryan Liu, in which the earliest message was sent on February 14, 2025 at 12:02 AM UTC, OAI_NDTX_0007014 | App. 162-64 |
| Tab 16 | 12-13 | Email thread titled ████████████ in which the latest-in-time email was sent on June 18, 2025 at 16:00 UTC from Brad Lightcap to Adrian Perica, APL-XAI_00017691 | App. 165-68 |

| Tab No. | Pages of Brief | Description | Appendix Pages(s) |
|---|---|---|---|
| Tab 17 | 13 | November 5, 2025 Bloomberg article titled *Apple Nears $1 Billion-a Year Deal to Use Google AI for Siri* | App. 169-73 |
| Tab 18 | 13 | Email thread titled ██████████████ ████████████ in which the latest-in-time email was sent on June 18, 2025 at 12:52 UTC from Eddy Cue to Adrian Perica, APL-XAI_00050023 | App. 174-77 |
| Tab 19 | 13-14 | Excerpt of Apple Inc's First Set of Requests for Production of Documents to Plaintiffs | App. 178-87 |
| Tab 20 | 16 | Webpage titled *Tesla, Inc. Common Stock (TSLA)* on Nasdaq website | App. 188-93 |
| Tab 21 | 17 | Declaration of Samantha Birkenfeld-Malpass in Support of Plaintiffs X Corp. and X.AI LLC's Opposition to the OpenAI Defendants' Motion to Compel Plaintiffs to Produce Documents | App. 194-96 |
| Tab 22 | 17-19 | Letter from Andrew J. H. Cheung to Scott A. Eisman, dated March 10, 2026 | App. 197-202 |

Dated: April 17, 2026

Respectfully submitted,

*/s/ Bradley Justus*

Bradley Justus
N.D. Tex. Bar No. 1007988DC
DC Bar No. 1007988
AXINN, VELTROP & HARKRIDER LLP
1901 L Street NW
Washington, DC 20036
T: (202) 912-4700
F: (202) 912-4701
bjustus@axinn.com

Charles W. Fillmore
Texas Bar No. 00785861
BROWN PRUITT WAMBSGANSS
DEAN FORMAN & MOORE, P.C.
201 Main Street, Suite 700
Fort Worth, TX 76102
T: (817) 338-4888
cfillmore@brownpruitt.com

*admitted *pro hac vice*

*/s/ Eva H. Yung*

Craig M. Reiser
N.D. Tex. Bar No. 4886735NY
NY State Bar No. 4886735
Scott A. Eisman
N.D. Tex. Bar No. 4905287NY
NY State Bar No. 4905287
Eva Yung*
NY State Bar No. 5497300
Christopher Erickson
N.D. Tex. Bar No. 5800628NY
NY State Bar No. 5800628
AXINN, VELTROP & HARKRIDER LLP
630 Fifth Avenue, 33rd Floor
New York, NY 10111
T: (212) 728-2200
F: (212) 728-2201
creiser@axinn.com
seisman@axinn.com
eyung@axinn.com
cerickson@axinn.com

*/s/ Judd E. Stone*

Judd E. Stone II
Texas Bar No. 24076720
Christopher D. Hilton
Texas Bar No. 24087727
STONE | HILTON PLLC
600 Congress Ave., Ste. 2350
Austin, TX 78701
T: (737) 465-3897
judd@stonehilton.com
chris@stonehilton.com

Noah Schottenstein
Texas Bar No. 24100661
STONE | HILTON PLLC
301 Commerce St., Suite 2360
Fort Worth, TX 76102
T: (737) 465-3897
noah@stonehilton.com

*Attorneys for Plaintiffs X Corp. and
X.AI LLC*

App. 5

## CERTIFICATE OF SERVICE

I certify that on April 17, 2026, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF system for filing. A notice of electronic filing was transmitted to all ECF registrants of record.

/s/ Eva H. Yung
Eva H. Yung

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

|  |  |
|---|---|
| X CORP. and X.AI LLC,<br><br>    Plaintiffs,<br><br>    v.<br><br>APPLE INC.; OPENAI, INC.; OPENAI,<br>L.L.C.; and OPENAI OPCO, LLC,<br><br>    Defendants. | **Civil Action No. 4:25-cv-00914-P** |

**DECLARATION OF EVA H. YUNG IN SUPPORT OF**
**PLAINTIFFS X CORP. AND X.AI LLC'S OPPOSITION TO THE OPENAI**
**DEFENDANTS' MOTION TO COMPEL PLAINTIFFS TO PRODUCE DOCUMENTS**

App. 7

I, Eva H. Yung, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1.      I am an attorney admitted to practice before this Court, and I am a partner at the law firm of Axinn, Veltrop & Harkrider LLP, counsel for Plaintiffs X Corp. and X.AI LLC in the above-captioned matter. I submit this declaration in support of Plaintiffs' Opposition to the OpenAI Defendants' Motion to Compel Plaintiffs to Produce Documents. The matters in this declaration are within my personal knowledge and are true and correct.

2.      Attached hereto as Tab 1 is a true and correct copy of a document titled ██████ ████████ █ ███████ ███████████████████████████ Bates stamped OAI_NDTX_0001232.

3.      Attached hereto as Tab 2 is a true and correct copy of a document titled ████████ █████████████████ Bates stamped OAI_NDTX_0006244.

4.      Attached hereto as Tab 3 is a true and correct copy of messages between Brad Lightcap and Sam Altman, in which the earliest message was sent on May 1, 2024 at 12:33 AM UTC, Bates stamped OAI_NDTX_0007056.

5.      Attached hereto as Tab 4 is a true and correct copy of messages between Brad Lightcap, Dave Cummings, James Dyett, et al., in which the earliest message was sent on January 9, 2025 at 11:24 PM UTC,  Bates stamped OAI_NDTX_0007236.

6.      Attached hereto as Tab 5 is a true and correct copy of messages between Kevin Weil and Olivier Godement in which the earliest message was sent on July 24, 2024 at 1:39 AM UTC, Bates stamped OAI_NDTX_0018958.

7.    Attached hereto as Tab 6 is a true and correct copy of a document titled ██████████

████████████████████████████████████████████████████████████████████

██████ Bates stamped OAI_NDTX_0010875.

8.    Attached hereto as Tab 7 is a true and correct copy of a document titled

█████████████████████████████████████████████ dated May 5, 2024,

Bates stamped OAI_NDTX_0010814.

9.    Attached hereto as Tab 8 is a true and correct copy of a document titled ████████

██████ Bates stamped OAI_NDTX_0010877

10.    Attached hereto as Tab 9 is a true and correct copy of a document titled

███████████████ Bates stamped OAI_NDTX_0030697.

11.    Attached hereto as Tab 10 is a true and correct copy of messages between Olivier

Godement and Peter Deng, in which the earliest message was sent on May 30, 2024 at 8:54 PM

UTC, Bates stamped OAI_NDTX_0006903.

