**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

|  |  |
|---|---|
| X CORP. and X.AI LLC,<br><br>    Plaintiffs,<br><br>    v.<br><br>APPLE INC.; OPENAI, INC.; OPENAI,<br>L.L.C.; and OPENAI OPCO, LLC,<br><br>    Defendants. | **Civil Action No. 4:25-cv-00914-P** |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR
MOTION TO COMPEL DISCOVERY FROM APPLE**

**PRELIMINARY STATEMENT**

As Plaintiffs demonstrated in their Motion, Apple has withheld numerous categories of responsive information and refused to search the files of custodians who Apple's own productions show have unique and relevant information.[1] Unable to claim otherwise, Apple tries to evade its discovery obligations by distorting this Court's statement that "Plaintiffs' claims that they were unlawfully excluded from the integration set the boundaries for discovery in this case." Dkt. No. 139 at 5. But that statement from this Court's ruling on a narrow question of whether OpenAI had to produce source code not at issue in the present dispute does not—as Apple claims—limit discovery with respect to the matters relevant here, such as Plaintiffs' monopolization claims or OpenAI's defenses. None of Apple's arguments provide any basis to excuse it from producing the information Plaintiffs seek.

First, Apple contends that it need not produce the unredacted Apple-Google Agreement because that Agreement is unrelated to Plaintiffs' claims. But because OpenAI is relying "on the Apple-Google Agreement" to "defend against" Plaintiffs' claims, Dkt. No. 194-2, at App. 26, Plaintiffs need the Agreement and documents about it. Moreover, any concern about the sensitivity of the Agreement can easily be solved by designating the Agreement "Outside Counsels' Eyes Only."

Second, Apple argues that it need not designate a smartphone custodian because Plaintiffs' claims are purportedly not based on competition in the smartphone market. Yet Plaintiffs assert claims that Apple monopolized, attempted to monopolize, or conspired to monopolize the smartphone market. Apple's internal documents about competition in that market are squarely relevant to Plaintiffs' claims. In claiming that it is too late in the discovery process

---

[1] Capitalized terms have the meaning given to them in Plaintiffs' opening brief, Dkt. No. 194-1 ("Motion" or "Mot."). Apple's opposition, Dkt. No. 251-1, is referred to as "Opposition" or "Opp." "App'x Tab__" refers to the tab in the accompanying Appendix.

to add a smartphone custodian, Apple overlooks its own (false, it turns out) representation that the custodians it proposed were "more than sufficient" to cover *all* of Plaintiffs' claims. Dkt. No. 194-2 at App. 341. Plaintiffs had no reason to question that representation until they reviewed document productions that contain virtually no documents relating to smartphone competition.

Third, Apple claims that it need not add Messrs. Cook and Federighi as custodians because they were involved only at a high level in the conduct at issue, but ignores documents showing their intimate involvement in that conduct. Both individuals attended meetings and probed various aspects of the Apple-OpenAI Agreement in the lead-up to its signing and remained involved in implementing the Apple-ChatGPT Integration. While Apple stresses that other executives were equally or more involved, case law—which Apple ignores—is clear that key decisionmakers like Messrs. Cook and Federighi are proper custodians even if other employees were also involved. Besides, if Messrs. Cook and Federighi were as uninvolved as Apple claims, adding them as custodians will be no burden at all because they will have few documents that are not duplicative of materials in the files of other custodians. Apple could de-dupe the documents in the files of Messrs. Cook and Federighi against those in the files of other custodians to ensure it never needs to review—much less produce—duplicative materials.

Fourth, Apple says it will produce Weekly Integration Reports through the close of discovery only if Plaintiffs produce unrelated documents they have withheld on responsiveness and proportionality grounds, but ignores that the Weekly Integration Reports are relevant and easy to produce. Apple cannot hold these responsive documents hostage until Plaintiffs agree to produce documents that they believe in good faith they need not produce.

Finally, Apple claims it mooted the Motion as to AI policies by producing several such policies, but ignores that these policies reference other AI policies that Apple has not produced.

2

Apple also argues that producing documents about its AI policies would be disproportionate, even though such documents may well explain the rationales behind Apple's policies, ██████ ███████████████████████████████████████████████████ ██████—a rationale that would support Plaintiffs' allegations that Apple's public claims that it partnered with ChatGPT because of its safety and privacy record were false and pretextual.

