



SUPREME COURT OF
SINGAPORE
LEGAL REGISTRY

Our Ref: TEA 5/2026/AG, TEA 6/2026/WY,
TEA 7/2026/WY, TEA 8/2026/WY

05 May 2026

The Honorable Mark T. Pittman                      [By Registered Post]
United States District Judge
Northern District of Texas, Fort Worth Division
501 West 10th Street, Room 401Fort Worth, Texas 76102-3673
United States of America

**REQUESTS PURSUANT TO THE HAGUE CONVENTION OF 18 MARCH 1970 ON THE TAKING OF EVIDENCE ABROAD IN CIVIL OR COMMERCIAL MATTERS, FOR INTERNATIONAL JUDICIAL ASSISTANCE IN OBTAINING EVIDENCE FROM GRAB HOLDINGS INC., WECHAT PTE. LTD., GOJEK SINGAPORE PTE. LTD., AND GRABTAXI HOLDINGS PTE. LTD.**

Case No.: 4:25-cv-00914-P

        We refer to the above-captioned matter and the four Letters of Request (the "**Requests**") from the United States District Court for the Northern District of Texas, Fort Worth Division (the "**Foreign Court**") which we received and forwarded to the Attorney-General's Chambers of Singapore ("**AGC**") pursuant to Order 55, Rule 3(*b*) of the Rules of Court 2021 ("**ROC**").

2.         In the four Requests, the Foreign Court has requested the production of documents by the following entities pursuant to the Hague Convention of 18 March1970 on the Taking of Evidence Abroad in Civil or Commercial Matters (the "**HagueConvention**"):

        (a)      GrabTaxi Holdings Pte. Ltd. ("**GrabTaxi Request**") (Our ref: TEA 5/2026/AG);

        (b)      Gojek Singapore Pte. Ltd. ("**Gojek Request**") (Our ref: TEA 6/2026/WY);

        (c)      Grab Holdings Inc. ("**Grab Holdings Request**") (Our ref: TEA 7/2026/WY); and

        (d)      WeChat Pte. Ltd. ("**WeChat Request**") (Our ref: TEA 8/2026/WY).

3.         In the four Requests, AGC understands that the Foreign Court granted the Requests on separate occasions between December 2025 and January 2026:

        (a)      GrabTaxi Request: Granted by the Foreign Court on 15 January 2026.

        (b)      Gojek Request: Granted by the Foreign Court on 29 December 2025.

        (c)      Grab Holdings Request: Granted by the Foreign Court on 29 December 2025.

        (d)      WeChat Request: Granted by the Foreign Court on 29 December 2025.

4.        Although the Requests were sent separately, they were all initiated by the same Plaintiffs, X. Corp and X.AI LLC ("**Plaintiffs**"), in the same set of proceedings, Case 4:25-cv-00914-P (the "**Proceedings**"), where the Plaintiffs allege that the Defendants have committed antitrust violations under the Sherman Act. In the Proceedings, the Plaintiffs have also claimed for civil conspiracy, unfair competition, and violations of the Texas Free Enterprise & Antitrust Act. All four Requests seek similarly broad disclosures of nine categories of documents from each of the entities named.

5.        In summary, AGC is unable to accede to all four Requests as they do not comply with one or more of the following:

(a)    Article 1 of the Hague Convention;
(b)    Article 3(c) of the Hague Convention;
(c)    Article 3(e) of the Hague Convention; and
(d)    Article 23 of the Hague Convention.

6.        AGC's views with respect to each Request have been summarised in **Annex A** below and enclosed at **Annexes B**, **C**, **D** and **E**.

7.        AGC wishes to draw to the Foreign Court's attention the wide-ranging nature of these Requests targeted at two named entities which do not actually exist in Singapore (as far as their research shows) and an entity that does not have the business address specified in the relevant Request. All of the Requests arise from the same Proceedings and seek broad disclosure of the same categories of materials, albeit directed at different allegedly Singapore-based entities. In the circumstances, AGC consider that the Requests appear to form part of a fishing expedition, which is impermissible under the Hague Convention.[1]

Yours faithfully,

MS KAREN TAN
ASSISTANT REGISTRAR
SUPREME COURT, SINGAPORE

Encl

Cc      The Honourable the Attorney General
        Attorney-General's Chambers
        1 Upper Pickering Street
        Singapore 058288
        (Ref No.: AG/CIV/DM/SUPC/2026/5, AG/CIV/DM/SUPC/2026/6)
        Attn: Satviender Kaur Nijer / Karin Tan (Deputy Senior State Counsel / State Counsel)
        (Ref No.: AG/CIV/DM/SUPC/2026/7)
        Attn: Grace Morgan / Suneeti Sreekumar (Deputy Senior State Counsel / State Counsel)
        (Ref No.: AG/CIV/DM/SUPC/2026/8)
        Attn: Kenneth Chua/Ng Wei (Deputy Senior State Counsel / State Counsel)

        Ministry of Law
        100 High Street
        #08-02, Singapore 179434
        Attn: Luqman Hakim

---

[1] Hague Conference on Private International Law, *Practical Handbook on the Operation of the Evidence Convention* (2020) at para 65.

