**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| X CORP. and X.AI LLC,<br><br>    Plaintiffs,<br><br>    v.<br><br>APPLE INC.; OPENAI, INC.; OPENAI, L.L.C.; and OPENAI OPCO, LLC,<br><br>    Defendants. | **Civil Action No. 4:25-cv-00914-P** |

**PLAINTIFFS X CORP. AND X.AI LLC'S BRIEF**
**IN SUPPORT OF OBJECTION TO MAGISTRATE JUDGE**
**HAL R. RAY'S MAY 13, 2026 RULING PURSUANT TO RULE 72(a)**

**ORAL ARGUMENT REQUESTED**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1

BACKGROUND .................................................................................................................. 3

ARGUMENT....................................................................................................................... 6

    I.   The Order Improperly Concluded That Plaintiffs Have Control Over Tesla's And SpaceX's Documents ............................................................................................... 7

        A. Plaintiffs Lack Control Over SpaceX's And Tesla's Documents ...................... 7

        B. The Order Relied On An Incorrect Test To Determine That Plaintiffs Have Control Over SpaceX's And Tesla's Documents............................................... 9

    II.  The Order Erroneously Compelled Plaintiffs To Review And Produce Documents From Mr. Musk's Other Email Accounts Without Finding A Deficiency In Their Production ............................................................................................................... 13

    III. Expedited Briefing And Resolution Of Plaintiffs' Objections Are Necessary........... 16

CONCLUSION.................................................................................................................... 17

## TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page(s)**

*Baker v. Walters*,
    652 F. Supp. 3d 768 (N.D. Tex. 2023) ...................................................................................19

*CFE Int'l LLC v. Schnaas*,
    Civ. A. No. H-22-3385, 2025 WL 438568 (S.D. Tex. Feb. 7, 2025) ..............................7, 8, 19

*Chaveriat v. Williams Pipe Line Co.*,
    11 F.3d 1420 (7th Cir. 1993) .................................................................................................19

*In re Citric Acid Litig.*,
    191 F.3d 1090 (9th Cir. 1999) ................................................................................................8

*Clark v. Council of Unit Owners of 100 Harborview Drive Condo. Ass'n*,
    No. 8:20-cv-1325, 2024 WL 2155021 (D. Md. May 13, 2024) .............................................19

*Cochran Consulting, Inc. v. Uwatec USA, Inc.*,
    102 F.3d 1224 (Fed. Cir. 1996)...............................................................................................8

*Gerling Int'l Ins. Co. v. Comm'r*,
    839 F.2d 131 (3d Cir. 1988)....................................................................................................19

*Interactive Toybox, LLC v. Walt Disney Co.*,
    No. 1:17-CV-1137, 2018 WL 5284625 (W.D. Tex. Oct. 24, 2018).........................................7

*Jones v. Wells Fargo Bank, N.A.*,
    666 F.3d 955 (5th Cir. 2012) ..................................................................................................19

*Musk v. Altman*,
    No. 24-cv-04722-YGR (TSH), 2025 WL 2348769 (N.D. Cal. July 1, 2025) ....................2, 19

*Richards v. Jefferson County*,
    517 U.S. 793 (1996).................................................................................................................19

*Shell Glob. Sols. (US) Inc. v. RMS Eng'g, Inc.*,
    No. 4:09-CV-3778, 2011 WL 3418396 (S.D. Tex. Aug. 3, 2011) ...........................................8

*Ultravision Technologies, LLC v. Govision, LLC*,
    No. 218CV00100, 2020 WL 10692709 (E.D. Tex. Aug. 28, 2020).........................................19

*United My Funds, LLC v. Perera*,
    No. 4:19-CV-00373, 2020 WL 1225042 (E.D. Tex. Mar. 12, 2020) ..................................8, 19

*United States v. Larry,*
   632 F.3d 933 (5th Cir. 2011) .........................................................................................19

*VeroBlue Farms USA Inc. v. Wulf,*
   345 F.R.D. 406 (N.D. Tex. 2021) ...................................................................................19

**Other Authorities**

Fed. R. Civ. P. 34(a) ............................................................................................................7

Fed. R. Civ. P. 45(d)(2)(B)(i) ............................................................................................19

Fed. R. Civ. P. 72(a) ............................................................................................................6

N.D. Tex. L. Civ. R. 72.1(b)-(c) ........................................................................................19

## PRELIMINARY STATEMENT

Plaintiffs brought this case to recover billions in damages caused by Defendants' unlawful conduct.[1] Although OpenAI and Apple have produced a fraction of the documents Plaintiffs have and discovery is ongoing, the record already demonstrates that Defendants illegally worked together to cement OpenAI's and Apple's monopolies and lock out their competitors. *See, e.g.*, Dkt. No. 205-1 at 4-5.

