**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

|  |  |
|---|---|
| X CORP. and X.AI LLC,<br><br>        Plaintiffs,<br><br>        v.<br><br>APPLE INC.; OPENAI, INC.; OPENAI, L.L.C.; and OPENAI OPCO, LLC,<br><br>        Defendants. | **Civil Action No. 4:25-cv-00914-P** |

**PLAINTIFFS X CORP. AND X.AI LLC'S REPLY
IN SUPPORT OF OBJECTION TO MAGISTRATE JUDGE
HAL R. RAY'S MAY 13, 2026 RULING PURSUANT TO RULE 72(a)**

**ORAL ARGUMENT REQUESTED**

OpenAI's Opposition recycles the same legally unsupported arguments it made before the Magistrate Judge, while ignoring Plaintiffs' unrebutted evidence and the bedrock corporate-law principles that preclude a finding of control. OpenAI's entire argument rests on a rhetorical flourish apparent from the first sentence of its brief: the conceit that "Elon Musk . . . brought this suit" yet "refuses to cooperate." But as much as OpenAI may wish to pretend that Mr. Musk and his companies are one and the same, Mr. Musk is not a plaintiff in this action, and no one is "refus[ing] to cooperate." As Plaintiffs demonstrated, they simply lack possession, custody, or control of Tesla's and SpaceX's separate email systems, and OpenAI should seek documents from *those companies directly* in response to the Rule 45 subpoena it previously served rather than by trying to compel *Plaintiffs* to produce those companies' documents.[1] That modest, but important proposition is what this objection is about. OpenAI's attempt to collapse the legal distinctions between Plaintiffs and two other companies—simply because they share a CEO—would upend decades of corporate law and the ordinary Rule 45 subpoena process for obtaining documents from non-parties. OpenAI offers no reason why the Rule 45 subpoena process is inadequate for the task at hand, and none of its arguments support its position here.

First, seeking to avoid plenary review of the Magistrate Judge's Order, OpenAI contends that the Order may be reviewed only for clear error. But the facts as to possession, custody, or control—reflected in an unrebutted declaration of an xAI employee—are not in dispute. Instead, Plaintiffs' Objection turns on the question of what constitutes "control" under Rule 34(a) over documents held by separate corporate entities with a shared executive. That is a purely legal issue that this Court reviews *de novo*.

---

[1] Capitalized terms not not defined herein have the same meaning given to them in Plaintiffs' Objection, Dkt. No. 286. "Opposition" or "Opp." refers to OpenAI's Brief In Response to Plaintiffs' Rule 72(a) Objection to Magistrate Judge Hal R. Ray's May 13, 2026 Ruling and Their Request for a Stay of that Order.

Second, OpenAI asserts that Plaintiffs can be compelled to produce nonparty entities' documents because xAI shares a CEO with those companies, and Mr. Musk can produce his own emails. But Mr. Musk is not a party to this litigation. OpenAI's own cases are telling: they are ones in which *parties* were compelled to produce their own emails from various email accounts. That is simply not the case here: OpenAI's Opposition, like the Order, collapses the distinctions between Plaintiffs and Mr. Musk to treat Mr. Musk as though he were the plaintiff in this case. No case that OpenAI cites supports such a proposition, which tramples over first principles of U.S. corporate law and the ordinary Rule 45 subpoena process to obtain information from nonparties.

Third, OpenAI claims that it is appropriate for Plaintiffs to produce Mr. Musk's Tesla and SpaceX emails because Mr. Musk used those emails to conduct X and xAI business related to this case. But even if that unsupported claim were true, it would be a reason for OpenAI to pursue its third-party subpoenas on Tesla and SpaceX to produce such emails, not for Plaintiffs—who literally do not have access to Tesla's and SpaceX's email systems—to do so. OpenAI conflates two logically distinct issues: whether a source may contain relevant documents and the proper procedural path to seek those documents.

