UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**X CORP., ET AL.,**

Plaintiffs,

v.                                                     **No. 4:25-cv-00914-P**

**APPLE, INC., ET AL.,**

Defendants.

## ORDER

Before the Court is the Plaintiff's Objection to Magistrate Judge Ray's Order. ECF No. 279. After considering the relevant law, applicable docket entries, and relevant facts, the Court hereby **ORDERS** that the Objection is **OVERRULED** and Judge Ray's findings are **AFFIRMED**. Accordingly, the Motion to Stay is **MOOT**. ECF No. 307. The Court reviews all factual findings to assess whether they are "clearly erroneous" and legal findings *de novo*.

At issue is whether the Plaintiffs, X and xAI, must turn over business email accounts controlled by its high-level executive officer and owner Elon Musk at SpaceX and Tesla pursuant to Fed. R. Civ. P 34—Musk also owns those companies and serves as a high-level executive officer. Under Rule 34(a)(1), a "party may serve on any other party a request within the scope of Rule 26(b)" if the material is within the "responding party's possession, custody, or control." Fed. R. Civ. P 34(a)(1). On May 13, 2026, after considering the pleadings and oral arguments of counsel, Magistrate Judge Ray said yes. ECF No. 274. Additionally Judge Ray determined that responsive documents in Musk's emails at Tesla and SpaceX and his other text and XChat accounts should be produced to the extent they relate to the claims and defenses at issue in this case.

Here, because there is reason to believe Musk may be conducting X and/or xAI business on his SpaceX and Tesla business email accounts,

the emails are discoverable and should be produced. Those pieces of evidence coupled with Musk's ownership and high-level roles in these companies compel the Court to this holding. Indeed, "[c]entral to each case is the relationship between the party and the person or entity having actual possession of the document" and "[t]he determination of control is often fact-specific." *Inland Concrete Enterprises, Inc. v. Kraft Americas, L.P.*, No. CV 10-1775-VBF (OPx), 2011 WL 13209239, at *3 (C.D. Cal Feb. 3, 2011); *see also Musk v. Altman*, No. 24-cv-04722-YGR (TSH), 2025 WL 2348769, at *1 (N.D. Cal. July 1, 2025). Musk owns and operates all three companies and has actual possession and control of the material at issue. So through Musk, X and xAI have the "requisite relationship" with SpaceX and Tesla because the Plaintiffs "can order the person or entity in actual possession of the documents to release them" to the extent they pertain to business conducted for X and xAI. *Inland Concrete Enterprises, Inc.*, 2011 WL 13209239, at *3. Not only do Plaintiffs have legal rights to those emails, but practically speaking they have actual control over those emails since Musk owns and controls all entities at issue.

As mentioned, the record also provides specific reasons to believe Musk may be Plaintiffs' conducting business on his other email accounts. For example, xAI's CFO sent xAI financial updates to Musk's SpaceX email address. ECF No. 278-2 at App. 89. That alone is sufficient to compel discovery here because X and xAI have the right to obtain documents when a CEO uses non-company email accounts to conduct company business—whether those are personal email accounts or not is not dispositive. *See Ultravision Techs., LLC v. Govision, LLC*, 2:18-cv-00100-JRG-RSP, 2020 WL 10692709, at *2 (E.D. Tex. Aug. 28, 2020). Otherwise, executives would be incentivized to shield information from discovery simply by using a different company's email address. What's more, there is evidence that Musk told an Apple executive officer that he could communicate with him at his Tesla and SpaceX accounts to discuss "an update on X about the election, advertising, etc.," "an overview of xAI in terms of model/product goals, infrastructure overview," and "views on AI." App'x Tab 2 at A26–27. Lastly there are

text messages from Musk that include his Tesla email as a recipient. *See, e.g.*, App'x Tab 2 at A25.

Indeed, a very similar situation arose last year in *Musk v. Altman*, wherein the court ruled that "an individual party to a lawsuit can be compelled to produce relevant information and documents relating to a non-party corporation of which it is an officer, director, or shareholder," and thus ordered Musk to turn over those materials from those same email accounts even though Musk and xAI were the Plaintiffs. 2025 WL 2348769, at *1 (cleaned up). It is true, as Plaintiffs point out, that Musk himself was a Plaintiff in that case unlike here. But considering the unique relationship Musk possesses with these companies as owner and executive and the evidence that he may have been conducting business on those accounts, the Court deems it appropriate to order the Plaintiffs to produce these documents. X and xAI control emails sent and received by their CEO pertaining to their own business, and if business was conducted on those separate email accounts, those are within Plaintiffs' control too. While it is relevant that the accounts are named after and purportedly used for different corporate entities, that difference cannot serve as a shield under these circumstances detailed above.

To the extent Plaintiffs claim that Defendants have failed to find a deficiency in the discovery already produced, that argument fails because there are only ten emails and two text message records from Musk on point. Musk's seemingly monumental concerns about Defendants' endeavors leads the Court to believe that relevant records and communications are missing from discovery.

**SO ORDERED** on this **2nd day of June 2026.**

_____
Mark T. Pittman
UNITED STATES DISTRICT JUDGE

3