**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

X CORP. and SPACEXAI LLC,

Plaintiffs,

v.

APPLE, INC., OPENAI, INC., OPENAI, LLC and OPENAI OPCO, LLC,

Defendants.

Civil Action No. 4:25-cv-00914-P

**MEMORANDUM IN SUPPORT OF THE MOTION OF THE WASHINGTON FREE BEACON TO INTERVENE AND UNSEAL JUDICIAL RECORDS**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................ 5

BACKGROUND ........................................................................................................ 5

ARGUMENT ........................................................................................................ 6

I. The Court should grant *The Washington Free Beacon's* motion to intervene. .................. 6

II. *The Washington Free Beacon* is entitled to inspect the sealed materials under the common law right of access to judicial records. ........................................................................ 8

III. The Court should grant *The Washington Free Beacon's* motion to unseal. .................... 9

A. The records should be unsealed under the common law right of access because this matter is of intense public interest. ........................................................................ 9

B. The Court's justification for sealing was not adequately specific. ............................... 12

CONCLUSION ........................................................................................................ 13

# TABLE OF AUTHORITIES

## Cases


*8fig, Inc. v. Stepup Funny,* LLC, 135 F.4th 285 (5th Cir. 2025)....................6, 7

*8fig, Inc. v. Stepup Funny,* LLC, No. 1:23-cv-943-RP, 2023 U.S. Dist. LEXIS 246629 (W.D. Tex. Nov. 6, 2023)....................8

*Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410 (5th Cir. 2021)....................5, 8, 9, 11, 12

*BP Expl. & Prod., Inc. v. Claimant ID 100246928*, 920 F.3d 209 (5th Cir. 2019)....................12

*California ex rel. Lockyer v. Safeway, Inc.*, 355 F. Supp. 2d 1111 (C.D. Cal. 2005)....................10

*Floral Acct. Sys. v. Florists' Transworld Delivery, Inc.*, No. 06-cv-1098, 2008 WL 2224416 (W.D. La. May 29, 2008)....................10

*In re Sealing & Non-Disclosure of Pen/Trap/2703(d) Orders*, 562 F. Supp. 2d 876 (S.D. Tex. 2008)....................8

*Jostens Inc. v. Haarsma*, No. 3:22-cv-796-X, 2023 U.S. Dist. LEXIS 171321 (N.D. Tex. Sept. 26, 2023)....................8–9

*June Med. Servs.,* LLC *v. Phillips*, 22 F.4th 512 (5th Cir. 2022)....................8, 9, 12

*Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589 (1978)....................8

*Rotstain v. Mendez*, 986 F.3d 931, 937 (5th Cir. 2021)....................7

*SEC v. Van Waeyenberghe*, 990 F.2d 845 (5th Cir. 1993)....................9

*Shane Grp. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299 (6th Cir. 2016)....................9, 10

*Texas Trib. v. Caldwell Cnty.*, 121 F.4th 520 (5th Cir. 2024)....................6

*United States v. Ahsani*, 76 F.4th 441 (5th Cir. 2023)....................12

*United States v. Holy Land Found. for Relief & Dev.*, 624 F.3d 685 (5th Cir. 2010)....................12

*United States v. Ladd*, 218 F.3d 701 (7th Cir. 2000)....................12

*United States v. Planned Parenthood Fed'n of Am.*, No. 2:21-cv-22-Z, 2024 WL 3223928 (N.D. Tex. June 21, 2024)....................8

*United States v. Vaughan*, No. 4:22-cr-162-ALM-BD, 2024 WL 5319607 (E.D. Tex. Nov. 27, 2024)....................11

*United States ex rel. Hernandez v. Team Fin.,* LLC, 80 F.4th 571 (5th Cir. 2023)....................6, 7

*Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*, 913 F.3d 443 (5th Cir. 2019)....8, 9, 11

*X Corp. v. Apple, Inc.*, No. 4:25-cv-00914-P (N.D. Tex.)....................................................7, 13

*Zadeh v. Robinson*, No. 1:15-cv-598-RP, 2017 WL 532315 (W.D. Tex. Feb. 9, 2017)............12

**Rules and Statutes**

Fed. R. Civ. P. 24(b)(1), (3)..........................................................................................6, 7