12.    Attached hereto as Tab 11 is a true and correct copy of messages between Alison

Harmon, Brad Lightcap, Hannah Wong, et al., in which the earliest message was sent on May 30,

2024 at 5:00 AM UTC, Bates stamped OAI_NDTX_0025681.

13.    Attached hereto as Tab 12 is a true and correct copy of messages between James

Dyett and Srinivas Narayanan, in which the earliest message was sent on December 8, 2023 at

5:13 PM UTC, Bates stamped OAI_NDTX_0030284.

14.    Attached hereto as Tab 13 is a true and correct copy of an email thread titled

████████████████████████████████████████████████████████████████████

██████████████████████████████████ in which the latest-in-time email was

App. 9

sent on May 15, 2025 at 8:38 PM from Sarah Friar to Nick Turley, Antonia Woodford, David Sasaki, et al., Bates stamped OAI_NDTX_0030209.

15.    Attached hereto as Tab 14 is a true and correct copy of an email thread titled ██ ██████████████████████████ in which the latest-in-time email was sent on July 10, 2025 at 4:54 AM from Zoran Martinovic to Steve Smith, Bates stamped OAI_NDTX_0012873.

16.    Attached hereto as Tab 15 is a true and correct copy of messages between Dave Cummings and Ryan Liu, in which the earliest message was sent on February 14, 2025 at 12:02 AM UTC, Bates stamped OAI_NDTX_0007014.

17.    Attached hereto as Tab 16 is a true and correct copy of an email thread titled ██ ██████ in which the latest-in-time email was sent on June 18, 2025 at 16:00 UTC from Brad Lightcap to Adrian Perica, Bates stamped APL-XAI_00017691.

18.    Attached hereto as Tab 17 is a true and correct copy of a November 5, 2025 Bloomberg article titled *Apple Nears $1 Billion-a Year Deal to Use Google AI for Siri*.

19.    Attached hereto as Tab 18 is a true and correct copy of an email thread titled ██ ████████████ in which the latest-in-time email was sent on June 18, 2025 at 12:52 UTC from Eddy Cue to Adrian Perica, Bates stamped APL-XAI_00050023.

20.    Attached hereto as Tab 19 is a true and correct copy of an excerpt of Apple Inc's First Set of Requests for Production of Documents to Plaintiffs.

21.    Attached hereto as Tab 20 is a true and correct copy of a webpage titled Tesla, Inc. Common Stock (TSLA) on Nasdaq's website.

22.    Attached hereto as Tab 21 is a true and correct copy of the Declaration of Samantha Birkenfeld-Malpass in Support of Plaintiffs X Corp. and X.AI LLC's Opposition to

the OpenAI Defendants' Motion to Compel Plaintiffs to Produce Documents, dated April 17, 2026.

23.    Attached hereto as Tab 22 is a true and correct copy of a letter from Andrew J. H. Cheung to Scott A. Eisman, dated March 10, 2026.

Dated: April 17, 2026                    Respectfully submitted,

*/s/ Eva H. Yung*
Eva H. Yung

# Tab 1

App. 14

Confidential                                                                OAI_NDTX_0001233

# Tab 2



Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0006245

App. 17

# Tab 3

App. 20

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0007057

# Tab 4



App. 23

Highly Confidential – Outside Counsels' Eyes Only

App. 24

Highly Confidential – Outside Counsels' Eyes Only

App. 25



Highly Confidential – Outside Counsels' Eyes Only

# Tab 5

# Tab 6





App. 32

# Tab 7

App. 33

Highly Confidential – Outside Counsels' Eyes Only

Highly Confidential – Outside Counsels' Eyes Only

App. 34

OAI_NDTX_0010815

App. 35

Highly Confidential – Outside Counsels' Eyes Only

App. 36

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010817

Highly Confidential – Outside Counsels' Eyes Only

App. 41

Highly Confidential – Outside Counsels' Eyes Only

App. 42

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010823

App. 43

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010824

App. 44

Highly Confidential – Outside Counsels' Eyes Only

App. 45

Highly Confidential – Outside Counsels' Eyes Only

App. 46

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010827

App. 47

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010828

App. 49

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010830

App. 50

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010831

App. 51

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010832

App. 52

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010833

App. 53

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010834

App. 54

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010835

App. 55

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010836

App. 56

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010837

App. 58

Highly Confidential – Outside Counsels' Eyes Only

App. 60

Highly Confidential – Outside Counsels' Eyes Only

App. 61

Highly Confidential – Outside Counsels' Eyes Only

App. 62

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010843

App. 63

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010844

App. 64

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010845

App. 65

Highly Confidential – Outside Counsels' Eyes Only

App. 66

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010847

App. 67

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010848

App. 68

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010849

App. 69

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010850

App. 70

Highly Confidential – Outside Counsels' Eyes Only

App. 71

Highly Confidential – Outside Counsels' Eyes Only                    OAI_NDTX_0010852

App. 72

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010853

App. 73

Highly Confidential – Outside Counsels' Eyes Only

App. 74

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010855

App. 75

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010856

App. 76

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010857

App. 77

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010858

App. 78

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010859

App. 79

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010860

App. 80

Highly Confidential – Outside Counsels' Eyes Only                    OAI_NDTX_0010861

Highly Confidential – Outside Counsels' Eyes Only

App. 81

OAI_NDTX_0010862

App. 82

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010863

App. 83

Highly Confidential – Outside Counsels' Eyes Only

App. 84

Highly Confidential – Outside Counsels' Eyes Only

App. 85

Highly Confidential – Outside Counsels' Eyes Only                    OAI_NDTX_0010866

App. 86

Highly Confidential – Outside Counsels' Eyes Only

App. 87

Highly Confidential – Outside Counsels' Eyes Only

App. 88

Highly Confidential – Outside Counsels' Eyes Only

App. 89

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010870

App. 90

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010871

App. 91

Highly Confidential – Outside Counsels' Eyes Only                    OAI_NDTX_0010872