**ARGUMENT**

### I.    Apple Should Produce The Full Apple-Google Agreement And Related Documents

Apple's redactions of the Apple-Google Agreement are improper: courts forbid parties from redacting documents for relevance absent agreement or court order, and redaction is especially inappropriate when it obscures provisions of a contract that are at issue, since contractual terms must be interpreted in light of the entire agreement. Mot. 10-11. Apple's withholding of documents about the Agreement is also improper, since those documents will shed light on the Agreement's meaning. Mot. 12. Plaintiffs offered to forgo their requests for discovery about the Apple-Google Agreement if Defendants agreed not to rely on that Agreement in this case. Mot. 10. OpenAI responded by saying that it intends to rely on that Agreement to defend against Plaintiffs' claims. *Id.* As a result of OpenAI's position, Plaintiffs need the full Apple-Google Agreement and related documents.

Unable to dispute that the Apple-Google Agreement is relevant, Apple claims that the unredacted Apple-Google Agreement is outside the "boundaries for discovery" based on a statement this Court made in denying Plaintiffs' motion to compel OpenAI to produce source code. Opp. 7 (quoting Dkt. No. 139 at 5). But that ruling did not, as Apple suggests, block discovery into Plaintiffs' claims or Defendants' defenses. To the contrary, when Apple made the same argument that discovery is limited in resisting Plaintiffs' request to enlarge the deposition limit, Judge Pittman rejected it. As Judge Pittman explained, enlarging the deposition limit was

"proportional to the needs in this case" because of "the complexity of this antitrust litigation, the billions of dollars at stake, and the public interest in these issues." Dkt. No. 253 at 1.

Apple also cannot redact the Apple-Google Agreement based on its argument that the Agreement "has nothing to do with" Plaintiffs' affirmative claims. Opp. 8. That much is apparent on the face of Rule 26 itself, which makes plain that Plaintiffs are entitled to discovery not just about their affirmative claims but also about "any party's . . . defense." Fed. R. Civ. P. 26(b)(1). This includes OpenAI's defense based on the Apple-Google Agreement, which Plaintiffs intend to rebut by relying on the Agreement itself. Mot. 10.

Nor can Apple justify its redactions of the Apple-Google Agreement by claiming they concern topics that Apple deems irrelevant, such as ████████████████████ ████████████████████████████████████████████ ██████████████████████████ or that the Agreement is confidential. Opp. 9. The only way to understand what the Agreement means is to interpret it "as a whole," with its provisions construed "in context." *W. Pueblo Partners, LLC v. Stone Brewing Co.*, 307 Cal. Rptr. 3d 626, 631 (Cal. App. Ct. 2023). Apple's vague, self-serving descriptions of the terms it unilaterally redacted are no substitute for the contractual language. Indeed, by blocking access to that language, Apple's redactions have already hampered Plaintiffs' ability to test OpenAI's defense: OpenAI has said that it cannot answer Plaintiffs' requests for admission about the terms of the Apple-Google Agreement, in part because OpenAI "do[es] not possess a full, complete, and unredacted copy of [that] Agreement." App'x Tab 1, at App. 9-10. And if Apple has concerns about the Apple-Google Agreement's sensitivity, it can designate the Agreement as "Outside Counsels' Eyes Only"—just as all parties have done when producing sensitive materials.

Apple's basis for withholding documents about the Apple-Google Agreement is even thinner. Beyond parroting the same flawed argument that Plaintiffs are not entitled to documents that are "outside the scope of [Plaintiffs'] *claims*" while ignoring that the materials are relevant to a *defense* OpenAI intends to advance, Opp. 10 (emphasis added), Apple also tries to hide behind the parties' default timeframe (despite selectively producing a document from April 2026 that Apple apparently believes to be helpful to its case). According to Apple, it has withheld responsive documents because they were "beyond the date-range limits the parties agreed would govern this case." *Id.* Yet Apple ignores that the parties agreed to modify the default timeframe when, as here, documents relevant to a key defense postdate that timeframe. Mot. 13. Apple cannot use the default period to withhold materials central to its co-defendant's defense.

**II.     Apple Should Produce Documents From At Least One Smartphone Custodian**

Despite assuring Plaintiffs that the custodians Apple proposed—all of whom were included in the parties' agreed-upon set of Apple custodians—were "more than sufficient to provide materials responsive to Plaintiffs' alleged claims," Dkt. No. 194-2, at App. 341, Apple produced virtually no documents on smartphone competition. Mot. 14. Apple nevertheless insists that it need not add a custodian with responsive documents. None of Apple's arguments provides any basis to relieve it of its basic discovery obligations.