Your Ref: LAW 62/004 2026-SOFD-062

**ANNEX A: TABLE SETTING OUT AGC'S POSITION ON THE FOUR REQUESTS' NON-COMPLIANCE WITH THE HAGUE CONVENTION**

| Request (4:25-cv-00914-P) | AGC's position on the Request's non-compliance with: | | | |
|---|---|---|---|---|
| | **Article 1 of the Hague Convention**<br>Provides that the request must pertain to "civil or commercial matters" | **Article 3(c) of the Hague Convention**<br>Provides that the request must specify "*the nature of the proceedings for which the evidence is required, giving all necessary information in regard thereto*". | **Article 3(e) of the Hague Convention**<br>Provides that the request must specify "*the name and addresses of the persons to be examined*". | **Articles 23 of the Hague Convention**<br>Provides that "*[a] Contracting State may...declare that it will not execute Letters of Request issued for the purposes of obtaining a pre-trial discovery of documents*". |
| Gojek Singapore Pte. Ltd.<br><br>(TEA 6/2026/WY)<br><br>(Please see **Annex B**) | The Requests do not comply with Article 1 of the Hague Convention.<br><br>The Requests, which pertain to violations under the sections 1 and 2 of the Sherman Act, which appear to be criminal provisions as they deem persons who infringe the respective provisions "*guilty of a felony*" and subject to criminal penalties.<br><br>Similar concerns also arise in relation to the Plaintiff's claims for civil conspiracy, unfair competition, and violations of the Texas Free Enterprise & Antitrust Act. | The Requests do not comply with Article 3(c) of the Hague Convention.<br><br>While the Requests provide a summary of the parties' claims in the Proceedings, there is insufficient information on the significance of the Relevant Period (which has been defined as "*June 10, 2022, to present*") for which the documents are sought. | This Request does not comply with Article 3(e) of the Hague Convention.<br><br>There does not appear to be any business record for Gojek Singapore Pte. Ltd. | The Requests do not comply with Article 23 of the Hague Convention.<br><br>Singapore has made a declaration under Article 23 of the Hague Convention that it will not execute Letters of Requests issued for the purposes of obtaining pre-trial discovery of documents. Pursuant to s 4(4) of the Evidence (Civil Proceedings in Other Jurisdictions) Act 1979, these include letters of request "*which requires a person...(b) to produce any documents other than <u>particular documents</u> specified in the Letter of Request as being documents appearing to the requested court to be, or to be likely to be, in his possession, custody or power*"<br><br>"*[P]articular documents*" have been interpreted to mean (a) individual documents separately described (as opposed to a class of documents); and (b) actual documents which are shown by evidence to exist or have existed (as opposed to conjectural documents).[2]<br><br>The documents requested by the Foreign Court are broad categories of documents, and it is not clear if such documents are in the custody or possession of the entities named in the Requests. Therefore, the Requests cannot be acceded to. |
| Grab Holdings Inc.<br><br>(TEA 7/2026/WY)<br><br>(Please see **Annex C**) | | | This Request does not comply with Article 3(e) of the Hague Convention.<br><br>There does not appear to be any business record for Grab Holdings Inc. | |
| WeChat Pte. Ltd.<br><br>(TEA 8/2026/WY)<br><br>(Please see **Annex D**) | | | This Request complies with Article 3(e) of the Hague Convention. | |
| GrabTaxi Holdings Pte. Ltd.<br><br>(TEA 5/2026/AG)<br><br>(Please see **Annex E**) | | | This Request does not comply with Article 3(e) of the Hague Convention.<br><br>The address provided in the Request does not appear consistent with the business records of GrabTaxi Holdings Pte. Ltd. | |

2 *In Re Asbestos Insurance Coverage Cases* [1985] 1 WLR 331 at 337–338, interpreting s 2(4)(b) of the Evidence (Procedure in Other Jurisdictions) Act 1975 (UK), which was passed in order to give effect to the United Kingdom's reservation in respect of Article 23 of the Hague Convention, which is materially similar to Singapore's declaration in respect of the same Article.

# ANNEX B



SUPREME COURT OF
SINGAPORE
LEGAL REGISTRY

Our Ref: TEA 6/2026/WY

**REQUEST PURSUANT TO THE HAGUE CONVENTION OF 18 MARCH 1970 ON THE TAKING OF EVIDENCE ABROAD IN CIVIL OR COMMERCIAL MATTERS, FOR INTERNATIONAL JUDICIAL ASSISTANCE IN OBTAINING EVIDENCE FROM GOJEK SINGAPORE**

Case No.: 4:25-cv-00914-P

We refer to the letter of request dated 26 December 2025 ("**Request**") from the United States District Court for the Northern District of Texas, Fort Worth Division ("**Foreign Court**") which we received on 16 March 2026 and forwarded to the Attorney-General's Chambers of Singapore ("**AGC**") on 6 April 2026 pursuant to Order 55, Rule 3(*b*) of the Rules of Court 2021.

2.    In the Request, the Foreign Court has requested that Gojek Singapore Pte. Ltd. ("**Gojek**") produce certain documents for the purposes of a proceeding assigned the case number 4:25-cv-00914-P pending before the Foreign Court (the "**Proceedings**"). The Request is made pursuant to the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters (the "**Hague Convention**").

3.    The brief facts of the Proceedings are as follows:

(a)    *Plaintiff:* X Corp. and X.AI LLC

(b)    *Defendants:* Apple Inc. ("**Apple**"), OpenAI Foundation, OpenAI, L.L.C., OpenAI Opco, L.L.C. (collectively, "**OpenAI**")

(c)    *Nature of Proceedings:* The Proceedings involve alleged antitrust violations under the Sherman Act (including an agreement in restraint of trade and monopolization, attempted monopolization and conspiracy to monopolize the markets for generative artificial intelligence ("**AI**") chatbots and smartphones), and claims for civil conspiracy, unfair competition, and violations of the Texas Free Enterprise & Antitrust Act by Apple and OpenAI.

The Plaintiffs allege that the Defendants foreclose competition in the markets for smartphones and generative AI chatbots by: (a) entering into an exclusive agreement through which OpenAI's generative AI chatbot, ChatGPT, is the only generative AI chatbot that is natively integrated into the iPhone and other Apple products; and (b) limiting discoverability of OpenAI's rivals and promoting ChatGPT in Apple's featured "Must-Have Apps" list, over which Apple exercises editorial control.

The Plaintiffs also allege that Apple's conduct illegally restrains competition from "super apps", such as the Gojek application ("**Gojek App**"), which allow customers to switch away from the iPhone.

The Defendants' defence is that the Plaintiffs failed to allege both the express agreement and substantial foreclosure in the markets for smartphones and generative AI chatbots. The Defendants also assert that the Plaintiffs lack standing as the Plaintiffs' applications

do not compete with smartphones such as the iPhone and therefore cannot be harmed by the exclusive agreement between Apple and OpenAI.

(d) *Evidence required from Gojek:* Exhibit A to the Request sets out a list of nine categories of documents to be produced by Gojek. Five categories refer to documents *"sufficient to show"* all the functions of and the global operations of the Gojek App. Two categories refer to documents concerning the performance of the Gojek App on the Apple App Store and as impacted by restrictions imposed by Apple. The remaining two categories refer to documents regarding the significance of the various channels of selling and distributing super apps and the impact of super apps in general.

(e) *Purpose of evidence sought:* To *"elicit information relevant to Plaintiffs' case, particularly with respect to the emergence of super apps – including Gojek Singapore's well-known app – and the competitive threat that super apps pose to smartphones such as the iPhone"*.[1]

4.      Please be informed that AGC is unable to accede to the Request as the Request does not comply with Articles 1 and 3(c), 3(e) of the Hague Convention and is contrary to Singapore's declaration made under Article 23 of the Hague Convention.