Although Defendants' illegal acts are at the center of this dispute, OpenAI has tried to make this case about anything other than its own misconduct. Its most recent gambit is its effort to require Plaintiffs to produce xAI CEO Elon Musk's documents—not from xAI's or X's systems (to which Plaintiffs already agreed) but from systems owned by two other companies of which he is CEO: Tesla, Inc. ("Tesla") and Space Exploration Technologies Corp. ("SpaceX"). Despite bedrock principles of corporate law that require courts to treat companies as distinct from their officers and to treat separate entities as distinct from one another, the Magistrate Judge directed *Plaintiffs* to produce documents in the files of those two other companies for which they lack possession, custody, or control. This was error for at least two reasons.

First, the Order improperly concludes that Plaintiffs have control over emails in the files of Tesla and SpaceX. Those companies are distinct from Plaintiffs: Tesla is a publicly owned company outside of Plaintiffs' corporate family, while SpaceX is a private company that operates separately from Plaintiffs. And although SpaceX became the parent of X and xAI after the events that resulted in this lawsuit, it continues to maintain a completely separate email system from X

---

[1] "X" refers to X Corp. and "xAI" refers to X.AI LLC. X and xAI are referred to collectively as "Plaintiffs." "Apple" refers to Apple Inc., and "OpenAI" refers to OpenAI Foundation (f/k/a OpenAI, Inc.); OpenAI, L.L.C.; and OpenAI OpCo, LLC. Apple and OpenAI are referred to collectively as "Defendants." "App'x Tab __" refers to the tab in the accompanying Appendix. "Order" refers to the Magistrate Judge's order dated May 13, 2026, to which Plaintiffs object in part, Dkt. No. 274, reproduced at App'x Tab 1.

and xAI, because it is a separate company and because it must ensure compliance with its legal obligations under various export control regulations, given the nature of space technology. Not only are these entities legally presumed to be distinct, but Plaintiffs' Senior Legal Counsel submitted an unrebutted declaration averring that Plaintiffs cannot access Tesla and SpaceX emails.

Under case law from Texas and around the country, Plaintiffs' unrebutted showing that they do not have access to Tesla and SpaceX emails is enough to show that Plaintiffs lack control over them. The Order erred by concluding that because Mr. Musk is the CEO of Tesla, SpaceX, and xAI, and because companies can make their employees turn over their personal emails in certain circumstances, X and xAI can require Tesla and SpaceX to provide them to Plaintiffs. In doing so, the Magistrate Judge erroneously relied on an order from *Musk v. Altman*, an unrelated case, requiring Mr. Musk to produce his Tesla and SpaceX emails. There, Mr. Musk was personally the plaintiff, and so the order there did no more than require a party to the litigation to produce his own emails. The Order here goes much farther: it requires two companies to produce emails from two other third-party companies to which they lack access, simply because they share a CEO. Neither *Musk* nor any of the other case law the Order cites supports that extraordinary result. Moreover, there is no reason to trample over textbook corporate-law principles to conclude that Plaintiffs have possession, custody, or control over Tesla's and SpaceX's documents. A well-established mechanism for seeking the documents of third parties already exists: the Rule 45 subpoena. The proper way for OpenAI to obtain documents from Tesla and SpaceX is through the third-party subpoenas OpenAI already served on them under Rule 45 (subject to appropriate limitations on scope).

Second, the Order made no finding that would support OpenAI's bid to require Plaintiffs to search and produce new sources of information. OpenAI argued to the Magistrate Judge that Plaintiffs should do so because Mr. Musk allegedly conducted business for Plaintiffs using his other email accounts. But nothing in the record before the Magistrate Judge supports that claim. To the contrary, there is no record evidence—none—that Mr. Musk ever conducted work related to his role at Plaintiffs on his Tesla and SpaceX accounts. The Magistrate Judge acknowledged that "[m]aybe there aren't any" responsive emails in Mr. Musk's other-company emails. App'x Tab 2, at App. 40. Yet the Magistrate Judge directed Plaintiffs to produce Mr. Musk's emails from *other companies* while refusing to require Apple to search *its own files* for the custodial documents of its own CEO, Tim Cook, who personally approved the agreement between Apple and OpenAI. The double-standard is palpable.

At bottom, the law does not allow litigants to force their adversaries to produce documents from any companies where their executives also hold high-ranking positions—a common situation in corporate America. That is especially true when, as here, the ruling is based on nothing but conjecture. This Court should sustain Plaintiffs' objection.