In any event, the evidence on which OpenAI relies does not support its contention that Mr. Musk conducted X and xAI business via his Tesla or SpaceX email accounts. As the Objection explained, the single text-message exchange between Mr. Musk and an Apple executive discussed satellites and the auto industry, and the mere fact that Mr. Musk confirmed that he could be reached at his Tesla and SpaceX addresses does not imply that he conducted X or xAI business with Apple through those emails. Indeed, OpenAI does not deny that if anyone at Apple had contacted Mr. Musk at his Tesla and SpaceX email addresses to discuss matters

2

relevant to X or xAI, Apple could and would have produced those emails. Apple has not done so. That leaves only a single email from a venture capitalist and SpaceX investor, Jon Shulkin, who briefly served as xAI's interim CFO, to Mr. Musk's SpaceX address, to which Mr. Musk never responded. While OpenAI says that the email shows that Mr. Shulkin knew that he should send relevant materials to Mr. Musk's SpaceX email address, it actually shows the opposite. If Plaintiffs' personnel believed they should contact Mr. Musk at other email addresses, there would be other such emails in the 30,000-plus documents that Plaintiffs have produced so far. Yet OpenAI cites no other email.

For all its rhetoric about Mr. Musk's companies, OpenAI nowhere denies that it has already subpoenaed Tesla and SpaceX under Rule 45. Nor does it provide any reason why it cannot obtain any relevant documents, if they exist, through a Rule 45 subpoena. What OpenAI cannot do—and what the Order erroneously allowed—is demand that the Court treat Tesla and SpaceX as though they are the same as X and xAI merely because those entities share a common executive. That sets a dangerous precedent, and for no good reason. The Court should curb OpenAI's overreach and sustain Plaintiffs' Objection.

## ARGUMENT

The Court should sustain Plaintiffs' Objection because the Order's holding that Plaintiffs must produce Mr. Musk's Tesla and SpaceX emails is "contrary to law." *Hirsch v. USHealth Advisors, LLC*, No. 4:18-cv-00245-P, 2020 WL 1271374, at *2 (N.D. Tex. Mar. 12, 2020) (quoting Fed. R. Civ. P. 72(a)). OpenAI tries to elevate the standard of review by claiming that Plaintiffs must show "clear[] error[]," since "plaintiffs' arguments concern 'factual determinations.'" Opp. 2 (quoting *Hirsch*, 2020 WL 1271374, at *2). But as this Court made clear in *Hirsch*, the clear-error standard applies only when the objecting party asks the District

Court to "disturb a factual finding." 2020 WL 1271374, at *2 (quotation marks omitted). That is not what Plaintiffs are doing here.

To the contrary, Plaintiffs' objection is that the Order misapplied the law, including by overlooking in-district case law on what it means for one company to have control over another company and on assessing the standard for determining when one company must search additional sources for responsive documents. *See* Obj. 9-16. Those "legal conclusions are reviewed *de novo*." *Hirsch*, 2020 WL 1271374, at *2 (quotation marks omitted).[2] And as Plaintiffs demonstrated in their Objection, the Order erroneously accepted OpenAI's argument that Plaintiffs have "control" over files they cannot access.

## I.    OpenAI Cannot Salvage The Order's Erroneous Ruling That Plaintiffs Have Control Over Tesla's and SpaceX's Documents

As Plaintiffs demonstrated, an unrebutted declaration from a party's in-house lawyer explaining that the party lacks control over a nonparty's files means that the party cannot be compelled to produce the nonparty's files. Obj. 8-9 (citing, e.g., *CFE Int'l LLC v. Schnaas*, Civ. A. No. H-22-3385, 2025 WL 438568, at *3 (S.D. Tex. Feb. 7, 2025)). And Plaintiffs submitted such a declaration here—which OpenAI never rebutted—explaining that Plaintiffs lack access to Tesla's and SpaceX's emails. Obj. 9.[3]

---

[2] In any event, the Magistrate Judge's application of "the wrong legal standard" would be "an abuse of discretion" that would require overturning his ruling even if a higher standard of review applied. *Hirsch*, 2020 WL 1271374, at *2 (quotation marks omitted); *see also Koon v. United States*, 518 U.S. 81, 100 (1996) ("A district court by definition abuses its discretion when it makes an error of law.").

[3] While OpenAI derides that sworn statement, calling it a "form declaration from [Mr. Musk's] subordinate," Opp. 5, OpenAI offers no facts to suggest that the declaration is untrue. The insinuation that the declarant—a senior lawyer at Plaintiffs—perjured herself is, frankly, offensive, especially when OpenAI lacks any basis for that implication. *See Dondi Props. Corp. v. Com. Sav. & Loan Ass'n*, 121 F.R.D. 284, 288 (N.D. Tex. 1988) (en banc) ("Effective advocacy does not require antagonistic or obnoxious behavior . . . ." (quotation marks omitted)).