**Other Authorities**

Kate Conger, *Elon Musk's xAI Sues Apple and OpenAI over Claims it is Being Shut Out*, N.Y. Times (Aug. 25, 2025), https://www.nytimes.com/2025/08/25/technology/elon-musk-xai-sues-apple.html [https://perma.cc/VXX7-R569]. ..............................................................10

Madlin Mekelburg, *OpenAI, Apple Lose Bid to Toss Musk xAI Suit Over Competition*, Bloomberg L. (Nov. 13, 2025), https://news.bloomberglaw.com/antitrust/openai-apple-lose-bid-to-toss-musk-xai-suit-over-competition [https://perma.cc/5M9X-5XH8]...............................10

Rae Ann Varona, *OpenAI 'Persistently Evaded' Antitrust Suit Discovery, X Says*, Law360 (Apr. 10, 2026), https://www.law360.com/articles/2464006/openai-persistently-evaded-antitrust-suit-discovery-x-says [https://perma.cc/3WLY-ZWCF] .................................................................10

Rolfe Winkler, *Elon Musk's xAI Sues Apple and OpenAI, Alleging They Are Monopolists*, Wall St. J. (Aug. 25, 2025) https://www.wsj.com/tech/ai/elon-musks-xai-sues-apple-openai-alleging-monopolists-thwart-ai-competition-683f21b4?eafs_enabled=false [https://perma.cc/26UZ-Y3X7] ....................................................................................................................................10

## INTRODUCTION

The common-law right of access to judicial records is the most fundamental safeguard of the public's faith in the Judiciary's integrity and legitimacy. But "[a]ll too often, judicial records are sealed without any showing that secrecy is warranted or why the public's presumptive right of access is subordinated." *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 421 (5th Cir. 2021).

This is a high-profile antitrust case brought by xAI against OpenAI and Apple. xAI moved to seal the bulk of two briefs and hundreds of pages of supporting exhibits without articulating any specific harm that would result from disclosure. The Court obliged. Now, *The Washington Free Beacon* seeks to intervene for the limited purpose of unsealing the subject filings in this case.

## BACKGROUND

*The Washington Free Beacon* seeks to inspect sealed documents filed in connection with two discovery motions. The first set includes xAI's opposition brief and appendix to OpenAI's motion to compel production of documents authored by Elon Musk and communications with investors regarding xAI's valuation. ECF Nos. 206, 207. The publicly available versions are heavily redacted, with seventeen of twenty-two exhibits completely sealed. The Court granted xAI's unopposed motion to seal in a two-line order. ECF No. 226.

The second set includes xAI's brief and appendix in support of its motion for leave to depose senior executives at OpenAI and Apple—including Tim Cook and Sam Altman. ECF Nos. 192, 193. Both documents are heavily redacted. The Court granted xAI's unopposed motion to seal without mentioning the public's right of access. ECF No. 199.

## ARGUMENT

### I. The Court should grant *The Washington Free Beacon's* motion to intervene.

*The Washington Free Beacon* has standing to intervene and satisfies the requirements for intervention for the limited purpose of seeking unsealing under Rule 24. *See* Fed. R. Civ. P. 24(b)(1), (b)(3). The Court should accordingly grant the motion to intervene.

First, *The Washington Free Beacon* has suffered a cognizable informational injury because it is being denied access to judicial records it wishes to inspect as part of its news-gathering activities. *United States ex rel. Hernandez v. Team Fin.,* LLC, 80 F.4th 571, 577 (5th Cir. 2023); *see also 8fig, Inc. v. Stepup Funny* LLC, 135 F.4th 285, 292–93 (5th Cir. 2025) (permitting intervention by journalists and media organizations). This injury is particularized as *The Washington Free Beacon* actively covers the technology industry, antitrust enforcement, litigation involving Elon Musk's and Sam Altman's companies, and the emergence and adoption of artificial intelligence. The sealed materials—over 800 pages of documents relating to critical questions in this antitrust dispute which bear directly on whether senior executives at Apple and OpenAI, including Tim Cook and Sam Altman, participated in an alleged anticompetitive scheme—are uniquely relevant to *The Washington Free Beacon's* specialized reporting. *See Texas Trib. v. Caldwell Cnty.*, 121 F.4th 520, 527 (5th Cir. 2024) (holding that news organizations suffer an injury in fact when policies frustrate their ability to keep the public informed regarding crucial parts of the judicial system and when organizations are "effectively barred from carrying out their missions"). *The Washington Free Beacon* has published articles about this very case and has a demonstrated track record of reporting on the intersection of technology policy, competition law, and the judicial process, so it is "uniquely well-qualified to study and publicize" the information contained in the sealed records, "which information [it] can get nowhere else." *Hernandez*, 80

F.4th at 577. The sealed appendices contain hundreds of pages of judicial records that *The Washington Free Beacon* cannot discuss in its reporting on the case.