App. 92

Highly Confidential – Outside Counsels' Eyes Only

App. 93

Highly Confidential – Outside Counsels' Eyes Only

App. 94

# Tab 8

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010877



Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010878

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010879

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010880

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010881



Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010882



Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010883



Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010884



Highly Confidential – Outside Counsels' Eyes Only
OAI_NDTX_0010885



Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010886

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010887



Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010888



Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010889







Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010892

App. 110



Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010893

App. 111



Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010894

App. 112



Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010895



Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010896



Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0010897

App. 115

# Tab 9



Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0030697

App. 117



Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0030698

App. 118



Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0030699



Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0030700

App. 120

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0030701





Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0030703

App. 123



Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0030704



Highly Confidential – Outside Counsels' Eyes Only    OAI_NDTX_0030705

App. 125

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0030706



Highly Confidential – Outside Counsels' Eyes Only    OAI_NDTX_0030707

App. 127



Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0030708



Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0030709



Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0030710



Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0030711

App. 131



Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0030712

App. 132



Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0030713

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0030714

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0030715

App. 135

App. 136

# Tab 10

Highly Confidential

App. 138

OAI_NDTX_0006904

# Tab 11

App. 141

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0025682

# Tab 12

# Tab 13

Highly Confidential – Outside Counsels' Eyes Only

App. 146

App. 147

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0030211

Highly Confidential – Outside Counsels' Eyes Only

App. 148

OAI_NDTX_0030212

App. 149

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0030213

App. 150

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0030214

App. 151

Highly Confidential – Outside Counsels' Eyes Only

App. 152

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0030216

Highly Confidential – Outside Counsels' Eyes Only

App. 153

OAI_NDTX_0030217

App. 154

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0030218

# Tab 14

App. 157

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0012874

App. 158

Highly Confidential – Outside Counsels' Eyes Only

Highly Confidential – Outside Counsels' Eyes Only

App. 159

OAI_NDTX_0012876

App. 161

Highly Confidential – Outside Counsels' Eyes Only                                                                                    OAI_NDTX_0012878

# Tab 15

App. 164

Highly Confidential – Outside Counsels' Eyes Only

OAI_NDTX_0007015

# Tab 16

App. 167



HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY    APL-XAI_00017692

App. 168



HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

APL-XAI_00017693

# Tab 17

Technology | AI

# Apple Nears $1 Billion-a Year Deal to Use Google AI for Siri

     



A customer tries the Apple Intelligence function on an iPhone. *Photographer: Samyukta Lakshmi/Bloomberg*

By Mark Gurman
November 5, 2025 at 2:10 PM EST
*Updated on November 5, 2025 at 2:34 PM EST*

 Save     Translate ⌄    🎧 Listen 4:50

---

✦ **Takeaways** by Bloomberg AI                                    Hide ⌃

- Apple Inc. is planning to use a 1.2 trillion parameter artificial intelligence model developed by Alphabet Inc.'s Google to help power its overhaul of the Siri voice assistant.
- The two companies are finalizing an agreement that would see Apple pay roughly $1 billion annually for access to Google's technology, with the Google model handling Siri's summarizer and planner functions.
- Apple intends to use the Google model as an interim solution until its own models are powerful enough, and is working on a 1 trillion parameter cloud-based model that it hopes to have ready for consumer applications as early as next year.

---

Apple Inc. is planning to pay about $1 billion a year for an ultrapowerful 1.2 trillion parameter artificial intelligence model developed by Alphabet Inc.'s Google that would help run its long-promised overhaul of the Siri voice assistant, according to people with knowledge of the matter.

Following an extensive evaluation period, the two companies are now finalizing an agreement that would give Apple access to Google's technology, according to the people, who asked not to be identified because the deliberations are private.

The iPhone maker is banking on Google's help to rebuild Siri's underlying technology, setting the stage for a new slate of features next year. The Google model's 1.2 trillion parameters – a measure of the AI software's complexity – would dwarf the level of Apple's current models.

Apple had previously mulled using other third-party models to handle the task. But after testing Gemini, OpenAI's ChatGPT and Anthropic's Claude, Apple zeroed in on Google earlier this year, Bloomberg reported at the time. The

App. 170

Case 4:25-cv-00914-P    Document 207    Filed 04/17/26    Page 171 of 202    PageID 8871

hope is to use the technology as an interim solution until Apple's own models are powerful enough.

The new Siri is on track for next spring, Bloomberg has <u>reported</u>. Given the launch is still months away, the plans and partnership could still evolve. Apple and Google spokespeople declined to comment.



Samsung uses the Google Gemini chatbot to help power its AI features. *Photographer: Yuki Iawmura/Bloomberg*

Shares of both companies briefly jumped to session highs on the news Wednesday. Apple's stock gained less than 1% to $271.70, while Alphabet was up as much as 3.2% to $286.42.

The custom Gemini system represents a major advance from the 150 billion parameter model used today for the cloud-based version of Apple Intelligence. The move would vastly expand the system's power and its ability to process complex data and understand context.

Known internally as Glenwood, the effort to fix Siri with a third-party model has been led by Vision Pro headset creator Mike Rockwell and software engineering chief Craig Federighi. The new voice assistant itself, planned for iOS 26.4, is code-named Linwood.

Read More: Apple Explores Using Google Gemini AI to Power Revamped Siri

Under the arrangement, Google's Gemini model will handle Siri's summarizer and planner functions – the components that help the voice assistant synthesize information and decide how to execute complex tasks. Some Siri features will continue to use Apple's in-house models.

App. 171

Case 4:25-cv-00914-P    Document 207    Filed 04/17/26    Page 172 of 202    PageID 8872

The model will run on Apple's own Private Cloud Compute servers, ensuring that user data remains walled off from Google's infrastructure. Apple has already allocated AI server hardware to help power the model.

While the partnership is substantial, it's unlikely to be promoted publicly. Apple will treat Google as a behind-the-scenes technology supplier instead. That would make the pact different than the companies' Safari browser deal, which made Google the default search engine.

The agreement is also separate from earlier talks about integrating Gemini directly into Siri as a chatbot. Those discussions came close to fruition in both 2024 and earlier this year but ultimately didn't materialize into a feature. The partnership also doesn't weave Google AI search into Apple's operating systems.

Read More: Apple Plans AI Web Search Tool to Rival OpenAI, Perplexity

On Apple's most recent earnings call, Chief Executive Officer Tim Cook said Siri could eventually offer additional chatbots – beyond the current ChatGPT option.

Apple isn't alone in adopting Gemini to power AI features: Snap Inc. and several other major companies are building on Google's Vertex AI platform. But for Apple, the move marks an acknowledgment that it has fallen behind in AI – and is now willing to rely on outside technology to catch up.

Apple still doesn't want to use Gemini as a long-term solution. Despite the company bleeding AI talent – including the head of its models team – management intends to keep developing new AI technology and hopes to eventually replace Gemini with an in-house solution, the people said.

Read More: Apple's Head of ChatGPT-Like AI Search Effort to Leave for Meta

To that end, the company's models team is working on a 1 trillion parameter cloud-based model that it hopes to have ready for consumer applications as early as next year.

Apple executives believe it can reach a similar quality level as the custom Gemini offering. But Google continues to enhance Gemini, and catching up won't be easy.

The 2.5 Pro version of Gemini sits atop most leaderboards that compare large language models, the foundation of generative AI.

Apple also continues to push to bring Apple Intelligence and the new Siri to China. Because of China's longtime ban on Google offerings, the localized version of the Siri overhaul is unlikely to rely on Gemini.