First, Apple again invokes this Court's statement about the purportedly limited scope of discovery to falsely claim that there is no need for it to search the files of a smartphone custodian. Opp. 10; *see supra* pp. 1, 3-4. But contrary to Apple's characterizations, Plaintiffs assert claims that Apple monopolized, attempted to monopolize, and conspired to monopolize the smartphone market. Compl. ¶¶ 192-206, 223-233, 247-250. Apple tried—and failed—to dismiss these claims at the pleading stage, Dkt. Nos. 37, 68, and Plaintiffs are entitled to discovery about them, Fed. R. Civ. P. 26(b)(1). Indeed, documents about smartphone competition

are relevant, as courts have recognized, in analyzing internal documents about market dynamics when assessing whether that defendant unlawfully monopolized a market. *See, e.g.*, *United States v. Google LLC*, 747 F. Supp. 3d 1, 57 (D.D.C. 2024) (citing internal studies "comparing Google to [its] rivals," as well as Google's "side-by-side experiments with other search engines"); *Epic Games, Inc. v. Apple Inc.*, 559 F. Supp. 3d 898, 988 (N.D. Cal. 2021) (relying on "Apple's internal business records"), *aff'd in part, rev'd in part*, 67 F.4th 946 (9th Cir. 2023).

Second, Apple tries to flip its burden to produce relevant information by faulting Plaintiffs for not "identify[ing] any concrete gap" in the iPhone sales and revenue data it has produced. Opp. 12. But Plaintiffs cannot possibly know which internal documents Apple has failed to produce. They know only what they demonstrated in their Motion and what Apple has not disputed: that Apple has *not* produced internal documents (1) "regarding competition in Smartphones"; (2) "analyzing, evaluating or documenting why iPhone customers switch to other Smartphones and vice versa"; and (3) about "Apple's competitive assessments of Super Apps." Mot. 14 (quoting Dkt. No. 194-2, at App. 195). And based on documents Apple has produced in other cases, it is highly likely that such internal documents exist. *See, e.g.*, App'x Tab 2, at App. 14-19 (analyzing whether iPhone customers consider switching to other brands); App'x Tab 3, at App. 22-23 (analyzing "[c]ompetition" between Apple and Android app stores).

Third, Apple says that Plaintiffs should have to accept "go-gets" because a new custodial search would be "unduly burdensome at this stage." Opp. 12. Yet Apple ignores that the reason a new search is required now is that Plaintiffs relied months ago on Apple's representation that its proposed custodians would cover smartphone competition. Mot. 5. Thus, unlike in Apple's cited case, where the party seeking to add custodians made a "strategic decision to forgo requesting [those] custodians" until the court resolved a separate discovery motion, *Dexon Comput., Inc. v.*

*Cisco Sys., Inc.*, No. 5:22-cv-53, 2023 WL 9648853, at *2 (E.D. Tex. May 31, 2023), Plaintiffs here relied in good faith on a representation from opposing counsel that turned out to not to be true and pressed for a custodian as soon as they identified a deficiency in Apple's productions. Apple should not be allowed to benefit from its failure to identify a proper custodian—especially when it affirmatively represented that its proposed custodians were "more than sufficient to provide materials responsive to Plaintiffs' alleged claims." Dkt. No. 194-2 at App. 341.

**III.    Apple Should Search Tim Cook's And Craig Federighi's Custodial Files**

Apple does not deny that Tim Cook and Craig Federighi were involved in negotiating the Apple-OpenAI Agreement and implementing the Apple-ChatGPT Integration. *See* Mot. 15-18. Instead, and even though Plaintiffs and OpenAI have each searched the files of their CEOs, Elon Musk and Sam Altman, for purposes of document discovery, Apple contends that its CEO, Tim Cook, and a more junior executive, Craig Federighi, had only "high-level" involvement in the underlying dispute and that searching their custodial files implicates apex issues. Opp. 2-3, 15, 17-18. Apple is wrong on both the facts and the law.

On the facts, Apple ignores or downplays documents showing that Messrs. Cook and Federighi were intimately involved in the conduct at issue. For instance:

- Apple notes that an email showing that Adrian Perica, ██████████████ ██████████████ was in "████████████████" with Mr. Federighi and ██████ Dkt. No. 194-2, at App. 239, "predates the Apple-OpenAI Agreement" by a year, Opp. 15. But Apple never explains why ████████████████████████ ████████ in the lead-up to the signing of a major deal is irrelevant.