Non-compliance with Article 1 of the Hague Convention

5.      The Request does not comply with Article 1 of the Hague Convention which provides that the Request must pertain to *"civil or commercial matters"*. While the Request relates to Proceedings described as civil proceedings,[2] the Plaintiffs are asserting claims for antitrust violations under the Sherman Act, including that the Defendants had entered into an agreement in restraint of trade in violation of section 1 of the said Act and that the Defendants have monopolized, attempted to monopolize or conspired to monopolize the markets for generative AI chatbots and smartphones under section 2 of the said Act. Both sections 1 and 2 of the Sherman Act appear to be criminal provisions, each deeming any person who infringes the respective provision *"guilty of a felony"* and subject to criminal penalties.

6.      Similar concerns also appear to arise in relation to the Plaintiffs' claims for civil conspiracy, unfair competition, and violations of the Texas Free Enterprise & Antitrust Act.

7.      Since the substantive nature of the underlying proceedings for which the evidence is being requested cannot be considered to be *"civil or commercial matters"*, the Request falls outside the scope of the Hague Convention and AGC is therefore unable to execute the Request.

Non-compliance with Article 3(c) of the Hague Convention

8.      Furthermore, the Request does not comply with Article 3(c) of the Hague Convention which provides that the Request must specify *"the nature of the proceedings for which the evidence is required, giving all necessary information in regard thereto"*. While the Request has provided a summary of the parties' claims in the Proceedings, insufficient information has been provided on the significance of the Relevant Period (which has been defined as *"June 10, 2022 to present"*) for which the documents are sought.

Non-compliance with Article 3(e) of the Hague Convention

9.      The Request also does not comply with Article 3(e) of the Hague Convention which provides that the Request must specify *"the name and addresses of the persons to be examined"*.

---

[1] See paragraph 8(b) of the Request.
[2] See page 6 of 52 of Document 111 in Case 4:25-cv-00914-P, filed on 26 December 2025. The first paragraph makes reference to "a civil proceeding in the above-captioned litigation".

10.     While the Request states the identity of the person to be examined as *"Gojek Singapore Pte. Ltd."*,[3] this appears to be erroneous. First, based on a search of the Accounting and Corporate Regulatory Authority BizFile portal ("**Portal**"), there is no entity named *"Gojek Singapore Pte. Ltd."* that is registered in Singapore (see Annex 1). Second, although a search of the Portal revealed one entity named "Gojek" (see Annex 2), the associated address of "Gojek" in the search result does not match the address of *"Gojek Singapore Pte. Ltd."* stated in the Request.[4]

Non-compliance with Article 23 of the Hague Convention

11.     As Singapore has made a declaration under Article 23 of the Hague Convention which provides that *"[a] Contracting State may…declare that it will not execute Letters of Request issued for the purposes of obtaining a pre-trial discovery of documents"*, the Request cannot be executed in Singapore. Singapore also declared that *"Letters of Request issued for the purposes of obtaining a pre-trial discovery of documents"* include any letter of request *"which requires a person…(b) to produce any documents other than particular documents specified in the Letter of Request as being documents appearing to the requested court to be, or to be likely to be, in his possession, custody or power"*.[5] AGC highlights that pursuant to section 4(4) of the Evidence (Civil Proceedings in Other Jurisdictions) Act 1979, such letters of request cannot be executed in Singapore.

12.     *"[P]articular documents"* have been interpreted to mean (a) individual documents separately described (as opposed to a class of documents); and (b) actual documents which are shown by evidence to exist or have existed (as opposed to conjectural documents).[6] In this connection, Exhibit A to the Request does not identify particular documents to be produced and instead describes them in broad terms:

    (a)    The Request is seeking documents pertaining to Gojek's global operations. For example, the Request is seeking documents showing:

        (i)    the usage, downloads, and in-app payments of the Gojek App on smartphones since 10 June 2022, broken down by brand and/or model of smartphone, country of usage and most-used functions. The term *"Smartphones"* has been defined very broadly in the Request as *"a device that has the functionality of a traditional mobile phone (i.e., can make and receive calls via a cellular network) combined with an operating system that mimics the functionality and ease of use of a computer (e.g., browse the internet, watch videos, or check email)"*;

        (ii)    how Gojek earns revenue from the Gojek App worldwide; and

        (iii)    Gojek's efforts to gain U.S.-based users for the Gojek App and any related barriers or constraints. The Request does not explain or elaborate the barriers or constraints it is referring to.

    (b)    Of the nine categories of documents described, five are described in terms of *"Documents sufficient to show"* information pertaining to various aspects of Gojek, Gojek's operations and the Gojek App. Such descriptions fail to separately describe individual documents as the term *"sufficient to"* is vague and imprecise.

    (c)    It is unclear if some of the documents requested are actual documents shown by evidence to exist or have existed, or if they are conjectural documents. Exhibit A contains a

---

[3] See paragraph 9 of the Request.
[4] See paragraph 9 of the Request.
[5] This declaration is codified in section 4(4)(b) of the Evidence (Civil Proceedings in Other Jurisdictions) Act 1979.
[6] In *Re Asbestos Insurance Coverage Cases* [1985] 1 WLR 331 at 337–338, interpreting s 2(4)(b) of the Evidence (Procedure in Other Jurisdictions) Act 1975 (UK), which was passed in order to give effect to the United Kingdom's reservation in respect of Article 23 of the Hague Convention, which is materially similar to Singapore's declaration in respect of the same Article.

segment titled *"INSTRUCTIONS"* which requires Gojek to state in writing if *"there are no Documents or information responsive to all or any portion of any Request"*. No evidence has been provided in the Request that Gojek has or would have the following documents in its *"possession, custody or control"* or that such documents would be available to Gojek or that Gojek may gain access to the said documents through reasonable efforts:

(i)     internal analyses, evaluations, or communications regarding the featuring or ranking of any super app on any Apple App Store List, including but not limited to the financial or competitive impact of such featuring or ranking and any potential or actual deprioritizing or depreferencing of any super app on any Apple App Store List, including but not limited to the financial or competitive impact of such deprioritization or depreferencing;

(ii)    any agreement between Gojek and Apple with respect to featuring or ranking the Gojek App on any Apple App Store List;

(iii)   documents regarding how super apps affect the ability of smartphone customers to switch smartphones

(iv)    documents regarding the financial or strategic significance of selling or distributing super apps through various channels; and

(v)     documents sufficient to show Gojek's plans to incorporate and/or existing incorporation of generative AI technology into the Gojek App.

13.     In any case, given that the Request falls outside the scope of the Convention as is ratified and accepted in Singapore (as explained at [5] – [7] above), the Request cannot be executed in Singapore, even if it complies with Article 3(c) and 3(e)of the Convention.