## **BACKGROUND**

Although this case is about OpenAI's misconduct of colluding with Apple to lock competitors out of the markets for genAI chatbots and smartphones, OpenAI has sought to deflect from the issues in this case by serving several broad subpoenas on nonparty companies, seeking information unrelated to this litigation. Among other such subpoenas, in late December 2025, OpenAI served identical document subpoenas on Tesla and SpaceX. These companies are distinct from each other and from Plaintiffs. Each has its own mission, products, and ownership structure: Tesla is a publicly traded automotive and clean energy company, which is subject to the extensive

3

regulatory, disclosure, compliance, and oversight obligations of any publicly traded company. SpaceX is an aerospace company that offers space-launch and satellite-based-internet services. Tesla is entirely independent from Plaintiffs, while SpaceX became Plaintiffs' ultimate parent company in February 2026, six months into this litigation. The only common link between the companies is involvement by Mr. Musk, who serves as Chief Executive Officer of Plaintiff xAI and Chief Technology Officer of Plaintiff X.

OpenAI's subpoenas to Tesla and SpaceX seek an extraordinary breadth of irrelevant information, such as "[a]ll Documents and Communications Relating to OpenAI" and "Documents sufficient to show [their] policies and practices concerning (i) the retention, preservation, storage, and/or destruction of Documents and Communications; (ii) the use of personal electronic devices for work purposes; and (iii) the use of chats or other messaging systems, including Ephemeral Messaging Tools." App'x Tab 11, at App. 142-43; App'x Tab 12, at App. 203-4 . Critically, the subpoenas request that Tesla and SpaceX each run full custodial searches for every request for production served on Plaintiffs over the emails and documents of any director, officer, employee, or contractor who has held any title at xAI in a formal or informal capacity since March 9, 2023— including Mr. Musk. App'x Tab 11 at App. 139-42; App'x Tab 12, at App. 200-203. Tesla and SpaceX, through their separate counsel, have been negotiating the scope and timing of productions with OpenAI in response to these subpoenas.

According to OpenAI, it grew frustrated with the speed of negotiations of its subpoenas with Tesla and SpaceX. *See* Dkt. No. 171-1 at 11. But instead of attempting to enforce or negotiate the scope of its overbroad nonparty subpoenas, OpenAI claimed that because Mr. Musk is involved in all companies, Plaintiffs X Corp. and xAI must have possession, custody, or control of the emails in the files of those other companies. *See id.* at 10.

4

Plaintiffs told OpenAI that they lack access to Tesla and SpaceX emails. But instead of accepting those representations, OpenAI moved to compel Plaintiffs to search for and produce any of Mr. Musk's Tesla and SpaceX emails that are responsive to any of the requests for production that OpenAI served on Plaintiffs. In doing so, OpenAI claimed that this extraordinary relief was warranted based on two documents purportedly showing that Mr. Musk conducted business for Plaintiffs using his Tesla and SpaceX email accounts:

- First, OpenAI cited a single text message in which Mr. Musk ███████████ ████████████████████████████████████████████████████████████ ██████████████████████████████ App'x Tab 3, at App. 86. OpenAI cited no evidence that anyone at Apple ever contacted Mr. Musk about events related to this litigation at Mr. Musk's Tesla or SpaceX email address, and Apple has produced no such communication between ██████████ and Mr. Musk at any email address.

- Second, OpenAI cited an email that xAI employee Jon Shulkin sent *to* Mr. Musk regarding ████████████████████, to which Mr. Musk did not respond. *See* App'x Tab 4, at App. 89.

Those two documents are the entirety of what OpenAI put forth in claiming that Mr. Musk conducted business for Plaintiffs using his email accounts at other companies. As Plaintiffs demonstrated, not only is there no basis for that conclusion, but there is unrebutted evidence that—contrary to OpenAI's claim—Plaintiffs cannot access Tesla and SpaceX documents or email accounts. App'x Tab 5, at App. 92.

The Magistrate Judge granted OpenAI's motion to compel on this issue. At the hearing, the Magistrate Judge observed that the "dearth" of emails from Mr. Musk's X and xAI email accounts caused him to wonder, "[W]here are the emails?" App'x Tab 2, at App. 40. In focusing on a single form of communication from a single Plaintiff executive, the Magistrate Judge never acknowledged that Plaintiffs have produced more than four times as many documents as OpenAI, *id.* at App. 28, and cited no evidence that Mr. Musk had used his Tesla or SpaceX email address to conduct business relevant to this case. He instead reasoned that "[m]aybe" Mr. Musk had done

so. *Id.* at App. 40. Based on this speculation, the Magistrate Judge issued the Order, which compels Plaintiffs to run a complete custodial search of Mr. Musk's Tesla and SpaceX emails and produce responsive documents by June 3, but does not explain how Plaintiffs, who lack access to Tesla and SpaceX emails, can or should gain such access in order to comply with the Order. *See* Order 4.