OpenAI disputes none of this. Like the Order, OpenAI's Opposition does not even mention *CFE* or any other of the authorities Plaintiffs cited standing for the same principle. Instead, OpenAI says that its theory of control "does not depend" on whether *Plaintiffs* can access Tesla's and SpaceX's emails; it depends on whether *Mr. Musk* "can access his own emails." Opp. 4 (emphasis omitted). Yet as Plaintiffs have explained, and OpenAI must concede, Mr. Musk is not a party to this action. Obj. 11. That matters because Plaintiffs are "distinct" from their "stockholders, officers and directors," including Mr. Musk. *Jones v. Wells Fargo Bank, N.A.*, 666 F.3d 955, 965 (5th Cir. 2012) (quotation marks omitted). An order directed to Plaintiffs is thus distinct from an order directed to Mr. Musk.

OpenAI has no answer to the argument that its logic proves too much. By OpenAI's logic, if the president of a major university also serves as the chair of an independent charitable organization, then the university would have "control" over, and could itself be required to search and produce, the charitable organization's documents and emails simply because the president "can access" them. *See* Obj. 12 & n.3. OpenAI claims the Order is "narrower," but it offers no limiting principle. Absent veil-piercing (which has not been alleged here), Plaintiffs and Mr. Musk are not interchangeable, and Plaintiffs do not and cannot control the emails Mr. Musk "can access," just as Plaintiffs do not control the bank accounts or homes that Mr. Musk "can access."

Unable to cite cases supporting its novel argument that Plaintiffs have control over emails in the files of Tesla and SpaceX, OpenAI ignores the consequences of the principle it advances entirely. None of the authorities it cites grapples with the distinction between what is in a corporate defendant's control and what is within the control of an executive of that defendant. As Plaintiffs have already explained, *Musk v. Altman* was a case in which Mr. Musk was a party, so

5

in ordering Mr. Musk to produce his Tesla and SpaceX emails, the court there followed the principle that "an individual party to a lawsuit can be compelled to produce relevant information and documents relating to a non-party corporation of which it is an officer, director, or shareholder." No. 24-cv-04722-YGR (TSH), 2025 WL 2348769, at *1 (N.D. Cal. July 1, 2025) (quotation marks and alteration omitted); *see* Obj. 11. So too in *MWK Recruiting, Inc. v. Jowers*, where the court compelled Evan Jowers, *the defendant*, to produce documents from a nonparty company of which he was one of two employees and that was so associated with him that, "[t]ellingly, [the company's] URL and domain name *is* Jowers' name: www.evanjowers.com." No. 1:18-CV-0444, 2020 WL 1987921, at *2 (W.D. Tex. Apr. 27, 2020). Here, in contrast, Tesla and SpaceX are distinct companies, one of which is publicly owned and the other is about to be, and OpenAI has made no showing that either is an alter ego of Plaintiffs or Mr. Musk. *See* Obj. 3-4.

By eliding the distinction between Mr. Musk and the entities he serves, the Order allows parties to bypass the Rule 45 subpoena process and bootstrap together companies that share executives to conclude that each of them controls the other's documents. *See* Obj. 12-13. OpenAI waves away this concern, claiming that a party will not be compelled to produce a nonparty's documents unless their common executives "interchangeabl[y] use[s] . . . his email accounts at each one." Opp. 5. But the Magistrate Judge never found that Mr. Musk uses his various email accounts interchangeably. The Magistrate Judge's conclusion was that "[m]aybe" Mr. Musk had responsive emails in his Tesla and SpaceX accounts. Dkt. No. 287 at App. 40; *see* Obj. 5-6, 14 n.4; *infra* Pt. II. In any event, however, OpenAI's argument rests on a logical error: whether an executive uses accounts at different companies may affect *the relevance* of those accounts to discovery, but it does not affect whether one company has *control* over the other company's

accounts or whether they should be sought through a Rule 45 subpoena. Nor does OpenAI offer a clear and workable rule for when one corporation has control over another corporation's documents, even though legal certainty in this area is important for businesses.