Second, *The Washington Free Beacon's* injury is fairly traceable to xAI's unopposed motions to seal and the Court's orders granting those motions. *See id.* at 577 (stating that the deprivation of information is fairly traceable to the sealing of judicial records and could be remedied by unsealing them).

Third, *The Washington Free Beacon's* injury would be redressed by a favorable decision granting access to the sealed records, remedying its informational injury. *See 8fig*, 135 F.4th at 292. *The Washington Free Beacon* thus has standing to intervene to move to unseal.

*The Washington Free Beacon* also satisfies the requirements for permissive intervention. Under Rule 24(b), a "court may permit anyone to intervene who" files a "timely motion" and "has a claim or defense that shares with the main action a common question of law or fact," so long as intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(1), (3). This motion is timely. Timeliness is measured from the point at which the intervenors know their interests would no longer be protected. *Rotstain v. Mendez*, 986 F.3d 931, 937 (5th Cir. 2021). It became clear that *The Washington Free Beacon's* journalistic interest in reviewing the subject records was restricted only when the Court granted the motions to seal on April 16 and April 27, 2026. Order Granting Mot. 190, *X Corp. v. Apple, Inc.*, No. 4:25-cv-00914-P (N.D. Tex. Apr. 16, 2026), ECF No. 199.

Next, *The Washington Free Beacon* has a claim that provides a basis for intervention. The Fifth Circuit construes Rule 24(b)'s "claim or defense" requirement "liberally," and has consistently held that it is satisfied where nonparties "seek only to challenge record-related restrictions." *Hernandez*, 80 F.4th at 577–78. Finally, permitting intervention will not prejudice

the parties or result in undue delay. *The Washington Free Beacon* seeks to intervene only to assert its own right to obtain access to and report on the sealed judicial records.

Rule 24(b) motions allowing media organizations to intervene for the purpose of unsealing judicial records have been routinely granted in similar circumstances. *See, e.g.*, *United States v. Planned Parenthood Fed'n of Am.*, No. 2:21-cv-22-Z, 2024 WL 3223928, at *1 (N.D. Tex. June 21, 2024); *8fig, Inc. v. Stepup Funny,* LLC, No. 1:23-cv-943-RP, 2023 U.S. Dist. LEXIS 246629, at *10 (W.D. Tex. Nov. 6, 2023). The Court should do the same here.

**II. *The Washington Free Beacon* is entitled to inspect the sealed materials under the common law right of access to judicial records.**

The Supreme Court has long recognized that the public has a "general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). As the Fifth Circuit has explained, "[j]udicial records belong to the American people; they are public, not private, documents," and "[t]he public's right of access to judicial records is a fundamental element of the rule of law." *Exeter Fin. Corp.*, 990 F.3d at 417; *see also June Med. Servs.,* LLC *v. Phillips*, 22 F.4th 512, 520 (5th Cir. 2022) (same). "Once a document is filed on the public record it becomes a 'judicial record'" subject to the common law right of access. *Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*, 913 F.3d 443, 451 (5th Cir. 2019). This includes "pleadings, documents, affidavits, exhibits, and other materials filed by a party or admitted into evidence by the court." *In re Sealing & Non-Disclosure of Pen/Trap/2703(d) Orders*, 562 F. Supp. 2d 876, 890 (S.D. Tex. 2008).

The common law right of access attaches to the sealed documents that *The Washington Free Beacon* seeks to inspect. These documents—briefs and appendices supporting the parties' positions—are intended to influence the Court in its exercise of judicial authority and are judicial records. *See Jostens Inc. v. Haarsma*, No. 3:22-cv-796-X, 2023 U.S. Dist. LEXIS 171321, at *2–

*3 (N.D. Tex. Sept. 26, 2023) (applying common law right of access framework to documents in appendix to brief in support of motion to compel). *The Washington Free Beacon* is accordingly entitled to inspect and copy the sealed judicial records.

## III. The Court should grant *The Washington Free Beacon's* motion to unseal.

### A. The records should be unsealed under the common law right of access because this matter is of intense public interest.