The tailored version of Apple Intelligence will use in-house models, along with a filter developed by Alibaba Group Holding Ltd. That layer would adjust the content at the behest of the Chinese government, Bloomberg News reported earlier this year. Apple also has been eyeing a partnership with Baidu Inc. for its AI offerings in the country.



⊓ Save

Contact us:
**Provide news feedback or report an error**

Site feedback:
**Take our Survey** ↗

App. 172

Case 4:25-cv-00914-P     Document 207     Filed 04/17/26     Page 173 of 202     PageID 8873

Confidential tip?

**Send a tip to our reporters**

**Before it's here, it's on the Bloomberg Terminal**

©2025 Bloomberg L.P. All Rights Reserved.

App. 173

# Tab 18



App. 176

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

APL-XAI_00050024



App. 177

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY

# Tab 19

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| X CORP. and X.AI LLC, | |
| Plaintiffs, | Civil Action No. 4:25-cv-00914-P |
| v. | Honorable Mark T. Pittman |
| APPLE INC.; OPENAI, INC.; OPENAI, L.L.C.; and OPENAI OPCO, LLC, | **APPLE INC.'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO PLAINTIFFS** |
| Defendants. | |

Pursuant to Federal Rules of Civil Procedure 26 and 36, Defendant Apple Inc. hereby propounds the following First Set of Requests for Production of Documents to Plaintiffs X Corp. and X.AI LLC ("Plaintiffs"). These Requests are to be responded to fully and separately as required by the Federal Rules of Civil Procedure.

Apple requests that Plaintiffs serve their responses to these Requests upon counsel for Apple at Covington & Burling LLP, 850 Tenth Street, NW, Washington, DC 20001, within thirty (30) days. The following Definitions and Instructions are applicable to these Requests.

**DEFINITIONS**

1. **"Action"** refers to the above-captioned litigation, *X v. Apple*, No. 4:25-cv-00914-P (N.D. Tex.).

2. **"Agreement"** refers to a binding contract between two or more parties.

3. **"Application"** or **"App"** refers to a software program or web-based service designed to perform specific tasks on a computer, mobile phone, or other device.

4. **"Apple"** refers to Defendant Apple Inc. and its employees.

5. **"Apple App Store"** refers to the online storefront operated by Apple that allows

developers to offer for download apps compatible with Apple devices.

6.      **"Apple Intelligence"** means the suite of over 20 personal intelligence features available on Apple devices that offer ways for users to simplify and accelerate everyday tasks, enhance their writing, communicate effectively, and express themselves creatively, including but not limited to Genmoji, Writing Tools, and Smart Replies.

7.      **"ChatGPT"** refers to any and all versions of the Generative AI Chatbot developed by OpenAI.

8.      **"Communication(s)"** means the transmittal of information in any form (including but not limited to verbally, in writing, or by email, text message, messaging app, or social media), including but not limited to facts, ideas, and inquiries, as well as any notes, records, or other memorialization thereof.

9.      **"Complaint"** refers to the Complaint filed in this Action on August 25, 2025 in the United States District Court for the Northern District of Texas, Fort Worth Division (ECF No. 1) and any subsequent amendments thereto.

10.     **"Defendants"** refers to Apple Inc., OpenAI Inc., OpenAI LLC, and OpenAI OpCo LLC.

11.     **"Document(s)"** means "documents or electronically stored information" as that term is used in Federal Rule of Civil Procedure 34(a)(1)(A), including but not limited to any drafts and non-identical copies thereof. "Document(s)" shall include "Communication(s)," as defined above.

12.     **"Generative AI Chatbot"** refers to an artificial intelligence ("AI") assistant that provides conversational access to large language models ("LLMs") to create a response to User Prompts for tasks such as answering questions, generating content, and assisting with reasoning

and problem solving. For the avoidance of doubt, Generative AI Chatbot includes but is not limited to ChatGPT and Grok.

13.     **"Grok"** refers to the Generative AI Chatbot developed by Plaintiffs X Corp. and/or X.AI LLC.

14.     **"Integrate"** or **"Integration"** refers to combining, connecting, or incorporating various systems so they can work together.

15.     **"Must-Have Apps List"** refers to the Apple App Store's editorially curated list of Applications currently titled "Must-Have Apps," as well as any substantially similar editorially curated list that may bear a different name in the future.

16.     "**OpenAI**" refers to OpenAI Inc., OpenAI LLC, and OpenAI OpCo LLC.

17.     **"Person(s)"** shall refer not only to natural persons, but also, without limitation, to firms, partnerships, corporations, associations, unincorporated associations, organizations, businesses, trusts, and/or any other type of legal entities.

18.     **"Relate to"** or **"Relating to"** means concerning, reflecting, referring to, describing, evidencing, proving, disproving, summarizing, containing, analyzing, explaining, mentioning, discussing, describing, supporting, or constituting.

19.     **"Smartphone"** refers to a mobile phone that includes additional computing functions.

20.     "**Smartphone App Store**" refers to any online storefront that allows developers to offer for download apps compatible with Smartphones.

21.     **"Super Apps"** refers to multi-functional platforms that offer services such as social connectivity and messaging, financial services, e-commerce, and entertainment that do not require a customer to be tied to a particular device, as described in paragraphs 4 and 62 through 64 of the

Complaint.

22.  **"User Prompts"** refers to the requests sent by a user to an AI chatbot, including but not limited to Generative AI Chatbots.

23.  **"X"** refers to X Corp. and the online social media platform formerly known as Twitter, and all other persons acting on or purporting to act on X's behalf, including but not limited to representatives and agents.

24.  **"xAI"** refers to (1) X.AI LLC, and all other persons acting on or purporting to act on xAI's behalf, including but not limited to representatives and agents, and/or (2) any Generative AI Chatbot or other AI model developed by X Corp. or X.AI LLC.

25.  **"You"** or **"Your"** refers to X Corp. and X.AI LLC, the Plaintiffs in this Action to whom these requests for production are addressed, and all other persons acting on or purporting to act on Your behalf, including but not limited to representatives and agents.

26.  All words, terms, and phrases not specifically defined herein are to be given their normal and customary meaning in the context in which they are used in these Requests.

## INSTRUCTIONS

The following Instructions are applicable to these Requests:

1.  The terms "any," "all," "each," and "every" shall be construed to encompass any and all.

2.  The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Request all responsive information that might otherwise be construed to be outside of its scope.

3.  The singular form of any word includes the plural and vice versa.

4.  The present tense of a verb includes the past tense, and vice versa.

ChatGPT with Apple Intelligence results in "Plaintiffs [being] foreclosed from a significant number of generative AI chatbot prompts, deprived of scale, and thwarted in their abilities to innovate and improve the quality and competitiveness of their offerings."

23.    All Documents Relating to or supporting Your allegation that User Prompts from Apple Intelligence (including Siri or Writing Tools) represent "a substantial share of the generative AI chatbot market."