- Apple takes issue with a Slack message suggesting that ████████████ ███████████████████████████████████████, citing a message showing that ████████████████████████ Opp. 15 (quoting Dkt. No. 194-2, at App. 416). Either way, ████████ ████████████████████████████████████████████████

- Apple tries to minimize a message stating that Mr. Federighi was ████████ ████████████████████████████ in May 2025, Dkt. No. 194-2 at App. 428, noting

that the Apple-OpenAI Agreement was signed ███████████ prior. Opp. 17. Yet this case concerns the implementation of the ChatGPT integration, which did not launch until December 2024 and which Defendants ████████ ████████████████ *See* Dkt. No. 194-2, at App. 414-16. This case also concerns Grok's exclusion from Apple Intelligence, and Smokey Fontaine, the former Editor-in-Chief of Apple's App Store, █████████████████ ████████████████████████ App'x Tab 4, at App. 27-28.

- Apple ignores that Mr. Federighi ██████ ███████████████████████████ ███████████ just weeks before it was signed. Dkt. No. 194-2 at App. 403. ████████████████████ ███████████ Opp. 15, Apple never explains why █████████ ██████ reflects only high-level involvement.

On the law, Apple is wrong that it need not add custodians unless Plaintiffs can show gaps in Apple's productions. Opp. 18. Plaintiffs need only show that Messrs. Cook and Federighi were "key decision-maker[s]" about the conduct at issue, *Entergy Gulf States La. L.L.C. v. La., Generating, L.L.C.*, 2021 WL 24686, at *8 (M.D. La. Jan. 4, 2021); *see* Mot. 15-16, a showing they have made, Mot. 16-18. Requiring them to show that these individuals have information that other custodians do not have is impossible, since Plaintiffs lack access to Mr. Cook's and Mr. Federighi's custodial files. Mot. 18. And it is not the standard that Apple's own cited case requires: there, after *rejecting* the argument Apple advances that the apex doctrine applies to document discovery, Opp. 2, 17-18, the court refused to add DoorDash's CEO as a custodian because DoorDash had already produced 500 of his emails, which showed his lack of involvement. *See City of Chicago v. DoorDash, Inc.*, 2024 WL 4119165, at *5 (N.D. Ill. Sept. 9, 2024) (CEO forwarded communications "without commentary or [with] brief non-substantive messages"); *see also Enslin v. Coca-Cola Co.*, 2016 WL 7042206, at *3 (E.D. Pa. June 8, 2016) (plaintiff "offer[ed] [no] suggestion of what responsive information a search of [additional

custodians'] ESI would uncover"), *cited in* Opp. 18. Here, by contrast, the documents show that Messrs. Cook and Federighi were involved in key decisions and that their custodial documents likely were not captured in full by Apple's productions.

If Apple is right that Messrs. Cook and Federighi are "unlikely to have additional non-duplicative documents," the burden of searching their files will be minimal because "very few (if any) additional non-duplicative documents will need to be reviewed and produced." *Entergy*, 2021 WL 24686, at *8. Put differently, if their involvement is as limited as Apple says (despite strong evidence to the contrary), adding these individuals as custodians "will not lead to disproportionate costs or burdens imposed on [Apple]." *Id.* Apple does not claim otherwise.

**IV.    Apple Should Produce Weekly Integration Reports Through July 31, 2026**

Apple has produced reports detailing the status of the integration with OpenAI through December 31, 2025, but refused to do more. Apple does not deny that the Weekly Integration Reports, including those that postdate the parties' default timeframe, are relevant and responsive. Mot. 18. Nor does Apple deny that Rule 26(e) requires parties to supplement discovery. Mot. 19. Apple's only basis for withholding reports from January 1, 2026 through the close of discovery is that Plaintiffs, citing the default timeframe, have withheld discovery on *different topics* based on responsiveness and proportionality objections.[2] Opp. 19. But the parties' agreement to a default timeframe acknowledged that, for specific requests, the timeframe would be modified. Mot. 13. The point of allowing modifications was so that the parties could seek responsive information from outside the default period. It was not to enable one party to hold hostage undisputedly responsive information—which can be easily gathered without custodial searches—unless

---

[2] Apple's contention that it never committed to producing the reports through the close of discovery and "promptly clarified its position" after Plaintiffs' memorialized it, Opp. 19 n.4, is false. After Plaintiffs memorialized their understanding of the parties' agreement on February 23, 2026, Apple said nothing until March 17—nearly a month later. Mot. 7.

another party withdraws good-faith objections to producing unrelated materials. Such gamesmanship is inconsistent with discovery in this Court. *See* Dkt. No. 166 at 10.