**Annex 1**



**Annex 2**



# ANNEX C



SUPREME COURT OF
SINGAPORE
LEGAL REGISTRY

Our Ref: TEA 7/2026/WY

**REQUEST PURSUANT TO THE HAGUE CONVENTION OF 18 MARCH 1970 ON THE TAKING OF EVIDENCE ABROAD IN CIVIL OR COMMERCIAL MATTERS, FOR INTERNATIONAL JUDICIAL ASSISTANCE IN OBTAINING EVIDENCE FROM GRAB HOLDINGS INC.**

<u>Case No.: 4:25-cv-00914-P</u>

We refer to the letter of request dated 15 December 2025 ("**Request**") from the United States District Court for the Northern District of Texas, Fort Worth Division ("**Foreign Court**") which we received on 16 March 2026 and forwarded to the Attorney-General's Chambers of Singapore ("**AGC**") on 23 March 2026 pursuant to Order 55, Rule 3(b) of the Rules of Court 2021.

2.  In the Request, the Foreign Court has requested that Grab Holdings Inc. ("**Grab**") produce certain documents for the purposes of a civil matter before it (the "**Proceedings**"). The Request is made pursuant to the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters (the "**Hague Convention**").

3.  The brief facts of the Proceedings are as follows:

    (a)  *Plaintiff:* X Corp. and X.AI LLC

    (b)  *Defendants:* Apple Inc. ("**Apple**"), OpenAI Foundation, OpenAI, L.L.C., OpenAI Opco, L.L.C. (collectively, "**OpenAI**")

    (c)  *Nature of Proceedings:* The Proceedings involve alleged antitrust violations under the Sherman Act (including an agreement in restraint of trade and monopolization, attempted monopolization and conspiracy to monopolize the markets for generative artificial intelligence ("**AI**") chatbots and smartphones), and claims for civil conspiracy, unfair competition, and violations of the Texas Free Enterprise & Antitrust Act by Apple and OpenAI.

    The Plaintiffs allege that the Defendants foreclose competition in the markets for smartphones and generative AI chatbots by: (a) entering into an exclusive agreement through which OpenAI's generative AI chatbot, ChatGPT, is the only generative AI chatbot that is natively integrated into the iPhone and other Apple products; and (b) limiting discoverability of OpenAI's rivals and promoting ChatGPT in Apple's featured "Must-Have Apps" list, over which Apple exercises editorial control.

    The Plaintiffs also allege that Apple's conduct illegally restrains competition from "super apps", such as the Grab application ("**Grab App**"), which allow customers to switch away from the iPhone.

    The Defendants' defence is that the Plaintiffs failed to allege both the express agreement and substantial foreclosure in the markets for smartphones and generative AI chatbots. The Defendants also assert that the Plaintiffs lack standing as the Plaintiffs' applications do not compete with smartphones such as the iPhone and therefore cannot be harmed by the exclusive agreement between Apple and OpenAI.

(d)    *Evidence required from Grab:* Exhibit A to the Request sets out a list of nine categories of documents to be produced by Grab. Five categories refer to documents *"sufficient to show"* the functions of and the global operations of the Grab App. Two categories refer to documents regarding the performance of the Grab App on the Apple App Store and as impacted by restrictions imposed by Apple. The remaining two categories refer to documents regarding the significance of the various channels of selling and distributing super apps and the impact of super apps in general.

(e)    *Purpose of evidence sought:* To *"elicit information relevant to Plaintiffs' case, particularly with respect to the emergence of super apps – including Grab's well-known app – and the competitive threat that super apps pose to smartphones such as the iPhone"*.[1]

4.    Please be informed that AGC is unable to accede to the Request as the Request does not comply with Articles 1 and 3(c), 3(e) of the Hague Convention and is contrary to Singapore's declaration made under Article 23 of the Hague Convention.

<u>Non-compliance with Article 1 of the Hague Convention</u>

5.    The Request does not comply with Article 1 of the Hague Convention which provides that the Request must pertain to *"civil or commercial matters"*. While the Request relates to Proceedings described as civil proceedings,[2] the Plaintiffs are asserting claims for antitrust violations under the Sherman Act, including that the Defendants had entered into an agreement in restraint of trade in violation of section 1 of the said Act and that the Defendants have monopolized, attempted to monopolize or conspired to monopolize the markets for generative AI chatbots and smartphones under section 2 of the said Act. Both sections 1 and 2 of the Sherman Act appear to be criminal provisions, each deeming any person who infringes the respective provision *"guilty of a felony"* and subject to criminal penalties.

6.    Similar concerns also appear to arise in relation to the Plaintiffs' claims for civil conspiracy, unfair competition, and violations of the Texas Free Enterprise & Antitrust Act.

7.    Since the substantive nature of the underlying proceedings for which the evidence is being requested cannot be considered to be *"civil or commercial matters"*, the Request falls outside the scope of the Hague Convention and AGC is therefore unable to execute the Request.

<u>Non-compliance with Article 3(c) of the Hague Convention</u>

8.    Furthermore, the Request does not comply with Article 3(c) of the Hague Convention which provides that the Request must specify *"the nature of the proceedings for which the evidence is required, giving all necessary information in regard thereto"*. While the Request has provided a summary of the parties' claims in the Proceedings, insufficient information has been provided on the significance of the Relevant Period (which has been defined as *"June 10, 2022 to present"*) for which the documents are sought.

<u>Non-compliance with Article 3(e) of the Hague Convention</u>

9.    The Request also does not comply with Article 3(e) of the Hague Convention which provides that the Request must specify *"the name and addresses of the persons to be examined"*.

10.    The Request states the identity of the person to be examined as *"Grab Holdings Inc."*.[3] However, based on a search of the Accounting and Corporate Regulatory Authority BizFile portal (**"Portal"**), there

---

[1] See paragraph 8(b) of the Request.
[2] See page 1 of the request dated 15 December 2025 from the Foreign Court where the case number of the Proceedings is reflected as Civil Action No. 4:25-cv-00914-P and the Proceedings are described as being civil proceedings.
[3] See paragraph 9 of the Request.

is no entity named *"Grab Holdings Inc."* that is registered in Singapore (see **Annex 1**). It appears that the name of the person to be examined has been erroneously stated in the Request. Further, as a search of the Portal revealed over 250 companies registered in Singapore with the word *"Grab"* in the company name (see **Annex 2**), AGC is unable to identify the person to be examined without further information.