Despite granting that relief, the Order denied Plaintiffs' separate request that Apple search its CEO's files—files that Apple undisputedly possess. In other words, the Magistrate Judge required Plaintiffs to gather from nonparty companies entire email inboxes containing proprietary business information unrelated to this case or to Plaintiffs' businesses based on the speculation that "maybe" xAI's CEO has relevant documents at these other companies, but the Magistrate Judge did not require Apple even to produce its CEO's Apple emails concerning the precise conduct Plaintiffs challenge. This is so even though this lawsuit's central concern is whether *Apple and OpenAI* entered into an illegal, collusive agreement, not Mr. Musk's conduct.

## ARGUMENT

Under Federal Rule of Civil Procedure 72(a), the Court shall "modify or set aside any part of the [magistrate judge's] order that is clearly erroneous or contrary to law." The Order here made two rulings that were contrary to law.

First, the Order concluded that Plaintiffs have control over Mr. Musk's Tesla and SpaceX emails simply because Mr. Musk is an executive at Plaintiffs and at Tesla and SpaceX. But simply sharing an executive is not enough. Rather, the test for determining whether a party controls a nonparty's files asks whether the party can access those files. And here, an unrebutted declaration from a senior in-house attorney at Plaintiffs establishes that Plaintiffs lack access to Tesla and SpaceX's emails.

6

Second, even if Plaintiffs had control over Tesla and SpaceX emails (which they do not), the Order erred in concluding that there was any reason to believe that Mr. Musk's Tesla and SpaceX emails would bear on this case. The Magistrate Judge based that ruling solely on the speculative possibility that Mr. Musk could have used other email accounts to communicate about this case. But such fishing expeditions are not a proper use of discovery, let alone in the case of an apex witness such as Mr. Musk. Regardless, nothing in the record shows that Mr. Musk used those accounts to conduct any of Plaintiffs' business relating to this case.

The Court should set aside those erroneous legal rulings.

## I.    The Order Improperly Concluded That Plaintiffs Have Control Over Tesla's And SpaceX's Documents

Plaintiffs, like any party to a litigation, must produce only responsive items in their "possession, custody, or control." Fed. R. Civ. P. 34(a). OpenAI did not even try to argue before the Magistrate Judge that Plaintiffs possess Tesla and SpaceX emails in the ordinary course, given that Tesla and SpaceX are distinct from each other and from Plaintiffs and are thus "presume[d]" to "exist as separate entities"—even if they share "'owner[s]'" or "'officers.'" *Interactive Toybox, LLC v. Walt Disney Co.*, No. 1:17-CV-1137, 2018 WL 5284625, at *3 (W.D. Tex. Oct. 24, 2018) (quoting *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1160 (5th Cir. 1983)). OpenAI instead argued, and the Magistrate Judge agreed, that Plaintiffs have control over Tesla and SpaceX emails because Elon Musk is the CEO of xAI, Tesla, and SpaceX, and Plaintiffs can force Mr. Musk to force Tesla and SpaceX to turn over all of Mr. Musk's emails from those companies. That is contrary to controlling law.

### A.    Plaintiffs Lack Control Over SpaceX's And Tesla's Documents

A party claiming that the opposing party has control over a nonparty's documents "bears the burden of establishing the opposing party's control over those documents." *CFE Int'l LLC v.*

*Schnaas*, Civ. A. No. H-22-3385, 2025 WL 438568, at *1 (S.D. Tex. Feb. 7, 2025) (quoting *Shell Glob. Sols. (US) Inc. v. RMS Eng'g, Inc.*, No. 4:09-CV-3778, 2011 WL 3418396, at *2 (S.D. Tex. Aug. 3, 2011)). To meet that burden, the requesting party must show that the opposing party "has the right, authority, or practical ability to obtain the documents from [the] nonparty." *Shell*, 2011 WL 3418396, at *2 (quotation marks omitted). When the opposing party and the nonparty are corporations, the starting point is determining whether the opposing party has the right or ability to access the nonparty entity's documents. And when, as here, the opposing party undisputedly lacks such access, the inquiry ends. *CFE*, 2025 WL 438568, at *2.