OpenAI's concern that sustaining the Objection here would allow "CEOs like Musk to evade their discovery obligations simply by using email accounts from distinct entities," Opp. 5, ignores that Rule 45 establishes a process to obtain documents from distinct entities, *see* Obj. 13. Indeed, OpenAI provides no explanation why Rule 45 is an inadequate mechanism here. At most, OpenAI claims that Tesla and SpaceX have not yet produced documents and that *Plaintiffs*—distinct entities from Tesla and SpaceX—"have provided no credible assurance that additional documents are forthcoming." Opp. 7. But Plaintiffs do not speak for Tesla and SpaceX.[4] OpenAI nowhere denies that it has not availed itself of the tools to enforce its subpoenas against those companies. *See* Fed. R. Civ. P. 45(d)(2)(B)(i). It instead insists on deploying a first-of-its kind tactic: forcing a party to produce documents from nonparties because of overlapping executives instead of simply seeking the documents from the nonparties themselves through a Rule 45 subpoena. OpenAI essentially seeks a novel solution to a nonexistent problem, and one that raises serious due process concerns by effectively determining the rights of non-party entities Tesla and SpaceX without affording those entities notice or an opportunity to be heard—the very protections Rule 45 subpoenas are designed to provide. *See* Obj. 10-11. Indeed, OpenAI does not cite a single case in which a court endorsed such a procedure. This case should not be the first to do so.

---

[4] Tesla and SpaceX have separate counsel representing them in connection with the third-party subpoenas served on them by OpenAI. After the Magistrate Judge issued his Order, Plaintiffs' counsel shared that Order with Tesla's and SpaceX's counsel along with the search terms that Plaintiffs have used to locate documents potentially responsive to OpenAI's requests for production. Plaintiffs understand that Tesla and SpaceX's counsel are in the process of collecting and reviewing documents using those terms. App'x Tab 1, at App. 8.

II.   **OpenAI Does Not Show That Mr. Musk Used His Tesla Or
      SpaceX Email Account To Conduct Business Related To This Case**

Even if Plaintiffs had control over Mr. Musk's Tesla and SpaceX emails, the Magistrate Judge had to first find a deficiency in Plaintiffs' production before compelling them to search those additional sources. *See* Obj. 13 (citing *VeroBlue Farms USA Inc. v. Wulf*, 345 F.R.D. 406, 420 (N.D. Tex. 2021)). OpenAI does not deny that the Order cited no such deficiency and that the Magistrate Judge admitted that "[m]aybe there aren't any" responsive emails in Mr. Musk's Tesla and SpaceX accounts. Obj. 13-14 & n.4. OpenAI instead offers four arguments supposedly requiring a search of Mr. Musk's Tesla and SpaceX accounts. Each of them fails.

First, OpenAI wrongly claims that Mr. Musk "tells the world to use his SpaceX and Tesla emails, even when dealing with X and xAI business." Opp. 5 (emphasis omitted). All it cites to support that sweeping statement is a single text-message exchange between Mr. Musk and an Apple executive in which *the Apple executive* asked whether he could contact Mr. Musk at his Tesla and SpaceX accounts (in a conversation that discussed Tesla's and SpaceX's businesses), and Mr. Musk responded, "Yeah," but said that texting was a better way of contacting him. *See id.*; *see also* Obj. 14-15 (discussing text-message exchange). That single text message did not "tell[] the world" anything, and it says nothing about using those addresses for X or xAI business, let alone business relevant to this litigation. Since Apple never produced a single email to Mr. Musk at either address, it is reasonable to assume that Apple did not understand him to be saying as much. *See* Obj. 15. Worse still, OpenAI ignores that the primary subject of the exchange was an Apple executive's attempt to broker a discussion between Mr. Musk and Apple CEO Tim Cook about topics including satellites and the auto industry—topics pertaining to SpaceX's and Tesla's businesses, not X's or xAI's. And if that attempt to arrange a meeting between Mr. Musk and Mr. Cook purportedly indicates that Mr. Musk has documents relevant to

8

this case at his Tesla and SpaceX email addresses, then it raises the question why Apple is exempt from producing *any* of Mr. Cook's documents, including from his Apple email address. Obj. 3, 16. Defendants have no answer.

Second, OpenAI points out that the text messages between Mr. Musk and an Apple executive "appear to include [Mr. Musk's] Tesla email address as a recipient." Opp. 6 (emphasis omitted). But this does not prove anything. At most, it shows that the Apple executive, as part of a text-message conversation about "the auto industry," sent a message to both Mr. Musk's phone and his Tesla email address.

Third, OpenAI cites a lone email in which xAI's then-interim CFO (who is also a venture capital investor in SpaceX) emailed financial information to Mr. Musk's SpaceX address. *Id.* But if that email really showed that xAI's CFO "knew where his CEO should be contacted about business matters relating to xAI," *id.*, then there would be other emails to Mr. Musk's SpaceX account in the tens of thousands of documents Plaintiffs have already produced. There are not, and OpenAI identifies none. *See* Obj. 15-16.