Before sealing judicial records, a court "must balance the public's common law right of access against the interests favoring nondisclosure." *SEC v. Van Waeyenberghe*, 990 F.2d 845, 848 (5th Cir. 1993). "The secrecy of judicial records… must be justified and weighed against the presumption of openness that can be rebutted only by compelling countervailing interests favoring nondisclosure." *Exeter Fin. Corp.*, 990 F.3d at 421. Accordingly, the party seeking a sealing order must articulate a "specific harm that would be caused by the disclosure of the documents," one that is serious enough to override the public's strong interest in access. *Vantage Health Plan*, 913 F.3d at 451. And the required showing is correspondingly higher where "the case 'involves matters of particularly public interest.'" *June Med. Servs*., 22 F.4th at 520; *see also Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016) ("[T]he greater the public interest in the litigation's subject matter, the greater the showing necessary to overcome the presumption of access"). The public interest in this case is strong.

First, this case involves allegations that two leading technology companies engaged in anticompetitive conduct that directly harms the public's ability to obtain accurate information, consumer choice, data privacy, and other issues of national importance in the smartphone and generative artificial intelligence chatbot markets. *See* Compl., ECF No. 1; ECF No. 192 at 4.

Moreover, the presumption in favor of access is particularly strong here, given that the case involves antitrust claims. By their very nature, antitrust violations distort competition across entire

industries, so the public accordingly has a heightened interest in access. *See, e.g.*, *Shane Grp.*, 825 F.3d at 305 (explaining that in antitrust cases "the public's interest is focused not only on the result, but also on the conduct giving rise to the case"); *Floral Acct. Sys. v. Florists' Transworld Delivery, Inc.*, No. 06-cv-1098, 2008 WL 2224416, at *3 (W.D. La. May 29, 2008) (unsealing judicial records in part because "antitrust claims are not private matters"); *California ex rel. Lockyer v. Safeway, Inc.*, 355 F. Supp. 2d 1111, 1125 (C.D. Cal. 2005) (concluding that there is a "strong public interest in access to allegations of antitrust injury to the public").

Second, the extensive media coverage concerning every development since the case was filed—including the ongoing discovery battles—further confirms that this case involves matters of intense public interest. *See, e.g.*, Rae Ann Varona, *OpenAI 'Persistently Evaded' Antitrust Suit Discovery, X Says*, Law360 (Apr. 10, 2026), https://www.law360.com/articles/2464006/openai-persistently-evaded-antitrust-suit-discovery-x-says [https://perma.cc/3WLY-ZWCF]; Madlin Mekelburg, *OpenAI, Apple Lose Bid to Toss Musk xAI Suit Over Competition*, Bloomberg L. (Nov. 13, 2025), https://news.bloomberglaw.com/antitrust/openai-apple-lose-bid-to-toss-musk-xai-suit-over-competition [https://perma.cc/5M9X-5XH8]; Rolfe Winkler, *Elon Musk's xAI Sues Apple and OpenAI, Alleging They Are Monopolists*, Wall St. J. (Aug. 25, 2025), https://www.wsj.com/tech/ai/elon-musks-xai-sues-apple-openai-alleging-monopolists-thwart-ai-competition-683f21b4?eafs_enabled=false [https://perma.cc/26UZ-Y3X7]; Kate Conger, *Elon Musk's xAI Sues Apple and OpenAI over Claims it is Being Shut Out*, N.Y. Times (Aug. 25, 2025), https://www.nytimes.com/2025/08/25/technology/elon-musk-xai-sues-apple.html [https://perma.cc/VXX7-R569]. The discovery disputes in this case go to the heart of the antitrust claims at issue and underscore the public's compelling interest in understanding the evidence underlying this high-stakes litigation. *See* ECF No. 139 at 4, 6 (denying in part Plaintiffs' motion

to compel production of OpenAI's source code); ECF No. 147 at 9–15 (OpenAI's motion alleging spoliation through use of auto-deleting messages).