24.    All Documents Relating to or supporting Your allegation that User Prompts from Apple Intelligence (including Siri or Writing Tools) represent "up to 55 percent of all potential generative AI Chatbot prompts."

25.    All Documents Relating to any technical limitations or challenges posed by an Integration with multiple Generative AI Chatbots, including but not limited to technical limitations or challenges with respect to X, Tesla, or any Smartphones or other devices or applications.

26.    All Documents Relating to or supporting Your allegation that "generative AI chatbots and related super apps stand to reduce customers' dependence on smartphones like Apple's iPhone," including but not limited to:

    a.    Assessments, analyses, or projections of the number of downloads of Generative AI Chatbots or Super Apps;

    b.    Assessments, analyses, or projections of the number of subscribers to Generative AI Chatbots or Super Apps;

    c.    Assessments, analyses, or projections of the respective market share in the United States of Generative AI Chatbots or Super Apps;

    d.    Assessments, analyses, or projections of "functionality" on Smartphones that "Generative AI chatbots have already replaced";

e. Assessments, analyses, or projections of the impact of Generative AI Chatbots or Super Apps on consumer demand for Smartphones; and/or

f. Assessments, analyses, or projections of the impact of Generative AI Chatbots or Super Apps on the development of lower-cost Smartphones.

27. All Documents from the time period of January 1, 2023 to August 25, 2025 Relating to or supporting Your allegation that the X App or Grok App will or may develop into a Super App, including but not limited to:

a. Discussions or negotiations with Visa Relating to the development of the financial services portion of the X App or Grok App;

b. Discussions or negotiations with Crush Capital Relating to the licensing and distribution of Crush Capital's "interactive investment show";

c. Discussions or negotiations with Shopify Relating to the development features on the X App or Grok App that will "allow users to shop";

d. Discussions or negotiations with any other business partners Relating to the development of the X App or Grok App's "digital town square"; and/or

e. Discussions or negotiations with non-Apple Smartphone manufacturers Relating to how using the X App or Grok App will enable them to make a lower-cost Smartphone to compete with Apple.

28. All Documents Relating to Your plans or efforts to manufacture Smartphones.

29. All Documents Relating to the Apple App Store's Must-Have Apps List, including but not limited to:

a. All Documents Relating to Your Communications with Apple regarding the X App and Grok App's inclusion on the Must-Have Apps List, including but not limited

Coalition for App Fairness on October 28, 2025 that X joined the Coalition for App Fairness, *see X Joins Coalition for App Fairness to Champion a Fairer App Ecosystem for Everyone*, COALITION FOR APP FAIRNESS (Oct. 28, 2025), https://appfairness.org/2066-2/.

36.     All Documents that Plaintiffs reviewed or relied upon in preparing the Complaint or any subsequent amendments thereto.

37.     All Documents produced to You by any other individual or entity, including but not limited to third-parties, in connection with this Action.

38.     All Documents (including but not limited to affidavits, declarations, and any other sworn testimony) Plaintiffs intend to rely upon at trial or at any evidentiary hearing in this Action.

Dated: November 12, 2025                      Respectfully submitted,

                                             /s/ Dee J. Kelly, Jr.
                                             Dee J. Kelly, Jr.
                                             State Bar No. 11217250
                                             dee.kelly@kellyhart.com
                                             Julia G. Wisenberg
                                             State Bar No. 24099146
                                             julia.wisenberg@kellyhart.com
                                             KELLY HART & HALLMAN LLP
                                             201 Main Street, Suite 2500
                                             Fort Worth, TX 76102
                                             Telephone: (817) 332-2500
                                             Facsimile: (817) 878-9280

                                             Emily Johnson Henn (admitted *pro hac vice*)
                                             ehenn@cov.com
                                             COVINGTON & BURLING LLP
                                             3000 El Camino Real
                                             5 Palo Alto Square, 10th Floor
                                             Palo Alto, CA 94306
                                             Telephone: (650) 632-4700

Henry Liu (admitted *pro hac vice*)
hliu@cov.com
Lauren Willard Zehmer (admitted *pro hac vice*)
lzehmer@cov.com
Carol Szurkowski Weiland (admitted *pro hac vice*)
cweiland@cov.com
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Telephone: (202) 662-6000
Facsimile: (202) 662-6302

**ATTORNEYS FOR DEFENDANT APPLE INC.**

## CERTIFICATE OF SERVICE

I certify that on November 12, 2025, I served the foregoing document electronically in accordance with the Federal Rules of Civil Procedure.

*/s/ Zhi Yang Tan*
Zhi Yang Tan

# Tab 20





iShares Texas Equity ETF

| | | |
|---|---|---|
| **FTXR**<br>First Trust Nasdaq Transportation ETF | 7.16% | |
| **QCLN**<br>First Trust NASDAQ Clean Edge Green Energy Index Fund | 6.77% | |
| **QBIG**<br>Invesco Top QQQ ETF | 4.92% | |
| **QQQM**<br>Invesco NASDAQ 100 ETF | 3.97% | |

## Discover the latest insights from Nasdaq-listed ETF issuers →



## ETFs with TSLA as a Top 10 Holding*

| Symbol | 100 Day Price Change (%) | | % Weighting |
|---|---|---|---|
| **VCR**<br>Vanguard Consumer Discretion ETF | | -7.83 (-2.05%) | 18.18% |
| **XLY**<br>State Street Consumer Discretionary Select Sector SPDR ETF | | -3.11 (-2.68%) | 17.06% |
| **GXPD**<br>Global X PureCap MSCI Consumer Discretionary ETF | | -0.86 (-3.30%) | 16.77% |
| **FDIS**<br>Fidelity MSCI Consumer Discretionary Index ETF | | -1.91 (-1.93%) | 16.31% |
| **WANT**<br>Direxion Daily Consumer Discretionary Bull 3X ETF | | -6.87 (-14.65%) | 14.15% |

*Data is provided by Barchart.com. Data reflects weightings calculated at the beginning of each month. Data is subject to change.

**Green highlights the top performing ETF by % change in the past 100 days.

## About Tesla, Inc.

1 TESLA ROAD, AUSTIN, Texas, 78725, United States

+1 512 - 516-8177

https://www.tesla.com

Tesla is a vertically integrated sustainable energy company that also aims to transition the world to electric mobility by making electric vehicles. The company sells solar panels and solar roofs for energy generation plus batteries for stationary storage for residential and commercial properties including utilities. Tesla has multiple ve... **Read more**

### REPORT AN ISSUE

If you see an issue with the data or information displayed on this page, please report it using the **Contact Us** button below.

**Contact Us**

For additional information, refer to our FAQs.

App. 190

## Latest News

Own?