## V.   **Apple Should Produce Documents About Its GenAI Chatbot Policies**

After Plaintiffs demanded for months that Apple produce policies related to its employees' generative AI chatbot usage, Apple finally produced a single, generalized AI policy on the eve of Plaintiffs' Motion. Mot. 22-23. After Plaintiffs filed their Motion, Apple produced additional policies. Opp. 19. These eleventh-hour productions do not moot the parties' dispute.

For starters, Apple's own productions belie its claims that it has "fully satisf[ied] Plaintiffs' request for Apple's policies regarding its employees' use of generative-AI tools." *Id.* For instance, one of the policies Apple produced ████████████████████ ████████████████████ App'x Tab 5, at App. 31. Plaintiffs should not have to continue chasing Apple for policies each time they learn of a new one. *See Journet v. Vehicle VIN No. 1GRAA06283T500670*, 2006 WL 1663708, at *11 (S.D. Tex. June 15, 2006) ("Discovery is not a game of blind man's bluff." (quotation marks omitted)).

Apple is also wrong in characterizing as "vastly overbroad" Plaintiffs' request for documents relating to Apple's AI-use policies, which Apple says "do not bear on how Apple structured or implemented the Apple-OpenAI Agreement, nor on whether that agreement allegedly excluded Plaintiffs." Opp. 19-20. To the contrary, such documents bear directly on an aspect of the integration ████████████████████ ████████████████ such documents are relevant to showing that Apple's safety- and privacy-based justifications for integrating with (and promoting) ChatGPT and only ChatGPT are false and pretextual, as Plaintiffs have alleged. *See* Compl. ¶¶ 9, 99, 102.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' Motion.

Dated:  May 8, 2026

Respectfully submitted,

*/s/ Bradley Justus*

Bradley Justus
N.D. Tex. Bar No. 1007988DC
DC Bar No. 1007988
AXINN, VELTROP & HARKRIDER LLP
1901 L Street NW
Washington, DC 20036
T: (202) 912-4700
F: (202) 912-4701
bjustus@axinn.com

Charles W. Fillmore
Texas Bar No. 00785861
BROWN PRUITT WAMBSGANSS
DEAN FORMAN & MOORE, P.C.
201 Main Street, Suite 700
Fort Worth, TX 76102
T: (817) 338-4888
cfillmore@brownpruitt.com

*admitted *pro hac vice*

*/s/ Scott A. Eisman*

Craig M. Reiser
N.D. Tex. Bar No. 4886735NY
NY State Bar No. 4886735
Scott A. Eisman
N.D. Tex. Bar No. 4905287NY
NY State Bar No. 4905287
Eva Yung*
NY State Bar No. 5497300
Christopher Erickson
N.D. Tex. Bar No. 5800628NY
NY State Bar No. 5800628
AXINN, VELTROP & HARKRIDER LLP
630 Fifth Avenue, 33rd Floor
New York, NY 10111
T: (212) 728-2200
F: (212) 728-2201
creiser@axinn.com
seisman@axinn.com
eyung@axinn.com
cerickson@axinn.com

*/s/ Judd E. Stone*

Judd E. Stone II
Texas Bar No. 24076720
Christopher D. Hilton
Texas Bar No. 24087727
STONE | HILTON PLLC
600 Congress Ave., Ste. 2350
Austin, TX 78701
T: (737) 465-3897
judd@stonehilton.com
chris@stonehilton.com

Noah Schottenstein
Texas Bar No. 24100661
STONE | HILTON PLLC
301 Commerce St., Suite 2360
Fort Worth, TX 76102
T: (737) 465-3897
noah@stonehilton.com

*Attorneys for Plaintiffs X Corp. and
X.AI LLC*

11

**CERTIFICATE OF SERVICE**

I certify that on May 8, 2026, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF system for filing. A notice of electronic filing was transmitted to all ECF registrants of record.

/s/ Scott A. Eisman
Scott A. Eisman