Non-compliance with Article 23 of the Hague Convention

11.    As Singapore has made a declaration under Article 23 of the Hague Convention which provides that *"[a] Contracting State may…declare that it will not execute Letters of Request issued for the purposes of obtaining a pre-trial discovery of documents"*, the Request cannot be executed in Singapore. Singapore also declared that *"Letters of Request issued for the purposes of obtaining a pre-trial discovery of documents"* include any letter of request *"which requires a person…(b) to produce any documents other than <u>particular documents</u> specified in the Letter of Request as being documents appearing to the requested court to be, or to be likely to be, in his possession, custody or power"*.[4] AGC highlights that pursuant to section 4(4) of the Evidence (Civil Proceedings in Other Jurisdictions) Act 1979, such letters of request cannot be executed in Singapore.

12.    *"[P]articular documents"* have been interpreted to mean (a) individual documents separately described (as opposed to a class of documents); and (b) actual documents which are shown by evidence to exist or have existed (as opposed to conjectural documents).[5] In this connection, Exhibit A to the Request does not identify particular documents to be produced and instead describes them in broad terms:

(d)    The Request is seeking documents pertaining to Grab's global operations. For example, the Request is seeking documents showing:

(i)    the usage, downloads, and in-app payments of the Grab App on smartphones since 10 June 2022, broken down by brand and/or model of smartphone, country of usage and most-used functions. The term *"Smartphones"* has been defined very broadly in the Request as *"a device that has the functionality of a traditional mobile phone (i.e., can make and receive calls via a cellular network) combined with an operating system that mimics the functionality and ease of use of a computer (e.g., browse the internet, watch videos, or check email)"*;

(ii)   how Grab earns revenue from the Grab App worldwide; and

(iii)  Grab's efforts to gain U.S.-based users for the Grab App and any related barriers or constraints. The Request does not explain or elaborate the barriers or constraints it is referring to.

(e)    Of the nine categories of documents described, five are described in terms of *"Documents sufficient to show"* information pertaining to various aspects of Grab, Grab's operations and the Grab App. Such descriptions fail to separately describe individual documents as the term *"sufficient to"* is vague and imprecise.

(f)    It is unclear if some of the documents requested are actual documents shown by evidence to exist or have existed, or if they are conjectural documents. Exhibit A contains a segment titled *"INSTRUCTIONS"* which requires Grab to state in writing if *"there are no Documents or information responsive to all or any portion of any Request"*. No evidence has been provided in the Request that Grab would have the following documents in its *"possession,*

---

[4] This declaration is codified in section 4(4) of the Evidence (Civil Proceedings in Other Jurisdictions) Act 1979.
[5] *In Re Asbestos Insurance Coverage Cases* [1985] 1 WLR 331 at 337–338, interpreting s 2(4)(b) of the Evidence (Procedure in Other Jurisdictions) Act 1975 (UK), which was passed in order to give effect to the United Kingdom's reservation in respect of Article 23 of the Hague Convention, which is materially similar to Singapore's declaration in respect of the same Article.

*custody or control"* or that such documents would be available to Grab or that Grab may gain access to the said documents through reasonable efforts:

(i)  internal analyses, evaluations, or communications regarding the featuring or ranking of any super app on any Apple App Store List, including but not limited to the financial or competitive impact of such featuring or ranking and any potential or actual deprioritizing or depreferencing of any super app on any Apple App Store List, including but not limited to the financial or competitive impact of such deprioritization or depreferencing;

(ii)  any agreement between Grab and Apple with respect to featuring or ranking the Grab App on any Apple App Store List;

(iii)  documents regarding how super apps affect the ability of smartphone customers to switch smartphones

(iv)  documents regarding the financial or strategic significance of selling or distributing super apps through various channels; and

(v)  documents sufficient to show Grab's plans to incorporate and/or existing incorporation of generative AI technology into the Grab App.

13.    In any case, given that the Request falls outside the scope of the Convention as is ratified and accepted in Singapore (as explained at [5] – [7] above), the Request cannot be executed in Singapore, even if it complies with Article 3(c) and 3(e) of the Convention.

**Annex 1**



**Annex 2**



# ANNEX D



SUPREME COURT OF
SINGAPORE
LEGAL REGISTRY

Our Ref: TEA 8/2026/WY

**REQUEST PURSUANT TO THE HAGUE CONVENTION OF 18 MARCH 1970 ON THE TAKING OF EVIDENCE ABROAD IN CIVIL OR COMMERCIAL MATTERS, FOR INTERNATIONAL JUDICIAL ASSISTANCE IN OBTAINING EVIDENCE FROM WECHAT INTERNATIONAL PTE. LTD.**

Case No.: 4:25-cv-00914-P

We refer to the letter of request dated 15 December 2025 ("**Request**") from the United States District Court for the Northern District of Texas, Fort Worth Division ("**Foreign Court**") which we received on 16 March 2026 and forwarded to the Attorney-General's Chambers of Singapore ("**AGC**") on 23 March 2026 pursuant to Order 55, Rule 3(b) of the Rules of Court 2021.

2.      In the Request, the Foreign Court has requested that WeChat International Pte. Ltd. ("**WeChat**") produce certain documents for the purposes of a civil matter before it (the "**Proceedings**"). The Request is made pursuant to the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters (the "**Hague Convention**").

3.      The brief facts of the Proceedings are as follows:

(a)      *Plaintiff:* X Corp. and X.AI LLC

(b)      *Defendants:* Apple Inc. ("**Apple**"), OpenAI Foundation, OpenAI, L.L.C., OpenAI Opco, L.L.C. (collectively, "**OpenAI**")

(c)      *Nature of Proceedings:* The Proceedings involve alleged antitrust violations under the Sherman Act (including an agreement in restraint of trade and monopolization, attempted monopolization and conspiracy to monopolize the markets for generative artificial intelligence ("**AI**") chatbots and smartphones), and claims for civil conspiracy, unfair competition, and violations of the Texas Free Enterprise & Antitrust Act by Apple and OpenAI.

The Plaintiffs allege that the Defendants foreclose competition in the markets for smartphones and generative AI chatbots by: (a) entering into an exclusive agreement through which OpenAI's generative AI chatbot, ChatGPT, is the only generative AI chatbot that is natively integrated into the iPhone and other Apple products; and (b) limiting discoverability of OpenAI's rivals and promoting ChatGPT in Apple's featured "Must-Have Apps" list, over which Apple exercises editorial control.

The Plaintiffs also allege that Apple's conduct illegally restrains competition from "super apps", such as the WeChat application ("**WeChat App**"), which allow customers to switch away from the iPhone.