*CFE* is on point. There, in response to a motion to compel the plaintiff (a Delaware corporation) to produce its Mexican parent corporation's documents, the company's chief legal officer filed a declaration explaining that the plaintiff had neither "the legal right under the laws of Mexico or the United States to access [its parent's] IT systems or physical storage" nor "ownership of [its parent's] documents or other records." *Id.* (quotation marks omitted). The parent could unilaterally "determine[] whether to grant [the plaintiff's] request for access," leaving the plaintiff without the "ability or power to compel [its parent] to provide documents." *Id.* (quotation marks omitted). The lack of "any evidence contradicting" that declaration sufficed; the court had no need to consider any "circumstantial evidence" suggesting that the plaintiff could obtain the documents from its parent. *Id.* at *3. Other courts have similarly ruled. *See, e.g.*, *United My Funds, LLC v. Perera*, No. 4:19-CV-00373, 2020 WL 1225042, at *9 (E.D. Tex. Mar. 12, 2020) (denying motion to compel production of nonparty documents even though parties shared common ownership and a common address, because nonparty had not granted party access to its files); *In re Citric Acid Litig.*, 191 F.3d 1090, 1107 (9th Cir. 1999) (holding that because a firm lacked legal control over an affiliate's documents, it could not be compelled to produce them); *Cochran*

*Consulting, Inc. v. Uwatec USA, Inc.*, 102 F.3d 1224, 1229-30 (Fed. Cir. 1996) (holding that the district court erred when it ordered a domestic firm to produce foreign affiliate's documents that the domestic firm did not possess and had no legal right to obtain); *Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1426-27 (7th Cir. 1993) (holding that plaintiffs did not have control of documents that they could not force nonparties to surrender; defendants' remedy was to subpoena the nonparties).

As in those cases, the unrebutted evidence that Plaintiffs lack access to the nonparty emails OpenAI seeks should have led the Magistrate Judge to deny OpenAI's motion. In particular, Plaintiffs submitted a declaration from their Senior Legal Counsel explaining that (a) Tesla and SpaceX are "separate corporate entit[ies] from Plaintiffs"; (b) Tesla's and SpaceX's "files are maintained separately from Plaintiffs' files, and Plaintiffs do not have the right to access SpaceX's [and Tesla's] files barring specific business circumstances"; and (c) Tesla's and SpaceX's "files [are not] made accessible to Plaintiffs' employees." App'x Tab 5, at App. 92. OpenAI submitted no "evidence contradicting" Plaintiffs' in-house attorney's "description of the relationship between [Plaintiffs] and [Tesla and SpaceX]" or any other evidence casting doubt on Plaintiffs' lack of access to Tesla's and SpaceX's files. *CFE*, 2025 WL 438568, at *3. The evidence before the Magistrate Judge thus left "no ambiguity" that Plaintiffs lack "control" over SpaceX's and Tesla's files. *Id.* at *2. There accordingly was and is no basis for the Order, which is contrary to law.

> **B.     The Order Relied On An Incorrect Test To Determine That Plaintiffs Have Control Over SpaceX's And Tesla's Documents**

The Order did not cite *CFE* or *United My Funds*. In fact, the Order discussed no case law assessing when one entity can be deemed to have control over another entity's documents. It

instead relied on two cases from different contexts, neither of which supports ordering Plaintiffs to produce other companies' documents.

First, relying on *Ultravision Technologies, LLC v. Govision, LLC*, No. 218CV00100, 2020 WL 10692709 (E.D. Tex. Aug. 28, 2020), the Order reasoned that "[w]hen an executive uses other accounts to conduct company business, such accounts are under company control." Order 4. But *Ultravision* concerns whether a corporate litigant has control over an employee's *personal* email accounts, not whether a corporate litigant has control over *another company's* emails, as is at issue here. *See* 2020 WL 10692709, at *2. Compelling a company to order its current employee to provide personal emails the employee used to conduct company business is very different from asking two distinct companies to turn over all the emails of its CEO to another company.

Tesla is a publicly traded company that has no corporate affiliation with X or xAI and is in an entirely separate business. *See supra* pp. 1, 3. SpaceX is also a distinct entity that was not even in the same corporate family as X or xAI until less than four months ago, and it maintains IT systems, including email, with rigorous compliance controls because it develops cutting-edge rocket and satellite technology covered by export controls that protect U.S. national security interests. *See supra* pp. 1, 4. Mr. Musk's emails from those companies—which are not found on his personal devices but would instead require extracting documents from those companies' IT systems—certainly contain confidential business communications having nothing to do with Plaintiffs' businesses. Yet according to the Order, and contrary to statements submitted to the Court, Plaintiffs have possession, custody, or control over those independent companies' files, allowing Plaintiffs to rummage through Tesla's and SpaceX's confidential business information— indeed, potentially their *most* confidential business information, since the request pertains to their CEO—to search for information relevant to this case. Moreover, Tesla and SpaceX are not even

10

parties to the case, raising serious due process questions over the Magistrate Judge's Order permitting disclosure from their files. *See, e.g.*, *Richards v. Jefferson County*, 517 U.S. 793, 798 (1996) (discussing due process problems with binding those who are "not designated as a party," given "our deep-rooted historic tradition that everyone should have his own day in court" (quotation marks omitted)). That is worlds apart from *Ultravision*, where the court compelled a company to produce emails from its own employees, who are agents of the company.[2]