Finally, OpenAI trots out an argument that Plaintiffs have produced few emails and text messages from Mr. Musk. Opp. 6. But OpenAI overlooks that Mr. Musk simply may not have communicated much about this case. After all, as is evident from the Complaint and as Plaintiffs have demonstrated, this action concerns Apple and OpenAI's collusive agreement, not Mr. Musk's own conduct. Obj. 14. As for other forms of communication, OpenAI ignores that Plaintiffs "had to build a tool to process and review" XChats, Dkt. No. 287 at App. 31, and will produce any responsive XChats by their deadline to do so. OpenAI cannot use that fact to search and produce files from separate entities.

9

### III.    The Court Should Stay The Order Pending The Objection

OpenAI offers no reason to deny Plaintiffs' stay motion other than the fact that Plaintiffs moved shortly before their deadline to comply with the Order. Opp. 8. But when they filed this Objection, Plaintiffs sought expedition to request that the Objection be heard before the deadline the Magistrate Judge set for compliance. They sought a stay only because the Court had not yet expedited briefing. To allow the Objection to be decided on the merits, the Court should stay Plaintiffs' deadline to produce Mr. Musk's Tesla and SpaceX emails, over which they lack possession, custody, or control. Requiring Plaintiffs to produce documents they cannot access would force them either to violate the Order or to attempt the legally impossible—precisely the irreparable harm that warrants a stay. OpenAI, by contrast, faces no prejudice: its Rule 45 subpoenas to Tesla and SpaceX remain available, and it can continue to confer with those companies regarding those subpoenas.

### CONCLUSION

For the foregoing reasons, the Court should sustain Plaintiffs' Objection. If the Court does not rule on the Objection before the June 3 deadline for Plaintiffs to comply, the Court should partially stay the Magistrate Judge's May 13, 2026 Order insofar as it requires Plaintiffs to produce Mr. Musk's Tesla and SpaceX emails pending its resolution of Plaintiffs' Objection, which documents Plaintiffs do not control and cannot produce. *See supra* note 4.

Dated: June 1, 2026

Respectfully submitted,

*/s/ Bradley Justus*

Bradley Justus
N.D. Tex. Bar No. 1007988DC
DC Bar No. 1007988
AXINN, VELTROP & HARKRIDER LLP
1901 L Street NW
Washington, DC 20036
T: (202) 912-4700
F: (202) 912-4701
bjustus@axinn.com

Charles W. Fillmore
Texas Bar No. 00785861
BROWN PRUITT WAMBSGANSS
DEAN FORMAN & MOORE, P.C.
201 Main Street, Suite 700
Fort Worth, TX 76102
T: (817) 338-4888
cfillmore@brownpruitt.com

Alexander M. Dvorscak
STONE | HILTON PLLC
2000 West Loop South, Suite #1500
Houston, TX 77027
alex@stonehilton.com

*admitted pro hac vice*

*/s/ Scott A. Eisman*

Craig M. Reiser
N.D. Tex. Bar No. 4886735NY
NY State Bar No. 4886735
Scott A. Eisman
N.D. Tex. Bar No. 4905287NY
NY State Bar No. 4905287
Eva Yung*
NY State Bar No. 5497300
Christopher Erickson
N.D. Tex. Bar No. 5800628NY
NY State Bar No. 5800628
AXINN, VELTROP & HARKRIDER LLP
630 Fifth Avenue, 33rd Floor
New York, NY 10111
T: (212) 728-2200
F: (212) 728-2201
creiser@axinn.com
seisman@axinn.com
eyung@axinn.com
cerickson@axinn.com

*/s/ Judd E. Stone II*

Judd E. Stone II
Texas Bar No. 24076720
Christopher D. Hilton
Texas Bar No. 24087727
STONE | HILTON PLLC
600 Congress Ave., Ste. 2350
Austin, TX 78701
T: (737) 465-3897
judd@stonehilton.com
chris@stonehilton.com

Noah Schottenstein
Texas Bar No. 24100661
STONE | HILTON PLLC
301 Commerce St., Suite 2360
Fort Worth, TX 76102
T: (737) 465-3897
noah@stonehilton.com

*Attorneys for Plaintiffs X Corp. and
X.AI LLC*

11

## <u>CERTIFICATE OF SERVICE</u>

I certify that on June 1, 2026, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF system for filing. A notice of electronic filing was transmitted to all ECF registrants of record.

*/s/ Scott A. Eisman*
Scott A. Eisman