Any nondisclosure interest cannot overcome the heightened public interest in access here. *The Washington Free Beacon* cannot fully engage with the parties' arguments contained in the sealed motions. But the substance of the briefs and the unredacted portions of the supporting appendices indicate that sealing was largely—if not exclusively—justified based on an asserted risk that disclosure would cause harm to the parties' competitive standing. Although this type of harm can justify sealing in certain circumstances, the Fifth Circuit has made clear that a "bald assertion of competitive harm is insufficient." *Vantage Health Plan*, 913 F.3d at 451. The party must instead "articulate a specific harm that would be caused by the disclosure of the documents." *Id.* The parties cannot satisfy this requirement by pointing generally to categories of information—such as "investor communications," "valuation data," or "internal business strategies"—without explaining what specific competitive harm would result from disclosure of each document or redaction. *See United States v. Vaughan*, No. 4:22-cr-162-ALM-BD, 2024 WL 5319607, at *3 (E.D. Tex. Nov. 27, 2024) (denying motion to seal where parties failed to explain what specific threat of competitive harm would arise from disclosure and failed to identify the particular portions of documents requiring protection). The extent of sealing of hundreds of pages here belies any suggestion that some particular competitive harm overrides the public's interest in access. No adequately specific threat of competitive harm could justify such extensive redactions.

Plaintiffs may have also invoked their confidentiality agreement to justify the redactions. But the terms of a confidentiality agreement do not dictate the scope of the public's right of access. The "standard for shielding records from public view is far more arduous" than the standard for obtaining a protective order. *Exeter Fin. Corp.*, 990 F.3d at 420. That a document qualifies for

protection under the parties' agreement thus "says nothing about whether it should be sealed once it is placed in the *judicial record*." *June Med. Servs.*, 22 F.4th at 521 (emphasis added); *see also BP Expl. & Prod., Inc. v. Claimant ID 100246928*, 920 F.3d 209, 211 (5th Cir. 2019) ("It is the *public* that has the right of access, so private litigants should not be able to contract that right away," especially given that "[m]ost litigants have no incentive to protect the public's right of access") (emphasis in original). Plaintiffs, therefore, cannot rely on their confidentiality agreement as a basis for sealing.

To be sure, *The Washington Free Beacon* does not contend that all the sealed materials must be disclosed without any redactions. But the burden falls on the party asserting confidentiality to affirmatively explain what its privacy interest is and how the court should weigh that interest against the public's right of access. *Zadeh v. Robinson*, No. 1:15-cv-598-RP, 2017 WL 532315, at *1 (W.D. Tex. Feb. 9, 2017). The parties have not met that burden here. The breadth of the redactions suggests that sealing was sought as a matter of convenience, not necessity.

Because Plaintiffs have not articulated any specific interest in avoiding disclosure that can override the public's strong interest in access, the Court should grant the motion to unseal.

**B. The Court's justification for sealing was not adequately specific.**

The starting point for any decision to seal a document is the "strong presumption that all trial proceedings should be subject to scrutiny by the public." *United States v. Holy Land Found. for Relief & Dev.*, 624 F.3d 685, 690 (5th Cir. 2010) (quoting *United States v. Ladd*, 218 F.3d 701, 704 (7th Cir. 2000)). The court must balance the public's interest in access against any countervailing interest in nondisclosure on a "document-by-document" and "line-by-line" basis. *Exeter Fin. Corp.*, 990 F.3d at 419 (citations omitted); *see also United States v. Ahsani*, 76 F.4th 441, 452 (5th Cir. 2023) (reaffirming the "document-by-document" and "line-by-line" analysis requirement). Indeed, this Court has recognized that it is "duty-bound" to protect public access to

judicial proceedings, and that "generalized confidentiality and protective orders are generally frowned upon in the Fort Worth Division." Order, *X Corp. v. Apple, Inc.*, No. 4:25-cv-00914-P (N.D. Tex. Dec. 3, 2025), ECF No. 81.

The sealing orders for Plaintiffs' motion for leave to take additional depositions and Plaintiffs' opposition to OpenAI's motion to compel failed to meet the standards for specificity. The Court should not allow such extensive redactions to continue, once it balances the public's right of access against any specific interests in nondisclosure identified by the parties in response to a request from the media to access the information.

Given these deficiencies, the materials should be unsealed now.

## CONCLUSION

For these reasons, the Court should grant both the motion to intervene and the motion to unseal ECF Nos. 192, 193, 206, and 207.

Dated: August 21, 2026

Respectfully submitted,

/s/ *William Scolinos*
William Scolinos
N.D. Tex. Bar No. 221129017
DC Bar No. 90023488
America First Legal Foundation
611 Pennsylvania Ave., SE #231
Washington, D.C. 20003
Phone: (301) 965-0179
william.scolinos@aflegal.org