15 hours ago    The Motley Fool

MARKETS

The Only Artificial Intelligence (AI) Stock in the "Magnificent Seven" That's Worth Buying After the Correction

18 hours ago    The Motley Fool

MARKETS

Prediction: Down 30%, Tesla Stock Is Still Not a Buy Ahead of Its Earnings Later This Month

23 hours ago    The Motley Fool

MARKETS

Tesla's Big Rig Could Be a Big Success and Still Disappoint

1 day ago    The Motley Fool

MARKETS

Here's the Real Reason SpaceX Is Teaming Up With Intel on Terafab

1 day ago    The Motley Fool

MARKETS

SpaceX Could Be the Ultimate Meme Stock. Investors Should Avoid This Unprecedented IPO.

1 day ago    The Motley Fool

MARKETS

SpaceX Launches More Rockets Than Anyone Else in the World. Here Is What That Means for Its IPO

1 day ago    The Motley Fool

Show: 10 ⌄          ‹ **1** 2 3 ... 10 ›          1 – 10 of 100

## Trending Stocks

Data as of Apr 13, 2026 2:14 PM ET

| TSLA | AAPL | AMC | AMZN |
|---|---|---|---|
| Tesla, Inc. Common Stock | Apple Inc. Common Stock | Amc Entertainment Holdings, Inc. Class A Common Stock | Amazon.Com, Inc. Common Stock |

App. 191

$352.81
▲ +3.8

$257.82

$142
+0.07  +0.56%

$238.89
+0.51  +2.21%

**MSFT**
Microsoft Corporation
Common Stock
**$382.16**
▲ +11.29  +3.04%

## Trending ETFs

Data as of Apr 13, 2026 2:14 PM ET

**QQQ**
Invesco Qqq Trust, Series 1
**$614.28**
▲ +3.21  +0.53%

**SPY**
State Street Spdr S&P 500 Etf
Trust
**$682.56**
▲ +3.10  +0.46%

**SCHD**
Schwab Us Dividend Equity
Etf
**$30.62**
▲ +0.06  +0.21%

**VOO**
Vanguard S&P 500 Etf
**$627.49**
▲ +2.89  +0.46%

**MINT**
Pimco Enhanced Short
Maturity Active Exchange-
Traded Fund
**$100.45**
▲ +0.02  +0.02%

## Trending Indexes

Data as of Apr 13, 2026 2:13 PM ET

**COMP**
Nasdaq Composite Index
23,061.52
▲ +158.62  +0.69%

**NDX**
Nasdaq-100
25,253.96
▲ +137.62  +0.55%

**NQUS500LC**
Nasdaq Us 500 Large Cap
3,549.00
▲ +19.41  +0.55%

Data Disclaimer: The Nasdaq Indices and the Major Indices are delayed at least 1 minute.

**Real-time Data is provided using Nasdaq Last Sale Data**

Data provided by Nasdaq Data Link, a premier source for financial, economic and alternative datasets. Data Link's cloud-based technology platform allows you to search, discover and access data and analytics for seamless integration via cloud APIs. Register for your free account today at data.nasdaq.com.

 Powered by Nasdaq Data Link ⓘ

# TradeTalks ___

Sign up for the TradeTalks newsletter to receive your weekly dose of trading news, trends and education. Delivered Wednesdays.

All Text Fields Are Required

**First Name***

**Last Name***

**Email Address***

example@yourdomain.com

**Location***

Select...

**Job Role***

Select...

**Industry***

App. 193

Select

SUBMIT

INVESTOR RELATIONS

CAREERS

MOBILE APPS

TRUST CENTER

ACCESSIBILITY

CONTACT

ADVERTISE

NASDAQ MARKETSITE

NEWSLETTERS

PRIVACY POLICY

COOKIES

LEGAL

DO NOT SELL OR SHARE
MY PERSONAL
INFORMATION

Nasdaq

App. 193

# Tab 21

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

|  |  |
|---|---|
| X CORP. and X.AI LLC, <br><br> Plaintiffs, <br><br> v. <br><br> APPLE INC.; OPENAI, INC.; OPENAI, L.L.C.; and OPENAI OPCO, LLC, <br><br> Defendants. | **Civil Action No. 4:25-cv-00914-P** |

**DECLARATION OF
SAMANTHA BIRKENFELD-MALPASS
IN SUPPORT OF PLAINTIFFS X CORP. AND X.AI LLC'S
OPPOSITION TO THE OPENAI DEFENDANTS' MOTION TO COMPEL**

I, Samantha Birkenfeld-Malpass, hereby swear under penalty of perjury:

1.      I am Senior Legal Counsel II at Plaintiff X Corp. ("X") and am authorized to execute this declaration on behalf of X and Plaintiff X.AI LLC ("xAI," and, together with X, "Plaintiffs"). I have been involved with this lawsuit and I am familiar with the claims in the above-captioned case (the "Action").

2.      Based on my personal knowledge of the facts set forth below, if called upon to testify as a witness, I could and would testify competently thereto under oath.

3.      Through my duties as Senior Legal Counsel II at X, I am personally familiar with the corporate relationship between Plaintiffs, Space Exploration Technologies Corp. ("SpaceX"), and Tesla, Inc. ("Tesla").

4.      The parent company of xAI is X.AI Corp., whose parent is X.AI Holdings LLC.

5.      The parent of X is X Holdings Corp., whose parent is X.AI Holdings LLC.

App. 195

6.    SpaceX is the parent company of X.AI Holdings LLC (previously X.AI Holdings Corp.) as of February 2, 2026.

7.    SpaceX continues to be a separate corporate entity from Plaintiffs after February 2, 2026.

8.    SpaceX's files are maintained separately from Plaintiffs' files, and Plaintiffs do not have the right to access SpaceX's files barring specific business circumstances, nor are SpaceX files made accessible to Plaintiffs' employees.

9.    Tesla is a separate corporate entity from Plaintiffs.

10.    Tesla's files are maintained separately from Plaintiffs' files, and Plaintiffs do not have the right to access Tesla's files, nor are Tesla's files made accessible to Plaintiffs' employees.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 17th day of April, 2026.