The Defendants' defence is that the Plaintiffs failed to allege both the express agreement and substantial foreclosure in the markets for smartphones and generative AI chatbots. The Defendants also assert that the Plaintiffs lack standing as the Plaintiffs' applications do not compete with smartphones such as the iPhone and therefore cannot be harmed by the exclusive agreement between Apple and OpenAI.

(d) *Evidence required from WeChat.* Exhibit A to the Request sets out a list of nine categories of documents to be produced by WeChat. Five categories refer to documents *"sufficient to show"* the functions of and the global operations of the WeChat App. Two categories refer to documents regarding the performance of the WeChat App on the Apple App Store and as impacted by restrictions imposed by Apple. The remaining two categories refer to documents regarding the significance of the various channels of selling and distributing super apps and the impact of super apps in general.

(e) *Purpose of evidence sought.* To *"elicit information relevant to Plaintiffs' case, particularly with respect to the emergence of super apps – including WeChat's well-known app – and the competitive threat that super apps pose to smartphones such as the iPhone"*.[1]

4.    Please be informed that AGC is unable to accede to the Request as the Request does not comply with Articles 1 and 3(c) of the Hague Convention and is contrary to Singapore's declaration made under Article 23 of the Hague Convention.

<u>Non-compliance with Article 1 of the Hague Convention</u>

5.    The Request does not comply with Article 1 of the Hague Convention which provides that the Request must pertain to *"civil or commercial matters"*. While the Request relates to Proceedings described as civil proceedings,[2] the Plaintiffs are asserting claims for antitrust violations under the Sherman Act, including that the Defendants had entered into an agreement in restraint of trade in violation of section 1 of the said Act and that the Defendants have monopolized, attempted to monopolize or conspired to monopolize the markets for generative AI chatbots and smartphones under section 2 of the said Act. Both sections 1 and 2 of the Sherman Act appear to be criminal provisions, each deeming any person who infringes the respective provision *"guilty of a felony"* and subject to criminal penalties.

6.    Similar concerns also appear to arise in relation to the Plaintiffs' claims for civil conspiracy, unfair competition, and violations of the Texas Free Enterprise & Antitrust Act.

7.    Since the substantive nature of the underlying proceedings for which the evidence is being requested cannot be considered to be *"civil or commercial matters"*, the Request falls outside the scope of the Hague Convention and AGC is therefore unable to execute the Request.

<u>Non-compliance with Article 3(c) of the Hague Convention</u>

8.    Furthermore, the Request does not comply with Article 3(c) of the Hague Convention which provides that the Request must specify *"the nature of the proceedings for which the evidence is required, giving all necessary information in regard thereto"*. While the Request has provided a summary of the parties' claims in the Proceedings, insufficient information has been provided on the significance of the Relevant Period (which has been defined as *"June 10, 2022 to present"*) for which the documents are sought.

<u>Non-compliance with Article 23 of the Hague Convention</u>

9.    As Singapore has made a declaration under Article 23 of the Hague Convention which provides that *"[a] Contracting State may…declare that it will not execute Letters of Request issued for the purposes of obtaining a pre-trial discovery of documents"*, the Request cannot be executed in Singapore. Singapore also declared that *"Letters of Request issued for the purposes of obtaining a pre-trial discovery of documents"* include any letter of request *"which requires a person…(b) to produce any documents other than particular documents specified in the Letter of Request*

---

[1] See paragraph 8(b) of the Request.
[2] See page **8** of the minute dated 20 March 2026 from the Supreme Court where the case number of the Proceedings is reflected as Civil Action No. 4:25-cv-00914-P and the Proceedings are described as being civil proceedings.

*as being documents appearing to the requested court to be, or to be likely to be, in his possession, custody or power*.[3] AGC highlights that pursuant to section 4(4) of the Evidence (Civil Proceedings in Other Jurisdictions) Act 1979, such letters of request cannot be executed in Singapore.

10.       *"[P]articular documents"* have been interpreted to mean (a) individual documents separately described (as opposed to a class of documents); and (b) actual documents which are shown by evidence to exist or have existed (as opposed to conjectural documents).[4] In this connection, Exhibit A to the Request does not identify particular documents to be produced and instead describes them in broad terms:

(a)    The Request is seeking documents pertaining to WeChat's global operations. For example, the Request is seeking documents showing:

(i)     the usage, downloads, and in-app payments of the WeChat App on smartphones since 10 June 2022, broken down by brand and/or model of smartphone, country of usage and most-used functions. The term *"Smartphones"* has been defined very broadly in the Request as *"a device that has the functionality of a traditional mobile phone (i.e., can make and receive calls via a cellular network) combined with an operating system that mimics the functionality and ease of use of a computer (e.g., browse the internet, watch videos, or check email)"*;

(ii)    how WeChat earns revenue from the WeChat App worldwide; and

(iii)   WeChat's efforts to gain U.S.-based users for the WeChat App and any related barriers or constraints. The Request does not explain or elaborate the barriers or constraints it is referring to.

(b)    Of the nine categories of documents described, five are described in terms of "Documents sufficient to show" information pertaining to various aspects of WeChat, WeChat's operations and the WeChat App. Such descriptions fail to separately describe individual documents as the term *"sufficient to"* is vague and imprecise.

(c)    It is unclear if some of the documents requested are actual documents shown by evidence to exist or have existed, or if they are conjectural documents. Exhibit A contains a segment titled *"INSTRUCTIONS"* which requires WeChat to state in writing if *"there are no Documents or information responsive to all or any portion of any Request"*. No evidence has been provided in the Request that WeChat would have the following documents in its *"possession, custody or control"* or that such documents would be available to WeChat or that WeChat may gain access to the said documents through reasonable efforts:

(i)     internal analyses, evaluations, or communications regarding the featuring or ranking of any super app on any Apple App Store List, including but not limited to the financial or competitive impact of such featuring or ranking and any potential or actual deprioritizing or depreferencing of any super app on any Apple App Store List, including but not limited to the financial or competitive impact of such deprioritization or depreferencing;

(ii)    any agreement between WeChat and Apple with respect to featuring or ranking the WeChat App on any Apple App Store List;

---

[3] This declaration is codified in section 4(4) of the Evidence (Civil Proceedings in Other Jurisdictions) Act 1979.