Second, relying on *Musk v. Altman*, No. 24-cv-04722-YGR (TSH), 2025 WL 2348769 (N.D. Cal. July 1, 2025), the Order noted that Mr. Musk "is a high-level executive at both SpaceX and Tesla with 'control' over his business email accounts." Order 4. But in *Musk*, unlike here, Mr. Musk was a party. Indeed, the court there relied on case law holding that "*an individual party to a lawsuit* can be compelled to produce relevant information and documents relating to a non-party corporation of which it is an officer, director, or shareholder." *Musk*, 2025 WL 2348769, at *1. (emphasis added; alteration omitted) (quoting *Inland Concrete Enters. v. Kraft Ams. LP*, No. CV 10-1776, 2011 WL 13209239, at *3 (C.D. Cal. Feb. 3, 2011)). The Order here goes a step further. It compels Plaintiffs to produce documents from two nonparty entities—not because Plaintiffs themselves have access to Tesla's and SpaceX's documents, but because Plaintiffs' high-level executive, who is also a nonparty, is a high-level executive at Tesla and SpaceX. But Plaintiffs are not the same as Mr. Musk. *See Jones v. Wells Fargo Bank, N.A.*, 666 F.3d 955, 965 (5th Cir. 2012) ("The legal concept that a corporation is a distinct entity from its stockholders, officers and directors is fundamental to the law of corporation." (quotation marks omitted)). Nothing in *Musk*

---

[2] In fact, the only other case to have cited *Ultravision* ordered only a "limited search" to locate employees' personal emails "responding to" a single individual and discussing three other individuals. *Clark v. Council of Unit Owners of 100 Harborview Drive Condo. Ass'n*, No. 8:20-cv-1325, 2024 WL 2155021, at *7 (D. Md. May 13, 2024). Here, by contrast, the Order requires Plaintiffs—two distinct entities—to search entire email boxes owned by two other distinct entities, one of which is publicly owned.

held otherwise or contemplated that the companies Mr. Musk serves would be interchangeable any time one of them is a party to litigation.

Under the Order's sweeping logic, any company that shares a high-level executive with another company necessarily has control over that other company's documents. For instance, if a parent and a subsidiary share a high-level officer, the subsidiary would be deemed to have control of its parent's emails in any case in which the subsidiary is a party. But that is not the law. *See, e.g.*, *CFE*, 2025 WL 438658, at *2-3 (concluding that a wholly owned subsidiary lacked control of its parent's documents, even though "[t]he companies' leadership . . . overlap[ped]," with the parent's "Director General" serving as the subsidiary's chairman); *Gerling Int'l Ins. Co. v. Comm'r*, 839 F.2d 131, 141-42 (3d Cir. 1988) (denying motion to compel documents of an affiliated company, even though the party and the affiliate shared the same leader). The Order would also mean that if a high-level executive at one company worked as a high-level executive at another, each company would have control over—and could be required to produce—the other's documents in cases to which they are not parties. This scenario is hardly unimaginable: to take one prominent example, Steve Jobs was the CEO of both Apple and Pixar for nearly a decade, between 1997 and 2006. App'x Tab 6, at App. 94; App'x Tab 7, at App. 102; App'x Tab 8 at App 113; App'x Tab 9, at App. 116. By the Order's reasoning, Pixar would have been deemed to have control over, at a minimum, Apple's files, even in cases not involving Apple at all.[3] Indeed, nothing in the Order's logic stops at corporations: if an individual has access to his spouse's or children's email accounts, then by extension the individual's employer has possession, custody, or control

---

[3] Other prominent examples include (1) Sam Altman, the CEO of OpenAI and CEO and Director of AltC Acquisition Corp.; (2) Hisayuki Idekoba, the President and CEO of Recruit Holdings Co. and President and CEO of Indeed; and (3) Jack Dorsey, who was simultaneously the CEO of Twitter, Inc. and Block, Inc. from 2015 to 2021.

over those accounts too because the employer can compel the individual to turn over information from accounts to which the individual has access.

There is no reason to upend the doctrine of possession, custody, or control in this way. If the nonparty company has relevant documents, there is already an established method to get them. The requesting party can serve an appropriately tailored subpoena under Rule 45. And if the subpoenaed party refuses to produce documents, the requesting party can move to compel compliance. *See* Fed. R. Civ. P. 45(d)(2)(B)(i). But what the requesting party cannot do is what OpenAI did here: sidestep that process by moving to compel a party to produce a nonparty's documents based on the fact that the party and nonparty share executives. OpenAI went so far as to say that because Tesla and SpaceX produced "no documents" to date in response to subpoenas OpenAI served, the Court here, rather than the court in a properly brought subpoena-compliance proceeding, should compel compliance from Tesla and SpaceX, which could "enlist other lawyers to help" them produce in response to the Order. App'x Tab 2, at App. 25. The Order granted that request. But OpenAI's impatience is not an appropriate basis to bypass its obligations to meet and confer with Tesla and SpaceX in accordance with the established process for responding to nonparty subpoenas. Nothing in Rule 45—or any other Federal Rule—allows the end-run OpenAI sought and the Magistrate Judge granted.