/s/ Samantha Birkenfeld-Malpass*
Samantha Birkenfeld-Malpass

*signed with permission

App. 196

# Tab 22

WACHTELL, LIPTON, ROSEN & KATZ

51 WEST 52ND STREET

NEW YORK, N.Y. 10019-6150

TELEPHONE: (212) 403-1000

FACSIMILE:  (212) 403-2000

MARTIN LIPTON
HERBERT M. WACHTELL
EDWARD D. HERLIHY
DANIEL A. NEFF
SCOTT K. CHARLES
JODI J. SCHWARTZ
ADAM O. EMMERICH
RALPH M. LEVENE
ROBIN PANOVKA
DAVID A. KATZ
ILENE KNABLE GOTTS
ANDREW J. NUSSBAUM
RACHELLE SILVERBERG
STEVEN A. COHEN
DEBORAH L. PAUL
DAVID C. KARP
RICHARD K. KIM
JOSHUA R. CAMMAKER
MARK GORDON
JEANNEMARIE O'BRIEN
STEPHEN R. DiPRIMA

NICHOLAS G. DEMMO
IGOR KIRMAN
JONATHAN M. MOSES
T. EIKO STANGE
WILLIAM SAVITT
GREGORY E. OSTLING
DAVID B. ANDERS
ADAM J. SHAPIRO
NELSON O. FITTS
JOSHUA M. HOLMES
IAN BOCZKO
MATTHEW M. GUEST
DAVID K. LAM
BENJAMIN M. ROTH
JOSHUA A. FELTMAN
ELAINE P. GOLIN
EMIL A. KLEINHAUS
KARESSA L. CAIN
RONALD C. CHEN
BRADLEY R. WILSON

GEORGE A. KATZ (1965-1989)
JAMES H. FOGELSON (1967-1991)
LEONARD M. ROSEN (1965-2014)

_____

OF COUNSEL

DAVID M. ADLERSTEIN
ANDREW R. BROWNSTEIN
WAYNE M. CARLIN
DAMIAN G. DIDDEN
SELWYN B. GOLDBERG
PETER C. HEIN
DAVID E. KAHAN
JB KELLY*
JOSEPH D. LARSON
RICHARD G. MASON
PHILIP MINDLIN
THEODORE N. MIRVIS
ERIC S. ROBINSON

STEVEN A. ROSENBLUM
JOHN F. SAVARESE
MICHAEL J. SEGAL
WON S. SHIN
DAVID M. SILK
ELLIOTT V. STEIN
LEO E. STRINE, JR.**
STEPHANIE L. TEICHER
PAUL VIZCARRONDO, JR.
JEFFREY M. WINTNER
AMY R. WOLF
MARC WOLINSKY

GRAHAM W. MELI
GREGORY E. PESSIN
CARRIE M. REILLY
MARK F. VEBLEN
SARAH K. EDDY
VICTOR GOLDFELD
RANDALL W. JACKSON
BRANDON C. PRICE
KEVIN S. SCHWARTZ
MICHAEL S. BENN
TIJANA J. DVORNIC
JENNA E. LEVINE
RYAN A. McLEOD
ANITHA REDDY
JOHN L. ROBINSON
STEVEN WINTER
JACOB A. KLING
RAAJ S. NARAYAN
MICHAEL J. SCHOBEL
ELINA TETELBAUM

ERICA E. AHO
LAUREN M. KOFKE
RACHEL B. REISBERG
CYNTHIA FERNANDEZ
  LUMERMANN
CHRISTINA C. MA
BENJAMIN S. ARFA
NATHANIEL D. CULLERTON
ERIC M. FEINSTEIN
ADAM L. GOODMAN
STEVEN R. GREEN
MENG LU
AHSAN M. BARKATULLAH
MATTHEW T. CARPENTER
MICHAEL H. CASSEL
HANNAH CLARK
KYLE M. DIAMOND
JUSTIN R. ORR
EMILY E. SAMRA
GEORGE N. TEPE

_____

COUNSEL

SUMITA AHUJA
LOREN BRASWELL
HEATHER D. CASTEEL
FRANCO CASTELLI
ANDREW J.H. CHEUNG
PAMELA EHRENKRANZ
ALINE R. FLODR
KATHRYN GETTLES-ATWA
LEDINA GOCAJ
ADAM M. GOGOLAK
ANGELA K. HERRING
MICHAEL W. HOLT

DONGHWA KIM
MARK A. KOENIG
J. AUSTIN LYONS
ALEXANDER S. MACKLER**
STEPHANIE A. MARSHAK
ALICIA C. McCARTHY
JOSEPH S. PAYNE
NICOLE D. SHARER
NEIL M. SNYDER
JEFFREY A. WATIKER
DAVID P.T. WEBB

*ADMITTED IN THE DISTRICT OF COLUMBIA AND NORTH CAROLINA
**ADMITTED IN DELAWARE

March 10, 2026

BY E-MAIL
Scott A. Eisman
Axinn, Veltrop & Harkrider LLP
630 Fifth Avenue
New York, NY 10111

        Re:    *X Corp., et al.* v. *Apple Inc., et al.*, No. 4:25-cv-00914-P (N.D. Tex.)

Dear Scott,

        We respond to your March 2, 2026 letter claiming to identify deficiencies in OpenAI's production.  Contrary to your letter, OpenAI substantially completed its production of documents on schedule.

        The fact that defendants in other antitrust cases produced more documents than OpenAI has produced here says nothing about the completeness of its production.  Plaintiffs' complaint alleges anticompetitive conduct narrowly centered on an agreement between Apple and OpenAI to integrate ChatGPT into Apple Intelligence.  It is not surprising that the universe of documents about a relatively small portion of OpenAI's business—which had been implemented for only about nine months when plaintiffs filed their complaint—would be smaller than the productions in other antitrust cases.  Further, OpenAI has produced responsive

App. 198

WACHTELL, LIPTON, ROSEN & KATZ

Scott A. Eisman
March 10, 2026
Page 2

documents consistent with its responses and objections to plaintiffs' document requests rather than pad its production with non-responsive and irrelevant filler. As we have previously noted, the same cannot be said of plaintiffs' document production efforts, which include loading their production with more than 1,000 lunch menus.

We also disagree with your characterization of what "OpenAI needed to produce" in order to substantially complete production. We have clearly described what OpenAI will produce in its responses and objections to your four sets of document requests, in our over 14 hours of meet and confer discussions, and in the pages and pages of subsequent correspondence. The six broad categories of documents or information that you list in your letter do not accurately describe what OpenAI has agreed to produce. To cite just one example, OpenAI has not agreed to produce documents "regarding entry barriers in" plaintiffs' claimed "applicable antitrust markets"; indeed, we have repeatedly and expressly rejected plaintiffs' position that all aspects of OpenAI's business are probative of barriers to entry, and refused to produce documents generally on broad subjects like OpenAI's use of data centers and cloud computing and investment of capital in OpenAI.

Nor do we agree that plaintiffs can claim any prejudice with respect to their ability to serve their expert reports on March 13, 2026. Although OpenAI expects to make additional clean-up productions, as well as productions that it has agreed to make recently or may agree to make in the future, it is abundantly clear that the Court's schedule contemplated that discovery would not be complete prior to plaintiffs' submission of their expert reports. Indeed, despite the parties' proposal that initial expert reports be submitted shortly before the close of fact discovery and that expert discovery close a month and a half after fact discovery, the Court ordered that fact and expert discovery be coterminous, with opening expert reports due in the middle of the fact discovery period.