[4] In *Re Asbestos Insurance Coverage Cases* [1985] 1 WLR 331 at 337–338, interpreting s 2(4)(b) of the Evidence (Procedure in Other Jurisdictions) Act 1975 (UK), which was passed in order to give effect to the United Kingdom's reservation in respect of Article 23 of the Hague Convention, which is materially similar to Singapore's declaration in respect of the same Article.

(iii)  documents regarding how super apps affect the ability of smartphone customers to switch smartphones

(iv)  documents regarding the financial or strategic significance of selling or distributing super apps through various channels; and

(v)  documents sufficient to show WeChat's plans to incorporate and/or existing incorporation of generative AI technology into the WeChat App.

11.    In any case, given that the Request falls outside the scope of the Convention as is ratified and accepted in Singapore (as explained at [5] – [7] above), the Request cannot be executed in Singapore, even if it complies with Article 3(c) of the Convention.

# ANNEX E



SUPREME COURT OF
SINGAPORE
LEGAL REGISTRY

Our Ref: TEA 5/2026/AG

**REQUEST PURSUANT TO THE HAGUE CONVENTION OF 18 MARCH 1970 ON THE TAKING OF EVIDENCE ABROAD IN CIVIL OR COMMERCIAL MATTERS, FOR INTERNATIONAL JUDICIAL ASSISTANCE IN OBTAINING EVIDENCE FROM GRABTAXI HOLDINGS PTE. LTD.**

<u>Case No.: 4:25-cv-00914-P</u>

We refer to the letter of request dated 15 January 2026 ("**Request**") from the United States District Court for the Northern District of Texas, Fort Worth Division ("**Foreign Court**") which we received on 6 March 2026 and forwarded to the Attorney-General's Chambers of Singapore ("**AGC**") on 1 April 2026 pursuant to Order 55, Rule 3(b) of the Rules of Court 2021.

2.      In the Request, the Foreign Court has requested that GrabTaxi Holdings Pte. Ltd. ("**GrabTaxi**") produce certain documents for the purposes of a civil proceeding assigned the case number 4:25-cv-00914-P pending before the Foreign Court (the "**Proceedings**"). The Request is made pursuant to the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters (the "**Hague Convention**").

3.      The brief facts of the Proceedings are as follows:

(a)      *Plaintiffs*: X Corp. and X.AI LLC (collectively, "**X**")

(b)      *Defendants*: Apple Inc. ("**Apple**"), OpenAI Foundation, OpenAI, L.L.C., OpenAI Opco, L.L.C. (collectively, "**OpenAI**")

(c)      *Nature of Proceedings*: The Proceedings involve alleged antitrust violations under the Sherman Act (including an agreement in restraint of trade and monopolization, attempted monopolization and conspiracy to monopolize the markets for generative artificial intelligence ("**AI**") chatbots and smartphones) and claims for civil conspiracy, unfair competition, and violations of the Texas Free Enterprise & Antitrust Act by Apple and OpenAI.

The Plaintiffs allege that the Defendants foreclose competition in the markets for smartphone and generative AI chatbots by: (a) entering into an exclusive agreement through which OpenAI's generative AI chatbot, ChatGPT, is the only generative AI chatbot that is natively integrated into the iPhone and other Apple products; and (b) limiting discoverability of OpenAI's rivals and promoting ChatGPT in Apple's featured "Must-Have Apps" list, over which Apple exercises editorial control.

The Plaintiffs also allege that Apple's conduct illegally restrains competition from "super apps", such as the Grab application ("**Grab App**"), which allow customers to switch away from the iPhone.

The Defendants' defence is that the Plaintiffs failed to allege both the express agreement and substantial foreclosure in the markets for smartphones and generative AI chatbots. The Defendants also assert that the Plaintiffs lack standing as the Plaintiffs' applications

do not compete with smartphones such as the iPhone and therefore cannot be harmed by the exclusive agreement between Apple and OpenAI.

(d) *Evidence required from Grab*: Exhibit A to the Request sets out a list of nine categories of documents to be produced by Grab. In gist, five categories refer to documents "sufficient to show" the functions of and the global operations of the Grab App. Two categories refer to documents concerning the performance of the Grab App on the Apple App Store and as impacted by restrictions imposed by Apple. The remaining two categories refer to documents regarding the significance of the various channels of selling and distributing super apps and the impact of super apps in general.

(e) *Purpose of evidence sought*: To *"elicit information relevant to Plaintiffs'case, particularly with respect to the emergence of super apps – including Grab's well-known app – and the competitive threat that super apps pose to smartphones such as the iPhone".*[1]

4.    As a preliminary matter, AGC note that Exhibit 2, Exhibit 3, and Exhibit 4 of the Request do not appear to relate to the Proceedings, as they concern proceedings to which the Plaintiffs and Defendants are not parties.

5.    Turning to the Request proper, please be informed that AGC is unable to accede to the Request as the Request does not comply with Articles 1, 3(c), 3(e) of the Hague Convention and is also contrary to Singapore's declaration made under Article 23 of the Hague Convention.

<u>Non-compliance with Article 1 of the Hague Convention</u>

6.    The Request does not comply with Article 1 of the Hague Convention which provides that the Request must pertain to *"civil or commercial matters"*. While the Request relates to Proceedings described as "civil proceedings",[2] the Plaintiffs are asserting claims for antitrust violations under the Sherman Act, including that the Defendants had entered into an agreement in restraint of trade in violation of section 1 of the said Act and that the Defendants have monopolized, attempted to monopolize or conspired to monopolize the markets for generative AI chatbots and smartphones under section 2 of the said Act. Both sections 1 and 2 of the Sherman Act appear to be criminal provisions, each deeming any person who infringes the respective provision *"guilty of a felony"* and subject to criminal penalties.

7.    Similar concerns also appear to arise in relation to the Plaintiff's claims for civil conspiracy, unfair competition, and violations of the Texas Free Enterprise & Antitrust Act.

8.    Since the substantive nature of the underlying proceedings for which the evidence is being requested cannot be considered to be *"civil or commercial matters"*, the Request falls outside the scope of the Hague Convention and AGC is therefore unable to execute the Request.

<u>Non-compliance with Article 3(*c*) of the Hague Convention</u>

9.    Furthermore, the Request does not comply with Article 3(*c*) of the Hague Convention which provides that the Request must specify *"the nature of the proceedings for which the evidence is required, giving all necessary information in regard thereto"*. While the Request has provided a summary of the parties' claims and defences in the Proceedings, insufficient information has been provided on the significance of the Relevant Period (which has been defined as "June 10, 2022 to present") for which the documents are sought.[3]

---

[1] See paragraph 8(b) of the Request.
[2] See page 6 of 51 of Document 128 in Case 4:25-cv-00914P, filed on 15 January 2026. The first paragraph makes reference to "a civil proceeding in the above-captioned litigation".
[3] See page 17 and 20 of 51 of Document 128 in Case 4:25-cv-00914P, filed on 15 January 2026, at paragraph [14] and [25].