## II. The Order Erroneously Compelled Plaintiffs To Review And Produce Documents From Mr. Musk's Other Email Accounts Without Finding A Deficiency In Their Production

Even if OpenAI had shown that Plaintiffs had control over Mr. Musk's Tesla and SpaceX emails—which it did not and could not do—that would not be enough to force Plaintiffs to produce those emails. Courts recognize that "a responding party is best situated to preserve, search, and produce its own electronically stored information . . . without direction from the court or opposing counsel." *VeroBlue Farms USA Inc. v. Wulf*, 345 F.R.D. 406, 420 (N.D. Tex. 2021) (cleaned up).

A court will second-guess the responding party's decisions about which materials to collect or produce only if the requesting party shows "a specific deficiency . . . in [the] party's production." *Id.* (quotation marks omitted); *accord Baker v. Walters*, 652 F. Supp. 3d 768, 786 (N.D. Tex. 2023). But the Order does not cite any such deficiency.

At the hearing, the Magistrate Judge noted that there was "some suggestion that there's a dearth of . . . emails" from "Mr. Musk's email account at X or X.AI," an apparent reference to OpenAI's claim that Plaintiffs had produced 10 substantive emails from Mr. Musk. App'x Tab 2, at App. 23, 40. That fails to account, however, for the "dearth" of documents from OpenAI compared to what Plaintiffs produced, *see supra* p. 5—or for the fact that much of today's business is conducted in other forms. For example, as OpenAI's own CEO recently testified, he uses "Slack, iMessage, WhatsApp, email, [and] occasionally Signal" to conduct business. *See, e.g.*, App'x Tab 10, at App. 121. The Magistrate Judge's speculative belief that there should be more substantive emails produced by xAI's CEO—an apex witness who the Magistrate Judge acknowledged may have no relevant emails and who is a bit player in this case about *Apple and OpenAI*'s illegal arrangement—is thus unsupported by the evidence. The Magistrate Judge committed legal error (and in all events abused his discretion) in basing the Order on such unadorned speculation rather than evidence of "a specific deficiency . . . in [the] party's production." *VeroBlue Farms USA Inc.*, 345 F.R.D. at 420; *see also United States v. Larry*, 632 F.3d 933, 936 (5th Cir. 2011) ("A court abuses its discretion when the court makes an error of law or bases its decision on a clearly erroneous assessment of the evidence." (quotation marks omitted)).

Nor does the evidence OpenAI submitted support a finding that Mr. Musk used his Tesla and SpaceX emails to conduct business related to this case.[4] OpenAI pointed to two documents for

---

[4] Moreover, while the Order implies that Mr. Musk "use[d] other [email] accounts to conduct company business," Order 4, it stops short of making such a finding—and certainly never found

support: (1) text messages between ███████████████████████████████████

████████████████████████████████████████████████████████████████████

████████ App'x Tab 3, at App. 86, and (2) an email from an xAI executive to Mr. Musk's

█████████, App'x Tab 4. at App. 89. Neither document compels the inference OpenAI asks

the Court to draw.

First, the text messages ████████████████████████████████████████

████████████████████████████████████████████████████████. It is thus

unsurprising that Apple *produced no emails between anyone at Apple and Mr. Musk at his Tesla*

*or SpaceX email addresses*. In any event, the text messages show █████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████. App'x Tab 3, at App. 81. Mr. Musk's

acknowledgment ███████████████████████████████████ thus does not suggest

that he generally used those accounts to conduct business for either Plaintiff, rather than for Tesla

or SpaceX.

Second, the single email addressed to Mr. Musk's ████████████ does not show that Mr.

Musk conducted *any* business from that account, let alone business related to this case. To the

contrary, a person's receipt of emails at an account is "insufficient to warrant" a search of that

account. *Ultravision*, 2020 WL 10692709, at *1. That a single, stray email to one of Mr. Musk's

other email addresses—to which Mr. Musk did not even respond—is the best evidence OpenAI

can muster, even after Plaintiffs have produced more than 30,000 documents, is telling. If

Plaintiffs' other custodians were consistently emailing Mr. Musk at other email addresses, OpenAI

---

that Mr. Musk used any other email account to conduct business related to this case. To the
contrary, the Magistrate Judge acknowledged that "[m]aybe there aren't any" responsive emails in
Mr. Musk's Tesla and SpaceX emails, yet decided that "we're going to look" anyway. App'x Tab
2, at App. 40.

would have attached those emails to its motion to compel. It did not put forth such evidence, because it has none.