We further address your specific categories of claimed deficiencies below.

OpenAI's data production

First, as to data regarding adoption of ChatGPT in response to RFP No. 1 of plaintiffs' second set of RFPs, OpenAI made that production last Friday, as we indicated OpenAI would do when we spoke Friday morning. Pursuant to the parties' recent agreement to produce data through December 31, 2025, instead of August 25, 2025, OpenAI was re-pulling this data for the extended time period. As we noted during our meet and confer on February 18, 2026, OpenAI was not planning to use the expanded relevant time period to substantially complete its production by February 27. Consistent with that discussion, the cover email to our February 27 production reiterated that the scope of our production did not include documents or data that we had only agreed to produce within the prior two weeks.

Second, as to the other "various measurements of the impact" of the Apple-ChatGPT Integration Agreement that you complain were not produced, these were not called for by RFP No. 8 of plaintiffs' first set of RFPs. In response to RFP No. 8(b) of the first RFPs,

App. 199

Scott A. Eisman
March 10, 2026
Page 3

which sought data on "ChatGPT's actual … change in subscriptions from the Apple-ChatGPT Integration," OpenAI produced its data on the incremental ChatGPT plus subscriptions resulting from the Apple-ChatGPT Integration. It now appears that plaintiffs are seeking OpenAI's data more broadly on other metrics of the results of the Apple-ChatGPT Integration. Although not called for by plaintiffs' document requests, OpenAI is prepared to produce data on the metrics identified on the page in the document you cited (OAI_NDTX_00005773 at p. 109) for the recently agreed upon relevant time period for data.

Documents from the Google Search litigation

Plaintiffs have identified a single document produced in the Google Search litigation that it contends should have hit upon the agreed-upon search terms and is responsive to plaintiffs' RFPs, as modified by OpenAI's responses and objections. After further investigation, it appears that there were a limited number of custodial documents of Nick Turley that were inadvertently misidentified in our collection as non-custodial documents; this issue only affected certain of Mr. Turley's custodial documents. The document you cited as RDX0355, "ChatGPT: H1 2025 Strategy" (Dec. 2, 2024), available at https://www.justice.gov/atr/media/1397596/dl, was one of them. We are running the agreed-upon search terms over these documents and will promptly produce any responsive, non-privileged documents.

Your letter also refers vaguely to "other relevant documents [OpenAI] produced in the Google Search litigation, such as materials for OpenAI's Board of Directors discussing its pricing plans." We do not know what "other relevant documents" you are referring to. If you have other citations to documents you believe should have been produced, we ask you to identify them so that we may evaluate whether they should have been produced. As to purported OpenAI Board materials "discussing its pricing plans," OpenAI did not agree to produce all documents, or even all Board documents, discussing pricing plans. Rather, we agreed to provide documents sufficient to show "OpenAI's pricing strategies and analyses" that were located in repositories or otherwise reasonably identifiable. We have already produced several such documents, and several more were included in last Friday's production.

Google Drive Documents

Contrary to your contention, OpenAI never agreed or was obligated to run the agreed-upon search terms over all Google Drive documents of anyone at OpenAI, as opposed to the custodial Google Drive documents of the agreed-upon custodians. The fact that a custodian commented on a Google Doc, or had a custodial document that linked to a Google Doc, does not make that Google Doc part of the custodial files of that custodian. Indeed, the parties agreed in their ESI Protocol that documents that are merely referred to or hyperlinked in a responsive document did not have to be produced as part of the "family" of that document. Instead, the parties explicitly provided that "[u]pon the request of the receiving party, the parties will meet and confer regarding the association of hyperlinks with the corresponding hyperlinked documents." ESI Protocol at § 6.

WACHTELL, LIPTON, ROSEN & KATZ

Scott A. Eisman
March 10, 2026
Page 4

Plaintiffs clearly understand that this is the procedure that the parties have agreed upon. In your February 16, 2026 email, you invoked section 6 of the ESI Protocol to request the Google Doc linked in OAI_NDTX_0007116. OpenAI subsequently produced that document at OAI_NDTX_0016992. If plaintiffs would like to similarly request that the document entitled ███████████████ and hyperlinked in OAI_NDTX_0002700 be collected and produced, we will follow the agreed-upon protocol.

Custodial productions of Krithika Muthukumar and Kate Rouch

Plaintiffs pursued the production of documents related to "OpenAI's promotion or distribution of ChatGPT through the Apple App Store," including "any efforts to feature the ChatGPT App in Apple's App Store," and "any efforts to deprioritize or otherwise depreference perceived competitors to the ChatGPT App in the Apple App Store." OpenAI agreed to produce responsive documents identified after running the agreed-upon search terms. Consistent with this response, OpenAI identified Ms. Muthukumar and Ms. Rouch as custodians likely to have had communications with Apple about promotion or distribution of ChatGPT through the Apple App Store, including in connection with the Apple-ChatGPT Integration. OpenAI proposed two custodians because Ms. Muthukumar left the company in November 2024, and we identified Ms. Rouch as an appropriate custodian on the subject for the period after Ms. Muthukumar's departure. We ran the agreed-upon search terms over the agreed-upon relevant time period, and produced documents responsive to your requests. That there were only a few responsive documents does not suggest any deficiency in our production or that OpenAI identified the wrong custodians.

Personal Gmail Accounts

Nor does the production of a handful of emails from OpenAI custodians' personal Gmail accounts imply any deficiency in OpenAI's production.

OpenAI has run the agreed-upon search terms over Mr. Altman's personal Gmail account over the agreed-upon relevant time period, and has produced over 70 responsive, non-privileged emails sent to or from that account. Apple's production of two emails with Mr. Altman's Gmail account that hit on the search terms Apple agreed to run—but did not hit on the search terms that OpenAI agreed to run—does not suggest any deficiency in OpenAI's production of Mr. Altman's Gmails. Your letter cites one email produced from another OpenAI custodian's files that included Mr. Altman's Gmail address; OpenAI has produced the duplicative email from Mr. Altman's personal Gmail account.

Your letter notes that Apple produced nine emails copied to Olivier Godement's Gmail address. In fact, those all appear to be iterations of one email chain that began on January 17, 2024, to which Mr. Godement appears to have been added on February 19, 2024, and which included both Mr. Godement's OpenAI email address and his Gmail address. In those emails, Mr. Godement participates in the email chain from his OpenAI email address, not his Gmail

App. 201

WACHTELL, LIPTON, ROSEN & KATZ

Scott A. Eisman
March 10, 2026
Page 5

address.  There is no indication that Mr. Godement was sending or receiving emails from his Gmail account that were not duplicative of his OpenAI emails.



\*     \*     \*

   While we believe this response resolves the issues that you have raised, we will be prepared to discuss your letter further during our scheduled meet and confer later today.

       Sincerely,

       Andrew J.H. Cheung