<u>Non-compliance with Article 3(e) of the Hague Convention</u>

10.      The Request also does not comply with Article 3(e) of the Hague Convention which provides that the Request must specify *"the name and addresses of the persons to be examined"*.

11.      The Request states the identity of the person to be examined as "GrabTaxi Holdings Pte. Ltd." at 28 Sin Ming Lane, #01-143 Midview City, Singapore 573972.[4] However, based on a search of the Accounting and Corporate Regulatory Authority BizFile portal ("**Portal**"), "GrabTaxi Holdings Pte. Ltd." appears to be registered at a different address in Singapore (see **Annex 1**). There does not seem to be any entity named "GrabTaxi Holdings Pte. Ltd." with a registered address at 28 Sin Ming Lane, #01-143 Midview City, Singapore 573972.

<u>Non-compliance with Article 23 of the Hague Convention</u>

12.      As Singapore has made a declaration under Article 23 of the Hague Convention which provides that *"[a] Contracting State may…declare that it will not execute Letters of Request issued for the purposes of obtaining a pre-trial discovery of documents"*, the Request cannot be executed in Singapore. Singapore declared that *"Letters of Request issued for the purposes of obtaining a pre-trial discovery of documents"* include any letter of request *"which requires a person…(b) to produce any documents other than particular documents specified in the Letter of Request as being documents appearing to the requested court to be, or to be likely to be, in his possession, custody or power"*.[5] AGC highlights that pursuant to section 4(4)(b) of the Evidence (Civil Proceedings in Other Jurisdictions) Act 1979, such letters of request cannot be executed in Singapore.

13.      The phrase *"particular documents"* have been interpreted to mean (a) individual documents separately described (as opposed to a class of documents); and (b) actual documents which are shown by evidence to exist or have existed (as opposed to conjectural documents).[6] In this connection, Exhibit A to the Request does not identify particular documents to be produced and instead describes them in broad terms:

> (a)    The Request is seeking documents pertaining to various broad aspects of Grab's global operations. For example, the Request seeks documents "sufficient to show":
>
> > (i)    the usage, downloads, and in-app payments of the Grab App on smartphones since 10 June 2022, broken down by brand and/or model of smartphone, country of usage and most-used functions. The term *"Smartphones"* has been defined very broadly in the Request as *"a device that has the functionality of a traditional mobile phone (i.e., can make and receive calls via a cellular network) combined with an operating system that mimics the functionality and ease of use of a computer (e.g., browse the internet, watch videos, or check email)"* (Request For Production No. 2);
> >
> > (ii)   how Grab earns revenue from the Grab App in Singapore and worldwide (Request For Production No. 4); and
> >
> > (iii)  Grab's efforts to gain U.S.-based users for the Grab App and any related barriers or constraints. The Request does not explain or elaborate on the barriers or constraints it is referring to (Request For Production No. 5).

---

[4] See page 12 of 51 of Document 128 in Case 4:25-cv-00914P, filed on 15 January 2026, at paragraph [9].
[5] This declaration is codified in section 4(4)(b) of the Evidence (Civil Proceedings in Other Jurisdictions) Act 1979.
[6] In *Re Asbestos Insurance Coverage Cases* [1985] 1 WLR 331 at 337–338, interpreting s 2(4)(b) of the Evidence (Procedure in Other Jurisdictions) Act 1975 (UK), which was passed in order to give effect to the United Kingdom's reservation in respect of Article 23 of the Hague Convention, which is materially similar to Singapore's declaration in respect of the same Article.

(b)    Related to the above point, of the nine categories of documents described, five are described in terms of *"Documents sufficient to show"* information pertaining to various aspects of Grab, Grab's operations and the GrabApp. Such descriptions fail to separately describe individual documents as the term "sufficient to show" is vague and imprecise.

(c)    It is unclear if some of the documents requested are actual documents shown by evidence to exist or have existed, or if they are conjectural documents. The Request seems to contemplate the scenario that no documents responsive to the request exist as Exhibit A contains a segment titled *"INSTRUCTIONS"* which requires Grab to state in writing if *"there are no Documents or information responsive to all or any portion of any Request"*. No evidence has been provided in the Request that Grab has or would have the following documents in its *"possession, custody or control"* or that such documents would be available to Grab or that Grab may gain access to the said documents through reasonable efforts. For example, there is no evidence that Grab has the following documents

(i)    internal analyses, evaluations, or communications regarding the featuring or ranking of any Super app on any Apple App Store List, including but not limited to the financial or competitive impact of such featuring or ranking; and any potential or actual deprioritization or depreferencing of any Super app on any Apple App Store List, including but not limited to the financial or competitive impact of such deprioritization or depreferencing (Request for Production No. 6(a));

(ii)    any agreement between Grab and Apple with respect to featuring or ranking the Grab App on any Apple App Store List (Request for Production No. 6(c));

(iii)    documents regarding how Super apps affect the ability of smartphone customers to switch smartphones (Request for Production No. 7);

(iv)    documents regarding the financial or strategic significance of selling or distributing Super apps through various channels (Request for Production No. 3); and

(v)    documents sufficient to show Grab's plans to incorporate and/or existing incorporation of generative AI technology into the Grab App (Request for Production No. 8).

14.    In any case, given that the Request falls outside the scope of the Convention as is ratified and accepted in Singapore (as explained at [6] – [8] above), the Request cannot be executed in Singapore, even if it complies with Articles 3(*c*), 3(*e*) and 23 of the Convention.

Annex 1 – Screenshot of GrabTaxi Holdings Pte. Ltd. Business Profile on BizFile



# ON GOVERNMENT SERVICE



REGISTERED

[BY Registered Post]





SINGAPORE

RC    60537586    8  SG

The Honorable Mark T. Pittman

United States District Judge

Northern District of Texas, Fort Worth Division

501 West 10th Street, Room 401Fort Worth, Texas 76102-3673

United States of America

Your Ref: 4:25-cv-00914-P



RECEIVED

MAY 1 8 2026

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

AIR MAIL
PAR AVION

REGISTERED

TEA5|2026|AG, TEA6|2026|WY , TEA7|2026|WY . TEA8|2026| WY

If undelivered, please return to:

Supreme Court
1 Supreme Court Lane
Singapore 178879