The decision to compel Plaintiffs to produce emails from Mr. Musk's accounts at nonparty companies—based on a meager evidentiary record and supposition that those accounts would "maybe" have responsive documents—stands in stark contrast to the Magistrate Judge's treatment of Plaintiffs' request for documents from Apple's CEO, Tim Cook. When Plaintiffs moved to compel Apple to search Mr. Cook's emails at Apple (a party to this case, unlike Tesla or SpaceX), the Magistrate Judge denied Plaintiffs' motion, finding that Plaintiffs failed to demonstrate that Mr. Cook's emails would not be captured by those of other Apple custodians. Order 6-7. Despite Plaintiffs' evidence of Mr. Cook's intimate involvement in and key decisions about the challenged conduct—including personally approving the term sheet and final version of the Apple-OpenAI Agreement, App'x Tab 2, at App. 43—the Magistrate Judge refused to add Mr. Cook as a custodian. Order 7. Yet the Court found the "dearth" of emails from Mr. Musk sufficient to order the search and production of his emails at entirely separate companies, even though the Magistrate Judge never made any finding that Mr. Musk *ever* used his Tesla or SpaceX emails to conduct X or xAI business. App'x Tab 2, at App. 40. The standard for requiring a company to produce another company's emails should not be—and is not—lower than the standard for requiring a company to search its own files.

## III.    Expedited Briefing And Resolution Of Plaintiffs' Objections Are Necessary

Given that the default briefing schedule would extend beyond the date on which the Magistrate Judge directed Plaintiffs to comply with the Order, *see* LR 72.1(b)-(c), expedited briefing and resolution of Plaintiffs' objections are appropriate.

## CONCLUSION

For the foregoing reasons, the Court should sustain Plaintiffs' objection and set aside the Magistrate Judge's May 13 Order insofar as it requires Plaintiffs to produce Mr. Musk's Tesla and SpaceX emails.

Dated: May 20, 2026

Respectfully submitted,

/s/ Bradley Justus

Bradley Justus
N.D. Tex. Bar No. 1007988DC
DC Bar No. 1007988
AXINN, VELTROP & HARKRIDER LLP
1901 L Street NW
Washington, DC 20036
T: (202) 912-4700
F: (202) 912-4701
bjustus@axinn.com

Charles W. Fillmore
Texas Bar No. 00785861
BROWN        PRUITT        WAMBSGANSS
DEAN FORMAN & MOORE, P.C.
201 Main Street, Suite 700
Fort Worth, TX 76102
T: (817) 338-4888
cfillmore@brownpruitt.com

Alexander M. Dvorscak
Texas Bar No. 24120461
STONE | HILTON PLLC
2000 West Loop South, Suite #1500
Houston, TX 77027
T: (281) 619-8843
alex@stonehilton.com

*admitted *pro hac vice*

/s/ Scott A. Eisman

Craig M. Reiser
N.D. Tex. Bar No. 4886735NY
NY State Bar No. 4886735
Scott A. Eisman
N.D. Tex. Bar No. 4905287NY
NY State Bar No. 4905287
Eva Yung*
NY State Bar No. 5497300
Christopher Erickson
N.D. Tex. Bar No. 5800628NY
NY State Bar No. 5800628
AXINN, VELTROP & HARKRIDER LLP
630 Fifth Avenue, 33rd Floor
New York, NY 10111
T: (212) 728-2200
F: (212) 728-2201
creiser@axinn.com
seisman@axinn.com
eyung@axinn.com
cerickson@axinn.com

/s/ Judd E. Stone

Judd E. Stone II
Texas Bar No. 24076720
Christopher D. Hilton
Texas Bar No. 24087727
STONE | HILTON PLLC
600 Congress Ave., Ste. 2350
Austin, TX 78701
T: (737) 465-3897
judd@stonehilton.com
chris@stonehilton.com

Noah Schottenstein
Texas Bar No. 24100661
STONE | HILTON PLLC
301 Commerce St., Suite 2360
Fort Worth, TX 76102
T: (737) 465-3897
noah@stonehilton.com

*Attorneys for Plaintiffs X Corp. and
X.AI LLC*

18

## <u>CERTIFICATE OF SERVICE</u>

I certify that on May 20, 2026, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF system for filing. A notice of electronic filing was transmitted to all ECF registrants of record.

/s/ Scott A. Eisman
Scott A. Eisman